**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

ERIC COOMER,

Plaintiff,

v.

THE AMERICA PROJECT, INC., *et al.*,

Defendants.

Civil Action No. 1:22-cv-1575-SKC

**REPLY IN SUPPORT OF**
**MOTION TO DISMISS BY**
**THE AMERICA PROJECT, INC.**

In accordance with Rule 7.1(d), Local Rules of Practice of the United District Court for the District of Colorado ("D.C.COLO.LCivR"), and this Court's Order dated August 29, 2022 (Dkt. No. 26), Defendant The America Project, Inc. ("TAP") respectfully submits this Reply in support of its Motion to Dismiss under Rules 12(b)(2), 12(b)(3), and 12(b)(6), Federal Rules of Civil Procedure, for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, as well as Colorado's Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") provisions at Colorado Rev. Stat. § 13-20-1101(3)(a).[1]

## INTRODUCTION

In this action, Plaintiff Eric Coomer ("Plaintiff") seeks to force a Florida Not-For-Profit Corporation, which conducts no activities in Colorado, to defend a meritless lawsuit on the other

---

[1] TAP respectfully joins in the Reply in Support of Motion to Dismiss filed by Defendant Lucescu (Dkt. No. 60) and the Reply in Support of Motion to Dismiss filed by Defendant Byrne (Dkt. No. 64), and expressly incorporates the legal arguments made therein by reference as if fully stated herein.

side of the country. Plaintiff avers the organization allegedly "hosted" a film on its "homepage" that allegedly contains defamatory comments about Plaintiff made by an individual who is not a Party to this lawsuit. For the reasons stated in its Motion to Dismiss (Dkt. No. 29), TAP is not subject to personal jurisdiction in Colorado, and Plaintiff has not—and cannot—state sufficient claims against the Florida entity. Accordingly, this Court should dismiss this action in its entirety as to TAP.

## FACTS & BACKGROUND

TAP is a Florida Not-For-Profit Corporation with its principal place of business in Sarasota, Florida. See Motion to Dismiss at Exhibit A (Dkt. No. 29-1); see also Complaint (Dkt. No. 1) at ¶ 12. TAP does not have offices in Colorado, it has no employees in Colorado, and has never conducted any events in Colorado. See Exhibit A at ¶¶ 4-6. TAP does not target Colorado residents or direct its activities into Colorado. Id. at ¶¶ 6-7. Although TAP has a website that is publicly accessible, its website is not in any way directed specifically toward Coloradans. Id. Other than this lawsuit, TAP has no ties to Colorado.

Plaintiff filed the instant lawsuit alleging defamation, intentional infliction of emotional distress, civil conspiracy, and unjust enrichment against TAP along with Defendants Patrick Byrne ("Byrne") and Steven Lucescu ("Lucescu"). See Compl. at ¶¶ 104-121. Plaintiff alleges that Byrne and Lucescu are "producers" of a documentary film that allegedly defames Plaintiff. The prolix complaint, comprised of 126 paragraphs spanning nearly 70 pages, devotes significant time discussing non-party Joseph Oltmann and his theories regarding the 2020 Presidential Election. See Compl. ¶¶ 30–56. As alleged, Oltmann's theories are included in the film, and Plaintiff alleges that Oltmann's statements about Plaintiff and Plaintiff's former employer, Dominion Voting Systems, are defamatory. See generally Compl. ¶¶ 68–88.

As alleged, the film premiere was in Arizona and was not broadcast nationally. Id. ¶ 57. Although Oltmann and Plaintiff are alleged to be Colorado residents, the allegedly defamatory comments primarily concern Washington D.C., Arizona, Nevada, Wisconsin, Michigan, Pennsylvania, and Georgia. See id. at ¶¶ 69–70, 72, 75–78, 88. Under the sub-heading "The Film is directed at and published to Colorado audiences[,]" Plaintiff alleges that non-party Oltmann "and his political organization, FEC United" (also a non-party) promoted the film, to include showings that FEC United conducted in Colorado. Id. at ¶¶ 89–91. That section of the complaint contains no allegations regarding TAP, or any other defendant. Id.

As it relates to TAP, the Plaintiff's well-pled allegations of wrongdoing are essentially non-existent. Plaintiff alleges that TAP owns the copyright to the film, Compl. at ¶ 12, "received at least a portion of the profits generated by the Film," id., and "hosted" the film on its "homepage," Id. at ¶ 65 n. 93. The Complaint does not allege that TAP participated in making the film, that it had any input or authority over the film's content, that it edited the film, or that it made any statement of its own about Plaintiff. Against this backdrop, TAP has moved this Court to dismiss this action for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, and concurrently moved for dismissal under Colorado Rev. Stat. § 13-20-1101(3)(a).

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER TAP.

#### A. General Legal Standard for Personal Jurisdiction.

As discussed in TAP's Motion to Dismiss (Dkt. No. 29) at I.A. (pp. 3-6), personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction. Dudnikov v. Chalk Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008). General jurisdiction

relies on "an out-of-state defendant's 'continuous and systematic' contacts with the forum state and does not require that the claim be related to those contacts." Id. (citations omitted) (quoting Trujillo v. Williams, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006)). "Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo:* in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." Id. Plaintiff alleges no continuous and systematic contacts by TAP with Colorado; accordingly, the Court may narrow its focus to the question of specific jurisdiction.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 571 U.S. 277, 283–84, (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)). "[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." Id. (quoting Rudzewicz, 471 U.S. at 475). And the "defendant's suit-related conduct must create a substantial connection with the forum State." Id.

Importantly, the Court "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. At bottom, specific jurisdiction is only proper if: (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum State; and (2) the plaintiff's injuries "arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

A plaintiff must establish purposeful direction under either the "harmful-effects" or "market-exploitation" framework. Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 903 (10th Cir. 2017). Either way, purposeful direction requires that a defendant have "deliberately . . . engaged in significant activities within" the forum State or deliberately directed

its activities at the forum State, so that it has "manifestly availed [itself] of the privilege of conducting business there." Old Republic, 877 F.3d at 905 (internal quotation marks omitted). Purposeful direction is a product of both the quantity and quality of a defendant's contacts with the forum. See OMI Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086, 1092 (10th Cir. 1998). The requirement "ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1058 (10th Cir. 2008) (internal quotation marks omitted), "the unilateral activity of another party or a third person," id. (internal quotation marks omitted), or the mere foreseeability that its actions may cause injury in that jurisdiction, see Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1534 (10th Cir. 1996).

**B. Legal Standard For Specific Personal Jurisdiction In The Internet Context.**

Plaintiff alleges both in his Opposition to Defendants' Motions to Dismiss and Declaration that TAP's role at issue was creation of a "distribution model and platform." See Opposition (Dkt. No. 36) at ¶¶ 3-7; Declaration of Eric Coomer (Dkt. No. 36-1) at ¶ 23. Accordingly, the gravamen here is whether the Court has personal jurisdiction in the internet context.

Addressing personal jurisdiction in the internet context—thus considering whether, when, and how such peculiarly non-territorial activities as web site hosting, internet posting, and mass emailing can constitute or give rise to contacts that properly support jurisdiction over the host, poster, or sender—was until recent times a novel question. The challenge presented is application of general principles developed pre-internet to the internet—which operates in every

State regardless of where the user is physically located—would potentially render meaningless the territorial limits of personal jurisdiction.[2]

However, two (2) relatively recent, precedential Tenth Circuit decisions are on point and dispositive regarding this question: (1) Shrader v. Biddinger, 633 F.3d 1235, 1240 (10th Cir. 2011); and (2) XMission, L.C. v. Fluent, LLC, 955 F.3d 833 (10th Cir. 2020).

In Shrader, the Tenth Circuit affirmed the dismissal for lack of personal jurisdiction of a lawsuit brought by an author against a former business associate, website operator, and website user alleging defamation, invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. Shrader, 633 F.2d at 1250.

In analyzing personal jurisdiction in the internet context, the Tenth Circuit found persuasive and adopted the Fourth Circuit's reasoning in ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). The Tenth Circuit concurred that "it is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." Id. at 1240. As such, the Tenth Circuit adopted the Fourth Circuit's personal jurisdiction analysis where the alleged defamatory statements via the internet are implicated:

---

[2] As the Fourth Circuit explained in ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002): "Applying the traditional due process principles governing a State's jurisdiction over persons outside of the State based on Internet activity requires some adaptation of those principles because the Internet is omnipresent—when a person places information on the Internet, he can communicate with persons in virtually every jurisdiction. If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist. The person placing information on the Internet would be subject to personal jurisdiction in every State."

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.

Id. at 1240-41 (quoting ALS Scan, 293 F.3d at 714). Flowing from this analysis, the Tenth Circuit held "the maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." Id. at 1241; see also Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010); Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 401 (4th Cir. 2003); Revell v. Lidov, 317 F.3d 467, 471–76 (5th Cir. 2002). Similarly, the Tenth Circuit opined that "posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside). Id.; see also Johnson v. Arden, 614 F.3d at 797; Revell, 317 F.3d at 475–76; Young v. New Haven Advocate, 315 F.3d 256, 258–59, 262–64 (4th Cir.2002). Finally, the Tenth Circuit instructed the Court should "look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." Id.

In XMission, the Tenth Circuit affirmed the dismissal for lack of personal jurisdiction of a lawsuit brought by an internet service provider against a digital marketer, alleging that the marketer sent commercial emails containing false information to the provider's customers. See

XMission, L.C. v. Fluent, LLC, 955 F.3d at 850. The Tenth Circuit recognized and affirmed that its decision in Shrader constitutes its leading opinion specific personal jurisdiction in the internet context. XMission, 955 F.3d at 844. The Tenth Circuit instructed that courts must "examine whether the defendant 'deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.'" XMission, 955 F.3d at 844 (quoting Shrader, 633 F.2d at 1245). Put another way, the Tenth Circuit framed the essential question as "whether the defendant intended its online content to create effects specifically in the forum state . . . directed specifically at a forum state audience or otherwise make the forum state the focal point of the message." Id. at 845.

**C. TAP's Postings Regarding "The Deep Rig" Merely Constitute Passive Internet Activities Without Any Manifested Intent Of Engaging Business Or Other Interactions In Colorado.**

Applying Shrader and XMission to the case at bar, there is no indication that TAP targeted a Colorado audience in particular. First, TAP has no contacts with Colorado. TAP is incorporated in and operates out of Florida. See Motion to Dismiss at Exhibit A (Dkt. No. 29-1) at ¶ 3. It conducts no activities in Colorado, has no employees in Colorado, and does not do anything to specifically target Coloradans. Id. at ¶¶ 4-6. Although Plaintiff, and as alleged, Oltmann live in Colorado, the Court must look at "contacts that the 'defendant *himself*' creates with the forum State." Walden, 571 U.S. at 284. Thus, assuming that a footnote can be treated as a well-pled allegation, and assuming that a reasonable inference from footnote 93 is that at one point TAP's "homepage" "hosted" the film, TAP still lacks the requisite contacts with Colorado. See Compl. at ¶ 65 n. 93; Shrader, 633 F.3d at 1244–45. TAP did not do anything "directed specifically at the forum state audience." See Shrader, 633 F.3d at 1244.

Further, TAP did not "otherwise make the forum state the focal point of the message." Shrader, 633 F.3d at 1244. The content of the film is about the 2020 Presidential Election, Compl. at ¶ 2, 5, it has no specific ties to Colorado. See Shrader, 633 F.3d at 1244 (finding no personal jurisdiction because forum was not the "focal point" of the allegedly defamatory comments posted online). Oltmann's comments were about Plaintiff's work on Dominion Voting Systems, and, critically, Plaintiff "worked with elections officials . . . across the country. . . ." See Compl. at ¶ 34. In fact, it appears the content of the film focused on activities in a handful of states, which did not include Colorado. See Compl. at ¶¶ 69–70. As for Oltmann's specific portion of the film, the complaint focuses primarily on a discussion about Michigan voting. See Compl. at ¶¶ 76–78. Ultimately, the only contact to Colorado is that Plaintiff and Oltmann live there, but the court "looks to the *defendant's* contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 571 U.S. at 284 (emphasis added).[3]

At no point has TAP "deliberately directed" any message at an audience in the forum state. Nor has TAP "intended harm" to Plaintiff, "such harm to occur primarily or particularly in the forum state." XMission, 955 F.3d at 844 (quoting Shrader, 633 F.2d at 1245). TAP did not intend any its online content to create effects "specifically in the forum state," and it has never directed any of its web-content specifically at a Colorado audience or otherwise make Colorado or Coloradans the focal point of its internet activities. Id. As such, the Court lacks personal jurisdiction over TAP; accordingly, it respectfully requests that the Court dismiss the Complaint, or, in the alternative, transfer this matter to the Middle District of Florida.

---

[3] To the extent Plaintiff intends to rely on Paragraph 17 of the Complaint, the allegations therein are plainly conclusory. See Dudnikov, 514 F.3d at 1070 (basis for personal jurisdiction cannot rely on implausible, conclusory, or speculative allegations).

## II. COLORADO IS NOT THE PROPER VENUE FOR THIS ACTION.

Even if there were a basis for asserting personal jurisdiction against TAP in Colorado, venue is nonetheless not appropriate there. Under Federal Rule of Civil Procedure 12(b)(3), a defendant can challenge improper venue. And "[o]nce venue is challenged, it is the plaintiff's burden to show that venue is proper in the forum district." Scott v. Buckner Co., 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019) (quotations and citations omitted). The plaintiff must present a prima facie showing of venue and the Court may review defendant's affidavits. Id. The venue statute, 28 U.S.C. § 1391(b), lists three categories for determining appropriate venue: (1) a district in which any defendant resides; (2) a "district in which a substantial part of the events or omissions giving rise to the claim occurred"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." Id.

Here, no defendant resides in Colorado. See Compl. ¶¶ 10–12. Additionally, there is no property at issue in this lawsuit. Thus, the relevant inquiry is whether "a substantial part of the events or omissions giving rise to the claim occurred" in Colorado, or whether there is any other district in which this action may be brought. Per the Declaration of Steve Lucescu, ECF No. 28-2, no production activities of the film occurred in Colorado. And, as explained above, other than the fact that Plaintiff resides in Colorado, there are no substantial events "giving rise to the claim" that occurred in Colorado. However, TAP is incorporated in the Middle District of Florida and would be subject to personal jurisdiction there.

Notably, Plaintiff's Opposition to Defendants' Motions to Dismiss did not address TAP's arguments in favor of dismissal for improper venue under Rule 12(b)(3), Federal Rules of Civil

Procedure. Accordingly, this Court should deem TAP's improper venue arguments conceded and Plaintiff's opposition to the same waived.

## III. PLAINTIFF FAILS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

Plaintiff asserts a claim for defamation against TAP. However, Plaintiff fails to properly allege all elements and, therefore, that cause of action should be dismissed. Under Colorado law, a defendant must have acted with actual malice to be liable for allegedly defamatory statements about a private individual that involve a matter of public concern. See Spacecon Specialty Contractors, LLC v. Bensinger, 713 F.3d 1028, 1034 (10th Cir. 2013). Whether a matter is of public concern is a question of law for the court. Id.

Here, the film at issue was about the 2020 presidential election and theories regarding voting fraud that occurred during the election. Regardless of one's stance on that debate, the integrity of the 2020 presidential election is indisputably a matter of great public concern. See generally Compl. ¶¶ 21–25 (explaining government and non-government organizations' statements regarding the integrity of the 2020 Presidential Election). Here, Plaintiff has not alleged that TAP, in allegedly hosting the film on its homepage acted with actual malice. TAP was not required to investigate Oltmann's claims. There is no well-pled allegation demonstrating that TAP knew Oltmann's, or anyone else's, statements were false. Instead, Plaintiff alleges in conclusory fashion that "Defendants failed to contact and question obvious available sources for corroboration; disregarded reliable sources refuting their claims; had no credible bases for the false allegations made; fabricated specific allegations; treated speculation and innuendo as evidence; and published their allegations in a manner calculated to create a false inference." See Compl. ¶ 107; see also Brooks, 985 F.3d at 1281 ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."). But these

conclusory allegations fail to demonstrate actual malice. TAP was not required to investigate the statements. See Talley, 923 F.3d at 896 (compiling cases). And although Plaintiff conclusory alleges that "Defendants" "fabricated specific allegations," the only conduct TAP allegedly did is owning the copyright to the film and hosting the film on its website. It is not alleged to have made any specific allegations—fabricated or otherwise. See generally Motion to Dismiss (Dkt. No. 29) at III.A.-F, pp. 8-6

Plaintiff attempts to cure the deficiencies in his Complaint by Declaration. However, the Court should disregard the twenty (20) page Declaration filed by plaintiff in support of his Opposition to Defendants' Motions to Dismiss (Dkt. No. 36-1). See Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995) ("It is well established that in determining whether to grant a motion to dismiss, the court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint.") (internal quotations omitted); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiff is not entitled to cure deficiencies in his Complaint by providing an extensive Declaration in response to a motion to dismiss for failure to state a claim upon which relief can be granted. He is indisputably bound by the four-corners of his deficient Complaint, which this Court should dismiss in its entirety.

**CONCLUSION**

For the foregoing reasons, TAP respectfully requests the Court dismiss this action with prejudice for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, under Rules 12(b)(2), 12(b)(3), and 12(b)(6), Federal Rules of Civil Procedure, or in the alternative, dismiss this action under Colorado's anti-SLAPP statute, Colorado Rev. Stat. § 13-20-1101(3)(a).

Date: November 25, 2022

Respectfully submitted,

**ABEL BEAN LAW, P.A.**

*s/ Christopher W. Dempsey*
CHRISTOPHER W. DEMPSEY
100 N Laura Street, Suite 501
Jacksonville, Florida 32202
Telephone: (904) 944-4113
Fax: (904) 944-4122
Email: cdempsey@abelbeanlaw.com

***Attorneys for Defendant***
***The America Project, Inc.***