# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ERIC COOMER, Ph.D.**,

    Plaintiff,

v.

**THE AMERICA PROJECT, INC.**, *et al.*,

    Defendants.

Case No. 8:24-cv-00008-TPB-SPF

## MOTION TO DISMISS BY THE AMERICA PROJECT, INC. UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM AND <u>SPECIAL MOTION TO DISMISS UNDER ANTI-SLAPP STATUTE</u>

In accordance with Rule 12(b)(6), Federal Rules of Civil Procedure, and Rule 3.01, Local Rules of the United States District Court for the Middle District of Florida, Defendant The America Project, Inc. ("TAP"), by and through undersigned counsel, respectfully requests the Court dismiss this action for failure to state a claim upon which relief can be granted. In the alternative, TAP respectfully requests the Court dismiss this action under Colorado's Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") provisions at Colorado Rev. Stat. § 13-20-1101(3)(a).

**INTRODUCTION**

In this action, Plaintiff seeks to force a Florida Not-For-Profit Corporation to defend a meritless lawsuit targeting the entity merely because it holds the copyright to a documentary film about the 2020 Presidential Election, to wit: *The Deep Rig*. This film constitutes the expression of Constitutionally protected speech regarding a matter of public concern. Plaintiff stretches to entangle TAP in this controversy by alleging the organization "hosted" a film on its "homepage," and that the film purportedly contains defamatory comments about Plaintiff made by an individual who is not even a party to this lawsuit.

Plaintiff has not stated—and cannot state—claims against TAP. Plaintiff does not aver TAP published any allegedly defamatory statements. Moreover, Plaintiff does not allege that TAP acted with any actual malice. TAPS hosting of the film at issue on its homepage is also immunized under Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Accordingly, in the light favorable to Plaintiff and accepting all well-pled facts alleged as true, Plaintiff does not state a viable claim for defamation under federal or Colorado or Florida state law.

Additionally, Plaintiff's lawsuit is barred by either: (a) Colorado's Anti-SLAPP statute, Colorado Rev. Stat. § 13-20-1101(3)(a), which applies in accordance with choice-of-law principles discussed at Note 1 below; or (b) in

the alternative, Florida's Anti-SLAPP statute, Fla. Stat. § 768.295 (2023). Accordingly, Plaintiff's Complaint is due to be dismissed.

## FACTS & BACKGROUND

TAP is a Florida Not-For-Profit Corporation with its principal place of business in Sarasota, Florida. See Complaint (Dkt. No. 1) at ¶ 12. Plaintiff Eric Coomer, Ph.D., filed the instant lawsuit alleging defamation, intentional infliction of emotional distress, civil conspiracy, and unjust enrichment against TAP along with Defendants Patrick Byrne and Steven Lucescu. *See* Compl. at ¶¶ 104-121.

Plaintiff alleges that Byrne and Lucescu are "producers" of a documentary film, *The Deep Rig*, which allegedly defames Plaintiff. The prolix complaint, comprised of 126 paragraphs spanning nearly 70 pages, devotes significant time discussing non-party Joseph Oltmann and his theories regarding the 2020 Presidential Election. *See* Compl. ¶¶ 30–56. As alleged, Oltmann's theories are included in the film, and Plaintiff alleges that Oltmann's statements about Plaintiff and Plaintiff's former employer, Dominion Voting Systems, are defamatory. *See generally* Compl. ¶¶ 68–88.

As alleged, the film premiere was in Arizona and was not broadcast nationally. *Id.* ¶ 57. The allegedly defamatory comments primarily concern Washington D.C., Arizona, Nevada, Wisconsin, Michigan, Pennsylvania, and Georgia. *Id.* at ¶¶ 69–70, 72, 75–78, 88. Plaintiff alleges that non-party

Oltmann "and his political organization, FEC United" (also a non-party) promoted the film, to include showings that FEC United conducted in Colorado. *Id.* at ¶¶ 89–91. This section of the Complaint contains no allegations regarding TAP or any other defendant. *Id.*

As it relates to TAP, the Plaintiff fails to make any well-pled allegations of wrongdoing against TAP. Plaintiff merely alleges that TAP owns the copyright to the film, Compl. at ¶ 12, "received at least a portion of the profits generated by the Film," *id.*, and "hosted" the film on its "homepage," *id.* at ¶ 65 n. 93. The Complaint does not allege that TAP participated in making the film, that it had any input or authority over the film's content, that it edited the film, or that it made any statement of its own about Plaintiff regarding his involvement in the 2020 Presidential Election.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE ANY CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

#### A. Legal Standard.

Federal Rule of Civil Procedure "12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim." A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Under Rule 12(b)(6), to survive dismissal a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must also contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

"A claim is facially plausible when the court can draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 799-800 (11th Cir. 2014) (*quoting Iqbal*, 556 U.S. at 662) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1020 (M.D. Fla. 2019) (*citing Iqbal*, 556 U.S. at 678).

"The scope of the review [in a Rule 12(b)(6) motion] must be limited to the four corners of the complaint." *St. George v. Pinellas Co.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *see also La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *Harris v. Ivax*, 182 F.3d 799, 802 & n.2 (11th Cir. 1999); *Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. App'x 883, 887 (11th Cir. 2016) ("In evaluating whether a complaint should be dismissed under Rule 12(b)(6)

for failure to state a claim, '[a] court is generally limited to reviewing what is within the four corners of the complaint.' The question is whether the allegations in the complaint, accepted as true, state a claim to relief that is plausible on its face." (citations omitted)).

### B. <u>Plaintiff Does Not Allege Any Actual Malice by TAP</u>.

Plaintiff asserts a claim for defamation against TAP. However, Plaintiff fails to properly allege all requisite elements; therefore, that cause of action should be dismissed. Under Colorado law,[1] a defendant must have acted with actual malice to be liable for allegedly defamatory statements about a private individual that involve a matter of public concern. *See Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1034 (10th Cir. 2013); *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1106 (Colo. 1982). Whether a matter is of public concern is a question of law for the court. *Spacecon,* 713 F.3d at 1034*; see also Quigley v. Rosenthal*, 327 F.3d 1044, 1057-58 (10th Cir. 2003).

---

[1] TAP respectfully joins, adopts, and expressly incorporates by reference as if fully stated herein the legal arguments on choice-of-law made in the Motion to Dismiss filed by Defendant Lucescu (Dkt. No. 123) at II.A-C, pp. 7-12, as well as the Motion to Dismiss filed by Defendant Byrne (Dkt. No. 126).  As such, TAP avers that Colorado law should control the claims and defenses in this case.  Either way, Plaintiff fails to state a viable claim for defamation under both Colorado and Florida law because, *inter alia*, he has not averred any legally sufficient publication of allegedly defamatory statements by TAP.

## 1. *The film concerns matters of public importance.*

"[I]n Colorado, public concern is interpreted broadly." *Id.* (cleaned up). "[A] matter is of public concern whenever it embraces an issue about which . . . the public may reasonably be expected to have a legitimate interest in what is being published." *Id.* (quoting *Williams v. Continental Airlines, Inc.*, 943 P.2d 10, 17 (Colo. App. 1996)). "[M]ore specifically, a matter is of public concern when 'it can be fairly considered as relating to any matter of political, social, or other concern to the community[.]'" *McIntyre v. Jones*, 194 P.3d 519, 525 (Colo. App. 2008) (quoting *Barrett v. Univ. of Colo. Health Sciences Ctr.,* 851 P.2d 258, 263 (Colo. App. 1993)); *see also City of San Diego v. Roe,* 543 U.S. 77, 83–84 (2004) (holding that a matter is of public concern when it is "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication"). In *Spacecon*, the Tenth Circuit found that a film containing defamatory messages regarding a private employer's treatment of its employees, payment of taxes, and unlawful acts were of public concern. 713 F.3d at 1035–39.

Additionally, the film at issue was about the 2020 Presidential Election and theories regarding voting fraud that occurred during the election. Regardless of one's stance on that debate, the integrity of the 2020 Presidential Election is indisputably a matter of great public concern. *See generally* Compl. ¶¶ 21–25 (explaining government and non-government

organizations' statements regarding the integrity of the 2020 Presidential Election). The Tenth Circuit has held that "[s]peech about political elections" "undoubtedly" touches "upon matters of public concern." *Bass v. Richards*, 308 F.3d 1081, 1089 (10th Cir. 2002). Courts regularly find that safeguarding elections is a matter of public concern. *See Mauff v. People*, 123 P. 101, 103 (Colo. 1912) ("It is a matter of general public concern that, at all elections, such safeguards be afforded."); *see Burroughs v. United States*, 290 U.S. 534, 545 (1934) (the importance of a presidential election "cannot be too strongly stated"); *Curling v. Raffensperger*, 493 F. Supp. 3d 1264, 1268 (N.D. Ga. 2020) ("Amidst the many other serious concerns facing the public in this challenging era, issues surrounding election system security, reliability, fairness, and the correct counting of votes continue on the forefront of citizen concerns."). And least one Colorado court has already "conclude[d] that [Oltmann's] statements regarding Coomer's alleged participation in election fraud relate to a matter of public concern." *Coomer v. Donald J. Trump for President, Inc.*, No. 2020cv034319 (Colo. Dist. Ct. May 13, 2021).

## 2. *Plaintiff has not alleged actual malice.*

As the statements at issue involve a matter of public concern, Plaintiff must allege, and ultimately prove by clear and convincing evidence, that TAP "published the film with knowledge of its falsity or in reckless disregard of the truth." *Spacecon*, 713 F.3d at 1041. "To show reckless disregard, 'the

plaintiff must demonstrate that the defendant in fact entertained serious doubts as to the truth of the statement, or acted with a high degree of awareness of its probable falsity.'" *Id.* (quoting *Lewis v. McGraw-Hill Broad. Co., Inc.,* 832 P.2d 1118, 1123 (Colo. App. 1992)). As stated in the comments to Colorado Pattern Jury Instruction 22:3, "[t]his standard is subjective, narrowly keyed to the defendant's state of mind at the time of publication rather than to the general propriety of his conduct in publishing." (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 327–28 (1974); *Herbert v. Lando*, 441 U.S. 153, 156 (1979); *St. Amant v. Thompson*, 390 U.S. 727 (1968)). It matters not that a "reasonably prudent person would not have published the defamatory statement or would have investigated before publishing . . . ." *Lewis*, 832 P.2d at 1123.

"A plaintiff does not create a jury question of actual malice by showing that a publisher failed to investigate before publishing." *Talley v. Time, Inc.*, 923 F.3d 878, 896 (10th Cir. 2019) (citing *Gertz*, 418 U.S. at 332; *St. Amant*, 390 U.S. at 731; *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 84-85, (1967) (per curiam); *New York Times, Co. v. Sullivan*, 376 U.S. 254, 287 (1964); *Revell v. Hoffman*, 309 F.3d 1228, 1233 (10th Cir. 2002)). In *New York Times*, the failure of the publisher to check its own news stories, which would have revealed the falsity of the defamatory statement, was still

"constitutionally insufficient to show the recklessness that is required for a finding of actual malice." 376 U.S. at 287–88.

Here, Plaintiff has not alleged that TAP—in allegedly hosting the film on its homepage—acted with actual malice. TAP was not required to investigate Oltmann's claims. The Complaint contains no well-pled allegations purporting to demonstrate that TAP knew Oltmann's, or anyone else's, statements were false. Instead, Plaintiff alleges in conclusory fashion that "Defendants failed to contact and question obvious available sources for corroboration; disregarded reliable sources refuting their claims; had no credible bases for the false allegations made; fabricated specific allegations; treated speculation and innuendo as evidence; and published their allegations in a manner calculated to create a false inference." *See* Compl. ¶ 107; *see also Brooks*, 985 F.3d at 1281 ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."). But these conclusory allegations fail to demonstrate actual malice.

TAP was not required to investigate the statements. *See Talley*, 923 F.3d at 896 (compiling cases). And although Plaintiff conclusory alleges that "Defendants" "fabricated specific allegations," the only conduct TAP allegedly did—per the four corners of the Complaint—is owning the copyright to the

film and hosting the film on its website. It is not alleged to have made any specific allegations—fabricated or otherwise.[2]

**C.** **Plaintiff Does Not Allege A Viable Claim for Intentional Infliction Of Emotional Distress.**

To assert a claim for intentional infliction of emotional distress under Colorado law, a plaintiff must allege that: (1) the defendant engaged in extreme and outrageous conduct; (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer severe emotional distress." *Mbaku v. Bank of Am., Nat. Ass'n*, No. 12-CV-00190-PAB-KLM, 2013 WL 425981, at *8 (D. Colo. Feb. 1, 2013) (quoting *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 966–67 (Colo. App. 2009)). "The 'level of outrageousness required for conduct to create liability' under this tort is 'extremely high' as it must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.*

---

[2] In the alternative, if Florida law applies to Plaintiff's claim for defamation, this Court lacks subject matter jurisdiction due to Plaintiffs failure to satisfy a condition precedent to bringing his action in accordance with Fla. Stat. § 770-01 (2023), which provides: "Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory." *See Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1307 (S.D. Fla. 2008) (discussing the five (5) day pre-suit notice requirement under Section 770-01, Florida Statutes). No such notice was provided here.

(quoting *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 666 (Colo. 1999)). Whether a plaintiff's allegations meet the outrageous conduct's "exacting standard" is a matter of law for the court to determine. *Coors Brewing*, 978 P.2d at 666. "[W]hen an allegedly defamatory publication pertains to a matter of public concern, a plaintiff 'may not recover for the tort of intentional infliction of emotional distress without showing . . . that the publication contains a false statement of fact which was made with 'actual malice'. . . ." *Anderson v. Colo. Mountain News Media, Co.*, No. 18-CV-02934-CMA-STV, 2019 WL 6888275, at *7 (D. Colo. Dec. 18, 2019) (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988)).

As explained above, Plaintiff has failed to allege actual malice by TAP. Accordingly, Plaintiff's claim for intentional infliction of emotional distress against TAP is due to be dismissed.

### D. TAP Is Immune And Insulated From Liability Under The Communications Decency Act.

Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, "creates a federal immunity to any state law cause of action that would hold computer service providers liable for information originating with a third party. *See Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 984–85 (10th Cir. 2000); *see also Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015); *Mezey v. Twitter, Inc.*, No. 1:18-

cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018); *M.H. v. Omegle.com, LLC*, No. 8:21-cv-814-VMC-TGW, 2022 U.S. Dist. LEXIS 4543, at *10 (M.D. Fla. Jan. 10, 2022).

Section 230(c)(1) states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." *Id.* § 230(f)(2). An "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service" *Id.* § 230(f)(3).

The Tenth Circuit has established a three-part analysis for determining entitlement to CDA immunity. *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009); s*ee also Whitney Info. Network, Inc. v. Verio, Inc.*, No. 2:04-cv-462-FtM-29-SPC, 2006 U.S. Dist. LEXIS 1424, 2006 WL 66724, at *3 (M.D. Fla. Jan. 11, 2006) (citing *Ben Ezra, Weinstein, and Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000)). First, the entity seeking immunity must be a "provider or user of an interactive computer service." Id. (quoting § 230(c)(1)). "Second, the liability must be based on the defendant's having acted as a 'publisher or speaker.'" *Id.* (quoting § 230(c)(1)).

Lastly, "immunity can be claimed only with respect to 'information provided by another information content provider.'" *Id.* (quoting § 230(c)(1)).

TAP's "homepage" is an interactive computer service. The Tenth Circuit has hinted that a website that does not facilitate interaction among third parties, like a normal messaging board, is still an "interactive computer service." *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009) ("[W]e are reluctant to embrace the FTC's contention that one who operates a website does not thereby provide an interactive computer service unless it allows interaction among the users."). A website necessarily "enables computer access by multiple users to a computer *server*." § 230(f)(2); *see also, e.g., Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007) ("A web site . . . 'enables computer access by multiple users to a computer server,' namely, the server that hosts the web site.").

Second, TAP's liability is based on Plaintiff's allegations that TAP was the "publisher or speaker" of the defamatory conduct. *See* Colo. Pattern Civil Jury Inst. 22:1; *see also Williams v. Dist. Ct., Second Jud. Dist., City & Cnty. of Denver*, 866 P.2d 908, 912 n.4 (Colo. 1993) (listing publication as an element of a claim for defamation). Although TAP disputes that a single ambiguous footnote can constitute a well-pled allegation of "publication," the analysis is academic. Should the Court determine the Complaint does not allege publication by TAP, then CDA immunity is unnecessary as Plaintiff's

claims would be dismissed as failing to state a claim—if footnote 93 is sufficient to allege publication, then CDA immunity applies and the Complaint should be dismissed.

Lastly, TAP is subject to CDA immunity because it is not an "information content provider" as it relates to the film. "If a party only passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content and thus shielded from suit under § 230." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 662 (W.D. Va. 2019) (citation and quotations omitted) (finding that defendants were not entitled to CDA immunity for articles about Charlottesville counter-protest participant that were posted to their websites because defendants actually created the content). Again, the Complaint only alleges that TAP owns the copyright to the film and "hosted" it on its "homepage." *See* Compl. ¶ 65 n.93. The Complaint does not allege that TAP did anything more than host a video that was created and promoted by others.[3]

TAP merely hosted a website on which the film in controversy was accessible. TAP did not otherwise create, author, or otherwise materially contribute to *The Deep Rig* such that the content at issue could be properly attributable to it. *Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d

---

[3] That TAP allegedly profited from the film is irrelevant to the CDA immunity analysis. Otherwise, CDA immunity would be illusory— almost all website owners seek to profit from the services provided on their websites.

1311, 1319 (M.D. Fla. 2015). Plaintiff has not pleaded any allegations that TAP authored, published, or generated the film at issue, only that it displayed or hosted the content on its website. *See* Compl. at ¶ 65 n. 93. Because TAP only "passively display[ed] content that was created entirely by third parties, then it is only a service provider with respect to that content and thus shielded from suit under § 230." *Gilmore*, 370 F. Supp. 3d at 662. Since TAP is subject to immunity under the Communications Decency Act, 47 U.S.C. § 230; Plaintiffs claims against it should therefore be dismissed.

### E. <u>Plaintiff Fails To State A Claim For Unjust Enrichment</u>.

For unjust enrichment, a plaintiff must allege that: "(1) a benefit was conferred on the defendant by the plaintiff; (2) the benefit was appreciated by the defendant; and (3) the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment of its value." *Tan v. Det-CO, Inc.*, No. 17-CV-01678-NYW, 2018 WL 922133, at *12 (D. Colo. Feb. 15, 2018) (quoting *Does v. Rodriguez*, No. 06–cv–00805–LTB, 2007 WL 684117, at *5 (D. Colo. Mar. 2, 2007)). The Colorado supreme court has adopted the definition of benefit, as used in the Restatement of Restitution:

> A person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way

> adds to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. The word "benefit," therefore, denotes any form of advantage.

*Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1097 (Colo. 1982) (quoting Restatement of Restitution § 1, cmt. B (1937)).

Although Plaintiff alleges that TAP profited from the film at issue, Plaintiff fails to allege a "benefit" that Plaintiff conferred on any defendant. Absent this critical element, Plaintiff's claim fails. *See Tan*, 2018 WL 922133, at *12 (dismissing unjust enrichment claim because the plaintiffs failed to allege a benefit they conferred on the defendant).

**F.  Plaintiff Fails To State A Claim For Civil Conspiracy.**

Plaintiff fails to allege a civil conspiracy. To state a claim for civil conspiracy under Colorado law, a plaintiff must allege: "(1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989). Plaintiff alleges that Defendants' unlawful acts were defamation and intentional infliction of emotional distress. *See* Compl. ¶ 113.

For the reasons those counts are due to be dismissed, no viable alleged predicate act underlies Plaintiff's claim for civil conspiracy; accordingly, that

Count necessarily fails to state a claim upon which relief can be granted and should be dismissed.

## II. THIS ACTION SHOULD BE DISMISSED UNDER COLORADO'S ANTI-SLAPP STATUTE.

### A. Standard of Review for Special Motions Brought Under Colorado's Anti-SLAPP Statute.

Colorado's Anti-SLAPP statute declares "that it is in the public interest to encourage continued participation in matters of public significance and that this participation should not be chilled through abuse of the judicial process." Colo. Rev. Stat. § 13-20-1101(1)(a). The statute allows a defendant to file a "special motion to dismiss" for a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States constitution . . . in connection with a public issue . . . ." *Id.* § 13-20-1101(3)(a). "[B]ecause Colorado's anti-SLAPP law is relatively new and untested, and given that it tracks California's statute almost exactly, it is appropriate to draw from the more well-established body of authority interpreting the California law." *Stevens v. Mulay*, No. 19-CV-01675-REB-KLM, 2021 WL 1153059, at *2 n.7 (D. Colo. Mar. 26, 2021).

Courts engage a two-step process in determining whether to dismiss challenged claims under the Anti-SLAPP statute. *Id.* at *3. First, a court must determine whether a plaintiff's claims arise from any act in furtherance

of a person's right of free speech or association. *Id.* Second, the burden then shifts to the plaintiff to establish a reasonable likelihood that he will prevail on the claim. *Id.*

Plaintiff's claims against TAP must be dismissed under Colorado's Anti-SLAPP statute because the claims arise out of constitutionally protected activity; moreover, Plaintiff cannot demonstrate a reasonable likelihood of prevailing.[4]

**B.** **The Claims Against TAP Arise Out Of Constitutionally Protected Acts.**

Under the first part of the test, the defendant must "establish that the plaintiff's cause of action is actually *based on* conduct in exercise of [the right of petition or free speech]." *Lefebvre v. Lefebvre*, 131 Cal. Rptr. 3d 171, 174 (Cal. App. 2011). "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in [the Anti-SLAPP statute]." *Braun v. Chron. Publ'g Co.*, 61 Cal. Rptr. 2d 58, 61 (1997).

---

[4] Florida also has an Anti-SLAPP statute, which is codified at Fla. Stat. § 768.295 (2023). If this Court is inclined to apply Florida law, TAP moves to dismiss and for its attorney fees under Florida's anti-SLAPP law. Section 768.295(2)(a), Florida Statutes, protects statements regarding "public issues" that were "made in or in connection with a play, *movie*, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." *See* Fla. Stat. § 768.295(2)(a) (2023) (emphasis added). Because *The Deep Rig* is a movie related to public issues, Plaintiff's claim against TAP is barred under Florida's Anti-SLAPP statute.

The Colorado Anti-SLAPP statute lists four categories of acts "in furtherance of a person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue." *See* Colo. Rev. Stat. § 13-20-1101(2)(a)(I)-(IV). Although TAP's alleged actions could fall under any of the categories, it most neatly fits into the fourth bucket: "Any other conduct or communication in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Id.* § 13-20-1101(2)(a)(IV).

Although TAP is not alleged to have actually made any statements, its "conduct" in hosting the film on its "homepage" was done "in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest." *Id.* § 13-20-1101(2)(a)(IV). As explained above, political elections, and the safeguarding and integrity of those elections, are indisputably public issues. *See, e.g., Bass*, 308 F.3d at 1089; *Burroughs*, 290 U.S. at 545; *Curling*, 493 F. Supp. 3d at 1268. As alleged, the film contained several theories regarding election integrity. The film was not about Plaintiff; it was about the 2020 Presidential Election. TAP's posting of the video on its website constituted conduct or communication about a political matter, which speech is patently afforded protection under the First Amendment. *Cf. F.C.C. v. League of Women Voters*

*of Cal.*, 468 U.S. 364, 375–76, (1984) (holding that political speech "is entitled to the most exacting degree of First Amendment protection."); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346-47 (1995); *Burson v. Freeman*, 504 U.S. 191, 196 (1992); *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964).

## C. <u>It Is Improbable That Plaintiff Will Prevail On His Claims</u>.

Under the second step of the Anti-SLAPP analysis, the burden shifts to Plaintiff to demonstrate a "reasonable likelihood" of prevailing on his claims. *Stevens*, 2021 WL 1153059, at *3. "Once the court reaches the second prong of the analysis, it must rely on admissible evidence, not merely allegations in the complaint or conclusory statements by counsel." *Finton Constr., Inc. v. Bidna & Keys APLC*, 190 Cal. Rptr. 3d 1, 12 (Cal. App. 2015); *see also Stevens*, 2021 WL 1153059, at *3 (applying a "summary-judgment-like standard"). As articulated in Section I above, Plaintiff is not reasonably likely to prevail on any of his claims against TAP.

## <u>CONCLUSION</u>

For the foregoing reasons, TAP respectfully requests the Court: (1) dismiss this action with prejudice due to Plaintiff's failure to state a claim upon which relief can be granted, under Rule 12(b)(6), Federal Rules of Civil Procedure; (2) dismiss this action under either: (a) Colorado's anti-SLAPP statute, Colorado Rev. Stat. § 13-20-1101(3)(a); or (b) in the alternative, Florida's Anti-SLAPP statute, Fla. Stat. § 768.295 (2023); (3) award TAP its

reasonable attorney fees and costs incurred in connection with this action; and (4) grant such other and further relief as this Court deems appropriate, just, or equitable under the circumstances.

Date: March 12, 2024      Respectfully submitted,

**DEMPSEY LAW, PLLC**

/s/ Christopher W. Dempsey
CHRISTOPHER W. DEMPSEY
M.D. Fla. Bar. No. 1038319
50 N Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 760-6272
Fax: (904) 587-0372
Email: chris@cdempseylaw.com

*Counsel for Defendant*
*The America Project, Inc.*

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that counsel for the Parties met and conferred on this Motion, most recently during a phone conference held on March 11, 2024. Plaintiff does not consent to dismiss his Complaint. Plaintiff has previously opposed motions to dismiss filed by Defendants prior to transfer of this action to this District from the U.S. District Court for the District of Colorado.

/s/ Christopher W. Dempsey
CHRISTOPHER W. DEMPSEY
*Counsel for Defendant*
*The America Project, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12, 2024, I filed and served the foregoing with the Clerk of the Court by causing a copy to be electronically filed via the CM/ECF system, which will send notice of the filing to all attorneys of record.

/s/ Christopher W. Dempsey
CHRISTOPHER W. DEMPSEY
*Counsel for Defendant*
*The America Project, Inc.*