UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC COOMER, Ph.D.,

    Plaintiff,

v.                                                                        Case No. 8:24-cv-8-TPB-SPF

PATRICK BYRNE, STEVEN LUCESCU,
and THE AMERICA PROJECT, INC.,

    Defendants.
_____/

## ORDER

    Before the Court are Defendants' Joint Motion to Continue Stay of Discovery (Doc. 127) and Plaintiff's Motion to Affirm Contingent Order Granting Expedited Discovery in Aid of Response to Defendants' Special Motions to Dismiss Pursuant to C.R.S. § 13-20-1101 (Doc. 131). Plaintiff and Defendants have each filed responses in opposition to the motions (Docs. 132, 139). Upon consideration, the Court finds that both motions should be DENIED.

### I.     Background

    This is one of many cases arising from the aftermath of the 2020 presidential election, and specifically from allegations regarding voting services provided by Dominion Voting Systems ("Dominion"). Dr. Coomer is the former director of product strategy and security for Dominion (Doc. 1, ¶ 1). Defendant Patrick Byrne is a founder and board member of Defendant The America Project, Inc. ("TAP") and is credited as a producer of a film about the 2020 election entitled "The Deep Rig" (the "Film") (*Id.*, ¶¶ 10, 12).

Defendant Steven Lucescu is also a producer of the Film (*Id.*, ¶ 11). Defendant TAP owns the copyright for the Film and has been the recipient of at least a portion of its profits (*Id.*, ¶ 12).

"The Deep Rig" is styled as a documentary and purports to expose a number of ways that the 2020 election was fraudulently influenced to ensure the election of President Joseph Biden, though each theory features some element casting doubt on the reliability of voting machines manufactured by Dominion (*Id.*, ¶ 3). Dr. Coomer alleges that the lynchpin of the Film is an interview with a conservative activist named Joe Oltmann, who spoke on film and claimed to have infiltrated a conference call by "Antifa" activists in Colorado prior to the election (*Id.*). Mr. Oltmann claimed that during the conference call, someone named "Eric," who was identified by others on the call as "the Dominion guy," reassured the other call participants that they did not need to worry about the possibility of President Donald Trump's reelection because "Trump is not gonna win. I made f-ing sure of that." (*Id.*, ¶ 31). Mr. Oltmann claimed that he then googled "Eric," "Dominion," and "Denver, Colorado" and that was how he discovered Dr. Coomer (*Id.*). Dr. Coomer states that all of Mr. Oltmann's allegations about him and about Dominion have been debunked and are provably false. As a result of these false claims, Dr. Coomer has received countless credible death threats, has suffered from severe emotional distress, and has suffered harm to his reputation, privacy, safety, and earnings (*Id.*, ¶¶ 122–03).

## II.  Procedural History

On June 24, 2022, Dr. Coomer sued the Defendants in the District of Colorado. In his lengthy Complaint, Dr. Coomer raises claims of defamation, intentional infliction

2

of emotional distress, civil conspiracy, and unjust enrichment. He also requested a permanent injunction, which would require the Defendants to remove all of their allegedly defamatory statements upon final adjudication of the case and demanded that the Defendants immediately and publicly retract all the allegedly defamatory statements they had made about him. Defendants initially moved to dismiss Dr. Coomer's Complaint for lack of jurisdiction, improper venue, and failure to state a claim (Docs. 28, 29, 31). Defendants also moved to specially dismiss Plaintiff's Complaint pursuant to Colorado's anti-SLAPP statute (*Id.*).[1] *See* C.R.S. § 13-20-1101(3)(a) ("A cause of action against any person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue is subject to a special motion to dismiss unless the court determines that the plaintiff has established that there is a reasonable likelihood that the plaintiff will prevail on the claim.").

While the case was pending in Colorado, the parties filed a joint motion to stay discovery pursuant to Colorado's Anti-SLAPP statute (Doc. 48). *See* C.R.S. § 13-20-1101(6) ("All discovery proceedings in the action are stayed upon a filing of a notice of motion made pursuant to this section. The stay of discovery remains in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good

---

[1] "SLAPP means 'Strategic Lawsuits Against Public Participation.' SLAPPs are typically filed against the 'little guy' who complains to the government about a 'big guy,' like a land developer or mining company who 'slaps' him with a defamation lawsuit just to shut him up." *Henderson v. von Loewenfeldt*, No. CV414-187, 2015 WL 409656, at *2 (S.D. Ga. Jan. 29, 2015) (citations omitted) (discussing Georgia's anti-SLAPP statute).

3

cause shown, may order that specified discovery be conducted notwithstanding this subsection (6)."). At the same time, Plaintiff moved for limited, expedited discovery to aid in his response to the special motions (Doc. 33). The court later granted the joint motion to stay, but denied Plaintiff's motion for expedited discovery as moot because he had filed his response to Defendants' motions to dismiss (Doc. 58 (stating that the parties' joint motion to stay discovery was granted because "[b]oth parties agree that C.R.S. § 13-20-1101(6), Colorado's Anti-SLAPP statute, applies to automatically stay discovery" and Plaintiff's motion was denied as moot because Plaintiff filed his responsive pleading).

Plaintiff then moved to "correct" the court's mootness determination, clarifying that he did not file a response to the Anti-SLAPP portions of Defendants' motions, but instead responded to the Rule 12(b) sections of Defendants' motions (Doc. 61). The court ultimately agreed with Plaintiff, and ordered Defendants to re-file their motions to dismiss based solely on Rule 12(b) arguments (Doc. 79). The court then stated that, "[f]ollowing the resolution of Defendants' 12(b) motions, should the case proceed, and should Defendants choose to renew their special motions to dismiss arguing the anti-SLAPP issues, the Court will convene a status conference to set a limited discovery schedule." (*Id.*). In its analysis, the court explicitly stated that it was "this Court's intent to GRANT Plaintiff limited discovery" should the need arise, but it would "hold that matter in abeyance pending resolution of the Rule 12(b) issues, particularly the matter of whether this Court has personal jurisdiction over Defendants." (*Id.*).

The Colorado District Court ultimately found that it lacked personal jurisdiction over Defendants, but determined that the case should not be dismissed, but should instead

4

be transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1631 (Doc. 97). After the case was transferred, Defendants each filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and special motion to dismiss under Colorado's Anti-SLAPP statute (Docs. 123, 125, 126). In their motions, each Defendant argued that Colorado law applied to this dispute, including Colorado's Anti-SLAPP statute (*Id.*). Around the same time, Defendants filed their Joint Motion to Continue Stay of Discovery (Doc. 127), arguing that the discovery stay has never been lifted and should remain in place pending this Court's ruling on their motions to dismiss. Shortly thereafter, Plaintiff filed his Motion to Affirm Contingent Order Granting Expedited Discovery in Aid of Response to Defendants' Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101 (Doc. 131) and his response to Defendants' motion (Doc. 132), arguing that the Court must first determine whether Colorado or Florida law applies to this action before Defendants' Joint Motion will be ripe for adjudication. The district judge has since entered an order denying Defendants' motions to dismiss "to the extent they seek to invoke Colorado's anti-SLAPP statute" (Doc. 149). As such, and for the reasons explained below, both Plaintiff's and Defendants' motions should be denied.

### III.   Colorado's Anti-SLAPP Statute

To resolve the parties' motions, the Court must first resolve the question of whether Colorado's anti-SLAPP statute applies to this dispute. The Court has not yet determined whether Florida or Colorado law applies to this action. If Florida law applies, it necessarily follows that the Colorado statute does not apply. But even assuming the Court ultimately determines that Colorado law applies, for the reasons explained below, the

5

undersigned nonetheless finds that the discovery stay portions of the Colorado anti-SLAPP statute are inapplicable in federal court.

A federal court sitting in diversity must apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). To that end, "a federal court exercising diversity jurisdiction will not apply a state statute if a Federal Rule of Civil Procedure 'answers the question in dispute.'" *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). A federal rule "answers the question" where it is sufficiently broad to control the issue before the court and it conflicts with state law. *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1358 (11th Cir. 2014). The federal rule or statute must also comport with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution. *Id.* (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 n.7 (1996)). If no Federal Rule answers the question in dispute, courts "apply *Erie* and its progeny to determine 'whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping.'" *Id.* (quoting *Burke v. Smith*, 252 F.3d 1260, 1265 (11th Cir. 2001)).

The Colorado anti-SLAPP statute states, in relevant part, that "[a]ll discovery proceedings in the action are stayed upon a filing of a notice of motion made pursuant to this section. The stay of discovery remains in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subsection (6)." C.R.S. § 13-20-

1101(6). The Court finds that this section of the statute does not apply in federal court because it is procedural and conflicts with a Federal Rule of Civil Procedure.

In general, federal courts have reached conflicting results in determining whether state anti-SLAPP statutes apply in federal court. *See, e.g.*, *Royalty Network*, 756 F.3d at 1362 (holding that the verification requirement in Georgia's anti-SLAPP statute does not apply to diversity cases in federal court because it conflicts with Federal Rule of Civil Procedure 11); *Carbone*, 910 F.3d at 1357 (holding that Georgia's anti-SLAPP statute's motion-to-strike provision, which contained a "likelihood of success" test, conflicts with Federal Rules of Civil Procedure 8, 12, and 56); *Moreau v. U.S. Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1133 (D. Colo. 2022) (concluding that the special motion procedures outlined in Colorado's anti-SLAPP statute apply in federal court); *Mucerino v. Martin*, No. 3:21-cv-284, 2021 WL 5585637, at *6 (M.D. Tenn. Nov. 30, 2021) (concluding that special motion procedures in Tennessee anti-SLAPP statute do not apply in federal court); *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015) (holding that D.C.'s anti-SLAPP Act has no application in diversity cases because Federal Rules of Civil Procedure 12 and 56 already detail how a court may dismiss a claim pretrial, with neither requiring a likelihood of success showing); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999) (concluding that the attorney's fee and special motion to strike provisions of California's anti-SLAPP statute apply in federal court).

With respect to portions of anti-SLAPP statutes that either permit or mandate a stay of discovery, however, courts have more consistently found those to be inapplicable

in federal court. *See, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (holding that "the discovery-limiting aspects of [anti-SLAPP statutes] collide with the discovery-allowing aspects of Rule 56"); *AR Pillow Inc., v. Maxwell Payton, LLC*, No. C11-1962-RAJ, 2012 WL 6024765, at *3 (W.D. Wash. Dec. 4, 2012) ("[T]he Ninth Circuit's holding that the automatic stay of discovery in California's statute does not apply in federal court applies equally to [Washington's anti-SLAPP statute]."); *United Capital Mgmt. of Kan., Inc. v. Nelson*, No. 22-4008-JWB, 2023 WL 2242155, at *2 (D. Kan. Feb. 27, 2023) (finding the "procedural provisions" of Kansas's anti-SLAPP statute, which include a mandatory stay of discovery, are inapplicable in federal court because they do not impact the outcome of the case); *Henderson v. von Loewenfeldt*, No. CV414-187, 2015 WL 409656, at *2 n.7 (S.D. Ga. Jan. 29, 2015) (finding the automatic stay provision in Georgia's anti-SLAPP statute inapplicable in federal court because it is a state procedural law); *but see Diamond Ranch Academy, Inc. v. Filer*, 117 F. Supp. 3d 1313, 1319 (D. Utah 2015) (finding discovery stay portion of California's anti-SLAPP statute not to conflict with the Federal Rules of Civil Procedure).

A plain reading of the discovery stay section of the Colorado statute begins with the observation that it is a procedural law rather than a substantive law. *See, e.g.*, *Briggs v. Eden Council for Hope & Opportunity*, 969 P.2d 564, 573 (Cal. 1999) (referencing the "procedural protections" of California's anti-SLAPP statute);[2] *see also Henderson*, 2015 WL

---

[2] "Being only a few years old, Colorado's anti-SLAPP statute has not been extensively litigated. Because Colorado's statute 'closely resembles California's anti-SLAPP statute,' Colorado courts look to the more developed body of California law for guidance." *Coomer*

409656, at *2 n.7 (describing the automatic stay provision in Georgia's anti-SLAPP statute as a "state procedural law"); *cf. Gov't Emps. Ins. Co. v. Glassco Inc.*, No. 8:19-cv-1950-KKM-JSS, 2021 WL 4391717, at *5 (M.D. Fla. Sept. 24, 2021) (noting that Florida's anti-SLAPP statute contains no "likelihood of success" or burden-shifting provisions and is instead a "strictly procedural mechanism for litigants to have anti-SLAPP motions decided more expeditiously").[3]

Moreover, the Court also finds that the automatic stay provision conflicts with Rules 8, 12, and 56 of the Federal Rules of Civil Procedure. "Under [Rule 56], a party is ordinarily entitled to test the proof for a claim only after the conclusion of discovery." *Carbone*, 910 F.3d at 1350; *see also Metabolife*, 264 F.3d at 846 (holding that "the discovery-limiting aspects of [anti-SLAPP statutes] collide with the discovery-allowing aspects of Rule 56"). And "if Rule 8 did not authorize a plaintiff to maintain suit and proceed to discovery, Congress would not have needed to add novel requirements for certain categories of claims." *Carbone*, 910 F.3d at 1353. And "[e]ven if the relevant Federal Rules did not create an affirmative entitlement to proceed to discovery or trial," Rules 8,

---

*v. Make your Life Epic LLC*, 659 F. Supp. 3d 1189, 1198 (D. Colo. 2023) (quoting *L.S.S. v. S.A.P.*, 523 P.3d 1280, 1285–86 (Colo. App. 2022)) (internal citations omitted).

[3] The court ultimately concluded that Florida's anti-SLAPP statute is substantive based on a decision by Florida's Second District Court of Appeal that mandated that conclusion. *Glassco*, 2021 WL 4391717, at *5 ("The Court is left with a state statute, the text of which is procedural and creates no substantive right but which has been interpreted by a state appellate court as creating a substantive right that includes a burden-shifting approach to deciding a motion. Whatever misgivings the Court might have, its obligation is clear: 'State law is what the state appellate courts say it is, and we are bound to apply a decision of a state appellate court about state law even if we think that decision is wrong.'") (quoting *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 848 (11th Cir. 2018)).

12, and 56 "are 'sufficiently broad' . . . 'to control the issue' before the court, thereby leaving no room for the operation'" of the procedures in the anti-SLAPP statute. *Carbone*, 910 F.3d at 1352 (quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)). Finally, the Eleventh Circuit has already determined that Rules 8, 12, and 56 comply with the Rules Enabling Act and the Constitution. *Id.* at 1357.

The Court also notes that the district judge in this case has recently ruled that the Colorado anti-SLAPP statute's provision for a special motion to dismiss are inapplicable in this matter (Doc. 149). As a result, Defendants' request for a stay of discovery is due to be denied on this basis as well.

### IV. Eleventh Circuit Standard

Having concluded that a stay pursuant to Colorado's Anti-SLAPP Statute is improper, the Court next considers whether a stay is otherwise appropriate under Eleventh Circuit precedent. In *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997), the Eleventh Circuit stated: "Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins." Although the Court may grant motions to stay discovery under Rule 26(c), the moving party must prove good cause and reasonableness. *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006).

*Chudasama*'s holding does not establish the general rule that discovery should not proceed while a motion to dismiss is pending. *See Koock v. Sugar & Felsenthal, LLP*, No. 8:09-cv-609-T-17EAJ, 2009 WL 2579307, at *2 (M.D. Fla. Aug. 19, 2009) (denying motion to stay). In *Chudasama*, the cause of action contested in the motion significantly

enlarged the scope of discovery and was "especially dubious." 123 F.3d at 1268.  Instead, *Chudasama* and its progeny "stand for the much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount." *In re Winn Dixie Stores, Inc. ERISA Litig.*, No. 3:04-cv-194-J-33MCR, 2007 WL 1877887, at *1 (M.D. Fla. June 28, 2007).  In fact, motions to stay discovery are disfavored and rarely are granted when discovery may be necessary to defend against the motion to dismiss or when the motion may not dispose of the entire case.  *Hovermale v. Sch. Bd. of Hillsborough Cty., Fla.*, 128 F.R.D. 287, 289 (M.D. Fla. 1989).

In deciding whether to stay discovery pending resolution of a motion to dismiss, the Court must balance the harm produced by a delay in discovery against the possibility that the motions will be granted and entirely eliminate the need for such discovery.  *McCabe*, 233 F.R.D. at 685.  The Court, therefore, takes a "preliminary peek" at the dispositive motion to see if it "appears to be clearly meritorious and truly case dispositive." *Id.* (citation and internal quotation marks omitted).  The motion to dismiss should be so clear on its face that there is "an immediate and clear possibility that it will be granted." *Feldman v. Flood*, 176 F.R.D. 651, 653 (M.D. Fla. 1997) (citation and internal quotation omitted).  The Court has preliminarily reviewed Plaintiff's Complaint and Defendants' Motions to Dismiss and finds that they fall short of this requirement.  As such, a discovery stay is not appropriate.

### V.    Plaintiff's Motion for Expedited Discovery

As discussed above, Plaintiff also filed a motion seeking expedited discovery to aid in responding to Defendants' special motions.  Because the Court has ruled that the special

motion procedures in Colorado's anti-SLAPP statute do not apply to this action (Doc. 149), there is no bar to Plaintiff's ability to seek discovery. As such, Plaintiff's motion is due to be denied as moot.

## VI. Conclusion

Accordingly, the Court **ORDERS**:

(1) Defendants' Joint Motion to Continue Stay of Discovery (Doc. 127) is **DENIED**.

(2) Plaintiff's Motion to Affirm Contingent Order Granting Expedited Discovery in Aid of Response to Defendants' Special Motions to Dismiss Pursuant to C.R.S. § 13-20-1101 (Doc. 131) is **DENIED AS MOOT**.

**ORDERED** in Tampa, Florida, on July 31, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE