## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,
     Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,
     Defendants

---

### PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS

---

Plaintiff Eric Coomer, Ph.D. (Dr. Coomer), by and through his undersigned counsel, files this Motion to Compel and for Sanctions, and states as follows:

### I.    INTRODUCTION

1.    The Court issued an Order denying Defendants' Motion to Stay Discovery five months ago, on July 31, 2024. *See* Doc. 150. Despite this Order, Defendants Patrick Byrne (Byrne) and Steven Lucescu (Lucescu) have delayed responding to discovery, have not responded to discovery deficiency notices, and have arbitrarily refused to produce any documents after the filing of Plaintiff's Complaint. For its part, Defendant The America Project (TAP) has yet to produce a single document, either pursuant to its Rule 26 obligations, or in response to Plaintiff's written discovery requests, which were issued more than seven months ago.

2.      These failures have delayed and will continue to delay progress of this case, which has already been pending for years.  Dr. Coomer's expert disclosures, for example, are dependent, in part, on documents that TAP has refused to disclose.  Dr. Coomer, therefore, seeks an order compelling Defendant TAP to respond to its written discovery obligations and for all Defendants to produce responsive documents created up to and including the present date.

3.      To be clear, Dr. Coomer has more than exhausted every avenue in obtaining compliance before bringing this matter to the Court's attention.

## II.    PROCEDURAL HISTORY

4.      This case was filed two and a half years ago, on June 24, 2022.  Doc. 1. In his Complaint, Dr. Coomer described the death threats and harassment directed at him because of the lies at issue in this dispute.  *Id*. at ¶¶ 102-103.  Those threats and harassment persist to this day.[1]

5.      On April 4, 2024, the Court issued a Case Management and Scheduling Order that established various deadlines, including, as relevant here, Plaintiff's Expert Disclosure Deadline, which was then set for November 15. Doc. 16, p. 1.

6.      Dr. Coomer served Initial Disclosures and his First Written Discovery Requests on all Defendants on **May 17, 2024**.

---

[1]    *See*,    *e.g.*,    @TheoryConspiry,    X    (Dec.    29,    2024), https://x.com/TheoryConspiry/status/1873424732785405981    (calling for Dr. Coomer's execution and showing an image of the restaurant he used to operate in Salida, Colorado).

7.      On June 17, 2024, Defendants asserted various objections to all of Dr. Coomer's interrogatories and requests for production, including that discovery was premature given Defendants' then-pending Motion to Stay Discovery. Doc. 127.   Defendants provided substantive responses only to Dr. Coomer's requests for admission, but these too were couched in numerous objections.

8.      On July 31, 2024, the Court denied Defendants' Motion to Stay Discovery.  Doc. 150.

9.      On August 6, 2024, counsel for Lucescu requested until September 6, to respond to Dr. Coomer's written discovery requests.  Undersigned counsel responded that he would agree to two additional weeks, or up to and including August 23, but could agree to no more given the numerous delays and already tight schedule.

10.      On August 12, 2024, counsel for both Byrne and TAP requested even more delays to respond to Dr. Coomer's written discovery requests, up to and including September 16.  That same day, Dr. Coomer responded requesting a conferral call to address objections raised in Defendants' prior written discovery responses.

11.      On August 19, 2024, counsel for TAP wrote to confer on a Motion to Amend the Case Management and Scheduling Order to extend all deadlines by sixty days.  Counsel also referenced, for the first time, an apparent intent to seek a protective order.

12.    The parties held a conferral call on September 3, 2024, to address Defendants' prior objections, and to try to narrow the scope of matters in dispute. At that time, Defendants indicated that they would be producing amended discovery responses on September 6, and that conferral on objections would be more fruitful thereafter.  Defendants also indicated their intent to only produce documents up until the date of the filing of Dr. Coomer's Complaint.  Undersigned counsel objected to this arbitrary cutoff and stated that all responsive documents, including post-Complaint documents, needed to be produced.

13.    Lucescu served Supplemental Responses to Plaintiff's Written Discovery the following day, September 4, 2024.  Those responses, however, only indicated that Lucescu would eventually produce documents in response to various requests for production.[2]

14.    On September 11, 2024, Byrne and TAP provided Supplemental Responses to Written Discovery.  Neither included responsive documents.  In Byrne's case, like Lucescu, he indicated simply that "Byrne agrees to produce any communications . . . to the extent such documents exist and can be located after a reasonable search"[3] in response to numerous requests for production.  For its part, TAP indicated that it will "produce any non-privileged documents or communications in its possession responsive to this Request . . . upon agreement

---

[2] **Exhibit 1**, Lucescu Responses to Plaintiffs' Requests for Production Nos. 1-2, 5-8, 10, and 14-15.

[3] **Exhibit 2**, Byrne Responses to Plaintiffs' Requests for Production Nos. 1-3, 5-13, 15-16, and 18.

to sufficient ESI Protocol by counsel for the Parties and entry by the Court of a suitable Protective Order."[4]

15.     On September 24, 2024, counsel for Lucescu sent a list of proposed search terms for collecting and producing Lucescu's production.  These proposed search terms included date ranges that undersigned counsel had already explicitly objected to and stated he would take up with the Court.  On September 24, undersigned counsel responded that "Those terms work for us, so long as they're not used as a substitute for the plain language of the requests themselves."[5] Dr. Coomer's response makes no reference to the date range, which Defendants knew was not acceptable to Dr. Coomer.

16.     On October 14, 2024, counsel for Byrne returned draft discovery protocols wherein he acknowledged Dr. Coomer's position on the applicable date range and affirmatively rejected it, stating "We rejected your timeframe for responsive document discovery and ESI and adjusted it to the following periods."[6] Dr. Coomer responded the next day, stating unequivocally that "We're not agreeing to limit the timeframe to your proposal, so we can take it up with Judge Barber. That limitation makes no sense in the context of this case and will serve to exclude relevant evidence."[7]

---

[4] **Exhibit 3**, TAP Responses to Plaintiff's Requests for Production Nos. 1, 3-5, and 8.

[5] **Exhibit 4**, p. 1.

[6] **Exhibit 5**, p. 2.

[7] *Id.*, p. 1.

17.    The Court issued an Order granting the parties' Motion for Stipulated Protective Order on October 24, 2024.  Later the same day, Lucescu produced documents in response to Dr. Coomer's written discovery requests.  The following day, October 25, Defendant Byrne produced documents responsive to Dr. Coomer's written discovery requests.

18.    On December 12, 2024, Dr. Coomer sent letters to counsel for both Lucescu[8] and Byrne[9] highlighting various deficiencies in both Defendants' productions.  Among other shortfalls, those deficiency notices objected to the arbitrary cut-off date of document disclosures from both Defendants.  Lucescu and Byrne have both refused to produce any document created after the filing of this lawsuit on June 24, 2022.  Neither Defendant responded to those deficiency notices.

19.    For its part, TAP has never produced any documents, despite repeated assurances that it would and numerous communications from undersigned counsel to counsel for TAP inquiring into the status of their disclosures.  Dr. Coomer sent counsel for TAP a letter on December 12, 2024, demanding compliance.[10]  The letter noted that at least four prior instances over the preceding months wherein Dr. Coomer had inquired about this matter and received no response.

---

[8] **Exhibit 6**.

[9] **Exhibit 7**.

[10] **Exhibit 8**.

20.     On December 13, 2024, counsel for TAP wrote back, stating, "you can expect to receive TAP's document production NLT 5 p.m. EST on Friday, December 20, 2024."[11]  This did not occur.  As of this writing, TAP has still not produced any documents responsive to Dr. Coomer's May 17 written discovery requests.

21.     Dr. Coomer has attempted to address these delays for many months now, but this case cannot proceed unless and until Defendants abide by their discovery obligations.  Dr. Coomer requests an Order compelling depositions be completed by a date certain and production of all responsive documents.

**A.     Developments in Related Proceedings.**

22.     Discovery in related cases continues to bolster Dr. Coomer's allegations in this case that Defendants either knew the claims they published in *The Deep Rig* were false, or that they proceeded with reckless disregard for the truth.  General Michael Flynn (Flynn), for example, who co-stars in *The Deep Rig* and has served as an advisor to Defendant TAP, was recently deposed in related proceeding *Coomer v. Make Your Life Epic dba Thrivetime Show et. al*., Case No. 21-cv-03440-WJM-KAS.  Under oath, Flynn claimed to know virtually nothing about Dr. Coomer, and further affirmed that he has never seen any evidence suggesting that Dr. Coomer rigged the election.[12]

---

[11] **Exhibit 9**.

[12] **Exhibit 10**, *Coomer v. Make Your Life Epic dba Thrivetime Show*, Case No. 21-cv-03440-WJM-KAS, Depo. Tr. Flynn (Apr. 4, 2024) at 60:15-64:8.

23.    As indicated in the notices of supplemental authority and related case updates filed with the Court (*see generally*, Docs. 129, 142, 143, 145, 148, and 165), multiple other Defendants (some of whom are relevant witnesses in this proceeding) have already settled with Dr. Coomer.  For example, Defending the Republic, Inc., an entity where Byrne briefly served as CEO and where Joe Flynn (former president of TAP) served as a board member, recently settled with Dr. Coomer, as did former counsel to both the Trump Campaign and Michael Flynn, Sidney Powell.  *See* Doc. 148.  These settlements follow multiple orders from both state and federal appellate courts affirming denials of motions to dismiss Dr. Coomer's claims.[13]

24.    For his part, Joe Oltmann (Oltmann), the origin and sole source of the false claims at issue here, recently fled the federal courthouse in Denver in the middle of a court-ordered deposition.  *See* Doc. 145.  Magistrate Judge Kathryn A. Starnella recommended that Oltmann be held in contempt, and on September 4, 2024, Senior Judge William J. Martinez issued a contempt order compelling Oltmann to pay $1,000/day until he finally answers basic questions about his made-up story.[14]  Oltmann appealed that Order to the Tenth Circuit days before a

---

[13] *See, e.g., Coomer v. Donald J. Trump for President, Inc.*, 2024 WL 1560462 (Colo. App. 2024); *see also Coomer v. Make Your Life Epic, LLC*, 98 F.4th 1320 (10th Cir. 2024).

[14] **Exhibit 11**, *Coomer v. Make Your Life Epic LLC et. al.*, 21-cv-3440-WJM-KAS, Order Overruling Joseph Oltmann's Objections and Adopting as Modified the Magistrate Judge's Recommendation (Sep. 4, 2024).

hearing on Dr. Coomer's Motion for Order to Show Cause.  That appeal is pending before the Tenth Circuit.

25.    All of these developments affirm the importance of discovery proceeding in this case and the relevance of the discovery sought herein.

### III.    ARGUMENT

26.    This Court's orders bind the parties, but this case cannot proceed in accordance with the Case Management and Scheduling Order issued by the Court if discovery does not proceed.  Following the parties' prior Joint Motion to Modify the Case Management and Scheduling Order, Dr. Coomer's expert disclosure deadline was extended to January 14, 2025.  Doc. 156.  The delays described herein have again made the deadlines outlined in the amended Case Management and Scheduling Order untenable.

### A.    TAP must produce documents.

27.    At this juncture, it is unclear which discovery requests, if any, TAP will respond to if and when it provides responsive answers to Dr. Coomer's discovery requests.  Both Lucescu and Byrne have indicated that TAP is in possession of documents that are necessary for Dr. Coomer to produce expert disclosures, specifically financial records indicating how much revenue was generated by *The Deep Rig*, as well as corresponding data related to the number of times the film has been viewed.  Unless and until TAP produces these documents, the case remains at an impasse.  TAP has never provided any explanation for its failure or refusal to

abide by its discovery obligations in this case.  Dr. Coomer requests an order
compelling those disclosures.

**B.    Byrne must confirm a deposition date.**

28.    Despite Dr. Coomer's numerous requests over several months, Byrne
did not identify any potential deposition dates until a conferral call on the day prior
to this filing.

29.    Byrne has never provided any explanation for his lack of a response,
despite direct inquiries from Dr. Coomer's counsel on this question.  Some clue
may be gleaned from a recent filing in another defamation case filed by Hunter
Biden against Byrne and pending in the Central District of California.[15]   In that
proceeding, Byrne apparently also refused to provide deposition dates, claiming
that he had moved permanently to Dubai.[16]  Byrne's counsel allegedly asserted that
"an unidentified DEA agent" had informed Byrne that "the Venezuelan
government has placed a $25 million bounty on him"[17] and that he could not,
therefore, return to the United States for a deposition.

30.    As of this writing, it is unclear if Byrne did ultimately appear for a
deposition given that most of the recent pleadings in the *Biden* case have been filed
under seal.  In yet another defamation case filed against Byrne though, his
discovery violations have been widely reported.  In *Dominion v. Byrne*, 1:21-cv-

---

[15] *See* **Exhibit 12**, *Biden v. Byrne*, 2:23-cv-9430-SVW-PDx, Doc. 67-2, Civil Minutes – General,
p. 1 (Sept. 17, 2024).

[16] *Id.*, p. 1.

[17] *Id.*

02131-CJN (D.C. Dist. 2021), Byrne's counsel was recently disqualified after publicly sharing discovery materials produced by Dominion under seal.[18]   It remains unclear whether Byrne has yet agreed to sit for a deposition in that proceeding.

31.    While Dr. Coomer appreciates Byrne's counsel's[19] representations, this pattern of discovery obstruction by Byrne himself suggests an Order compelling a deposition by a date certain is warranted.  Dr. Coomer, therefore, requests an Order establishing March 31, 2025, as the deadline by which the parties must appear for depositions.

32.    For his part, Dr. Coomer offered a window of several weeks when he could have been free to sit for his own deposition, but Defendants did not respond to that offer.  Following a recent conferral, the parties have agreed that Dr. Coomer will be deposed in March 2025.[20]

## C.    Defendants must produce documents up to and including the present.

33.    Federal Rules of Civil Procedure 26 and 34 contain no arbitrary temporal limitation such as the date a lawsuit is filed.  Rather, requested

---

[18] *See* Alison Frankel, *Indicted pro-Trump lawyer is ousted as counsel for ex-Overstock CEO in Dominion case*, REUTERS, (Aug. 14, 2024), https://www.reuters.com/legal/government/column-indicted-pro-trump-lawyer-is-ousted-counsel-ex-overstock-ceo-dominion-2024-08-14/          . Notably, Ms. Lambert was indicted along with co-star of *The Deep Rig*, Matthew DePerno, discussed briefly below.

[19] Upon information and belief, Byrne is represented by different counsel in both the *Biden* and *Dominion* cases.

[20] Dr. Coomer has been deposed on at least five separate occasions in related proceedings and has disclosed all of those transcripts to Defendants.

documents must simply be "relevant to the claim or defense of any party."  FED. R.
CIV. P. 26(b) and FED. R. CIV. P 34.

34.    Yet, Defendants seek to impose an arbitrary deadline of the lawsuit
filing date (June 24, 2022) to preclude the discovery of relevant documents.
Ostensibly, they seek to do so by claiming the actual malice standard in this case
imposes such a cut-off.  But, Plaintiffs have found no case authority or rule that
supports an arbitrary temporal cut-off based on the filing date of the lawsuit.

35.    Actual malice "requires at a minimum that the statements were made
with reckless disregard for the truth."  *Harte-Hanks Commc'ns, Inc. v.
Connaughton*, 491 U.S. 657, 686 (1989); *Diversified Mgmt., Inc.* v. Denver Post,
Inc., 653 P.2d 1103, 1110-11 (Colo. 1982).  To prove actual malice, "the plaintiff
must demonstrate that the defendant in fact entertained serious doubts as to the
truth of the statement . . . or acted with a high degree of awareness of its probable
falsity."  *Lewis v. McGraw-Hill Broadcasting Co., Inc.*, 832 P.2d 1118, 1122-23
Colo. App. 1992).  Reckless disregard "cannot be fully encompassed in one
infallible definition" and is not limited to specific bases.  *See St. Amant v.
Thompson*, 390 U.S. 390 U.S. 727, 730 (1968).  Instead, actual malice can be
inferred from objective circumstantial evidence, which can override a defendant's
protestations of good faith. *See Brown v. Petrolite Corp.*, 965 F.2d 38, 46-47 (5th
Cir. 1992).  Circumstantial evidence of actual malice can include when a story is
fabricated by a defendant or is the product of his imagination;  when a defendant
relies on anonymous sources; when a defendant has reason to know that a source

is unreliable; when the allegations made are so inherently improbable that only a reckless person would publish them; when a defendant intentionally avoids the truth; when a defendant's allegations conform to a preconceived storyline; and when a defendant has an incentive or motive to make the defamatory statements. *See, e.g.*, *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 157-58 (1967); *St. Amant*, 390 U.S. at 732. All of these bases are present here.

36.    Byrne and Lucescu have arbitrarily decided that the cut-off date for production of responsive documents is the date on which Dr. Coomer filed his lawsuit.[21] To account for their position, Defendants have argued during conferral that only the Defendants' state of mind prior to publication is or can be at issue in a defamation case. But they have already produced documents covering a substantial period following the publication of *The Deep Rig*. That prior production demonstrates the relevance of post-publication actions, admissions, and evidence. Certainly, admissions concerning prior knowledge or events can occur at any time. For example, Byrne could have admitted to Lucescu that he failed to adequately investigate Oltmann's claim at any time before or after *The Deep Rig* was released or after this lawsuit was filed.

37.    But we need not speculate even based on the limited production to date. Byrne and Lucescu's voluntary disclosures of communications from the year following publication of *The Deep Rig* evidence the relevance of these documents.

---

[21] Given TAP's lack of any document production whatsoever, it is unclear if they have also taken this position.

For example, in one text message exchange from July 28, 2021,[22] Byrne stated to Lucescu:

> Enough missives, Steve [Lucescu].  You talk out of both sides of your mouth all the time and I don't even bother reading these long messages.  You played all kinds of games with Doug [Logan]'s appearance, lied to me that you couldn't get them out of the film, lied to us that he had been exposed the night before, lied that it was too late to get them out of the film, and then wrote a text to Roger[23] (which he passed on) when you told him just to keep holding back you almost had us talked into it.[24]

38.    This post-publication communication between Defendants speaks to Byrne's knowledge of Lucescu's prior instances of dishonesty relating to the content in *The Deep Rig*, Byrne's own efforts to control the content of *The Deep Rig*, and other potentially relevant communications with third-parties.

39.    In another post-publication communication with Byrne's assistant Faaiz Khan, Lucescu discusses his and Oltmann's efforts to improve the distribution platform for *The Deep Rig*, stating, "I need to talk to you and Joe Oltmann & finalize what our plan is today.  We need to move forward with this plan ASAP while the momentum is still building."[25]  Lucescu goes on to describe various amounts that had been paid or were due to third parties, including a reference to

---

[22] *The Deep Rig* was released roughly five weeks prior, on June 24, 2021.

[23] Roger Richards is listed as the director of *The Deep Rig*.

[24] **Exhibit 13**, p. 1, July 28, 2021 text exchange between Byrne and Lucescu

[25] **Exhibit 14**, July 7, 2021 text exchange between Lucescu and Khan.

"Plus 50K Joe Oltmann."  He states the need for a group text to allow "Patrick [Byrne] to approve."[26]

40.    In another post-publication text message to *The Deep Rig* co-star Phil Waldron, Lucescu states:

> Joe Oltmann is almost finished the new platform for distribution of the film, and the deal I am working on with The America Project includes a profit participation deal for all the subjects in the film, and I wanted to talk to you about it.  I am directing up to $100,000 to you, or your company, or a nonprofit – whatever you like.[27]

41.    In another post-publication text message with Oltmann, Lucescu complains about Byrne's efforts to claim more of *The Deep Rig*'s revenue for himself, and states "Without a doubt – Patrick Byrne has turned out to be quite the lying, dishonest, disingenuous asshole."[28]

42.    Byrne too produced relevant post-publication communications, including a text exchange with Oltmann discussing Dr. Coomer's deposition testimony in related proceeding *Coomer v. Donald J. Trump for President, Inc.*,[29] and others approving use of photos of himself and other film imagery for publicity in The New York Times Magazine.[30]

---

[26] *Id.*

[27] **Exhibit 15**, July 17, 2021 text message exchange between Lucescu and Waldron.

[28] **Exhibit 16**, July 23, 2021 text message exchange between Lucescu and Oltmann.

[29] **Exhibit 17**, September 27, 2021 text message exchange between Byrne and Oltmann.

[30] **Exhibit 18**, August 10, 2021 email exchange between Byrne, Suzanne Bisch, and Krister Geisler of the New York Times.

43.    These examples highlight the highly probative nature of post-publication documents and communications that speak to Defendants' pre-publication knowledge of one another's unreliability, the roles played by the different Defendants in determining the content of *The Deep Rig*, distribution and publicity efforts made by Defendants, the significant role played by Oltmann in assisting with *The Deep Rig*'s distribution, and the profit motives that motivated the Defendants and *The Deep Rig*'s co-stars.  The suggestion that evidence simply stopped being relevant upon the filing of Dr. Coomer's lawsuit is unsupportable.

44.    Just as importantly, Dr. Coomer has substantial concerns regarding Defendants' coordination not only with each other but with relevant third-party witnesses.   As of this filing, Dr. Coomer has not been able to schedule any third-party depositions on account of efforts to elude and obfuscate by virtually every third-party subpoena target.  At least two of those individuals, *The Deep Rig* director Roger Richards and co-star Jovan Hutton Pulitzer, cannot be located despite numerous efforts in various states by Dr. Coomer's process servers.  Two others, Phil Waldron (Waldron) and Matthew DePerno (DePerno), have refused to comply at all with the subpoenas they received.  In Waldron's case, his counsel has assured Dr. Coomer that Waldron will make an impermissible blanket invocation of the Fifth Amendment to every question posed,[31] thus rendering the entire effort

---

[31] As in Florida, blanket invocations of the Fifth Amendment are impermissible in Texas, where Waldron resides.   "A blanket refusal to answer questions at deposition on the ground that they are privileged is an improper invocation of the fifth amendment, irrespective of whether such a claim is made by a plaintiff, defendant, or a witness." *Securities and Exchange Commission v.*

a waste of time and expense. DePerno, an attorney who has been criminally indicted for matters addressed in *The Deep Rig*,[32] has stated that he will not produce any documents unless Dr. Coomer agrees to a private conversation with him.

45.    In fact, the only third-party subpoena recipient to make any meaningful effort to abide by their obligations is Jesse Binnall,[33] another co-star in *The Deep Rig* and an attorney in Virginia. Mr. Binnall produced some documents, but counsel for Byrne sent Dr. Coomer a deficiency letter demanding production of Mr. Binnall's disclosures *within hours* of their production to Dr. Coomer.[34] Counsel for Lucescu subsequently attempted to account for that telling interaction,[35] but Dr. Coomer remains deeply concerned about coordination between all Defendants and the various co-stars of *The Deep Rig* who are critical witnesses in this case.

46.    Moreover, Byrne and TAP have both persisted in publishing *The Deep Rig* even after being served with this lawsuit, including in the Middle District of

---

*First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (Fifth Cir. 1981) (*citing* Note, Plaintiff as Deponent: Invoking the Fifth Amendment, 48 U.Chi.L.Rev. 158, 164 (1981); *id*. at 161.

[32] *See* Joey Cappelletti, *Trump allies in Michigan charged with felonies involving voting machines, illegal 'testing'*, AP, (Aug. 1, 2023) https://apnews.com/article/matthew-deperno-michigan-trump-voting-machines-a58c4a58de84d432815ec1be39c19b90

[33] Mr. Binnall's law firm, the Binnall Law Group, served as counsel for Gen. Michael Flynn in related proceeding *Coomer v. Make Your Life Epic, LLC dba Thrivetime Show, et. al*.

[34] *See* **Exhibit 19**, confirming document production from Binnall to Dr. Coomer at 2:10 PM on October 14; *see also* **Exhibit 20**, deficiency notice from Byrne to Dr. Coomer at 6:31 PM on October 14; **Exhibit 21**, p. 2, citing knowledge of Binnall production.

[35] **Exhibit 5**, p. 1.

Florida.[36]  That they would do so after being presented with confirmation of its falsity and knowledge of its harmful effects is highly probative of actual malice.  In fact, Byrne has continued with publication of outright falsehoods about Dr. Coomer and his counsel almost up to the present day.  On November 14, 2024, for example, Byrne posted on X, stating, "I awoke to news that Eric Coomer (formerly the fake head technologist of Dominion) has shuttered his restaurant and left town.  His lawyer has shuttered his office as well."[37]

47.    These statements are hogwash.  In reality, Dr. Coomer had closed his restaurant long before the post in question, and both of Dr. Coomer's counsel's offices remain open at their longstanding locations.  There are no non-defamatory reasons for Byrne to be publicly discussing Dr. Coomer at all, and the inescapable implication of this post is to again falsely imply that Dr. Coomer has been engaged in some form of nefarious conduct.  For Defendants to assert that their clients' subjective knowledge of the falsity of the statements at issue in this dispute was only relevant up until the day of Dr. Coomer's Complaint is, therefore, untenable.  And, of course, the requests for production seek information well beyond just the one actual malice element of their claims.[38]

48.    This arbitrary temporal limitation should be overruled.

---

[36] **Exhibit 22.**

[37] **Exhibit 23**, Patrick Byrne, @PatrickByrne, X (Nov. 14, 2024).  This post was viewed at least 1.4 million times; liked 28,0000 times; shared 8,700 times; and commented on at least 671 times. Many of those comments, like that shown here, included calls for Dr. Coomer's execution.

[38] Currently, the Court has not ruled on the Defendants' motions to dismiss.  [Doc. 135].  The outstanding discovery requests will also, no doubt, be relevant to the inevitable defenses asserted.

**D.    Byrne and Lucescu must respond to Dr. Coomer's Deficiency
Notices.**

49.    Neither Byrne nor Lucescu has responded to discovery deficiency
notices sent by Dr. Coomer on December 12, 2024.[39]    In both instances, the
majority of deficiencies highlighted pertained to items which Defendants had
stated they "will produce" but still have not.    Dr. Coomer requests an Order
compelling responses to these notices.

## IV.    REQUEST FOR SANCTIONS AGAINST TAP

50.    Dr. Coomer seeks sanctions against TAP pursuant to Federal Rule of
Civil Procedure 37(b)(c), and (d).    TAP has refused to abide by this Court's order
denying Defendants' Motion to Stay Discovery.    TAP has not produced a single
document in response to Dr. Coomer's written discovery requests, which were
issued more than seven months ago.    TAP has refused to respond to numerous
written inquiries on the matter.    When TAP finally did respond, it promised to
produce documents and then never followed through.

51.    The documents in TAP's possession are uniquely significant to this
case.  Their non-disclosure has required multiple delays in this proceeding and will
now require at least one more given that Dr. Coomer's current expert disclosure
deadline is once again untenable.

52.    TAP's refusals to even acknowledge many of Dr. Coomer's
communications, and to falsely assure compliance but then fail to follow through,

---

[39] **Exhibits 6-7**.

warrant an award of sanctions.  Dr. Coomer, therefore, requests an order granting him fees and costs associated with the filing of this Motion.

### V.  CONCLUSION

53.    For the reasons stated herein, Plaintiff Eric Coomer, Ph.D. requests an order affirming that all Defendants must produce documents responsive to his written discovery requests up to and including the present day (along with a corresponding duty to supplement).  Dr. Coomer further requests an order compelling party depositions be completed no later than March 31, 2025.  Dr. Coomer requests the Court compel disclosure of all discoverable documents within ten days of the issuance of its order and overrule the litany of asserted objections. Dr. Coomer seeks an order awarding fees and costs associated with this Motion against Defendant TAP.  Finally, Dr. Coomer seeks such other and further relief to which he may be justly entitled.

Respectfully submitted this 31st day of December 2024.

_____*/s/ Bradley A. Kloewer*_____

Charles J. Cain*
ccain@cstrial.com
Bradley A. Kloewer*
bkloewer@cstrial.com

**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)
*Appearing via Special Admission
**ATTORNEYS FOR PLAINTIFF**

## Local Rule 3.01(g) Certification

Counsel for Movant certifies:

a.      Plaintiff has conferred with Defendants regarding the relief requested herein;

b.      Defendants are opposed to the relief requested in this Motion; and

c.      Conferral regarding the relief requested herein was via both email correspondence and a telephone conference call between counsel for all parties.

## Additional Conferral Statement

Prior to a conferral call on December 30, 2024, Defendants had refused to provide deposition dates despite multiple requests from Plaintiff over several months.  During conferral, the parties agreed on deposition dates for Defendants Steven Lucescu and The America Project, Inc. on February 18 and 20, 2025. Counsel for Defendant Patrick Byrne indicated he would check with his client on proposed dates in March 2025.

Defendant The America Project, Inc. indicated that it would produce documents at some date in the future, but as discussed herein, similar assurances have previously been made that it did not ultimately meet.

Defendants oppose the remaining relief requested herein.