**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,
    Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,
    Defendants

---

**EXHIBIT 18**

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-3440-WJM-KAS

ERIC COOMER, Ph.D.,

    Plaintiff,

v.

MAKE YOUR LIFE EPIC LLC, doing business as ThriveTime Show,
CLAYTON THOMAS CLARK, individually, and
REOPEN AMERICA LLC, doing business as ReAwaken America Tour,

    Defendants.

---

## ORDER GRANTING MOTION TO AMEND

---

Before the Court is Plaintiff Dr. Eric Coomer's Motion to Leave to File Second Amendment Complaint ("Motion") (ECF No. 161).  Defendants Make Your Life Epic, doing business as ThriveTime Show, Clayton Thomas Clark, and Reopen America LLC, doing business as ReAwaken America Tour (collectively, "Defendants"), have filed no opposition brief, despite the Court's Order directing them to do so.  (ECF No. 163.)

For the following reasons, the Court grants the Motion.

### I.    GENERAL BACKGROUND

The parties are familiar with the underlying facts of this case by way of, among other sources, the Court's Order denying Defendants' special motion to dismiss and motion to strike (ECF No. 45), the Tenth Circuit's opinion dismissing Defendants' appeal of that Order (ECF No. 131), and Magistrate Judge Kathryn A. Starnella's civil contempt recommendation (ECF No. 144).  The Court incorporates that pertinent background here.

## II.     ANALYSIS

Coomer seeks leave to file a second amended complaint to add a claim for exemplary damages. (ECF No. 161 at 2.) In support, he points to allegedly defamatory statements published by Defendants after the filing of his original and first amended complaints, which he says satisfy the exemplary damages standard in section 13-21-102(1)(a), C.R.S. (2024), and demonstrate actual malice. (*Id.*) The Court will permit Coomer to file a second amended complaint.

Where a party seeks to amend a pleading after the deadline set forth in the Scheduling Order, the party must ordinarily satisfy the requirements of Rule 15(a)(2) and Rule 16(b)(4) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Rule 16(b)(4) requires the party to show good cause to amend the pleading. *Id.* Rule 15(a) favors allowing amendment so long as the moving party has shown, among other things, that the amendment would not cause undue delay, undue prejudice to the opposing party, and that it is not sought because of bad faith or dilatory motive. *Id.* at 1242; *Pumpco Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001).

But Rules 16 and 15 do not apply where, as here, a party seeks to amend their complaint to add an exemplary damages claim. In such circumstances, the moving party must instead satisfy the requirements of section 13-21-102. *See Wollam v. Wright Med. Grp., Inc.*, 2012 WL 4510695, at *9 (D. Colo. Sept. 30, 2012) (applying section 13-21-102 to a motion to amend to add an exemplary damages claim); *Coomer v. Lindell*, 2023 WL 6376723, at *1 (D. Colo. July 7, 2023) (allowing Coomer to amend his

Case 8:24-cv-00008-TPB-SPF   Document 173-18   Filed 01/10/25   Page 4 of 9 PageID
1110
Case No. 1:21-cv-03440-WJM-KAS   Document 174   filed 09/19/24   USDC Colorado   pg 3 of 8

complaint to add an exemplary damages claim). Under section 13-21-102, a plaintiff cannot move for exemplary damages in the initial pleading but may seek to amend the complaint to add such a claim "only after the exchange of initial disclosures pursuant to rule 26 of the Colorado rules of civil procedure" and if they establish prima facie proof of a triable issue. *See* § 13-21-102(1.5)(a). "Prima facie evidence is evidence that, unless rebutted, is sufficient to establish a fact." *Stamp*, 172 P.3d at 449. Such proof is established by showing "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Id.* (quoting *Leidhold v. Dist. Ct.*, 619 P.2d 768, 771 n.3 (Colo. 1980)).

Section 13-21-102 provides that an award of exemplary damages is permissible if "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." § 13-21-102(1)(a). "'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." § 13-21-102(1)(b). The purpose of a punitive damages award is to punish the wrongdoer, not to compensate for injuries. *See Lira v. Shelter Ins. Co.*, 913 P.2d 514, 517 (Colo. 1996).

Relatedly, a plaintiff cannot be awarded exemplary damages in a defamation case unless they demonstrate actual malice by the defendant. *Hendrickson v. Doyle*, 2015 WL 2106225, at *3 (D. Colo. May 4, 2015); *Roberts v. Benson*, 2023 WL 2813273, at *3 (D. Colo. Apr. 5, 2023) ("[A]wards of punitive damages in defamation cases are not available unless the plaintiff is able to satisfy the stringent requirement of actual malice."). Actual malice "requires at a minimum that the statements were made with

3

reckless disregard for the truth." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989).  To prove actual malice, "the plaintiff must demonstrate that the defendant in fact entertained serious doubts as to the truth of the statement . . . or acted with a high degree of awareness of its probable falsity." *Lewis v. McGraw-Hill Broad. Co., Inc.*, 832 P.2d 1118, 1122–23 (Colo. App. 1992).  Reckless disregard "cannot be fully encompassed in one infallible definition" and is not limited to specific bases. *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968).  Instead, actual malice can be inferred from objective circumstantial evidence, which can override a defendant's protestations of good faith.  *Brown v. Petrolite Corp.*, 965 F.2d 38, 46-47 (5th Cir. 1992).

Similar to the requirements of Rule 15(a), a court may deny a motion to amend to add an exemplary damages claim because of delay, bad faith, undue expense, or other demonstrable prejudice.  *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007).

Applying these principles, the Court concludes that Coomer has asserted prima facie evidence showing that Defendants published statements that were made willfully and wantonly, *see* § 13-21-102(1)(a), and with actual malice.  In particular, the Court observes Coomer's averments that, after he filed his complaint and first amended complaint:

- Defendants invited non-party Joe Oltmann onstage at the ReAwaken American Tour, where Clark introduced Oltmann as "exposing the corruption of Dominion, of Eric Coomer, of election fraud."  (ECF No. 161 at 4.)
- At Defendants' Tour, "Oltmann took credit for being the origin of the Dominion Voting Systems conspiracy theory and continued tying Dr.

4

Coomer into his false claims of election fraud, stating, 'And so when I stepped out and talked about the fateful call that Eric Coomer was on where he said don't worry about the election, Trump won't win, I made sure of it.'" (*Id.*)

- Clark discussed Coomer on Oltmann's podcast, acknowledging that Coomer's claim "is that the ReAwaken America Tour provided a platform to allow [Oltmann], Lindell, and others to share information that would have defamed him." (*Id.* at 5.) In response, Oltmann described Coomer as "evil personified." (*Id.*)

- Clark remarked that he, "Mike Lindell," Oltmann, and the "Trump Administration" are being sued by Coomer for defamation and that Clark said, "I kind of wear it as a badge of honor." (*Id.* at 5.)

- Clark claimed on Oltmann's podcast that Coomer simply being himself "is what's defaming [him]. It's called a reputation." (*Id.*)

- When told during his deposition that Oltmann "published a photo of Dr. Coomer's home alongside commentary encouraging his followers to 'blow this shit up,'" Clark attested "that he would not have continued to invite Oltmann on the ReAwaken America Tour if he had known." (*Id.* at 6.)

- Clark read the allegations contained in the complaint, yet "spent several months" trying to profit off this lawsuit. (*Id.* at 7.)

- Clark said that the idea of being sued by Coomer would be "exciting," and Clark's wife "confirmed that Clark knew Defendants would get sued prior to the filing of [Coomer's] Complaint." (*Id.*)

5

In sum, Coomer contends that

> Clay Clark's testimony confirmed that he (1) never attempted to contact either Dr. Coomer or Dominion Voting Systems to corroborate Oltmann's claims, (2) never conducted any investigation into the underlying bases for Oltmann's claims, such as basic inquiry into circumstances surrounding the supposed "antifa call," (3) had a preconceived narrative that the 2020 election would be rigged against former President Trump, (4) had political motives to claim the 2020 election was rigged, (5) disregarded reliable sources confirming that the 2020 election was not rigged, (6) had no working theory into the inherently implausible suggestion that a single person could rig the entire presidential election, and through all of this conduct, (7) willfully avoided the truth.

(*Id.* at 8–9.)

In the Court's view, these allegations show that, after Coomer filed his complaints, Defendants continued to publish allegedly defamatory statements through Clark and Oltmann, which they "must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." § 13-21-102(1)(b). That is, Defendants published these statements willfully and wantonly. *Id.*

The Court likewise finds that these allegedly defamatory statements meet the actual malice standard. As the Court explained in its Order denying Defendants' motion to dismiss, "[t]here is substantial circumstantial evidence" from the above statements "that Defendants acted with reckless disregard for the truth." (ECF No. 45 at 19.) For example, Coomer alleges that Defendants allowed Oltmann to spread defamatory lies about Coomer rigging the 2020 election on various platforms—including their tour—without first reaching out to Coomer to verify the statements. (*See* ECF No. 161 at 6 (alleging that Defendants failed to "investigate or corroborate").) "[F]ailure to pursue the

6

most obvious available sources of possible corroboration or refutation may clearly and convincingly evidence a reckless disregard for the truth." *Kuhn v. Tribune-Republican Publ'g Co.*, 637 P.2d 315, 319 (Colo. 1981). Thus, because Coomer has alleged facts sufficient to establish the willful and wanton and actual malice standards, the Court will allow Coomer to amend his complaint to add the exemplary damages claim.

Notably, although Coomer tells the Court that his Motion is opposed, the Court has no way of knowing this since Defendants filed no response. (ECF No. 161 at 1 ("Defendants oppose the relief requested in this Motion.").) As a result, the Court will construe the Motion and the corresponding findings herein as uncontested. *See Clay v. United Parcel Service, Inc.*, 599 Fed. Appx. 334, 335 (10th Cir. 2015) (discerning no error in district court's finding that motion was uncontested where no timely reply was filed).

Accordingly, the Court will not go out of its way to imagine what prejudice Defendants may sustain by the amendment, *see Stamp*, 172 P.3d at 449—instead, like another district court in this jurisdiction has observed, the Court finds that the "exemplary damages cannot be a surprise to Defendants, given the subject matter, tone, and tenor of this action to date." *Coomer*, 2023 WL 6376723, at *1.

### III.   CONCLUSION

For all these reasons, the Court ORDERS:

1. Coomer's Motion (ECF No. 161) is GRANTED;
2. The Clerk of Court shall docket the proposed Second Amended Complaint as a separate docket entry; and

3. Defendants shall answer the Second Amended Complaint no later than **October 11, 2024**.

Dated this 19th day of September, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge