UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC COOMER, Ph.D.,

      Plaintiff,

v.                                                                      Case No. 8:24-cv-8-TPB-SPF

PATRICK BYRNE, STEVEN LUCESCU,
and THE AMERICA PROJECT, INC.,

      Defendants.

_____/

## ORDER

Before the Court is Plaintiff's Motion to Compel and for Sanctions (Doc. 170). Defendants Patrick Byrne ("Byrne"), Steven Lucescu ("Lucescu"), and The America Project, Inc. ("TAP") filed responses in opposition to the motion (Docs. 174, 180, 181). Upon review of the filings, the Court finds that Plaintiff's Motion should be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This is one of many cases arising from the aftermath of the 2020 presidential election, and specifically from allegations regarding voting services provided by Dominion Voting Systems ("Dominion"). Plaintiff is the former director of product strategy and security for Dominion (Doc. 197 at ¶ 1). Defendant Byrne served as the Chairman of the Board for Defendant TAP and is credited as a producer of a film about the 2020 election entitled "The Deep Rig" (the "Film") (*Id.* at ¶¶ 10, 14). Defendant Lucescu is also a producer of the Film (*Id.* at ¶ 11). Defendant TAP owns the copyright for the Film and has been the recipient of at least a portion of its profits (*Id.* at ¶ 12).

"The Deep Rig" is styled as a documentary and purports to expose a number of ways that the 2020 election was fraudulently influenced to ensure the election of President Joseph Biden, though each theory features some element casting doubt on the reliability of voting machines manufactured by Dominion (*Id.* at ¶¶ 3, 119). Plaintiff alleges that various allegations in the Film about him and Dominion have been debunked and are provably false. As a result of these false claims, Plaintiff has received countless credible death threats, has suffered from severe emotional distress, and has suffered harm to his reputation, privacy, safety, and earnings (*Id.* at ¶¶ 131, 137). As a result, Plaintiff initiated this action.

Plaintiff initially filed this action in the District of Colorado (Doc. 1). The parties then jointly requested that the Court stay discovery pursuant to Colorado's Anti-SLAPP statute (Doc. 48). *See* C.R.S. § 13-20-1101(6) ("All discovery proceedings in the action are stayed upon a filing of a notice of motion made pursuant to this section. The stay of discovery remains in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subsection (6)."). At the same time, Plaintiff moved for limited, expedited discovery to aid in his response to Defendants' special motions to dismiss (Doc. 33). The court stayed discovery pending resolution of Defendants' 12(b) motions to dismiss, and stated that, "should the case proceed, and should Defendants choose to renew their special motions to dismiss arguing the anti-SLAPP issues, the Court will convene a status conference to set a limited discovery schedule." (Doc. 79). In its analysis, the court explicitly stated that it was "this Court's intent to GRANT Plaintiff limited discovery" should the need arise, but it would "hold that matter in abeyance pending resolution of the Rule 12(b) issues, particularly the matter of whether this Court has personal jurisdiction over Defendants." (*Id.*).

2

The Colorado District Court ultimately found that it lacked personal jurisdiction over Defendants and transferred the case to the Middle District of Florida pursuant to 28 U.S.C. § 1631 (Doc. 97). After the case was transferred, Defendants filed their Joint Motion to Continue Stay of Discovery (Doc. 127), arguing that the discovery stay has never been lifted and should remain in place. Shortly thereafter, Plaintiff filed his Motion to Affirm Contingent Order Granting Expedited Discovery in Aid of Response to Defendants' Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101 (Doc. 131). On July 31, 2024, this Court denied Defendants' motion, finding the discovery stay provisions of Colorado's anti-SLAPP statute inapplicable in this action, thus rendering Plaintiff's motion moot (Doc. 150).

In the meantime, while the parties were awaiting rulings on their discovery motions, Plaintiff proceeded with serving Interrogatories and Requests for Production on Defendants. On June 17, 2024, Defendants responded and objected to the Requests on the basis that the District of Colorado's stay order was still in effect. After this Court denied Defendants' motion, Defendants served supplemental responses to Plaintiff's discovery requests that provided substantive answers, but did not produce responsive documents with the supplemental responses. The parties then engaged in various conferrals regarding search terms and ESI protocol. In one such conferral, counsel for Defendant Lucescu sent a list of proposed search terms to Plaintiff (Doc. 170-4). Under the list of search terms, counsel stated that the proposed date range for his searches would be September 1, 2020 through December 30, 2021 (*Id.*). Counsel for TAP then stated that he would use the search terms, except his date range would be April 12, 2021 through June 24, 2022. Plaintiff's counsel responded to this correspondence by stating "[t]hose terms work for us, so long as they're not used as a substitute for the plain language of the requests themselves." (*Id.*). In separate

correspondence regarding the ESI protocol, Defendants noted their objection to Plaintiff's

timeframe for responsive documents, and adjusted the relevant timeframe for each

Defendant.

After the Court granted the parties' joint motion for a stipulated protective order,

Defendants Lucescu and Byrne produced documents responsive to Plaintiff's requests.

Plaintiff then sent letters to counsel for Lucescu and Byrne identifying deficiencies in their

production (Docs. 170-6, 170-7).  These notices reiterated Plaintiff's objection to Defendants'

timeframe for responsive documents.  In addition, at the time Plaintiff filed his motion,

Defendant TAP had not produced any documents.  Now, Plaintiff brings a motion to compel,

requesting the Court enter an order: (1) requiring Defendants' depositions to be completed

before March 31, 2025; (2) compelling Defendant TAP to produce documents; (3) declaring

that the relevant timeframe for document production extends to the present; (4) compelling

Defendants Byrne and Lucescu to respond to his discovery deficiency notices; and (5)

awarding Plaintiff attorney's fees and costs incurred in bringing this motion to compel.

## ANALYSIS

Motions to compel discovery are committed to the sound discretion of the trial court.

*See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).  Discovery under

the Federal Rules is governed by the principle of proportionality.  Federal Rule of Civil

Procedure 26(b)(1) defines the scope of discoverability as follows:

> Parties may obtain discovery regarding any nonprivileged matter that
> is relevant to any party's claim or defense and proportional to the needs of the
> case, considering the importance of the issues at stake in the action, the amount
> in controversy, the parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  The proponent of a motion to compel discovery bears the initial

burden of proving that the information sought is relevant. *Moore v. Lender Processing Servs. Inc.*,

No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013). "A party resisting

discovery must establish 'lack of relevancy or undue burden in supplying the requested

information.'" *Craig v. Kropp*, No. 2:17-cv-180-FtM-99CM, 2018 WL 1121924, at *3 (M.D.

Fla. Mar. 1, 2018) (quoting *Gober v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000)).

## I.    Deposition Deadline

Plaintiff's motion first requests an order compelling party depositions to be completed

no later than March 31, 2025. Plaintiff's motion makes clear, however, that Lucescu and

TAP agreed to deposition dates in February 2025 even before Plaintiff filed his motion. And

Byrne represents that the parties remain actively engaged in efforts to confirm a date and time

for his deposition. Moreover, after Plaintiff filed his motion, the Court extended the discovery

deadline to July 14, 2025 (Doc. 178). As a result, and because this date has now passed, the

Court sees no reason to order party depositions to be completed in this timeframe.

## II.    Temporal Scope of Discovery

The parties also dispute the temporal scope of discovery in this matter, with Plaintiff

arguing that the relevant period should extend to the present. Defendants respond that

discovery should be limited to the date Plaintiff filed his complaint. In support, Defendants

state that Plaintiff agreed to their proposed temporal limitations and, relying on *Edward Lewis*

*Tobinick, MD v. Novella*, 848 F.3d 935, 947 (11th Cir. 2017), that Eleventh Circuit precedent

has rejected the use of post-publication information in defamation cases. First, the Court does

not find that Plaintiff's email specifically agreeing to Defendants' proposed search terms

establishes that Plaintiff also agreed to Defendants' proposed temporal limitations. This is

particularly true considering Plaintiff's representation that Defendants were already aware

that Plaintiff objected to Defendants' proposed date ranges.

Moreover, the Court is not persuaded that the *Novella* case stands for the broad proposition suggested by Defendants, namely, that post-publication information is never relevant in defamation cases. In *Novella*, the Court found that the defendant's communications with third parties made after the publication of the disputed article did not speak to the defendant's knowledge of the accuracy of statements made in his articles. *Id.* at 947. While the relevant inquiry in defamation cases concerns what a defendant knew or did not know at the time of publication, there is no bright line rule holding that discovery of post-publication materials cannot shed light on what a defendant knew at the time of publication. Indeed, many federal courts have found post-publication evidence relevant in defamation cases. *See, e.g.*, *Gilmore v. Jones*, No. 3:18-cv-17, 2021 WL 68684, at *6 (W.D. Va. Jan. 8, 2021) ("Contrary to Defendants' position, however, courts have not strictly limited evidence relevant to the defendant's state of mind to that which *existed* prior to or at the time of publication. While evidence that the publisher had not yet obtained at the time of publication could not be relevant to his state of mind, materials that post-date publication (including, for example, the publisher's own statements) may be probative of actual malice."); *Stern v. Cosby*, 645 F. Supp. 2d 258, 279–80 (S.D.N.Y. 2009) (noting on summary judgment that the defendant's trip to the Bahamas, taken after the plaintiff filed his defamation suit, where she met her sources and offered to pay them to sign affidavits supporting the allegations in her book was probative of actual malice); *see also Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) (stating that the "existence of actual malice may be shown in many ways," including by circumstantial evidence of "subsequent statements of the defendant") (quoting Am. Jur. 2d, Libel and Slander § 260 (1955)).

Notwithstanding the foregoing, while post-publication materials may be relevant to a defamation claim, the Court finds that allowing discovery to continue for nearly three years after the date Plaintiff filed his Complaint is not proportional to the needs of this case. As a result, the Court finds that the proper temporal scope of discovery in this matter is November 1, 2020 through June 24, 2023 (one year after Plaintiff filed his Complaint). *See Medical Props. Tr., Inc. v. Viceroy Research*, No. 2:23-cv-498-RDP, 2024 WL 150502, at *5 (N.D. Ala. Jan. 12, 2024) (information requested in defamation case was "proportional to the needs of the case, as it only requests correspondence within the past three years"); *cf. Larweth v. Magellan Health, Inc.*, No. 6:18-cv-823-Orl-41DCI, 2019 WL 11866498, at *12 (M.D. Fla. July 16, 2019) (modifying temporal scope of subpoena in defamation action to "December 2017 to the present," a period of time that encompassed at least one year after allegedly defamatory statements were made).

As a result, Plaintiff's request that Defendants produce documents up to and including the present is granted in part and denied in part.

### III. TAP's Production of Documents

Next, Plaintiff moves to compel Defendant TAP to produce documents responsive to its Requests for Production. TAP represents that it completed its production on January 14, 2025. As a result, Plaintiff's motion to compel TAP to produce documents is denied as moot.

### IV. Discovery Deficiency Notices

Finally, Plaintiff moves to compel Defendants Byrne and Lucescu to respond to his December 12, 2024 discovery deficiency notices. Defendant Byrne represents that he and Plaintiff met and conferred on the matters raised in the discovery deficiency notice on January 6, 2025. Similarly, Defendant Lucescu represents that he and Plaintiff met and conferred on

the matters raised in the discovery deficiency notice on January 3, 2025. As a result, Plaintiff's

request to compel Defendants Byrne and Lucescu to respond to his discovery deficiency

notices is denied as moot.

## V.    Attorney's Fees

Plaintiff requests sanctions against TAP in the form of costs and attorney's fees

associated with bringing and defending the Motion to Compel while Defendant Lucescu

requests costs and attorney's fees incurred defending the Motion to Compel (Doc. 170 at 19–

20; Doc. 174 at 10). Federal Rule of Civil Procedure 37(a)(5)(A) provides that if a motion to

compel discovery is granted, or the requested discovery is provided after filing, "the court

must, after giving an opportunity to be heard, require the party ... whose conduct necessitated

the motion, the party or attorney advising that conduct, or both to pay the movant's

reasonable expenses incurred in making the motion, including attorney's fees." [1] A court will

not order this payment where: "(i) the movant filed the motion before attempting in good

faith to obtain the disclosure or discovery without court action; (ii) the opposing party's

nondisclosure, response, or objection was substantially justified; or (iii) other circumstances

make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). A party's objections to

discovery are substantially justified if "reasonable people could differ as to the appropriateness

of the contested action." *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir.

1997) (citation omitted).

---

[1] Similarly, Rule 37(a)(5)(B) provides for an award of attorney's fees to the party opposing the
motion if the motion is denied.

Plaintiff's Request for Sanctions Against TAP

Plaintiff requests sanctions against TAP as a result of TAP's failure to produce responsive documents.   As stated above, TAP produced documents after Plaintiff filed his motion to compel.   Thus, Plaintiff is entitled to an award of attorney's fees unless TAP can establish that Plaintiff filed his motion before attempting in good faith to obtain the disclosure without court intervention, TAP's delay in production was substantially justified, or other circumstances make an award of expenses unjust.

TAP first argues that its delay in production was substantially justified because it engaged in exhaustive efforts to obtain and review all potentially responsive documents.   It represents that its e-discovery vendors harvested 114,983 documents to search, which was then reduced to 2,072 documents per application of the agreed-upon search terms.   TAP also represents that it began this effort after the parties agreed to search terms on September 24, 2024.   Ultimately, TAP produced twenty-one documents totaling sixty pages on January 14, 2025.   The Court is not persuaded that three months is reasonable for the review of 2,072 documents in these circumstances.   As a result, the Court does not find that TAP has established that its delay in production was substantially justified.

TAP also argues that other circumstances make an award of expenses unjust because any delay in production has not prejudiced Plaintiff because this case is still in its early stages. The Court does not find that this renders an award of expenses unjust in these circumstances. Notably, TAP provided its supplemental discovery responses on September 12, 2024 (Doc. 170-3).  Plaintiff sent inquiries to TAP on the status of its document production on September 13, 2024; October 11, 2024; November 14, 2024; and November 25, 2024 (Doc. 170-8).  TAP failed to respond to these inquiries (*Id.*; Doc. 170 at ¶ 19).  After another inquiry on December

11, 2024, TAP represented that its production was almost ready and that it should be able to

produce documents by December 20, 2024 (Doc. 170-8; Doc. 170-9). TAP then failed to do

so and failed to contact Plaintiff to provide an updated estimate on its production (Doc. 170

at ¶ 20). Indeed, TAP apparently failed to commit to a production date during the parties'

conferral on this motion to compel (Doc. 170 at 21).

Considering the foregoing, TAP shall pay Plaintiff's reasonable expenses incurred in

drafting the portion of the motion to compel directed at TAP's failure to produce documents.

<u>Lucescu's Request for Sanctions Against Plaintiff</u>

Lucescu argues that the Court should award him costs for the time and effort required

to defend against Plaintiff's motion to compel because Plaintiff made two misrepresentations

about Lucescu in his Local Rule 3.01(g) certification: (1) that Lucescu failed to provide a

deposition date before the parties' December 30, 2024 conferral call; and (2) that the parties

had conferred about the discovery deficiency notice. Plaintiff's 3.01(g) certification states the

following:

**Local Rule 3.01(g) Certification**

Counsel for Movant certifies:

a. Plaintiff has conferred with Defendants regarding the relief requested herein;

b. Defendants are opposed to the relief requested in this Motion; and

c. Conferral regarding the relief requested herein was via both email
correspondence and a telephone conference call between counsel for all parties.

**Additional Conferral Statement**

Prior to a conferral call on December 30, 2024, Defendants had refused to
provide deposition dates despite multiple requests from Plaintiff over several
months. During conferral, the parties agreed on deposition dates for
Defendants Steven Lucescu and The America Project, Inc. on February 18 and

20, 2025.  Counsel for Defendant Patrick Byrne indicated he would check with his client on proposed dates in March 2025.

Defendant The America Project, Inc. indicated that it would produce documents at some date in the future, but as discussed herein, similar assurances have previously been made that it did not ultimately meet.

Defendants oppose the remaining relief requested herein.

(Doc. 170 at 21).

With respect to the first alleged misrepresentation, Lucescu attaches email correspondence clarifying that he provided deposition dates on December 28, 2024—two days before the date listed in Plaintiff's certification (Doc. 174-7).  Plaintiff's counsel responded:

> [I]f you'd like me to clarify for the Court that actually, on December 28, upon receipt of a conferral email on a motion to compel, and after refusing to respond to numerous requests over several months on October 11, October 22, November 14, November 25, December 9, and December 11, Lucescu finally suggested for the first time a two-week window at the very tail end of the date range proposed, I'm happy to do that.

(*Id.*).  The Court finds that Plaintiff's "misrepresentation" of the date that Lucescu provided deposition dates does not warrant monetary sanctions.  First, the Court notes that Lucescu does not identify any legal basis for an award of costs.  Notably, Plaintiff did not move to compel Lucescu's deposition date, so the fee-shifting provisions of Rule 37 do not apply.  Moreover, the two-day error in the certification does not amount to the type of vexatious, bad-faith conduct warranting sanctions under the Court's inherent power or 28 U.S.C. § 1927.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (explaining that a court has inherent power to award attorney's fees to a party whose litigation efforts directly benefit others, to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons); *Amlong & Amlong, P.A. v. Denny's,*

*Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (to award fees under 28 U.S.C. § 1927, the attorney

must engage in "unreasonable and vexatious" conduct that "multiplies the proceedings").

The Court also declines to award fees regarding the lack of conferral over the discovery

deficiency notice.    While the Court takes the issue of misrepresentations in 3.01(g)

certifications seriously,[2] the parties engaged in a proper, substantive conferral on all other

issues raised in Plaintiff's motion.    And while the issue was rendered moot by the parties'

subsequent conferral, the Court notes that fees for compelling Lucescu to respond to a

discovery deficiency letter would not have been available under Rule 37.    In particular, Rule

37 motions to compel are appropriate when: (1) a party fails to answer a question during a

deposition; (2) a corporation fails to make a designation under Rule 30(b)(6) or Rule 31(a)(4);

(3) a party fails to answer an interrogatory; or (4) a party fails to produce documents, respond

that inspection will be permitted, or fails to permit inspection.  Fed. R. Civ. P. 37(a)(3)(B)(i)–

(iv).  And once again, the Court does not find that this amounts to the type of vexatious, bad-

faith conduct mandating sanctions under the Court's inherent power or 28 U.S.C. § 1927.

Nonetheless, the Court cautions Plaintiff that further inaccuracies in his 3.01(g) certifications

may result in sanctions.

Accordingly, it is hereby **ORDERED**:

(1) Plaintiff's Motion to Compel and for Sanctions (Doc. 170) is **GRANTED in part
and DENIED in part** as follows:

---

[2] *See, e.g.*, *Powell v. Morgan Prop. Sols.*, No. 6:18-cv-624-Orl-41LRH, 2020 WL 11362249, at *6 (M.D. Fla. June 30, 2020) (recommending the Court order the defendant's counsel to show cause why he should not be sanctioned for misrepresentations in his Local Rule 3.01(g) certification); *In re Wersant*, No. 6:23-cv-1293-RBD-EJK, 2024 WL 3757867, at *4 (M.D. Fla. June 28, 2024) (grievance committee recommending attorney be sanctioned for, among other issues, failure to accurately represent opposing counsel's positions on motions pursuant to Local Rule 3.01(g)).

a.  Plaintiff's request that the Court compel party depositions to be completed no later than March 31, 2025 is denied.

b.  Plaintiff's request that Defendants produce documents up to and including the present is granted in part and denied in part to the extent that Defendants shall produce documents up to and including June 24, 2023.

c.  Plaintiff's request to compel Defendants Byrne and Lucescu to respond to his discovery deficiency notices is denied as moot.

d.  Plaintiff's request for sanctions against TAP is granted.  TAP shall pay Plaintiff's reasonable expenses, including attorney's fees, incurred in preparing the portion of the Motion to Compel related to TAP's failure to produce documents.

e.  Plaintiff's motion is otherwise denied.

**ORDERED** in Tampa, Florida, April 28, 2025.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE