UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC COOMER,

    Plaintiff,

v.                                           Case No. 8:24-cv-8-TPB-SPF

PATRICK BYRNE, STEVEN
LUCESCU, and THE AMERICA
PROJECT, INC.,

    Defendants.
_____/

## ORDER DENYING MOTION TO APPEAR *PRO HAC VICE*

This matter is before the Court on Stefanie Lambert Junttila's "Motion for Special Admission," as counsel for Defendant Patrick Byrne, filed on February 18, 2025. (Doc. 187). Plaintiff filed a response in opposition on March 4, 2025. (Doc. 195). The court held a hearing on the matter on April 23, 2025. (Doc. 212). Based on the motion, response, related filings by the parties,[1] argument of counsel, the court file, and the record, the Court finds as follows:

### Background

Plaintiff Eric Coomer has sued Defendants Patrick Byrne, Steven Lucescu, and The America Project, Inc., alleging that Defendants produced and distributed a film titled *The Deep Rig* that falsely accused Coomer of involvement in an effort to "rig" the

---

[1] Coomer's arguments in opposition to Lambert's request for *pro hac vice* admission (Doc. 195, 197 pages including exhibits) repeat arguments he made earlier in a motion for a protective order relating to Lambert's attempt to participate in depositions. *See* (Doc. 190, 196 pages including exhibits). Lambert's response to the motion for protective order includes arguments relating to her *pro hac vice* admission. *See* (Doc. 192-1).

2020 Presidential election. Coomer's second amended complaint asserts counts for defamation, intentional infliction of emotional distress, and conspiracy.

Defendant Patrick Byrne is presently represented by Robert Driscoll and Alfred Carry, who filed notices of appearance on July 21, 2022. Stefanie Lambert Junttila ("Lambert") has moved for admission *pro hac vice* as counsel for Defendant Patrick Byrne. Coomer opposes her admission based on various grounds including allegations and findings of improper conduct in other jurisdictions and pending criminal charges in Michigan. Coomer asserts Lambert may engage in similar conduct in this case or may be prevented from participating in the case due to her involvement in these other matters. Alternatively, Coomer requests that, if Lambert is allowed to represent Byrne, then Byrne be required to also retain local counsel who can fully participate in the case and proceed with the case if Lambert finds herself unable to participate in the future.

## Analysis

Federal district courts have wide discretion in granting admission to practice *pro hac vice*. *E.g., Daniel v. Navient Sols., LLC*, No. 8:17-cv-2503-T-24JSS, 2018 WL 4575038, at *1 (M.D. Fla. Sept. 24, 2018). But there are limits to a court's discretion to deny admission based on ethical violations. *See Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1558-62 (11th Cir. 1997). First, as a matter of procedure, the court must give the petitioning attorney notice of the alleged violations and set a hearing to provide the petitioning attorney with an opportunity to defend herself. *Id*. Second, in order to deny *pro hac vice* admission, the district court must find that the attorney violated a specific rule or rules governing professional conduct, and that the violation was "of such a nature

as to justify disbarment." *Id.*; *see also P.G. Oil Corp. v. Motiva Enterp., LLC*, 397 F. Supp. 2d 1359, 1361-64 (S.D. Fla. 2005).

Coomer argues that Lambert should be denied admission on several grounds. First, she presently faces pending criminal charges in two Michigan criminal cases alleging she improperly accessed voting equipment. Trial in one of the cases has been set for July. At present, these charges are merely allegations, which the state must prove beyond a reasonable doubt. Unless and until that happens, they do not constitute a basis to deny Lambert admission.

Coomer argues that a special master appointed by the Pennsylvania Supreme Court in *County of Fulton v. Sec. of Commonwealth*, 292 A.3d 974, 999-1000 (2023), denied Lambert *pro hac vice* admission because she failed to disclose two Michigan disciplinary matters. However, the special master in that case denied Lambert admission based on a failure to meet procedural requirements, not based on any non-disclosure. *Id.* at 999, 1041-43. The Pennsylvania Supreme Court suggested in dictum that the special master could also have denied Lambert admission based on the alleged non-disclosure of other disciplinary proceedings. *Id.* at 999. Lambert, however, has provided evidence – which Coomer does not dispute – that the Pennsylvania court was simply incorrect because she did disclose the other disciplinary matters in her application for admission. *See* (Doc. 192-8).[2]

---

[2] One of those matters involved an award of fees against Lambert by a district court that was later reversed by the Sixth Circuit, and the other was a related Michigan Bar proceeding that was later dismissed with prejudice. *See King v. Whitmer*, 71 F.4th 511, 533 (6th Cir. 2023); (Doc. 192-7).

None of the foregoing provides a basis to deny Lambert *pro hac vice* admission. However, the findings of both the magistrate judge and district court in *US Dominion, Inc. v. Byrne*, No. 1:21-cv-02131-CJN-MAU, 2024 WL 3792654 (D.D.C. Aug. 13, 2024), are more problematic and must be carefully evaluated.

Initially, it should be noted that the *Dominion* case involves some of the same parties and presents factual and legal issues that are very similar to this case. In the *Dominion* case, U.S. Dominion, Inc. and its subsidiary, Dominion Voting Systems, Inc. (Coomer's former employer), allege that Byrne made false and defamatory statements regarding Dominion's voting systems. The magistrate judge in that case found that Lambert had violated a protective order the court had entered governing confidential discovery information by filing material produced by Dominion in the public record in a Michigan criminal proceeding where Lambert was a defendant. *Id.* at *15. Lambert also provided access to a confidential database of Dominion discovery material to a Michigan county sheriff without requiring that the sheriff commit to keep the material confidential. *Id.* *5, 6, 15. The sheriff promptly posted the password to the Dominion database on the internet, leading to thousands of people accessing the information. *Id.* at *6. Lambert engaged in these disclosures unilaterally, without leave of court, and without notifying Dominion. *Id.* at *4.

In the D.C. litigation, Dominion brought the matter to the court's attention and sought protection against further disclosures and to disqualify Lambert as counsel for Byrne. The court on March 19, 2024, entered an order to preserve the status quo while the court considered Dominion's motion. *Id.* at *7. The "Status Quo Order," among other things, directed Lambert and Byrne to immediately stop sharing or publicly discussing

any confidential discovery material they had received in five cases filed by Dominion in the District Court for the District of Columbia against various defendants. *Id*. The order also directed Lambert to make "every reasonable effort" to remove from the public docket materials she had filed in her Michigan criminal case. *Id*. The order further directed Lambert and Byrne to file by March 21, 2024, at 5:00 p.m., a verification "that they have and will comply with each of their obligations in this Order until further Order of the Court." *Id*.

Lambert belatedly executed the required verification, but when she affirmed her compliance with the court's order, she was not, in fact, in compliance. *Id*. at *7, 19. Instead, she had failed to make reasonable efforts to remove the material from the public docket in Michigan. *Id*. at *19. She had also discussed confidential information in an interview, in violation of the order, and continued to do so after she signed the verification. *Id*. The magistrate judge found that Lambert's purported justifications for her conduct were not valid, that her conduct had harmed the discovery process and subjected Dominion employees to threats of harm, and that her conduct was intentional and not in good faith. *Id*. at 20, 22-29.

The magistrate judge further found that Lambert's conduct violated District of Columbia Rules of Professional Conduct 3.4(c), 8.4(c) and 8.4(d). *Id*. at *20-21. Rule 3.4(c) prohibits an attorney from "[k]nowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Rule 8.4(c) prohibits "[e]ngag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Rule 8.4(d) prohibits "[e]ngag[ing] in conduct that seriously

interferes with the administration of justice."[3] Based on the foregoing, the magistrate judge disqualified Lambert from further participation in the case as counsel for Byrne. The district judge, Carl Nichols, agreed, concluding:

> In short, after it became clear that Lambert had engaged in egregious violations of the Protective Order, she should have taken every step possible to show that those would remain isolated incidents. Instead, she violated the Status Quo Order and, at best, skirted around the edges of the Protective Order. That conduct—combined with Lambert's view, expressed both before [the magistrate judge] now before this Court during the October 17, 2024 hearing, that she was entitled to leak discovery materials because she believed doing so to be in the public interest—creates a real and continuing risk that Lambert might again leak confidential information. [The magistrate judge] thus correctly concluded that Lambert's continued violations were "likely to infect future proceedings," *Koller*, 737 F.3d at 1056, and that no sanction short of disqualification would suffice.

*US Dominion, Inc. v. Byrne*, No. 1:21-cv-02131-CJN-MAU, at 5 (D.D.C. Oct. 22, 2024).

Importantly, Lambert does not dispute that she engaged in the conduct found by the *Dominion* court. Instead, she attempts to justify her conduct by pointing to Michigan statutes requiring those with information concerning a crime to provide the information to the proper authorities. This Court agrees with the court in *Dominion* that those statutes do not justify or excuse Lambert's conduct. For one thing, Lambert's disclosures were not limited to "law enforcement" and she took no measures to ensure that the single county sheriff to whom she leaked the protected materials kept the information confidential. More fundamentally, if Lambert believed that Michigan law required her to go to law enforcement with the information, she should have sought leave of the court to do so.

---

[3] At the April 23, 2025, hearing on Lambert's motion for admission, Lambert stated that a Michigan bar proceeding had been filed against her relating to the matters at issue in the *Dominion* case, and that proceeding remains pending.

Florida's Rules of Professional Conduct mirror the District of Columbia ethical rules the *Dominion* court held Lambert violated. Florida Rule of Professional 4-3.4(c) provides that "A lawyer must not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . ." Rule 4-8.4(c) provides that "[a] lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Rule 4-8.4(d) provides that "[a] lawyer shall not . . . engage in conduct in connection with the practice of law that is prejudicial to the administration of justice." Based on the court's findings in *Dominion*, to which Lambert offers no real dispute, her conduct in that case violated these ethical rules.

The next question under *Schlumberger* is whether her violations were "of such a nature as to justify disbarment." The Court finds that they were. Standard 6.1(a)(1) and (2) of the Florida Standards for Imposing Lawyer Sanctions provide that disbarment is generally appropriate when a lawyer "(1) with the intent to deceive the court, knowingly makes a false statement or submits a false document; or (2) improperly withholds material information and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding." Standard 6.2(a) provides that disbarment is generally appropriate where a lawyer "causes serious or potentially serious interference with a legal proceeding or knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another and causes serious injury or potentially serious injury to a party."

The Court finds these standards to be met based on the undisputed findings by the court in the *Dominion* case. Lambert's conduct was therefore "of such a nature as to

justify disbarment" as required by *Schlumberger*. Lambert's motion for special admission is therefore denied.

## CONCLUSION

The highly unusual step of denying a party the counsel of his choosing is not a decision this Court undertakes lightly. The Eleventh Circuit has made clear that such a step should be "resorted to sparingly" and a party's opposition to *pro hac vice* admission "should be viewed with caution . . . for it can be misused as a technique of harassment." *See Herrmann v. GutterGuard, Inc*, 199 F. App'x 745, 752 (11th Cir. 2006) (addressing disqualification).

At the two live hearings conducted by the Court in this matter Lambert appeared personally and was at all times courteous, respectful, knowledgeable, and professional. She has extensive experience and expertise representing parties in virtually identical types of disputes involving very similar facts and legal issues. Indeed, based on her presentation at the April 23, 2025, hearing the Court remarked that her depth of knowledge and experience might even be sufficient to qualify her as an expert. But her extensive involvement in this subject matter area, both personally and professionally, may be the source of the difficulty here. Because of her extensive involvement in this highly contentious and emotionally charged subject matter area, spanning a period of years, it appears that Lambert may have allowed her professional judgment to be compromised. Perhaps because of this lapse in judgment, she clearly violated a court order in *Dominion* as discussed above. That lapse in judgment is particularly concerning on the issue presently before this Court because *Dominion* was not a random unrelated matter. Instead, *Dominion* involved some of the *same parties* as this case, and *it*

*included factual and legal issues very similar to those in this case.* It also appears that even with the passage of time Lambert cannot recognize that her independent judgment was compromised or that her actions in *Dominion* were in any way improper. In the context of an attorney disciplinary matter resulting in disbarment, the Florida Supreme Court has emphasized that "[a] lawyer must have the independent judgment to objectively advise his clients . . ." and not engage in "personal crusade[s]." *The Florida Bar v,. Klein*, 774 So. 2d 685, 691 (Fla. 2000). Considering all of the foregoing, and mindful of the Eleventh Circuit's admonition that disqualification should be "resorted to sparingly," this Court finds that denial of special admission is appropriate in connection with the unique facts presented here.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Stephanie Lambert Junttila's "Motion for Special Admission" (Doc. 187) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 10th day of June, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE