IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ERIC COOMER, Ph. D., | Case No. 8:24-cv-00008-TPB-SPF |
| Plaintiff, | |
| vs. | |
| PATRICK BYRNE, STEVEN LUCESCU, and THE AMERICA PROJECT, INC. | |
| Defendants. | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR REVISION OF THE TRIAL COURT'S JUNE 10, 2025 ORDERS DENYING ATTORNEY LAMBERT'S MOTION FOR ADMISSION**

Now comes Defendant, Patrick Byrne, and for this Memorandum in Support of his Motion for Revision of the Court's orders of June 10, 2025, provides the following.

*I.  Introduction*

Under Fed. R. Civ. P. 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims … may be revised at any time before the entry of judgment." This rule grants district courts f*ull discretion* to reconsider interlocutory orders at any time prior to final judgment. Rule 54 also allows for flexibility in modern judicial administration by permitting the court to adjust the

1

orders to fit the circumstances of a particular proceeding. See, e.g., *Sears, Roebuck & Co v Mackey*, 351 US 427; 76 S Ct 895; 100 L Ed 1297 (1956), *Cold Metal Process Co v United Engineering & Foundry Co*, 351 US 445; 76 S Ct 904; 100 L Ed 1311 (1956).

This flexibility ensures that interlocutory orders can be revised in the course of the proceedings to allow the court to respond to changing circumstances, to accommodate the parties and respect the preservation of due process and constitutional principles, and to prevent hardship or injustice. *Dickinson v Petroleum Conversion Corp*, 338 US 507; 70 S Ct 322; 94 L Ed 299 (1950), *Curtiss-Wright Corp v Gen Electric Co*, 446 US 1; 100 S Ct 1460; 64 L Ed 2d 1 (1980).

Obviously, such flexibility is particularly important in cases where a court has restricted or precluded a party from being represented by his or her choice of counsel. As this Court recognized in its June 10, 2025 opinion, Dr. Byrne's choice of counsel is supported by Attorney Lambert's demonstrated expertise in the subject matter surrounding the claims against Dr. Byrne in these proceedings.

Dr. Byrne's expert counsel, Attorney Lambert, filed an ordinary and proper motion to be admitted to practice in this Court in the manner required by the Court's procedures, so that she may continue to represent Dr. Byrne, the latter of whom has specifically retained her and has chosen her for that purpose due to her expertise,

experience, and her representation of Dr. Byrne in other matters, especially involving Dominion for whom Plaintiff Coomer worked.

Plaintiff, on the other hand, sought extraordinary relief in requesting a "protective order" from this Court and in the process of doing so, sought the even more extraordinary relief of having Attorney Lambert *precluded* absolutely from practicing law before this Court in any capacity. Plaintiff demonstrated no reasonable basis why Attorney Lambert's and Dr. Byrne's First Amendment rights should be so curtailed *in these proceedings* from representing her client.

Indeed, as this Court must accept, the "reasons" stated by Plaintiff for seeking to preclude Attorney Lambert from being admitted to this proceeding are based on speculation and conjecture about future events that cannot be predicted – it is a motion that was supported by fear about certain future events that have not and will not occur. The latter is especially the case because by way of its June 10, 2025 Minute Order, this Court put into place necessary protections to allow Attorney Lambert to continue assisting Dr. Byrne in a direct representational role, while considering and protecting the overblown and unnecessary concerns of Plaintiff.

It is Dr. Byrne's primary position that having failed to support their motion for an unlimited and unrestricted protective order, Plaintiff failed to support their motion to exclude Attorney Lambert from these proceedings and she should be

admitted and allowed to practice before the Court to work with attorney Peter Ticktin, Dr. Byrne's Florida counsel.

This will allow Dr. Byrne to have the benefit of his choice of counsel, protect his due process and other constitutional rights to representation of choice, and further will allow this Court to supervise and control, and otherwise direct the parties and their counsel in the conducting of these proceedings. At the same time, Attorney Lambert will be able to provide Dr. Byrne and Florida counsel with the necessary advice and counsel that is commensurate with her recognized expertise in these matters.

## II. *Discussion*

As explained by Dr. Byrne in his reply to Plaintiff's Motion for a Protective Order and to Exclude Counsel, and as further recognized by this Court in its June 10, 2025 orders, the choice of counsel and the right to representation are deeply rooted in constitutional protections under the First Amendment and the Due Process Clause. *FTC v World Wide Factors, Ltd*, 882 F2d 344 (CA 9, 1989). These rights are often examined in the context of criminal and civil proceedings, as well as in administrative and procedural settings, where the ability to select counsel of choice intersects with broader constitutional guarantees such as freedom of association, access to justice, and procedural fairness. *FTC, supra.* See also, *Perkins Coie LLP v United States DOJ*, ___F Supp 3d___; 2025 U.S. Dist. LEXIS 84475 (DDC, May

2, 2025) (litigants cannot achieve disqualification of counsel for strategic reasons and to avoid the inevitable outcome that sophisticated and expert counsel will bring to the opposing party's cause – fear of the truth and the outcome of a case cannot be avoided by the tactical and ethically questionable use of disqualification or worse, infringing on the fundamental constitutional freedoms of association, choice, speech, and rights to representation in all legal proceedings in the United States of America). Due process will almost always outweigh the opposition's fear mongering and attempts to avoid defeat by targeting and removing competent counsel from legal proceedings. *Id*. Such methods harken back to the dark days of the civil rights movement where lawyers and litigants were routinely precluded from appearing and being represented, respectively, on the basis of dubious and targeted procedural attacks on their character and fitness. *Id*.

Thus, choice of counsel has become one of significant concern and the right to be represented by counsel of one's choice is protected under the Fifth Amendment Due Process Clause for all civil litigants. *Id*. See also *Fox v. Ritz-Carlton Hotel Co., LLC*, No. 17-CV-24284-SINGHAL/REID, 2023 U.S. Dist. LEXIS 63845, at *5 (S.D. Fla. Mar. 8, 2023), citing *In re BellSouth Corp.*, 334 F.3d 941, 955 (11th Cir. 2003) and *Smart Comm's Holding, Inc. v. Global Tel-Link Corp.*, 590 F. Supp. 3d 758, 763 (M.D. Pa. 2022) (noting that the Fifth Amendment "guarantees civil litigants the right to retained counsel, which ordinarily includes the right to be

represented by counsel of their choice"). "The right to counsel in civil cases is…fundamental and springs from both statutory authority and from the constitutional right to due process of law." *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1262-63 (5th Cir. 1983), citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1025 n. 6 (5th Cir.), cert. denied, 454 U.S. 895, 102 S. Ct. 394, 70 L. Ed. 2d 211 (1981).

In considering the constitutional concerns raised by a party's attempt to exclude another party from having their counsel of choice represent them at legal proceedings, the Court is cautioned to balance the alleged "harm" to the movant against the harm that will be caused by the complete exclusion of retained expert counsel. In the former case, Plaintiff has sought, and largely succeeded, in preventing the leading expert legal counsel on claims concerning Dominion, for whom Plaintiff worked, to be present to defend Dr. Byrne where critical information and truth of facts are determinative and dispositive as to Plaintiff's defamation claim. Thus, Dr. Byrne's defense is directly impacted by the Court's decision to exclude Attorney Lambert, which Plaintiff's "alleged" harms or based of speculation and conjecture – they have not and will not come to pass because this Court retained control and jurisdiction over the process and can alter the conduct of the parties and take measured corrective actions as the proceedings progress. There is literally NO HARM that can occur to Plaintiff under this scenario, but there is GREAT and

IRREVERSIBLE HARM that will occur in excluding Attorney Lambert altogether. The latter is objective harm and constitutionally-based prejudice inflicted directly on Defendant, Dr. Byrne.

Any discussion concerning the exclusion of counsel from a specific proceeding "must begin with the principle, grounded in the Due Process Clause of the Fifth Amendment, that a party has the right to be represented by counsel of his choice." *Caldwell v. Compass Entm't Grp. LLC*, No. 6:14-cv-1701-Orl-41TBS, 2014 U.S. Dist. LEXIS 172822, at *4-5 (M.D. Fla. Dec. 12, 2014), citing *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1117-18 (5th Cir. 1980). "[I]f a court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be the denial of a hearing, and, therefore, of due process in the constitutional sense." *Id*. (internal citations and quotations omitted).

Thus, there are less objectionable and constitutionally suspect means of controlling a legal proceeding than excluding counsel altogether. It appears by way of its minute orders that this Court has at least implicitly recognized this because it has allowed Attorney Lambert to continue to be present for her advice and counsel to Dr. Byrne during the proceedings.

While Dr. Byrne would urge the Court to reverse its order and allow Attorney Lambert full admission for these proceedings to represent him, which would

significantly reduce the costs and the needs and resources to associate further and additional counsel (with all that requires in terms of bringing another attorney up to speed on the facts and procedural posture of the case), the next least prejudicial action would be to allow Attorney Lambert to remain as co-counsel for Dr. Byrne and his Florida counsel to participate in all proceedings both during the trial court proceedings before the court, as well as in external proceedings, such as depositions, negotiations, etc.

Plaintiff benefited from the misstatements of fact in the District of Columbia proceedings, and Attorney Lambert was not given the opportunity to rebut those allegations in the instant proceedings because this Court took the District of Columbia's District Court's conclusions and findings as fact. The reality is that the Plaintiff's motion was based on the District Court's erroneous misstatements of fact. Judge Nichols, the District Court judge has criticized the position that the 2020 election was compromised. Obviously in the defamation suit brought by Dominion before Judge Nichols, as in this case before the court, the truth is a defense to defamation. Any of the facts that come to light exposing the truth will aid in Dr. Byrne's defense, and it is Attorney Lambert whose expertise and knowledge has brought to light the truth of the 2020 election's compromise – truth which directly implicates Dominion and which therefore provides a defense to the defamation claims brought against Attorney Lambert's client, Dr. Byrne. Only with her expertise

as counsel assisting Dr. Byrne in these matters can Dr. Byrne receive the constitutionally sufficient representation to which he is entitled.

Furthermore, having dispelled the allegation that she violated the protective order after the District Court imposed additional restrictions, the legal argument that Attorney Lambert had an ethical and legal obligation to follow the law in Michigan and report crimes to law enforcement has also been misstated. Attorney Lambert, an experienced litigation attorney in the underlying subject matter and as someone who served as a prosecutor for a decade and then as a criminal defense attorney, brought to the attention of law enforcement significant criminal wrongdoing on the part of Dominion, its agents, employees, and contractors. Under both Michigan law and federal law, it is required to report criminal conduct to authorities. See MCL 750.149 (making it a crime for one with knowledge to conceal commission of a crime) and 18 U.S.C. § 1512 (making it unlawful to penalize or otherwise punish one for reporting criminal activity).  Even if disqualification stands in the District of Columbia proceedings, there is no sanctioning or disciplinary ruling.

While this Court at first sided with Plaintiff's superficial argument, the reality is that there is more to the requirement to disclose criminal activity in the State of Michigan, and no "agreement" even a court order can prohibit what is required by the criminal law. Attorney Lambert, who lives and works in Michigan, was required by Michigan law to disclose suspected criminal activity to law enforcement. See

9

MCL 750.149. This provision, entitled "Compounding or concealing offense; Penalty" provides:

> Any person having knowledge of the commission of any offense punishable with death, or by imprisonment in the state prison, who shall take any money, or any gratuity or reward, or any engagement therefor, upon an agreement or understanding, express or implied, to compound or conceal such offense, or not to prosecute therefor, or not to give evidence thereof, shall, when such offense of which he or she has knowledge was punishable with death, or imprisonment in the state prison for life, is guilty of a felony; and where the offense, of which he or she so had knowledge, was punishable in any other manner, he or she is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00.

Further, one cannot draft or propose a protective order or contract that would ever prohibit the disclosure of a crime to authorities. Such agreements would be considered void and unenforceable as they are contrary to public policy. If it were otherwise, any corporation or entity could conceal crimes or enter into such sweeping protective orders to avoid criminal investigation and prosecution. The Michigan Supreme Court has clearly stated that any contract whose consideration is to conceal a crime or stifle a prosecution is repugnant to public policy and therefore void. See, e.g., *Case v Smith*, 107 Mich 416; 65 NW 279 (1895). Additionally, the Michigan Court of Appeals has reinforced this principle, noting that contracts intended to conceal a crime or prevent prosecution violate public policy and are void.

Furthermore, MCL 750.149, already noted, also criminalizes agreements to conceal an offense or not to prosecute, reflecting a strong public policy against such

contracts. See also, *Rivera v SVRC Indus*, 338 Mich App 663; 980 NW2d 777 (2021). Therefore, courts have consistently held that agreements construed to bar a party from reporting another party's alleged misconduct to law enforcement authorities for investigation and possible prosecution violate public policy and are therefore unenforceable. See, e.g., *Fomby-Denson v Dep't of the Army*, 247 F3d 1366 (CA Fed, 2001), *Cosby v American Media, Inc*, 197 F Supp 3d 735 (ED Pa, 2016), and *Lachman v Sperry-Sun Well Surveying Co*, 457 F2d 850 (CA 10, 1972). 1972).

In *Fomby*, *supra*, the federal circuit emphasized that enforcing such agreements would violate a well-defined and dominant public policy, citing multiple precedents that support the principle that agreements to conceal information relevant to the commission of a crime are not favored by the law. Accord Cosby, supra. Similarly, in *Lachman*, *supra*, the Tenth Circuit held that it is public policy to encourage the disclosure of criminal activity and declined to enforce a nondisclosure agreement that would have prevented the reporting of a possible crime. Accord *Fomby-Denson*, *supra*. Additionally, the Restatement (First) of Contracts and other secondary authorities also support the view that contracts or agreements aimed at concealing or compounding a crime are illegal and contrary to public policy. *Cosby*, *supra*. Therefore, any contract or agreement that by design seeks to prohibit the disclosure of a crime to authorities would be unenforceable under both Michigan and federal law. Furthermore, as an aside, not even attorney-client privilege would

prevent the disclosure of suspected criminal activity. Undersigned had not only a duty, but an absolute right to report the suspected criminal activity to law enforcement in Michigan.

Finally, Attorney Lambert remains in good standing in the State of Michigan, has not been sanctioned, and in fact prevailed in those cases that Plaintiff's misrepresents, and in which she was attempted to be sanctioned by lawyers and officials weaponizing the system of justice and using it to prevent undersigned from defending her clients and seeking justice. See *King v. Whitmer*, 71 F.4th 511, 531 (2023).

Again, Dr. Byrne would renew his request to sanction Plaintiff for their abuse of the court's process. Plaintiff stated irrelevancies and allegations that have not been proved and have in fact been based on actions Attorney Lambert took in the representation of her clients per a court order and state statutes specifically authorizing the legal representation she undertook in Michigan. Plaintiffs' accusations were unsupported by fact, witness, or affidavit. Rather, they were successful attempts to skew this Court's perspective to prevent Dr. Byrne from having his chosen counsel represent him – this is a textbook example of abuse of process – attempting to achieve an ulterior motive in the exercise of a perverted use of the court's processes.  By filing an "emergency motion" for a protective order, a process that is not even to be used for disqualification of counsel, this extraordinary

and disproportionate use of process is being perverted in an attempt to disrupt the proceedings (stop Attorney Lambert from representing Dr. Byrne) and to achieve an ulterior and unlawful motive not recognized by the law. *Peer v. Lewis*, 571 F. App'x at 845-46 (11th Cir. 2014) (the district courts have inherent authority to stamp out attorney's use of politically motivated and weaponized filings that seek to achieve an ulterior result than that for which the particular process is being advanced). See also, *Pottinger v. Miami*, 810 F. Supp. 1551, 1566 (S.D. Fla. 1992) (citing *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984) and applying Florida law, and stating abuse of process arises "when there has been perversion of court process to accomplish end which process was not intended by law to accomplish, or which compels party to do some collateral thing he could not legally be compelled to do."). It is an abuse of process to seek a protective order under Rule 26 for the sole purpose of preventing a litigant from being represented by competent counsel. Abuse of process includes the filing of frivolous emergency motions which contain misrepresentations, upset the court's schedule, and attempt to blindside litigants and their counsel and disrupt the proceeding and ultimately derail the litigant's defense. This is generally sanctionable conduct and the court, under its inherent power, can sua sponte decide that an abuse of process has occurred. *Peer*, *supra*.

Undersigned was disqualified as counsel for following her legal and ethical obligation to report suspected criminal activity to law enforcement which was

revealed during discovery. Undersigned, who is an experienced litigation attorney in the underlying subject matter and who served as a prosecutor for a decade and then as a criminal defense attorney, brought to the attention of law enforcement significant criminal wrongdoing on the part of Dominion, its agents, employees and contractors. Under both Michigan law and federal law, it is required to report criminal conduct to authorities. See MCL 750.149 (making it a crime for one with knowledge to conceal commission of a crime) and 18 U.S.C. § 1512 (making it unlawful to penalize or otherwise punish one for reporting criminal activity). Further, the district court's decision in that matter is currently on appeal. *Dominion v. Byrne*, United States Court of Appeals for the Third Circuit, Case No. 24-7195. Even if the disqualification stands, there is no sanctioning or disciplinary ruling. Finally, undersigned is in good standing in the State of Michigan, has not been sanctioned and in fact prevailed in those cases in which she was attempted to be sanctioned by lawyers and officials weaponizing the system of justice and using it to prevent undersigned from defending her clients and seeking justice.

### III.  Conclusion

Defendant has retained special counsel, undersigned, an expert in election fraud and, particularly, in Dominion cases. He has retained her in other matters as well because of her expertise in this particular area of the law. She was a prosecutor for over a decade in Wayne County Michigan (Detroit). She has since been a

criminal defense attorney and has specialized most recently in election fraud cases and defense of the many individuals who were subjected to prosecution due to the weaponization of the criminal justice system against anyone questioning integrity of elections in the United States. Undersigned is in good standing, has been retained as counsel for Dr. Byrne, and must presumptively be allowed to participate in his defense.

WHEREFORE, for the reasons stated in this Motion and the accompanying Memorandum in Support, Defendant respectfully requests that the Court revise / modify, and/or clarify its June 10, 2025 Order and provide the following relief as follows: The Court's June 10, 2025 Order is reversed and Attorney Lambert is admitted to practice before this Court to assist, as co-counsel, Dr. Byrne's Florida counsel, Attorney Peter Ticktin, in the defense of Dr. Byrne.

Respectfully submitted,

/s/ Stefanie Lambert
Law Office of Stefanie L. Lambert PLLC
400 Renaissance Drive, 26th Floor
Detroit, MI 48243
StefanieLambert.com
AttorneyLambert@protonmail.com
(313) 410-6872

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with the clerk of the court through the Court's website portal for submission of electronically filed documents and pleadings and same was electronically served upon counsel on July 8, 2025.

Respectfully submitted,

*/ Peter Ticktin*
Peter Ticktin, Esquire
Florida Bar No.  887935
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Serv512@LegalBrains.com
Telephone: 561-232-2222
*Attorneys for the Defendant*
*Patrick Byrne*
