IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORDIA
TAMPA DIVISION

Civil Action No. 8:24-00008-TPB-SPF

ERIC COOMER, Ph.D.,

    Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,

    Defendants

---

### PLAINTIFF ERIC COOMER, Ph.D.'S RESPONSE IN OPPOSITION TO DEFENDANT PATRICK BYRNE'S MOTION FOR STAY PENDING REVIEW OF PETITION FOR MANDAMUS RELIEF

---

Eric Coomer, Ph.D. (Dr. Coomer), by and through undersigned counsel, files this Response in Opposition to Defendant Patrick Byrne's Motion for Stay Pending Review of Petition for Mandamus Relief and in support, respectfully shows:

### INTRODUCTION

1.    Defendant Patrick Byrne (Byrne) seeks a stay of these proceedings while he appeals the three month old Order Denying Motion to Appear *Pro Hac Vice*[1] (the Order) in a three year old case.

2.    Since the Order was issued on June 10, 2025, Byrne's current counsel has made assurances that Bryne will begin complying with his discovery

---

[1] Doc. 214.

1

obligations. None of that occurred and, in hindsight, the assurances were made in bad faith. The present Motion coincides with Plaintiff's Second Motion to Compel and for Sanctions.[2] That Motion provides essential context for Byrne's Motion to Stay, and Dr. Coomer encourages the Court to look to the facts discussed therein when considering Byrne's request.

3. Byrne's discovery noncompliance across multiple defamation cases pending in multiple jurisdictions is well documented, as is his noncompliance with multiple orders issued by this Court. He has still not complied, for example, with this Court's order on Plaintiff's last motion to compel and for sanctions[3] issued on April 28, or the June 10 order[4] compelling Byrne to file Lambert's signed undertaking required by the Stipulated Protective Order. The latter issue is especially notable given the context of the order, Dr. Coomer's multiple compliance requests to Byrne's current counsel, and Lambert's track record of noncompliance with protective orders in related proceedings.

4. A common element in all of these matters is Stefanie Lambert. Lambert's attempts at *pro hac vice* admission have now been rejected by at least three federal district courts, including this one, and her appeal of her disqualification in the U.S. District for the District of Columbia has now been rejected by the Court of Appeals for the District of Columbia. Her Petition for Writ

---

[2] Doc. 230.

[3] Doc. 213.

[4] Doc. 216.

of Mandamus on the same issue in the Ninth Circuit was similarly rejected last week.

5. These matters alone all warrant denial of Byrne's Motion to Stay. Even if they did not, however, Byrne's failure to even refer the Court to the applicable legal standard in his Motion, and his inability to meet that standard even had he attempted to, similarly warrant denial of the relief requested.

**RELEVANT BACKGROUND**

6. This case was filed on June 24, 2022. It was transferred to this Court from the United States District Court for the District of Colorado on January 10, 2024.[5]

7. On October 24, 2024, the Court entered a Stipulated Protective Order governing the production of discovery material in this case.[6] In response, Dr. Coomer produced 8,794 documents to Defendants in three separate document productions on November 13, 2024, January 28, 2025, and April 14, 2025.

8. Between the first and second production of documents, on February 18, 2025, Byrne's now indispensable lawyer, Lambert, filed a Motion for Special Admission[7] to represent Defendant Byrne in this case.

---

[5] Doc. 99.

[6] Doc. 163.

[7] Doc. 187.

9. Dr. Coomer opposed her admission. After complete briefing and an oral hearing, Lambert's motion was denied by the Order Denying Motion to Appear *Pro Hac Vice* on June 10, 2025.[8]

10. The June 10 Order is the subject of the present Petition for Writ of Mandamus in the Eleventh Circuit. In the Order, this Court relied on the findings of both the magistrate judge and district court in *US Dominion, Inc., et al. v. Byrne,* No. 1:21-cv-02131-CJN-MAU, 2024 WL 3792654 (D.D.C. Aug. 13, 2024). Among other things, the Order cites to U.S. District Judge Carl Nichols, who agreed that Lambert's conduct in the *Dominion* case warranted disqualification:

> In short, after it became clear that Lambert had engaged in egregious violations of the Protective Order, she should have taken every step possible to show that those would remain isolated incidents. Instead, she violated the Status Quo Order and, at best, skirted around the edges of the Protective Order. That conduct—combined with Lambert's view, expressed both before [the magistrate judge] now before this Court during the October 17, 2024 hearing, that she was entitled to leak discovery materials because she believed doing so to be in the public interest—creates a real and continuing risk that Lambert might again leak confidential information. [The magistrate judge] thus correctly concluded that Lambert's continued violations were "likely to infect future proceedings," *Koller,* 737 F.3d at 1056, and that no sanction short of disqualification would suffice.

*US Dominion, Inc. v. Byrne*, No. 1:21-cv-02131-CJN-MAU, at 5 (D.D.C. Oct. 22, 2024).

11. Also on June 10, this Court granted the Motion to Withdraw as Counsel for Defendant Patrick Byrne on behalf of Attorney Robert Driscoll and

---

[8] Doc. 214.

4

Alfred Carry, who had previously made appearances on behalf of Byrne.[9] In an endorsed order issued that same day, this Court stated that, despite her denial of special admission, "[t]he Court will not at this time restrict Lambert's attendance at depositions or her receipt of confidential information other than as provided by the protective order but will impose one additional requirement. If Byrne has provided or intends to provide Lambert with any confidential documents or information, Bryne is directed to file with the Court the signed undertaking by Lambert required by the protective order. Failure by Byrne or Lambert to complete the signed undertaking as ordered could subject one, or both, to sanctions including contempt of court."[10]

12. Bryne was unrepresented for approximately one month. On July 8, 2025, Defendant's Notice of Appearance of Counsel wherein Peter Ticktin appeared as counsel for Byrne without limitation.[11]

13. That same day, Mr. Ticktin filed a Motion for Revision of the Court's June 10, 2025 Orders Denying Attorney Lambert's Motion for Admission, and a memo in support thereof, both of which were signed by Lambert.[12] The Court denied that motion on July 16.[13]

---

[9] Docs. 102-104.

[10] Doc. 216.

[11] Doc. 218.

[12] *See* Docs. 219, 220.

[13] Doc. 221.

14. More than three months after the Court's Order, and in conjunction with Plaintiff's Second Motion to Compel and for Sanctions Against Defendant Byrne,[14] Byrne then filed a Petition for Writ of Mandamus in the Eleventh Circuit Court of Appeals.[15] Dr. Coomer's Motion to Compel describes months of delays and promises to comply with discovery on the part of Byrne's new counsel, as well as nearly a year of attempts by Plaintiff to get deposition dates for Byrne.[16]

15. The Motion to Compel also describes an intervening episode that is relevant to the Court's consideration here, specifically wherein Byrne attempted to substitute Lambert for his trial counsel *on the morning of trial* in a separate defamation case brought by Hunter Biden in the United States District Court for the Central District of California. There, Hon. J. Stephen V. Wilson described the scene as "circus-like",[17] denied Lambert's last-minute pro hac vice motion,[18] ordered her to remove herself from the defense table,[19] and stated:

> And – and there are limits to – to the shenanigans that's going on. And I don't use the word "shenanigans" lightly. This is – I used the term before. This is really like a three-ring circus. I mean, I've never seen this type of – of – of – of – of procedures. And I mean, not that I'm an oracle, but I've been at this quite a while. And this is really even

---

[14] Doc. 230.

[15] **Exhibit 1**.

[16] *Id.* at ¶¶ 10-22.

[17] **Exhibit 2**, *Biden v. Byrne*, Case No. 23-cv-09430-SVW, Reporter's Transcript of Jury Trial Proceedings Trial Day One, at 6:25-7:8 (July 29, 2025).

[18] *Id.* at 27:17-20.

[19] *Id.* at 31:25-32.4.

shocking to me.  And like I've said, I've been exposed to a lot of shocking things.[20]

16.    To give context to this statement, District Judge Wilson was nominated by President Ronald Reagan on September 9, 1985, and confirmed by the United States Senate on October 16, 1985.  He undoubtedly has been exposed to a number of "shocking things" during his forty years as a federal judge.

17.    On September 15, 2025, according to the Ninth Circuit Court of Appeals' docket report, Bryne's counsel in this case, Mr. Ticktin, filed a Motion to Stay and Petition for Writ of Mandamus in that court based on the denial of Lambert's *pro hac vice* motion in the *Biden* case.[21]

18.    Byrne's Motion to Stay was initially filed on September 18, 2025, in the Eleventh Circuit Court of Appeals.[22]

19.    On September 25, 2025, the Ninth Circuit Court of Appeals issued an order denying the Writ of Mandamus because "Petitioners have not demonstrated a clear and indisputable right to the extraordinary remedy of mandamus."[23]

---

[20] *Id.* at 34:23-35:6.  According to public reporting, Bryne was ultimately sanctioned by Judge Wilson $34,969.20 in connection with the "shenanigans" prior to trial.  Judge Wilson also ordered Biden's team to file a default judgment motion.  *See* **Exhibit 3,** Matt Naham, *Federal judge slaps ex-Overstock CEO with sanctions for 'misconduct' and open door for Hunter Biden to win defamation lawsuit by default – unless SCOTUS acts*, LAW & CRIME (Sep. 30, 2025).

[21] **Exhibit 4,** p. 3.

[22] **Exhibit 5**.

[23] **Exhibit 6**.  On September 30, 2025, Byrne filed a Petition for Writ of Certiorari to the U.S. Supreme Court with respect to this order.

7

20. On September 26, 2025, Byrne filed Plaintiff's Notice of Additional Counsel.[24] Along with this filing, Byrne also filed his Motion for Stay of Proceedings Pending Review of Petition for Mandamus Relief in this Court.[25] And, on September 29, Byrne withdrew his Motion for Stay Pending Consideration of Petitioner's Petition for a Writ of Mandamus in the Eleventh Circuit Court of Appeals.[26]

21. To Plaintiff's knowledge, neither Byrne nor Lambert have signed the undertaking referenced in this Court's June 10 Order.

### III.  LEGAL STANDARD

22. Federal Rule of Appellate Procedure 8(a) requires litigants to file a motion to stay pending appeal in the district court before seeking such relief before the Court of Appeals. FED. R. APP. P. 8(a). In this context, the decision to grant a motion to stay is an "exceptional response granted only upon a showing of four factors: 1) that the movant is likely to prevail on the merits on appeal; 2) that absent a stay the movant will suffer irreparable damage; 3) that the adverse party will suffer no substantial harm from the issuance of the stay; and 4) that the public interest will be served by issuing the stay." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (citing *Jean v. Nelson*, 683 F.2d 1311, 1312 (11th Cir. 1982) (per curiam)). The first factor is ordinarily the most important. *See id.* A movant

---

[24] Doc. 232.

[25] Doc. 233.

[26] **Exhibit 7**.

may also prevail by "showing . . . a 'substantial case on the merits' when 'the balance of equities . . . weighs heavily in favor of granting the stay.'" *Id.* (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (*per curiam*)).

23.  Most recently, the Eleventh Circuit Court of Appeals applied the *Garcia-Mir* factors in the context of a request by the Florida Attorney General for a stay of an injunction issued in the United States District Court for the Southern District of Florida regarding "SB 4-C," a law that created two new state-law immigration crimes. *See Florida Immigrant Coalition v. Attorney General*, 2025 WL 1625385 (11th Cir. 2025). There, the Court of Appeals determined that the Attorney General had not made a "strong showing" of the likelihood of prevailing on the merits of the case. *See id.* at *3. The Eleventh Circuit also addressed the other three *Garcia-Mir* factors as weighing against a stay of the injunction. *See id.* at *4.

24.  "The right of an attorney of another state to practice is permissive and subject to the sound discretion of the court to which [she] applies for the admission. The right to revoke this permission is inherent in the right to grant it." *Brooks v. AMP Services Ltd.*, 979 So.2d 435, 439 (Fla. App. 2008) (*citing Parker v. Parker*, 97 So.2d 136, 137 (Fla. 3d DCA 1957)). "Certainly a trial court's discretion to deny a motion to appear pro hac vice, or to revoke such admission, is quite broad." *Id.* (*citing Huff v. State*, 569 So.2d 1247, 1249 (Fla. 1990)).

25.  "While it is true that there is a constitutionally based right to counsel of choice, it is also well established that the right is not absolute." *In re BellSouth*

9

*Corp.*, 334 F.3d 941, 955 (11th Cir. 2003) (*citing Wheat v. United States*, 486 U.S. 153, 159 (1988) ("[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."). "Accordingly, a litigant's freedom to hire the lawyer of his choice can be overridden if a court finds that the choice would interfere with the orderly administration of justice." *Id.* (*citing United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir. 1976)).

26.    "If a District Court has evidence of behavior that it believes justifies denying an admission pro hac vice," it must give the attorney adequate notice of the ethical charges and set a hearing on the issue. *Schlumberger Technologies v. Wiley*, 113 F.3d 1553, 1559 (11th Cir. 1997) (*citing In re Evans*, 524 F.2d 1004, 1008 (5th Cir. 1975)).

## IV.    ARGUMENT

27.    The four-page Motion cites to *no law*[27] and does not state the relevant legal standard for a stay of these proceedings. There is no argument in the Motion regarding factor (1) of the standard set forth in *Garcia-Mir* (likelihood of success), which is "ordinarily the most important." There is also no argument regarding factor (4) of the standard (public interest). The other two factors, irreparable damage and undue prejudice are argued without reference to the applicable standard but are equally unavailing. Dr. Coomer addresses each factor in turn.

---

[27] The Motion only cites to Federal Rule of Civil Procedure 16(b)(4) in ¶ 14.

**A.     Reasonable likelihood of success on the merits.**

28.     The Court issued a thorough and reasoned Order on the issue after conducting a hearing on the matter, and that Order is supported by multiple other courts in multiple jurisdictions that have similarly denied Lambert's *pro hac vice* motions, or, importantly, disqualified her as counsel following "egregious" discovery violations.

29.     Most recently, the Ninth Circuit Court of Appeals denied a similar writ of mandamus filed by Ticktin and Lambert on September 25, 2025, after citing to the five factors outlined in *Bauman v. United States District Court*, 557 F.2d 650 (9th Cir. 1977).[28] The *Bauman* factors are similar to those set forth in *Garcia-Mir*, to wit: (1) the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems or issues of law of first impression. *See id.* at 654-55.

30.     Here, Byrne is unlikely to succeed because of the overt misrepresentations of fact that characterize the Petition itself. For example, Byrne states in his Petition that "Plaintiff's counsel objected to the appearance of

---

[28] **Exhibit 6**.

11

Petitioner Lambert because of her extraordinary skill and her intricate knowledge of the facts and the circumstances underlying Plaintiff's defamation claims and her clients' defense."[29] Dr. Coomer respectfully disagrees but, in any event, there is no evidence in the record for this level of admiration. Instead, the record is replete with justified concerns over Lambert's express and unrepentant willingness to violate court orders. In reality, Dr. Coomer meant what he argued, namely that Lambert's track record of "egregious" discovery violations posed a substantial risk to the efficient resolution of this case moving forward. The present Motion confirms both Dr. Coomer's concerns and the Court's findings thereon. And, as recently as one week ago, the Ninth Circuit Court of Appeals agreed with these concerns.

**B.    Byrne will not suffer irreparable injury if a stay is denied.**

31.    To the extent Byrne's Motion attempts to address any of the factors relevant to the Court's consideration, this factor is the focus of his argument. He asserts that "Adequate representation of Dr. Byrne . . . requires an understanding of voting machines, vote adjudication, as well as the underlying software and hardware by which those machines and processes function." This is false. This is a defamation action, wherein the defamatory statements published by Defendants constitute the substance of this dispute. Those include claims that Dr. Coomer partook in an "Antifa conference call," claimed on that call to have rigged the

---

[29] **Exhibit 1**, p. 3.

election, and did in fact rig the election.  Defending against these claims does not require any specialized knowledge.

32. Even to the extent that any specialized knowledge may be helpful for deposition preparation—which appears from the Motion to be Byrne's primary concern—Byrne's counsel can obtain that information in the normal course from relevant background research and investigation or from Lambert herself, assuming she has signed the Court's undertaking.  Indeed, all attorneys do this in the course of representing their clients with respect to any field in which they may not have specialized knowledge.  In any case, the Court's Order expressly allowed Lambert's attendance at depositions.[30]

33. This argument is somewhat beside the point though.  If Lambert had enjoyed any success in this field to distinguish her from her peers, Byrne presumably would have cited it.  He does not though, nor could he.  The suggestion that Lambert is an "expert" in this area is false.  If anything, Lambert's track record in related cases is a series of ethical violations, disqualifications, and criminal indictments.  Her potential contribution is not to bring any form of specialized knowledge to the Court, but rather to serve as an agent for a broader agenda.

34. This is evident from Lambert's similar role in the defamation suit brought by Hunter Biden.  That case has nothing to do with voting technology, but rather Byrne's claims that Biden partook in a bribery scandal involving the Iranian

---

[30] *See* Doc. 216 ("The Court at this time will not restrict Lambert's attendance at depositions . . .").

nuclear program. Whether Byrne contends that Lambert also has unparalleled expertise in Iranian bribery schemes is unclear, but his insistence on her counsel appears to derive from something other than the subject matter of this dispute.

**C.     Dr. Coomer will suffer substantial harm from the issuance of a stay.**

35.     Defendant Byrne makes no effort to argue that a stay of this proceeding would not prejudice Dr. Coomer, nor could he. This case was filed more than three years ago, on June 24, 2022.[31] When one considers the related cases filed by Dr. Coomer, this litigation has now consumed nearly five years of his life. The majority of the other defendants named in those related proceedings have either settled or had a jury enter a verdict against them. Many have issued public retractions and apologies. Nonetheless, public harassment and false allegations against Dr. Coomer arising from the exact same lies promoted in *The Deep Rig* persist to this day.

36.     Byrne himself continues to regularly publish lies about the 2020 presidential election through his X account,[32] all while refusing to sit for a deposition. Dr. Coomer will be substantially prejudiced by further delay, and the Court should deny the Motion to Stay on that basis alone.

---

[31] This was 1,196 days ago.

[32] As of this filing, Mr. Byrne has more than 405,000 followers on X.

**D.      The public interest will not be served by a stay.**

37.     Byrne makes no reference to this concern in his Motion, but any such reference would be futile.  The lies at issue in this dispute are the origin of the Dominion Voting Systems conspiracy theory, which itself gave rise to the attack on the United States Capitol on January 6, 2021, an event that Byrne was apparently intimately involved with.[33]  The public significance of this case cannot be overstated but it is completely contrary to Byrne's interests.  The public has nothing to gain by Byrne's latest delay tactic, nor would Lambert's participation in this case benefit the public's understanding of the issues in dispute.

## V.      CONCLUSION

Plaintiff Eric Coomer, Ph.D. requests this Court deny Defendant Patrick Byrne's Motion for Stay Pending Resolution of Petition for Mandamus.  Eric Coomer Ph.D. prays for such other and further relief to which he may be entitled.

---

[33] *See* Plaintiff's Complaint at ¶ 6.

Respectfully submitted this 2nd day of October 2025.

           */s/ Charlie Cain*
          Charles J. Cain, CO Atty No. 51020*
          ccain@cstrial.com
          Bradley A. Kloewer, CO Atty No. 50565*
          bkloewer@cstrial.com
          Ashley N. Morgan, CO Atty No. 61713*
          Colorado Attorney No. 61713
          amorgan@cstrial.com
         **CAIN & SKARNULIS PLLC**
          P. O. Box 1064
          Salida, Colorado 81201
          719-530-3011
          512-477-5011 (Fax)
          *Appearing via Special Admission
         **ATTORNEYS FOR**
         **ERIC COOMER, Ph.D.**