# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,
      Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,
      Defendants

---

## EXHIBIT 1

---

**No. 25-13251**

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

In re PATRICK BYRNE and ATTORNEY STEFANIE LAMBERT, ESQUIRE,

### *Petitioners,*

---

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA
DIVISION

Relates to Case No.: Case No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, PhD v. PATRICK BYRNE, ET AL.,
HON. STEPHEN V. WILSON

---

## CORRECTED PETITION FOR A WRIT OF MANDAMUS
## TO THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION
## AND
## MOTION FOR STAY PENDING CONSIDERATION

---

Submitted by,

THE TICKTIN LAW GROUP
Peter Ticktin, Esquire
Counsel for Petitioners
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Phone: (561) 232-2222
Email: Serv512@legalbrains.com

<u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and Local Rule 26.1, the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of a party's stock, and other identifiable legal entities related to a party:

- United States District Judge for the Middle District of Florida, Tampa Division, Honorable

- Plaintiff – Eric Coomer, Ph D – Plaintiff

- Petitioner – Attorney Stefanie Lambert

- Petitioner – Patrick M. Byrne, Ph D – Defendant

- Defendant – Steven Lucescu

- Defendant – The America Project, Inc.

## STATEMENT OF SUBJECT MATTER JURISDICTION

This Court has jurisdiction over this Petition pursuant to the All Writs Act, 28

U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE...................... i

STATEMENT OF SUBJECT MATTER JURISDICTION ..................................... ii

TABLE OF CONTENTS ........................................................................................ iii

INTRODUCTION ..................................................................................................1

STATEMENT OF THE ISSUES ..............................................................................3

STATEMENT OF THE CASE ...................................................................................4

CONCLUSION AND RELIEF REQUESTED ......................................................19

## TABLE OF AUTHORITIES

**Cases**

*Bothmann v. Harrington*,
458 So. 2d 1163 (Fla. 3d D.C.A. 1984) ...................................................17

*Caldwell v. Compass Entm't Grp. LLC*,
2014 U.S. Dist. LEXIS 172822 (M.D. Fla. Dec. 12, 2014)......................9

*Case v Smith*,
107 Mich 416; 65 NW 279 (1895)..........................................................14

*Cosby v American Media, Inc*,
197 F Supp 3d 735 (U.S.D.C. Pa. 2016)........................................... 15, 16

*Duncan v. Merrill Lynch, Pierce, Fenner & Smith*,
646 F.2d 1020 (5th Cir.) ...........................................................................9

*Fomby-Denson v Dep't of the Army*,
247 F3d 1366 (Fed. Cir. 2001)................................................................15

*Fox v. Ritz-Carlton Hotel Co., LLC*,
2023 U.S. Dist. LEXIS 63845 (S.D. Fla. Mar. 8, 2023)...........................8

*FTC v World Wide Factors, Ltd*,
882 F2d 344 (9th Cir. 1989).....................................................................7

*In re BellSouth Corp.*,
334 F.3d 941 (11th Cir. 2003) ..................................................................8

*In re Evans*,
524 F.2d 1004 (5th Cir. 1975) ..............................................................2, 6

*King v. Whitmer*,
71 F.4th 511 (6th Cir. 2023) ...................................................................16

*Kirkland v. Nat'l Mortg. Network, Inc.*,
884 F.2d 1367 (11th Cir. 1989) ....................................................................2, 6

*Lachman v Sperry-Sun Well Surveying Co*,
457 F2d 850 (CA 10, 1972) ...............................................................................15

*McCuin v. Tex. Power & Light Co.*,
714 F.2d 1255 (5th Cir. 1983) .............................................................................9

*Peer v. Lewis*,
571 F. App'x 840 (11th Cir. 2014)................................................................ 17, 18

*Perkins Coie LLP v United States DOJ*,
___F Supp 3d___; 2025 U.S. Dist. LEXIS 84475 (DDC, May 2, 2025) .................7

*Potashnick v. Port City Construction Co.*,
609 F.2d 1101 (5th Cir. 1980) .............................................................................9

*Pottinger v. Miami*,
810 F. Supp. 1551 (S.D. Fla. 1992) ....................................................................17

*Rivera v SVRC Indus*,
338 Mich App 663; 980 NW2d 777 (2021)...........................................................15

*Smart Comm's Holding, Inc. v. Global Tel-Link Corp.*,
590 F. Supp. 3d 758 (M.D. Pa. 2022) ...................................................................8

## Statutes

18 U.S.C. § 1512 ....................................................................................... 13, 19

28 U.S.C. § 1651 ................................................................................................. ii

MCL 750.149 ......................................................................... 12, 13, 14, 15, 18

## INTRODUCTION

Mandamus relief is extraordinary.  Everything about the current posture of this case is just that.  Abandoning the predicate constitutional principles that entitles every litigant to their counsel of choice, and the bedrock understanding in this Circuit that a lawyer that appears to practice before a district court is presumed fit and competent without specific and factual findings of the contrary, which findings cannot be based on mere supposition or speculation, the District Court made the extraordinary decision to preemptively deny Petitioner Stefanie Lambert's right to appear and practice on behalf of her client, Petitioner Dr. Patrick Byrne (Byrne), despite the fact that Petitioner Lambert is a well-known and competent attorney, and, as was acknowledged by the district court judge himself, an expert in the subject matter underlying Plaintiff's defamation claims.

This was, of course, against the wishes of Petitioner, Dr. Byrne, who has a constitutional right to counsel of his choice.  Preemptive challenges against attorneys seeking to appear and practice in a particular case are viewed with great scrutiny because they are generally done to achieve some ulterior purpose.  Here, Plaintiff's counsel objected to the appearance of Petitioner Lambert because of her extraordinary skill and her intricate knowledge of the facts and circumstances underlying Plaintiff's defamation claims and her clients' defense.  This is especially important because the truth is a defense to a claim for defamation, and there is no

other attorney in the world who knows the facts and circumstances underlying Plaintiff's claims against the Petitioner, Dr. Byrne, and the truth that is critical to his defense.

An attorney may not be denied admission pro hac vice without notice and a hearing concerning specific grounds and objective findings supporting such denial, which findings rise to a level which would justify disqualification. Therefore, even prior to denial of pro hac vice status, specific fact determinations must be made and the justification must be undisputed. *Kirkland v. Nat'l Mortg. Network, Inc.*, 884 F.2d 1367, 1371 (11th Cir. 1989), citing *In re Evans*, 524 F.2d 1004, 1007 (5th Cir. 1975). Where there has been no disciplinary action taken, much less a grievance, there is no basis for a district court judge to deny a litigant's request to appear pro hac vice. As the minimum standard is, and must be, that the facts must give rise to disbarment, it would be a fundamental denial of a litigant's constitutional right to counsel of his choice *and* the attorney's constitutional rights to appear and practice because the denial would be fundamentally contrary to basic principles of due process and freedom of choice, freedom of expression, and freedom of action.

In *Evans*, *supra*, this Court ruled that mandamus would lie to compel a district court judge *to accept* the pro hac vice admission of the applying attorney – this was

an act that the district court judge could be compelled to do, and under the circumstances, was required to do, via this Court's mandamus powers.

<u>STATEMENT OF THE ISSUES</u>

I.    DOES IT VIOLATE THE LITIGANT'S CONSTITUTIONAL RIGHT TO COUNSEL OF CHOICE FOR A DISTRICT COURT TO DENY A LITIGANT'S REQUEST FOR A SPEICFIC ATTORNEY TO APPEAR PRO HAC VICE WHERE THE ATTORNEY HAS NOT BEEN DISCIPLINED, AND THUS DOES NOT DE FACTO MEET THE MIMINUM REQUIREMENT FOR DISQUALIFICATION SUFFICIENT TO BE DENIED PRO HAC VICE ADMISSION?

II.   DOES IT VIOLATE PETITIONER'S CONSTITUTIONAL RIGHTS TO BE DENIED PRO HAC VICE ADMISSION BY A DISTRICT COURT WHERE THE STANDARD FOR DISQUALIFICATION AND/OR DENIAL OF ADMISSION IS THAT THERE MUST BE FACTS SUFFICIENT TO JUSTIFY DISBARMENT, AND WHERE THERE IS NO SHOWING OF SUCH FACTS, AND EVEN MORE, NO DISCIPLINARY ACTION BASED ON FACTS, MAKING THE DISTRICT COURT'S JUDGE'S DECISION ONE OF PURE SPECULATION AND CONJECTURE?

## STATEMENT OF THE CASE

On July 16, 2025, the District Court entered an order denying Petitioner Dr. Byrne's motion for a revision of its earlier June 10, 2025, Order denying Petitioner Lambert's application on behalf of Dr. Byrne for special admission to appear and practice pro hac vice in Dr. Byrne's defense of defamation claims brought against him by Plaintiff Eric Coomer in the underlying case.

The June 10 minute order, which was accompanied by an opinion (Attachment A), provided:

> [The Court would] not restrict [Attorney] Lambert's attendance at depositions or her receipt of confidential information other than as provided in the protective order but will impose one additional requirement. If Byrne has provided or intends to provide Lambert with any confidential documents or information, Byrne is directed to file with the Court the signed undertaking by Lambert required by the protective order. Failure by Byrne or Lambert to complete the signed undertaking as ordered could subject one, or both, to sanctions including contempt of court.

Petitioner Dr. Byrne's expert counsel, Petitioner Lambert, filed an ordinary and proper motion to be admitted to practice in the manner required by the District Court's procedures, so that she may continue to represent Dr. Byrne, the latter of whom has specifically retained her and has chosen her for that purpose due to her expertise, experience, and her representation of Dr. Byrne in other matters, especially involving Dominion for whom Plaintiff in

the underlying matter worked. Plaintiff, on the other hand, sought extraordinary relief in the first instance requesting a protective order from this Court and in the process of doing so, sought the even more extraordinary relief of having Petitioner Lambert precluded, i.e., disqualified, absolutely, from practicing law in the District Court proceedings in any capacity. The Plaintiff demonstrated no reasonable basis why Petitioner Lambert's and Petitioner Dr. Byrne's First Amendment rights should be so curtailed in these proceedings from representing her client.

Indeed, as this Court must accept, the "reasons" stated by Plaintiff for seeking to preclude Petitioner Lambert from being admitted to this proceeding are based on speculation and conjecture about future events that cannot be predicted – it is a motion that was supported by an hysteria of fear about certain future events that have not and will not occur. Petitioner Lambert is a lawyer in good standing and is still actively practicing law. The fear and conjecture manifested by Plaintiff has not occurred. The District Court had no basis to conclude that Petitioner Lambert's actions and conduct justified disqualification, and Petitioner Lambert is a practicing lawyer who remains in good standing, there is no basis to have denied Petitioner Lambert's motion for pro hac vice admission. The latter is especially the case because by way

of its June 10, 2025 Minute Order, the District Court accepted the fact that Petitioner was in good standing, because it put into place necessary protections to allow her to continue assisting Petitioner Dr. Byrne in a direct representational role, while monitoring the proceedings.  If the District Court could not disqualify Petitioner Lambert on the basis of the facts at hand, and indeed, did not disqualify her absolutely, then it could not prevent her from full participation in the proceedings pro hac vice.  This, again, is contrary to Petitioner Lambert's client's wishes and First Amendment rights.  Further, Petitioner Dr. Byrne's counsel of choice is Petitioner Lambert, and it is she whom he wants to be able to question deponents, cross examine witnesses and fully participate in his defense, which is his constitutional right.

It is Petitioner Dr. Byrne's primary position that having failed to support their motion for an unlimited and unrestricted protective order, Plaintiff failed to support their motion to exclude Petitioner Lambert from the underlying proceedings and she should be admitted and allowed to practice before the District Court.  This Court should exercise its mandamus powers as it has in the past, see *Kirkland v. Nat'l Mortg. Network, Inc.*, 884 F.2d 1367, 1371 (11th Cir. 1989), citing *In re Evans*, 524 F.2d 1004, 1007 (5th Cir. 1975), to allow Petitioner Lambert to continue in a direct representational role for Petitioner

Dr. Byrne, such that Lambert should be allowed to be present in all court proceedings, including depositions, negotiations among counsel that take place outside of the courtroom, and present at counsel's table for all proceedings held in the courtroom. This will allow Petitioner Dr. Byrne to have the benefit of his choice of counsel, protect his and Petitioner Lambert's due process and other constitutional rights to representation of choice, and further will allow this Court to supervise and control, and otherwise direct the parties and their counsel in the conducting of these proceedings. At the same time, Petitioner Lambert will be able to provide Petitioner Dr. Byrne and local counsel with the necessary advice and counsel that is commensurate with her recognized expertise in these matters.

The choice of counsel and the right to representation are deeply rooted in constitutional protections under the First Amendment and the Due Process Clause. *FTC v World Wide Factors, Ltd*, 882 F2d 344 (9th Cir. 1989). These rights are often examined in the context of criminal and civil proceedings, as well as in administrative and procedural settings, where the ability to select counsel of choice intersects with broader constitutional guarantees such as freedom of association, access to justice, and procedural fairness. *FTC, supra.* See also, *Perkins Coie LLP v United States DOJ*, ___F Supp 3d___; 2025 U.S. Dist. LEXIS 84475 (DDC, May

2, 2025) (litigants cannot achieve disqualification of counsel for strategic reasons and to avoid the inevitable outcome that sophisticated and expert counsel will bring to the opposing party's cause – fear of the truth and the outcome of a case cannot be avoided by the tactical and ethically questionable use of disqualification or worse, infringing on the fundamental constitutional freedoms of association, choice, speech, and rights to representation in all legal proceedings in the United States of America). Due process will almost always outweigh the opposition's fear mongering and attempts to avoid defeat by targeting and removing competent counsel from legal proceedings. *Id*. Such methods harken back to the dark days of the civil rights movement where lawyers and litigants were routinely precluded from appearing and being represented, respectively, on the basis of dubious and targeted procedural attacks on their character and fitness. *Id*. Thus, choice of counsel has become one of significant concern and the right to be represented by counsel of one's choice is protected under the Fifth Amendment Due Process Clause for all civil litigants. *Id*. See also *Fox v. Ritz-Carlton Hotel Co., LLC*, No. 17-CV-24284-SINGHAL/REID, 2023 U.S. Dist. LEXIS 63845, at *5 (S.D. Fla. Mar. 8, 2023), citing *In re BellSouth Corp.*, 334 F.3d 941, 955 (11th Cir. 2003) and *Smart Comm's Holding, Inc. v. Global Tel-Link Corp.*, 590 F. Supp. 3d 758, 763 (M.D. Pa. 2022) (noting that the Fifth Amendment "guarantees civil litigants the right to retained counsel, which ordinarily

includes the right to be represented by counsel of their choice").  "The right to

counsel in civil cases is…fundamental and springs from both statutory authority and

from the constitutional right to due process of law." *McCuin v. Tex. Power & Light*

*Co.*, 714 F.2d 1255, 1262-63 (5th Cir. 1983), citing *Duncan v. Merrill Lynch, Pierce,*

*Fenner & Smith*, 646 F.2d 1020, 1025 n. 6 (5th Cir.), cert. denied, 454 U.S. 895, 102

S. Ct. 394, 70 L. Ed. 2d 211 (1981).

Any discussion concerning the exclusion of counsel from a specific

proceeding "must begin with the principle, grounded in the Due Process Clause of

the Fifth Amendment, that a party has the right to be represented by counsel of his

choice." *Caldwell v. Compass Entm't Grp. LLC*, No. 6:14-cv-1701-Orl-41TBS, 2014

U.S. Dist. LEXIS 172822, at *4-5 (M.D. Fla. Dec. 12, 2014), citing *Potashnick v.*

*Port City Construction Co.*, 609 F.2d 1101, 1117-18 (5th Cir. 1980).  "[I]f a court

were arbitrarily to refuse to hear a party by counsel, employed by and appearing for

him, it reasonably may not be doubted that such a refusal would be the denial of a

hearing, and, therefore, of due process in the constitutional sense."  *Id*. (internal

citations and quotations omitted).

In considering the constitutional concerns raised by a party's attempt to

exclude another party from having their counsel of choice represent them at legal

proceedings, the Court is cautioned to balance the alleged "harm" to the movant

against the harm that will be caused by the complete exclusion of retained expert
counsel.

Petitioner Lambert is the foremost leading expert in the subject-matter
underlying the Plaintiff's defamation claims. The Plaintiff has sought, and largely
succeeded, in preventing the leading expert legal counsel on claims concerning
Dominion, for whom Plaintiff worked, to be present to defend Petitioner Dr. Byrne
where critical information and truth of facts are determinative and dispositive as to
Plaintiff's claim. Thus, Dr. Byrne's defense is directly impacted by the Court's
decision to exclude Petitioner Lambert, which Plaintiff's "alleged" harms or based
of speculation and conjecture – they have not and will not come to pass, because this
Court retained control and jurisdiction over the process and can alter the conduct of
the parties and take measured corrective actions as the proceedings progress. There
is literally *no harm* that can occur to the Plaintiff under this scenario, but there is
*great and irreversible harm* that will occur by the District Court's excluding
Petitioner Lambert from full participation.

The latter is objective harm and constitutionally-based prejudice inflicted
directly on the Defendant/Petitioner, Dr. Byrne. It is his constitutional right to have
counsel of choice, and that means full participation by Petitioner Lambert, who has

the knowledge and expertise to defend Dr. Byrne by fully participating in the proceedings.

Moreover, there are less objectionable and constitutionally suspect means of controlling a legal proceeding than excluding counsel altogether. It appears by way of its minute orders that the District Court at least implicitly recognized this because it has allowed Petitioner Lambert to continue to be present at all depositions. While Dr. Byrne would urge the Court to reverse its order and allow Petitioner Lambert full admission for these proceedings to represent him, which would significantly reduce the costs and the needs and resources to associate further and additional counsel (with all that requires in terms of bringing another attorney up to speed on the facts and procedural posture of the case), there is no reason not to allow her to fully participate. Moreover, it is her expertise and knowledge that Dr. Byrne needs, so that Petitioner Lambert can ask questions at depositions, fully participate in the cross-examination of witnesses, and present Dr. Byrne's defense to the jury.

Furthermore, factual misrepresentations formed the basis of District Court's initial opinion because the Plaintiff, and the District Court in the District of Columbia failed to clarify that Petitioner Lambert did not in fact disclose or otherwise divulge protected information once the District Court imposed those restrictions on her. It was alleged that Petitioner Lambert went on podcasts and

11

disclosed additional information, but this is simply not the case.  Her quoted and recorded statements clearly indicated that she was aware that she was subject to and bound by the District Court's order and she stated this in those interviews. Therefore, she did not disclose any information.  In fact, Petitioner Lambert merely referred to a criminal investigation against Dominion that had already been underway years before the District Court proceedings in the District of Columbia.

Further, contrary the references to the interviews and podcasts in which Petitioner Lambert participated, there was no statement that violated the protective order, or the status quo order in the proceedings before the District of Columbia. Indeed, the references to those orders were only made where Petitioner Lambert confirmed that she was not able to divulge certain information as a result. Everything that was discussed by Petitioner Lambert dealt with law and the application of the law, not the facts or any violation of the protective order.

In this case, the Plaintiff has benefited from the misstatements of fact in the District of Columbia proceedings, because the District Court relied upon them, and Petitioner Lambert was not given the opportunity to rebut the allegations in the instant proceedings.  The reality is that the Plaintiff's motion was based on the District Court's erroneous misstatements of fact.  Moreover, Petitioner Lambert was bound by Michigan law, where she is licensed to practice, to report suspected

criminal wrongdoing.  See MCL 750.149 (making it a crime for one with knowledge
to conceal commission of a crime) and 18 U.S.C. § 1512 (making it unlawful to
penalize or otherwise punish one for reporting criminal activity).

Having dispelled the allegation that she violated the protective order after the
District Court in the District of Columbia imposed additional restrictions, the legal
argument that Petitioner Lambert had an ethical and legal obligation to follow the
law in Michigan and report crimes to law enforcement has also been misstated.
Petitioner Lambert, an experienced litigation attorney in the underlying subject
matter and as someone who served as a prosecutor for a decade and then as a criminal
defense attorney, brought to the attention of law enforcement significant criminal
wrongdoing on the part of Dominion, its agents, employees, and contractors.  Under
both Michigan law and federal law, it is required to report criminal conduct to
authorities. See MCL 750.149 (making it a crime for one with knowledge to conceal
commission of a crime) and 18 U.S.C. § 1512 (making it unlawful to penalize or
otherwise punish one for reporting criminal activity).  Even if disqualification stands
in the District of Columbia proceedings, Petitioner Lambert is in good standing and
practicing law.

Thus, the District Court, in the instant case, had no basis to conclude that
Petitioner Lambert's actions and conduct warranted disqualification or denial of her

application for admission. While the District Court at first sided with Plaintiff's superficial argument, the reality is that there is more to the requirement to disclose criminal activity in the State of Michigan, and no "agreement" or court order, can prohibit what is required by the criminal law and an obligation. Petitioner Lambert, who lives and works in Michigan, was required by Michigan law to disclose suspected criminal activity to law enforcement. See MCL 750.149. This provision, entitled "Compounding or concealing offense; Penalty" provides:

> Any person having knowledge of the commission of any offense punishable with death, or by imprisonment in the state prison, who shall take any money, or any gratuity or reward, or any engagement therefor, upon an agreement or understanding, express or implied, to compound or conceal such offense, or not to prosecute therefor, or not to give evidence thereof, shall, when such offense of which he or she has knowledge was punishable with death, or imprisonment in the state prison for life, is guilty of a felony; and where the offense, of which he or she so had knowledge, was punishable in any other manner, he or she is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00.
> Further, one cannot draft or propose a protective order or contract that would

ever prohibit the disclosure of a crime to authorities. Such agreements would be considered void and unenforceable as they are contrary to public policy. If it were otherwise, any corporation or entity could conceal crimes or enter into such sweeping protective orders to avoid criminal investigation and prosecution. The Michigan Supreme Court has clearly stated that any contract whose consideration is to conceal a crime or stifle a prosecution is repugnant to public policy and therefore

14

void. See, e.g., *Case v Smith*, 107 Mich 416; 65 NW 279 (1895). Additionally, the

Michigan Court of Appeals has reinforced this principle, noting that contracts

intended to conceal a crime or prevent prosecution violate public policy and are void.

Furthermore, MCL 750.149, already noted, also criminalizes agreements to

conceal an offense or not to prosecute, reflecting a strong public policy against such

contracts. See also, *Rivera v SVRC Indus*, 338 Mich App 663; 980 NW2d 777

(2021). Therefore, courts have consistently held that agreements construed to bar a

party from reporting another party's alleged misconduct to law enforcement

authorities for investigation and possible prosecution violate public policy and are

therefore unenforceable. See, e.g., *Fomby-Denson v Dep't of the Army*, 247 F3d

1366 (Fed. Cir. 2001), *Cosby v American Media, Inc*, 197 F Supp 3d 735 (U.S.D.C.

Pa. 2016), and *Lachman v Sperry-Sun Well Surveying Co*, 457 F2d 850 (CA 10,

1972).

In *Fomby*, *supra*, the federal circuit emphasized that enforcing such

agreements would violate a well-defined and dominant public policy, citing multiple

precedents that support the principle that agreements to conceal information relevant

to the commission of a crime are not favored by the law. Accord, *Cosby*, *supra*.

Similarly, in *Lachman*, *supra*, the Tenth Circuit held that it is public policy to

encourage the disclosure of criminal activity and declined to enforce a nondisclosure

agreement that would have prevented the reporting of a possible crime. Accord, *Fomby*, *supra*. Additionally, the Restatement (First) of Contracts and other secondary authorities also support the view that contracts or agreements aimed at concealing or compounding a crime are illegal and contrary to public policy. *Cosby*, *supra*. Therefore, any contract or agreement that by design seeks to prohibit the disclosure of a crime to authorities would be unenforceable under both Michigan and federal law. Furthermore, as an aside, not even attorney-client privilege would prevent the disclosure of suspected criminal activity. Undersigned had not only a duty, but an absolute right to report the suspected criminal activity to law enforcement in Michigan.

Finally, the Petitioner Lambert remains in good standing in the State of Michigan, she in fact prevailed in those cases that the Plaintiff misrepresents, and in which she was attempted to be sanctioned by lawyers and officials weaponizing the system of justice and using it to prevent Mrs. Lambert from defending her clients and seeking justice. See *King v. Whitmer*, 71 F.4th 511, 531 (6th Cir. 2023).

Again, Petitioner Dr. Byrne would renew his request to this Court to direct the District Court to actually sanction the Plaintiff for their abuse of the court's processes. The Plaintiff stated irrelevancies and allegations that have not been proved and have in fact been based on actions Petitioner Lambert took in the

representation of her clients per a court order and state statutes specifically authorizing the legal representation she undertook in Michigan.  The Plaintiff's accusations were unsupported by fact, witness, or affidavit.  Rather, they were successful attempts to skew the District Court's perspective to prevent Dr. Byrne from having his chosen counsel represent him – this is a textbook example of abuse of process – attempting to achieve an ulterior motive in the exercise of a perverted use of the court's processes.  Here, by filing an "emergency motion" for a protective order, a process that is not even used for disqualification of counsel, this extraordinary and disproportionate use of process was perverted in an attempt to disrupt the proceedings (stop Petitioner Lambert from representing Dr. Byrne) and to achieve an ulterior and unlawful motive not recognized by the law.  *Peer v. Lewis*, 571 F. App'x 840, 845-46 (11th Cir. 2014) (the district courts have inherent authority to stamp out attorney's use of politically motivated and weaponized filings that seek to achieve an ulterior result than that for which the particular process is being advanced).  See also, *Pottinger v. Miami*, 810 F. Supp. 1551, 1566 (S.D. Fla. 1992) (citing *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 (Fla. 3d DCA 1984) and applying Florida law, and stating abuse of process arises "when there has been perversion of court process to accomplish end which process was not intended by law to accomplish, or which compels party to do some collateral thing he could not

17

legally be compelled to do."). It is an abuse of process to seek a protective order under Rule 26 for the sole purpose of preventing a litigant from being represented by competent counsel. Abuse of process includes the filing of frivolous emergency motions which contain misrepresentations, upset the court's schedule, and attempt to blindside litigants and their counsel and disrupt the proceeding and ultimately derail the litigant's defense. This is generally sanctionable conduct and the court, under its inherent power, can sua sponte decide that an abuse of process has occurred. *Peer*, *supra*.

Petitioner Lambert was disqualified as counsel for following her legal and ethical obligation to report suspected criminal activity to law enforcement, which was revealed during discovery. Mrs. Lambert is in good standing and remains practicing law. This is a *de facto* abuse of the District Court's discretion, because there is no basis in this Circuit for it to have applied the standard that it did to the decision to preclude Dr. Byrne's counsel of choice from representing him.

Petitioner Lambert is an experienced litigation attorney in the underlying subject matter and who served as a prosecutor for a decade and then as a criminal defense attorney, brought to the attention of law enforcement significant criminal wrongdoing on the part of Dominion, its agents, employees and contractors. Under both Michigan law and federal law, it is required to report criminal conduct to

authorities.  MCL 750.149 (making it a crime for one with knowledge to conceal commission of a crime) and 18 U.S.C. § 1512 (making it unlawful to penalize or otherwise punish one for reporting criminal activity).  Further, the district court's decision in that matter is currently on appeal.  *Dominion v. Byrne*, United States Court of Appeals for the Third Circuit, Case No. 24-7195.  Finally, Mrs. Lambert is in good standing in the State of Michigan, has not been sanctioned and in fact prevailed in those cases in which she was attempted to be sanctioned by lawyers and officials weaponizing the system of justice and using it to prevent Mrs. Lambert from defending her clients and seeking justice.

## CONCLUSION AND RELIEF REQUESTED

Petitioner Dr. Byrne retained Petitioner Lambert as special counsel because Mrs. Lambert is an experienced attorney and an expert in election fraud and, particularly, in Dominion cases.  Dr. Byrne has retained Petitioner Lambert in other matters as well because of her expertise in this particular area of the law.  Mrs. Lambert was a prosecutor for over a decade in Wayne County Michigan (Detroit) and has since been a criminal defense attorney and has specialized most recently in election fraud cases and defense of the many individuals who were subjected to prosecution due to the weaponization of the criminal justice system against anyone questioning the integrity of elections in the United States.  Attorney Stefanie

Lambert is in good standing, has been retained as counsel for Dr. Byrne, and must presumptively be allowed to participate in his defense.

For the foregoing reasons, Petitioner Lambert and Petitioner Dr. Byrne respectfully requests that this Court grant their petition for a writ of mandamus, or in the alternative, grant Petitioner's appeal; direct the District Court to vacate its orders denying pro hac vice admission to Petitioner Lambert; and issue a stay of all proceedings in the District Court pending the determination of this Petition and, if the Petition is granted, until such time that it is decided.

Respectfully submitted by:

Dated: September 22, 2025

*/s/ Peter Ticktin*
Peter Ticktin, Esquire
**THE TICKTIN LAW GROUP**
Counsel for Petitioner
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Phone: (561) 232-2222
Email: Serv512@LegalBrains.com

<u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY under Federal Rule of Appellate Procedure 32(g)(1) that this petition complies with the word limit set forth in Federal Rule of Appellate Procedure 21(d)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), that it contains 4.510 words.

This petition also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Respectfully submitted by:

Dated: September 22, 2025

*/s/ Peter Ticktin*
Peter Ticktin, Esquire
**THE TICKTIN LAW GROUP**
Counsel for Petitioner
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Phone: (561) 232-2222
Email: Serv512@legalbrains.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 22, 2025, I electronically filed the

foregoing with the Clerk of the Court by using the appellate CM/ECF system.

Service has been accomplished via e-mail and third-party commercial carrier to all

counsel of record and the District Court Judge.

By:

<u>*/s/ Peter Ticktin*</u>

Peter Ticktin, Esquire

*Counsel for Petitioners*
