IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,
    Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,
    Defendants

---

**PLAINTIFF'S TIME-SENSITIVE MOTION FOR PROTECTIVE ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(c)**

---

Plaintiff Eric Coomer, Ph.D. (Plaintiff or Dr. Coomer) files this Motion for Protective Order Pursuant to Federal Rule of Civil Procedure 26(c), and requests expedited consideration by the Court **prior to the deposition scheduled in this case on January 27, 2026**.

### I.   Summary of Relief Sought

1.   Plaintiff seeks a protective order concerning the scope of inquiry during his upcoming deposition in an effort to efficiently conduct discovery and avoid harassing and oppressive deposition conduct. Pursuant to Local Rule 3.01(f), M.D. Fla. (2025), Plaintiff requests an order issued on or before January 26, 2026, in order to avoid the inefficiency and expense associated with filing of one or more motions pursuant to Federal Rule of Civil Procedure 30(d)(3). Alternatively, if the Court is unable to rule on the matters raised herein

1

prospectively, Plaintiff requests that the Magistrate Judge be available to the extent possible for resolution of any intractable disputes that cannot be resolved by the parties during the deposition. *See* Middle District Discovery (2021) at § II.B.5.

2. As outlined below, Defendant Patrick Bryne (Byrne) intends to inquire into deposition topics involving alleged foreign election interference in the 2020 Presidential election, mostly notably conspiracy theories involving Venezuela, and other related topics not material to this litigation. He does so while simultaneously suggesting (without evidence) that Plaintiff is on the precipice of a federal criminal indictment regarding these claims.

3. These allegations have no relevance to this case, which is based on defamatory statements made in the movie *The Deep Rig* (2021). The only overlap on a Venn diagram between the Venezuelan claims and those in *The Deep Rig* is that both involve claims of election rigging. But, there have been countless election fraud claims made following the 2020 Presidential election. Virtually all of those prior claims have been dismissed outright for lack of foundational support. Many have resulted in sanctions against the parties and their counsel. These latest conspiracy theories, while not asserted as a specific defense in this case, fall squarely within the same bucket.

4. Plaintiff's deposition is not the forum to fish for information concerning these collateral matters, especially where Defendant Byrne's counsel has implied inside knowledge about a putative criminal investigation into these

2

matters and has used the threat of such an investigation in an apparent effort to intimidate Dr. Coomer. Hence, Plaintiff seeks guidance from the Court and an appropriate protective order limiting the scope of Plaintiff's deposition to the claims and defenses actually at issue *in this case and arising from the allegations made in the movie*.

## II.     RELEVANT BACKGROUND

5.     In *The Deep Rig*, Plaintiff was identified as the insider at Dominion Voting System who allegedly possessed the ability to rig the 2020 Presidential Election and purportedly confessed to doing so in a call with "Antifa" activists.[1] The movie did not allege that Dr. Coomer conspired with foreign actors in Venezuela, Serbia, and/or China as part of the alleged plot to overthrow the 2020 Presidential election. Those allegations have only surfaced years after the movie was published and are now being championed by Defendant Byrne's current and former attorneys.

6.     On July 8, 2025, Peter Ticktin appeared in this case on behalf of Patrick Byrne (Doc. 218), following the issuance of the June 10, 2025 Order Denying Motion to Appear *Pro Hac Vice* of Stefanie Lambert (Doc. 214). Ms. Lambert's motion had been denied because of conduct in the *Dominion* case that parallels the concerns raised in this Motion.

---

[1] https://caincloud.egnyte.com/dl/ycf3qJrk3dDH.

7.      According to public reporting and his own self-reporting, Mr. Ticktin is a long-time friend and ally of President Trump, having first met while they attended the New York Military Academy in the early 1960s.[2] Among other things, he previously represented President Trump in a lawsuit against Hillary Clinton.[3] This case was eventually dismissed by U.S. District Judge Donald Middlebrooks, who sanctioned the legal team, including Mr. Ticktin, for filing a lawsuit based on "political grievances masquerading as legal claims." **Exhibit 1**.[4]

8.      More recently, Mr. Ticktin is reported to have hand-delivered a collection of eleven pardon applications to the Justice Department's Pardon Attorney on behalf of January 6 rioters, including for Oath Keepers founder Stewart Rhodes.  Mr. Rhodes and the other rioters were pardoned on the first day of President Trump's second term of office.

9.      On November 11, 2025, Mr. Ticktin sent Plaintiff's counsel an email that was co-written by Ms. Lambert with the reference line of "CONFIDENTIAL SETTLEMENT OFFER." **Exhibit 2**.  In the email, Mr. Ticktin accused Plaintiff of being involved in "election law violations, money laundering, bribery, fraud, treason, etc."  Mr. Ticktin's email referenced putative ongoing federal criminal

---

[2] https://www.politico.com/news/2025/05/27/ed-martin-stewart-rhodes-jan-6-pardon-00371222

[3] https://www.heraldtribune.com/story/news/politics/2022/03/28/donald-trump-florida-lawyer-peter-ticktin-has-longtime-ties-former-president/7166454001/

[4] https://storage.courtlistener.com/recap/gov.uscourts.flsd.610157/gov.uscourts.flsd.610157.284.0.pdf

4

investigations but promised that if Plaintiff agreed to cooperate with investigators, Mr. Ticktin could arrange "full immunity" from federal prosecution and assistance in entering the Witness Protection Program.  To accomplish this goal, Mr. Ticktin offered that he and Ms. Lambert join Plaintiff's legal team with his client, Bryne, waiving any conflict of interest.[5]

10. On November 14, 2025, Mr. Ticktin entered an appearance as counsel for Patrick Byrne in *U.S. Dominion, Inc., v. Patrick Byrne*; Case 1:21-cv002131-CJN-MAU (USDC Dist. of Columbia).  **Exhibit 3**.  This appearance followed Ms. Lambert's disqualification as counsel in that case.

11. On December 7, 2025, Mr. Ticktin sent a letter to President Trump's Pardon Attorney to request a pardon for convicted Mesa County Clerk Tina Peters. **Exhibit 4**.  Ms. Peters is currently serving a nine-year sentence in Colorado for election-related crimes.[6]  President Trump ultimately issued a federal pardon to Ms. Peters for her conviction for violations of Colorado state law.

12. On December 23, 2025, Mr. Ticktin's associate, David Perry II, served requests for production seeking a wide range of documents concerning matters

---

[5] Mr. Ticktin has had his license to practice law suspended twice by the Florida Bar, including for a "blatant disregard for the rules governing conflict of interest." https://caselaw.findlaw.com/court/fl-supreme-court/1090898.html; *see also* https://www.cbsnews.com/miami/news/foreclosure-attorney-practices-coming-under-fire/. The November 11 email brings the concept of blatant disregard for the rules governing conflicts of interest to a new zenith.  Unless Plaintiff dismissed his case against Defendant Byrne, then at trial Mr. Ticktin would be both cross-examining his client (Dr. Coomer) on behalf of another client (Patrick Byrne) that Dr. Coomer had sued while Mr. Ticktin was contemporaneously representing Dr. Coomer in defense of criminal prosecution concerning the same subject matter.

[6] https://coloradonewsline.com/2025/12/08/tina-peters-trump-pardon-2/

outside the scope of the allegations made in *The Deep Rig*. **Exhibit 5**. By way of example, Defendant Byrne seeks multiple irrelevant admissions related to Dr. Coomer's interactions with individuals from foreign countries regarding voting systems.

13. On January 5, 2026, Mr. Ticktin filed a Motion to "Fully Lift Protective Order" in the *Dominion* case. **Exhibit 6**. He did so based on allegations that Dominion (and Plaintiff) were "guilty of crimes to the highest order, including but not limited to sedition by massively manipulating the election data/tally of the votes across the country." *See id.* at p. 2. He accused Dr. Coomer of participating in an "ongoing 25-year conspiracy"[7] with persons working with and for Venezuela, Serbia, and China to commit election fraud and placed Dr. Coomer at the head of the conspiracy at Dominion. *See id.* at pp. 2-8.

14. The January 5 Motion corresponds with reporting of recently published reports of a Venezuelan tie to the conspiracy theories of the rigging of the 2020 Presidential election.[8] Those claims dramatically increased following the military actions involving Venezuela and the capture of Nicolas Maduro. President Trump has personally revived this narrative in connection with these events and his long-standing claims that the 2020 Presidential election was rigged.[9]

---

[7] Plaintiff was employed in the election industry for sixteen years.

[8] *See, e.g.*, https://www.theguardian.com/us-news/2025/nov/21/trump-doj-venezuela-2020-election

[9] https://www.forbes.com/sites/alisondurkee/2026/01/05/trump-pushes-conspiracy-that-venezuela-helped-biden-win-after-maduros-capture/

6

15. On January 10, 2026, Mr. Ticktin filed a "Joint Status Report" in the *Dominion* case. **Exhibit 7**. In Mr. Ticktin's section of the report, he again placed Dr. Coomer, as the "head of the U.S. Division of Dominion," and accused him of criminal conduct by rigging the 2020 Presidential election. *See id.* at pp. 14-16. This claim was made despite the fact that Mr. Ticktin represented to the court that he "has yet to receive access to any of the '3,655,190 documents'" produced by Dominion. *Id.* at p. 16.

### III. ARGUMENT AND AUTHORITIES

16. Pursuant to Rule 26 (c)(1), the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Among other things, a protective order may "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c)(1)(D). The party seeking a protective order bears the burden of showing good cause. *Florida v. United States,* 342 F.R.D. 153, (N.D. Fla. July 12, 2022); *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). That burden is met upon a showing that "specific prejudice or harm will result if no protective order is granted." *Florida*, 342 F.R.D. at 156; *Hodge v. Tide Tamer Indus., Inc.*, No. 4:19cv575, 2020 WL 7634228, at *1 (N.D. Fla. Mar. 16, 2020). Determining if good cause has been shown requires the court to balance the parties' competing interests. *Id.* District courts have "broad discretion . . . to decide when a protective

7

order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

17. It has become increasingly apparent to Plaintiff's counsel that Defendant Byrne and his counsel seek to use the deposition of Dr. Coomer for improper purposes, *e.g.* political grievances masquerading as legal claims, that are unrelated to any claim or defense asserted in this case. Here, while the movie *The Deep Rig* alleges several claims about election-rigging, including that Plaintiff confessed to rigging the election as part of a call with an extremist left-wing Antifa group, the election-rigging claims are not predicated on an international conspiracy involving Venezuela, Serbia, or China, or other accusations of criminal conduct such as money laundering or bribery of public officials. *See* Plaintiff's Second Amended Complaint (Doc 197).[10] Nor did *The Deep Rig* contain any hint of an allegation that, as Mr. Ticktin now claims, the "Dominion brand name was just a new shell to conceal Venezuela, Serbia, and China's access to the US election equipment and data." *See* Ex. 6 at 4. These new allegations have, by Mr. Ticktin's own admission, only recently come to his attention through the Smartmatic indictment (which involves bribery claims against Smartmatic[11] and three of its

---

[10] The sole reference in the Second Amended Complaint to Venezuela is attributed to Rudy Giuliani and Sidney Powell. *See* Plaintiff's Second Amended Complaint at p. 21, ¶ 33. (Doc. 197).

[11] Smartmatic is a separate election technology vendor that is one of Dominion's competitors.

executives with bribery and money laundering related to the 2016 Philippine national elections).[12]

18.   Instead, the allegations in Plaintiff's operative pleading about the defamatory content of *The Deep Rig*, are contained in Section H entitled, "*The Film defames Dr. Coomer.*"  *See id.* at pp. 53-64.  This section details the film's references to fraud in six specific cities (¶ 91); the injection of votes for Joe Biden in Arizona and Pennsylvania (¶ 92); discussions about Antifa and Marxist ideology (¶ 93); background into Joe Oltmann (¶¶ 94-95); details about the debunked "Antrim Report" (¶ 97); claims about the adjudication feature of Dominion voting equipment (¶ 98); the fabricated story about Plaintiff confessing to rigging the election on an Antifa conference call (¶¶ 101-104); realizations about Plaintiff's role in the adjudication function (¶¶ 105-106); an explanation of Joe Oltmann's election conspiracy "flow chart" (¶ 107); and allegations of fraud in Maricopa County, Arizona (¶ 111).

19.   While these issues are fair game, Mr. Ticktin has represented that he and Ms. Lambert are intimately involved in ongoing criminal investigations to the point where he can promise "immunity" and other benefits in exchange for Plaintiff's cooperation in these alleged federal investigations. *See* **Exhibit 2**.  He has made these statements while also serving in a hyper-partisan public role in support of renewed claims of election-rigging involving foreign countries.  Most of

---

[12] https://www.justice.gov/usao-sdfl/pr/voting-machine-company-charged-philippine-bribery-and-money-laundering-scheme

these allegations appear to be based on Defendant's counsel interpretation of documents leaked by Ms. Lambert in the *Dominion* case. These documents remain subject to a protective order and Defendant's counsel does not have legal access to them. Nor has Plaintiff had access to the Dominion documents after he was placed on leave shortly after the 2020 Presidential election claims were first published. Nonetheless, Defendant Byrne's counsel is of the publicly-stated belief that an expansive conspiracy exists involving Plaintiff and foreign countries to facilitate outside interference in American elections.

20. In this context, it is apparent that Defendant Byrne intends to go well beyond the matters relevant to the claims and defenses in this lawsuit and, instead, use the deposition of Plaintiff as a fact-finding mission for matters far outside its scope. This constitutes an improper use of the discovery process for which a protective order is generally prescribed.

21. Moreover, as this Court was apprised of during the last status conference on December 17, 2025, Mr. Ticktin's claim that there is an open criminal investigation into Dr. Coomer—if taken as true—has potential implications for Dr. Coomer's Fifth Amendment right against self-incrimination. The Fifth Amendment right against self-incrimination exists whenever a person is subject to compelled or coercive questioning—whether in a civil or criminal case or investigation—if the answer could be used in a criminal investigation or prosecution. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977). It protects compelled responses not only to questions going to the heart a potential criminal

prosecution, but also to innocuous questions that could nonetheless "furnish a link in the chain of evidence needed to prosecute" the person. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). This would include, by way of example, innocuous information about proximity or access that—when combined with perjured testimony of foreign nationals—could be used to establish a vindicative prosecution.

22. Of critical importance here, the Fifth Amendment right against self-incrimination protects the innocent just as much as it protects the guilty, especially where, as here, an innocent individual is at risk of being "ensnared by ambiguous circumstances." *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (cleaned up). As Chief Justice Warren explained:

> The privilege against self-incrimination is a right that was hard-earned by our forefathers. The reasons for its inclusion in the Constitution—and the necessities for its reservation—are to be found in the lessons of history. As early as 1650, remembrance of the horror of Star Chamber proceedings a decade before had firmly established the privilege in the common law of England. Transplanted to this country as part of our legal heritage, it soon made its way into various state constitutions and ultimately in 1791 into the federal Bill of Rights. The privilege, this Court has stated, 'was generally regarded then, as now, as a privilege of great value, a protection to the innocent though a shelter to the guilty, and **a safeguard against heedless, unfounded, or tyrannical prosecutions**.

*Quinn v. United States*, 349 U.S. 155 (1955) (quoting *Twining v. State of New Jersey*, 211 U.S. 78 (1908)).

23. Ordinarily, Dr. Coomer would have no concern whatsoever that his testimony could be used to prosecute him, because he has done nothing wrong. Rather it is Defendant Byrne's counsel who has falsely defamed him with claims of

11

participation in a vast international conspiracy to rig the 2020 Presidential election that have already been widely disproved. Indeed, Dr. Coomer has testified in deposition or at trial on at least six occasions in other cases that challenge similar defamatory statements. But Mr. Ticktin's threats against Dr. Coomer have ensured that the upcoming deposition will be no ordinary affair, creating exactly the kind of "ambiguous circumstances" that the Fifth Amendment was designed to protect against. This constitutes the type of prejudice that a protective order is designed to prevent as the prejudice to Plaintiff would be extreme, especially given the recent statements are found nowhere in *The Deep Rig* and, thus, cannot plausibly be argued to be relevant to Defendant Byrne's mental state or his affirmative defense of substantial truth.

24. Thus, there is now a very real risk that the deposition will be used to harass Dr. Coomer and probe matters related to Mr. Ticktin's bizarre, baseless theories of criminal activity that are wholly unrelated to the defamatory statements at issue in this litigation. The fact that Mr. Ticktin has held himself as affiliated in some way with the purported criminal investigation makes the Fifth Amendment consideration all the more pointed. *See United States v. Connolly,* No. 16 CR. 0370 (CM), 2019 WL 2120523, at *10 (S.D.N.Y. May 2, 2019) (considering private parties to be "de facto" Government actors for Fifth Amendment purposes where the government "outsource[ed] its investigation" to those private actors).

25. For that reason, it is critical that the Court establish guardrails to prevent Dr. Coomer's deposition from devolving into a fishing expedition about an

alleged "25-year conspiracy involving Dr. Coomer and Dominion working with and for Venezuela, Serbia, and China, to illegally access US voting equipment to modify election and tally data prior to the certification of US election contests." *See* **Exhibit 6** at pp. 3-4.

26. To be clear, there are literally hundreds of conspiracy theories that have permeated the internet since the 2020 Presidential election. *The Deep Rig* addresses only a very small fraction of those theories. An unbridled deposition will, without a doubt, result in an early suspension in order to file the appropriate motion pursuant to Federal Rule of Civil Procedure 30(d)(3). As a result, this Motion is brought to avoid unnecessary delay and expense associated with that likely outcome.

### IV.   REQUEST FOR RELIEF

For all of the reasons stated herein, Plaintiff Eric Coomer, Ph.D. requests the Court enter a protective order that prohibits Defendants from inquiring into subject matter during Dr. Coomer's deposition that:

- is premised on information or data made public by Stefanie Lambert in violation of the protective order issued in the *Dominion* case;

- relates to an alleged international conspiracy involving Venezuela, Serbia, China and/or other foreign nations;

- relates to other accusations of criminal conduct such as money laundering or bribery of public officials;

- relates to the allegation that "the Dominion brand name was just a new shell to conceal Venezuela, Serbia, and China's access to US election equipment and data";

13

- relates to the allegation regarding alleged VPN access to ballot images; and

- relates to the allegations regarding source code changes past certification; honest service fraud running old versions yet misleading municipalities with splash screens displaying the expected version; implementing and distributing versions incapable of counting write-in candidates with no disclosure to state or municipal government.

Eric Coomer, Ph.D. requests such other and further relief as the Court deems equitable and just.

Respectfully submitted this 16th day of January 2026.

                                              Respectfully submitted,

                                              */s/ Charlie Cain*
Charles J. Cain, CO Atty No. 51020*
ccain@cstrial.com
Bradley A. Kloewer, CO Atty No. 50565*
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011
512-477-5011 (Fax)
*Appearing via Special Admission

Ashley N. Morgan*
Texas Bar No. 24091339
Colorado Attorney No. 61713
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)
*Appearing via Special Admission

**ATTORNEYS FOR PLAINTIFF**

**LOCAL RULE 3.01(G) CERTIFICATION REGARDING CONFERRAL**

Movant certifies:

(A)   that he has conferred with Defendants regarding the relief requested;

(B)   that Defendant Patrick Byrne is opposed to the relief requested;

(C)   that Defendants Steven Lucescu and The America Project, Inc. take no position with respect to the relief requested; and

(D)   that conferral regarding the relief requested herein with Defendants was via multiple email communications.