IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:24-cv-00008-TPB-SPF

ERIC COOMER,

    Plaintiff,

v.

PATRICK BYRNE, STEVE LUCESCU, and THE AMERICA PROJECT INC.,

    Defendants.

_____/

### PATRICK BYRNE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S TIME-SENSITIVE MOTION FOR PROTECTIVE ORDER

The Defendant, Patrick Byrne, by and through his undersigned counsel, hereby files his Response in Opposition to the Plaintiff's Time-Sensitive Motion for Protective Order (hereinafter the "Motion"), and in support thereof states:

### Prefatory Statement

The claims of the Plaintiff, Eric Coomer, in the above-styled case arose from statements made in a movie, *The Deep Rig*, which was allegedly produced by Dr. Byrne. The movie purportedly quoted the Plaintiff, Eric Coomer, the key American official of Dominion Voting Systems, Inc. (hereinafter "Dominion"), prior to and during the 2020 Presidential Election.

In the movie, Dr. Coomer was quoted as saying that he made sure that Donald Trump would not win the 2020 Presidential Election. The inference was

that Coomer was at least partially responsible for manipulating that election.

One of Dr. Byrne's primary defenses is TRUTH. At trial, he intends to prove that Dominion did, in fact, manipulate the outcome of the 2020 Presidential Election, and that Dr. Coomer was knee-deep in programing, deployment, and otherwise participating with a wide network of Dominion employees, contractors, and manufacturers to allow alteration to tally results in the November 3, 2020 election.

That is why Dr. Coomer's Motion seeks to prevent Dr. Byrne from questioning about the facts and circumstances of Dr. Coomer's involvement with various individuals, including the international network, who were involved in coordinating, facilitating, and programming remote access to Dominion's voting equipment.

Dominion gave assurances to the US government that its Dominion brand equipment was not connected the internet and was "airgapped." This was later proven to be false, and in fact the "Remote Access Server" programmed by Dr. Coomer, Morales, and other Venezuelans at Sequioa, was put in place by the same network of individuals now at Dominion for the 2020 election. Remote access was not limited to RAS servers, Dominion VPNs, and Dominion "Listeners" were deployed all over the United States for Coomer, and others associated with Dominion to access the election data in real-time during the November 3, 2020 election.

The audacity of Dr. Coomer, who was instrumental in laying the groundwork for the United States election to be remotely accessed and altered, is hard to comprehend. Dr. Coomer protected himself, and Dominion employees and contractors, by suing influential wealthy people and corporations, to intimidate witnesses, and allow a repetitive false narrative to be trumpeted by media reporting on Dr. Coomer's court documents.

Dr. Coomer and Dominion made traction by stifling witnesses and causing their targets to tap when the stress, and legal fees became unbearable. Now thanks to Dr. Byrne, the Department of War, the Department of Homeland Security, the Department of National Defense, and the Department of Justice, more and more information is coming to the surface related to Dr. Coomer's involvement with the national and international network coordinating and working on behalf of Dominion.

This is the name of the game for Dr. Coomer and those who controlled the machines which allowed for tally results to be controlled through electronic tally reports. There was little transparency prior to the certification of the 2020 Presidential Election. Moreover, this machination goes far beyond just filing lawsuits. It goes as far as pushing meritless motions to limit the scope of discovery, such as the Motion at bar.

In some courts, where media had its effect in convincing judges that allegations of the elections being rigged were considered the "Big Lie," the courts

were more sympathetic to plaintiffs, like Dr. Coomer or Dominion. However, as Bob Dillon's famous words sing out, "The Times, They are A-Changin'"

For the open-minded judges who did not jump to the conclusions dictated by the media, motions such as the one in question, presently, cannot work, as the law which requires Dr. Coomer to actually show some reason to deny Dr. Byrne his right to obtain evidence to prove that "Coomer took care of it," and that Dr. Coomer's role with his network was substantial.

Dr. Coomer's Motion for Protective Order, attempts to restrict Dr. Byrne from accessing the Dominion brand equipment and Dr. Coomer's communications with his colleagues at Dominion and other individuals, including foreign operatives, with whom the Dr. Coomer communicated with regarding the programming, planning, execution, remote access to real-time of data prior to certification for the 2020 election.

In his Motion, Dr. Coomer sought to limit the scope of his upcoming deposition. Specifically, he wants to prohibit any questions related to an alleged "international conspiracy" involving Venezuela, Serbia, China, and other foreign nations; accusations of criminal conduct such as money laundering or bribery; and various technical matters related to voting systems.

In other words, Dr. Coomer wants this Court to deny Dr. Byrne the opportunity to obtain evidence which proves that the statement in *The Deep Rig*, and the implications of the statement, are True.

## Legal Standard

A party seeking a protective order bears the burden of showing "good cause" for its issuance. F.R.Civ.P. 26(c) provides that a party may move for a Protective Order on matters relating to a deposition to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, if that party has good cause.

To establish good cause, the moving party must demonstrate that if the protective order is not granted "specific prejudice or harm will result." The court must balance the parties' competing interests when determining whether good cause exists.

The scope of discovery under the Federal Rules is intentionally broad. Parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." F.R.Civ.P. 26. Moreover, to be discoverable, information which a party is permitted to obtain does not even need not be admissible at trial. *Id*.

## Argument

**None of The Infringements
Of the Rule Apply**

Rule 26(c) of the F.R.Civ.P. provides that a Protective Order may be granted to protect a party from unfair 1) annoyance, 2) embarrassment, 3) oppression, or 4) undue burden or expense. These are the grounds available, and no others.

**Annoyance.** Questions in depositions can be annoying, however, there is

5

no reason that Dr. Coomer would be any more annoyed with questions about his role with Dominion than any other questions.

**Embarrassment.** Yes, it would be embarrassing for Dr. Coomer to have to answer questions which show that he actively participated in programing and otherwise distributing, installing, and covering-up, election interference in our country. However, as this is the key point, and the truth of what the alleged defamatory remarks were, the embarrassment, if any, are not sufficient to require a protective order.

**Oppression.** There is no oppression involved or alleged.

**Undue burden or expense.** It is not conceivable that questions asked at the deposition would cause any burden or expense.

As none of the factors for which this Court may enter a Protective Order apply, this Court should not enter a Protective Order. Dr. Byrne should be given the full range of questions to be able to defend himself.

**The Plaintiff Has Failed to Establish Good Cause for a Protective Order**

The gravamen of the Dr. Coomer's Motion for Protective Order seeks to prevent the Dr. Byrne from seeking information pertaining to the alleged defamatory statements.

However, the Dr. Coomer failed to establish good cause for limiting the scope of his deposition. The information that Dr. Byrne seeks is directly relevant to his defense of truth and is proportional to the needs of the case.

One of Dr. Byrne's key defenses to the above styled defamation action is that the statements made about Eric Coomer in *The Deep Rig* are substantially true. To prove this defense, Dr. Byrne must be permitted to explore all aspects of the Dr. Coomer's involvement with Dominion, including his communications with colleagues and others regarding the 2020 election.

Dr. Coomer argues that the film *The Deep Rig* did not specifically allege an international conspiracy involving Venezuela, Serbia, or China. However, this narrow framing mischaracterizes the nature of the Dr. Byrne's truth defense. The film alleged that the Dr. Coomer was involved in manipulating data for the 2020 election through his access as a Dominion employee. The mechanisms, methods, and collaborators in such alleged election interference are directly relevant to establishing the truth of this claim.

This is similar to a situation where a plaintiff sued for defamation against a defendant who publicly accused him of imposing himself sexually on a 5-year-old. Surely, it would be relevant to show conversations with other pedophiles, prior acts, access to children, purchases of duct tape and other facts not pled in the complaint.

In the case *sub judice,* to prove Dr. Coomer's involvement with Dominion it is necessary to prove facts which are not alleged, as the alleged defamatory statement can only be proved by finding evidence of unpled facts, if Truth is a defense. There is no other way to prove the truth than to explore what had

occurred, whether it is fully pled by a plaintiff, or not. If Dr. Coomer is clean, he would certainly want to demonstrate that through testimony at the earliest opportunity. After all, it is Dr. Coomer who brought this lawsuit.

Dr. Coomer states in his Second Amended Complaint that "the Film presents this fabrication as the dramatic lynchpin of a supposed plot to steal the election, with Oltmann stating:

> They had to do an update [of Dominion software] in the middle [of election day] and that took it down for four hours. But the person who gave the update was Eric Coomer. And at that moment my heart sank. That's when I knew. That's when I knew that there was a, you know, Dominion Voting Systems was in 28 states. That's when I started to realize that, you know, this guy Eric Coomer, when he said on that call 'Don't worry about Trump, he's not going to win.' That's when I realized there's a high probability; he affected the election. Dkt 197, PgID 1924.

Dr. Byrne's Requests for Production seek communications between the Dr. Coomer and numerous individuals, including Dominion employees and contractors who may have been involved in or have knowledge of programming, planning, access, and ability to make modifications to the election equipment and election data. Those communications are directly relevant (tending to prove a material fact) to determining whether the Dr. Coomer participated in activities to manipulate election results, regardless of whether those activities involved domestic or international actors.

The Dominion personnel network, the Dominion international network, and Eric Coomer's ability, access, and control of US election systems, as well as any co-

conspirators, is relevant to Dr. Byrne to be able to present his Truth defense.

Dr. Byrne intends to present at trial that Dr. Coomer has directed and worked side by side with Dominion employees from Venezuela for more than a decade prior to the 2020 election. Ronald Santiago Morales Valles is one example of an engineer from Venezuela who worked with Eric Coomer at Dominion in 2020. There is a common Smartmatic/Sequoia/Dominion international network that has largely remained the same for two decades. It is important to be able to show that Eric Coomer did not act alone, but rather, he was a leader and a central player in the network.

In 2006-2007, Ronald Morales, and 30 other Venezuelan engineers, were given VISAs to enter the United States and work for Eric Coomer at Sequoia Voting to modify the election equipment with the Smartmatic code and programming. Ronald Morales, and other Smartmatic employees, were plucked from Petroleos de Venezuela where they wrote code to begin work for Smartmatic. They were handpicked for the US modifications.

Both Eric Coomer and Ronald Morales worked for the Venezuelan leaders including, Ellie Moreno, and Roger Alejandro Pinate Martinez (now indicted in *USA v. Donato Bautista et al*, Case No. 24-cr-20343, U.S. District Court, Southern District of Florida). Dr. Byrne needs to be permitted to obtain evidence, including Coomer's testimony in this case to present his truth defense at trial.

To be a bit more specific, Dr. Coomer and Ronald Morales worked together

at Sequoia in 2007, and Coomer was Morales' supervisor. Together, Dr. Coomer and Mr. Morales worked with Fernando Hernandez and others at Smartmatic Venezuela to implement remote access through the "RAS Server" (the remote access server). A true and correct copy of the 2007 email between Sequoia and Smartmatic regarding Remote Access Servers is attached hereto and marked as Exhibit "A."

Dr. Coomer and Morales joined Dominion in 2010 when Dominion acquired Sequoia, and both worked the November 3, 2020 Presidential Election together. Ronald Morales was stationed in Chicago, Illinois on November 3, 2020. Dr. Coomer and Mr. Morales used the same RAS Server set up to allow access the November 2020 election data in real-time.

It is important for Dr. Byrne to explore Dr. Coomer's role leading up the 2020 election as an engineer and his role as Director of Product and Strategy. Dr. Byrne anticipates being able to obtain testimony that Dr. Coomer and Morales made many changes to the systems impacting remote access, and tally.

Dr. Byrne is also aware of how Morales' responsibilities related to deployment of a VPN for voting machines, platforms for the VPN, and how Morales traveled to other countries where Dominion machines were involved. However, due to a Protective Order, in the case of *U.S. Dominion, Inc., et al v. Patrick Byrne*, Case No. 1:21-cv-02131-CJN-MAU, U.S. District Court, District of Columbia, before the Honorable Carl J. Nichols, in which all of the actual information was

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

provided in discovery, cannot be used in any other case, not specifically excepted. Hence, Dr. Byrne is not able to be more precise.[1]

Notwithstanding the Protective Order in *U.S. Dominion, Inc., et al v. Patrick Byrne*, Smartmatic acquired Sequoia Voting Systems in 2005, at which point David Moreno, Federico Arnaoa, and Ronald Morales, three Venezuelan Smartmatic engineers from Venezuela joined Sequioa. A true and correct copy of a press release from Smartmatic announcing Smartmatic's acquisition of Sequoia Voting Systems is attached hereto and marked as Exhibit "B." In 2010, Sequioa is acquired by Dominion Voting Systems, Inc at which point David Moreno, Federico Arnaoa, Doug Weinel, Ronald Morales, Eric Coomer and many other former Smartmatic/Sequoia staff joined Dominion. A true and correct copy of a press release from Smartmatic announcing Dominion Voting System's acquisition of Sequoia Voting Systems is attached hereto and marked as Exhibit "C."

David Moreno was Director of Election Production and Testing for Dominion Voting Systems, whereas Federico Arnao, is listed as an inventor on two U.S. patents assigned to Dominion Voting Systems, Inc US 8,714,450 and US 8,876,002 in which the Plaintiff, Eric Coomer is also listed as a co-inventor. True

---

1. In *U.S. Dominion, Inc. v. Byrne*, *id.* Dr. Byrne recently asked the Court to set aside the Confidentiality Order, and Judge Nichols *sui sponte* ordered a stay on that motion. Hence, the discovery required in the case at bar, *Coomer v. Byrne*, will either be available from the case in which it is already provided, and in which it was permitted, or it needs to all be duplicated in the instant case.

11

and correct copies of U.S. Patent Nos. US 8,714,450 and US 8,876,002 are attached hereto and marked as Exhibits "D," and "E" respectively. Also included in Dominio's patent portfolio is Doug Weinel, a former Sequioa employee who is an inventor alongside Eric Coomer on US Patent No. 8,864,026 which is also assigned to Dominion Voting Systems, Inc. A true and correct copy of US Patent No. 8,864,026 is attached hereto and marked as Exhibit "F." Moreover, Goran Obradovic, a Serbian engineer with strong ties to the notorious Chinese "communications" company Huawei, served contemporaneously as Vice President of US Dominion Voting Systems, and President of Dominion Voting Systems Serbia, and performed his work on US Dominion Voting Systems in Serbia.

All that Dr. Byrne can say, without being more explicit (which could be over the line of violating Judge Nichols' Order) is that the information exists which would prove Eric Coomer was a major participant, and coordinated with others at Dominion, which the discovery documents and testimony would be utilized by Dr. Byrne in his truth defense that the statements made in *The Deep Rig* were True.[2]

**Inconsistent Treatments**

It is understood that Coomer is working together with Dominion, and that Dr. Coomer is aware of the filings in *Dominion v. Byrne*, *id*. In that case, the same

---

2. Patrick Byrne is asking for a Judicial Conference before Judge Barber and Judge Nichols so that Judge Barber will be able to view the discovery which proves the Defense by Dr. Byrne that the statements in *The Deep Rig* were True. This is expected to be filed in the above styled case and in *Dominion v. Byrne* in short order.

12

discovery as is sought in the present case was provided.

This Court should not be inconsistent from the case *Dominion v. Byrne, id.* which is a similar suit raised by Dominion against Dr. Byrne for defamation, in which Dr. Byrne is alleging the same Truth defense.

It would be a difference in the administration of justice if Dr. Byrne is permitted to defend himself because his statements of Dominion's election interference is true in one suit and not be able to defend himself in a similar suit by Eric Coomer, because Dr. Coomer claims that 'there is nothing to see here.'

**Plaintiff's Fifth Amendment Concerns
Are Premature and Speculative**

Eric Coomer suggests that Dr. Byrne's counsel's statements about potential criminal investigations create Fifth Amendment concerns that justify a protective order. This argument is both premature and speculative. If Dr. Coomer believes specific questions during his deposition might implicate his Fifth Amendment rights, he may assert those rights in response to questions. A blanket protective order preventing entire categories of questioning is not appropriate based on hypothetical Fifth Amendment concerns. Eric Coomer cannot simultaneously file a civil suit for defamation, whilst also asserting the Fifth Amendment to prevent discovery as to the truth of those statements relating to those same criminal acts, which Coomer, claims to be defamatory.

13

**The Requested Discovery Is
Proportional to the Needs of the Case**

The discovery sought by the Dr. Byrne is proportional to the needs of this case. This is a defamation action where Dr, Byrne faces potential liability for statements alleging that Coomer participated in election fraud. The truth or falsity of these allegations is the central issue in the case. Given the significance of this issue, Dr. Byrne should be permitted to conduct thorough discovery into Dr. Coomer's communications, planning, coordination, programming, and access, related to the 2020 election data.

Eric Coomer has not demonstrated that responding to questions about these topics would impose an undue burden. While Dr. Coomer may find such questioning uncomfortable or inconvenient, this does not constitute the kind of "annoyance, embarrassment, oppression, or undue burden or expense" that would justify a protective order under Rule 26(c).

**The Protective Order Would
Improperly Hinder Defendant's Ability
To Present His Defense**

Granting the Dr. Coomer's requested protective order would significantly impair the Dr. Byrne's ability to present his truth defense. By prohibiting inquiry into matters related to international connections, technical aspects of voting systems, and communications with specific individuals, the protective order would prevent Dr. Byrne from developing evidence that will establish the truth of his statements about Dr. Coomer. Effectively permitting Coomer to simultaneously

14

maintain a defamation claim for statements while preventing the discovery of evidence showing the truth of the alleged defamatory statements, and covering up Dr. Coomer's involvement, planning, and coordination related to the 2020 election. Dr. Byrne is seeking to corroborate evidence that he already has, which is subject to protective order, through Dr. Coomer's testimony.

The Federal Rules of Civil Procedure are designed to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." F.R.Civ.P. 1. Limiting discovery in the manner requested by Dr. Coomer would undermine this purpose by preventing the full development of Dr. Byrne's defense.

## Conclusion

For the foregoing reasons, Dr. Byrne respectfully requests that this Court deny Eric Coomer's Time-Sensitive Motion for Protective Order. Alternatively, if the Court is inclined to grant some form of limitation, Dr. Byrne requests that he first be permitted to present evidence subject to protective order to fully demonstrate to this Honorable Court that limitations are not warranted in light of his intent to present a truth defense at trial.

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 23, 2026, the foregoing document, was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

/s/ *Peter Ticktin*
Peter Ticktin, Esquire
Florida Bar No. 887935
David L. Perry II, Esquire
Florida Bar No. 1045902
Serv512@LegalBrains.com
Serv514@LegalBrains.com
Serv600@LegalBrains.com
THE TICKTIN LAW GROUP
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Attorneys for Patrick Byrne*