# EXHIBIT B

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. DOMINION, INC., et al., <br> *Plaintiffs / Counter- Defendants*, <br> v <br> PATRICK BYRNE, <br> *Defendant*. | Civil Action 1:21-cv-02131 (CJN) |

## DEFENDANT'S MOTION TO FULLY LIFT PROTECTIVE ORDER OR IN THE ALTERNATIVE, TO AT THE VERY LEAST, PERMIT COMPLIANCE WITH SUBPOENA TO PRODUCE IN <u>ERIC COOMER V. JOSEPH OLTMANN ET AL, CASE NO. 20-CV-34319</u>

The Defendant, Patrick Byrne, by and through his undersigned attorneys, pursuant to F.R.Civ.P. and Local Civil Rule (LCvR) 7, hereby files his Motion to Fully Lift the Protective Order in the above styled case Or In The Alternative, To, At The Very Least, Permit Compliance With a Subpoena To Produce In *Eric Coomer V. Joseph Oltmann et al*, Case No. 20-CV-34319 to Permit Compliance with Subpoena to Produce in *Eric Coomer v. Joseph Oltmann et al*, Case No. 20-cv-34319.

## **Background**

On June 16, 2023, this Court entered an Order [DE 46] pursuant to the Plaintiff's Motion for a Protective Order which required that documents produced

by the Plaintiff were to be Confidential or "Attorneys' Eyes Only."

Subsequent to the discovery being produced, due to the fact that some of the content provided by the Plaintiff were documents which proved that the Plaintiff was guilty of crimes to the highest order, including but not limited to sedition by massively manipulating the election data/tally of the votes across the country, were provided to law enforcement by Dr. Byrne's counsel, Ms. Lambert.

Since that time, many of those documents were provided by law enforcement to Congress, the Office of the Director of National Intelligence, the Department of Homeland Security, the Federal Bureau of Investigations, the Department of Justice, the Department of War. The documents are currently under government investigation, due to transparent, public government referrals by the law enforcement personnel who had possession of the documents.

The United States Government has taken serious action as a result of the law enforcement referral including the Department of War which apparently neutralized computers in Belgrade, Serbia on November 2, 2024, so that they could not change the result of the November 5, 2024 Presidential Election.

Moreover, at that time, the United States Secretary of Defense apparently ordered an investigation as to China's access to the Microsoft cloud and US critical infrastructure, which includes election equipment, and numerous open investigations that include but are not limited to the Department of Justice,

2

Homeland Security, Federal Bureau of Investigations, and the Director of National Intelligence.

As a result of the fact that the incriminating documents in the case *sub judice*, are now in the public, they are being used by all accounts for any purpose by others in other cases, while the attorneys in the above styled cases are the only ones in America who are restricted from using the incriminating documents which have already been made public or which had been provided to law enforcement.

Moreover, and key to this motion, on November 4, 2025, one of the Defendants in a different lawsuit brought by Eric Coomer, the 2020 head of the Plaintiff, U.S. DOMINION, INC., issued a Subpoena to Produce was served by co-Defendant, Joseph Oltmann on Ms. Lambert, Patrick Byrne's former counsel in the case at bar. A true and correct copy of the Subpoena to Produce is attached hereto and marked as Exhibit "1."

The Subpoena to Produce requests documents and communications between Eric Coomer and Dominion employees and contractors subject to the abovementioned Protective Order in the instant case. [DE 46].

Dr. Byrne's prior counsel's office is in possession of relevant documents that support Joe Oltmann in his defense against Eric Coomer, including but not limited to, documents detailing an ongoing 25-year conspiracy involving Eric Coomer, Dominion employees and contractors, working with and for Venezuela, Serbia, and

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

China to illegally access US voting equipment to modify election and tally data prior to the certification of US election contests.

Venezuela under Maduro was not just exporting cocaine and fentanyl. They were also exporting election manipulation to 72 countries around the world, including the United States.

Smartmatic was founded by two Venezuelans, Antonia Mugica and Roger Pinate in 2000. The Venezuelan government, through CNE, provided substantial financial support to Smartmatic. Smartmatic was funded by Venezuela.

In 2006, United States government officials approved VISAs for Venezuelan Smartmatic and oil engineers to enter the US for the purposes of modifying and manipulating US election equipment. The Venezuelans started with the Sequoia brand equipment in Chicago, Illinois. They continued work for Smartmatic, Sequoia, and then Dominion for the 2020 Presidential Election. Ronald Morales and David Moreno were just two of these Venezuelans. Ronald Morales' direct supervisor was Eric Coomer, and Eric Coomer's direct supervisor was David Moreno.

In 2010, Dominion purchased Sequoia and obtained the Venezuelan modified equipment as well as more than 30 Smartmatic/Sequoia engineers and employees to work for Dominion. The Dominion brand name was just a new shell to conceal Venezuela, Serbia, and China's access to the US election equipment and data. By

4

2020, Staple Street had a 75.2% interest in US Dominion, and the Dominion management team owned the remaining interest.

Leading up to the 2020 election, Ronald Morales, Eric Coomer, David Moreno, and others on behalf of Dominion methodically implemented VPN access throughout the United States to facilitate remote access to the election equipment. The purpose of the access was to modify the election data prior to certification. Certain contractors were even given access on their personal laptops in violation of Dominion protocol.

Ronald Morales, under Eric Coomer's direction and supervision, worked with Goren Obradovic and other Serbians to ensure VPN access to the ballot images for the 2020 election. Additionally, detailed programming took place such as modifications to adjudication (vote tally changes) without EAC approval, source code changes past certification without disclosures, honest service fraud running old versions yet misleading municipalities with splash screens displaying the expected version, implementing and distributing versions incapable of counting write-in candidates with no disclosure to state or municipal government.

Morales, Coomer, and Moreno kept the customer front facing side of Dominion ignorant of the ongoing criminal organization, and utilized a business structure to limit remote access, programming, unauthorized server access, etc. to the back of the office involving the same individuals from Venezuela, Serbia, and

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

China for over 20 years.

The back of the office routinely joked about their criminal operation, even in the emails to each other. The Dominion versions were referred to as Venezuela 5.0, and when 50,000 voting machines and 582 computers went up in flames in Venezuela on March 9, 2020, John Poulos and Eric Coomer thought it was hilarious and joked about Mugica running around with a jerry can.

Dominion and its employees consist of the same equipment, organization, and individuals in place 20 years ago with Smartmatic. In 2024, the first domino toppled. David Moreno's family and co-workers were indicted in 2024, and On October 16, 2025, the US Department of Justice filed a superseding indictment, Case No. 24-20343, indicting Juan Andres Donato Bautista, Roger Alejandro Pinate Martinez, Jorge Miguel Vasquez, Elie Moreno, and SGO Corporation Limited, a/k/a "Smartmatic" with criminal charges. Roger Pinate, Jorge Vasquez, and Smartmatic were charged with Count One, Conspiracy to Violate the Foreign Corrupt Practices Act (18 U.S.C. § 371). Roger Pinate, and Jorge Vasquez were charged with Count Two, Foreign Corrupt Practices Act (15 U.S.C. § 78dd-2). Juan Bautista, Roger Pinate, Jorge Vasquez, Elie Moreno, and Smartmatic were charged with Count Three, Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(h)). Juan Bautista, Roger Pinate, Jorge Vasquez, Elie Moreno, and Smartmatic were charged with Counts Four-Six, International Laundering of Monetary Instruments (18 U.S.C.

6

§ 1956(a)(2)(A)).

The superseding indictment details the use of personal email accounts to facilitate the illegal acts and communications. The Taiwan factory, money laundering, use of personal emails to conduct back-office business has not changed under Dominion. Eric Coomer, ericdcoomer@gmail.com, was just one of the Dominion employees who used his personal email address for the off the record conversations. The Defendant's prior counsel confronted Poulos with the law violations during his deposition, and when he was backed in a corner on FARA violations and others, he refused to admit that he was the CEO of Dominion, said he would go back and check the status, and stormed out of the unfinished deposition.

Eric Coomer was the "heavy lift" for Dominion. In 2020, alone, he pushed for adjudication to be utilized in states that did not have laws permitting adjudication. He made modifications to adjudication for months including just days prior to the November 3, 2020, election after certification was provided and logic and accuracy tests were completed. Coomer wore multiple hats in 2020, and not only was he the Director of Product and Strategy, but he requested engineering status to make modifications to adjudication prior to the 2020 election.

Most importantly, when Dominion was caught vote shifting and deleting batches, Coomer clammed up. He was placed on paid leave status and refused to make statements to assist Dominion and J. Alex Halderman with expert reports to

7

defend Dominion. Dominion fed the vote shifting version of events to Halderman and he put the version in the Halderman Report, but Dominion/Halderman's excuses was proven to be false Plaintiff experts Jeffrey Lenberg and James Penrose. Coomer has now listed Halderman as his expert in 20-CV-34319, and the evidence requested by subpoena is needed to show it was Dominion that fed the bogus events to Halderman, and Coomer that was instrumental in the VPN remote access, unauthorized server access, etc to set the vote shifting events in motion.

## Discussion

The fact of the matter is that the crimes by the Plaintiff should not be protected. This Court should never be in a position where it is aiding and abetting a criminal by hiding the evidence of the criminal's crimes. Now that the documents have been produced and it proves that the Plaintiff participated in implementing and concealing remote access, including foreign access to the US election equipment and data, and this Court must permit those documents to be made public. This is not a minor infraction which is involved. It is literally the fixing of a Presidential Election and the take-over of our country for 4 years by an illegal regime.

With all of this said, the Plaintiff in *Eric Coomer v. Joseph Oltmann et al*, Case No. 20-cv-34319 has added a new wrinkle. He is now seeking the documents which were provided in the above styled case, and which are evidence of the Plaintiff's conduct.

8

This means that this Court has 2 choices. First, it can close its eyes to the fact that U.S. DOMINION, INC., Smartmatic, and U.S. Dominion Inc.'s former operator, Eric Coomer are all able to continue to bring false claims against those who are attempting to make their criminality public and expose the biggest crime perpetrated in American history. The Second option is for this Court to refuse to be a part of protecting and concealing serious acts with national security implications.

Now that U.S. DOMINION, INC. appears to have been sold, it is not providing the documents which were provided in the above styled lawsuits. There is no reason under the sun that defendants of U.S. DOMINION, INC. and its counterparts should be deprived of the evidence which has been provided in the current cases before this Court, and yet, is not available to the defendants in sister courts.

As the Second Circuit noted in the aforementioned case: "[a] plain reading of the language of Rule 26(c) demonstrates that the party seeking a protective order *has the burden* of showing that good cause exists for issuance of that order. It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question **should not receive judicial protection and therefore would be open to the public for inspection**. . . . Any other conclusion effectively would negate the good cause requirement of rule 26(c).

Thus, "as a general proposition, pretrial discovery must take place in the

9

public unless compelling reasons exist for denying the public access to the proceedings." See, e.g., *American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978), cert. denied, 440 U.S. 971, 99 S. Ct. 1533, 59 L. Ed. 2d 787 (1979); accord *Wilk v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 101 F.R.D. 34, 38-41 (C.D. Cal. 1984); Note, Nonparty Access to Discovery Materials in the Federal Courts, 94 Harv. L. Rev. 1085, 1085-86 (1981).

Rule 26(c) thus lends support to the right of access.

After the tobacco litigation and agent orange litigation cases, protective orders, even where they are entered by a district court are not everlasting and unmodifiable. In fact, they are widely subject to exceptions under many circumstances, including the aforementioned public/national security/public health and welfare interests; constitutional reasons, and common law exceptions, that still exist. See, also, *United States v. Bulger*, 283 F.R.D. 46, 51 (D. Mass. 2012).

Where, as here, a liberal and broadly applied "protective order" has been entered, the party in whose favor the request for protection was granted is required in every single instance to bear the burden of showing that good cause exists *not to modify the protective order*. *Id*. ***"Orders typically made without a particularized showing to support the claim for protection. . . [require good cause] wherever a claim under an order is challenged."***

10

In the instant case, the materials subject to the subpoena from the case of *Eric Coomer v. Joe Oltmann et al,* are necessary to Oltmann's defense in *Eric Coomer v. Oltmann*, Case No. 20-cv-3439, District of Colorado. The requested documents detail the events of Coomer, and his network as described in this motion.

WHEREFORE, Mr. Byrne respectfully requests that this honorable court set aside the protective order or, in the alternative, at the very least, to permit his prior counsel to comply with the subpoena by Joseph Oltmann, and for such further and other relief as this Honorable Court may deem just and proper.

## COMPLIANCE WITH LOCAL RULE 7(m)

Counsel for Defendant has discussed the anticipated motion with opposing counsel in a good-faith effort to determine whether there is an opposition to the relief sought, and whether there are any narrow areas of disagreement. Counsel for Plaintiff opposes the motion and seeks to have everything in this motion filed under the protective order.

*Peter Ticktin*
Peter Ticktin

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 5, 2026, the foregoing document, was

electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel

of record.

*/s/ Peter Ticktin*
Peter Ticktin, Esquire
Florida Bar No. 887935
Serv512@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Attorney for Patrick Byrne*

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

| DISTRICT, COUNTY OF DENVER, COLORADO<br>Court Address:<br>1437 Bannock Street<br>Denver, Colorado 80202<br><br>Plaintiff:<br><br>ERIC COOMER<br><br>Defendants:<br><br>DONALD J. TRUMP FOR PRESIDENT, INC., SIDNEY POWELL, P.C., RUDOLPH GIULIANI, JOSEPH OLTMANN, FEC UNITED, SHUFFLING MADNESS MEDIA, INC. dba CONSERVATIVE DAILY, JAMES HOFT, TGP COMMUNICATIONS, LLC, dba THE GATEWAY PUNDIT, MICHELLE MALKIN, ERIC METAXAS, CHANEL RION, HERRING NETWORKS, INC. dba ONE AMERICA NEWS NETWORK, and MEWSMAX MEDIA, INC. | ▲COURT USE ONLY▲<br><br> Case # 20-CV-34319<br><br>Div. 409 |
|---|---|
| **Attorney for Defendants Joseph Oltmann, FEC United, Inc., and Shuffling Madness Media, Inc.**<br>  Andrea M. Hall   Atty. Reg. #:  036410<br>  THE HALL LAW OFFICE, LLC<br>  P.O. Box 42, Eaton, CO 80615<br>  (970) 419-8234  andrea@thehalllawoffice.com | |

**SUBPOENA TO PRODUCE**

To:  Stephanie Lambert, Esq., attorney for Patrick Byrne

      Stefanie Lambert Junttila
      Law Office of Stefanie L. Lambert PLLC
      400 Renaissance Drive, 26th Floor
      Detroit, MI 48243

**You are ordered to produce** See Attached Exhibit A.

**Date and Place of Production:**
The Hall Law Office, LLC, P.O. Box 42, Eaton, CO 80615; andrea@thehalllawoffice.com.
Undersigned counsel will produce a flash drive having sufficient storage capacity or access to a secure file transfer site for uploading responsive documents upon request.
Production is due fourteen days from service of this Subpoena.

1

Dated this 4th day of November, 2025 _____

Andrea M. Hall, No. 036410
ATTORNEY FOR DEFENDANTS

---

## WAIVER OF SERVICE

I declare under oath that, I am 18 years or older and not a party to the action and that I received and accept service of this Subpoena.

_____

## VERIFICATION

I declare under penalty of perjury under the law of Colorado that the foregoing is true and correct.

Executed on the _____ day of _____, _____

At _____

(city or other location, and state OR country)

_____  _____

Printed name of Recipient    Signature of Recipient

**EXHIBIT A**

DEFENDANTS JOSEPH OLTMANN, FEC UNITED, SHUFFLING MADNESS MEDIA,
INC. "OLTMANN DEFENDANTS"
REQUESTS FOR PRODUCTION TO NONPARTY

This Exhibit A is incorporated by reference into the Subpoena to Produce Documents, Information, or Objects, or to Permit Inspection of Premises in a Civil Action, dated November 4, 2025, and issued to Stephanie Lambert, Esq. (the "**Subpoena**").

This Subpoena is served on you by the undersigned counsel for Oltmann Defendants to obtain information relevant to the claims and defenses in the litigation brought by Plaintiff Eric Coomer, a former employee of Dominion Voting Systems, Inc., who held the position of Director of Product Strategy and Security.

Pursuant to this Subpoena, please produce the documents, records, information, things, or objects described herein for inspection and copying in accordance with Rule 45 of the Colorado Rules of Civil Procedure and the Instructions and Definitions provided below. All responsive materials should be produced at the time, date, and place set forth in the Subpoena (secure electronic file transfer is acceptable), or by other mutually agreeable means.

The parties in this litigation have stipulated to a protective order governing the handling of confidential information produced in discovery. (*See* Order, *Coomer v. DONALD J. TRUMP FOR PRESIDENT, INC., et al.,* 2020-CV-034319, Denver County, Denver, Colorado) A copy of the court order approving and incorporating the parties' protective order—referred to by the Court as a "Stipulated Confidentiality Order"—is attached. Any confidentiality designations made pursuant to the Stipulated Confidentiality Order may be challenged, and Defendant reserves all rights with respect thereto.

Finally, although this Subpoena is directed to Stephanie Lambert, attorney for Patrick Byrne, the Subpoena is intended to cover all responsive documents and materials within your possession, custody, or control.

3

Thank you in advance for your prompt attention to this matter. We welcome your call to discuss the Subpoena and its Requests further.

### INSTRUCTIONS

These Requests are subject to the following Instructions.

A.  Unless otherwise specified, these Requests generally seek the production of documents, records, information, things, or objects created, modified, or otherwise related to the time period from January 1, 2017, through the date of service of the subpoena (the "**Relevant Time Period**").

B.  In complying with the Subpoena, these Requests call for the production of all responsive documents, information, things, or objects that are in your possession, custody, or control, whether held by you or your past or present agent, employee, or representative acting on your behalf. These Requests also call for all responsive documents, information, or objects that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents, information, things, or objects that you have placed in the temporary possession, custody, or control of any third party.

C.  The Subpoena and its Requests are static in nature, seeking documents and information in your possession, custody, or control as of the compliance date. However, if any responsive document is not produced because it has not yet been located or discovered, it must be produced promptly upon subsequent location or discovery, provided it was within your possession, custody, or control as of the compliance date.

D.  No documents or information requested herein should be destroyed, modified, removed, transferred, or otherwise made inaccessible. If you have knowledge that any document or information requested herein has been destroyed, discarded, or lost, please identify the document or information requested and provide an explanation of the destruction, discarding, loss, or disposal, and the date at which the document or information was destroyed, discarded, or lost.

E.  All responsive documents and information are to be produced as they are kept in the usual course of business, including any labels, file markings, or similar identifying features, or shall be organized and labeled to correspond to the categories of documents requested herein.

F.  If there are no documents or information in response to a particular Request or subpart thereof, please state so in writing. If you withhold any responsive documents or information or categories thereof based on any objection or claim of privilege or other protection, please state so in writing and identify the basis for such withholding.

G.  If your response indicates that any document was once in your possession, custody, or control but is no longer, please provide a statement that includes: (1) the identification of the document; (2) the current location of the document; (3) the identity of the person or entity who has control of the document; (4) a description of how the document was lost, destroyed, or transferred; and (5) the identification of each person responsible for or

4

with knowledge of the loss, destruction, or transfer of the document from your possession, custody, or control.

H.    Each Request contemplates production of all documents in their entirety. If only a portion of a document is responsive to one or more Requests, the document shall be produced in its entirety.

I.    Examples of responsive items set out in any Request should not be construed to limit the scope of the Request.

J.    If you object to any Request on any ground other than privilege, you must specify: (1) the part of the Request that is objectionable and respond and allow inspection of materials responsive to the remainder of the Request; and (2) whether any responsive materials are being withheld on the basis of an objection.

K.    If you assert that a responsive document contains both privileged and non-privileged information, you must produce the non-privileged portions of the document. Any portion withheld must be clearly marked by stamping "REDACTED" in a manner that does not obscure the remaining, unredacted text.

L.    If you believe any responsive document is protected or partially protected by a privilege, please provide a privilege log that includes: (1) the reason for withholding the document; (2) a statement detailing the basis for the claim of privilege, work product, or other ground for nondisclosure; and (3) a brief description of the document, including: (a) the date of the document; (b) the number of pages, attachments, and appendices; (c) the names of the author(s) or preparer(s), along with their employment and titles; (d) the names of all individuals who were sent, shown, carbon copied (cc'd), or blind carbon copied (bcc'd) on the document, or who have had access to or custody of the document, including their identifications; (e) the current custodian; and (f) the subject matter of the document, and if applicable, identification of any meeting or conversation referred to in the document. Your privilege log must be produced on the date of compliance with this Subpoena.

M.    If you withhold any responsive documents on the basis of a protective order entered in another proceeding, or confidentiality designation made pursuant to such an order, please so state and identify each such document or category of documents withheld with sufficient specificity to permit evaluation of the basis for withholding. This identification must include: (1) the title of the case in which the protective order was entered; (2) the case number; (3) the record or docket number of the applicable protective order; (4) the date, scope, and relevant provisions of the applicable protective order; (5) the names of both the designating party and the producing party of the confidential information; and (6) a description of the document or category of documents being withheld.

N.    With respect to Electronically Stored Information ("**ESI**"), such electronic discovery should be produced as follows, unless otherwise agreed:

    1.    Documents that exist as ESI should be produced in a non-proprietary electronic format and include both text data and image data. Documents that do not exist in electronic form may be produced in

their original paper format or converted to electronic form and produced as ESI.

2. ESI should be produced as static images by converting native files into a standard image format that can be viewed and printed on standard computer systems. Static images must be provided in Tagged Image File Format (TIFF) at a resolution of no less than 300 dpi. All images must render the complete content of the original document, including visible track changes, hidden text or content, comments, notes, hidden slideshows, or columns, subject to any redactions.

3. File types that do not convert cleanly to TIFF format—such as Microsoft Excel spreadsheets, image, audio, or video files, or any other file unsuitable for TIFF production—must be produced in native. When producing files in native format, native files should be named with a unique production number and include the original filename in the FILENAME metadata field.

4. If load files are created during TIFF conversion, or can be generated without undue burden or cost, they should be produced along with corresponding document-level extracted text and metadata. Load files should indicate proper document breaks and family relationships, and be delivered in delimited text format containing all available metadata fields.

5. ESI should be produced with the following metadata fields, and the original metadata should not be modified:

   BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENEDDATE, ENDTIME, AUTHOR, FROM, CC, TO BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

6. ESI may be produced via portable storage media (e.g., CD, DVD, or flash drive) or through a secure electronic file transfer site. ESI may be transmitted in an encrypted container; however, individual files within that container should not be separately encrypted. Decryption keys or passwords should be produced separately at the time of production.[1]

7. All production sets should include Bates numbers endorsed on the bottom right corner of each page, without obscuring any portion of the underlying content.

8. Non-responsive family members must be produced alongside responsive documents to preserve family integrity. If privilege is asserted over any subset of documents within a family, the privileged document(s) should be replaced with a Bates-stamped slipsheet stating

---

[1] A flash drive having sufficient storage capacity or access to a secure file transfer site for uploading responsive documents can be provided upon request.

"Document Withheld as Privileged" or some equivalent message. Such documents must also be included on the privilege log.

9. For any questions, further discussion, or clarification regarding these ESI protocols, please contact the undersigned.

## DEFINITIONS

These Requests are subject to the following Definitions.

A. **"Relevant time period"** means the period from June 24, 2022 through the date of production.

B. "**2020 presidential election**" shall mean the U.S. Presidential Election that occurred on November 3, 2020, and all voting by any means (including in-person, or mail-in voting) for that election.

C. The word "**action**" refers to the instant case captioned *Coomer v. DONALD J. TRUMP FOR PRESIDENT, INC., et al.,* 2020-CV-034319.

D. The words "**and**" and "**or**" shall mean shall be construed disjunctively or conjunctively to bring within the scope of each request all responses which otherwise might be construed to be outside the scope of a request.

E. The word "**any**" shall be construed to include "**all**" and vice versa.

F. "**Communication**" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), including, without limitation, written, oral, or electronic transmissions.

G. The term "**Complaint**" refers to the original and any amended complaint or petition filed by Plaintiff in this action. Please contact the requesting attorney if you would like a copy of the Complaint.

H. "**Concerning**" shall mean referring, relating to, discussing, describing, depicting, reflecting, regarding, containing, analyzing, studying, reporting, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

I. The phrase "**Coomer's and Dominion Other Lawsuits**" means and refers to any or all of the following lawsuits initiated by Plaintiff Eric Coomer:

1. *Eric Coomer v. Patrick Byrne, et al.*
Court: U.S. District Court for the Middle District of Florida
Case No. 8:2024-CV-00008

2. *Dominion Voting Systems Corporation  v. Patrick Bryne, et al.*
Court: U.S. District Court for the District of Washinton D.C.
Case No.: 1:21-CV-02131

J. The term "**document**" shall be given the broadest interpretation permitted, and it shall mean all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including

7

without limitation correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, certificates, drawings, plans, interoffice and intra-office communications, or offers, notations in any form made of conversations, telephone calls, meetings or other communications; bulletins, printed matter (including newspapers, magazines and other publications, and articles and clippings therefrom), press releases, computer printouts, teletypes, telecopies, invoices, ledgers, worksheets (and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation photographs, charts, graphs, and microfiche, microfilm, videotape, or film recordings) and electronic, mechanical or electrical records or representations of any kind (including without limitation tapes, cassettes, discs, recordings), or transcriptions thereof. Documents also include, but are not limited to, electronic mail or email, text messages, facsimiles, instant messages (IMs), calendars, diaries, appointment books, agendas, journals, drafts, voicemail messages, post cards, post-it notes, reports, logs, message slips, invoices, checks, paystubs, letters, memoranda, agreements, contracts, tax returns, bank statements, video recordings, audio recordings, computer programs, printouts, and all other written, graphic, or electronic materials of any nature whatsoever. A draft or non-identical copy of a document is a separate document within the meaning of this term. Any copy containing thereon or having attached thereto any alterations, notes, comments or other written material not included in the originals or copies referred to in the preceding sentence shall be deemed a separate document within the foregoing definition. A document includes all appendices, schedules, exhibits, and other attachments.

K.     "**Donald Trump**" means and refers to the 45th and 47th President of the United States, and at times candidate for President of the United States.

L.     The word "**each**" shall be construed to include "**every**" and vice versa.

M.     "**Eric Coomer**" or "**Coomer**" refers to the Plaintiff Eric Coomer.

N.     "**Dominion**" means Dominion Voting Systems Corporation, a Colorado Corporation, recently acquired by Liberty Vote Corporation, a Missouri Corporation.

O.     "**State Street Capital**" means the New York private equity firm and majority investor in Dominion Voting Systems Corp. since July, 2018.

P.     "**Liberty Vote Corp**" means the Missouri Corporation headquartered in St. Louis, which acquired Dominion Voting Systems Corp. on or about October 9, 2025.

Q.     To "**identify**" means the following.

1. To identify, when used in reference to a person, means to state: (a) a person's name; (b) the person's present or last known address and telephone number; (c) if a business, governmental entity, or association, the nature of the organization; and (d) if an individual, the person's place of employment and position.

8

2. To identify, when used in reference to a document, means to specify the document in sufficient detail to permit the undersigned to locate, identify and retrieve the record, which may include, but is not necessarily limited to, stating: (a) its date, or if it bears no date, the date when it was prepared; (b) the name and address of the person or persons who prepared it; and (c) the present location of the document and the name, address, and telephone number of its custodian.

3. To identify, with respect to communications, means to give, to the extent known, (a) a description of the substance of the communication; (b) the form of the communication (e.g., telephone, facsimile, email, text message, etc.); (c) the identity of all parties to and/or present at the time of the communication, as well as the full name, present or last known address, and the current or last known place of employment of each person; (d) the identity of the person whom you contend initiated the communication; and (e) the time, date, and place of the communication.

R. The term "**including**" shall mean "including, but not limited to."

S. "**Joseph Oltmann**" or "**Oltmann**" refers to the Defendant Joseph Oltmann.

T. "**FEC United**" refers to the Defendant FEC United.

U. "**Shuffling Madness Media, Inc.**" or "**Shuffling**" or "**SMM**" refers to the Defendant Shuffling Madness Media, Inc.

V. The term "**person**" where used herein includes human beings, corporations, limited liability companies, partnerships, associations, joint ventures, government agencies (federal, state, or local), or any other organization cognizable at law; and where an employee, contractor, or worker performs some task about which an inquiry is made in these Requests, as part of his or her employment or work, "person(s)" includes both the employing and employed person(s).

W. The term "**present**" means the date on which you comply with this Subpoena, including the production of documents, materials, objects, or things in response thereto.

X. "**Trump Administration**" means and refers to Donald Trump, and/or any of his agents, staff members, appointees, employees, members of the cabinet, or officials within any executive department or agency, including but not limited to advisors, attorneys, and family members.

Y. "**Trump Campaign**" means and refers to the entity Donald Trump for President Inc. and any individual who you understood to be speaking on behalf of the campaign to re-elect Donald Trump to a second term as President of the United States, and/or any of its agents, staff members, employees, advisors, surrogates, or attorneys at or during the time period referenced in any individual Request, including but not limited to, Bill Stepien, Boris Epshteyn, Christina Bobb, Donald Trump Jr., Eric Trump, Gary Michael Brown, Ivanka Trump, Jared Kushner, Jason Miller, Justin Clark, Katherine Friess, Katrina Pierson, Kayleigh McEnany,

Kimberly Guilfoyle, Lara Trump, Mark Meadows, Matt Morgan, Michael Roman, Rudy Giuliani, Sidney Powell, or Stephen Miller.

Z.     The pronouns "**you**," "**your**," "**yours**," or "**yourself**," and the like, as used herein, refer to Stephanie Lambert, as attorney for Patrick Byrne, your co-counsel, Mr. Byrne, and any member of the defense team, their employees, agents, consultants, attorneys, accountants, and any other representatives or individuals acting or purporting to act on your, or their, behalf.

AA.    Any word in the singular form shall also be construed as plural and vice versa.

BB.    The masculine form shall also be construed to include the feminine and vice-versa.

## REQUESTS FOR PRODUCTION

1.     All documents and communications from the Relevant Time Period— regardless of author, sender, or recipient—that concern, refer, relate, or otherwise pertain to Eric Coomer.

2.     All documents and communications from the Relevant Time Period sent to, from, copying, or involving Eric Coomer, the subject matter or content of which concerns:

a.  The 2020 presidential election or the results thereof;

b.  Donald Trump, Donald J. Trump, Donald John Trump, the Trump Administration, Trump Campaign, Donald Trump Campaign, Donald J. Trump Campaign, and Donald John Trump Campaign;

c.  Issues, problems, errors, irregularities, or perceived abnormalities with the adjudication feature of any Dominion voting machine used in the 2020 presidential election, including internal investigations, root cause analyses, bug reports, customer complaints, or communications with governmental entities;

d.  Instances where any Dominion voting machine or software malfunctioned, produced unexpected results, or was subject to investigation, whether in the United States or abroad;

e.  Security features or vulnerabilities of any Dominion voting machine, component, or software, including patches, updates, and any known or suspected security breaches;

f.  Audits, testing, or evaluations (internal, third party, or governmental entity) of Dominion voting machines, including performance reviews, security assessments, penetration testing, or risk analyses; or

    g.  Remote access to Dominion voting machines, including but not limited to technical capabilities, security features or vulnerabilities, software or firmware updates, remote troubleshooting capabilities or procedures, and access logs or policies.

3.     All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and John Poulos.

4.     All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Ronald Morales.

5.     All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and David Moreno.

6.     All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Heider Garcia.

7.     All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Pat Bolen.

8.     All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Sheree Noell.

9. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Donetta L. Davidson.

10. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Zach Parkinson.

11. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or Telegram) between Eric Coomer and Kay Stimson.

12. All text messages, iMessages, slack messages, or other communications from the Relevant Time Period sent via any text messaging service, ephemeral messaging application, or work-related instant messaging platform (including but not limited to Signal, WhatsApp, Telegram, Slack Microsoft Teams, Google Chat, or Skype) between Eric Coomer and any director, officer, or employee of Dominion.

13. All documents and communications concerning Eric Coomer's role in designing, developing, engineering, testing, investigating, or modifying any Dominion voting machine, software, or adjudication-related feature.

14. All documents and communications concerning Eric Coomer's international connections/relationships in designing, developing, engineering, testing, investigating, working with, or modifying any Dominion voting machine, software, or adjudication-related feature.

15. All text messages, iMessages, Slack messages, or other communications from the Relevant Time Period sent via any text messaging service, or ephemeral messaging application (including but not limited to Signal, Proton, WhatsApp, or

12

Telegram) between any Dominion employee or investor, or correspondence with Serbia or foreign coders, etc.

**--- END ---**