# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,
 Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,
 Defendants

---

## PLAINTIFF'S MOTION FOR SANCTIONS
## AND FOR ORDER TO SHOW CAUSE

---

 Through this Motion, Plaintiff Eric Coomer, Ph.D. (Plaintiff or Dr. Coomer) seeks an order to show cause why sanctions should not be imposed by the Court relating to physical obstruction of justice, professional misconduct, abuse of the judicial process, and assault and battery committed by defense counsel Peter Ticktin (Ticktin) and his client Patrick Bryne (Byrne).

### I. SUMMARY OF MOTION AND RELIEF SOUGHT

1. Plaintiff was deposed on January 27, 2026, in Tampa, Florida.

2. When Plaintiff and his counsel first arrived at the deposition site, Joseph Oltmann (Oltmann) was present in the hotel conference room along with

several other attendees invited by Defendants. Defendants[1] knew of the extensive precautions Plaintiff has taken over the last five years to minimize the threats posed by Oltmann, who has stated he is always armed with a gun[2] and has literally called for Plaintiff's death on multiple occasions. Because of this, legal proceedings involving Oltmann have historically been conducted in a controlled environment such as the federal or state district courthouse in Denver.



3.    Oltmann's threats against Plaintiff are too numerous to recount in this Motion, but it was clear to Plaintiff that Oltmann's unannounced physical presence was an attempt at witness intimidation. Plaintiff has been threatened for five years since the 2020 presidential election and suffers from ongoing emotional distress and panic attacks. Oltmann is the greatest perpetrator of these threats. Plaintiff's

---

[1] Attorney Christopher Dempsey represents Defendants Steven Lucescu and The America Project, Inc. and was present during Dr. Coomer's deposition. Mr. Dempsey has consistently acted professionally in this matter. This Motion is not directed at Mr. Dempsey or his firm.

[2] Olmann is an owner of a large gun retailer in Colorado.

fear is not an abstract condition and defense counsel is aware of it; hence Oltmann's invitation to Plaintiff's deposition. Like Oltmann, Ticktin has also publicly accused Plaintiff of committing treason, among other crimes, and recently called him a traitor to the United States during Byrne's deposition on December 15, 2025.

4.      As Plaintiff's counsel attempted to address the Oltmann situation and obtain an emergency hearing, he was physically attacked on two separate occasions. The first assault was by Ticktin, which was captured by a hotel video camera and witnessed by a hotel employee. The second attack occurred a few minutes later when Byrne stepped between Ticktin and Plaintiff's counsel, who were having a discussion in the conference room prior to the emergency hearing about Oltmann. Byrne's assault was witnessed by the court reporter in the room, among others, and is partially documented by video evidence.

5.      Despite these extreme conditions, Plaintiff still testified for seven hours on the record that same day. The deposition concluded at approximately 6:30 p.m.

6.      Ticktin's and Byrne's criminal conduct would be inexcusable in any context let alone in a legal proceeding. There are other serious matters regarding the remainder of the deposition that will be brought to the Court's attention in due course but, given the need for immediate relief, this Motion is limited to Oltmann's unannounced appearance, Ticktin's professional misconduct, and the assaults on counsel by Ticktin and Byrne. To that end, after notice and hearing, Plaintiff is

requesting the Court to assess monetary sanctions, including attorney's fees and costs; to remove Ticktin and his law firm as counsel in this case; to impose disciplinary sanctions pursuant to Local Rule 2.04; to refer Ticktin to the Florida State Bar for disciplinary proceedings; and to establish ongoing procedures for Plaintiff and his counsel's security at Byrne's expense, among other relief.

## II.    RELEVANT BACKGROUND

7.    Plaintiff's deposition was scheduled for January 27, 2026, to begin at 9:00 a.m. (est) at the Courtyard by Marriott Tampa Downtown located at 102 E. Cass Street, Tampa, Florida 33602.[3]

8.    Previously, on December 15, 2025, Plaintiff's counsel took the deposition of Byrne at his counsel's office in Deerfield Beach, Florida.  No physical altercations occurred during the deposition and Plaintiff's two attorneys attended with no other attendees in tow.  That said, at the deposition, Ticktin made his personal animus towards Dr. Coomer clear, stating at one point on the record: "Your client is a traitor.  Your client is going to be prosecuted as far as I know under the criminal laws of – of the United States."[4]

9.    During the week prior to Dr. Coomer's deposition, Plaintiff filed a Time-Sensitive Motion for Protective Order Pursuant to Federal Rule of Civil Procedure 26 based, in part, on the potential use of leaked Dominion documents production by disqualified counsel, Stefanie Lambert, and on Ticktin's and

---

[3] *See* **Exhibit 1**, Deposition Notice.

[4] *See* **Exhibit 2**, Byrne Depo. Tr. at 282:25-283:3 (Dec. 15, 2025).

Lambert's November 11, 2025, email to Plaintiff entitled "PRIVILEGED SETTLEMENT OFFER" where they claimed they were (i) privy to criminal investigations involving Plaintiff, (ii) had the ability to arrange for Dr. Coomer's immunity from prosecution, and (iii) would represent Dr. Coomer in multiple ongoing criminal investigations. *See generally*, Doc. 274.[5]

10.    The Court ultimately denied the request for protective order without prejudice on January 26, 2026, citing Plaintiff's failure to show sufficient particularized harm or prejudice at the time. *See generally*, Doc. 279.

11.    ***Oltmann's Unannounced Attendance.*** Plaintiff's counsel was not afforded any prior notice of additional attendees at the deposition, either by email, telephone call, or on the notice itself. Had Oltmann been disclosed as an in-person attendee, Plaintiff would have addressed the matter with the Court in connection with his prior motion for protective order.

12.    Other than the attorneys of record and the court reporter, the other attendees in the deposition room were Dr. Coomer, Byrne, Oltmann, Ben Cotton,[6] one of Defendants' expert witnesses, Jason Ickes,[7] who was represented to be a technical adviser to Ticktin and/or Byrne, and Lambert. Present by Zoom link

---

[5] *See* **Exhibit 3**, email (November 11, 2025).

[6] Mr. Cotton was previously granted immunity to testify on behalf of Lambert in her criminal case in Michigan. https://www.detroitnews.com/story/news/politics/2024/06/12/election-investigator-ben-cotton-granted-immunity-to-testify-in-michigan-case-stefanie-lambert/74072907007/.

[7] Mr. Ickes is a former Green Beret and is believed to be one of Byrne's bodyguards. https://soaa.org/team/jason-ickes/.

were attorney Andrea Hall (Oltmann's attorney in a related case)[8], Shawn Smith,[9] and Mark Cook (Defendants' designated expert).  Thus, Ticktin or Lambert had arranged for seven non-parties to attend Plaintiff's deposition—four in person.

13.    When Plaintiff's counsel arrived in the hotel conference room, he noticed Oltmann was present.  Plaintiff's counsel conferred with Ticktin and raised an objection to Oltmann's presence.  Ticktin stated that he would not agree to excuse Oltmann and the parties would need to have a hearing with the Court on the matter.

14.    For context, Oltmann is a defendant is another pending matter[10] brought by Plaintiff and is a witness in the case pending in this Court.[11]  He was not designated as an expert in Byrne's Expert Disclosures served on January 15, 2026.  Oltmann has a long-history of promoting violence, including violence directly against Plaintiff.  In Colorado, Oltmann has been repeatedly sanctioned by

---

[8] Notably, Hall has been coordinating her defense of Oltmann with Ticktin's and Lambert's defense of Byrne.  Hall was well-aware of Oltmann's prior threats and conduct before Dr. Coomer's deposition in Tampa, having represented Oltmann since January 21, 2021.

[9] At the time, Plaintiff's counsel mistakenly believed Smith was a non-retained defense expert.  He has not been identified as such.

[10] Case No. 2020-cv-034319; *Coomer vs. Donald J. Trump for President, Inc. et al.*; pending in the District Court of Denver County, Colorado (the Denver County Case).

[11] *See* **Exhibit 4,** Plaintiff's Third Amended Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1).

the Denver District Court,[12] as well as the Colorado Court of Appeals.[13]  He has also been held in contempt by the United States District Court for the District of Colorado,[14] and sanctioned by the Tenth Circuit Court of Appeals for his appeal of the United States District Court's Contempt Order.[15]  To date, he has paid $144,427.97 in sanctions from these various orders.[16]  He remains under a $1,000/day contempt sanction issued by Special Master Gilman and approved by Denver District Judge Jon Jay Olafson.[17]  The Colorado Supreme Court recently denied Oltmann's appeal of that order.

15.     More concerning are Oltmann's constant calls for political violence[18] and specifically calls for violence against Plaintiff, his counsel, and judicial officers

---

[12] *See* **Exhibit 5**, Order Regarding Plaintiff's Motion for Sanctions Pursuant to CRCP 37 and CRCP 107 and Request for Order to Show Cause, Aug. 29, 2021; **Exhibit 6**, Order Regarding Plaintiff's Second Motion for Sanctions Against the Oltmann Defendants Pursuant to C.R.C.P. 37, Oct. 12, 2021; and **Exhibit 7**, Sanctions Order Against Defendant Oltmann and Counsel, Mar. 22, 2022; all issued in the Denver County Case.

[13] *See* **Exhibit 8**, Order of the Court, No. 2021CA1481, dismissing Oltmann's appeal of the Denver County Case Order of August 29, 2021, and awarding fees.

[14] **Exhibit 9**, Order Regarding Plaintiff's Notice of Submission of Attorney's Fees and Costs Pursuant to Order of Court of Appeals, Jan. 9, 2023, Denver County Case; **Exhibit 10**, Order Overruling Joseph Oltmann's Objections and Adopting as Modified the Magistrate Judge's Recommendation, issued in No. 21-cv-3440-WJM-KAS; *Coomer v Make Your Life Epic LLC et al.*, United States District Court for the District of Colorado, Sept. 4, 2024.

[15] **Exhibit 11**, Opinion issued in No. 24-1390; *Coomer v. Make Your Life Epic, LLC et al. | Joseph Oltmann,* Appellant, United States Court of Appeal for the Tenth Circuit, June 18, 2025.

[16] This does not include another sanctions order issued in *Coomer v. Donald J. Trump for President, Inc.*, on Monday, January 26, 2026.  Briefing on fees arising from this order has not yet been submitted to the Court.

[17] **Exhibit 12**, Order: Special Master's Recommendation on Various Discovery Issues, Dec. 3, 2025.  To date, Oltmann has accrued an additional $65,000 in unpaid coercive sanctions.

[18] *See, e.g.,* Ernest Luning, *Colorado Podcaster who has called for political foes to be executed joins GOP primary for governor,* 9NEWS (Dec. 27, 2025), https://www.9news.com/article/news/politics/joe-oltmann-running-for-colorado-governor/73-

tasked with adjudicating Plaintiff's cases and other related disputes.  In light of these constant threats, Oltmann has been repeatedly ordered to appear for his depositions in the courthouse,[19] and Plaintiff has repeatedly made clear to Oltmann and his counsel that he will not appear in Oltmann's presence without professional security present.  A brief selection of Oltmann's numerous threats of violence was conveyed to Oltmann's counsel in a Cease and Desist communication sent on October 13, 2025.[20]  This communication had no discernible impact on Oltmann's conduct, and he continues to issue frequent calls for Dr. Coomer's execution "for treason" on his daily podcast, Untamed with Joe Oltmann.

16.    For obvious reasons, Plaintiff feared for his own safety and would not proceed with the deposition until the Court addressed the matter.  Accordingly, Plaintiff's counsel made a stenographic record[21] of counsel's conferral about Oltmann's presence at approximately 9:30 a.m as required by the "Disputes During Depositions" section of Magistrate Flynn's practice standards.

17.    After the record was made, Plaintiff's counsel left the conference room to join his client at a table in the hotel lobby.  There Plaintiff's counsel contacted

---

cb3d81e6-e43d-4eac-a1a5-2785beb3287d; *see also* Rosalind Helderman, *With violent rhetoric and election denial, podcaster becomes GOP force*, WASHINGTON POST (June 27, 2022), https://www.washingtonpost.com/politics/2022/06/27/with-violent-rhetoric-election-denial-podcaster-becomes-gop-force/.

[19] These orders have been designated by the District Court of Colorado as Level 1 Restricted pursuant to Colorado's Local Rules.  Plaintiff will provide copies of these Orders to the Court upon request for *in camera* review.

[20] *See* **Exhibit 13**, Cease and Desist communication (Oct. 13, 2025).

[21] *See* **Exhibit 14,** Excerpt of Eric Coomer Depo. Tr. at 3:24-5:14 (Jan. 27, 2026).

the courtroom deputy at approximately 9:32 a.m. to schedule an emergency hearing and remained at that table in the lobby while waiting to receive notice from Court staff.

18.    At approximately 9:47 a.m., Ticktin approached Plaintiff's counsel and Plaintiff, who were still seated at a table near the hotel coffee bar.[22]  Ticktin was clearly angry.  Ticktin raised his voice and said, "you're burning my clock and you damn well know it.  Let's get in there and do this.  Let's call the judge." Plaintiff's counsel rose from his seat and informed Ticktin that he had already contacted court staff to request a hearing.  In response, Ticktin yelled, "Don't call chambers without me.  Don't do it again!  Don't do it again!"[23]

19.    Ticktin had apparently not read the section entitled "Contacting Chambers" on Magistrate Flynn's preferences which permits counsel to contact chambers to discuss procedural matters.

20.    Responding to Ticktin's shouting, Plaintiff's counsel said, "Look, Peter, you can't intimidate me."  Plaintiff's counsel began following Ticktin towards the conference room (as Ticktin requested) when Ticktin suddenly turned around and shoved him.  At the time, Plaintiff's counsel had a notebook in his right hand and simply took the blow.  After the first shove, Plaintiff's counsel said "come on old man" while walking towards the conference room.  A few steps later, Ticktin

---

[22] **Exhibit 15**, hotel video surveillance footage, (Jan. 27, 2026), obtained via subpoena and available at https://caincloud.egnyte.com/dl/qChYxrGKBvF6.

[23] *See id.*

again turned around, raised his fist,[24] and then, thinking better of throwing a punch, instead shoved Plaintiff's counsel a second time.  This confrontation is corroborated by the court reporter's statement,[25] the hotel video,[26] and a hotel employee's declaration.[27]   Throughout this attack, Plaintiff's counsel did not physically retaliate against Ticktin.

21.    When Plaintiff's counsel entered the conference room, Ticktin loudly cursed at Plaintiff's counsel about the delay.  It was at that point that Byrne inserted himself into the ongoing discussion by getting up from his chair at the conference table, walking approximately ten feet, and inserting himself between the two attorneys.  Byrne then shoved Plaintiff's counsel on approximately three occasions in an alcove in the conference room.  Byrne did so by striking Plaintiff's counsel with his elbow/forearm and by falling into him with his side and back to initiate contact.  This required Plaintiff's counsel to brace Bryne's fall to avoid being knocked to the ground.  At one point, Byrne slapped Plaintiff counsel's face with the back of his hand.[28]  During this interaction, Plaintiff's counsel was blocked in by Bryne in the alcove and could not exit.

---

[24] A view of Ticktin raising his right fist by his ear is obscured on the hotel video.

[25] *See* **Exhibit 17**, Lagoa Affidavit (Feb. 3, 2026).

[26] *See* **Exhibit 15**.

[27] *See* **Exhibit 16**, Crawford Declaration, ¶¶ 4-6 (Jan. 28, 2026).

[28] *See* **Exhibit 17**, Lagoa Affidavit, ¶ 10 (Feb. 3, 2026).

22.    Like with Ticktin, Plaintiff's counsel did not physically retaliate against Byrne.  Plaintiff's counsel only held his hands up at one point to ward Byrne off of him while Byrne was intentionally falling into him.

23.    Bryne's last run-in with Plaintiff's counsel was recorded by Plaintiff himself (who had heard the commotion and came from the lobby to the conference room door).[29]  This encounter occurred about a minute after Byrne first approached Plaintiff's counsel and consisted of Bryne intentionally walking toward and into Plaintiff's counsel again.[30]  By way of comparison, the last contact by Byrne was not as physical as the prior incidents.

24.    The hearing took place shortly after Byrne's assault at approximately 9:55 a.m.  It was recorded by the court reporter retained for the deposition, who had also witnessed portions of the two assaults and heard exchanges between counsel.[31]

25.    During the hearing, Plaintiff's counsel told the Court that he had been assaulted.  Ticktin then represented to the Court that it was he who had, in fact, been assaulted, stating:

> I've never had a record of fighting anyone, in any case, ever, and this attorney pushed his body up against me, trying to intimidate me out in the other room.  It was heard by people that were in the -- this room. They know that he started it.   And -- and I did push him away from

---

[29] *See* **Exhibit 18**, cell phone video footage (Jan. 27, 2026), available at https://caincloud.egnyte.com/dl/RtgQRyvm646D.

[30] *See id.*

[31] *See* **Exhibit 17**, Lagoa Affidavit.

me.  I'm not weakling, but at the same time, I'm -- I've never been in a situation where I've been assaulted before in a case, and this young man,[32] he -- you can see his struck -- his stature.  He looks like he's made out of muscle, and I'm not.  So, we have this man who was the aggressor, who's now complaining…"[33]

26.     This rendition of events is clearly contradicted by the hotel surveillance footage, which does not show Plaintiff's counsel "push[ing] his body up against" Mr. Ticktin.  Instead, the video shows Mr. Ticktin initiating contact with Plaintiff's counsel on two separate instances, and Plaintiff's counsel refusing to engage.

27.     During the hearing, the Court ordered Oltmann excluded from the deposition.[34]  With respect to the assaults, the Court stated, "We'll get to the bottom of it, and there will be consequences for what happened today, once I figure out exactly what happened."[35]

28.     Both Oltmann and Byrne, as well as at least one of Byrne's "experts," made public social postings and podcasts both during and after Plaintiff's deposition.[36]  Both publicly accused Plaintiff's counsel of committing an assault on

---

[32] Plaintiff's counsel was 55 years old at the time.

[33] *See* **Exhibit 14**, Excerpt of Eric Coomer Depo. Tr. at 10:23-11:15 (Jan. 27, 2026).

[34] *Id.*, at 15:16-23.

[35] *Id.*, at 16:14-16.

[36] *See* **Exhibit 19**, p. 1 (Byrne: "Coomer's attorney just bumped up on my lawyer Peter Ticktin (80) trying to get a fist fight started"); p. 2. (Byrne: "Eric trying to cancel deposition now!  Eric DESPERATELY trying to cancel deposition today! Judge siding with us!"); p. 7 (Oltmann: "I am at the deposition of Eric Coomer in the matter of Patrick Byrne et. al. Charlie Cain, attorney for Eric Coomer PHYSICALLY assaulted Peter Ticktin several times."); p. 15 (Oltmann retweeting and promoting Byrne's tweets); p. 16 (Oltmann promoting a podcast interview with Byrne with reference to "the ticking clock on Coomer's deceptions, his lawyer's thuggish antics (including an

Ticktin, and falsely claimed that Dr. Coomer was trying to "cancel the deposition." According to one of Byrne's social media posts from an appearance on Lindell TV, the deposition was also attended by "a couple green berets" and Byrne claimed that Plaintiff's counsel was caught on video lunging at Ticktin.[37]

29.    According to public sources, prior to this incident, Ticktin has had his law license suspended by the Florida State Bar on at least two prior occasions.[38] More recently in 2025, United States District Court Judge Mary S. Scriven sanctioned Ticktin and his law firm $320,819.88.[39]  In doing so, Judge Scriven set the sanction amount to avoid "effectively greenlight[ing] this conduct in the future for firms, like the Ticktin Law group, which could simply build a nominal sanction cost into the cost of doing business in this fashion."

### III.    ARGUMENT AND AUTHORITIES

30.    ***Applicable Legal Standard.***    Federal courts have the inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).  This authority arises from the "control necessarily vested in

---

assault on an 80-year-old attorney)…"); p. 18 (Oltmann: "His lawyer Charlie Cain assaulting Peter Ticktin is yet another example of the thuggish unhinged behavior.").

[37] **Exhibit 20**, Byrne interview on Lindell TV (Jan. 29, 2026), https://caincloud.egnyte.com/dl/Kk8JkfjP3gxK.

[38] *See The Florida Bar v. Ticktin*, 14 So. 3d. 928 (Fla. 2009) (affirming ninety-one day suspension); *see also* https://www.cbsnews.com/miami/news/foreclosure-attorney-practices-coming-under-fire/.

[39] **Exhibit 22**, Order, Case No. 8:20-cv-02517-MSS-AEP; *Global Glass Technologies, Inc. vs. Research Frontiers, Inc. et al.*, in the United States District Court for the Middle District of Florida, Tampa Division, July 25, 2025.

courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). To "unlock[ ] that inherent power," a court must find that a party or his attorney acted in "bad faith." *Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015). On a finding of bad faith, the district court may "assess attorney's fees." *Id.*

31.    Rule 26, Federal Rules of Civil Procedure, provides the Court with the authority to order a host of remedies to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. FED. R. CIV. P. 26 (c)(1). As relevant here, these remedies include (i) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; (ii) prescribing a discovery method other than the one selected by the party seeking discovery; and (iii) designating the persons who may be present while the discovery is conducted. FED. R. CIV. P. 26 (c)(1)(A)-(C). The Court may order payment of expenses associated with the issuance of a protective order. FED. R. CIV. P. 26(c)(3).

32.    Rule 30, Federal Rules of Civil Procedure, states: *Sanction.* The court may impose an appropriate sanction—including reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent. FED. R. CIV. P.30 (d)(2).

33.    Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy

personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. 28 U.S.C. § 1927.

34. Federal courts have the authority to promulgate local rules to govern the administration of judicial business. 28 U.S.C. § 2071 (a); FED. R. CIV. P.83 (a)(1); *Theard v. U.S.*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957). Rule 2.04 of the Local Rules for the Middle District of Florida provides, in part:

> (a)    DISCIPLINE BY THE COURT. In addition to a judge's sanction or use of another grievance mechanism, the court can — after a hearing and for good cause — disbar, suspend, reprimand, or otherwise discipline a member of the Middle District bar or a lawyer appearing by special admission.

Subsection (d) of the rule describes the procedures used by the court or committee members to initiate and investigate alleged attorney misconduct.

35. Moreover, the conduct described herein implicates Florida Rules of Professional Conduct 4-3.3 (a) (Candor Toward the Tribunal); 4-3.4 (g) (Fairness to Opposing Party and Counsel); and 4-8.4 (a)-(e) (Misconduct).

36. Under Florida law, a person commits assault if the person makes "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." § 784.011, Fla. Stat. Ann. Assault is considered a misdemeanor of the second degree. *Id.* Battery occurs when a person: (1) actually and intentionally touches or strikes another person against the will of the other person; or (2) intentionally causes bodily harm

to another person.  § 784.03, Fla. Stat. Ann.  Battery is considered a misdemeanor of the first degree.

37.    A handful of reported cases exist involving actual assault during a judicial proceeding by one counsel on opposing counsel.  *See, e.g., Vega v. Chi. Bd. of Edu.*, 109 F.4th 948, 956-57 (7th Cir. 2024) (affirming removal of attorney from case, costs, and attorney's fees for assault on opposing counsel after deposition and misrepresentations to the court); *Cook v. Am. S.S. Co.*, 134 F.3d 771 (6th Cir. 1998) (imposing sanctions on counsel under 28 U.S.C.A. § 1927 for assaulting opposing counsel in courtroom after issuance of show cause order); *Matter of Jaques*, 972 F.Supp. 1070 (E.D. Tex. 1997) (imposing three-year suspension from practice before the district court on attorney who assaulted opposing counsel and committed other misconduct).

38.    Ticktin and Byrne are flagrantly abusing the integrity of the discovery process and will continue to do so.  Gamesmanship, social media content, political grievances masquerading as legal defenses, false public statements, false statements to the Court, and now assault and battery have replaced professionalism and decorum.

39.    Defendants are ostensibly conducting discovery to assert a truth defense to their claim that the 2020 presidential election was rigged by Plaintiff

and Dominion Voting Systems.[40]  They have the right to seek evidence of their theories even where others have failed and, in many cases, have been sanctioned or disbarred.  But now, Byrne and Ticktin are resorting to actual violence and other egregious conduct that demeans the judicial process.  This conduct is intolerable and must cease.

40.  ***Oltmann's Presence at Deposition.***  The original sin of the events that transpired on January 26 resulted from the failure by Bryne and his counsel to provide Plaintiff's counsel notice such that the Oltmann issue could have been addressed with the Court prior to the deposition.  Plaintiff's objection to Oltmann was not only foreseeable, it was assured.

41.  Like his attorney, Oltmann could (and ultimately did) attend the deposition via the Zoom following the Court's exclusion ruling.  Assuming he came from Colorado where he lives, Oltmann traveled over 1,500 miles (by plane) to Tampa to appear at the deposition in person.  Oltmann is not a retained or non-retained expert witness in the case.[41]  His presence was not expressly permitted under Section II.A.2, Civil Discovery Handbook, Middle District of Florida.  Byrne already had a retained expert witness present in the room and one

---

[40] At present, several defendants in Plaintiff's related cases, including Newsmax, Salem Media Corp., Eric Metaxas, and Clay Clark (the Reawaken America Tour), have issued retractions and apologies to Plaintiff.  In 2025, a jury returned a verdict in favor of Plaintiff against Mike Lindell (the MyPillow guy) and one of his companies for over $2.3 million in U.S. District Court in Denver. Witnesses in Plaintiff's cases such as Gen. Michael Flynn and the Trump Campaign have admitted they have no evidence that Plaintiff rigged the 2020 presidential election.  Parties such as Sidney Powell and One America News Network have also settled with Plaintiff.

[41] *See* **Exhibit 21**, Defendant Patrick Byrne's Expert Disclosures (Jan. 15, 2026).

on Zoom. He also had his "elections expert," Lambert, in the room. Neither Oltmann nor his attorney are parties or counsel in this proceeding, but Plaintiff's counsel ultimately did not object to their presence via Zoom based on their agreement to sign the Undertaking.

42.    However, even after the Court issued its order barring Oltmann from the deposition, Oltmann remained on-site in the Courtyard by Marriott hotel for the entire day while attending the deposition in what appeared to be a room booked at the hotel. Oltmann was, therefore, able to and did in fact enter the deposition room during breaks and was near Plaintiff in the hotel lobby. Oltmann stayed on-site until the deposition was completed at approximately 6:30 p.m. (est).

43.    Oltmann frequently retreats to social media during events such as Plaintiff's deposition. These posts generate eyeballs, clicks, and derisive comments. They support Oltmann's public persona (he has announced he is running for governor of Colorado) and his podcast. This incident was no exception as Oltmann falsely and publicly claimed Plaintiff's counsel committed assault.[42]

44.    Neither Plaintiff nor Plaintiff's counsel discuss Oltmann or Byrne publicly. Plaintiff does not have a podcast and has not posted on social media in over five years. Plaintiff is focused on his civil case against Byrne and is not discussing it publicly.

---

[42] *See generally* **Exhibit 19**.

45.    The unannounced attendance of Oltmann at Plaintiff's deposition unreasonably and vexatiously increased Plaintiff's expense and ultimately created an environment that led to the subsequent misconduct engaged in by Ticktin and Byrne.

46.    ***Ticktin's Assault and Battery and Misrepresentation to the Court.***  Despite only being involved in this case for six months, Ticktin has managed to violate virtually every rule of decorum.  The evidence of Ticktin's assault on counsel is documented by the hotel video evidence,[43] by a disinterested hotel employee, [44] and by the court reporter.  As to the reporter's account, she heard Plaintiff's counsel advise Ticktin that the deposition would not proceed until the judge ruled on the Oltmann dispute.[45]  She saw Ticktin shove Plaintiff's counsel in the lobby (the second shove).[46]  She heard Ticktin accuse Plaintiff's counsel of "talk[ing] to the Judge without me."[47]

47.    Plaintiff obtained this evidence with the expectation that Ticktin would deny the conduct complained of in this Motion.  During conferral on this Motion, he did just that, stating to Plaintiff's counsel: "I've got a lying sleazebag opposing counsel who assaults people because he has daddy issues."[48]

---

[43] *See* **Exhibit 15**.

[44] *See* **Exhibit 16**.

[45] *See* **Exhibit 17**, at ¶ 4.

[46] *See id.*, at ¶ 5.

[47] *See id.*, at ¶ 7.

[48] This was written down verbatim.

48.     During the hearing, Ticktin represented to the Court that he was being intimidated by Plaintiff's counsel which caused him to lash out.  Even assuming the truth of that statement, it does not excuse his violent conduct.   But the statement is not true.  As the video makes clear, Ticktin approached Plaintiff's counsel, who was seated with his client and waiting for notice of the hearing, and initiated a confrontation by angrily yelling at him and his client in a public setting.[49]   He accused Plaintiff's counsel of improper *ex parte* communications when none had occurred.  He shoved counsel twice.[50]  This comes on the heels of his "offer"[51] to represent Plaintiff to get him out of certain criminal liability.  This latter misconduct alone is violative of Rule of Professional Conduct 4-3.4 ("A lawyer must not present, participate in present, or threaten to present criminal charges solely to obtain an advantage in a civil matter.") and Rule 4-8.4 ("A lawyer shall not state or imply an ability to influence improperly a government agency or official to achieve results by means that violate the Rules of Professional Conduct or other law.").

49.     During the hearing with the Court, Ticktin confessed to pushing Plaintiff's counsel but nonetheless accused Plaintiff's counsel of committing

---

[49] *See* **Exhibit 15**.

[50] *Id.*

[51] Ticktin has pointed to language in the November 11 email where he expressly states he is not making an "offer."  This language is inconsistent with the subject line of the email and the impossibility of Plaintiff continuing to maintain his civil suit while simultaneously being represented by opposing counsel against putative criminal claims relating to the same subject matter.

assault, being the "aggressor," and "starting it."  These statements were false.
Ticktin is seen striking Plaintiff's counsel within a few seconds of approaching him.
Ticktin further stated to the Court that Plaintiff's counsel "might have a history of
doing this kind of thing" despite not even knowing Plaintiff counsel's name (which
was provided to him by Lambert during the hearing).  That statement was both
false and made recklessly.

50.    In short, Ticktin's conduct is so far beneath the dignity of the
profession and respect for the judicial process that it warrants his suspension from
the practice of law and removal from this case.  It is the type of conduct that can
only be addressed through use of this Court's power to discipline members of the
bar.  It is the type of conduct that violates both the Code of Professional
Responsibility and the Local Rules, which both binds an attorney to those rules of
professional conduct and provides an enforcement mechanism.  *See* Rule 2.01 (e)
and 2.04, Local Rules of the Middle District of Florida.

51.    ***Byrne's Assault and Battery.***  The evidence of Byrne's attack on
Plaintiff's counsel is evidenced by the affidavit of the attending court reporter (an
officer of the Court and a neutral third-party that had been hired by Ticktin), video
taken of the last shove, and by Byrne's own admissions on Lindell TV.

52.    Here Byrne got up from his seat at the conference room table,
intentionally walked over to Plaintiff's' counsel, began elbowing Plaintiff's counsel,
slapped him on the face, and fell into him multiple times to initiate contact all the
while exclaiming that he was the one being assaulted.  This was partially witnessed

by the court reporter where she saw that "Mr. Byrne was shoving himself into Mr. Cain."[52]  She further witnessed when "Mr. Byrne slapped Mr. Cain on the neck with the back of his hand" while simultaneously stating, "Stop poking me, you are provoking me."[53]

53.    Byrne, himself, admitted on Lindell TV to "stamping" on Plaintiff counsel's foot "a couple of times" and jabbing him in the throat while simultaneously claiming he did not instigate the incident and that he thought Plaintiff's counsel has some "cartel clients."[54]

54.    The last contact of the Byrne incident was videoed by Plaintiff after he heard the commotion and stood at the door to the conference room.  The video clearly shows Byrne acting aggressively and physically confronting Plaintiff's counsel, who is visibly attempting to deescalate and denying Byrne's false accusations.[55]

55.    Byrne nonetheless took to social media to falsely describe some of the events that had occurred.[56]  Byrne's personal animus towards Plaintiff, who he never met prior to Plaintiff's deposition, is evident from both the facts of this case, and his own sworn testimony describing Plaintiff as a "traitor."[57]

---

[52] *See* **Exhibit 17**, at ¶ 9.

[53] *See id.*, at ¶ 10.

[54] **Exhibit 20**, at approx. 2:30-4:37.

[55] *See* **Exhibit 18**.

[56] *See generally*, **Exhibit 20**.

[57] **Exhibit 2**, at 180:4-7.

56.     While Byrne's conduct is not governed by the Florida Bar, it is governed by Florida criminal statutes and must conform to this Court's rules of decorum.  Instead of observing these basic rules of decency, Bryne is seeking to capitalize on publicity for his pet election fraud projects by appearing on Lindell TV and by posting defamatory statements about Plaintiff and his counsel to drum up support for his election fraud claim *du jour*.

### IV.   REQUEST FOR RELIEF

For all of the reasons stated herein, Plaintiff Eric Coomer, Ph.D. requests the Court issue an order to show cause to counsel, Peter D. Ticktin, and his client, Patrick Byrne, and upon notice and hearing issue an order assessing the following sanctions:

- An award attorney's fees and costs against Byrne and Ticktin, jointly and severally, incurred by Plaintiff as a result of the conduct described above and as determined by the Court;

- Removal of Ticktin and his law firm as counsel of record from this case;

- Initiation of proceedings against Ticktin pursuant to Local Rule 2.04, with sanctions to include disbarment, suspension, reprimand, or other discipline;

- Referral of Ticktin to the Florida State Bar Grievance Committee for consideration of any additional punishment resulting from the conduct described herein;

- An order that Byrne pay all expenses for security at any additional out of court proceedings with security provided by a third-party company acceptable to the Court;

- That Byrne (and his counsel, if any) be ordered to provide notice to Plaintiff at least ten days in advance of any deposition specifying the attendees they intend to have present at any proceeding conducted outside of the courthouse to allow for the filing of an emergency motion, if necessary; and

- That Byrne (and his counsel, if any), their invitees, contractors, and agents be ordered not to carry deadly weapons inside the physical location of any further proceeding conducted outside of the courthouse (as if the proceeding were being conducted at the courthouse).

Eric Coomer, Ph.D. requests such other and further relief as the Court deems equitable and just.

Respectfully submitted this 6th day of February 2026.

*/s/ Charlie Cain*
Charles J. Cain, CO Atty No. 51020*
ccain@cstrial.com
Bradley A. Kloewer, CO Atty No. 50565*
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011
512-477-5011 (Fax)
*Appearing via Special Admission

Ashley N. Morgan*
TX Atty No. 24091339
CO Atty No. 61713
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)
*Appearing via Special Admission

**ATTORNEYS FOR PLAINTIFF**

## LOCAL RULE 3.01(G) CERTIFICATION REGARDING CONFERRAL

Movant certifies:

(A)     that he conferred with Defendants via telephone regarding the relief requested;

(B)     that Defendant Patrick Byrne is opposed to the relief requested; and

(C)     that Defendants Steven Lucescu and The America Project, Inc. take no position with respect to the relief requested.