IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,
    Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,
    Defendants

---

**EXHIBIT 12**

---

| | |
|---|---|
| **DISTRICT COURT, DENVER COUNTY, COLORADO**<br>Court Address:<br>1437 BANNOCK STREET, RM 256, DENVER, CO, 80202<br>**Plaintiff(s)** ERIC COOMER<br>v.<br>**Defendant(s)** DONALD J TRUMP FOR PRESIDENT INC et al. | DATE FILED<br>December 3, 2025 9:50 AM<br>CASE NUMBER: 2020CV34319 |
| | ⚠ **COURT USE ONLY** ⚠<br>Case Number: 2020CV34319<br>Division: 409    Courtroom: |
| **Order:Special Master's Recommendation on Various Discovery Issues (#1)** | |

The motion/proposed order attached hereto: APPROVED.

Colorado Rule of Civil Procedure 53(f)(2) provides that "[a] party may file objections to or a motion to modify the master's proposed rulings, order, report or recommendations no later than 7 days after service of any of those matters, except when the master held a hearing and took sworn evidence, in which case objections or a motion to modify shall be filed no later than 14 days after service of any of those matters." The Court notes that Court Appointed Neutral, Hon. Shelley Gilman (Ret.) ("Neutral"), filed the Special Master's Recommendations on Various Discovery Issues (#1) ("Recommendation") on November 18, 2025. The Recommendation indicates that the Neutral held hearings on November 14 and 17, 2025. As a result, the parties were required to file their objection or a motion to modify by December 2, 2025. Defendants Joseph Oltmann, FEC United, Inc., and Shuffling Madness Media, Inc. ("Objecting Defendants") filed their Objections to Special Master's Recommendations Regarding Reporter's Privilege and the Privacy Interests of Non-Party Private Citizens ("Objections"). No other objections were received by the Court.

The Court reviewed the Objections. The Court notes that the objections based on the reporter's privilege have been previously decided by this Court, initially on July 7, 2021, and again on September 25, 2025. Since this issue has been decided by this Court, the Court treats the Objections as a motion to reconsider the previous decisions. In reviewing the Objections, the Court cannot identify a manifest error of fact or law that clearly mandates a different result or other circumstances resulting in manifest injustice. C.R.C.P. 121, § 1-15(11); *Fox v. Alfini*, 432 P.3d 596, 603 (Colo. 2018). While it is clear that the Objecting Defendants disagree with this Court's decision, such a disagreement does not justify reconsideration. *Id.* As such, the Court declines to reconsider this Court's previous decisions on the reporter's privilege.

The Court also observes that the matters resolved by the Neutral in the Recommendation are all well within the scope of this Court's order to the Neutral. The Court also considers the Objecting Defendants' privacy arguments and finds them to be without merit.

Based on the foregoing, the Recommendation is approved and is adopted as an order of this Court.

Issue Date: 12/3/2025

*[signature]*

JON JAY OLAFSON
District Court Judge

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER COLORADO<br>1437 Bannock Street,<br>Denver, Colorado 80202<br><br>**Plaintiff:**<br><br>ERIC COOMER, Ph.D.<br><br>v.<br><br>**Defendants:**<br><br>DONALD J. TRUMP FOR PRESIDENT, INC., et al. | ▲COURT USE ONLY▲<br><br>Case Number: 2020CV34319<br><br>Courtroom 409<br><br>JAG Case No. 20254-1368S |
| **SPECIAL MASTER'S RECOMMENDATIONS ON VARIOUS DISCOVERY ISSUES (#1)** | |

This case was referred to the Special Master for resolution of various discovery issues. The Special Master has considered the written submissions of the parties and held Zoom hearings on November 14 and November 17, 2025.[1] Based upon the above, the Special Master makes the following specific recommendations:

**1.   Oltmann Pattern Interrogatory No. 2.5**

In Oltmann Pattern Interrogatory No. 2.5, Plaintiff seeks information regarding Defendant Joseph Oltmann's academic and vocational background. Prior to the discovery dispute hearing, Mr. Oltmann supplemented his response to this interrogatory. Plaintiff represents that he is not seeking any action by the Special Master and will address Mr. Oltmann's response in the course of a deposition.

**2.   Oltmann Non-Pattern Interrogatory No. 1**

At the November 14, 2025 discovery dispute hearing, the Special Master addressed the issue regarding Oltmann Non-Pattern Interrogatory No. 1 with counsel. Mr. Oltmann was not

---

[1] The hearings were not on the record.

present at that hearing.[2] The Special Master requested that Mr. Oltman appear on November 17, 2025, at 9:00 a.m.[3] Mr. Oltmann did appear at that time.

On Sunday evening, November 16, 2025, the Special Master received a copy of Defendant Joseph Oltmann/FEC United, Inc./Shuffling Madness Media, Inc. dba Conservative Daily's Motion for a Determination of Reporter's Privilege. This motion was filed with the Court. At the commencement of the November 17, 2025 discovery dispute hearing, the parties addressed the appropriateness of the Special Master issuing a recommendation regarding Oltmann Non-Pattern Interrogatory No. 1 in light of the filing of the motion. While Mr. Oltmann objected to the Special Master issuing the recommendation, Plaintiff maintained that the issuance of the recommendation was crucial to prevent further delays in the case.

The Special Master agrees with Plaintiff. Moreover, the Special Master finds that the inapplicability of the newsperson's privilege had been determined by the Court and that the Court's ruling on the applicability of the privilege was a final ruling.[4] Accordingly, the Special Master makes the following recommendation.

In Non-Pattern Interrogatory No. 1 to Defendant Joseph Oltmann, Plaintiff asked Mr. Oltmann to "[i]dentify the individual(s) who supposedly got [him] access to the alleged 'Antifa call.'" In his written response, Mr. Oltmann did not invoke the newsperson's privilege. Instead, he responded as follows:

> Mr. Oltmann objects to Plaintiff's definition of "identify" as to a "individual" to the extent it seeks personally identifiable information about natural persons in violation of those individuals' constitutional right to privacy. Mr. Oltmann further objects to this litigation abuse, as this information has long been in Plaintiff's possession. Notwithstanding his objections, Mr. Oltmann states: RD.

The initials "RD," however, fail to provide Plaintiff with a meaningful identification of this individual. Mr. Oltmann now seems to suggest that he does not know this individual's name.[5]

---

[2] The Special Master did not require Mr. Oltmann's presence at the November 14, 2025 discovery dispute hearing.
[3] The Special Master requested his presence because Plaintiff was seeking a contempt finding against Mr. Oltmann.
[4] Mr. Oltmann claimed that it was only a preliminary ruling in the context of the anti-SLAPP motion to dismiss. The Special Master found that this claim did not have merit. More specifically, once the Court determined that the newsperson's privilege was not applicable, Mr. Oltmann could be compelled to disclose the requested information. It did not make sense that the Court could only compel him during the Anti-SLAPP discovery stage but not later after the anti-SLAPP motion was denied.
[5] July 7, 2021 Hearing, at 29:7-17.

2

However, at a July 7, 2021 hearing, Mr. Oltmann testified that he knew the name of this individual.[6]  Moreover, Mr. Oltmann has publicly stated that he will take the identity of this individual "to [the] grave"[7] and that "at some point" he will identify this "guy."[8]

Mr. Oltmann further justifies his failure to respond to the interrogatory by invoking the newsperson's privilege.  The Special Master rejects the invocation of that privilege, finding that the inapplicability of the newsperson's privilege is the law of the case. *Stockdale v. Ellsworth*, 407 P.3d 571, 580 (Colo. 2017), quoting *People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999) (As a general rule, "the law of the case doctrine "provides that prior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions"). First, at the July 7, 2021 hearing, after conducting an analysis pursuant to *Gordon v. Boyles*, 99 P.3d 75 (Colo. App. 2004), Judge Moses determined that the newsperson's privilege was not applicable.  Second, on September 25, 2025, when Mr. Oltmann's counsel reinvoked the newsperson's privilege, Judge Olafson stated that he was not going to set aside or disturb Judge Moses' ruling.[9]  Moreover, as noted above, Mr. Oltmann did not invoke the newsperson's privilege in his response to the interrogatory.

At a deposition in another proceeding where Mr. Oltmann appeared as a third party,[10] Mr. Oltmann refused to answer questions as to who enabled him to attend the alleged Antifa call and then abandoned the deposition and departed from the courthouse without authorization.  The federal district court held him in contempt and imposed a sanction of $1,000.00/day until he provided a response.  The Tenth Circuit affirmed the district court's contempt order and, as a sanction for an appeal that "crossed the line between zealous advocacy and frivolity or attorney

---

[6] July 21, 2021 transcript, at 29:7-17.

[7] Joe Oltmann, Joe Oltmann with Edward Szall & Jake Lang: Corruption & Sabotage on the Campaign Trail! Can We Still Save The Election? CONSERVATIVE DAILY PODCAST at 15:08 (Sep. 30, 2024)https://rumble.com/v5gu30q-30-september-2024-joe-oltmann-and-david-clements-at-4pm-est.html?e9s=src_v1_ucp (Oltmann: "The antifa kid in 2020 wanted to be anonymous too. I won't give him up. They want to have me knocked off for that. The judge in that case – we're not allowed to have access to the judge's files, but not just probably, or likely, but a hundred per cent that judge is doing the biddings of a political ideology having nothing to do with it in order to kill a young man. I'll take that information to my grave. As well as the person that gave me access to Eric Coomer's socials.").  The Special Master has listened to that portion of this podcast.

[8] Joe Oltmann, Live with Clay Clark: Monkey Pox, Primary Elections Aftermath! War on Babies and 2nd Amendment Surges, CONSERVATIVE DAILY PODCAST (Aug. 3, 2022), available at https://caincloud.egnyte.com/dl/DDMGpyvyYk9D. The Special Master has listened to this referenced public statement.

[9] Sept. 25, 2025 transcript, at 94:10-11 and 95:25-96:1-6.

[10] *Coomer v. Make Your Life Epic, LLC d/b/a Thrivetime Show, et al.*, 1:21-dv-03440-WJM-KAS.

misconduct," ordered Mr. Oltmann to pay Dr. Coomer's reasonable attorney fees, and costs associated with the appeal. *Coomer v. Make your Life Epic, LLC*, 140 F.4th 1269, 1279 (10th Cir. 2025).[11]

Finally, to the extent that Mr. Oltmann alleges that this unidentified individual's life will be endangered if his name is released, the Special Master finds that Mr. Oltmann has failed to produce any credible evidence in support of this allegation.

Accordingly, at the November 17, 2025 discovery dispute hearing, the Special Master ordered Mr. Oltmann to disclose the full identity of the individual who provided him access to the alleged Antifa call. Contrary to his previous public statements and testimony, Mr. Oltmann only provided the initials "RD." The Special Master finds that Mr. Oltmann has not fully responded to the interrogatory and thus recommends that he be found in contempt of court and that a $1,000.00 daily sanction be imposed to compel compliance. The Special Master recommends that the sanction be paid into the Court's registry.

The Special Master denies, without prejudice, Plaintiff's request for attorney fees and costs.

**3.     Oltmann Non-Pattern Interrogatory No. 3**

In Oltmann Non-Pattern Interrogatory No. 3, Plaintiff seeks the identity of the individual whom Mr. Oltmann claims sent him a text message with a link to an article identifying Plaintiff by name on November 7, 2020. Plaintiff represents that the issues raised by this interrogatory have been resolved.

**4.     Oltmann Non-Pattern Interrogatory No. 4a**

In Oltmann Non-Pattern Interrogatory No. 4a, Plaintiff seeks the identities of all other individuals to whom Mr. Oltmann has revealed the identity of the individual who allegedly gave him access to the alleged Antifa call. Mr. Oltmann provided a response to this interrogatory, indicating that he shared this information with the attorneys and Plaintiff who were present during his deposition in the instant case and with the attorneys, Plaintiff, and any witness present during his deposition or trial testimony in the Mike Lindell matter. While Plaintiff contests the veracity

---

[11] It is the Special Master's understanding that Mr. Oltmann never provided a response but that he entered into a settlement to resolve the contempt sanction.

4

of this response, the Special Master finds that Mr. Oltmann has provided a full response to this interrogatory.

5. **Oltmann Non-Pattern Interrogatory No. 5**

In Oltmann Non-Pattern Interrogatory No. 5, Plaintiff seeks the identities of all individuals whom Mr. Oltmann has contacted or whom have contacted Mr. Oltmann about Plaintiff's whereabouts between June 1, 2020, and the present. In support of this interrogatory, Plaintiff cites the December 14, 2020 episode of the Conservative Daily, in which Mr. Oltmann allegedly made references to people in Salida who were following Plaintiff. In response to this interrogatory, Mr. Oltmann identifies one of Plaintiff's employees who had a falling out with Plaintiff and a reporter in Southern Colorado. He claims, however, that he does not know the names of these individuals. While the Plaintiff contests the veracity of this response and Mr. Oltmann's lack of knowledge of the individuals' names, the Special Master finds that Mr. Oltmann has provided a full response to the interrogatory.

6. **Oltmann Non-Pattern Interrogatory No. 14**

In Oltmann Non-Pattern Interrogatory No. 14, Plaintiff seeks the identification of the "thirteen Antifa journalists" whom Mr. Oltmann claimed to have identified in late 2020. Plaintiff represents that the issues raised by this interrogatory have been resolved.

7. **Oltmann Non-Pattern Interrogatory No. 17**

In Oltmann Non-Pattern Interrogatory No. 17, Plaintiff requests Mr. Oltmann to identify all interviews conducted by him on any television program, podcast, radio show, or other media outlet between November 1, 2020, and the present. Mr. Oltmann objects to this interrogatory, arguing that the request is unduly burdensome and improper and that these interviews are equally accessible to Plaintiff. The Special Master finds that the requested materials are highly relevant to the claims in this case since they may include public statements made by Mr. Oltmann about Plaintiff and that this requested discovery is proportional to the needs of the case, considering that the case involves defamation claims and that the burden placed on Mr. Oltmann to identify interviews in which he was involved is outweighed by the information's likely benefit. Moreover, the Special Master finds that this requested discovery is uniquely within the control of Mr.

5

Oltmann. Accordingly, the Special Master recommends that Mr. Oltmann provide this information to Plaintiff by December 19, 2025.

**8.     Oltmann Non-Pattern Interrogatory No. 18**

In Oltmann Non-Pattern Interrogatory No. 18, Plaintiff seeks the identification of all fundraising platforms utilized by Mr. Oltmann to raise money for his legal defense in this case or any related case. Plaintiff represents that the issues raised by this interrogatory have been resolved.

**9.     Oltmann Non-Pattern Interrogatory No. 19**

In Oltmann Non-Pattern Interrogatory No. 19, Plaintiff seeks any evidence purporting to show that he has or ever had any offshore or foreign bank accounts, shell companies, or any foreign assets. Plaintiff represents that the issues raised by this interrogatory have been resolved.

**10.    Oltmann Request for Production No. 2**

In Oltmann Request for Production No. 2, Plaintiff seeks production of all communications Mr. Oltmann had with any third party who provided him with information relating to Plaintiff or Dominion Voting Systems between June 1, 2020, and the present. Mr. Oltmann responded that he produced the requested communications. At this time, Plaintiff does not seek any action by the Special Master on this request for production but instead reserves the right to revisit this issue at a later time.

**11.    Oltmann Request for Production No. 6**

In Oltmann Request for Production No. 6, Plaintiff seeks production of all communications between Mr. Oltmann and Greg "Apollo" Pappas between June 1, 2020, and the present relating to Plaintiff or Dominion Voting Systems. At this time, Plaintiff does not seek any action by the Special Master on this request for production but instead reserves the right to revisit this issue at a later time.

**12.    Oltmann Request for Production No. 9**

In Oltmann Request for Production No. 9, Plaintiff seeks production of the "ARIMA analysis" described on page 5 of Mr. Oltmann's November 13, 2020 sworn affidavit. While Mr. Oltmann indicates that he does not have an email about the ARIMA analysis specific to the instant

6

case, he does not object to providing Plaintiff with a copy of the email he discussed during his testimony in a related proceeding. He indicates that the email just generally addresses the ARIMA analysis. The Special Master thus recommends that this email be produced to Plaintiff no later than December 19, 2025.

**13.     Oltmann Request for Production No. 11**

In Oltmann Request for Production No. 11, Plaintiff seeks production of all video or audio recordings discussing Plaintiff, including, but not limited to a conversation between Mr. Oltmann and Charles "Sam" Faddis described in Mr. Oltmann's August 5, 2025 Facebook post. At this time, Plaintiff does not seek any action by the Special Master on this request for production but instead reserves the right to revisit this issue at a later time.

**14.     Oltmann Request for Production No. 13**

In Oltmann Request for Production No. 13, Plaintiff seeks production of all documents which evidence that Plaintiff is or ever was a shareholder of Dominion Voting Systems. Plaintiff represents that the issues raised by this request for production have been resolved.

**15.     Oltmann Request for Production No. 14**

In Oltmann Request for Production No. 14, Plaintiff seeks production of all documents which evidence that Plaintiff is or ever was employed by or affiliated in any way with the Central Intelligence Agency. Plaintiff represents that the issues raised by this request for production have been resolved.

**16.     Oltmann Request for Production No. 15**

In Oltmann Request for Production No. 15, Plaintiff seeks production of all documents which evidence that Plaintiff was involved in elections in Mongolia or the Philippines, including any evidence that the results of those elections, if any, were inaccurate or manipulated in any way. Plaintiff represents that the issues raised by this request for production have been resolved.

**17.     Oltmann Request for Production No 16**

In Oltmann Request for Production No. 16, Plaintiff seeks production, in sequential order, of the ten pages preceding and following the notes Mr. Oltmann claims were taken during the

7

alleged Antifa call. Mr. Oltmann alleges that he has a right to privacy in these pages. The Special Master recommends the production of these pages, in sequential order, by December 19, 2025. If any of the pages contains privileged material, such as attorney-client or doctor-patient communications, Mr. Oltmann may submit them to the Special Master for an in camera review.

In making this recommendation, the Special Master finds that these pages are relevant in determining the date of the alleged Antifa call and that the production of these notes is proportional to the needs of the case, considering the importance of the issues. More specifically, the date of the alleged Antifa call is a critical issue in this case. The notes of the alleged call which were previously produced are not dated. Additionally, Mr. Oltmann has provided different dates for the alleged call. The pages before and after the alleged call will be useful in corroborating the date of the call and the authenticity of the notes that were previously produced to Plaintiff. Indeed, in his December 16, 2022 deposition, Mr. Oltmann admitted that these requested notes could serve to place the produced notes within a time frame.[12]

### 18. Oltmann Request for Production No. 17

In Oltmann Request for Production No. 17, Plaintiff requests production of all documents reflecting Mr. Oltmann's efforts to identify other participants in the alleged Antifa call. Mr. Oltmann recently produced documents to Plaintiff in response to outstanding discovery requests. Plaintiff reserves the right to address this request for production after he has had an opportunity to review those documents.

### 19. Oltmann Request for Production No. 18

In Request for Production No. 18, Plaintiff seeks production of all communications relating to all interviews conducted by Mr. Oltmann on any television program, podcast, radio show, or other media outlet relating to Plaintiff between November 1, 2020, and the present. At the December 17, 2025 discovery dispute hearing, Mr. Oltmann stated that he did not have any objection to providing Plaintiff with such written communications. The Special Master thus recommends that these communications be produced to Plaintiff no later than December 19, 2025.

---

[12] December 16, 2022 Transcript, at 302:5-13.

8

If additional time is necessary within which to produce the communications, the parties can agree to a later date.

**20.    FEC United Non-Pattern Interrogatories Nos. 1, 2, and 3 and FEC United Requests for Production No. 2**

In FEC United Non-Pattern Interrogatory No. 1, Plaintiff seeks the identity of every individual or entity having a financial interest in FEC United, including all individuals or entities making a financial investment in FEC United between January 1, 2020, and the present. In FEC United Non-Pattern Interrogatory No. 2, Plaintiff seeks the identity of all past board members for FEC United, including their dates of tenure as board members. In FEC United Non-Pattern Interrogatory No. 3, Plaintiff seeks the identity of every individual or entity responsible for managing FEC United's finances, including, but not limited to FEC United's chief financial officer. In FEC United Request for Production No. 2, Plaintiff seeks production of all financial statements, whether monthly or annually, for FEC United from January 1, 2020, until present, including, but not limited to, all profit and loss statements and balance sheets.

FEC United has declined to respond to these three interrogatories or to produce the requested documents, maintaining that these individuals and entities have a privacy interest which Plaintiff has failed to overcome, that disclosure of their identities poses a safety risk to them, and that the financial documents sought are only relevant in a post-judgment debtor proceeding.

The Special Master recommends the disclosure of the identities of these individuals and entities and the production of the requested documents by December 19, 2025. In making this recommendation, the Special Master finds that this information is relevant to the claims, is not privileged, and is proportional to the needs of the case, considering the importance of the issues at stake. Significantly, FEC United is a party to this case and the board members are likely to possess relevant and discoverable information, particularly as to the credibility of Mr. Oltmann's defenses and his advocacy. FEC United has failed to provide any credible evidence in support of the allegation that disclosure of identities poses a safety risk.  Moreover, there is a protective order in this case and FEC United can invoke its protections.  Finally, Plaintiff is entitled to prove Defendants' state of mind through circumstantial evidence, including evidence of motive. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667-68 (1989).

**21.  FEC United Request for Production No. 11**

In FEC United Request for Production No. 11, Plaintiff seeks production of all meeting minutes for any FEC United board meetings between January 1, 2020, and the present. Plaintiff maintains that these documents are relevant because Mr. Oltmann was traveling the country throughout most of FEC United's existence and was giving interviews and advancing information about Plaintiff, often in conjunction with fundraising pleas for FEC United. Plaintiff claims that Mr. Oltmann has stated that FEC United is the reason he supposedly discovered Plaintiff.

FEC United has declined to produce these documents, again arguing that the minutes are not relevant and that FEC United has a privacy interest in these documents.

The Special Master recommends production of these documents by December 19, 2025, finding that FEC United is a party to this case, that the information is relevant to the claims, is not privileged, and is proportional to the needs of the case, considering the importance of the issues at stake.

**22.  SMM Non-Pattern Interrogatories Nos. 1, 2, 3, and 6 and Requests for Production Nos. 2, 3, and 6**

In SMM Non-Pattern Interrogatory No. 1, Plaintiff seeks the identity of every individual or entity who has an ownership interest in Shuffling Madness, including all individuals or entities who have made a financial investment in Shuffling Madness between January 1, 2020, and the present.  In SMM Non-Pattern Interrogatory No. 2, Plaintiff seeks the identity of all past or present board members for Shuffling Madness, including the dates of their tenure as board members.  In SMM Non-Pattern Interrogatory No. 3, Plaintiff seeks the identity of every individual or entity responsible for managing Shuffle Madness's finances, including, but not limited to, Shuffling Madness's Chief Financial Officer.  In SMM Non-Pattern Interrogatory No. 6, Plaintiff seeks the identity of all companies, LLCs, partnerships, corporations, or other entities in which Shuffling Madness is a member or has an ownership interest.

In SMM Request for Production No. 2, Plaintiff seeks production of all financial statements, whether monthly or annually, for Shuffling Madness from January 1, 2020, until present, including, but not limited to, all profit and loss statements and balance sheets.  In SMM Request for Production No. 3, Plaintiff seeks production of all Shuffling Madness federal income

tax returns from January 1, 2020 to present, including all supporting schedules. In SMM Request for Production No. 6, Plaintiff seeks production of all documents reflecting any compensation paid by Shuffling Madness to any of its members, board members, directors, executives, or other officers between January 1, 2020, and the present.

Shuffling Madness has declined to respond to these four interrogatories or to produce the documents requested in the four requests for production, maintaining that these individuals and entities have a privacy interest which Plaintiff has failed to overcome, that disclosure of their identities poses a safety risk to them, and that the financial documents sought are only relevant in a post-judgment debtor proceeding.

The Special Master recommends the disclosure of the identities of these individuals and entities and the production of the requested documents by December 19, 2025. In making this recommendation, the Special Master finds that this information is relevant to the claims, is not privileged, and is proportional to the needs of the case, considering the importance of the issues at stake. Significantly, Shuffling Madness is a party to this case and board members are likely to possess relevant and discoverable information, particularly as to the credibility of Mr. Oltmann's defenses and his advocacy. Moreover, Shuffling Madness is a privately held for profit entity. Shuffling Madness has failed to provide any credible evidence in support of the allegation that disclosure of identities poses a safety risk.  Moreover, there is a protective order in this case and FEC United can invoke its protections.  Finally, Plaintiff is entitled to prove Defendants' state of mind through circumstantial evidence, including evidence of motive. *Harte-Hanks Communications, Inc* at 667-68.

### 23. SMM Requests for Production Nos. 1 and 7

In SMM Request for Production No. 1, Plaintiff seeks production of all communications written, sent, or received by any individual acting on behalf of Shuffling Madness between January 1, 2020, and the present relating to Plaintiff or Dominion Voting Systems. In SMM Request for Production No. 7, Plaintiff seeks production of all meeting minutes for any Shuffling Madness board meetings between January 1, 2020, and the present. Shuffling Madness declines to produce these communications, arguing that these communications are not relevant.

11

The Special Master recommends the production of the requested documents by December 19, 2025. In making this recommendation, the Special Master again finds that this information is relevant to the claims, is not privileged, and is proportional to the needs of the case, considering the importance of the issues at stake in this case. Significantly, Shuffling Madness is a party to this case. Plaintiff is only seeking communications concerning Plaintiff and Dominion Voting Systems and thus the communications are likely to contain relevant and discoverable information, particularly as to the claims and defenses in this case. Additionally, the minutes of the board meetings of Shuffling Madness are likely to contain relevant and discoverable information. Shuffling Madness has failed to provide any credible evidence in support of the allegation that disclosure of identities poses a safety risk. Moreover, there is a protective order in this case and FEC United can invoke its protections.

**24.    SMM Request for Production No. 8**

In SMM Request for Production No. 8, Plaintiff seeks production of copies of all episodes of Conservative Daily and/or Untamed with Joe Oltmann that relate to Plaintiff. Plaintiff now withdraws this request, noting that it is an unduly burdensome request.

**25.    SMM Requests for Production Nos. 9 and 10**

In SMM Request for Production No. 9, Plaintiff requests production of all metrics tracking viewership or other audience engagement for every episode of Conservative Daily and/or Untamed with Joe Oltmann that discusses Plaintiff between November 9, 2020, and the present. In SMM Request for Production No. 10, Plaintiff seeks production of all Google analytics for conservative-daily.com and theuntamedtruth.com from November 1, 2020, until the present. Shuffling Madness objects to these two requests for production, stating that Shuffling Madness is not the custodian of records for Conservative Daily or Untamed with Joe Oltmann.

The Special Master recommends sustaining Shuffling Madness's objection, finding that Plaintiff has failed to establish that Shuffling Madness is the custodian of records for Conservative Daily or Untamed with Joe Oltmannn.

12

## CONCLUSION

Pursuant to the Court's Order: Appointing Court-Appointed Neutral, these recommendations are effective upon issuance. Any objection to these recommendations must be filed with the time period set forth in C.R.C.P. 53(f).

Dated this 18th day of November, 2025

*Shelley I. Gilman*
_____
Shelley I. Gilman
Special Master

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of November, 2025 a true and correct copy of the foregoing ***Special Master's Recommendations on Various Discovery Issues (#1)*** was served via electronic filing (CCE), addressed to the following:

All Counsel of Record

                              Original Signature of File
                              Jon Marie James, Administrative Clerk
                              Judicial Arbiter Group, Inc.

Attachment to Order - 2020CV34319