IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:24-cv-00008-TPB-SPF

ERIC COOMER, PH.D.,

    Plaintiff,

v.

PATRICK BYRNE, STEVE
LUCESCU, and THE
AMERICA PROJECT INC.,

    Defendants.
_____/

## PATRICK BYRNE'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND FOR ORDER TO SHOW CAUSE

The Defendant, Patrick Byrne, by and through his undersigned counsel, hereby files his Response in Opposition to the Plaintiff's Motion for Sanctions and for Order To Show Cause (hereinafter "Cain's Motion"), and states as follows:

### Prefatory Statement

The Plaintiff, Eric Coomer, is seeking sanctions based primarily on 1) a couple of shoves by Peter Ticktin which Coomer describes as an assault and battery, 2) the fact that Joseph Oltmann initially and during breaks in the hotel conference room in which the Deposition of Coomer was to take place, and 3) an alleged assault by Patrick Byrne. Of these, Cain's allegations of assaults by Ticktin is of the greatest significance, by far.

On January 27, 2026, just prior to the commencement of the deposition of Eric Coomer, Cain complained to Magistrate Judge Flynn that Ticktin had assaulted him. Ticktin explained that the aggressor was Cain who first "pushed his body up against [Ticktin]."

This Court indicated that it would get to the bottom of the accusations and that there would be "consequences."

Since then, Cain filed Cain's Motion, in which he provided a link to a copy of the relevant part of a video from a closed circuit video system in the hotel where the incident occurred. When one views the video, which is on normal speed, they can easily see that Cain is the one who followed and pursued Ticktin twice, after Ticktin walked away from him. However, the first push by Ticktin occurred at a time when Cain was hidden from view, behind a pillar. When one watches a cursory view it seems that Ticktin struck out, with no apparent provocation.

Moreover, Cain swiftly sought witnesses and prepared affidavits for them to sign. With his affidavits in hand, Cain now seeks sanctions with confidence that his story would be believed. With his accusations, he seeks to have Ticktin and his law firm removed from the above styled case, to pursue bar charges and criminal charges against Ticktin, and to be awarded attorneys' fees.

Cain almost got away with his accusation that Ticktin assaulted him, as his pressing his body into Ticktin was hidden from the camera. However, when a careful analysis is done of the video, the camera caught the first assault by Cain,

2

where he emerged on Ticktin's side of the pillar in just a few frames.

What really happened was that Ticktin told Cain sternly, to stop making ex parte communications to the judge's chambers saying: "Don't do it again, - - - Don't do it again." This apparently caused Cain to become physically aggressive. He immediately started to walk toward Ticktin who walked away to stop a safe distance from Cain.

Cain, a much larger man than Ticktin, continued to pursue Ticktin who maintained his position, and Cain pushed his body into Ticktin. This is caught by the camera, as was Ticktin's reactionary push to get Cain off of him.

Again, Ticktin walked away and hearing Cain say what seemed like fighting words: "Hey old man, - - - Let's do it." Ticktin stopped and turned to watch Cain who already assaulted him once. Then, notwithstanding that there was an abundance of room in which Cain could have avoided Ticktin, he walked directly up to Ticktin, and with a cat and mouse approach, he circled around Ticktin and again got into Ticktin's personal space and either hit Ticktin with his torso or was about to, when Ticktin again pushed Cain away.

If we had only the cursory view of the video, the situation at bar would probably have been a "he said – he said" conflict. However, on viewing the separate images, and by also slowing down the video, it is clear that Cain was the aggressor. Not only is he the one who is pursuing Ticktin, but just prior to Ticktin's first push, we can see Cain's left foot come toe to toe to Ticktin's left foot, on Ticktin's side of

3

the pillar, followed by Cain's torso and face emerging where Cain's torso pushed into Ticktin's body.

Cain knew exactly what he had done. He knew that he attempted to physically intimidate and assault his 80-year-old opposing counsel. He was not sleepwalking. Yet he pursued testimony he knew to be false or, at least, incomplete, and he made false claims to this Court, seeking horrendous consequences against Peter Ticktin, who was completely innocent of any assault.

When the Statement of the Facts section, below, is read and the photographs within it viewed, and the slow-motion videos are watched, Cain's prevarication that Ticktin assaulted him is seen for what it was, blatant dishonesty to this Court. Fortunately for Mr. Ticktin, Cain's pursuit and assault of a senior member of this bar is preserved and easily discernable.

Cain's dishonesty to this Court is far more serious than the assaults and batteries, themselves. There were no physical injuries. Ticktin's pushes were visually laughed off by Cain in the video. No one alleges any blood, bruises, or even any pain. However, Cain's misleading this Court, where he physically provoked a push, and attempted to capitalize on that push axiomatically harms the integrity of this Court and the administration of justice. Moreover, Cain's allegations are impugning Ticktin's integrity. It goes even further, to harm the public perception of how justice is conducted in the Middle District of Florida. Consequences for Cain's disingenuous pursuit of sanctions must be rendered, and the most

4

appropriate measure is the relief which he, himself, sought against Ticktin.

The bottom line is that if it was not for the few frames where Cain's left foot, torso, and face emerge past the pillar, Cain could have gotten away with his assault and plan to blame Ticktin. Thankfully, the camera caught him going over the proverbial line, and Cain's culpability is proven forensically.

## Statement of the Facts

The deposition of Eric Coomer was scheduled to commence at 9:00 am on January 27, 2026, in a hotel meeting room (hereinafter the "Deposition Room").

Initially, both Mr. Coomer and his attorney, Charles Cain, were present, as were Mr. Byrne, his counsel, Peter Ticktin and Stefanie Lambert, Christopher Dempsey, Joseph Oltmann, and the court reporter. Others were attending remotely.

The Deposition Room was set out with banquet tables in the shape of a U. The Defendants took the side of the U, close to the door. On the other side, Mr. Oltmann sat by himself right near the end, and the court reporter sat far to his right. Mr. Coomer as a witness and Cain sat at the bottom of the U, far from the side where the Defendants sat.

Instead of commencing the deposition, Mr. Cain objected to the presence of Mr. Oltmann. Mr. Ticktin and he agreed that the judge should be called to determine whether Mr. Oltmann could attend. Mr. Cain and Mr. Ticktin spoke with the court reporter who was set to record the telephone hearing.

5

Then, Cain and Coomer left the room before calling the judge, without indicating where they were going. It was presumed they left to confer or use the facilities. Instead, they went to the restaurant area and called the judge's chambers on their own. After about 20 minutes passed, Ticktin left the Deposition Room and started to search for them.

Ticktin soon saw Cain and Coomer in a booth at the restaurant, and asked them to come into the Deposition Room. Cain then advised Ticktin that he had already called the judge's chambers and was awaiting a call from the judge.

Ticktin told Cain that his conduct was unethical as it was an intended *ex parte* communication. Ticktin told him in an assertive and patronizing way: "Don't do it again." When Cain attempted to explain that he had only called the judge's chambers, Ticktin again told him, authoritatively and sternly not to do it again.

Ticktin can be seen in the video telling Cain to not do it again. Immediately after Ticktin admonished Cain, the video shows that Cain (5' 10", about 220 pounds, and days from his 56th birthday) started to walk toward Ticktin (5' 6", 160 pounds, and days from his 80th birthday). Ticktin did not respond in kind, to approach Cain, but, instead, walked away, and took a position some distance from Cain on the other side of a pillar.

Cain with his superior height, weight, and strength pursued Ticktin, who took a stance to the side of a pillar. Cain quickly walked in Ticktin's direction and became hidden from the camera as he approached Ticktin from behind a pillar.

## The First Assault

When one examines first of how the 2 men came into close proximity of each other just prior to Ticktin pushing Cain, it is obvious that Cain was pursuing Ticktin who at first walked away, and then took a stance, out of the way from Cain who had been approaching Ticktin from behind.  Then the camera caught Cain emerge from behind a pillar on the right-hand side of it where the gap between the pillar and Mr. Ticktin 's body is filled by the body of Mr. Cain.

It is important to look at the images in the still photos, below, because they show what to look for when watching the slow-motion rendition of the video.

The photos of images from the video show that Cain was approaching Ticktin and thrust his torso onto Ticktin's torso.  This becomes evident by looking at the space between the pillar and Ticktin.

The photographs, below show first that the space between Ticktin and the pillar is empty.  Then, Cain's right foot appears toe to toe with Ticktin 's left foot.

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222



In this photo, one can see a little bit of Mr. Cain's back and right leg on the left side of the pillar and Mr. Ticktin is standing still. Note where his feet are. The 2 red arrows show empty space to the left of Ticktin's head and torso. Cain's left foot, body, head, are not yet in the space between Ticktin and the pillar. The circle is empty and does not show Cain's foot, as it is not there, yet.



Here Cain is moving where his <u>left</u> foot is now toe to toe with Ticktin's left foot in the red circle. There is more of a gap between Mr. Ticktin and the pillar as Cain is approaching and Ticktin is starting to lean a little to his right. Note the empty space to the left of Ticktin's head and torso. Ticktin's feet remain in the same place. Also, Mr. Cain's right heel is still visable on the right side of the pillar, and he is in motion.



Here, we see Cain's face emerging toward Ticktin's face and his torso emerging onto Ticktin.

Cain's right foot has not yet landed as he is moving into Ticktin.

This photo proves that Ticktin was telling the truth as to Cain pushing his body into Ticktin.

Cain, by swiftly moving into Ticktin's space, first put Ticktin into apprehension of being hit and then when Cain pressed his torso into Ticktin 's body, he committed an unwelcome touching. Albeit that the touching was minimal, Ticktin had every right to push the imposing larger man away. In fact, at that point, with Cain imposing moving toward Ticktin, even if he had not made contact, Mr. Ticktin had the right to use reasonable force to defend himself and prevent a further intrusion.

Now that it is clear as to what to look for, this is a good point to watch the approach to the first assault. The viewer is encouraged to use his or her computer mouse which can be used to move back and forth to better ascertain what occurred. Please hold Control and click on:

https://www.dropbox.com/scl/fi/ine6mhxcxcfsirsu0ujd7/Slowed-Video-Made-with-Clipchamp-

9

1.mp4?rlkey=teb4dmidxcjknm1swnpismyda&st=wegdb6xt&dl=0

**The Second Assault**

After the first push, Ticktin retreated and moved further away from Cain, who was pursuing Ticktin. While Cain followed Ticktin, he said, showing that he was well aware of the age difference, "Hey Old Man, - - - Let's do it!"

Ticktin stopped and turned to watch Cain and see what was coming, while he left plenty of room for Cain to get around him. Instead, Cain headed right to Ticktin and circled around him and hovered over him.

Then when Ticktin turned and started to head to the Deposition Room, Cain stuck his chest out onto Ticktin, again. As this is so quick, it is difficult to see in the video.

Please click on this video for a view of Cain's chest bump against Ticktin. It is looped so it plays 4 times until the start button is clicked again.

Press Control and click on:
https://www.dropbox.com/scl/fi/uw4x862f7yiceluplzkty/Shoulder-Bump.mp4?rlkey=2davgtnk1h3dmzhqr5e7y6z4v&st=ly5o3b58&dl=0

This video was of what occurred immediately before Ticktin pushed Cain for a second time.

The distance is difficult to tell, but Cain's feet show that he moved in on Ticktin, toe to toe again, cornering Ticktin up against a pillar. Mr. Ticktin had stayed still while Cain circled and moved in on him.

Again, Cain laughed at Ticktin, displaying Cain's aggression with the intent

to intimidate, assault, and batter Ticktin.

The following video showing Cain after the first assault and through the second assault, as the aggressor. Mr. Ticktin's posture at the end of the following part of the video is indicative of his being a victim of Cain's physical intimidation efforts. Please hold Control and click here: [Slowed Video Second push - Made with Clipchamp (1).mp4](#)

**The Third Assault**

There are no videos of Cain's third and last assault of Mr. Ticktin.

After the second assault, Ticktin went directly into the deposition area, to the side of the table where he and the other members of the defense had been sitting.

Cain had no business on that side of the tables and was the only person in the part of the room where he should not have been. He was there because he followed Mr. Ticktin into that area where Mr. Byrne and the Defendants' counsel had been sitting. There, Cain again approached Ticktin and was in the process of backing Ticktin up against the wall of the room, when Patrick Byrne saw what Cain was doing, and horrified, he immediately jumped into action.

Mr. Byrne became extremely upset to see his attorney, a much smaller elderly man, being backed up against a wall by a man of far more strength, height, mass, and youth. He immediately separated Cain by walking between the two men, pushing Cain, as Ticktin could not be moved back due to the fact that there was a

11

wall behind him.

During that effort, Cain kept jabbing Byrne with his finger tips and knuckles, while Byrne displaced him. After they were separated, Byrne warned Cain about his jabs and then walked past Cain, pushing him out of Byrne's way.

Mr. Ticktin had returned to his chair and stood behind it, while Cain had been jabbing Mr. Byrne.

Of the greatest importance, Cain had no reason to be in the Defendant's part of the room, behind their desks. The only reason that he was there was that he was following and approaching Ticktin, over and over. He was in the one part of the room in which he should never have been. He was behind the tables used by Defense Counsel.

Mr. Ticktin who watched the entire event did not see Mr. Byrne react to Mr. Cain anymore than what appeared to be a reasonable response at the time. In fact, the supposed slap on Cain's neck is beyond what happened. Mr. Ticktin did not see Mr. Byrne slap anyone, and no one complained of being slapped or hit in any way, other than Patrick Byrne who complained of Cain jabbing him.

Mr. Cain's client was readily taking a video of whatever he could, and yet, Mr. Cain showed no signs of any harm either physically or emotionally. He had no bruises or reddening of his skin from supposed slaps or otherwise.

**Further Misrepresentations by Cain**

In his Motion for Sanctions, Mr. Cain falsely stated: "Ticktin represented to

12

the Court that he was being intimidated by Plaintiff's counsel which caused him to lash out." However, Mr. Ticktin had told the exact truth that Mr. Cain had put his body onto Ticktin's body before Ticktin pushed him away.

Mr. Ticktin never said that he "lashed out," or other words to that effect, and he never said that he was being intimidated. Although it is true that Cain was attempting to intimidate Ticktin, and perhaps did, to Mr. Ticktin, he was not intimidated. However, looking at his posture after the second encounter with Cain, he was certainly affected by Cain's actions.

### Joe Oltmann

For some reason, the Plaintiff is constantly attacking Joe Oltmann. He criticizes Ticktin because Oltmann was required to leave the room during the taking of the deposition. Yet he returned to the room to confer with counsel during the breaks.

The Plaintiff failed to express any instances where Mr. Oltmann even spoke to Mr. Coomer or ever threatened him. Moreover, Mr. Cain never complained to Mr. Ticktin or any other lawyer present. He never suggested that Mr. Oltmann should not be in the room during the breaks. If he had, and if Mr. Oltmann had been in attendance during the breaks, he would probably have been asked to stay away. Instead, he was present at times and there was no problem.

Everything was simply so calm and peaceful for the rest of the day, after the initial disruption by Cain, that there was no problem.

In any event, this Court ordered that Mr. Oltmann remain out of the room during the deposition, and everyone involved was respectful of the decision. Mr. Oltmann was permitted to attend virtually from a different location, so there was nothing wrong with him attending from his hotel room.

**Patrick Byrne's Alleged Assault**

The issue of Patrick Byrne's alleged assault, discussed above, was truly an act of defense of a senior citizen who was being attacked.

Imagine seeing a 56-year-old man physically backing a much smaller 80-year-old man against a wall. It is difficult to understand how Mr. Byrne would not react, even if he did not know the men.

He saw Cain literally throwing his weight around and victimizing his attorney, his friend. The last push which was seen in the video taken by Eric Coomer was reasonable under the circumstances, as Byrne had to cause a disengagement and make sure it was not going to repeat.

The video is of only the last seconds of the whole encounter, and if one were to fill in the blank, show what occurred in the first part of the encounter, it would be obvious that Cain followed Mr. Ticktin into the one part of the room where he had no business, and of which he should have stayed away.

Instead, he pursued Ticktin, it was the game he was playing, so involved in his physical intimidation of Ticktin that he probably was not even thinking about where he was headed and who was going to get involved. All he wanted was to

14

overpower Ticktin. It was sick and terribly wrong. In Byrne's eyes, it was so far beyond the pale, that he had to jump into the situation. He could not stand by and watch Peter Ticktin get assaulted and probably battered, when he saw what Cain was doing. He immediately took control of the situation, separating Cain from Ticktin and making sure that Cain got the message, to stop.

The situation involving Patrick Byrne is part and parcel of the situation involving Peter Ticktin.

Watching the videos provided in this Response, it is proven beyond any question that Charles Cain was the one who pursued Mr. Ticktin. He was the one who pursued Mr. Ticktin who repeatedly walked away from Mr. Cain. He was the one who bumped Ticktin's body with his, and Mr. Ticktin was totally within his rights to push Cain away. Likewise, Cain was the author of his own misfortune of acting in such an outrageous manner that Patrick Byrne got involved.

When one examines this situation, it is amazing that Mr. Byrne did not harm Cain physically. He easily could have taken more severe actions against Cain to stop Cain's violence, and yet, he, like Ticktin, did no more than push Cain.

## **Legal Discussion as to Assault and Battery**

Cain has presented a good rendition of the law in Florida and the law he presented should be applied, here, against Cain.

Under Florida law, to establish an assault, three elements must be proven: (1) an intentional, unlawful threat by word or act to do violence to another person;

15

(2) an apparent ability to carry out the threat; and (3) the creation of a well-founded fear in the victim that such violence is imminent. Fla. Stat. § 784.011

The expressions on Cain's face show that he was not in fear at any time. The alleged assault on him does not pass the giggle test. Ticktin, on the other hand, was in fear of being the victim of violence.

Battery occurs when a person either: Actually and intentionally touches or strikes another person against the will of the other; or intentionally causes bodily harm to another person. Fla. Stat. § 784.03.

This is exactly what Cain did to Ticktin.

It is true that Ticktin did push Cain away, however, Florida Statute § 776.012(1) provides:

> A person is justified in using. . . force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. A person who uses. . . force in accordance with this subsection does not have a duty to retreat before using or threatening to use such force.

Moreover, Florida law provides enhanced penalties and special provisions for assault or battery offenses when the victim is an elderly person. Under Fla. Stat. § 784.08, the penalties for assault and for battery are enhanced when the victim is 65 years of age or older, regardless of whether the offender knows or has reason to know the victim's age. Specifically:

Reclassification of Offenses Fla. Stat. § 784.08: The statute mandates the reclassification of the offense to a higher degree:

- Battery is reclassified from a first-degree misdemeanor to a third-degree felony.

- Assault is reclassified from a second-degree misdemeanor to a first-degree misdemeanor.

Moreover, the provision of self defense of another is included in Florida Statute § 776.012(1). This is what protects Patrick Byrne.

## **Conclusion**

For the foregoing reasons, the Defendant, Patrick Byrne, respectfully requests that this Court deny the Plaintiff's Motion for Sanctions, and instead give sanctions against the attorney for Eric Coomer. In fact, Mr. Coomer asked for relief that Mr. Ticktin and his firm be removed from the case. Even though Ticktin is a member of the bar of this Court, such relief may have been appropriate if Ticktin had, in fact, assaulted Mr. Cain. Mr. Cain, on the other hand, and his partner, are admitted pro hoc vice and have worn out their welcome as attorneys' of this Court. As they, themselves, must believe that disqualification of the offensive attorney and his firm is appropriate, it should be enforced against Cain and his law firm.

This is especially true, where Mr. Ticktin is not going to be getting any younger and there is no evidence that Mr. Cain is at all remorseful. In fact, instead of owning up to his own wrongdoing, he, on behalf of his client, as part of his law firm, attempted to wrongfully mislead this Court and to cause unwarranted harm

17

to Patrick Byrne and his counsel.

Wherefore, Patrick Byrne asks that he be granted sanctions for the misconduct of Charles Cain as follows:

1. Charles Cain and his law firm should be disqualified from the above styled case;

2. Charles Cain and his law firm should be sanctioned for their wrongful conduct of assault as well as falsely attempting to harm their opposing party and opposing counsel by making a false claim. They should pay all attorneys' fees incurred;

3. The assault by Mr. Cain should be referred to the U.S. Attorney's office in the Middle District of Florida for the commission of an assault and battery involving a judicial function or to the local Tampa police;

4. Mr. Cain should be referred to the Ad Hoc Committee regarding unethical conduct in the Middle District of Florida;

5. Mr Cain should be referred to the bar associations of the state jurisdictions of which he is a member; and

6. Such further and other relief which this Court may deem just and proper.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 20, 2026, the foregoing document, was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

                                       */s/ David L. Perry II*
                                       Peter Ticktin, Esquire
                                       Florida Bar No. 887935
                                       David L. Perry II, Esquire
                                       Florida Bar No. 1045902
                                       **THE TICKTIN LAW GROUP**
                                       270 SW Natura Avenue
                                       Deerfield Beach, Florida 33441
                                       Telephone: (561) 232-2222
                                       *Attorneys for Patrick Byrne*