## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,
       Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC.,
a Florida non-profit corporation,
       Defendants

---

## NON-PARTY TGP COMMUNICATIONS, LLC'S
## MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF
## ENFORCING AND MODIFYING STIPULATED PROTECTIVE ORDER
## AND INCORPORATED MEMORANDUM OF LAW

---

### SUMMARY

Non-Party TGP Communications, LLC d/b/a The Gateway Pundit ("TGP") respectfully moves this Court for leave to intervene for the limited purpose stated herein. TGP seeks to enforce, and in the alternative to modify, the Stipulated Protective Order entered on October 24, 2024 (Dkt. 163) (the "Protective Order"). TGP is a named defendant in *Coomer v. Trump for President, et al.*, Case No. 2020-CV-034319, Denver County District Court (the "Denver Case"). Plaintiff Eric Coomer ("Plaintiff" or "Coomer") himself designated the Denver Case as Related Case Number One in this action. *See* Dkt. 2; Dkt. 129; Dkt. 148.

Section 4(b)(iii) of the Protective Order authorizes disclosure of Confidential Information to counsel in designated related cases. The sole prerequisite is execution of a written Undertaking under Section 4(c). TGP's counsel executed the

required Undertaking in the form prescribed by Exhibit A to the Protective Order.
TGP's counsel then requested production of the January 27, 2026 deposition
transcript of Coomer (the "Tampa Deposition"). **Ex. 5.** Plaintiff's counsel refused.
*Id*. His sole stated reason—that the transcript was "subject to further proceedings
in Florida"—finds no support in the Protective Order. Plaintiff's counsel did not
file a motion for protective order under Section 6. He did not seek a court order.
He refused by letter alone.

TGP asks this Court to enforce its own order. In the alternative, TGP asks
the Court to modify the Protective Order under the framework established in
*Carrizosa v. Chiquita Brands International, Inc. (In re Chiquita Brands)*, 965
F.3d 1238 (11th Cir. 2020). TGP further asks the Court to vacate any blanket
confidentiality designation of the entire Tampa Deposition transcript. TGP
respectfully requests leave to submit a proposed order upon the Court's invitation,
consistent with Local Rule 3.01(k).

TGP respectfully requests expedited consideration. The Denver Case is set
for trial in July 2026. Discovery closes on May 26, 2026. Expert disclosures are
due more than a month prior to that date. Delay in resolving this motion will
deprive TGP of the ability to use the Tampa Deposition testimony at trial — which
is precisely the outcome Plaintiff's counsel's refusal is designed to achieve.

## BACKGROUND

1. TGP is a defendant in the Denver Case. Coomer sued TGP and numerous
other defendants for alleged defamation relating to the 2020 Presidential Election.
TGP asserts a defense of substantial truth. The Denver Case is set for trial on July
20, 2026. Discovery closes on May 26, 2026. Expert disclosures are due before

that date.  TGP's experts must review the Tampa Deposition testimony to render opinions on the core issues in the case.  Every day of delay in obtaining the transcript is a day lost from TGP's trial preparation.

2. Coomer filed this action against Patrick Byrne, Steven Lucescu, and The America Project, Inc.  The claims arise from alleged defamatory statements in the film *The Deep Rig* (2021).  The claims and parties overlap significantly with the Denver Case.

3. On October 24, 2024, this Court entered a Stipulated Protective Order (Dkt. 163, incorporating Dkt. 162-1).  **Ex. 1.**  No party made a particularized showing of good cause for any specific confidentiality designation.  The Protective Order is a standard umbrella jointly stipulated order entered by agreement of the parties.

4. Coomer himself designated the Denver Case as related to this action.  Plaintiff's counsel filed the original Notice of Related Cases (Dkt. 2), which identified the Denver Case as Related Case Number One.  **Ex. 2.**  That notice expressly identified "Counsel for James Hoft and TGP" by name.  The Denver Case also appears in the updated Notice of Related Cases at Dkt. 129 and 148.  Both filings—the original notice and the updates—confirm the Denver Case's designation as a related action.

5. Section 4(b)(iii) of the Protective Order permits disclosure of Confidential Information to "counsel representing a Party in connection with any civil action that the Court or a Party designates as related to this action."  **Ex. 1** at § 4(b)(iii).  The Protective Order expressly incorporates "all cases identified in Plaintiff's Update to Notice of Related Cases (Dkt. 148)."  *Id.*

6.  The sole condition for disclosure under Section 4(b)(iii) is execution of a written Undertaking in the form of Exhibit A to the Protective Order.  *See* **Ex. 1** at § 4(c).  The Undertaking requires the recipient to agree to be bound by the Protective Order's terms.

7.  On January 27, 2026, Coomer sat for a deposition in Tampa, Florida in this action.  The Tampa Deposition contains testimony directly material to TGP's substantial truth defense in the Denver Case.

8.  At the conclusion of the Tampa Deposition, Plaintiff's counsel made an on-the-record blanket confidentiality designation.  Plaintiff's counsel stated:

> "Given the protective order in the case and our ability to designate all or part of the deposition is confidential under that order.  That this deposition is not to be disclosed publicly.  I have 30 days to designate the portions of the testimony that we're going to contend are subject to the protective order, *it may not be all the transcript, but it may.*"

*See* Dkt. 283, at p. 2-3.

9.  On January 29, 2026, Plaintiff's counsel confirmed in writing his intent to designate the transcript "in whole or in part."  **Ex. 9.**

10.  Plaintiff's counsel received the final deposition transcript on or before February 16, 2026.  On that date, Plaintiff's counsel initially stated that he had "not yet received a copy of the final transcript," then corrected himself minutes later, acknowledging his paralegal had received it.  **Ex. 12** (Feb. 16, 2026 Correspondence).  The thirty-day deadline for specific confidentiality designations under the Protective Order runs from the date of actual receipt.

11.  TGP's counsel, executed a written Undertaking in the form of Exhibit A to the Protective Order.  **Ex. 4.**  The Undertaking satisfies every condition that Section 4(c) of the Protective Order imposes.

12.   TGP's Counsel sent a formal written demand to Plaintiff's counsel invoking Section 4(b)(iii) and requesting production of the full Tampa Deposition transcript. **Ex. 5.**

13.   Plaintiff's counsel refused.  His sole stated reason was that the transcript was "subject to further proceedings in Florida."  *Id.*  Those "further proceedings" concern a different party's alleged violation of the Protective Order—conduct in which TGP had no involvement whatsoever.

14.   The Protective Order's only dispute mechanism is Section 6, which governs challenges to confidentiality designations.  Plaintiff's counsel did not invoke Section 6.  He did not seek a court order restricting disclosure to TGP.  He refused by letter alone, without citing any provision that authorizes withholding materials from a qualified recipient.

15.   The Denver District Court and the Special Master in the Denver Case have both identified the Protective Order as defendants' barrier to accessing the Tampa Deposition transcript.  Neither court ruled on the merits of the transcript's relevance to TGP's defense.  **Ex. 7.**  This Court is the sole forum capable of granting the relief TGP seeks.

16.   The United States District Court for the District of Columbia separately denied a motion to lift the protective order in *US Dominion, Inc. v. Patrick Byrne*, Case No. 1:21-cv-02131 (D.D.C.).  That ruling foreclosed access to Dominion production materials through the D.C. case.  The Tampa Deposition transcript is TGP's only remaining source of the critical testimony at issue.

17.   Upon information and belief, the Tampa Deposition contains admissions by Coomer that directly contradict his prior sworn testimony before the Georgia

Grand Jury.  In the Georgia proceeding, Coomer testified under oath that he did not have access to, or the technical capability to affect, election systems or processes.  **Ex. 10** (Ga. Grand Jury Depo. Excerpt).  The Tampa Deposition testimony is the opposite of what Coomer told the Georgia Grand Jury.

18. The subject matter of the Tampa Deposition testimony can be described without disclosing any protected material, because Coomer himself placed these categories on the public record.  On January 16, 2026, Coomer filed a Motion for Protective Order (Dkt. 274) seeking to prohibit inquiry into the very topics on which he was subsequently examined.  **Ex. 11** (Coomer Mtn. for Protective Order). Coomer sought to bar questioning on: an alleged international conspiracy involving Venezuela, Serbia, China, and other foreign nations; allegations regarding VPN access to ballot images; source code changes post-certification; and the allegation that "the Dominion brand name was just a new shell to conceal Venezuela, Serbia, and China's access to US election equipment and data." *Id.* at 13–14.  The Court denied Coomer's motion, citing Coomer's failure to establish any harm or prejudice.  Dkt. 279.  The deposition proceeded on those topics over Coomer's objection.  Coomer was examined and testified on his access to election systems and vote tallies, the involvement of foreign and domestic contractors, remote access capabilities, and his interactions with foreign nationals regarding voting systems.  His testimony on these subjects is directly material to TGP's substantial truth defense.

19. TGP has not participated in, and bears no responsibility for, any prior alleged violation of the Protective Order by any other party or counsel.  TGP's counsel never possessed the Tampa Deposition transcript, never disseminated any

protected material, and has no relationship to the Oltmann Defendants. TGP's approach to obtaining the transcript has been orderly, transparent, and in strict compliance with the Protective Order's terms.

## LEGAL STANDARD

Permissive intervention under Federal Rule of Civil Procedure 24(b) is the established procedural vehicle in the Eleventh Circuit for non-parties seeking to challenge or modify protective orders. *State ex rel. Butterworth v. Jones Chemicals, Inc.*, 148 F.R.D. 282, 285 (M.D. Fla. 1993) (intervention is "proper mechanism" for challenging protective orders); *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 354 (11th Cir. 1987).

Rule 24(b) requires a movant to demonstrate: (1) timeliness; (2) a common question of law or fact with the main action; and (3) no undue delay or prejudice to the original parties' rights. Fed. R. Civ. P. 24(b)(1)(B); *Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corp.*, 271 F.R.D. 530, 536 (S.D. Fla. 2010). Courts construe these requirements liberally when a non-party seeks limited intervention solely to address a protective order. *Id.* at 538.

Rule 24(c) requires that a motion to intervene be accompanied by a pleading that sets out the claim or defense for which intervention is sought. Fed. R. Civ. P. 24(c). TGP's Proposed Motion to Enforce and Modify Protective Order is filed concurrently herewith to satisfy this requirement.

## ARGUMENT

## I.  TGP SATISFIES THE REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(B)

### A.  The Motion Is Timely

Timeliness is assessed flexibly in the Eleventh Circuit, with courts applying
"permissive standards" when intervention is sought for the limited purpose of
challenging a protective order. *Commissioner, Alabama DOC v. Advance Local
Media, LLC*, 918 F.3d 1161, 1171 n.9 (11th Cir. 2019) (timeliness concerns "less
significant" when intervention is not on the merits). Courts in this Circuit have
allowed intervention to challenge protective orders months and even years after
the orders were entered. *See Butterworth*, 148 F.R.D. at 286 (seven months not
untimely); *Advance Local Media*, 918 F.3d at 1170 (citing cases permitting
intervention long after a case has been terminated, including *United Nuclear Corp.
v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (three years not
untimely)).

TGP's motion is timely by any measure. TGP first became aware of the
Tampa Deposition's significance and the Protective Order's operation as a barrier
on February 16, 2026, when Plaintiff's counsel communicated his refusal to
produce the transcript. This motion is filed within weeks of that date. TGP acted
promptly: TGP's Counsel executed the Undertaking, made a formal written
demand, and filed this motion after Plaintiff's counsel refused. No party can claim
surprise or prejudice from this timeline. Moreover, resolution of TGP's motion will
not delay any pending deadlines.

Timeliness also has a second dimension in this case. TGP filed promptly not
only because diligence required it, but because the Denver Case deadlines demand
it. The Denver Case is set for trial in July 2026 with a May 26, 2026 discovery
cutoff. Expert disclosures are due even sooner. TGP's experts cannot complete
their work without reviewing the Tampa Deposition.

### B.  TGP's Motion Presents a Common Question of Law or Fact

The common-question requirement is construed broadly when a non-party seeks intervention for the limited purpose of modifying a protective order.  *Boca Raton*, 271 F.R.D. at 537 ("[N]o reason to require a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order").  TGP's motion raises questions of law and fact common to this action.  These include the scope of the Protective Order, the enforceability of Section 4(b)(iii), the propriety of blanket confidentiality designations, and the good-cause standard under Rule 26(c).

TGP's standing is beyond dispute.  A non-party has standing to intervene when the protective order prevents the non-party from obtaining documents in its own **collateral litigation**.  *CRST Expedited, Inc. v. TransAm Trucking Inc.*, No. 17-cv-52, 2018 WL 9880439, at *3 (N.D. Iowa 2018) (citing *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 160-61, 164 (6th Cir. 1987) (not explicitly addressing standing, but reversing district court's denial of collateral litigant's motion to intervene in a settled case for the purpose of modifying a protective order that was preventing the collateral litigant from obtaining discovery in its own case and remanding for further consideration).

### C.  Intervention Will Not Cause Undue Delay or Prejudice

Limited intervention to address a protective order does not prejudice existing parties.  *Boca Raton*, 271 F.R.D. at 537-38.  TGP seeks intervention for the sole purpose of enforcing and modifying the Protective Order.  TGP does not seek to become a party to the underlying litigation.  TGP does not seek to inject new

claims, new defenses, or new discovery.  The scope of TGP's participation is limited to a single motion on a single issue.

No party will suffer prejudice.  Coomer is the only party, so far, that has resisted disclosure. His resistance is not based on any provision of the Protective Order.  It is based on unrelated "further proceedings" involving a different party's conduct.  Granting TGP's motion will not delay mediation, trial preparation, or any other aspect of this case.

By contrast, denial or delay of TGP's motion will cause concrete and irreparable prejudice to TGP.

## III.   THE COURT SHOULD ENFORCE SECTION 4(B)(III) OF THE STIPULATED PROTECTIVE ORDER AS WRITTEN

TGP's primary argument is not modification of the Protective Order.  It is enforcement of the order as written.  The Protective Order is a self-executing agreement that defines both prohibited and permitted disclosures.  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, *passim* (1984).  Stipulated protective orders function as agreements between parties that courts enforce according to their express terms.  Where the express terms authorize disclosure, compliance with those terms is not a violation—it is the order functioning as intended.

### A.  The Denver Case Is a Designated Related Case Under the Protective Order

Section 4(b)(iii) authorizes disclosure to "counsel representing a Party in connection with any civil action that the Court or a Party designates as related to this action."  **Ex. 1** at § 4(b)(iii).  The Protective Order expressly incorporates "all cases identified in Plaintiff's Update to Notice of Related Cases (Dkt. 148)."  *Id.*

Coomer designated the Denver Case as related.  Coomer's counsel filed the
original Notice of Related Cases (Dkt. 2) identifying the Denver Case as Related
Case Number One—the same plaintiff, the same causes of action, and many of the
same factual allegations.  **Ex. 2.**  That notice identified "Counsel for James Hoft
and TGP" by name.  The updated notice at Dkt. 148 confirms the Denver Case
remains a designated related case.  The Denver Case satisfies the "related case"
requirement of Section 4(b)(iii) on Coomer's own filings.

Section 4(b)(iii)'s authorization extends to "counsel in all cases identified in
Plaintiff's Update to Notice of Related Cases."  **Ex. 1** at § 4(b)(iii) (emphasis
added).  The phrase "counsel in all cases" is not limited to counsel who represent
MDFL parties in connection with a related case.

### B.  **TGP's Counsel Executed the Required Undertaking Under Section 4(c)**

Section 4(c) of the Protective Order conditions disclosure on the recipient's
execution of "a written undertaking in the form of Exhibit A to this Order."  **Ex. 1**
at § 4(c).  Section 4(b)(iii) cross-references "Section 4(d)" as imposing additional
terms, but no Section 4(d) exists in the order as entered.  This apparent scrivener's
error does not affect the analysis; the only applicable condition precedent is the
Undertaking requirement at Section 4(c).  TGP's Counsel executed the required
Undertaking in the precise form prescribed by Exhibit A. **Ex. 4.**  The Undertaking
obligates TGP's Counsel to be bound by the Protective Order's terms, to use
Confidential Information solely for purposes of the Denver Case, and to return or
destroy materials upon conclusion of the litigation.  Every condition that Section
4(c) imposes has been satisfied.

## C.  Plaintiff's counsel's Refusal Lacks Any Basis in the Protective Order's Terms

Plaintiff's counsel refused to produce the transcript on the ground that it was "subject to further proceedings in Florida."  Ex. 5.  That ground finds no support in the Protective Order.  The Protective Order does not authorize a party to withhold materials from a permissible recipient based on unrelated pending proceedings involving a different party.

The Protective Order does not contain any provision authorizing a party to refuse disclosure to a qualified recipient under Section 4(b)(iii).  The order's only dispute mechanism—Section 6—governs challenges to confidentiality designations.  **Ex. 1** at § 6.  Section 6 allows a party to challenge whether information was properly designated as confidential.  It does not permit a party to block production to a recipient who has satisfied all requirements of Section 4(b)(iii) and 4(c).  Plaintiff's counsel did not invoke Section 6.  He did not file any motion.  He did not seek any court order.  He unilaterally refused to produce the transcript based on a reason the order does not recognize.

The timing of Plaintiff's counsel's refusal is not incidental.  Plaintiff's counsel is aware that TGP is a defendant in the Denver Case.  The Denver Case has been designated as Related Case Number One in this action since its inception.  Plaintiff's counsel's refusal — issued without filing any motion, without invoking Section 6, and without citing any provision of the Protective Order — functions as an extrajudicial stay of TGP's rights under the order.  Each day that TGP is denied access to the transcript is a day closer to the Denver discovery cutoff and expert

disclosure deadlines.  The Protective Order does not authorize any party to impose

such a de facto stay by letter alone.

Stipulated protective orders create enforceable obligations.  Parties who

willingly accede to entry of such orders will be held to their obligations.  *Parkway*

*Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D.

264, 267 (M.D.N.C. 1988).  The Protective Order's Related Cases provision was not

an afterthought.  It was a negotiated term that the parties agreed to and this Court

approved.  Coomer designated the Denver Case as related.  <u>Coomer's own counsel</u>

<u>identified TGP's counsel by name.</u>  Coomer may not now refuse to honor the very

provision he agreed to.

The Denver District Court's February 17, 2026 order striking the Oltmann

Defendants' supplemental filing does not bear on TGP's motion.  The court found

the issues in the supplement "appear to run contrary to the Middle District of

Florida's protective order" and ordered the Clerk to suppress the filing "in the

abundance of caution."  The court also characterized the connection between the

supplement and the Denver Case as "tenuous, at best."  That characterization was

made in the context of a supplement-striking order—not a discovery ruling—on a

filing that itself violated the Protective Order.  The court conducted no Rule 24

intervention analysis, received no briefing from TGP, and made no finding on the

materiality of the Tampa Deposition to the Denver Case.  The Protective Order

finding reinforces that this Court is the proper forum for adjudicating access to

protected materials.  The relevance characterization does not address TGP's

independent showing of materiality under the modification framework set forth in

Section IV below.

TGP respectfully requests that this Court enforce Section 4(b)(iii) by directing Plaintiff's counsel to produce the Tampa Deposition transcript to TGP's Counsel, subject to the terms of the executed Undertaking and the Protective Order.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE PROTECTIVE ORDER UNDER THE CHIQUITA BRANDS FRAMEWORK

Should the Court conclude that Section 4(b)(iii) requires a court order to compel production—a reading TGP does not concede—TGP alternatively moves to modify the Protective Order. The Eleventh Circuit's framework for evaluating modification requests provides a clear path to relief.

### A. The Burden Falls on the Party Opposing Modification of a Stipulated Umbrella Order

The Eleventh Circuit established a "bright-line rule" for stipulated umbrella protective orders in *In re Chiquita Brands*, 965 F.3d at 1250. When a protective order is entered by stipulation—without any particularized showing of good cause for specific designations—the burden falls on the party **opposing modification** to demonstrate good cause for continued protection under Rule 26(c). *Id.* at 1250–52; *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001) (placing "the burden of establishing good cause in the first instance on the party seeking the protection" when the protective order was stipulated).

This Protective Order is exactly the type of stipulated umbrella order to which *Chiquita Brands* applies. No party ever made a particularized good-cause showing for any designation. The parties agreed to the order. This Court entered it without an adversarial proceeding on confidentiality. *See* Dkt. 162 (Joint

Motion); Dkt. 163 (Order Granting).  Under *Chiquita Brands*, Coomer bears the burden of demonstrating good cause for withholding the transcript from TGP.

The Eleventh Circuit has identified specific factors governing the good cause inquiry: "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order." *In re Alexander Grant & Co. Litig*., 820 F.2d 352, 356 (11th Cir. 1987).  These factors are not exhaustive; the "sole criterion" is the statutory requirement of good cause, which "generally signifies a sound basis or legitimate need to take judicial action." *Id*.  The trial court must also engage in a "balancing of interests" under Rule 26(c).  *Farnsworth v. Procter & Gamble Co*., 758 F.2d 1545, 1547 (11th Cir. 1985); *Chiquita Brands*, 965 F.3d at 1250–52.  Each factor favors TGP.

Applied here, each factor favors modification.  *First*, severity and likelihood of perceived harm: Coomer has articulated no concrete harm from disclosure of the Tampa Deposition to counsel in the Denver Case—a case Coomer himself designated as Related Case Number One.  Plaintiff's counsel's sole stated reason for refusal—that the transcript was "subject to further proceedings in Florida"—is not a harm-based justification under Rule 26(c).  It is a procedural objection unrelated to confidentiality.  In *Chiquita Brands*, the appellants at least offered evidence of paramilitary threats—evidence the Eleventh Circuit still found insufficient.  965 F.3d at 1248–49.  Coomer has offered nothing.  *Second*, precision: TGP's requested relief is surgically narrow—production of a single deposition transcript to a single counsel under the Protective Order's existing terms.  *Third*, less onerous alternatives: none exist.  The Denver court identified

this Court's Protective Order as the sole barrier. **Ex. 7.** The D.D.C. denied a
parallel motion to lift a separate protective order. Every alternative avenue has
been exhausted. *Fourth*, duration: TGP does not seek permanent modification.
The transcript would remain governed by the Protective Order's confidentiality
provisions and the executed Undertaking.

The burden that *Chiquita Brands* places on Coomer is not merely a
procedural formality. It requires "a particular and specific demonstration of fact,
as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v.
Bernard*, 452 U.S. 89, 102 n.16 (1981); *Chiquita Brands*, 965 F.3d at 1252. Coomer
has not identified any cognizable harm from disclosure to TGP's counsel under the
Protective Order's own terms. Plaintiff's counsel's refusal letter does not assert
confidentiality. It does not claim competitive harm, privacy concerns, or any
category recognized by Rule 26(c). It asserts only unrelated proceedings. That is
not good cause. It is delay.

Reliance interests in stipulated blanket orders are diminished precisely
because such orders are "by nature overinclusive." *Public Citizen v. Liggett Group,
Inc.*, 858 F.2d 775, 790 (1st Cir. 1988); *see also Beckman Industries, Inc. v.
International Insurance Co.*, 966 F.2d 470, 475–76 (9th Cir. 1992) (stipulated
blanket order's reduced reliance interests support modification for collateral
litigation). The parties to a blanket order cannot rely on the umbrella order as a
guarantee of continued secrecy. *Public Citizen*, 858 F.2d 775 at 790.

Here, Coomer's reliance interest is not merely diminished by the order's
stipulated character. It is affirmatively negated by the order's own terms. Section
4(b)(iii) expressly contemplates disclosure to related-case counsel. **Ex. 1** at §

4(b)(iii).  Coomer agreed to this mechanism.  His counsel drafted the Notice of
Related Cases that triggers it.  **A party who agreed to a disclosure provision
for related cases and then designated the Denver Case as related
cannot claim reasonable reliance on the Protective Order to prevent
the very disclosure the order was designed to permit.**  *See Chiquita
Brands*, 965 F.3d at 1250–51 (deference to district court's interpretation of its own
order; parties bear consequences of their litigation choices).

### B.  TGP Has Articulated Compelling Grounds for Modification

TGP need only articulate a legitimate reason for modification.  The need to
use protected materials in collateral litigation is among the most compelling
grounds for modification.  *See Foltz v. State Farm Mutual Auto Insurance Co.*, 331
F.3d 1122, 1131-32 (9th Cir. 2003) (judicial economy rationale for modification);
*United Nuclear Corp. v. Cranford Insurance Co.*, 905 F.2d 1424, 1427-28 (10th
Cir. 1990) (modification appropriate to accommodate collateral litigation needs);
*Jochims v. Isuzu Motors, Ltd.*, 148 F.R.D. 624, 630 (S.D. Iowa 1993) (quoting *Wilk
v. American Medical Ass'n*, 635 F.2d 1295, 1299 (7th Cir.1980), superseded in part
by statute (modification should be denied only where it would "tangibly prejudice
substantial rights").

TGP's need is concrete and specific.  The Tampa Deposition contains
testimony by Coomer that directly contradicts his prior sworn testimony before the
Georgia Grand Jury.  This testimony is material to TGP's substantial truth
defense—the central defense in the Denver Case.  The Denver court has identified
the Protective Order as the sole barrier to TGP's access.  The deposition was taken
of the ***same plaintiff*** who sued TGP, on the ***same subject matter*** at issue in

the Denver Case, in a case that Coomer himself designated as related to the Denver Case.  TGP has a need and right to see this transcript to see if Coomer erred or spoke falsely in critical testimony.

TGP does not seek to disseminate the transcript publicly.  TGP seeks to use it in the Denver Case under the same protective restrictions that already govern its use in this case.  TGP counsel's executed Undertaking ensures that the transcript will remain subject to the Protective Order's terms.  **Ex. 4.**  Modification under these circumstances imposes no cognizable burden on Coomer.

The balance of equities strongly favors modification.  TGP seeks to use the transcript in a case where it is a named defendant, on claims brought by the same plaintiff, involving the same subject matter.  TGP's counsel has executed the required Undertaking.  The transcript will remain subject to the Protective Order's terms.  The only party burdened by modification is the party who agreed to the Related Cases provision, designated the Denver Case as related, and identified TGP's counsel by name — and who now seeks to repudiate those very commitments.  On the other side of the balance, TGP faces the loss of critical defense evidence if the transcript is not produced before the Denver Case's expert disclosure deadlines and May 26, 2026 discovery cutoff.  The equities are not close.

### C.  No Alternative Source Exists for the Deposition Testimony

The absence of alternative sources strengthens TGP's claim for modification. The D.D.C. denied a motion to lift the protective order in *US Dominion, Inc. v. Patrick Byrne*, foreclosing access to Dominion production materials through that case.  The Denver court has identified this Court's Protective Order as the only remaining barrier.  **Ex. 7.**  TGP cannot depose Coomer in the Denver Case on the

same topics, because Coomer will invoke the Protective Order to preclude any reference to or use of his Tampa Deposition testimony.

Forcing TGP to conduct duplicative discovery on these topics—when the testimony already exists under oath—would waste judicial resources and impose unnecessary costs on all parties. Coomer can be re-deposed in Denver on these same topics, but such duplicative discovery serves no interest of judicial efficiency when the testimony already exists in this case. The policy against duplicative discovery is a recognized basis for modification. *See Foltz*, 331 F.3d at 1131-32; *Charter Oak Fire Insurance Co. v. Electrolux Home Products, Inc.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012) (compelling need to share discovery with same plaintiff's counsel in **related litigations**; efficient and effective means of avoiding duplicative, costly discovery).

## V.   PLAINTIFF'S COUNSEL'S BLANKET CONFIDENTIALITY DESIGNATION SHOULD BE VACATED

TGP further moves this Court to vacate any blanket confidentiality designation of the entire Tampa Deposition transcript. Plaintiff's counsel's on-the-record statement at the conclusion of the deposition designated the entire transcript as confidential. His written confirmation on January 29, 2026 stated intent to designate "in whole or in part." **Ex. 9.** The thirty-day window for specific designations runs from actual receipt of the final transcript.

TGP brings this challenge on two independent grounds. First, Plaintiff's counsel has already made a blanket confidentiality designation on the record by designating the entire transcript as confidential at the conclusion of the deposition. **That designation is operative now and subject to challenge now**.

The procedural posture created by Plaintiff's counsel's conduct warrants
immediate judicial intervention.  Plaintiff's counsel made a blanket designation at
the close of the deposition on January 27, 2026.  He confirmed that designation in
writing on January 29, 2026.  He received the final transcript on or before
February 16, 2026.  His thirty-day window for specific designations runs to
approximately March 18, 2026.  During this entire period, Plaintiff's counsel has
refused to produce the transcript to TGP on any terms — not even subject to the
blanket designation that already governs it.  The result is a procedural paradox:
TGP cannot challenge specific designations because Plaintiff's counsel has not
made them, and TGP cannot access the transcript at all because Plaintiff's counsel
treats his blanket designation as a complete bar to production.  Meanwhile, TGP's
expert disclosure deadlines and May 26, 2026 discovery cutoff in the Denver Case
draw closer each day.  Plaintiff's counsel need not prevail on the merits of his
confidentiality designations to achieve his objective.  He need only delay long
enough for the Denver deadlines to pass.  He obviously knows this.  The parties
know this.  Everyone knows this.  The Court should not permit the designation
process to be used as an instrument of attrition against a non-party **collateral
litigant** that has satisfied every condition the Protective Order imposes.
Sandbagging may be a longstanding practice in litigation – but it isn't a legitimate
one.

Second, to the extent Plaintiff's counsel submits a final *blanket* designation
covering the entire transcript after the thirty-day review period, TGP requests that
the Court order *good-faith* compliance with the Protective Order's designation
requirements.

### A. The Protective Order Prohibits Routine or Blanket Designations

*The Protective Order also dislikes sandbagging.*    Section 2(c) of the Protective Order expressly prohibits the conduct Plaintiff's counsel has engaged in:

> "The designation of Confidential Information must be made in good faith and only where the information qualifies for such designation. A party or nonparty shall not routinely designate material as Confidential Information, or make such a designation without reasonable inquiry to determine whether it qualifies for such designation. For the avoidance of doubt, information that is publicly available shall not be designated as Confidential Information."

**Ex. 1** at § 2(c). Designating an entire deposition transcript as confidential—before reviewing the final transcript, and before conducting any inquiry into whether the testimony meets the order's defined categories—is the precise conduct Section 2(c) was written to prohibit.

### B. The Deposition Testimony Does Not Qualify as Confidential Information Under the Protective Order's Own Definition

Section 1(a) of the Protective Order defines "Confidential Information" through nine enumerated categories: "(i) private health or medical records of any person; (ii) personally identifying information of any person, including identification numbers, addresses, and telephone numbers for any person, and the name of any minor child; (iii) confidential personal correspondence, notes, or communications; (iv) policies, protocols, sources, or methods that are in fact confidential; (v) personnel or employment records of any person or party; (vi) confidential financial records or statements; (vii) competitively or commercially sensitive information; (viii) confidential and sensitive political records; or (ix) any personal information that is not generally available to the public." **Ex. 1** at § 1(a).

Coomer's deposition testimony about whether he had access to live vote tallies, whether foreign contractors could remotely access Dominion machines, and whether Serbian personnel could alter the adjudication system does not fit within any of these nine categories.  This is testimony by a plaintiff about his own conduct and capabilities in connection with election systems.  It is not private health information, not personally identifying information, not personnel records, and not confidential personal correspondence.  At most, Coomer might argue categories (iv) or (vii), but his testimony about his own access and conduct is the core subject of the defamation claims **he chose to bring**.  By filing suit, Coomer placed these matters at issue.

### C.  The Burden of Proving Confidentiality Falls on the Designating Party

The Protective Order itself allocates the burden of proof.  Section 6(b) provides: "The burden of proving the confidentiality of Confidential Information remains with the party asserting such confidentiality."  **Ex. 1** at § 6(b).  This internal burden allocation is consistent with the *Chiquita Brands* framework and places the onus squarely on Coomer to demonstrate that the testimony he designated meets the Protective Order's definition.

A blanket designation of an entire deposition transcript is subject to challenge when it fails to comply with the good-faith designation requirements of the protective order.  In *Mosler v. Wagner*, 2025 WL 2322459 (S.D. Fla. Aug. 12, 2025), the court granted a motion to vacate a blanket confidentiality designation of an entire deposition transcript.  The court ordered the designating party to re-review the transcript, re-designate only those portions that actually met the

definition of Confidential Information, and serve notice of re-designations within seven days. *Id.* at *5-6.

The standard for evaluating a confidentiality designation mirrors the standard for maintaining the protective order itself. Good cause requires "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); *Chiquita Brands*, 965 F.3d at 1251 (applying *Gulf Oil* to reject "generalized, subjective assertions of fear" as insufficient to maintain protective order protections). Designating an entire deposition transcript as confidential—before reviewing the final transcript, and before any inquiry into whether specific testimony meets the order's defined categories—is the paradigm of a stereotyped and conclusory designation. The burden of proving that each designated portion qualifies as Confidential Information rests on the designating party. **Ex. 1** at § 6(b); *Chiquita Brands*, 965 F.3d at 1250–52.

Plaintiff's counsel's own words undermine any blanket designation. Plaintiff's counsel admitted on the record that the protective order "may not" cover "all the transcript." **Ex. 8.** This admission is a near-perfect predicate for a *Mosler*-style challenge. A party who acknowledges that confidentiality protection does not extend to the entire transcript cannot in good faith designate the entire transcript as confidential.

The pattern is telling. On January 16, 2026, Coomer filed a motion seeking to bar inquiry into these very topics. **Ex. 11.** The deposition proceeded on those topics over Coomer's objection. In fact, the Court denied Coomer's motion, citing Coomer's failure to establish any harm or prejudice. Dkt. 279. After the deposition

produced testimony unfavorable to Coomer's litigation position, Plaintiff's counsel made a blanket confidentiality designation of the entire transcript. Good-faith designation under Section 2(c) requires substantive review and a genuine belief that the information meets the order's defined categories. Using the designation power as a litigation tool to suppress unfavorable testimony is not what the Protective Order contemplates.

When a confidentiality designation is challenged, broad allegations of confidentiality without specific examples of harm or prejudice are insufficient. *See Estate of Manship v. United States*, 240 F.R.D. 700, 702 (N.D. Ga. 2006) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). TGP respectfully requests that the Court order Plaintiff's counsel to re-designate only those portions of the transcript that meet the Protective Order's definition of Confidential Information within seven days, consistent with *Mosler*.

## CONCLUSION

TGP respectfully requests that this Court:

(1)  Grant TGP leave to intervene for the limited purpose of enforcing and modifying the Protective Order;

(2)  Enforce Section 4(b)(iii) of the Protective Order by directing Plaintiff's counsel to produce the full January 27, 2026 Tampa Deposition transcript to TGP's counsel within seven (7) calendar days of the date of the Court's order, subject to the executed Undertaking and the Protective Order's terms;

(3)  In the alternative, modify the Protective Order to expressly authorize production of the transcript to TGP's counsel in the Denver Case within seven (7) calendar days;

(4)  Vacate any blanket confidentiality designation of the entire transcript and order Plaintiff's counsel to submit specific re-designations, limited to portions that satisfy the Protective Order's definition of Confidential Information, within seven (7) days of the Court's order;

(5)  Grant TGP leave to submit a proposed order upon the Court's invitation; and

(6)  Grant such other and further relief as this Court deems just and equitable.

Respectfully submitted,

**BURNS LAW FIRM**

*/s/ John C. Burns*
John C. Burns*
P.O. Box 191250
St. Louis, MO 63119
Telephone: 314-329-5040
E-mail: tblf@pm.me

ATTORNEYS FOR PROPOSED
INTERVENOR TGP COMMUNICATIONS,
LLC d/b/a THE GATEWAY PUNDIT

*Special admission pending

**MATTHEW FORNARO, P.A.**
11555 Heron Bay Boulevard
Suite 200
Coral Springs, Florida 33076
Telephone:  (954) 324-3651
Facsimile:  (954) 248-2099
By: /S/ Matthew Fornaro
Matthew Fornaro, Esquire
Florida Bar No.: 650641
Email: mfornaro@fornarolegal.com

## Local Rule 3.01(g) Certificate

Movant certifies:

(A)  That counsel for Movant has conferred with counsel for all Parties regarding the relief requested herein;

(B)  That Plaintiff opposes the relief requested (as stated previously); and that Defendants have not responded regarding their positions regarding the relief requested; and

(C)  That conferral regarding the relief requested herein was conducted via email.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2026, a true and correct copy of the foregoing was filed with the Court's CM/ECF system for delivery upon all parties of record.

*/s/ John C. Burns*
John C. Burns