## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,
     Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,
     Defendants

---

## PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE

---

Through this Motion, Plaintiff Eric Coomer, Ph.D. (Plaintiff or Dr. Coomer) seeks an order for third-parties Andrea Hall (Hall) and Joseph Oltmann (Oltmann) to show cause why sanctions should not be imposed by the Court due to knowing, intentional, and willful violations of this Court's Protective Order.

### I.    SUMMARY OF MOTION AND RELIEF SOUGHT

1.    Plaintiff is again confronted with outrageous conduct, this time through the public and repeated disclosure and mischaracterization of Dr. Coomer's deposition testimony.  Dr. Coomer has yet to even read and sign his deposition and is already being publicly accused of perjury by Hall and Oltmann, under the guise of being in a Joint Defense Agreement with Byrne, as they selectively leak and mischaracterize his testimony.  This conduct follows Stefanie Lambert's disqualification as counsel for Byrne in the *Dominion* case, Lambert's

*pro hac vice* denial in this case, the November 11, 2025 "settlement" email from Byrne's counsel seeking to represent Dr. Coomer to secure his "immunity," and the recent assault of undersigned counsel immediately prior to Dr. Coomer's deposition.  In short, this case is out of control, Plaintiff and his counsel cannot both effectively prepare for trial while simultaneously defending against rampant misconduct.

2.    Without a doubt, this Court requires the parties, interested non-parties, and counsel to abide by its orders and federal rules of procedure.  As it stands, Federal Rule of Civil Procedure 26 and the operation of discovery is being weaponized to gather and publish conspiracy-theory-motivated "evidence."  This places Dr. Coomer and his counsel in physical peril and invites uninvolved persons (including attorneys) to bear witness and assist in the abuse of process without regard to protective orders administered by the Court.

3.    Oltmann is a party to *Coomer v. Donald J. Trump for President, Inc.*, No. 2020cv034319, pending in Denver District Court (the Trump case).  Oltmann was also featured in Byrne's movie, *The Deep Rig,* and is a key witness in this case. Hall served as legal counsel for Oltmann in the Trump case before her recent termination.[1]  While Oltmann is a witness in this matter, both he and Hall are otherwise not involved in this litigation.  As Dr. Coomer's deposition got underway, Hall disclosed she is in a Joint Defense Agreement with Ticktin and Lambert.

---

[1] The Trump Court granted Ms. Hall's withdrawal as counsel on February 26, 2026.

4.     Without prior notice to Plaintiff, Oltmann appeared in person at Plaintiff's deposition on January 27, 2026. Hall appeared virtually. Both Oltmann and Hall agreed to be bound by the Court's Protective Order and both signed the Undertaking, vesting this Court with jurisdiction over them. Dr. Coomer's deposition transcript remains under confidentiality review by Plaintiff as is allowed by the express terms of the Court's Protective Order. During the deposition and after, Plaintiff made it clear multiple times on the record that he would perform these confidentiality designations during the 30-day window permitted by the Protective Order (Doc. 163, 162-1) and that the testimony must be treated as confidential until such time as that process is complete.

5.     Having been fully advised, acknowledging, and consenting to the terms of the Protective Order and this court's jurisdiction, Oltmann and Hall determined that they would not follow the Court's order. Their disclosures started on February 16. One such disclosure was made in a public filing by Hall which the court in the Trump case struck and suppressed on February 17. In its order, the court made it abundantly clear that it would "not try both [the case in Denver] and a case pending in the Middle District of Florida," found the Florida case irrelevant to the Trump case, and expressed caution that the disclosure appeared to violate this Court's Protective Order.[2]   Nonetheless, Oltmann publicly posted the same

---

[2] **Exhibit 1**, February 17, 2026, Order.

material on Facebook, X, and his podcast.  As of the timing of this filing, the postings are still "live."

6.     Undeterred, on February 24, 2026, Oltmann and Hall filed a Motion to Reconsider the February 17 Order, again including substantially the same material from the stricken and suppressed February 16 pleading.

7.     Thus, Plaintiff must seek relief from the Court yet again or risk similar and ongoing violations of this Court's Protective Order.  This time the misconduct is done by interloper allies of Defendant Byrne, Peter Ticktin, and Stefanie Lambert, who are pursuing an extra-judicial agenda to use federal discovery to promote their claim that the 2020 election was rigged.

8.     Through this Motion, Plaintiff seeks sanctions against Hall and Oltmann, injunctive relief precluding any future sharing of discovery materials with Oltmann or his counsel, attorney's fees and costs, and other related relief discussed below.

## II.     BACKGROUND FACTS

9.     Beginning in fall of 2024, Defendant Byrne began aggressively lobbying for a protective order.  His counsel represented that a robust protective order must be in place before he and the other Defendants could fully comply with their discovery obligations.[3]   Plaintiff's counsel consented to the entry of a Protective Order.

---

[3] **Exhibit 2**, emails with Alfred Carry.

10.     Byrne's counsel subsequently filed a Joint Motion for Entry of Stipulated Protective Order on October 22, 2024.  (Doc. 162).  The Court granted that Stipulated Motion on the same day.  (Doc. 163).  By operation of Federal Rule of Civil Procedure 26(c)(1), the Court issued the order to protect a party or entity from annoyance, embarrassment, oppression, or undue burden or expense.

11.     Defendant Byrne deposed Plaintiff on January 27, 2026, in Tampa, Florida.  A thorough recitation of the events that occurred before that deposition is set forth in Plaintiff's pending Motion for Sanctions and for Order to Show Cause filed on February 6, 2026.  (Doc. 281).  In relevant part, U.S. Magistrate Judge Flynn ordered third-party Oltmann to leave the deposition room.[4]  Both Oltmann and his counsel, Hall, observed the remainder of the deposition remotely.  Both signed the Undertaking attached as Exhibit A to the Protective Order and verbally acknowledged the Protective Order.[5]

12.     Before the taking of Dr. Coomer's deposition, Plaintiff's counsel made a lengthy record about uninvolved people witnessing the deposition and how this related to the Protective Order.  Plaintiff insisted that all participants acknowledge and sign the Undertaking consistent with this Court's Order.  Stefanie Lambert, an "excluded" attorney representing Defendant Byrne, stated, "Andrea Hall is forwarding [the Undertaking] to everyone, and they're signing it right now, and

---

[4] **Exhibit 3**, Excerpt of Proceedings, 15:16-23 (Jan. 27, 2026).

[5] **Exhibit 4**, Hall Undertaking (Jan. 27, 2026); **Exhibit 5**, Oltmann Undertaking (Jan. 29, 2026).

they'll have a copy to you."[6] Counsel for Plaintiff stated, "Okay. But if they haven't signed it yet, then they're not bound by it. And so, I need – and I'm willing to accept a representation from those on the Zoom that they are signing the Undertaking." Hall responded, "Okay. Well, Charlie [Cain], I'm an officer of the Court, so I agree, as well as I'm in a joint defense agreement with the Attorneys who are present for this deposition. So, I don't have a problem with that. And I can represent to you now that I think I'm getting [the Undertaking] from Stefanie [Lambert], and I will sign it, but as an officer of the Court, I don't have a problem with that." Plaintiff's counsel responded, "Okay. And you understand this is pursuant to the protective order and that the testimony is going to be confidential until we have an opportunity to review the transcript and designate the appropriate sections." Plaintiff's counsel addressed Hall directly, asking, "And, Andrea, are you making representations on behalf of Mr. Oltmann as well?" Hall answered, "Yes. Do you want a separate signature for him?" Plaintiff's counsel answered, "I do."[7]

13.    Hall stated as to Oltmann, "Okay. Well, he's present there [at the Tampa hotel], so I don't have necessarily a way, I guess. Are you okay with like an E-signature, the document, unless he can print it at the hotel?" Plaintiff's counsel responded, "He can do it either way; whatever's easier for him." Oltmann speaks,

---

[6] **Exhibit 6**, Excerpt of Proceedings, 23:6-10 (Jan. 27, 2026).

[7] *Id.*, 25:4-26:25.

"I'll come down to sign it if you want me to."  Hall added, "Okay.  Well, either way it'll happen, Charlie."[8]

14.    Beginning on February 8, Byrne's counsel David Perry began sending a series of emails demanding that Plaintiff immediately review the rough deposition transcript, complete confidentiality designations, and confer on those designations.[9]    Plaintiff's counsel responded, noting that the request was premature and that Plaintiff had not even received the official transcript.  He assured Perry that he would abide by the terms of the Protective Order.[10]   Perry nonetheless sent two more emails that same day demanding the same and requesting a conferral.[11]

15.    On February 10, 2026, Perry emailed again, asserting that he will file a motion to expedite the timeframe for confidential designations.[12]  Plaintiff again reiterated his prior position, including that he did not even have the transcript.  Plaintiff's counsel stated, "What is your reason for expediting the agreed process?  The last discovery responses we produced ended up on the internet almost

---

[8] *Id.*, 27:1-11.

[9] **Exhibit 7**, emails between Perry and Cain, p. 3.

[10] *Id.*

[11] *Id.*, p. 2.

[12] *Id.*, pp. 1-2.

immediately and only could have come from your office (as I doubt Mr. Dempsey was the source)."[13]

16.    Also on February 10, 2026, Oltmann's counsel, Hall and Ingrid DeFranco, filed a "Notice of Termination" with the court in the Trump case, wherein they stated that Oltmann terminated them.[14]   Hall stated that "an irreconcilable conflict of interest has arisen, resulting in a termination of the attorney-client representation."[15]   That same day, Plaintiff's counsel received the official copy of the January 27 deposition transcript, triggering the 30 day review period.[16]

17.    Perry never responded to Plaintiff's February 10 email and instead, on February 18, filed the Motion to Expedite Designation or Alternatively Strike Confidential Designation of January 27 Deposition Transcript of Eric Coomer. (Doc. 283).[17]

18.    The Honorable Judge Shelley Gilman (retired) (Special Master Gilman) held a hearing in the Trump case on February 17, 2026.  The purpose of the hearing was to address various discovery disputes between the parties, including a dispute with third-party Liberty Vote, Inc. (f/k/a Dominion Voting Systems).

---

[13] *Id.*, p. 1.

[14] **Exhibit 8**, Notice of Termination (Feb. 10, 2026) filed in the Trump case.

[15] *Id.*, ¶ 3.

[16] *See* Doc. 163, 162-1 ¶ 2.e.

[17] This Motion was denied on March 5, 2026.  (Doc. 291)

19.    Hall, on the night before the hearing, and despite the filing of her February 10, 2026 Notice stating her termination, emailed a document to Special Master Gilman copying at least twenty-one other individuals unassociated with the Byrne case, including counsel for all parties to that proceeding and their paralegals.[18]  Hall labeled the document, "Defendants Joseph Oltmann, FEC United, Shuffling Madness Media, Inc. dba Conservative Daily's Supplement Regarding the Dominion Voting Subpoena" (the Supplement).[19]

20.    Metadata imbedded in the document indicates it was drafted by Ingrid DeFranco, Hall's co-counsel who had not signed the Undertaking, after presumably receiving the subject confidential material from Hall.[20]  Metadata further shows Hall thereafter edited the document.

21.    Upon review of the pleading, undersigned counsel was immediately aware that the arguments derived from and relied upon misrepresentations of Dr. Coomer's January 27 deposition testimony and violated this Court's Protective Order.  Specifically, the Supplement features fourteen bullet points of allegations that Plaintiff supposedly "admitted to" during the Byrne deposition.[21]  These

---

[18] **Exhibit 9**, email from Andrea Hall to all counsel and staff (Feb. 16, 2026).

[19] **Exhibit 10**, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Defendants Joseph Oltmann, FEC United, Shuffling Madness Media, Inc. dba Conservative Daily's Supplement Regarding the Dominion Voting Subpoena (Feb. 16, 2026) (subject of Plaintiff's Motion to Seal Under Local Rule 1.11 Pursuant to Court's Stipulated Protective Order filed contemporaneously herewith).

[20] **Exhibit 11** (screenshot of meta data).

[21] *See* **Exhibit 10**, pp. 4-5.

representations deliberately obscure the actual testimony, misrepresent its substance, and falsely portray what was actually stated. Irrespective of how it was packaged, it was an attempt to recite or summarize Dr. Coomer's testimony.

22.    Plaintiff's counsel immediately sent a letter to all recipients stating that the material was subject to a Protective Order in this proceeding, and that all recipients should treat that document as though it were under seal.[22] To the extent Hall, DeFranco, and Oltmann's disclosure was naïve, uneducated, or accidental, they proved that wrong by doubling-down after receiving this letter. Later that same day, Hall publicly filed the same document with the Denver District Court at 7:16 PM.[23]

23.    Plaintiff's counsel filed an Emergency Motion to Strike that filing six hours later, further requesting the filing be sealed or suppressed from public view.[24]

24.    At the discovery hearing before Special Master Gilman on February 17, Plaintiff's counsel objected to Hall's ongoing representation of the Oltmann Defendants and highlighted the impropriety of her violations of this Court's Protective Order, as well as the recently filed Emergency Motion to Strike. The parties nonetheless agreed to proceed, with the statement by Special Master

---

[22] **Exhibit 12**, Email from Charlie Cain to all Supplement recipients (Feb. 16, 2026).

[23] *See* **Exhibit 13** (indicating public filing stamp) (subject of Plaintiff's Motion to Seal Under Local Rule 1.11 Pursuant to Court's Stipulated Protective Order filed contemporaneously herewith).

[24] **Exhibit 14**, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Plaintiff's Emergency Motion to Strike Pleading as Violation of Court Protective Order (Feb. 17, 2026).

Gilman that she would not consider or rely upon the disputed material pending the courts' ruling on the Emergency Motion to Strike.  As argument commenced, Hall incorporated misrepresentations of Dr. Coomer's deposition testimony as support for her various positions.  Plaintiff objected and Special Master Gilman expressed incredulousness at Hall.  Hall stated that she was not willing to proceed if she was not permitted to reference Dr. Coomer's deposition testimony *from the Byrne case*.[25]  Special Master Gilman adjourned the hearing until such time as the presiding District Judge in the Trump case could rule on Plaintiff's Emergency Motion to Strike.

25.    Within minutes of the hearing's conclusion, Plaintiff learned that Oltmann publicly posted the Supplement, violating this court's Protective Order, on both his Facebook and X social media pages.[26]  Oltmann then proceeded to show, discuss, and read from the Supplement at length during his daily podcast.[27]

---

[25] Notably, discovery has been open in that proceeding since June 2025, and will remain open until at least the end of May 2026.  Hall could have noticed Dr. Coomer's deposition at any time in the Trump case but never did so.  Dr. Coomer's deposition was previously set by Defendant Donald J. Trump for President, Inc., but then later vacated at the request of the Campaign's counsel.  For his part, Dr. Coomer has been offering potential deposition dates to the Defendants in that case for several months.  The suggestion that Hall somehow needed the testimony from *this* case, when she declined to simply take Dr. Coomer's deposition herself, is untenable.

[26] **Exhibit 15**, Joe Oltmann, X (Feb. 17, 2026) (falsely stating that Mr. Cain "assaulted Peter Ticktin, then lied about the assault,") and containing screenshots of every page of the Supplement; **Exhibit 16**, Joe Oltmann, Facebook (Feb. 17, 2026) (posting the same and similarly including images of every page of the Supplement).  As of the date of the filing of this Motion, the latter X post has 14,000 views (both subject of Plaintiff's Motion to Seal Under Local Rule 1.11 Pursuant to Court's Stipulated Protective Order filed contemporaneously herewith).

[27] **Exhibit 17**, excerpt from *Guest Rich Guggenheim, Confronting Evil*, UNTAMED WITH JOE OLTMANN (Feb. 17, 2026) (submitted to the Court via jump drive and subject of Plaintiff's Motion

Oltmann's podcast streams on his own website, on X, Facebook, Spotify, Apple Podcasts, Rumble, Podbean, YouTube, Podchaser, Sirius XM, and other platforms.

26.     Instead of obeying the Court's Order, Oltmann posted the Order to his X and Facebook accounts.  In those posts, Oltmann stated that the judge had "ruled that you are not allowed to see the information in the supplemental filing," but then drew his followers attention to his prior post containing the violating document, provided a link to it, and directed them to "look at the other x post below . . . . [sic] Devils . . . demonic corrupt devils."[28]

27.     Oltmann's posting of content alleged to be from Dr. Coomer's deposition generated responses such as "Eric Coomer is long overdue for his dirt nap."

---

to Seal Under Local Rule 1.11 Pursuant to Court's Stipulated Protective Order filed contemporaneously herewith).

[28] **Exhibit 18**, Joe Oltmann, X (Feb. 17, 2026).



28.    As of the time of this filing, Oltmann's material remains online.

29.    Also, on the evening of February 17, the court in the Trump case issued an order on Dr. Coomer's Emergency Motion to Strike, requiring the clerk to suppress the Supplement from public access, and striking it pursuant to C.R.C.P. 12(f).[29]  By Rule, the Court found it redundant, immaterial, impertinent, or scandalous.  In its order, the court added, "the issues contained in the Oltmann Defendant's 'Supplement' appear to run contrary to the Middle District of Florida's protective order."

30.    On February 24, 2026, in a flagrant disregard of the court's caution regarding violations of this Court's Protective Order, its striking of the protective

---

[29] **Exhibit 1**.

information pursuant to Colorado Rule of Civil Procedure 12(f), and the order it suppressed, Oltmann and Hall *again* filed the offending material by filing a Motion to Reconsider the February 17, Order.[30] They *again* included substantially the same offending material from the Supplement, the stricken and suppressed February 16, pleading.

31.    In addition to appearing on Lindell TV to claim Plaintiff's counsel assaulted Peter Tickin, on March 2, 2026, Byrne posted a Lindell TV story citing to his own attorney's filing in this case about Dr. Coomer's deposition and claiming that Plaintiff lied in his deposition in this case.



---

32.    Similar to the Oltmann posts, Bryne's post generated violent responses calling for Dr. Coomer's execution:



## III.    LEGAL STANDARD

33.    The Court has inherent authority to enforce its orders and provide for the efficient disposition of litigation. *Tarasewicz v. Royal Caribbean Cruises, Ltd.*, 2016 WL 3944178 (S.D. Fla. Mar. 17, 2016) (*citing Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006) (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962)); *see also Porton v. SP One, Ltd*, No. 6:15–CV–566–ORL, 2015 WL 1648893, at *2 (M.D. Fla. Apr. 13, 2015) ("Deeply rooted in the common law tradition is the power of any court to manage its affairs which necessarily includes

the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.") (internal citation and modification omitted)).

34.    The Eleventh Circuit has emphasized that "[t]he key to unlocking a court's inherent power is a finding of bad faith."  *Id.* (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001)); *see also Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) ("To exercise its inherent power a court must find that the party acted in bad faith.").

35.    Potential sanctions within the Court's discretion include assessment of attorneys' fees and costs, disqualification of counsel, and monetary penalties payable to the clerk of the Court.  *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985) (*citing Flaksa v. Little River Const. Co.*, 389 F.2d 885, 888 (5th Cir. 1968); *Burden v. Yates*, 644 F.2d 503, 505 (5th Cir. 1981); *Woodham v. American Cytoscope Co.*, 335 F.2d 551, 557 & n. 15 (5th Cir. 1964)).

36.    Other sanctions within the Court's discretion include an order enjoining further showing, discussing, or divulging of Confidential Material, destruction or return of Confidential Material, and an Order requiring identification of all recipients of any disclosed Confidential Material.  *Nevil v. Ford Motor Co.*, 1999 WL 1338625 (S.D. Ga. Dec. 23, 1999).

37.    Oltmann's and Hall's violations of this Court's Order and authority may warrant this Court's contempt power under 18 U.S.C. § 401 and FED. R. CRIM. P. 42.  Here, there is repeated knowing, intentional, and willful disobedience and

resistance to this Court's Order that occurred both during and after a deposition. The foundation for criminal contempt power is a need to protect the judicial process from willful impositions, particularly those designed to hobble normal machinery of justice. *In re Broan,* 454 F.2d 999 (D.C. Cir. 1971). The same conduct may be punished as civil contempt under 28 U.S.C. § 1826 and 18 U.S.C. § 401, since civil contempt serves to induce compliance with court order whereas criminal contempt serves to vindicate the court's authority. *United States v. Rose,* 806 F.2d 931 (9th Cir. 1986). Here, since the disobedience did not take place in the actual presence of the court, Federal Rule of Criminal Procedure 42(b) dictates process. Any act which is calculated to embarrass, hinder, or obstruct court in the administration of justice or which is calculated to lessen its authority or its dignity is contempt. *United States v. Pearson,* 62 F. Supp. 767 (D. Cal. 1945).

### *Relevant Provisions of the Protective Order*

38.    In relevant part, the Protective Order defines "Discovery Material" as "all documents, material, or information produced during . . . discovery in this action, whether voluntarily or through formal discovery procedures. This includes . . . deposition testimony." (Doc. 163, 162-1 ¶ 1(c)). The Protective Order expressly allows designation of deposition testimony as confidential. It states, in relevant part, "[p]ortions of any deposition shall be deemed confidential only if they are

designated as such when the deposition is taken or within 30 calendar days after receipt of the transcript." *Id.*, ¶ 2(e).

39.     With respect to the Use of Confidential Information, the Protective Order contains the following provisions:

(a)     Confidential information shall be used solely for the purpose of prosecuting, defending, preparing for, or conducting the litigation in which the information was disclosed . . . or for attempting to settle this litigation, and for no other purpose.

(b)     Confidential Information shall not be disclosed to any person or entity except as provided for in this Order.

(c)     Counsel for the Parties shall keep all Confidential Information received under this Order secure within their exclusive possession and shall take reasonable efforts to place such documents in a secure area.

*Id.*, at ¶ 3(a-c).

40.     Regarding Disclosure of Confidential Information, the Protective Order states:

(a)     The Parties and their counsel shall not disclose, or permit the disclosure of, any documents, material, or information designated as confidential under this Order to any person or entity, except as expressly permitted by this Order.

(b)     (iii) Confidential Information may be disclosed to . . . Counsel representing a Party in connection with any civil action that the Court or a Party designates as related to this action ... subject to the terms of Section 4(d) below.

(c)     Unless otherwise agreed by the Producing Party or Designating Party, or ordered by the Court, before any Confidential Information may be disclosed to any person . . . each such person must sign a written document (an "Undertaking") . . . confirming their familiarity with the terms of this Order and their agreement to submit to the jurisdiction of this Court for any disputes arising under this Order.

*Id.*, ¶ 4(a), (b)(iii), (c).

41.   In relevant part, the Undertaking states the following:

(2)   I agree to comply with and be bound by all of the provisions of the Order.  I understand that I am being given access to documents and information designated as Confidential Information under the Order in order to perform certain tasks related to the litigation, and I will use such materials only as provided in the Order.

(3)   I will not disclose any Confidential Information to any person or entity, except as permitted under the Order, and I agree to use Confidential Information solely for purposes of this litigation.

(4)   I agree to take all reasonable precautions to prevent unauthorized disclosure of Confidential Information in my possession or control.

\* \* \*

(6)   I hereby submit to the jurisdiction of the U.S. District Court for the Middle District of Florida for the purpose of enforcing the terms of the Order, and I understand that any violation of the Order may be punishable by contempt of court or other appropriate sanctions.

42.   To date, Dr. Coomer has been deposed six times in related cases.  Each of these cases had some form of protective order.  Dr. Coomer and the relevant parties, to Dr. Coomer's knowledge, have complied with those orders without incident.  Enter Oltmann, Hall, and DeFranco.

## IV.   ARGUMENT

43.   This case is being tried by Defendants and their allies in the media. Plaintiff was defamed in the *The Deep Rig* and rather than fight that battle in this Court, Defendants and their allies have engaged in disclosure of discovery material in the court of public opinion.  Defendants are operating both independently and through proxies such as Hall and Oltmann.  Unfortunately, 2020 election fraud

conspiracies have not gone away and have been rekindled by the FBI raid in Fulton County and reporting about federalizing elections by Executive Order. The point being—unauthorized disclosures in violation of the Protective Order in this case create a lethal environment unlike in traditional civil cases before this Court. Protection of the parties and consequences for violations are necessary, not only to preserve this Court's inherent authority, but to prevent this case from devolving further.

44.    Plaintiff made it crystal clear that he intended to exercise the right granted by the Court to review Dr. Coomer's deposition transcript and comply with the process of designating Confidential Information. This 30-day process necessarily requires the transcript remain confidential during the interim period or otherwise it would render the provision meaningless. *See* (Doc. 291) (reaffirming the 30-day period under the Protective Order). It is a process that Byrne's own lawyers demanded.

45.    The Protective Order provides for an orderly process, including good faith conferral, to challenge confidentiality designations and obtain a ruling by the Court. (Doc. 163, 162-1 ¶ 6(A)). One cannot reverse engineer this process by prophylactically making his or her own determinations of what constitutes Confidential Information. This Court has sole authority to approve or disapprove those designations. But Hall and Oltmann decided to take matters into their own hands.

46.    In Hall's case, she violated the Protective Order on at least four occasions.  First, she drafted and then circulated the Supplement to numerous attorneys, paralegals, and others describing Dr. Coomer's purported deposition testimony and accusing him of criminal conduct.[31]  The Supplement did so in at least fourteen different ways.  Hall's publication serves both Oltmann's and Defendant Byrne's campaign to publicly smear Dr. Coomer, proliferate election conspiracy theories, and gin up a criminal investigation.

47.    Second, it is clear from the metadata of that filing that Hall shared Dr. Coomer's deposition testimony with her co-counsel in the Trump Case, Ingrid Defranco.[32]  Defranco has not signed the Undertaking as is required for her to be in receipt of Dr. Coomer's deposition testimony.  Providing Confidential Information to a non-signatory is a direct violation of the Protective Order. (Doc. 163, 162-1 ¶ 3(b)).

48.    Third, after being alerted to her violation of the Protective Order, Hall filed the Supplement on February 16, 2026, in the Denver District Court's public database, again characterizing Dr. Coomer's testimony.[33]  This filing was struck by the Denver District Court on February 17, 2026.

---

[31] **Exhibit 10**.

[32] **Exhibit 11**.

[33] **Exhibit 13**.

49.     Fourth, after the Supplement filing was struck by the Denver District Court, Hall again filed the same material on February 24, 2026, in a Motion to Reconsider the Court's order striking the Supplement.[34]

50.     Thus, Hall's violations occurred after she was placed on notice of the Protective Order by Plaintiff's counsel and after signing the Undertaking.  Her justification appears to be that Plaintiff cannot claim a good faith basis to designate deposition testimony as Confidential Information.  There is, however, no such carve-out under the plain terms of the Protective Order.  Furthermore, Hall simply could have deposed Dr. Coomer in the Trump case, which has its own protective order, if Plaintiff's testimony was necessary to that case.  She has not.  Hall's position is substantially the same as Lambert's prior to her disqualification in the *Dominion* case.  There, Lambert argued she was duty-bound to report the "crimes" contained with the Dominion production which pre-empted her obligations under the protective order.  There, as here, any disclosures outside of the terms of the order must first be addressed to the Court.  Hall, an ally of Lambert's, failed to heed this lesson.

51.     The violations by Oltmann are of a slightly different nature.  Following the discovery hearing with Special Master Gilman, Oltmann intentionally took to

---

[34] **Exhibit 20**, *Coomer v. Donald J. Trump for President, Inc. et. al.*, Defendants Joseph Oltmann, FEC United, Shuffling Madness Media, Inc. Motion to Reconsider the February 17, 2026 Order Striking the Supplement Regarding the Dominion Voting Subpoena (Feb. 24, 2026) (subject of Plaintiff's Motion to Seal Under Local Rule 1.11 Pursuant to Court's Stipulated Protective Order filed contemporaneously herewith).

social media to publish the Supplement on multiple public platforms.  Oltmann has a lengthy history of violating Court orders (he is currently under another contempt order) and has openly stated he will be publicly posting everything in his case.  As stated by Oltmann on X and Facebook on February 17, 2026, ". . . I will share everything in this case from this point on.  They will not hide their criminality, and I am not interested in these trash heaps continuing to gaslight and lie with impunity."[35]

52.    Oltmann engaged in a lengthy diatribe about the Supplement on his daily podcast, UNTAMED, wherein he read almost the entire document verbatim while shouting about its contents.[36]  He did this with full knowledge that it was subject to the Protective Order and a pending Motion to Strike and Suppress. There is no doubt that Oltmann published this document in an attempt to smear Dr. Coomer's reputation with full knowledge he would be violating his own legal obligations.  Oltmann often states that the judiciary is corrupt and uses that as a justification for his repeated violations.

53.    Violations of the Protective Order by Hall and Oltmann were not only intentional but are also likely to recur in the absence of meaningful intervention. The failure of Hall and Oltmann to adhere to the Protective Order was and is, willful and contumacious.

---

[35] **Exhibit 19**.

[36] *See* **Exhibit 17**.

54.     For these reasons, Plaintiff requests the Court issue an Order requiring third-parties Hall and Oltmann to appear before this Court and show cause why they should not be:

a.     held in civil or criminal contempt of this Court's Protective Order;

b.     fined in an amount as this Court may deem appropriate;

c.     ordered to pay Plaintiff for the damages, costs and expenses, including fees and costs which Plaintiff has suffered and incurred;

d.     prohibited from receiving any discovery material produced in this proceeding;

e.     prohibited from attending any future depositions in this matter in which they are not a witness;

f.     ordered to: (i) delete social media postings within Oltmann's control which incorporate the Confidential Material; (ii) to remove the material from the Google Drive he provided the public; and (iii) to remove the February 17 episode of his Untamed podcast.

g.     enjoined from showing, discussing, or divulging in any way Confidential Material from this proceeding; and

h.     ordered to identify all people to whom and/or forums on which they have shown, discussed, or disclosed Confidential Material.

55.     Plaintiff further request an order:

a.     prohibiting Defendants Byrne, Lucescu, and The America Project, Inc., as well as all other recipients of discovery materials in this case, including, but not limited to, signatories to the Undertaking, from sharing, discussing, or otherwise providing any discovery materials to Andrea Hall, Joseph Oltmann, or counsel for them;

b.      amending the Protective Order to include a prohibition of use
        of any discovery materials for any purpose whatsoever other
        than for purposes of this litigation; and

c.      requiring Defendants to disclose all communications relating to
        this litigation with either Andrea Hall or Joseph Oltmann
        between June 1, 2025, and the present.

Plaintiff requests such further relief to which it is justly entitled.

Respectfully submitted this 9th day of March 2026.

                        Respectfully submitted,

                        _____/s/ Charlie Cain_____
                        Charles J. Cain, CO Atty No. 51020*
                        ccain@cstrial.com
                        Bradley A. Kloewer, CO Atty No. 50565*
                        bkloewer@cstrial.com
                        **CAIN & SKARNULIS PLLC**
                        P. O. Box 1064
                        Salida, Colorado 81201
                        719-530-3011
                        512-477-5011 (Fax)
                        *Appearing via Special Admission

Ashley N. Morgan*
Texas Bar No. 24091339
Colorado Attorney No. 61713
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)
*Appearing via Special Admission
**ATTORNEYS FOR PLAINTIFF**

### LOCAL RULE 3.01(G) CERTIFICATION REGARDING CONFERRAL

Movant certifies:

(A)    that he conferred with Andrea Hall, Joeseph Oltmann (who is unrepresented), and Defendants via email regarding the relief requested;

(B)    that Andrea Hall responded to the email to state she is opposed to the relief requested;

(C) that Oltmann responded to the email to state his is opposed to the relief requested;

(D) that Defendant Byrne's counsel is opposed to the relief requested;

(E) that Defendant The America Project and Lucescu have not responded substantively to the conferral; and

(C)    that the email conferral was sent to Ms. Hall on began on February 27 and continued through March 2; to Mr. Oltmann began on February 27 and continued through March 4; to Defendant Byrne began on March 3 and continued through March 5; and to Defendants The America Project and Lucescu on March 3.