**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,
    Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,
    Defendants

---

### PLAINTIFF'S MOTION TO STRIKE EXPERT WITNESSES

---

Plaintiff Eric Coomer, Ph.D. (Plaintiff or Dr. Coomer) files this Motion to Strike Expert Witnesses, and states as follows:

### I.    SUMMARY OF MOTION

1. On April 7, 2026, the Court ordered Defendant Patrick Byrne (Defendant Byrne) to participate in discovery and extended related deadlines. (Doc. 307). Thirty minutes later, Plaintiff requested deposition dates from Defendant Byrne's counsel for six designated experts. Two weeks went by without a response.

2. On April 21, 2026, Plaintiff again asked for deposition dates and indicated that Plaintiff would move to strike the experts absent cooperation. In response, Defendant Byrne's counsel, Peter Ticktin, repeated the position already rejected by this Court. Specifically, he stated: "we cannot get court dates or

depositions dates until the court deals with your ludicrous Motion for Sanctions . . . [s]urely a well educated attorney such as yourself know (*sic*) that once a motion to disqualify a judge or an attorney is filed, the determination of that motion has to be the first order of business." No dates were provided.

3. Thus, despite Plaintiff's diligence, no discovery has occurred in this case since Dr. Coomer's deposition on January 27, 2026. Defendant Byrne's refusal to provide deposition dates in violation of the April 7 Order is intentional. It comes on the heels of systemic and long-standing dilatory conduct in this case. Accordingly, Plaintiff moves to strike the six experts whose depositions were requested and not provided and additionally seeks an award of expenses pursuant to Federal Rule of Civil Procedure 37.[1]

4. Further, even if dates had been provided, Defendant Byrne's expert designations failed to comply with Federal Rule of Civil Procedure 26(a)(2). For this additional reason, the designations should be stricken. *See* FED. R. CIV. P. 26(c)(1).

## II. RELEVANT DISCOVERY BACKGROUND

5. This 2022 case was transferred to the Middle District on January 8, 2024. (Doc. 99). Shortly thereafter, Defendants moved to stay discovery. (Doc. 127).

---

[1] Defendants The America Project, Inc. and Steven Lucescu have disclosed no experts. They are not the subject of this Motion.

2

6.      On April 4, 2024, this Court issued its first Case Management and Scheduling Order.  (Doc. 136).  This Order set Defendant's Expert Disclosure deadline as December 16, 2024.

7.      The Court denied Defendants' first request for a stay as moot on July 31, 2024.  (Doc. 150).

8.      On December 31, 2024, Plaintiff filed his first Motion to Compel and for Sanctions.  (Doc. 170).  The Motion described in detail the litany of discovery delays by Defendants.

9.      On January 14, 2025, the Court modified the Case Management and Scheduling Order.   (Doc. 178).   The Court reset the disclosure deadline for Defendants' experts to May 15, 2025.  This was the first extension.

10.      On February 18, 2025, Stefanie Lambert filed a Motion for Special Admission.  (Doc. 187).  The same day, Defendant Byrne's prior counsel moved to withdraw.  (Docs. 188 and 189).

11.      On April 14, 2025, Plaintiff served his expert witness disclosures.

12.      On April 28, 2025, the Court granted in part and denied in part (Doc. 213) Plaintiff's Motion to Compel and for Sanctions (Doc. 170).

13.      On July 8, 2025, after Ms. Lambert was disqualified, Peter Ticktin filed a Notice of Appearance of Counsel.  (Doc. 218).

14.      On July 30, 2025, the Court extended Defendants' deadline to disclose expert and produce report(s) until December 1, 2025.  (Doc. 225).  This was the second extension.

3

15.    On September 26, 2025, Plaintiff filed his second Motion to Compel and for Sanctions.  (Doc. 230).  Among other things, the Motion described Defendant Byrne's failure to comply with the Court's April 28, 2025 Order (Doc. 213) that was issued five months prior and Defendant Byrne's continued failure to provide deposition dates.

16.    On September 26, 2025, Defendant Byrne sought his second stay of these proceedings pending review of his Petition for Mandamus Relief. (Doc. 233).[2]

17.    On November 5, 2025, the Court issued its Order on Plaintiff's Second Motion to Compel.  (Doc. 230).  The Court ordered Defendant Byrne to complete his deposition no later than November 19, 2025, and awarded Plaintiff reasonable expenses.[3]

18.    On December 1, 2025, Defendant Byrne filed a Motion for Extension to Make Expert Witness Disclosures.  (Doc. 255).

19.    On December 17, 2025, the Court granted the extension until January 15, 2025.  (Doc. 267).[4]  This was the third extension.

20.    On January 15, 2026, Defendant Byrne served his Expert Disclosures, identifying two retained and seven non-retained experts.[5]  The two retained

---

[2] The Petition was denied on October 3, 2025.  (Doc. 237).

[3] The specific time, place, and date for Defendant Byrne's deposition was subsequently ordered by the Court.  (Doc. 249).  This deposition was completed by the Plaintiff at that time.

[4] As the Court may recall from the Case Management Conference that day, Defendant Byrne's counsel stated that they had retained only Erich Spreckin as of December 17, 2025.

[5] **Exhibit 1**, https://caincloud.egnyte.com/fl/CMcyPRd3fth9.

4

experts were Erich Speckin and Ben Cotton.  The seven non-retained experts were James Penrose, Jeffrey Lenberg, Mark Cook, Doug Gould, Walter Daugherty, Jeff O'Donnell, and Russ Ramsland.[6]

21.     Mr. Speckin purports to be a forensic document examiner and produced a report examining the printing of ballots.[7]  Mr. Speckin, whose report is undated but appears to relate to the 2020 and 2022 elections, holds no certifications from any recognized board for forensic document examiners, including the American Board of Forensic Document Examiners or the Board of Forensic Document Examiners.  Dr. Coomer was not responsible for printing election ballots.

22.     Mr. Cotton produced a 6-page affidavit dated April 8, 2021, and an 8-page affidavit dated June 8, 2021, describing his examination of election management server images, compact flash cards, and voting machines purportedly used in Antrim County, Michigan.[8]  He also produced a 20-page affidavit dated January 15, 2026, describing his examination of Dominion "components" from Maricopa, County Arizona, Antrim, Fulton, and Coffee counties in Georgia, and Mesa County Colorado.[9]  Mr. Cotton's affidavits allege vulnerabilities in voting systems generally, such as outdated antivirus programs, and describe equipment

---

[6] Cook, Gould Daugherty, and O'Donnell were all grouped on the disclosure under the company WizWare Technologies, Inc. in Lakewood, Colorado.  WizWare's webpage indicates it is an IT service company.  https://www.wizwaretech.com/.

[7] **Exhibit 1**, pp. 8-49.

[8] **Exhibit 1**, pp. 50-69.

[9] **Exhibit 1**, pp. 70-95.

with alleged connections to foreign IP addresses.  Mr. Cotton does not claim Dr. Coomer or Dominion Voting Systems "rigged" the 2020 election.

23.    Defendant Byrne then produced what appears to be a data dump in the form of a series of reports, including one preliminary report, authored by Mr. Penrose (non-retained) in 2021.[10]  The reports were not generated for this case and include allegations against non-parties such as ElectionSource.

24.    Defendant Byrne produced another data dump from Mr. Lenberg (non-retained) in the from various reports issued in 2021.[11]  Mr. Lenberg's analysis focused on alleged "subversion" in the Antrim County Election and "vote shifting" in Barry County Michigan.

25.    Defendant Byrne produced various Mesa County reports recycled from 2021 and 2022, and authored by Doug Gould, Jeffrey O'Donnell, and Walter Daugherity.  All three were disclosed as non-retained experts.[12]  Dr. Coomer has not requested their depositions.

26.    Defendant Byrne produced a 2-page CV of Mr. Cook (non-retained).[13] Mr. Cook is disclosed as the author of three Mesa County reports but none of them are signed by him.

---

[10] **Exhibit 1**, pp. 96-152.

[11] **Exhibit 1**, pp. 153-306.

[12] **Exhibit 1**, pp. 307-624.

[13] **Exhibit 1**, pp. 625-626.

6

27.     Finally, Defendant Byrne produced a series of 2020 reports authored by Russ Ramsland (non-retained) from Allied Security Operations Group related to Antrim County.[14]

28.     None of the disclosed experts produced reports claiming that Dr. Coomer or Dominion Voting Systems rigged the 2020 Presidential election. The reports do not even reference the *Deep Rig*, the movie at the heart of this case. In all 672 pages of Defendant Byrne's disclosures, Dr. Coomer is mentioned twice. Once in the case caption and once as an "inventor" on a copy of United States Patent No. 8,876,002 B2 dated November 4, 2014.

29.     After these disclosures were made, all counsel held a conferral call on February 6, 2026, concerning several outstanding discovery issues and Plaintiff's forthcoming Motion for Sanctions and for Order to Show Cause.  During the call, Defendant Byrne's counsel stated they would check on deposition dates for their recently disclosed experts and provide them to Plaintiff.

30.     Later in the day on February 6, 2026, Plaintiff filed the Motion for Sanctions and for Order to Show Cause.  (Doc. 281).

31.     On February 9, 2026, the parties filed a Joint Stipulation Regarding Discovery Deadline extending by agreement the discovery period until April 1, 2026, primarily to "conduct additional witness depositions."  (Doc. 282).  This Joint Stipulation had been one of the subjects discussed on February 6.

_____

[14] **Exhibit 1**, pp. 627-672.

7

32.    On February 26, 2026, Plaintiff's counsel emailed Defendant Bryne's counsel and again requested deposition dates for Defendant Byrne's experts.[15]  The email referenced the prior request for deposition dates made during the February 6 conferral call.

33.    On February 27, 2026, David Perry of the Ticktin Law Group provided March 30 and March 31 as the two dates that Mr. Ticktin had availability for depositions.[16]  Plaintiff immediately served deposition notices for Defendant Byrne's two retained experts.[17]

34.    The next day, Mr. Ticktin cancelled the depositions, saying he was putting "a stop to all other work."[18]

35.    On March 12, 2026, Plaintiff filed a Motion to Compel Deposition Dates and to Amend Case Management Order.  (Doc. 297).  This was the third motion to compel.  Again, Plaintiff sought to depose Defendant Byrne's experts, among other relief.  That same day, Defendant Bryne sought to stay discovery pending resolution of Plaintiff's Motion for Sanctions.  (Doc. 298).

36.    On April 7, 2026, the Court granted Plaintiff's Motion to Compel (Doc. 297) and denied Defendant Byrne's Motion for Protective Order Pending Resolution of Motion for Sanctions.  (Doc. 307).  In its Order, the Court reminded

---

[15] **Exhibit 2**, p. 1 Email from Kloewer (Feb. 26, 2026).

[16] *Id.*

[17] **Exhibit 3** and **Exhibit 4**, Deposition Notices for Benjamin Cotton and Erich Speckin, respectively, (Feb. 27, 2026).

[18] **Exhibit 5**, pp. 1-2, Email from Ticktin (Feb. 28, 2026).

8

Defendant Byrne that the failure to provide deposition dates before the end of discovery can be grounds to exclude an expert at trial. *Id.* at p. 6.

37. Later on April 7, 2026, Plaintiff's counsel requested deposition dates for six of Defendant Byrne's disclosed experts "given today's orders."[19] The request was for depositions included Messrs. Cotton, Speckin, Cook, Penrose, Lenberg, and Ramsland (along with fact witness Joe Oltmann).

38. No response was received for two weeks.

39. On April 21, 2026, with the discovery window expiring, Plaintiff's counsel again emailed on the same email chain indicating that he intended to move to strike Defendant Byrne's experts due to noncooperation but that "it would be much appreciated if you simply responded to the below requests in the interim."[20]

40. Mr. Ticktin responded a few minutes later and repeated his refusal to provide any deposition dates.[21]

### III.   ARGUMENT & AUTHORITIES

41. The lengthy history recounted above evidences Plaintiff's diligence in seeking discovery, a pattern of delay by Defendant Byrne spanning years, and Defendant Byrne's intentional refusal to comply with Court orders.

42. This Court recently wrote "that a failure to provide deposition dates before the end of discovery can be grounds to exclude an expert at trial" in its

---

[19] **Exhibit 6**, pp. 2-3 Email from Cain.

[20] *Id.* at p. 2.

[21] *Id.* at p. 1.

9

April 7, 2026 Order (Doc. 307, p. 6).  Before the ink had dried on that Order, Defendant Bryne rejected the Court's ruling.  Perhaps Defendant Byrne does not actually intend to call these witnesses given that none of them actually speak to the core issues in this case.  Whatever the rationale, this matter is now ripe for determination.

43.   Clearly, the Court is not obligated to rule on the pending Motion for Sanctions and Order to Show Cause prior to the end of the discovery period.  The Court may wish to hold a separate evidentiary hearing on the motion and any decision on the merits might be the subject of an appeal.  The latest refusal to cooperate in discovery should also not be viewed in a vacuum.  It is part of a pattern of pre-trial misconduct and delay by Defendant Byrne.

44.   Specifically, the latest conduct comes after Defendant Byrne has sought and been denied two stays of discovery; after Plaintiff filed three motions to compel that resulted in three orders by the Court granting Plaintiff relief; after multiple extension requests and the granting of discovery extensions by the Court; after Defendant Byrne agreed to a stipulation to amend the discovery period in order to do what he now refuses to do; after multiple requests for deposition dates that were met by silence; after the one instance where dates for depositions were actually provided (March 30 and 31) and then rescinded the very next day; and, of course, after the April 7 Order.

45.   The record is more than adequate to warrant the relief requested.  Compare, for example, the striking of Brian Warner in *St. Louis Condo. Ass'n, Inc.,*

which occurred after, as the Court put it, "a stunning inability of lawyers to confer and agree upon dates for deposition" that resulted in Mr. Warner being unavailable at any point before the discovery deadline. *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2019 WL 2008665, at *1 (S.D. Fla. July 25, 2019), *aff'd*, 5 F.4th 1235 (11th Cir. 2021). In affirming the Magistrate Judge's decision, the Eleventh Circuit noted that Rockhill "could not provide a single date" when Mr. Warner was available before the expert disclosure deadline. *Id.* at 1244. Here, the Defendant Byrne have already made it clear, despite the prospect of a motion to strike, that they *will not* provide the requested deposition dates. Defendant Byrne apparently did not take this Court's April 7 Order to heart. *See Solomon v. AIG Property Casualty Co.*, 2025 WL 2829742, at *2-3 (M.D. Fla. Oct. 6, 2025) (excluding Dr. Jablonski who was not made available for deposition before discovery deadline).

46.    The *Civil Discovery Handbook for the Middle District* makes it abundantly clear that Rule 37 is enforced in this District against recalcitrant parties. *Civil Discovery Handbook* (2021) at Section I.E.3. "Rule 37 sanction are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Gratton v. Great Am.* Commc'ns, 178 F.3d 1373, 1374-75 (11th Cir. 1999). In light of the April 7 Order and the history of related dilatory conduct, the Court is well within its discretion to assess the sanctions set forth in Federal Rule of Civil Procedure 37 (a)(5) (expenses) and (b)(2)(A)(ii) (exclusion of evidence).

11

47.    Moreover, Defendant Byrne's expert disclosures themselves were wholly inadequate under Federal Rule of Civil Procedure 26(a)(2)(B)(i)-(vi), lending further support to the witnesses' exclusion.

48.    At a minimum, Mr. Speckin's undated report violates Federal Rule of Civil Procedure 26(a)(2)(B)(i).    In it, Mr. Speckin expresses five opinions. However, four of the five opinions either assert that "further work and review" is necessary to make a determination (even assuming the opinions were somehow related to this case) or that additional data from the 2020 election "should be examined and compared for discrepancies."[22]  The one other opinion expressed was that a subset of 25,000 ballots from Maricopa County originated from a particular source (relying on photos and PDFs of ballots, not actual ballots) and had printing defects.[23]  How this conclusion relates to this case is never presented.

49.    Mr. Cotton's expert reports, in the form of affidavits, list no "opinions" and none were provided on the disclosure form itself.

50.    Through process of elimination, all the other experts listed on the disclosure are presumed to be non-retained experts due to the fact that Defendant Byrne stated he had retained Mr. Speckin and Mr. Cotton but did not include the same language in these disclosures.  Here, the rules require the *disclosure* to state "a summary of all facts and opinions to which the witness is expected to present evidence under Federal Rule of Evidence 702, 703 or 705."    FED. R. CIV.

---

[22] **Exhibit 1**, at pp. 17, 21, 26, and 27.

[23] **Exhibit 1**, p. 15.

12

P. 26(a)(2)(C)(i).  None of the disclosure did so.  Further, a search of their attached historical reports does not contain a single reference to an "opinion" intended to be proffered in this case.  In effect, the disclosure of non-retained experts amounts to a data dump with an invitation to "figure it out yourself."

51.    Accordingly, even if deposition dates had been provided for the six experts, the expert disclosure itself failed to comply with Rule 26 and warrants the exclusion of the expert and striking of their designations.  *See* FED. R. CIV. P. 26(c)(1).

For these reasons, Plaintiff Eric Coomer, Ph.D. respectfully requests the Court enter an order striking the following expert witnesses designated by Defendant Patrick Byrne: Benjamin Cotton, Eric Speckin, Mark Cook, James Penrose, Jeffrey Lenberg, and Russ Ramsland.  Plaintiff Eric Coomer, Ph.D. further requests an award of his reasonable attorney fees and costs, as well and any further just and equitable relief.

13

Respectfully submitted this 24th day of April 2026.

/s/ Charles J. Cain

Charles J. Cain, CO Atty No. 51020*
ccain@cstrial.com
Bradley A. Kloewer, CO Atty No. 50565*
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011
512-477-5011 (Fax)
*Appearing via Special Admission

Ashley N. Morgan*
Texas Bar No. 24091339
Colorado Attorney No. 61713
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)
*Appearing via Special Admission
**ATTORNEYS FOR PLAINTIFF**

## LOCAL RULE 3.01(G) CERTIFICATION REGARDING CONFERRAL

Movant certifies:

(A)   that he has conferred with Defendant Patrick Byrne regarding the relief requested;

(B)   that Defendant Patrick Byrne is opposed to the relief requested;

(C)   that conferral regarding the relief requested herein with Defendant Patrick Byrne was via the email chain attached as **Exhibit 6** to this Motion.