UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC COOMER, Ph.D.,

        Plaintiff,

v.                                                                   Case No. 8:24-cv-8-TPB-SPF

PATRICK BYRNE, et al.,

        Defendant.

_____/

## **ORDER**

This matter comes before the Court upon Plaintiff Eric Coomer's Motion for Order to Show Cause ("Show Cause Motion") (Doc. 292), Defendant Patrick Byrne's response in opposition (Doc. 300), and third-party Andrea Hall's response in opposition (Doc. 306).[1] Also before the Court is Plaintiff's Motion to Seal under Local Rule 1.11 Pursuant to Court's Stipulated Protective Order ("Motion to Seal") (Doc. 293) and Defendant's response in opposition (Doc. 301). After due consideration, Plaintiff's Motion for Order to Show Cause (Doc. 292) is granted in part and denied in part and Plaintiff's Motion to Seal under Local Rule 1.11 Pursuant to Court's Stipulated Protective Order (Doc. 293) is denied.

### I.    Background

The Show Cause Motion and the Motion to Seal (and a slew of others) arise from events that occurred around the time of Defendant's deposition of Plaintiff on January 27, 2026. (Docs. 281, 283, 289, 292, 293, 297, 298). Prior to the deposition, Plaintiff filed a motion for a protective order to limit the lines of questioning Defendant could explore during

---

[1] There are a number of other named Defendants in this action, however Plaintiff's instant motions only concern Defendant Patrick Byrne.

his deposition. (Doc. 274). The Court denied Plaintiff's motion without prejudice. (Doc. 279). On the day of Plaintiff's deposition, Joseph Oltmann, a defendant in another case brought by Plaintiff in Colorado, *Coomer v. Donald J. Trump for President, Inc., Joseph Oltmann, FEC United, & Shuffling Madness Media, Inc. d/b/a Conservative Daily, et al.*, Case No. 2020-cv-34319 (Denver Cnty. Dist. Ct.) ("Denver Case"), and his attorney at the time, Andrea Hall, attended the deposition at Defendant's invitation. (Doc. 292 at 3). Oltmann and Hall both agreed to be bound by the Court's protective order, which was entered in October 2024, following the parties' joint request ("Protective Order"). (Docs. 162, 162-1, 163, 292-4, 292-5). The Protective order governs discovery in this action, including the procedures for designating records and deposition testimony as confidential. ("Protective Order"). (Doc. 162-1).

On February 10, 2026, Hall filed a Notice of Termination in the Denver Case stating that she would no longer be representing Oltmann, FEC United, or Conservative Daily. (Doc. 292-8). The Notice of Termination was jointly submitted with Ingrid DeFranco, Hall's co-counsel. (*Id.*). That same day, Plaintiff received the official copy of the transcript of his deposition. (Doc. 292 at 8).

On February 16, 2026, however Hall, on behalf of Oltmann, FEC United, and Conservative Daily, emailed the Special Master in the Denver Case ahead of a hearing set for the next morning. (Doc. 292-2). This email was sent at 4:12 p.m. CST and copied over twenty other people, including counsel for all parties involved with the Denver Case. (Docs. 292-9, 293-10). Attached to the email was a document in which Hall included a number of bullet points purportedly summarizing portions of Plaintiff's January 27 deposition testimony ("the Supplement"). (Docs. 293-1, 293-2). At 5:42 p.m. CST, Plaintiff's counsel replied to

2

all recipients of Hall's email and explained his position that the Supplement contained confidential information and expressed his intention to seek court intervention.  (Doc. 292-11).  Then, at 7:16 p.m. MDT, Hall filed the Supplement on the public docket in the Denver Case.  (Doc. 293-2).  From the metadata associated with the document, it appears that DeFranco may have drafted the Supplement with Hall later editing it.  (Doc. 292-11).

The court in the Denver Case struck and sealed the Supplement on February 17, 2026.  (Doc. 292-1).  However, on the same day, Oltmann made the Supplement public in three ways: he posted to two of his social media accounts a link to Hall's filing and screenshots of the pages along with a commentary about Plaintiff and he also displayed and read aloud the Supplement on his daily podcast.  (Doc. 293-3, 293-4, 293-5).  On February 24, 2026, Hall again filed on behalf of Oltmann, FEC United, and Conservative Daily in the Denver Case and asked the court to reconsider its order striking and sealing the prior filing.  (Doc. 293-6).  That motion was also public and again contained multiple statements purportedly summarizing Plaintiff's deposition testimony.  (*Id.*).

Against this backdrop, Plaintiff filed his Show Cause Motion on March 9, 2026, asking the Court to direct Hall and Oltmann to show cause as to why they should not be held in contempt for violating the Court's Protective Order.  (Doc. 292).  Plaintiff also concurrently filed a motion to seal some of the exhibits attached to his Show Cause Motion, specifically Exhibits 10, 13, 15, 16, 17, and 20, which consist of copies of Hall's filings in the Denver Case and Oltmann's online activity ("Motion to Seal").  (Doc. 293).

3

## II.    Discussion

### A.  Motion to Seal

For the sake of efficiency, the Court starts with Plaintiff's Motion to Seal.  (Doc. 293). In relevant part, this District's Local Rule 1.11 requires that a party seeking to file any paper under seal in a civil case must file a motion that:

> (2) must describe the item;
> (3) must establish:
>     (A) that filing the item is necessary,
>     (B) that sealing the item is necessary, and
>     (C) that using a redaction, a pseudonym, or a means other than
>     sealing is unavailable or unsatisfactory;
> (4) must include a legal memorandum;
> (5) must propose a duration for the seal;
> (6) must state the name, mailing address, email address, and telephone number
> of the person authorized to retrieve a sealed, tangible item;

M.D. Fla. R. 1.11(b) (2025).

Although a district court has "supervisory power over its own records and files," it must use this power responsibly to balance the public's right of access against interests favoring confidentiality. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1987). Discovery materials are presumptively confidential, and "material filed with discovery motions is not subject to the common-law right of access[.]" *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312–13 (11th Cir. 2001). On the other hand, "[m]aterial filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007); *cf. Rondini v. Bunn*, No. 7:17-cv-1114-RDP, 2019 WL 9786085, at *1 (N.D. Ala. May 22, 2018) ("Since the oral argument concerned motions to dismiss that required the court to address the merits of the action, the court finds that the oral argument is subject to the right of access."). A showing of good cause may overcome the common law

right of access. *See Romero*, 480 F.3d at 1246.  However, parties do not have the right to agree on what judicial records should be sealed, *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985), in that "[t]he parties' agreement to seal court documents 'is immaterial' to the public's right of access." *NXP B.V. v. Blackberry Ltd.*, No. 6:12-cv-498-Orl-YK-TBS, 2014 WL 12622459, at *2 (M.D. Fla. Mar. 17, 2014) (citation omitted).

Here, Plaintiff has not met his burden.  While the Exhibits are necessary to Plaintiff's Motion to Show Cause because they demonstrate the alleged violations of the Court's Protective Order, Plaintiff has not established that sealing them is necessary.  As Defendant points out, the subject material is already in the public realm, so sealing them at this juncture is unnecessary.

The Court understands that Plaintiff is also concerned about how Oltmann and Hall framed and characterized his deposition testimony in the Supplement.  However, this is insufficient to overcome the presumption of public access, especially where the alleged harm is speculative, and the request is for the public to be denied indefinitely.  *See McDonald v. Grimsley*, 2024 WL 5256498, at *3 (S.D. Ala. Sept. 12, 2024 (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)) (denying a motion to seal because records containing "'potentially embarrassing information is not in itself sufficient reason to block public access'").

Moreover, Plaintiff does not meaningfully argue that the information contained in the Supplement is confidential.  Apart from his general concerns about Oltmann's and Hall's framing of his testimony, the crux of Plaintiff's request seems to be that the documents should be sealed simply because Oltmann and Hall's violated the Court's Protective Order.  The Court is however reluctant to "endorse document sealing as punishment for bad behavior."

*Callahan v. United Network of Organ Sharing*, 17 F.4th 1356, 1365 (11th Cir. 2021).  Plaintiff's

Motion to Seal is therefore denied.

### B.  Motion to Show Cause

The Court now turns to Plaintiff's Motion to Show Cause.  (Doc. 292).  The

Confidentiality Order defines Confidential Information as

> any Discovery Material that has been specifically marked or designated as "CONFIDENTIAL" by any Designating Party, and that contains: (i) private health or medical records of any person; (ii) personally identifying information of any person, including identification numbers, addresses, and telephone numbers for any person, and the name of any minor child; (iii) confidential personal correspondence, notes, or communications; (iv) policies, protocols, sources, or methods that are in fact confidential; (v) personnel or employment records of any person or party; (vi) confidential financial records or statements; (vii) competitively or commercially sensitive information; (viii) confidential and sensitive political records; or (ix) any personal information that is not generally available to the public.

(Doc. 162-1 at 1-2).  In turn, Discovery Material is:

> all documents, material, or information produced during the course of discovery in this action, whether voluntarily or through formal discovery procedures. This includes, but is not limited to, responses to interrogatories, responses to requests for production, responses to requests for admission, deposition testimony, deposition exhibits, and subpoenaed documents, information, or objects.

(*Id.* at 2).  As it relates to depositions, "[t]he [p]ortions of any deposition shall be deemed

confidential only if they are designated as such when the deposition is taken or within 30

calendar days after receipt of the transcript."  (*Id.* at 3).

As for the use of Confidential Information, the Protective Order provides that it "shall

be used solely for the purpose of prosecuting, defending, preparing for, or conducting the

litigation in which the information was disclosed (including any appeals), or for attempting

to settle this litigation, and for no other purpose."  (*Id.*).  Moreover, "[t]he Parties and their

counsel shall not disclose, or permit the disclosure of, any documents, material, or

6

information designated as confidential under this Order to any person or entity, except as expressly permitted by this Order." (*Id.* at 4).

In relevant part, Confidential Information may be disclosed to:

ii. Counsel of record for the Parties and their employees who are under the direction and control of such counsel and are necessary to assist in the preparation or conduct of this litigation.

iii. Counsel representing a Party in connection with any civil action that the Court or a Party designates as related to this action. This includes, but is not limited to, counsel in all cases identified in Plaintiff's Update to Notice of Related Cases (Dkt. 148), as well as counsel representing Defendant Patrick Byrne in the civil action titled *US Dominion, Inc. et al. v. Patrick Byrne*, Case No. 1:21-cv-02131-CJN, before the U.S. District Court for the District of Columbia, along with their associates, legal assistants, support staff, and other employees assisting in such action, subject to the terms of Section 4(d) below.

iv. Lawyers, advisors, consultants, investigators, or experts (collectively referred to as "experts" or "consultants") retained by a Party or its counsel to assist in the preparation and trial of this lawsuit. Before any disclosure to an expert or consultant, the expert or consultant must be informed of and agree in writing to be bound by the provisions of this Order, including the requirement to maintain the confidentiality of the documents and information and to use them only as permitted by this Order.

(*Id.* at 4-5).  The Notice of Related Cases discussed by the Protective Order discloses four other cases, including the Denver Case.  (Doc. 148).  And, if Confidential Information is disclosed to a qualifying individual, that person must sign a document (called an "Undertaking") in which he or she agrees to be bound by the terms of the Confidentiality Order and to submit to the Court's jurisdiction.  (Doc. 162-1 at 6).

By way of Plaintiff's motion, he asks that the Court direct Oltmann and Hall to show cause as to why they should not be held in contempt for violating the Court's Protective Order by disclosing content from Plaintiff's deposition before Plaintiff had a chance to review his deposition transcript and make confidentiality designations.  (Doc. 292).  Defendant and Hall filed responses in opposition.  (Docs. 300, 306).  Oltmann did not file a response, and Hall

represents in her response that she no longer represents Oltmann.  (Doc. 306 at 4 ¶ 11).  After consideration of Plaintiff's motion and all responses, the Court finds that an order for Oltmann and Hall to show cause is warranted.

The Court's Protective Order gives parties a thirty-day window after a transcript copy has been received to make their confidentiality designations.  This window functions much like the Court's sealing procedure which permits records to remain under seal while the Court determines whether the seal should remain.  Similarly, under the Protective Order, while a party may ultimately conclude that none of a deposition should be designated as confidential, the transcript is deemed as such for thirty days after the party receives the transcript or until the designating party has had a chance to complete their review.  Any other reading of the Protective Order would render this provision meaningless.  Therefore, *any* discussion of the content of Plaintiff's deposition testimony during the review period would amount to a violation of the Protective Order.

Here, it is undisputed that Oltmann and Hall each signed an Undertaking.  (Docs. 292-4, 292-5).  It also appears to be undisputed that Plaintiff's counsel informed Oltmann and Hall at the January 27 deposition that he intended to use the thirty-day period provided for in the Protective Order to complete a confidentiality review of the transcript.  (Doc. 292 at 3).  Plaintiff received the deposition transcript on February 10, 2026, so he had until March 12, 2026, to complete his designations.  And it was on March 12, 2026, that Plaintiff served on Defendant those portions of the deposition that he deemed confidential.  As such, Oltmann's and Hall's disclosures prior to March 12 were in violation of the Court's Protective Order.  Plaintiff's Motion to Show Cause is therefore granted to the extent that Oltmann and Hall will be directed to show cause in writing as to why they should not be held in contempt for

8

violating the Court's Protective Order.  Plaintiff's requests for certain sanctions to be imposed based on Oltmann's and Hall's non-compliance is denied.  If the Court finds Oltmann and Hall are in contempt, it will fashion the appropriate sanction at that time.

### III.    Conclusion

Accordingly, it is hereby **ORDERED**:

(1) Plaintiff's Motion for Order to Show Cause (Doc. 292) is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

(2) Joseph Oltmann and Andrea Hall are directed to separately show cause in writing as to why they should not be held in contempt for violating the Court's Protective Order.

(3) Oltmann and Hall are directed to file their responses no later than **June 29, 2026**.

(4) Oltmann's and Hall's responses shall include signed affidavits in which Oltmann and Hall attest to the veracity of their respective responses.

(5) Oltmann's or Hall's failure to comply with the Court's deadline could result in sanctions being entered against them without further notice.

(6) Plaintiff's Motion to Seal under Local Rule 1.11 Pursuant to Court's Stipulated Protective Order (Doc. 293) is **DENIED**.

**ORDERED** in Tampa, Florida, on June 15, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE