## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ERIC COOMER, Ph.D.,
    Plaintiff

v.                                Case No. 8:24-cv-00008-TPB-SPF


PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC.,
    Defendants

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Eric Coomer, Ph.D. (Plaintiff or Dr. Coomer) files this Motion for Partial Summary Judgment, and states as follow:

### I.    SUMMARY OF RELIEF REQUESTED

Plaintiff Eric Coomer, Ph.D., respectfully moves the Court for partial summary judgment pursuant to Federal Rule Civil Procedure 56 on two discrete issues. First, the statements of and concerning Dr. Coomer in the documentary film *The Deep Rig* (the Film) constitute defamation *per se* as a matter of law. Second, Defendant Patrick Byrne (Byrne) cannot establish a genuine issue of material fact to support his affirmative defense of substantial truth.[1] Resolution of these issues will materially narrow the matters to be tried and conserve judicial and party resources.

---

[1] Bryne asserts a substantial truth defense in Defendant Byrne's Answer and Affirmative Defenses to Second Amended Complaint, filed on November 26, 2025. *See* page 10.

## II.    STATEMENT OF MATERIAL FACTS

1.      Dr. Coomer was employed by Dominion Voting Systems, Inc. (Dominion) beginning in 2010 and as the Director of Product Strategy and Security from 2013 until May 14, 2021.  Dominion's headquarters are in Denver, Colorado.  Dominion's Denver office was Dr. Coomer's principal place of employment.  In total, Dr. Coomer worked with election service companies for 16 years.[2]

2.      After initial publicity was done for the Film, it premiered on June 26, 2021, at an event in Phoenix, Arizona.[3]  The stated goal of the Film was to build the membership rolls and raise money for Defendant The America Project.[4]

### A.    Film Introduction.

3.      The Film begins with a plea by Byrne to contribute to Defendant The America Project.[5]  It identifies settling Defendant Steve Lucescu as a producer and co-director.[6]  It states that it is based on *The Deep Rig*, a book written by Byrne and identifies Byrne as a producer.[7]  Byrne also financed the production of the Film.[8]

---

[2] **Exhibit 1**, Declaration of Eric Coomer, ¶ 2 (July 1, 2026).

[3] **Exhibit 2**, *The Deep Rig*, available at
https://caincloud.egnyte.com/dl/MDfQpTdTWRHy/The_Deep_Rig-EC_009134.mov_

[4] **Exhibit 1**, Declaration of Eric Coomer, ¶¶ 11-12, 18-22, 28.

[5] **Exhibit 2** at 0:01-2:14.

[6] *Id.* at 7:38.

[7] *Id.* at 7:55.

[8] **Exhibit 3**, Depo. Tr. Steven Lucescu 23:24-24:19; 34:10-21 (Feb. 18, 2025); *see also* **Exhibit 4** Lucescu Statement (May 15, 2026).

2

4.      Byrne then describes the central thesis of the Film:  that targeted election fraud occurred in key jurisdictions in 2020.  According to Byrne, "You can't do it with widespread election fraud.  You do it with narrow, deep fraud in six cities.  Those six are Las Vegas, Nevada, in Clark County; Phoenix in Maricopa; Milwaukee, Wisconsin; Detroit, Michigan; Philadelphia, Pennsylvania; and Atlanta, Georgia."[9]

5.      Byrne then summarizes how the targeted election fraud occurred.  "So to summarize, all of these states have a common feature.  At some point, election counting was shut down.  At some point there's some big injection of Biden votes and then at the end he comes out winning by a hair.  So as I explained earlier, to steal the nation, you don't really need to cheat across the nation. If you're cheating in those cities, you're flipping those states, which flips the electoral college, which flips the country."[10]

**B.      Film Part I: "Dolphin speakers, white hates, black hats, grey hats, quants, mathematicians, and army of lawyers, a general, and the pajama hadeen."[11]**

6.      Part I of the Film begins with various "cyber security analysts" discussing computer hacking and then segues into a montage about Antifa.[12] Citing revolutions based in Marxist ideology, Retired U.S. Colonel Phil Waldron ties ideological actors with election fraud.  "We found a common link that sort of

---

[9] **Exhibit 2** at 15:32-16:15.

[10] *Id.* at 17:33.

[11] *Id.* at 19:02.

[12] *Id.* at 19:02-23:00.

led us to the elections.  You know, follow the breadcrumbs.  And that brought us to the Open Societies Foundation.  Some of their strategic documents that we saw as far back as 2015 said they were going to commit resources, personnel, and effort into several of what we were looking at as battleground states for the election."[13]

7.     The Film then introduces non-party Joesph Oltmann (Oltmann), who vaguely describes his role in proving election fraud and his model of how it occurred.  "I started reaching out to people who were actually involved in it at a very high level, and had positions in government at a high level, and the more information I fed to them, the more they came back and said listen, can you come to Washington D.C.?  They all asked me a bunch of questions like how did you come up with this model?  I told them about the math, how I actually discounted different values, and every single person that I sat down with validated the information that I was able to create by actually stacking this information on top of each other."[14]

8.     Former General Michael Flynn makes a brief appearance in the Film ostensibly to lend it credibility.[15]  General Flynn does not address specific substantive election fraud claims.  In a related proceeding, General Flynn swore under oath on April 4, 2024, that he was aware of no credible evidence of election rigging by Dominion during the 2020 election.[16]  General Flynn then invoked the

---

[13] *Id.* at 24:48-25:11.

[14] *Id.* at 25:48-26:16.

[15] *Id.* at 26:30.

[16] **Exhibit 5**, *Coomer v. Make Your Life Epic LLC dba Thrivetime Show et. al.*, Case No. 21-cv-

Fifth Amendment and refused to answer follow-up questions on the topic.[17] General Flynn further testified that he had seen no credible evidence that Dr. Coomer played a role in rigging the 2020 presidential election.[18]  None of this information was presented in the Film.

9.      Part I concludes with short interviews of various individuals, including an anonymous cyber security analyst, Matthew Deperno (constitutional attorney), Jesse Binnall (attorney, election fraud specialist) and Joe Flynn.[19]

## C.    Film Part II: "Where is the Evidence?"[20]

10.      Part II begins by speculating about potential forms of voter fraud and then discusses the origin of the "Allied Security" report, election fraud in Antrim County, Michigan, and election challenges used to collect data.[21]

11.      Dr. Coomer makes an appearance at minute 49 of the Film through a video from April 13, 2017, explaining how electronic adjudication works.[22] Adjudication is the process of resolving cast ballots to reflect voter intent. Common reasons that ballots require adjudication include:  write-ins, overvotes, marginal machine-readable mark, having no contest selections marked on the

---

03440-WJM-KAS, Flynn Depo. Tr. at 56:6-8; 60:15-61:6 (Apr. 4, 2024).

[17] *Id.* at 56:12-59:5.

[18] *Id.* at 60:15-19.

[19] **Exhibit 2** at 27:44-29:22.

[20] *Id.* at 29:22.

[21] *Id.* at 29:22-49:10.

[22] *Id.* at 49:10-49:28.

entire ballot, or the ballot being unreadable by a scanner.[23]  These ballots may be

marked for adjudication and then presented to a bi-partisan team to confirm voter

intent.  Dr. Coomer championed transparency in this process by developing a

detailed audit trail of the process.[24]

12.     The Film then reintroduces Joe Oltmann and features a roughly

two-minute segment in which non-party Oltmann recounts overhearing a

conference call he says involved Dr. Coomer:

> I set out to figure out who the Antifa activists were, and so, as the story goes, that's when I discovered Eric Coomer.  So in September of 2020, I set out to infiltrate Antifa.  And I did.  So I met a guy that was a part of Antifa and he said "I've got to figure out a way to get out, but I'm too deep into the process."  So I said, the first thing that could happen is we could dismantle it, and an easy way to dismantle it is to uncover who is running Antifa.  So he got me on a phone call.  They were talking about how they needed to fortify and continue to do the things that they were doing, not just in Colorado Springs, but in Denver and all over Colorado.
>
> And a guy named Eric started speaking, and when Eric started speaking, he started talking again about how they needed to fortify and not give up.  They asked, "Who is Eric?"  Alright, "Who is Eric?"  And somebody came back and said, "Oh, Eric's the Dominion guy."  As he continued to speak, somebody else interrupted him and said, "Hey what are we going to do if Trump wins?"  And he responded, "Don't worry about the election.  Trump's not going to win.  I made fucking sure of it."
>
> So I hung up the phone, started doing research on Eric.  I didn't know Eric was Coomer, I just knew Eric.  I'm kind of a research junky, so I just went through and started gathering information.  Went and

---

[23] *See* U.S. Election Assistance Commission, Glossary of Election Terminology, July 16, 2021 (V 1.1); https://www.eac.gov/sites/default/files/glossary_files/Glossary_of_Election_Terms_EAC.pdf (last visited July 1, 2026).

[24] **Exhibit 1**, Coomer Declaration at ¶¶ 5-8.

6

listened to YouTube videos to make sure that the voice I heard on the call was the same voice to match up to that particular individual.[25]

\* \* \*

November 3, we all know what happened. We all went to sleep with President Trump handily ahead. We woke up the next morning and Biden had won. And nothing to see here. And I'm sitting at my friend's place and I get this text message. It's like Joe, you need to read this article. And as I went through the article, it talked about in Georgia, in several precincts, that the system on election day actually went down. And there was a description inside of the article that said why it went down. That they had to do an update in the middle and that took it down for four hours. But the person who gave the update was Eric Coomer. And at that moment my heart sank. That's when I knew. That's when I knew that there was a, you know, Dominion Voting Systems was in 28 states. That's when I started to realize that, you know, this guy Eric Coomer, when he said on that call "Don't worry about Trump, he's not going to win." That's when I knew that there's a high probability he affected the election.[26]

13.    The Film transitions into another clip of Dr. Coomer demonstrating adjudication.[27] It then returns, this time to Col. Phil Waldron, who states:

We first really started digging into Dominion was when Joe Oltmann's report on Eric Coomer first came out. And some of the comments that he had allegedly made on a teleconference, or a video call. We were approached, our team, a small team in Texas, was approached to look at some of the Antifa and BLM problems that we saw arising early in 2020.[28]

Oltmann then goes into his lengthy explanation about ballot signature verification, imaging of ballots though the "ImageCast system" developed by Dominion, injecting fake or phantom ballots into the scanner, the adjudication process and

---

[25] **Exhibit 2** at 53:01-56:47.

[26] *Id.* at 56:47-57:50.

[27] *Id.* at 57:50-58:30.

[28] *Id.* at 58:30-59:02.

7

the "erasing" of the image of the adjudicated ballot so that "you don't actually have a history of that ballot being replaced in the adjudication process."[29]

14.     Part II of the Films ends with various interviewees discussing election anomalies, election challenges, cheating, and the need to get involved.[30]

**D.     Film Part III:  "You don't need a weatherman to know which way the storm blows."[31]**

15.     Part III begins by featuring Ken Bennet (Arizona Senate Audit Liaison) and Bob Hughes (President—Marketing Resources).[32]  It then transitions to Gen. Flynn's brother, Joe Flynn, who discusses the January 6 protestors and promises there would have been prosecutions relating to the 2020 election on a massive scale "if the FBI actually cared about getting to the truth."[33]  Gen. Flynn returns to criticize the judiciary and eventually vouches for the legitimacy of the election fraud narrative.  "This is not fake news.  This is reality.  We cannot fake the American people out and lie to the American people about what the reality is. And the reality is that they were lied to. That this system is totally broken. The United States of America election system broke down."[34]

---

[29] *Id.* at 1:01:13-1:04:25.

[30] *Id.* at 1:04:25-1:18:32.

[31] *Id.* at 1:18:32.

[32] *Id.* at 1:19:50-1:22:25.

[33] *Id.* at 1:22:25-1:30:40.

[34] *Id.* at 1:34:16.

8

16.    Following another appearance by Byrne, the Film concludes with an Epilogue about the 2020 election being "riddled with fraud" that "resulted in a stolen election" and a lengthy call to action.[35]

**E.    Byrne's Position and Sworn Testimony.**

17.    When asked at his deposition whether he had any evidence that Dr. Coomer rigged the 2020 presidential election, Byrne testified "Eric Coomer is part of a criminal conspiracy" involving "a whole bunch of dirty people" at Dominion, in Venezuela, and Serbia.[36]  According to Byrne, this conspiracy also involves the CIA, China, Iran, and Cuba.[37]  Dr. Coomer's role in this conspiracy is unclear except as it relates to adjudication, which was highlighted in the Film.  On this point, Bryne testified that there was some "real loosey-gooseyness" in the adjudication process and that Dominion voting machines were capable of "mass adjudication."[38]    This information was supposedly provided to Byrne by anonymous Venezuelan defectors known as Mr. Pink, Mr. White, and Mr. Green (apparently among other colors) who Byrne has sheltered in a self-funded witness protection program in the United States.[39]

18.    As to the "Antifa call" story in the Film, Byrne did not independently verify Oltmann's story but is very confident that the "gist of the story" is true which

---

[35] *Id.* at 1:39:30-145:35.

[36] **Exhibit 6**, Byrne Depo Tr. at 247:18-248:8 (Dec. 15, 2025).

[37] *Id.* at 127:4-132:16.

[38] *Id.* at 171:6-173:25.

[39] *Id.* at 173:7-173:25; 235:20-236:12; 241:7-9.

9

he describes as follows: "Your client [Dr. Coomer] directed Venezuelan developers to develop software that could rig the election."[40]  This, according to Byrne, makes Dr. Coomer a "traitor."[41]

19.    When asked similar questions by interrogatory, Byrne took a different position.  There he disagreed with the premise of a question asking for proof that Dr. Coomer rigged the 2020 presidential election.[42]  Instead, he averred "that he has never stated that Coomer 'manipulated, altered, or otherwise interfered with the 2020 presidential election results.' "[43]  Bryne also claimed he "did not publish any statements to that effect."[44]

**E.    Dr. Coomer's Sworn Testimony.**

20.    Dr. Coomer worked in elections for 16 years until 2021.[45]

21.    In 2013, he took over as the Director of Product Strategy at Dominion, focusing on the creation of next generation products through close collaboration with customers, and utilizing an understanding of technology and the needs of elections departments across the United States and around the world.  Shortly after elections were deemed critical infrastructure, his role was expended to encompass a "Security" focus as a liaison between Dominion and various groups

---

[40] *Id.* at 175:18-180:7.

[41] *Id.* at 180:3-7.

[42] **Exhibit 10**, Defendant Patrick Byrne's First Supplemental Responses and Objections to Plaintiff's First Set of Written Discovery at 8 (Sept. 11, 2024).

[43] *Id.*

[44] *Id.*

[45] **Exhibit 1**, Coomer Declaration at ¶ 2.

10

(certification, specifications) focusing on the overall security of voting systems under the critical infrastructure umbrella. Dr. Coomer was an active participant in the development of the Institute of Electrical and Electronics Engineers (IEEE) common data format for elections systems, as well as the working group for developing standards for risk-limiting audits for election results. In 2018, he was invited to join the Cyber Security Task Force assembled by the National Association of Secretaries of State.[46]

22. Dr. Coomer one of the inventors named on different patents owned by Dominion. Vote adjudication is an essential aspect of all voting systems and electoral administration departments and has been around for several decades. Dr. Coomer's patent relates to a digital based adjudication system, which he helped to design. Before this system, adjudications of voter intent issues with the Dominion System required teams to completely remake the paper ballots to rescan for final tallies. This presented several issues in terms of both chain of custody and potential human-induced errors, while also lacking a durable log of all adjudications made. By moving to a digital system, several problems were solved. The original physical ballots would not need to be "handled," meaning they could remain in the sealed ballot boxes as the official records. Teams no longer had to remark all other contests on a new ballot duplicate ballot, meaning they could apply the voter intent issues only to the specific choice or contest flagged. The system also appended a digital text-based image to the ballot image showing all

---

[46] *Id.* at ¶ 4.

11

adjudications the independent teams made, along with a time stamp and identifying information for the team that made the adjudications. Both the pre- and post-adjudication records were retained and provided various reports to compare all of the adjudications, along with statistics on how many ballots had adjudications and which contests were adjudicated. Finally, the original ballot images were retained, which allowed for "re-adjudicating" any voter intent during a recount, truly preserving a full recount of the process of tabulating ballots. Pre- and post-images of the ballots showing the adjudications made in the text-based record while not modifying the original scan, or the original ballot, provided independence and verification for third parties to evaluate how an elections office applied voter intent statutes in their respective states. All these enhancements significantly increased the auditability and transparency involved in applying state laws regarding ballot adjudication.[47]

23.     Despite conspiratorial claims to the contrary made in the Film, Dominion voting machines are not capable of performing "bulk adjudication." In other words, the Dominion platform only allowed for one ballot to be adjudicated at a time at each adjudication station. A user of Dominion's technology could not adjudicate multiple ballots simultaneously even if they wanted to, and in every instance adjudicated ballots retain a durable auditable log of all changes made.[48]

---

[47] *Id.* at ¶ 5.

[48] *Id.* at ¶ 6.

12

24.    One of the main premises of the Film was that ideological actors such as Dr. Coomer were willing to commit election fraud to insure a particular result in the election.  Oltmann was quoted extensively about Dr. Coomer's alleged participation in a conference call where Dr. Coomer allegedly confessed to rigging the 2020 presidential election by making certain that Trump was not going to win. Dr. Coomer denies he was on any such call, if it occurred.  Dr. Coomer denies he was a "member" of Antifa or any specific political organization.  He further denies having any knowledge, role, or involvement in manipulating, altering, or creating fraudulent ballots or records during the 2020 election or any prior election. [49]

25.    The allegations about Dr. Coomer in the Film were antithetical to his professional role at Dominion and destroyed his ability to work in elections and his professional reputation.  In the aftermath of the Film's release, Dr. Coomer continued to experience threats and harassment to the point that he made the decision in or about October 2024 to reside outside of the country for his own personal safety.[50]

F.    **Post-Film Statement by Steve Lucescu.**

26.    Defendant Lucescu, co-producer of the Film, has now executed a written retraction and apology for his role in the Film.[51]  In it, Lucescu confirms that "Oltmann has never produced any evidence beyond his sworn statement[52]

---

[49] *Id.* at ¶ 34.

[50] *Id.* at ¶ 34.

[51] **Exhibit 4**.

[52] *Id.* This is a reference to an affidavit signed by Oltmann and used in one of Sidney Powell's

13

that Dr. Coomer interfered with Dominion voting machines or voting software, or that Dr. Coomer claimed to have done so," and that "Oltmann has [never] produced any evidence beyond his sworn statement that Dr. Coomer participated in a conversation with members of Antifa."  Lucescu has further acknowledged that "[t]he film featured claims that neither I nor anyone to my knowledge vetted for truth or accuracy, including the claims about Eric Coomer made by Joe Oltmann."

### III.   LEGAL STANDARD

27.   Generally, summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

28.   Speculative or conclusory evidence does not constitute competent summary judgment evidence.  *See TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255,

---

"Kraken" lawsuits.

14

1263 (11th Cir. 2023) (finding speculative evidence insufficient to create genuine issue of fact regarding plaintiff's injury).

## IV.    ARGUMENT

### A.    The statements about Dr. Coomer in *The Deep Rig* are defamation *per se* as a matter of law.

29.    "Defamation claims can be proven in either of the following ways: (1) defamation *per quod*, which 'requires an additional explanation of, or an interpretation of innuendo suggested by the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement[,]' or (2) defamation *per se*, which 'does not require any additional explanation in order to prove the defamatory nature of the statement.' *Block v. Matesic*, 789 F.Supp.3d 1131, 1154-55 (S.D. Fla. 2025), *appeal dismissed*, No. 25-12540, 2026 WL 810430 (11th Cir. Mar. 24, 2026) (citing *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259 (S.D. Fla. 2021) (quoting *Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013)).

30.    Florida affords "high protection of personal reputation." *Doe v. Finkleman*, 429 So.3d 456, 466 (Fla. 4th DCA 2025), *reh'g denied* (Feb. 9, 2026). A publication is libelous *per se*, or actionable *per se*, if, when considered alone without innuendo: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession.[53] *Id.*; *see also Block,* 789 F.Supp.3d at 1155, *citing Richard*

---

[53] Florida law is substantially the same as Colorado law.  Under Colorado law, a statement is

15

*v. Gray,* 62 So. 2d 597, 598 (Fla. 1953). When determining whether a published statement constitutes libel *per se,* an arbiter of fact may consider only the four corners of the publication. The language of the document should not be interpreted in the extreme but construed as the "common mind" would naturally understand it. In cases of defamation *per se,* "liability itself creates a conclusive legal presumption of loss or damage and is alone sufficient for the jury to consider punitive damages. *Id.* (internal citations omitted).

31. In *per quod* actions," by contrast, "the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo." *Id.* (citing *Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013)). In other words, if a statement "requires explanation of context" for it to be defamatory, it may qualify as defamation *per quod,* even if it isn't defamation *per se. Id. (*citing *Daniels v. HSN, Inc.*, No. 818CV3088T24JSS, 2020 WL 533927, at *4 (M.D. Fla. Feb. 3, 2020) (cleaned up). Because "defamation *per quod* 'requires additional explanation of the words used to show that they have a defamatory meaning, . . . the plaintiff must allege and prove special damages.' " *Id.* (citing *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. 5th DCA 1999) and *Frey v. Minter*, 829 Fed. Appx. 432, 434 (11th Cir. 2020) (noting that Florida law "require[s] proof of special damages for a plaintiff to sustain a claim of defamation *per quod*")).

---

defamatory *per se* if it (i) imputes a criminal offense, (ii) imputes a loathsome disease, (iii) injures the plaintiff in his or her trade, business, or profession, or (iv) imputes serious sexual misconduct. *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004).

16

32.    The relevant factual context from the "four corners" of the Film is as follows:

1.    The 2020 election was rigged in key battleground jurisdictions.
2.    Ideological actors were the ones committing the fraud.
3.    Among these, Antifa is a particularly dangerous ideological actor.
4.    Dr. Coomer was heavily involved in the adjudication function while at Dominion.
5.    Dr. Coomer publicly admitted to being "Antifa."
6.    Dr. Coomer publicly admitted to ensuring Trump would not win the election.
7.    Trump was winning the 2020 election on election night, but then inexplicably lost.
8.    The election system went down in Georgia requiring a mid-election update.
9.    Dr. Coomer performed the Georgia mid-election update.
10.    Dominion was in 28 states in the 2020 election.
11.    There is a high probability that Dr. Coomer used his position at Dominion to affect the election to ensure President Trump did not win.
11.    Per Oltmann, after referencing Dr. Coomer's background, it is possible to inject fraudulent ballots into vote through the adjudication system, erasing ballots, and replacing ballots.

33.    There is no explanation of context or explanation of the words used that needed to show this narrative has a defamatory meaning. The words themselves are inherently injurious. The Film alleged Dr. Coomer confessed to and committed an "infamous crime." *See generally,* 18 U.S.C. §§ 241, 242; 52 U.S.C. §§ 10307, 20511. The claim of rigging a federal presidential election tends to subject him to hatred, distrust, ridicule, contempt, or disgrace. This has been borne out by the countless attacks and ridicule Dr. Coomer has received since

17

the Film's premier on June 26, 2021.  Finally, and perhaps most directly, alleging (without evidence) that the former Director of Product Strategy for Dominion Voting Systems participated in election fraud through his role at the company would tend to injure one in his trade or profession.  And, indeed, Dr. Coomer can no longer work in elections.

34.    Whether a statement is defamatory *per se* is a question of law for the Court.  *See Utterback v. Morris*, No. 24-12947, 2025 WL 1455900 at *4 (11th Cir. May 21, 2025) (defamation by implication is a question of law for the court to determine).  The statements here are not susceptible to any innocent construction: they accuse Dr. Coomer of orchestrating the most serious crime imaginable in a constitutional democracy—the deliberate corruption of a presidential election.  No reasonable juror could conclude that imputing such conduct fails to harm reputation, impute criminality, or disparage professional standing.  Accordingly, the Court should enter partial summary judgment that the statements about Dr. Coomer in *The Deep Rig* are defamatory *per se* as a matter of law.

**B.    Defendants cannot establish a genuine issue of material fact on their affirmative defense of substantial truth.**

35.    "True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment."  *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).  The "substantial truth doctrine" states that "a statement does not have to be perfectly accurate" to avoid being defamatory "if the 'gist' or the 'sting' of the

18

statement is true." *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1234 (Fla. 3d DCA 2021); *Kiefer v. Atheists of Fla., Inc.*, 269 So.3d 656, 661 (Fla. 2d DCA 2019).[54]  In determining whether a statement is substantially true, the statement in question must be read in full context of its publication.  *Id.* at 659.  Everyone who takes part in the publication of defamatory content, including publishers and distributors, is charged with its publication.  *Doe v. Am. Online, Inc.*, 783 So.2d 1010, 1017 (Fla. 2001).

36.    To survive summary judgment, Byrne must come forward with admissible evidence from which a reasonable juror could conclude that the "gist" or "sting" of the challenged statements in the Film are true.  In this context, the "gist" or "sting" of the Film is that (i) Dr. Coomer was motivated by ideology and confessed to rigging the 2020 presidential election to his ideological group; and (ii) there was, at a minimum, a high probability that Dr. Coomer affected the election results against President Trump by using his position at Dominion and technology he helped develop.  There is no credible, non-speculative evidence supporting those propositions.

37.    First, Dr. Coomer has expressly denied under oath being a part of any ideological group, including "Antifa."  Plaintiff has denied under oath being part of any call where he confessed that he had made sure President Trump would not win the 2020 election.  Dr. Coomer has denied under oath having any knowledge,

---

[54] Colorado courts have a substantially similar rule.  *See Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004) ("Truth is a complete defense to defamation.  However, absolute truth is not required; instead, a defendant need only show substantial truth, that is, 'the substance, the gist, the sting of the matter is true.'").

19

role, or involvement in manipulating, altering, or creating fraudulent ballots or records during the 2020 election or any prior election.  Ironically, part of Dr. Coomer's role at Dominion was to make the adjudication process *more* transparent and auditable.  Dr. Coomer was also instrumental in Dominion's involvement in the coordinated vulnerability disclosure program after election infrastructure used in federal elections were designated part of the nation's critical infrastructure by the Department of Homeland Security in 2017.[55]  The allegations in the Film could not be more injurious and more false.

38.    Second, settling Defendant Lucescu—a co-producer of the Film—has acknowledged in writing that Oltmann "has never produced any evidence beyond his sworn statement that Dr. Coomer interfered with Dominion voting machines or voting software, or that Dr. Coomer claimed to have done so," and that there is no evidence Dr. Coomer "participated in a conversation with members of Antifa." Lucescu further conceded that the Film's claims were not "vetted for truth or accuracy."[56]

39.    Third, Defendants' own pre-publication files contain materials affirmatively disproving the allegations.  Lucescu, in the months before release, gathered fact-checks, debunkings, and a copy of Dr. Coomer's December 9, 2020

---

[55] **Exhibit 1**, Coomer Declaration at ¶ 8.

[56] **Exhibit 4**.

20

*Denver Post* op-ed denying any involvement.[57]   Defendants thus possessed contemporaneous knowledge that the assertions about Dr. Coomer were false.

40.   Fourth, Byrne's discovery responses are devoid of any evidence supporting truth.   Byrne has produced no documents or communications regarding any investigation of Oltmann's allegations and conceding (by acknowledging the rule) that a "failure to investigate does not mean actual malice"—a position that, while irrelevant to malice for present purposes, confirms the absence of any factual basis to support truth.[58]

41.   Fifth, multiple federal courts have already evaluated identical or materially indistinguishable assertions and concluded that they are "so 'inherently improbable that only a reckless man would believe' them." *See U.S. Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 34 (D.D.C. 2022); *see also U.S. Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 63 (D.D.C. 2021).  *See also Coomer v. Make Your Life Epic LLC*, 659 F.Supp.3d 1189, 1204 (D. Colo. 2023) ("evidence tend[s] to show not only that the election fraud as alleged by Oltmann was technically impossible, but also that the claim of Dr. Coomer's involvement in the September conference call was supported by fabricated evidence."); *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 165, 552 P.3d 562, 594 (Colo.

---

[57] *See, e.g.*, **Exhibit 7**, Lucescu email to self, containing link to Coomer op-ed denying claims (Dec. 9, 2020); **Exhibit 8**, Lucescu email to self, containing link to Newsmax retraction of claims about Dominion (May 2, 2021); **Exhibit 9**, Lucescu email to self, containing link to story about Dr. Coomer's first lawsuit, Coomer v. Donald J. Trump for President, Inc., published on December 23, 2020 (Sept. 28, 2021).

[58] **Exhibit 10**, Defendant Patrick Byrne's First Supplemental Responses and Objections to Plaintiff's First Set of Written Discovery, p. 10 (Sept. 11, 2024).

App. 2024) ("Other than Coomer's role with Dominion, defendants offered no information as to *how* they believed Coomer had personally manipulated the election results.  Nor do they even attempt to defend such a belief on appeal.").

42.     Sixth, there is no admissible corroborating evidence of the alleged "Antifa conference call."  Oltmann's account rests exclusively on his own allegations, uncorroborated by any identified participant, recording, telephone record, transcript, or third-party witness.  A defense of substantial truth cannot be built on the very unsupported assertion the Film republished.

43.     Seventh, there is no admissible evidence that Dr. Coomer actually utilized his position at Dominion to alter any election ballot or commit election fraud of any type.

44.     On this record, no reasonable juror could conclude that the "gist" of the statements—that Dr. Coomer is a criminal who rigged the 2020 presidential election in coordination with Antifa—is substantially true.

### V.     CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiff Eric Coomer, Ph.D. respectfully requests that the Court enter partial summary judgment: (1) declaring that the statements about Dr. Coomer in *The Deep Rig* are defamatory *per se* as a matter of law; and (2) striking Defendants' affirmative defense of substantial truth on the ground that no genuine issue of material fact exists for trial.  Plaintiff further requests such other and further relief, both general and special, to which he may be justly entitled.

22

Respectfully submitted this 1st day of July 2026.

*/s/ Charles J. Cain*

Charles J. Cain, CO Atty No. 51020*
ccain@cstrial.com
Bradley A. Kloewer, CO Atty No. 50565*
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011
512-477-5011 (Fax)
*Appearing via Special Admission

Ashley N. Morgan*
Texas Bar No. 24091339
Colorado Attorney No. 61713
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)
*Appearing via Special Admission
**ATTORNEYS FOR PLAINTIFF**

23