IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:24-cv-00008-TPB-SPF

ERIC COOMER,

Plaintiff,

v.

PATRICK BYRNE, STEVE LUCESCU, and THE AMERICA PROJECT INC.,

Defendants.
_______________________/

**PATRICK BYRNE'S MOTION FOR SUMMARY JUDGMENT**

The Defendant, Patrick Byrne, by and through his undersigned counsel, hereby files this his Motion for Summary Judgment, and in support thereof states:

**Introduction**

This is a defamation case about a statement Dr. Byrne did not make. The single accusation at the heart of the Plaintiff, Eric Coomer, Ph.D.'s ("Dr. Coomer") claim, that Joseph Oltmann joined a so-called "Antifa conference call" and boasted that he had "made sure" the 2020 election would not go to one candidate, was conceived and spoken by Mr. Oltmann, an "ear-witness," not by Dr. Byrne. Dr. Coomer admits it. He testified that the statements he complains of were "mostly stated by Joe Oltmann, that I rigged the election." Coomer Dep. 35:24-36:01. His only theory against Dr. Byrne is that Dr. Byrne "bankrolled" the film, and, in his

own words, whether that creates liability is "a question of law, which I'm not able to answer." Coomer Dep. 47:11-17.

The undisputed record defeats that theory several times over. Mr. Oltmann first leveled his accusation in the days after the November 2020 election, months before the film *The Deep Rig* existed. Dr. Byrne did not write, select, edit, or control the challenged statement; a non-party director chose every frame of the film's content; and neither the film nor the book Dr. Byrne authored mentions Dr. Coomer at all. Dr. Coomer is a limited-purpose public figure who cannot show, by clear and convincing evidence, that Dr. Byrne published any statement about him knowing it was false or with serious doubts about its truth. He cannot prove that Dr. Byrne made a provably false statement of fact about him, and he cannot isolate any harm caused by Dr. Byrne as distinct from the many other speakers he has sued and, in one case, already collected from. The Court should grant summary judgment for Dr. Byrne or, at a minimum, enter partial summary judgment narrowing this case.

## **Background**

This case asks the Court to hold one man responsible for another man's words as to what that man overheard. The accusation that gives rise to Dr. Coomer's claim originated with Joseph Oltmann, who first broadcast it in the days after the November 2020 election, long before the film. SAC ¶¶ 93-103. Dr. Coomer knows it; he testified that the statements he complains of were "mostly stated by Joe Oltmann, that I rigged the election." Coomer Dep. 35:24-36:01.

Dr. Byrne's connection to those words is that he wrote a check to help finance the documentary *The Deep Rig*, which premiered on June 26, 2021, and in which Mr. Oltmann appeared as one of many speakers. SAC ¶ 78. Dr. Byrne testified that he had no input on the film's content and that his involvement was "extremely hands off." Byrne Dep. 38:16-18; 69:10-11. He did not select Mr. Oltmann and learned that Mr. Oltmann would be featured only when he "showed up in Phoenix." Byrne Dep. 167:04-07. The film's director, Roger Richards, a non-party, decided what the film said and chose the clip of Dr. Coomer. Lucescu Dep. 56:17-20; 146:18. Dr. Coomer will point to Dr. Byrne's funding, a contractual approval right, and the producer's impression that Dr. Byrne "had the ultimate say." As shown below, those facts do not make Dr. Byrne the author or publisher of Mr. Oltmann's specific accusation. The only proper party to sue is non-party Roger Richards, however Richards would have prevailed with an affirmative truth defense at trial.

Dr. Coomer is not a bystander to the controversy he now litigates. He was Dominion's senior Director of Product Strategy and Security and a co-inventor on Dominion voting-system patents, and he voluntarily entered the public debate over the 2020 election. He is a registered Democrat who publicly opposed Mr. Trump, he authored an op-ed in the Denver Post and gave media interviews, and he broadcast an "Antifa" post to roughly 300 of his contacts. Coomer Dep. 36:23-24; 52:20; 53:10-13; 206:18-209:06; Pl. Resp. to Def. 2d Req. for Admis. Nos. 3-4. He has pressed the same accusation against many speakers in at least five lawsuits, and he has already obtained a multimillion-dollar jury award from one of them.



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

Coomer Dep. 38:17-39:01; 33:06-10. In this case, the defense attorney failed to present an affirmative truth defense, and objected to confusing jury instructions that are now the subject of an appeal. Most importantly, the jury listened to Mr. Oltmann testify about the same movie, and same allegations, and returned a jury verdict form indicating Mr. Oltmann is credible, and found no defamation. *See Eric Coomer v. Michael Lindell et al.,* Case No.1:22-cv-01129, District of Colorado, Docket Nos. 371, 375.

Lastly, Coomer and others have drummed the same narrative for six years that the 2020 election was the most safe and secure in history, that the equipment is not connected to the internet, and that claims that foreign involvement took place are ridiculous and absurd. Coomer doubled down on these lies in June of 2022, and falsely stated, in order to indict a United States President, that he could not have rigged the 2020 election for two reasons. He testified that it was impossible because he did not have access, nor did he have the technical capability. Coomer has now recanted these statements in the deposition he took in this case. Coomer solidified Byrne's affirmative truth defense with his own testimony on January 27, 2026. Coomer admitted to having remote access to the unofficial tally prior to certification, and he spent the majority of the day bragging about his technical capability.

## **Statement of Undisputed Material Facts**

Pursuant to Federal Rule of Civil Procedure 56 and the Court's Case Management and Scheduling Order, Dr. Byrne submits the following statement of



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

material facts as to which there is no genuine issue to be tried.

1. Dr. Coomer was the senior Director of Product Strategy and Security of Dominion Voting Systems, Inc. during the 2020 presidential election. SAC ¶ 17; Coomer Dep. 36:23-24.

2. Dr. Coomer's claims arise from the 2021 documentary film The Deep Rig (the "Film"), which premiered on June 26, 2021, and from related public commentary about the 2020 election. SAC ¶¶ 1-3, 78.

3. The central accusation underlying the claim, that Dr. Coomer joined a purported "Antifa" conference call and stated that he had "made sure" of the election outcome, is attributed to Joseph Oltmann, who first made it in the days after the November 2020 election. SAC ¶¶ 93, 101, 103. Specifically, Dr. Coomer alleges that Mr. Oltmann falsely stated:

> They had to do an update [of Dominion software] in the middle [of election day] and that took it down for four hours. But the person who gave the update was Eric Coomer. And at that moment my heart sank. That's when I knew. That's when I knew that there was a, you know, Dominion Voting Systems was in 28 states. That's when I started to realize that, you know, this guy Eric Coomer, when he said on that call 'Don't worry about Trump, he's not going to win.' That's when I realized that there's a high probability he affected the election. (Emphasis added.) [DE 197 ¶ 3].

4. Dr. Coomer testified that the opinion statements he complains of in the Film were "mostly stated by Joe Oltmann, that I rigged the election." Coomer Dep. 35:24-36:01.

5. Dr. Coomer testified that his theory of Dr. Byrne's responsibility is



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

that Dr. Byrne "bankrolled" the Film, and that whether that creates liability is "a question of law, which I'm not able to answer." Coomer Dep. 47:11-17.

6. Dr. Coomer did not identify any defamatory statement that Dr. Byrne personally made or published. Coomer Dep. 47:06-17.

7. Dr. Byrne's role in the Film was that of a funder; asked whether he had "input on the content of the film," he testified, "No. Not at all," and that his involvement was "extremely hands off." Byrne Dep. 38:16-18; 69:10-11.

8. Dr. Byrne did not select Mr. Oltmann to appear in the Film; he became aware that Mr. Oltmann would be featured only when he "showed up in Phoenix." Byrne Dep. 167:04-07.

9. The Film does not name Dr. Coomer, and the book Dr. Byrne authored, *The Deep Rig*, does not mention Dr. Coomer. Byrne Dep. 41:24-42:02.

10. Dr. Byrne's own commentary in the Film addressed the features of voting equipment in general terms, and named no one; he stated, "We had been going through the operating manuals of these equipment companies and saw these crazy facts." SAC ¶ 80.

11. The Film's director, Roger Richards, made the ultimate decisions about its content; asked "[w]ho was making the ultimate decision on what content to include in the final version of the film," the producer testified, "Roger. It was his job to edit it." Lucescu Dep. 56:17-20.

12. The clip of Dr. Coomer was included by the director, not Dr. Byrne; the producer testified, "Roger put it in." Lucescu Dep. 146:18.



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

13. The America Project, Inc. ("TAP") did not produce or control the Film's content; its Rule 30(b)(6) witness testified, "Nobody at TAP was responsible for any content in The Deep Rig," and that TAP "had nothing to do with the production of the film, end to end." Johnson Dep. 102:24-25; 103:09-10.

14. The producer testified that Dr. Byrne's involvement in the editing process was limited and came later, and that any "ultimate say" the producer perceived followed from Dr. Byrne's funding of the project rather than from control of any specific statement. Lucescu Dep. 56:21-25; 71:20-23.

15. Dr. Coomer held senior product-and-security positions at Dominion, including Chief Software Architect and Senior Vice President for Software and Development, and is a co-inventor on Dominion voting-system patents, including patents relating to ballot adjudication. Coomer Dep. 36:23-24; 109:07-09; 234:06-22.

16. Dr. Coomer had role-based access to central-server user interfaces, internal testing environments, and audit logs. Coomer Dep. 72:03-08; 132:12-17.

17. Dr. Coomer has given inconsistent sworn testimony about his access and technical capability. In testimony on June 14, 2022, asked whether he "rig[ged] the 2020 election," he answered, "No, I didn't, nor would I have been able to," stating that he did "not have the access" and lacked the "technical capability" to "compromise all of the security and processes ... needed to affect an election." Coomer Testimony, June 14, 2022, 43:5-17. In his January 27, 2026 deposition, Dr. Coomer testified that he did have access to the tally prior to certification, that



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

he "ran a development group ... about three years in Denver" that developed "the Digital Adjudication System, ... a true integral part of the Dominion Democracy Suite product," that he "did some code for various Sequoia Voting System products," that he integrated into the Dominion products when Dominion acquired Sequoia, and that he served as a "liaison between market demands" for a "multinational company with offices in Serbia and Canada." Coomer Dep. 48:14-20; 49:2-5; 42:5-6; 55:7-10; 55:22-25; 137:12-14.

18. Dr. Coomer is a registered Democrat who testified that he does "not like [Mr. Trump's] policies or who he is as a person." Coomer Dep. 52:20; 53:10-13.

19. Dr. Coomer broadcast an "Antifa" post to roughly 300 of his social-media contacts and testified that he agreed with parts of it, including the statement that Mr. Trump was "threatening to unleash the military." Coomer Dep. 206:18-209:06.

20. Dr. Coomer authored an op-ed published in the Denver Post and was interviewed by the media before May 14, 2021. Pl. Resp. to Def. 2d Req. for Admis. Nos. 3-4.

21. Dr. Coomer denies participating in any "Antifa" call or rigging the election. Coomer Dep. 36:15; 198:06-09.

22. Dr. Byrne testified that he believed Mr. Oltmann and that he was "highly confident that the gist of the story is true." Byrne Dep. 179:19-25.

23. Dr. Byrne testified that Dr. Coomer "didn't really figure in my mind"

and was "a very incidental thing" at the time of the Film. Byrne Dep. 59:18; 61:24.

24. Dr. Coomer has asserted the same 2020-election accusation against multiple speakers in at least five lawsuits, and he has obtained a $2.3 million jury award against another speaker, which he testified he has "not ... collected." Coomer Dep. 38:17-39:01; 33:06-10.

25. Dr. Coomer testified that, as of his deposition, his damages had not been finalized or quantified. Coomer Dep. 89:19-23.

26. This action was filed on June 24, 2022 in the District of Colorado and was later transferred to this Court. SAC; Order [DE307] at 2.

## **Legal Standard**

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may carry its burden by showing the absence of evidence to support an essential element on which the nonmovant bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmovant must then come forward with specific, admissible evidence establishing a genuine issue for trial; a scintilla of evidence, speculation, or argument will not suffice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Where the nonmovant bears a clear-and-convincing burden, as on actual malice, the Court asks whether a reasonable jury could find that burden met on the summary-judgment record. Id. at 254-55.

In a case governed by the actual-malice standard, summary judgment performs an especially important function: it ensures that a public-figure



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

defamation claim does not proceed to trial unless the plaintiff has produced evidence from which a reasonable jury could find, with convincing clarity, actual malice. *Anderson*, 477 U.S. at 256-57.

To prevail, Dr. Coomer must establish, among other elements, a false and defamatory statement of fact concerning him; publication of that statement by this Defendant; and fault amounting to actual malice, because he sues over speech on a matter of public concern. *Keohane*, 882 P.2d at 1298-99; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). The record defeats several of these elements independently: Dr. Byrne did not publish the accusation; his own statements are not of and concerning Dr. Coomer; there is no clear and convincing evidence of actual malice; and Dr. Coomer cannot prove material falsity. Judgment for Dr. Byrne is warranted on any one of these grounds, and the derivative claims fail with the defamation claim.

## Argument

### Dr. Coomer Cannot Hold Dr. Byrne Liable for a Statement He Did Not Make, Author, Publish, Adopt, or Control

Publication is the first element of a defamation claim, and it requires that the defendant communicate, or cause the communication of, the specific defamatory statement. *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994). Dr. Coomer cannot satisfy that element as to Dr. Byrne. He conceded that the accusation he sues over was "mostly stated by Joe Oltmann," Coomer Dep. 35:24-36:01, that Dr. Byrne's role was to have "bankrolled" the Film, and that whether



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

bankrolling creates liability is "a question of law, which I'm not able to answer." Coomer Dep. 47:11-17. He identified no statement Dr. Byrne personally made. Coomer Dep. 47:06-17.

The undisputed testimony is that Dr. Byrne did not create the Film's content. He had no "input on the content of the film," Byrne Dep. 38:16-18, his involvement was "extremely hands off," Byrne Dep. 69:10-11, and he did not select Mr. Oltmann. Byrne Dep. 167:04-07. The producer was asked, "Who was making the ultimate decision on what content to include in the final version of the film?" He answered: "Roger. It was his job to edit it." Lucescu Dep. 56:17-20. Mr. Richards, not Dr. Byrne, chose the clip of Dr. Coomer: "Roger put it in." Lucescu Dep. 146:18. And The America Project, the entity Dr. Byrne helped, had "nothing to do with the production of the film, end to end." Johnson Dep. 103:09-10.

Dr. Coomer will emphasize that Dr. Byrne funded the Film, held a contractual approval right, sent the producer comments, and, in the producer's impression, "had the ultimate say." Byrne Dep. 28:01-04; 73:17-22; Lucescu Dep. 71:20-23. Those facts do not create a triable issue on publication. The producer tied the "ultimate say" to the fact that "Patrick funded the project," Lucescu Dep. 71:20-23, and a financial or approval interest is not authorship or control of a third party's specific statement. Dr. Byrne's comments concerned the Film's opening montage and were, in his words, "a shared effort," not a direction to include Mr. Oltmann's accusation. Byrne Dep. 73:17-22. That the producer also said Dr. Byrne "did take over some responsibility" for the editing process at a later stage, Lucescu

Dep. 56:21-25, does not change the result, because the record connects no such involvement to Mr. Oltmann's accusation or to the clip of Dr. Coomer, both of which the same witness attributed to the director. A defendant who funds a documentary, without more, is not the publisher of every statement a third party makes in it.

Even one who distributes or republishes another's work is not liable as a publisher unless he knew or had reason to know of the defamatory content and adopted or controlled it. Restatement (Second) of Torts §§ 578, 581 (1977). A mere financier stands further still from the words: he does not make them at all. Adoption or ratification requires an affirmative step to embrace a third party's specific statement as one's own, and the record shows no such step as to the "Antifa call" accusation. That the Film credits Dr. Byrne in connection with the book he wrote does not change the analysis: the book "doesn't mention Eric Coomer at all," Byrne Dep. 41:24-42:02, and a credit is not the publication of Mr. Oltmann's spoken words. Because civil conspiracy is derivative of the underlying tort, it fails with the defamation claim for the same reason.

**Dr. Byrne's Own Statements Are Not of and Concerning Dr. Coomer**

Dr. Coomer's theory of Dr. Byrne's personal liability is not that Dr. Byrne repeated Mr. Oltmann's accusation, but that Dr. Byrne's own commentary "impliedly" defamed him. SAC ¶ 80. That theory fails because the statements Dr. Byrne made name no one. The Film does not name Dr. Coomer, and Dr. Byrne's book does not mention him. Byrne Dep. 41:24-42:02. Dr. Byrne's commentary



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

described the features of voting equipment in general terms: "We had been going through the operating manuals of these equipment companies and saw these crazy facts." SAC ¶ 80. A statement that does not identify the plaintiff is not "of and concerning" him and is not actionable as to him, *New York Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964), and an implication that a viewer could draw only by supplying outside knowledge, here, that Dr. Coomer helped patent an adjudication feature, is not a statement "of and concerning" him. A general critique of voting-machine software is not an assertion of fact about the individual engineer who worked on it.

Because Dr. Coomer's theory rests on implication rather than on any statement that names him, it faces a further, independent barrier. A claim for defamation by implication requires more than a strained inference; the challenged speech must "affirmatively suggest that the author intends or endorses the inference." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993); see *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305 (11th Cir. 2001). That requirement protects a speaker of true or general statements from liability for every unintended inference a listener might draw. The record forecloses any such intent here. Dr. Byrne spoke of voting equipment in general terms, named no one, and testified that Dr. Coomer "didn't really figure in my mind" and was "a very incidental thing" at the time of the Film. Byrne Dep. 59:18; 61:24. A speaker who did not have the plaintiff in mind cannot have intended or endorsed a defamatory implication about him.

The breadth of Dr. Coomer's theory is its undoing. He does not contend that Dr. Byrne wrote or spoke the "Antifa call" line; he contends only that Dr. Byrne paid for the Film and later spoke about voting machines in general. That theory would make every financier of a documentary the publisher of every word it contains, and every critic of a product the defamer of everyone who designed it. The law requires an actual connection to the specific defamatory communication, and Dr. Coomer cannot show one.

Nor may Dr. Coomer bridge these gaps by aggregating Dr. Byrne with others. Dr. Byrne is not The America Project, he is not Mr. Lucescu, and he is not the non-party director, Mr. Richards, who chose the Film's content. Liability for speech is individual, and the First Amendment forbids imposing it on one person for another's words absent his own culpable act. The conduct Dr. Coomer must attribute to Dr. Byrne specifically, making, controlling, or adopting the accusation with actual malice, cannot be supplied by pointing to the roles of other people.

**The Record Cannot Support a Finding of Actual Malice as to Dr. Byrne by Clear and Convincing Evidence**

Dr. Coomer was no stranger to the controversy. He held a senior, security-related role at Dominion at the center of the 2020 election-systems debate, Coomer Dep. 36:23-24, and he did not wait in the wings. He is a registered Democrat who testified that he does "not like [Mr. Trump's] policies or who he is as a person." Coomer Dep. 52:20; 53:10-13. He authored an op-ed published in the Denver Post and gave media interviews before the Film. Pl. Resp. to Def. 2d

Req. for Admis. Nos. 3-4. Dr. Coomer broadcast to roughly 300 of his contacts an "Antifa Manifesto" post, agreeing in part with its content, including its statement that Mr. Trump was "threatening to unleash the military." Coomer Dep. 206:18-209:06. A person who publicly trades in the rhetoric at the heart of a national controversy, and who has litigated the same accusation against many speakers, Coomer Dep. 38:17-39:01, is a limited-purpose public figure.

A limited-purpose public figure is one who voluntarily injects himself into a particular public controversy to influence its resolution, and who thereby invites attention and comment on the connected issues. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974); *Lewis v. McGraw-Hill Broadcasting Co.*, 832 P.2d 1118, 1121 (Colo. App. 1992). On these facts, Dr. Coomer is at least a limited-purpose public figure as to the 2020-election controversy, and he must therefore prove actual malice by clear and convincing evidence.

Dr. Coomer's own testimony places him at the center of this controversy. He ran the group that developed Dominion's Digital Adjudication System, wrote code for voting-system products, and is a co-inventor on adjudication patents. Coomer Dep. 48:14-20; 49:2-5; 42:5-6; 234:06-22. A person whose own work lies at the heart of the disputed subject is a limited-purpose public figure as to it. The Court need not, and Dr. Byrne does not ask it to, decide whether the 2020 election was in fact rigged; the point is that Dr. Coomer voluntarily occupied a central, public role in the controversy over the systems he helped build, and that a concern about those systems was not reckless disregard for a subject on which the record was



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

blank.

Actual malice requires clear and convincing evidence that the defendant published "with knowledge that it was false or with reckless disregard of whether it was false," *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), meaning the defendant "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The record contains no such evidence as to Dr. Byrne. He testified that he believed Mr. Oltmann and was "highly confident that the gist of the story is true." Byrne Dep. 179:19-25. Reliance on a source the speaker believes, even if later shown mistaken, is not reckless disregard, and a failure to investigate does not establish actual malice. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).

Dr. Coomer may point to harsher statements Dr. Byrne made in his 2025 deposition, years after the Film. Those are litigation statements, not the challenged publication, and Dr. Byrne framed them as his belief and inference from disclosed sources. They are not clear and convincing evidence that, when the Film was made, Dr. Byrne knew the gist was false or seriously doubted it. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991). Dr. Coomer can point to no retraction demand ignored, no contradictory source concealed, and no admission of doubt. He cannot meet this demanding standard.

The standard is subjective and is measured at the time of publication; it is not negligence or a failure to investigate. *Harte-Hanks*, 491 U.S. at 688. That Dr.



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

Coomer denied the accusation or sued others does not supply it, because awareness that a subject disputes a charge is not the publisher's own serious doubt about its truth. *St. Amant*, 390 U.S. at 731. Dr. Byrne testified that he believed Mr. Oltmann and relied on other sources, and nothing shows that he actually doubted the gist when the Film was made. That he should perhaps have looked harder is not enough.

Nor is this a case of purposeful avoidance of the truth. Dr. Byrne did not disregard obvious warning signs; he relied on Mr. Oltmann, whom he believed, and on other sources he identified. *Harte-Hanks*, 491 U.S. at 692. The clear-and-convincing standard exists precisely to protect a speaker who publishes what he believes on a matter of public debate, even if he is later shown to be wrong.

**Dr. Coomer Cannot Prove Material Falsity**

Because the challenged speech concerns a matter of public concern, Dr. Coomer bears the burden of proving falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986). Substantial truth is a complete defense, and a statement is not actionable unless its "gist" or "sting" is materially false; minor inaccuracies do not matter. *Keohane*, 882 P.2d at 1299; *Masson*, 501 U.S. at 516-17. The statements Dr. Byrne actually made addressed the integrity of voting systems in the 2020 election, a matter of genuine public controversy, and they did not name Dr. Coomer.

Nor can Dr. Coomer manufacture falsity by reading isolated words in the Film against Dr. Byrne. The gist-or-sting standard asks how an ordinary viewer



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

would understand a statement in context, and an alleged inaccuracy that does not change the substance of what a reasonable viewer would take away is immaterial. *Keohane*, 882 P.2d at 1299; *Masson*, 501 U.S. at 516-17. Dr. Coomer must identify a provably false statement of fact that Dr. Byrne made about him. He has not, and on this record he cannot.

The Plaintiff's experts do not close this gap. Their opinions address the truth of the underlying accusation, not any provably false statement of fact that Dr. Byrne made about Dr. Coomer, and they do not relieve Dr. Coomer of the burden the First Amendment places on him to prove falsity. *Hepps*, 475 U.S. at 776-77.

Dr. Coomer's own inconsistencies do not help him carry that burden. Having once testified that he lacked the access and "technical capability" to affect an election, he later acknowledged that he ran the adjudication-development group, wrote voting-system code, and holds adjudication patents. Coomer Testimony, June 14, 2022, 43:5-17; Coomer Dep. 48:14-20; 49:2-5; 234:06-22. The burden of proving falsity remains his, and on this record it is, at best for him, sharply disputed.

**Dr. Byrne's Statements Are Protected Opinion and Political Speech**

Dr. Byrne's own statements are not actionable assertions of fact. He spoke as the narrator of a political documentary that openly advocated a forensic audit of the 2020 election, and he presented the Film as an account of what he and others believed had happened. His commentary took the form of investigation and argument: he told viewers that "[w]e had been going through the operating

manuals of these equipment companies and saw these crazy facts." SAC ¶ 80. A statement is actionable only if it "may reasonably be understood as stating actual facts" that are "susceptible of being proved true or false"; opinion that does not imply a provably false assertion of fact is protected. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Keohane*, 882 P.2d at 1299. Speech on political and public affairs occupies the highest rung of constitutional protection, and a documentary that frames its subject as a mystery to be investigated signals interpretation and argument, not the delivery of verified fact.

The same is true of the Film's presentation of Mr. Oltmann. The Film presents him as one voice among many, using the language of personal belief and inference, such as "that's when I knew" and "high probability." A reasonable viewer would understand those statements as one speaker's interpretation of events, offered in a work of advocacy, rather than as Dr. Byrne's verified assertion of fact about Dr. Coomer. See *Milkovich*, 497 U.S. at 20.

The medium reinforces the conclusion. A documentary that frames its subject as a mystery to be investigated and audited invites the audience to weigh argument and inference, not to receive verified fact, and such speech on a matter of public concern lies at the core of First Amendment protection. *Milkovich*, 497 U.S. at 20.

**Dr. Coomer Cannot Prove Byrne-Specific Causation or Damages**

Even if liability could be shown, the causation and damages proof fails as to Dr. Byrne. Dr. Coomer has pressed the same accusation against at least five

defendants in five lawsuits, Coomer Dep. 38:17-39:01, and the words he complains of were spoken by others and repeated across the media landscape. He offered no evidence isolating any discrete, non-speculative harm caused by Dr. Byrne as distinct from those many other speakers, and he had not even quantified his damages as of his deposition. Coomer Dep. 89:19-23.

Dr. Coomer's own litigation history sharpens the problem. He has already obtained a $2.3 million jury award against another speaker on the same accusation, which he testified he has "not ... collected." Coomer Dep. 33:06-10. A plaintiff cannot recover the same reputational injury again and again from each of many independent speakers; he must isolate the incremental harm caused by this Defendant, and where the identical charge has been made by many and has already yielded a multimillion-dollar award, the marginal harm attributable to one financier of one film is speculative. On this record, Dr. Coomer cannot prove it.

The only harm Dr. Coomer ties specifically to Dr. Byrne is a recent "uptick" in threats that he attributes to a post about his discovery responses in this litigation, Coomer Dep. 94:04-10, years after the Film and unrelated to it. That cannot supply causation for the Film-based claim he pleads.

Damages must also be proved as to this Defendant. A plaintiff must show that the challenged publication caused him cognizable harm, and where the same accusation has been made by many speakers and litigated repeatedly, the law will not simply presume that a particular financier of a particular film caused a discrete, measurable injury. Dr. Coomer's failure to quantify his damages, or to tie any



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

specific harm to Dr. Byrne, defeats this element as well. Coomer Dep. 89:19-23.

**The Derivative and Improper Claims Fail as a Matter of Law**

The intentional-infliction-of-emotional-distress claim fails. Colorado reserves that tort for conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and financing a documentary on a public question does not meet it. A public figure, moreover, may not evade the actual-malice requirement by relabeling a failed defamation claim as emotional distress. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988). The claim fails for the same reasons the defamation claim fails.

Colorado sets that bar deliberately high: the conduct must be so extreme that an average member of the community would regard it as atrocious and utterly intolerable. Writing a check to help fund a documentary about a matter of public debate, and later speaking about voting machines in general terms, does not approach that threshold, and no reasonable jury could find otherwise.

The remaining claims and remedies fail as well. Colorado law bars a claim for exemplary damages in an initial pleading; such a claim "may not be included in any initial claim for relief" and may be added only later, by amendment, on a prima facie showing. C.R.S. § 13-21-102(1.5)(a). Independent of that bar, the exemplary-damages claim fails because Dr. Coomer cannot establish the underlying tort or the requisite state of mind by clear and convincing evidence. The request for an injunction is not a claim but a remedy, and an order restraining future speech would be an impermissible prior restraint. And civil conspiracy is derivative; it



THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

cannot survive the failure of the defamation claim, particularly where the record shows that The America Project had "nothing to do with the production of the film." Johnson Dep. 103:09-10.

The injunction Dr. Coomer seeks would restrain future speech on a matter of public concern, a forbidden prior restraint, and is a remedy, not a claim. And civil conspiracy is derivative: it requires an underlying tort and an agreement, and where the defamation claim fails and TAP had "nothing to do with the production of the film, end to end," Johnson Dep. 103:09-10, none exists.

**At a Minimum, the Court Should Enter Partial Summary Judgment**

If any claim survives, the Court should narrow this case now. The record supports summary judgment that Dr. Byrne did not publish the challenged statement, that the Film and book never name Dr. Coomer, that Dr. Byrne's own statements are not of and concerning Dr. Coomer, that Dr. Coomer is a limited-purpose public figure who must prove actual malice by clear and convincing evidence, and that the exemplary-damages, injunction, and conspiracy claims are improper. Partial summary judgment on any of these issues would require Dr. Coomer to come forward, with admissible evidence, and to identify a specific statement that Dr. Byrne made or controlled and clear and convincing proof that Dr. Byrne published it knowing it was false or with serious doubts about its truth. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Specifically, the Court may enter judgment that Dr. Byrne did not publish the challenged accusation; that his own statements are not of and concerning Dr.

Coomer; that Dr. Coomer is a limited-purpose public figure who must prove actual malice by clear and convincing evidence; that there is no such evidence as to Dr. Byrne; and that the exemplary-damages, injunction, and civil-conspiracy claims fail as a matter of law. Any one of these rulings would materially narrow the case for trial.

## Conclusion

The undisputed record shows that Dr. Byrne did not make, author, adopt, or control the statement at the heart of this case, that the statements he did make neither named Dr. Coomer nor asserted a provable fact about him, and that Dr. Coomer cannot prove actual malice, material falsity, causation, or damages as to Dr. Byrne. No reasonable jury could find for Dr. Coomer against Dr. Byrne on this record.

This is, at bottom, a case about accountability for speech, and the record shows that the words Dr. Coomer complains of were not Dr. Byrne's. Another man, an ear-witness, made the accusation; a non-party director placed it in the Film; and Dr. Byrne's own commentary named no one. Dr. Coomer's remedy, if he has one, lies against those who actually spoke the words he says harmed him, several of whom he has already sued and one of whom a jury has ordered to pay him $2.3 million. Coomer Dep. 33:06-10; 38:17-39:01.

WHEREFORE, the Defendant, Patrick Byrne, respectfully requests that the Court grant summary judgment in his favor on all claims, or, in the alternative, enter partial summary judgment narrowing the claims, statements, theories, and

damages for trial, and grant such further relief as this Honorable Court may deem just and proper.



**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 1, 2026, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

*/s/ David L. Perry II*
Peter Ticktin, Esquire
Florida Bar No. 887935
David L. Perry II, Esquire
Florida Bar No.: 1045902
Serv512@LegalBrains.com
Serv600@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Attorneys for Patrick Byrne*