IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:24-cv-00008-TPB-SPF

ERIC COOMER,

      Plaintiff,

v.

PATRICK BYRNE, STEVE
LUCESCU, and THE
AMERICA PROJECT INC.,

      Defendants.

_____/

## DEFENDANT THE AMERICA PROJECT, INC.'S
## MOTION FOR SUMMARY JUDGMENT

The Defendant The America Project, Inc. ("TAP"), pursuant to Rule 56, hereby files this, its Motion for Summary Judgment, and in support thereof states:

## Introduction

The Plaintiff sues TAP for words TAP never spoke. The accusation at the center of this case is Joseph Oltmann's statement that the Plaintiff joined an "Antifa" conference call and vowed to keep President Trump from winning the 2020 election. Oltmann first made that claim in November 2020, months before the film at issue existed. TAP did not write it, film it, select it, edit it, or approve it. TAP's Rule 30(b)(6) representative testified that "[n]obody at TAP was responsible

for any content in The Deep Rig," and that TAP "had nothing to do with the production of the film, end to end, nothing." (SUMF ¶¶ 4-5.) The film was created by others and owned by a separate company, The Deep Rig Movie, LLC. (SUMF ¶¶ 6, 8-9.)

Under the Court's order on the motions to dismiss, the actionable statements are those featured in the film; everything else is "context." (SUMF ¶ 25.) TAP made no statement in the film. TAP promoted the finished film, and its name appears in a copyright recital and a donation solicitation, but not one TAP communication names the Plaintiff, quotes Oltmann's accusation, or mentions any "Antifa call." (SUMF ¶¶ 12-16.) Promoting, distributing, or holding rights in a completed documentary is not the publication of one embedded speaker's accusation about a third party. Publication is the Plaintiff's burden, and he has no evidence of it.

The other elements fail with it. No TAP agent acted with actual malice, or any fault, about a statement no TAP agent made. The few statements TAP did make were true, and none was about the Plaintiff. No damages trace to TAP, which received no film revenue. The derivative claims fall with the defamation claim. TAP asks the Court to enter summary judgment on all claims.

## Statement Of Undisputed Material Facts

### *The Plaintiff, the accusation, and the film*

1. The Plaintiff, Dr. Eric Coomer, was the Director of Product Strategy and Security for Dominion Voting Systems during the 2020 election, and is domiciled

2

in Colorado.  (SAC ¶¶ 2, 9, 32.)

2.  The accusation underlying this lawsuit is that the Plaintiff joined a September 2020 "Antifa" conference call and said he had "made sure" President Trump would not win.  Joseph Oltmann first published it in November 2020, months before the film existed.  (SAC ¶¶ 3, 93-103.)

3.  The Plaintiff testified that the statements he complains of "are statements made in the Deep Rig, mostly stated by Joe Oltmann, that I rigged the . . . election." (Coomer Dep. 35:24-36:02.)

### *TAP had no role in the content or production of the film*

4.  TAP is a Florida nonprofit corporation.  (SAC ¶ 12.)  Its Rule 30(b)(6) representative, Carlito Johnson, testified on TAP's behalf that "[n]obody at TAP was responsible for any content in The Deep Rig."  (TAP Dep. 102:24-25.)

5.  Asked whether TAP had any role in producing the film, he testified:  "We weren't producing the film.  We had nothing to do with the production of the film, end to end, nothing."  (TAP Dep. 103:09-13.)

6.  TAP identified the persons responsible for the film's content as "Steve Lucescu and Patrick Byrne. . . .  They're the ones who created the film."  (TAP Dep. 103:21-25.)

7.  Asked about conversations with other TAP officers "about Joe Oltmann's claims," he answered "None," and recalled no Oltmann presentation to TAP's board and no TAP event where Oltmann spoke.  (TAP Dep. 102:08-21.)

### *A non-party director and a separate company controlled and owned*

### *the film*

8.  The film's director, non-party Roger Richards, was "the one in control [of] what was being asked of each person," held the script, and performed the final edits.  (Lucescu Dep. 17:08-10; 59:15-17.)

9.  The film was owned by The Deep Rig Movie, LLC, whose principals were Lucescu and Richards, not TAP; the Plaintiff alleges the entity was organized in Wyoming with its own EIN and vendors.  (Lucescu Dep. 228:13-16; SAC ¶ 63.)

### *The film was a personal venture, not TAP's*

10.  The Plaintiff alleges the film was based on Patrick Byrne's self-published book and "was produced by Defendants Byrne and Lucescu."  (SAC ¶¶ 1, 53.) Editorial decisions were made by the director.  (Lucescu Dep. 71:20-23.)

11.  The Plaintiff testified that his theory connecting Byrne to the film is that "he bankrolled it," and that whether funding a film makes a person "responsible for whatever the movie said" is "a question of law, which I'm not able to answer." (Coomer Dep. 47:11-17.)

### *TAP's connections to the finished film*

12.  The film website's Terms and Conditions state that "The America Project has all rights therein," and the film's closing frame, created by the filmmakers, solicits donations to www.AmericaProject.com.  (SAC ¶ 53; TAP Dep. 147:17-23; Exs. 35, 39; TAP Dep. 117:14-20)

13.  On June 26, 2021, a TAP social-media account called the film "an account of events that all Americans and patriots should know," and on August 3,

4

2021, TAP's Rumble and Twitter accounts posted links to the film: "The movie is free for all of you to watch. Share it far and wide." (TAP Dep. 140:23-141:22; Exs. 34, 36, 37.)

14. An outside vendor hosted the film's website and donation portal under an arrangement with TAP, which TAP moved to end in February 2022. (TAP Dep. Ex. 40 )

15. On July 7, 2022, a TAP press release announced a re-release and premiere of the film. (TAP Dep. Ex. 41.)

16. None of TAP's communications about the film names the Plaintiff, quotes Oltmann's accusation, or refers to any "Antifa call." (TAP Dep. Exs. 34, 36, 37, 40, 41.)

### *No film money reached TAP*

17. TAP's representative testified: "none of the monies or anything related to Deep Rig ever benefited TAP." (TAP Dep. 139:14-17.) TAP's 2021 Form 990 reports revenue of $7,738,386, all contributions and grants, with no program-service or other revenue; the 2022 filing likewise shows no film revenue line. (TAP Dep. Exs. 32, 33.) Mr. Byrne, who funded the film, testified that "not one penny ever came back to . . . The America Project." (Byrne Dep. 99:25-100:1.)

### *TAP made no statement about the Plaintiff and has no evidence about him.*

18. The Second Amended Complaint identifies no statement about Dr. Coomer spoken or written by TAP. (See SAC ¶¶ 134-137.)

5

19. TAP possesses no evidence that the Plaintiff rigged the 2020 election, and no evidence making it "confident that Eric Coomer rigged the election." (TAP Dep. 170:10-13; 171:13-17.)

### *The Plaintiff's damages-related admissions*

20. The Plaintiff has pressed the same accusation against other speakers in multiple lawsuits and obtained a $2.3 million jury award against Michael Lindell, which he has not collected. (Coomer Dep. 33:02-10; 38:17-39:01.)

21. Since leaving Dominion, the Plaintiff has not submitted a resume or filled out any job application, and his claimed damages were not finalized or quantified as of his deposition. (Coomer Dep. 68:22-69:17; 89:19-23.)

22. The Plaintiff attributed a recent "uptick" in threats to a 2026 posting about his discovery responses in this litigation, which he did not attribute to TAP. (Coomer Dep. 94:04-10.)

23. The Plaintiff admits that he authored a Denver Post op-ed published December 8, 2020, and was interviewed by media before May 14, 2021. (Pl. Resp. to Byrne 2d RFAs Nos. 3-4.)

### *The pleadings and the scope of the claims*

24. The Plaintiff pleads all counts collectively against "Defendants": defamation and defamation per se, intentional infliction of emotional distress, civil conspiracy, permanent injunction, and exemplary damages, and seeks disgorgement of the film's profits. (SAC ¶¶ 134-156; Prayer for Relief.)

25. The Plaintiff has conceded that statements not featured in the film "are

6

not intended to constitute stand alone claims for defamation" and provide only "context" for actual malice. (SAC ¶ 63 n.86, citing the Order on the motions to dismiss (DE 175).)

## Legal Standard

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may prevail by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); a "mere . . . scintilla" in response will not do, and where an element must be proved by clear and convincing evidence, that heightened burden frames the question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255-56 (1986). Colorado law governs this transferred action under Colorado's choice-of-law rules, which select the Plaintiff's domicile. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990); SUMF ¶ 1. Florida law is materially uniform on every dispositive point.

## Argument

**The Plaintiff Cannot Prove That TAP Published the Accusation, Which Alone Defeats Every Claim.**

Publication is the first element of defamation. The plaintiff must prove a defamatory statement concerning him, published to a third party, with fault of at least negligence, and actionability or special damages. *Keohane v. Stewart*, 882 P.2d 1293, 1297 n.3 (Colo. 1994); accord *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d

7

1098, 1106 (Fla. 2008). Publication requires proof that the defendant made or caused the communication of the specific defamatory statement, and the actionable statements here are those featured in the film. (SUMF ¶ 25.) The question is whether TAP published a statement featured in the film. It did not. TAP does not rest on a witness's lack of knowledge as proof of a negative; it relies on the absence of any evidence that TAP made or caused the accusation, *Celotex*, 477 U.S. at 325, and on TAP's affirmative corporate testimony, given on topics the Plaintiff himself noticed. Either is sufficient, and this failure of proof is dispositive of every claim.

**No TAP Agent Made, Selected, Edited, Or Controlled the Accusation**

A corporation acts only through its agents and can be liable for defamation only where an agent published the statement within the scope of authority. *Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 253-54 (1974). No TAP agent published the accusation. TAP had "nothing to do with the production of the film, end to end, nothing"; no one at TAP was responsible for any content; the film was created by Lucescu and Byrne with a non-party director who controlled the questions and performed the final edits. (SUMF ¶¶ 4-6, 8.) And the accusation did not originate with TAP or the film: Oltmann first published it in November 2020, months before the film existed, and the Plaintiff admits the statements he sues on were "mostly stated by Joe Oltmann." (SUMF ¶¶ 2-3.) A defendant does not publish a statement it did not make, did not select, and had no hand in communicating.

8

### *No Theory of Agency Imputes Oltmann's Words To TAP*

The Plaintiff alleges that Byrne acted "as TAP's agent" and that Joe Flynn was a TAP board member during production. (SAC ¶¶ 14, 63.) First, the film was a personal venture, not corporate business: the Plaintiff himself alleges it was based on Byrne's book and "produced by Defendants Byrne and Lucescu," and it was owned by The Deep Rig Movie, LLC, a separate entity whose principals were Lucescu and the director. (SUMF ¶¶ 9-10.) Respondeat superior reaches only conduct within the scope of corporate authority; an officer's outside project is not corporate business merely because he holds a corporate title. *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 473-75 (Colo. 1995).

Second, agency law cannot manufacture a publication that never happened. Imputation attaches to an agent's culpable act; it does not create one. In Cantrell, the employer was liable only because its reporter himself wrote the false statements. 419 U.S. at 253-54. Neither Byrne nor Flynn authored Oltmann's accusation. Nor can the Plaintiff fill the gap through TAP's representative, who identified the scope of Byrne's authority to speak for TAP as a noticed topic on which TAP had no information. (TAP Dep. 114:20-115:13.) That absence of evidence is the Plaintiff's problem, not TAP's.

### *TAP's Promotion, Distribution, And Rights in the Finished Film Are Not Publication of Oltmann's Accusation*

The Plaintiff's real case is that TAP embraced the finished film: TAP's accounts praised and shared it, the closing frame solicited donations to TAP, a

9

vendor hosted the film's website for TAP, TAP's name appears in the copyright recital, and a July 2022 press release announced a re-release. (SUMF ¶¶ 12-15.) TAP does not dispute that it promoted the finished film. These facts still do not supply the missing element.

Republication liability reaches only one who repeats the defamatory statement, and a distributor of a completed work is liable only if it "knows or has reason to know of its defamatory character." Restatement (Second) of Torts §§ 578, 581(1) (1977). TAP's communications repeated nothing about the Plaintiff: not one names him, quotes the accusation, or refers to any "Antifa call"; each promotes a documentary's general message about election integrity. (SUMF ¶¶ 13-16.) Sharing, praising, hosting, or announcing a film is not repeating one speaker's embedded accusation about a third party, and it does not become so because TAP's name is on the post. Hosting, distributing, or screening a completed film is exhibition of the work, not authorship of a statement within it, and the hosting correspondence concerns logistics and donations, nowhere the Plaintiff. (SUMF ¶¶ 14, 16.) Nor did TAP adopt the accusation: its officers never discussed Oltmann's claims, and Oltmann never presented to TAP's board or spoke at a TAP event. (SUMF ¶ 7.) Even as to a knowing distributor, the constitutional fault requirements addressed in Section II independently defeat the claim.

TAP's endorsement is also protected opinion: calling the film "an account of events that all Americans . . . should know" is a value judgment, not a provably false assertion of fact about the Plaintiff. *Milkovich v. Lorain Journal Co.*, 497

10

U.S. 1, 19-20 (1990). And copyright ownership changes nothing: however TAP came to hold rights, a copyright is a property right, not a publication, and a rights-holder that did not create the content and does not repeat the statement is not the publisher of every statement within the work. Restatement (Second) of Torts §§ 578, 581(1).

The Plaintiff's "ratification" allegation (SAC ¶ 134) fails for the same reasons. Ratification requires knowledge of the material facts, here the specific statement, and conduct manifesting an intent to adopt it as one's own. Restatement (Third) of Agency § 4.06. TAP's officers never discussed Oltmann's claims, and TAP possesses no evidence that the Plaintiff rigged the election. (SUMF ¶¶ 7, 19.) Praising a documentary's general message is not adopting one interviewee's accusation as the corporation's own statement.

**The Plaintiff Must Prove Actual Malice by Clear and Convincing Evidence**

Two independent doctrines impose the actual-malice standard. First, Colorado extends the New York Times standard to "any discussion involving matters of public concern, irrespective of the notoriety or anonymity of those involved." *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1105-06 (Colo. 1982). The Colorado Court of Appeals has already held, in the Plaintiff's related litigation, that this election-integrity controversy is a matter of public concern. *Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶¶ 40-43, 552 P.3d 562, 575-76. The Plaintiff's allegation that he is a private figure (SAC ¶

11

134) is beside the point:  he must prove actual malice regardless of status.  Second, he is at minimum a limited-purpose public figure:  he voluntarily injected himself into the controversy, authoring a December 2020 Denver Post op-ed, giving media interviews, and litigating the same accusation against numerous speakers.  (SUMF ¶¶ 20, 23.)  *Lewis v. McGraw-Hill Broad. Co.*, 832 P.2d 1118, 1121-22 (Colo. App. 1992); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351-52 (1974).  Either way, the clear-and-convincing burden frames the question, *Anderson*, 477 U.S. at 255-56, and Section II.C shows the Court need not resolve status at all.

**No TAP Agent Acted with Knowledge of Falsity or Subjective Doubt, And Nothing the Plaintiff Can Cite Is Clear and Convincing Proof Of Malice**

Actual malice means publishing "with knowledge that it was false or with reckless disregard of whether it was false or not," measured by the publisher's subjective "serious doubts as to the truth of his publication."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); accord *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-03 (11th Cir. 2016).  Malice is measured as to the person who published, at the time of publication.  Because no TAP agent published Oltmann's accusation, there is no TAP actor whose state of mind could satisfy the standard.

The Plaintiff will point to three things:  TAP never contacted him; TAP's representative declined in 2025 to disclaim a belief about the election while an "investigation" continued; and TAP promoted the film's re-release after this suit was filed.  None creates a jury question.  A failure to investigate, standing alone,

12

does not establish actual malice, *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989), least of all for a defendant with no role in the content.  Malice is measured at publication, in 2021; a representative's reluctance in 2025 to issue a "conclusionary statement" about an ongoing inquiry is not clear and convincing evidence that any TAP agent doubted the accusation in 2021, and the same witness confirmed that TAP possesses no evidence that the Plaintiff rigged the election.  (TAP Dep. 170:10-171:17.)   And promoting a documentary's general availability after suit, without repeating or referencing the accusation, is not clear and convincing evidence that any TAP agent subjectively knew or doubted that Oltmann's claim was false.  (SUMF ¶¶ 15-16.)

**The Plaintiff Cannot Show Even Negligence by TAP**

If the Court were to treat the Plaintiff as a private figure and apply a negligence standard notwithstanding Colorado's public-concern rule, the claim still fails.  One cannot negligently publish what one never published.  Fault of any degree presupposes a culpable act by the defendant, and TAP committed none.  The Court can grant summary judgment on fault without deciding the Plaintiff's status.

**The Plaintiff Cannot Prove a False Statement of Fact by TAP**

Falsity is the Plaintiff's burden.  For speech on matters of public concern, the plaintiff must prove material falsity, judged by whether the statement's "gist" or "sting" differs from the truth, and the statement must be "of and concerning" him. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986); *Masson v.*

**THE TICKTIN LAW GROUP**
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

*New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991); *Keohane*, 882 P.2d at 1299; *Sullivan*, 376 U.S. at 288.  The Plaintiff cannot carry that burden against TAP because TAP made no statement of fact about him.  The Second Amended Complaint identifies no words about Dr. Coomer spoken or written by TAP. (SUMF ¶ 18.)  A statement that does not exist cannot be proved materially false.

The statements TAP actually made were true, or opinion, and their gist carries no defamatory sting about the Plaintiff.  TAP's accounts wrote that "[t]he movie is free for all of you to watch" and urged readers to "[s]hare it far and wide"; the film was in fact free to watch, and an invitation to share a film asserts no fact about anyone.  (SUMF ¶ 13.)  TAP's June 2021 post called the film "an account of events that all Americans and patriots should know," a characterization and endorsement protected as opinion.  *Milkovich*, 497 U.S. at 19-20; *Turner v. Wells*, 879 F.3d 1254, 1262-63 (11th Cir. 2018).  The press release announced a re-release that in fact occurred, and the website recital speaks to ownership of a work, not to the Plaintiff.  (SUMF ¶¶ 12, 15.)  The Plaintiff cannot take true, non-referential statements about a film's availability and provenance and attribute to them the sting of an accusation they never repeated.  Whatever sting the Plaintiff feels comes from Oltmann's words, not TAP's.

TAP is entitled to summary judgment without any adjudication of Oltmann's accusation.  TAP takes no position here on a statement it never made.  If any claim somehow survived, the burden of proving the accusation's material falsity would remain the Plaintiff's.  *Hepps*, 475 U.S. at 776-77.  The Court need not resolve the

14

truth of another speaker's words to dispose of every claim against TAP.

**The Plaintiff Cannot Prove Causation or Damages Attributable To TAP, and Disgorgement Fails**

Even with a viable liability theory, the Plaintiff could not tie any damages to TAP. The accusation originated with Oltmann in November 2020 and circulated for months before the film existed, and longer still before any TAP promotion. (SUMF ¶¶ 2, 13.) Testifying in June 2022, the Plaintiff described "a few thousand death threats in the last 18 months," a period reaching back to late 2020, months before the film premiered. (Coomer Test. 43:01-04). The Plaintiff has litigated the same accusation against several other speakers and holds an uncollected $2.3 million jury award against one of them; he has not submitted a resume or job application since leaving Dominion; his damages remain unquantified; and the only recent, publication-specific harm he identified, an "uptick" in threats, he attributed to a 2026 posting about this litigation, not to anything TAP did. (SUMF ¶¶ 20-22.) No reasonable jury could attribute any non-speculative increment of harm to TAP, which said nothing about him. Nor may the Plaintiff fall back on presumed damages: presumed or punitive damages for speech on a matter of public concern require actual malice, which he cannot show as to TAP. *Gertz*, 418 U.S. at 349-50.

Disgorgement of the film's profits fails for the added reason that there is no film-attributable gain to disgorge. TAP's representative testified that "none of the monies or anything related to Deep Rig ever benefited TAP," TAP's tax filings

15

report no program-service or other revenue in 2021 and no film revenue line in either year, and Mr. Byrne, who funded the film, testified that "not one penny ever came back to . . . The America Project." (SUMF ¶ 17.) Disgorgement requires an underlying wrong and a gain to disgorge; the Plaintiff has neither as to TAP.

**The Derivative and Remedial Claims Fail with the Defamation Claim**

Intentional infliction of emotional distress. A plaintiff cannot recover for emotional distress arising from protected speech on a matter of public concern without satisfying the actual-malice standard he otherwise failed to meet; he may not relabel a failed defamation claim. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988); see *Snyder v. Phelps*, 562 U.S. 443, 451-52, 458 (2011). The claim also requires extreme and outrageous conduct, and TAP engaged in no conduct concerning the Plaintiff at all.

Civil conspiracy. Conspiracy requires an underlying wrong and an agreement to accomplish it. The defamation claim fails, and there is no evidence that TAP agreed with anyone to publish Oltmann's accusation; the record shows the opposite. (SUMF ¶¶ 4-7.)

Permanent injunction. An injunction is a remedy, not a freestanding claim, and an order restraining future speech on a matter of public concern is a classic prior restraint. *Near v. Minnesota*, 283 U.S. 697, 713-23 (1931); *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 418-19 (1971).

Exemplary damages. Under Colorado law, exemplary damages may not be pleaded as an initial claim and require an underlying tort with the requisite state

16

of mind.   C.R.S. § 13-21-102(1.5)(a).   With no surviving tort and no malice attributable to TAP, the claim cannot stand.

**At a Minimum, TAP Is Entitled to Partial Summary Judgment**

If any triable issue somehow remained, the Court should still grant summary judgment on each discrete failure of proof:  publication, fault, falsity, causation and damages, and disgorgement.  Rule 56(a) and (g) authorize judgment on any part of each claim and treating material facts as established.

## Conclusion

The Plaintiff sued a nonprofit corporation for another man's words in a film it did not make.  TAP's own corporate discovery confirms that it "had nothing to do with the production of the film, end to end," that no one at TAP was responsible for any content, and that no film money ever reached it.  What TAP did do, promote a finished documentary without ever mentioning the Plaintiff, is not defamation under any theory the law recognizes.  TAP respectfully requests that the Court grant summary judgment in its favor on all claims, dismiss the claims against it with prejudice, and award such further relief as is just.

Dated:  July 1, 2026.

Respectfully submitted,

*/s/ David L. Perry II*
David L. Perry II, Esquire
Florida Bar No. 1045902
Serv514@LegalBrains.com

17

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222

Serv600@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Attorney for TAP*

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

*/s/ David L. Perry II*
David L. Perry II

THE TICKTIN LAW GROUP
270 SW NATURA AVENUE, DEERFIELD BEACH, FLORIDA 33441
TELEPHONE: (561) 232-2222