## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Civil Action No. 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,

Plaintiff

v.

PATRICK BYRNE, STEVEN LUCESCU, and
THE AMERICA PROJECT, INC., a Florida non-profit corporation,

Defendants

---

## ANDREA HALL'S RESPONSE TO COURT'S ORDER DATED JUNE 15, 2026 FOR AN ORDER TO SHOW CAUSE

---

Come now, Andrea M. Hall, and hereby tenders her response to the Court's order dated June 15, 2026, for an Order to Show Cause, stating as follows:

### FACTUAL BACKGROUND

1.    On January 26 and 27, 2026, Ms. Hall attended Eric Coomer's deposition in Tampa, Florida.

2.    Prior to being admitted to the deposition, Ms. Hall signed the protective order in this case.

3.    At no time during the deposition did Mr. Cain designate any part of the deposition as confidential or claim that any part of the deposition was designated confidential under the protective order. Per the protective order, "[t]he [p]ortions of any deposition shall be deemed confidential **only** if they are designated as such when the deposition is taken.

4. Mr. Cain did state at the end of the deposition that he was seeking 30 days to allow for designation of confidentiality.

5. Mr. Cain's "confidential" designations proved to be, without exception, not in accord with the protective order.

6. On February 16, 2026, Ms. Hall, former counsel for Mr. Oltmann, filed a supplement to his motion to compel Dominion Voting Systems to comply with a subpoena issued in a Denver District Court case, *Eric Coomer v. Donald J. Trump for President, Inc., et al,* 20-CV-34319, in which Mr. Oltmann is a defendant.

7. In the February 16 supplement, Ms. Hall described what had recently occurred in the case, and, particularly, Mr. Coomer's vigorous attempts to limit inquiry into what Mr. Byrne believed to be his criminal conduct and untruthful testimony under oath.

8. The admissions Mr. Coomer made during his deposition and in discovery responses which are relevant to Mr. Oltmann's defense of "substantial truth" were included in the supplement, to demonstrate the critical relevance of the documents sought from Dominion, which were previously produced in the District of Columbia *U.S. Dominion, Inc., v. Patrick Byrne,* Case No. 1:21-CV-002131 (D.D.C.).

- He admitted in his deposition that he had access to the tally, had accessed it live, and had printed it, during both the 2020 presidential election and primary.

  Ms. Hall already had information from other witnesses who had disclosed that VPN's were used throughout the US for remote access.

- He admitted that foreign and domestic contractors could remotely access Dominion machines. *See Exhibit A* [1] *and Exhibit B.*

---

[1] file:///D:/clients/Oltmann,%20Joe/Show%20cause%20Florida%20Exhibits/Exhibit%20A%20Sheriff%20Dar%20Lea

2

- He admitted that Serbian contractors could have accessed and altered the adjudication system. *See Exhibit A* and E*xhibit C.*

- He admitted that he had contact with Serbian contractors prior to the 2020 election. *See Exhibit D.*

- He stated that he did not know whether foreign contractors could remotely access Dominion machines during the 2020 election. (He was the chief of Dominion's security team). *See Exhibit D.*

- He admitted to having provided high-level guidance for certain implementation of the voting system, which covered multiple states.

    a. This is public information, and there is independent information regarding these allegations.

- He admitted to having been the chief software architect for Sequoia Voting Systems, later acquired by Smartmatic, and, in turn, Dominion. He admitted to writing source code for that system. *See Exhibit E.*

- He admitted that domestic and foreign programmers and personnel had access to the Dominion source code repositories. *See Exhibit F.*

- He admitted to having remote access to the Dominion management system and remote desktops at the election centers via VPN. *See Exhibit G and Exhibit H.*

- He admitted to having access to internal testing environments, systems logs, and audit logs. *See Attached Exhibit G.*

- He admitted to having monitored the results of the Chicago/Cook County election in real time on November 3, 2020, being able to see the vote tallies, prior to certification. *See Attached Exhibit I.*

- He admitted that when a trusted build is installed, it would wipe out all the data from the prior election, which is directly contrary to the testimony in the Tina Peters case in Mesa County. *See Attached Exhibit C.*

- He admitted that Venezuelan nationals were providing "support" in the Cook County elections and had access to the voting system.

    a. *There are other witnesses and independent sources who can corroborate this information through FOIA.*

---

f%20(@SheriffLeaf)%20_%20X%202%20bates%2014127.mhtml

- When asked about his offshore bank accounts, which he has denied owning, he was instructed by his counsel not to answer, for reasons of safety, but counsel indicated that he does, in fact, own such accounts. *See Exhibit J.*

9. Well after midnight on February 17, 2026, the Plaintiff filed an "Emergency Motion" in the Colorado case, claiming what he claims in his motion to show cause, that Hall violated the protective order, and insisting that the supplement be sealed immediately, and stricken.

10. Coomer's "Emergency Motion" did not provide a single enumerated fact demonstrating that any particular admission which he made, and Ms. Hall had disclosed, violated the protective order, nor an explanation of how any of the statements above in paragraph nine fit into an enumerated category of the protective order. He could not, because they did not.

11. Ms. Hall responded on February 24, 2026, noting that Coomer had claimed an emergency in Denver, designed to assure that he was not compelled to produce documents requested in discovery, including the Dominion records and his cell phone records, and to assure that he could keep his perjurious testimony secret in the Denver case, that he had not taken any action in this Court despite his claim of "emergency", and that he was attempting to suppress the entire deposition transcript in this case. Ms. Hall took copious notes during the deposition, from which she drew the particulars she included in the February 16 supplement. She checked each against the terms of the protective order before including it and determined that none fit into any enumerated category. *See Declaration of Andrea M. Hall, ECF # 283.*

4

12. Not one of these admissions referenced in paragraph nine were quoted from the deposition.

13. Not one admission falls under the designated protective order definition of confidentiality.

14. Not one of the admissions was deemed confidential during the deposition nor after the thirty days by Mr. Cain.

15. Ms. Hall's supplement was stricken by the Court, but that does not constitute, or equate to, a finding that Ms. Hall violated the Florida Protective Order or that she acted in contempt of this Court's orders.

16. The Denver Court's ruling was a procedural determination in a separate proceeding and cannot substitute for an order from this Court.

17. On February 24, 2026, she filed a motion to reconsider. As of the time of this filing, she is unaware of the ruling or status of that motion, as she no longer represents Mr. Oltmann.

18. Again, in his Motion for an Order to Show Cause, the Plaintiff failed to identify a single admission included in the Supplement, which he claims violated the protective order. Not one. While the Motion is replete with faux outrage, character assassination against various counsel, in multiple cases, multiple defendants, and generalized pearl-clutching, those cannot substitute for particulars. The Plaintiff's failure to demonstrate a single disclosure that **actually** violates the protective order should counsel this Court to give his motion short shrift.

19. The Protection Order establishes what information may be designated as "Confidential":

a. **Confidential Information**: As used herein, "Confidential Information" means any Discovery Material that has been specifically marked or designated as "CONFIDENTIAL" by any Designating Party, and that contains: (i) private health or medical records of any person; (ii) personally identifying information of any person, including identification numbers, addresses, and telephone numbers for any person, and the name of any minor child; (iii) confidential personal correspondence, notes, or communications; (iv) policies, protocols, sources, or methods that are in fact confidential; (v) personnel or employment records of any person or party; (vi) confidential financial records or statements; (vii) competitively or commercially sensitive information; (viii) confidential and sensitive political records; or (ix) any personal information that is not generally available to the public.

20. The Court stated in its June 15, 2026 Order that "The Court's Protective Order gives parties a thirty-day window after a transcript copy has been received to make their confidentiality designations. This window functions much like the Court's sealing procedure, which permits records to remain under seal while the Court determines whether the seal should remain."

21. This Court denied Plaintiff's request to seal said exhibits in its order dated June 15, 2026. Because the Court failed to seal those documents, the Court should find that Ms. Hall did not violate the protective order, as those are the same documents that Ms. Hall filed in her pleadings in the Colorado case.

22. The Court's order didn't state whether Ms. Hall would be facing civil or criminal contempt under Fed. R. Crim. P. 42(a).

23. If the Court is seeking civil contempt against Ms. Hall, the Court is required to give adequate notice of the alleged violation, an opportunity to be heard, and what compliance is being sought.

6

24. For criminal contempt, the Court **must** give notice that states the essential facts of the contumacious conduct and **explicitly** state that it intends to adjudicate criminal contempt under Rule 42(a)(1)(A).

25. Ms. Hall should be provided notice and due process before she is required to provide the Court with an affidavit.

## ARGUMENT

A finding of civil contempt "must be supported by clear and convincing evidence," establishing:"(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1296 (11th Cir. 2002).

In determining contempt, "the order is subject to reasonable interpretation," and "may not be expanded beyond the meaning of its terms absent notice and an opportunity to be heard." *Ga. Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007). Ambiguities or uncertainties in a court order are construed "in a light favorable to the person charged with contempt." *Id.*

Civil contempt sanctions may be coercive and compensatory, and the court should consider "the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction." *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991).

As is evident from the disclosures made by Ms. Hall, set forth in full at paragraph 9, *supra,* none falls within the nine categories established by the protective order. The only possible category into which they could fall is number 9 – personal information not generally available to the public, but an explanation of how the Plaintiff performed his job

7

duties, which does not disclose Dominion's proprietary information, is not the sort of "personal information," like addresses, phone numbers, medical records, confidential correspondence, employment records, commercially sensitive information, or political records, within the contemplation of the protective order. Plaintiff filed his Confidential page line designation on March 12, 2026. *Served via email on Defendants Bryne, The America Project, Inc., and Steven Lucescu.* Nothing Plaintiff designated as confidential includes anything Ms. Hall summarized in her supplemental briefing. Notably, the **only** item that Plaintiff designated as confidential that Ms. Hall summarized in her supplemental pleadings was that Plaintiff worked in Chicago and Cook County. This information was known to Ms. Hall based on Plaintiff's prior deposition conducted in the Denver case.

The disclosures the Plaintiff objected to, while certainly embarrassing to him personally, and perhaps fatally damaging to his case, are simply not within the sort of protected personal information which may be properly suppressed. They are admissions of wrongdoing, the suppression of which is directly contrary to the "search for truth" that are the functions of discovery and trial.

> *Tiedman v. American Pigment Corp.*, 253 F.2d 803, 808 (4th Cir. 1958) "[A] trial is not a sporting event, and discovery is founded upon the policy that the search for the truth should be aided."). To this end, parties in federal litigation "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information need not be admissible at trial to be discoverable, so long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

> *L-3 Communs. Corp. v. Sparton Corp.*, 313 F.R.D. 661, 665 (M.D. FL, 2015).

The Plaintiff has provided no example of any disclosure made by Ms. Hall, which violates the protective order in this case. The reason for this is that none does. Ms. Hall

8

understands that there is a dispute over whether the Plaintiff may properly designate the fact of his having worked the Cook County presidential and local elections in 2020 as "confidential", but that fact is public, and was learned from an earlier deposition which is not subject to a protective order, and which has been disseminated to the parties and counsel in the Denver case and the NY times article. *See ECF #300.*

No individual accused of having violated the protective order did so. The Plaintiff's Motion is frivolous, groundless, vexatious, and sanctionable.

> "Vexatious" means "without reasonable or probable cause or excuse." Black's Law Dictionary 1559 (7th ed.1999); see also *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S. Ct. 694, 700, 54 L. Ed. 2d 648 (1978) (describing "vexatious" conduct in the Title VII context as being "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith"). A "frivolous action" is one that is "groundless ... with little prospect of success; often brought to embarrass or annoy the defendant." Black's Law Dictionary 668 (6th ed.1990); see also Fed.R.Civ.P. 11. Finally, "bad faith" "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will." Black's Law Dictionary 139 (6th ed.1990); see also *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 2684, 57 L. Ed. 2d 667 (1978) (defining bad faith in the law enforcement context to include "reckless disregard for the truth").

*United States v. Gilbert,* 198 F.3d 1293, 1299 (11th Cir. 1999). The Motion was filed to alarm and intimidate Ms. Hall, whom the Plaintiff hates viscerally, and attacks unceasingly, and with the corrupt intent to hide and bury the Plaintiff's wrongdoing and perjured testimony. The Plaintiff deliberately yelled, "fire" to stop the discovery process in the *Coomer v. Trump et. al.* case. The Plaintiff knew that he had no legitimate grounds to argue that Ms. Hall violated the protective order. However, the Denver Court, in response to the Plaintiff's unhinged claims of "emergency", stopped all proceedings. It then took the Plaintiff almost a month a motion for an order to show cause in this Court.

28 U.S.C. § 1927 provides that:

9

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

In the Middle District of Florida, "vexatious" means ("lacking justification and intended to harass') New International Dictionary 2548 (3d ed. 1961)) or '[i]nstituted without sufficient grounds for the purpose of causing trouble or annoyance to the defendant' 19 Oxford English Dictionary 596 (2d ed. 1989)." *Mendoza v. Southern Heritage Constr. Corp.*, 2009 U.S. Dist. LEXIS 99694 at *4-5. The Plaintiff's motion is vexatious, because it is both groundless and was filed to harass and trouble Ms. Hall, and to cause Ms. Hall to incur unreasonable and unfair costs. An award of attorney's fees is warranted.

The protective order's plain language creates confidentiality only upon designation. This **"only if"** language is exclusive/conditional in paragraph 2(e), which makes it a necessary condition. The language does not state that the deposition "shall be presumed confidential for 30 days pending designation."

Further, the protective order does not state "everything is confidential by default until designated." The protective order says the *only* mechanism by which something becomes confidential is by designation (either at the deposition or within the 30-day window). Before designation happens, nothing has been "deemed confidential" under this clause; therefore, no default, no automatic interim status, no blanket protection for the whole 30 days.

The thirty-day window is the *deadline* for designation, not a period during which **everything** is presumptively protected in the interim or by default. The order gives Plaintiffs' counsel thirty days to *make* the designation — it doesn't say the material is

10

treated as confidential *pending* that designation. If it isn't designated yet or ever, it isn't "deemed confidential" under the plain text of the protective order. If the parties had wanted that result, it should have been included in the protective order, but the protective order is devoid of that language.

The second sentence in 2(e), "testimony describing an already-designated confidential document is also confidential," further reinforces the interpretation that there is no blanket protection for thirty days. This language shows the drafters knew how to create derivative/automatic confidentiality when they wanted to, and did so narrowly and specifically. Its presence implies that the general thirty-day window does not have the same automatic effect; otherwise, this sentence would be redundant.

Any ambiguity in the protective order must be resolved against a contempt finding. Contempt requires a clear and unambiguous order. The Plaintiff cannot meet his burden to show that Ms. Hall has violated the protective order by "clear and unambiguous" evidence, nor can he establish a clear and unambiguous act of contempt, which is required for this Court to find Ms. Hall in contemptuous violation.

The admissions stated in the pleadings filed by Ms. Hall were not designated as confidential at the time they were shared, and therefore no violation could have occurred.

### CONCLUSION

Wherefore, because the protective order was not violated, the Plaintiff's Motion for an Order to Show Cause is infirm, vexatious, and should be denied. Ms. Hall respectfully requests that this Court deny the Motion, find that it was vexatious, and enter an award of attorney's fees against the Plaintiff.

11

Respectfully submitted this day of July 6, 2026.

By:    /s/ Andrea M. Hall
Andrea M. Hall, #36410
THE HALL LAW OFFICE
P.O. Box 42
Eaton, CO 80615
Tel.: (970) 419-8234
andrea@thehalllawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, a true and correct copy of the foregoing **ANDREA HALL'S RESPONSE TO COURT'S ORDER DATED JUNE 15, 2026 FOR AN ORDER TO SHOW CAUSE** was sent via email to the following parties:

chambers_flmd_barber@flmd.uscourts.gov
chambers_flmd_flynn@flmd.uscourts.gov


Charlie Cain ccain@cstrial.com
Brad Kloewer- bkloewer@cstrial.com
Ashley Morgan- amorgan@cstrial.com
Carolyn Mathias - cmathias@cstrial.com
Scotti Beam- sbeam@cstrial.com
*Plaintiff's counsel*

Peter Ticktin- pt@legalbrains.com
David Perry- DPerry@legalbrains.com
*Patrick Bryne Counsel*
Chris Dempsey- chris@cdempseylaw.com
*Counsel for Defendants The America Project, Inc. and Steven Lucescu*


I hereby certify that on July 6, 2026, a true and correct copy of the foregoing **ANDREA HALL'S RESPONSE TO COURT'S ORDER DATED JUNE 15, 2026 FOR AN ORDER TO SHOW CAUSE** was sent via regular mail through the United States Postal Service to the following parties:

United States District Court
Middle District of Florida, Tampa Division
801 North Florida Avenue
Tampa, Florida 33602

12

By:   /s/ Andrea M. Hall
       Andrea M. Hall, #36410