IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:24-cv-00008-TPB-SPF

ERIC COOMER, Ph.D.,

      Plaintiff,

v.

PATRICK BYRNE, STEVEN LUCESCU,
and THE AMERICA PROJECT, INC.,

      Defendants.

_____/

## PATRICK BYRNE'S RESPONSE IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The Defendant, Patrick Byrne, by and through his undersigned counsel, hereby files this his Response in Opposition to the Plaintiff's Motion for Partial Summary Judgment (hereinafter the "MSJ") (Doc. 333), and states:

## Introduction

The gravamen of the Compliant in the above styled lawsuit is that Mr. Byrne allegedly produced a movie, *The Deep Rig*, and is therefore supposedly liable for the statements which were stated by third parties, Joseph Oltmann, and Phil Waldron in the movie.

Although the Complaint avers that Phil Waldron and others stated that the 2020 Presidential Election had been rigged, none of those statements were defamatory, nor were they defamatory against Mr. Coomer, personally.

In fact, the whole case truly is based on the statement made by Mr. Oltmann,

who stated in the movie that he had been on a telephone call with members of Antifa (hereinafter the "Antifa Call") and he heard the voice of one of the participants who was identified as "Eric from Dominion." Mr. Oltmann claims that he later has had occasions to hear Eric Coomer speak, that his voice is extremely unique, and that the voice is identical to the voice of the man on the Antifa Call.

Mr. Oltmann is an earwitness, similar to an eyewitness. However, Mr. Coomer claims that he was not on the Antifa Call.

Mr. Oltmann first gave his account of his "Antifa call" experience in November of 2020, roughly seven months before the *The Deep Rig* existed. The Plaintiff, Eric Coomer, Ph.D. testified that the statements he sues over were "mostly stated by Joe Oltmann." Coomer January 27, 2026 Deposition. 35:24-36:02 (Opp. Ex. A).

The MSJ seeks a partial summary judgment only as to Dr. Byrne's defense of substantial truth that Dr. Coomer was not on a shared telephone call where he reportedly stated: "Trump isn't going to win. I fucking made sure of it."

When Dr. Coomer was asked in his deposition what Dr. Byrne did to publish anything, Dr. Coomer answered that Dr. Byrne "bankrolled" the Film, and that whether that creates liability "is a question of law, which I'm not able to answer." *Id.* 47:03-17. The Film's producer testified that non-party director Roger Richards decided what went into the Film, including the Coomer material. Lucescu February 18, 2025 Deposition. 57:17-20 (Opp. Ex. C) ("Roger. It was his job to edit

2

it."); *id.* 147:16-18 ("Roger put it in.").

The MSJ seeks a determination that the "statements about Dr. Coomer" in, *The Deep Rig*, were "defamation *per se* as a matter of law." However, any speech of public concern cannot, as a matter of law be presumed to warrant damages. The Plaintiff is required to prove: publication by Dr. Byrne, material falsity, actual malice, causation, and actual damages at trial. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974).

Dr. Coomer's MSJ seeks to brand statements, most of which were made by non-parties, as "defamatory" before any jury decides who published what, whether any statement is false, or whether any statement is actionable at all.

Coomer's second request was for an order "striking" Dr. Byrne's pleaded defense of substantial truth. This defies the Constitution. Falsity is the Plaintiff's burden, not Dr. Byrne. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-77 (1986). To take that issue from the jury Dr. Coomer offers his own, self-serving, declaration, an unsworn letter from a settling co-defendant Steve Lucescu, and testimony of a witness from a different lawsuit who answered "No, I don't really know."

Dr. Coomer understands that he is now wading through quicksand. His request to preclude a substantial truth defense is motivated by his fear of testifying at this trial now that he has changed his testimony. His testimony has changed like the wind blows. Coomer, in June of 2022, testified before a grand jury, in an effort

to indict President Trump, and was asked by a grand juror whether he rigged the 2020 election campaign.  Coomer unequivocally testified "no" and that he did not have "access" nor the "technical capability" to do so.  Coomer Ga. Grand Jury Test. (June 14, 2022) 43:5-17 (Opp. Ex. F). Coomer repeated the same false statement at trial against Mike Lindell. Lindell Trial Tr. 71:16-19.  However, Dr.  Coomer did have insider access and finally fessed up under oath in this case.  Dr. Coomer finally admitted to insider remote access to "unofficial" tally results.  Coomer Dep. 137:7-17 (Opp. Ex. A).  Unofficial tally results became the official certified results, and a full hand count was never performed.  He's reluctant to expose himself on this issue before a jury at trial and hopes this court insulates him from this line of testimony.

### **Response to Dr. Coomer's Statement of Material Facts[1]**

Dr. Byrne hereby indicates which of the facts which are listed by Dr. Coomer which are in dispute and present a genuine issue for trial, and he then specifies additional facts presenting genuine issues for trial:

2.      Disputed that its "stated goal" was building TAP's membership and fundraising:   the cited declaration paragraphs describe post-production promotion, not the Film's goal, and the declarant lacks personal knowledge of the filmmakers' purposes.  F.R.Civ.P. 56(c)(4).  The producer testified TAP "didn't

---

[1] Admissions that quoted material appears in the Film (Pl. Ex. 2) admit neither Dr. Coomer's characterizations nor that Dr. Byrne made, adopted, or published any other speaker's statement. Dr. Byrne does not concede that any statement in the Film is false or defamatory, and nothing in this Response may be construed as such a concession.  Dr. Byrne also objects under Rule 56(c)(2) to any fact resting on Dr. Coomer's declaration (Pl. Ex. 1); see the Argument below.

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

have a role in this film" and did not exist until filming was complete.  Lucescu Dep. 126:11-14; 119:12-16.

3.      Disputed that Dr. Byrne was actually a producer of the film.  See Lucescu Dep. 40:6-41:15; Byrne December 15, 2025 Deposition. 27:16-28:04 (Opp. Ex. B).

4.      Disputed as to the characterization that it summarizes "how the targeted election fraud occurred."

7.      Disputed and objected to: the cited testimony is from an April 2024 deposition in a lawsuit to which Dr. Byrne is not a party and is not usable against him.   F.R.Civ.P.  32(a)(8);  F.R.E.  804(b)(1);  F.R.Civ.P.  56(c)(2).   It is also incomplete:  Flynn answered, "No, I don't really know," then added that he has "seen a lot of evidence" and that "credibility is in the eye of the legal system to determine," and his counsel, not he, invoked the Fifth Amendment.  Pl. Ex. 5, Flynn Dep. 56:6-20; 56:25-57:11.  The closing assertion that this information was not "presented in the Film" is an anachronism: the testimony postdates the Film by three years.

8.      Admitted.

9.      Admitted that the Film contains the described segments.  Disputed as to the characterization "speculating."

10.      Admitted.  The Film's Coomer footage is Dr. Coomer's own April 13, 2017 public video explaining adjudication.

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

11.     Admitted that the Film contains the quoted segment, in which non-party Mr. Oltmann recounts in the first person his claimed discovery of the alleged call.  Dr. Byrne did not make, write, or select these statements.  See Additional Facts ¶ 1 below.

12.     Admitted that the Film contains the described segments by Dr. Coomer (his own demonstration video), non-party Waldron, and non-party Mr. Oltmann.

16.      Disputed to the extent the paragraph attributes those statements to Dr. Byrne.

17.     Disputed as to the argumentative characterizations, including that Dr. Coomer's "role in this conspiracy is unclear."  Dr. Byrne testified to the basis of his statements: accounts and demonstrations from fifteen Venezuelan defectors whose identities he said were confirmed with federal personnel.  Byrne Dep. 236:03-12; 173:14-25; 174:04-11; 239:12 ("I've been sitting with 15 Venezuelan engineers").

18.     The quotation is inaccurate: Dr. Byrne testified he is "highly confident that the gist of the story is true," and that Dr. Coomer "directed Venezuelan developers to develop software that could rig elections," not "rig the election."  *Id*. 179:24-180:02.  Disputed to the extent "did not independently verify" implies no basis for belief.  See Additional Facts ¶ 3 below; Pl. Ex. 10 at 7-8.

19.     Disputed as to "took a different position":  the response, that Dr.

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Byrne never said Dr. Coomer "manipulated, altered, or otherwise interfered with the 2020 presidential election results" and did not publish statements to that effect, is consistent with his testimony and his position throughout this case. Pl. Ex. 10 at 8-11.

23.    Whether Dominion's platform is capable of bulk adjudication and always retains a durable audit log are contested technical questions supported here only by Dr. Coomer's own declaration. Dr. Byrne testified to the contrary: "It may not appear to have that functionality at the surface, but it actually has the functionality beneath the surface to do things." Byrne Dep. 172:25-173:06; see *Id.* 173:14-25. Dr. Coomer's own expert, Alex Halderman, acknowledges "security weaknesses in voting systems sold by all major vendors." Halderman Decl. ¶ 11 (EC 008648-008725) (Opp. Ex. D).

24.    Statement: Dr. Coomer was on the Antifa Call. This is disputed in that Joseph Oltmann heard Dr. Coomer speak on the Antifa Call. An interested witness' denials resolve anything as a matter of law; credibility is for the jury, and Dr. Coomer's own testimony supplies impeachment. He broadcast a post captioned "Antifa has made a statement," containing what he called Antifa's "statement to all media," to approximately 300 Facebook contacts because he "found it funny," and agreed with parts of it. Coomer Dep. 206:18-208:09; 208:14-209:06. Dr. Coomer is a registered Democrat who testified "I do not like [Trump's] policies or who he is as a person." *Id.* 52:20; 53:10-13.

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

25. Statement:  Dr. Coomer has experienced threats and harassment, and that Dr. Coomer states he moved abroad in October 2024.  Disputed as to causation and attribution:  the accusation has circulated since November 2020; Dr. Coomer has sued at least five sets of defendants over it and holds an uncollected $2.3 million judgment against another speaker; and he attributed a recent "uptick" in threats to litigation postings, not the Film.  Coomer Dep. 38:14-39:01; 33:06-10; 94:04-10.

26. Statement: No one vetted *The Deep Rig*  for accuracy.  Disputed and objected to under Rule 56(c)(2).  Dr. Coomer's Exhibit 4 is an unsworn letter, not a declaration under 28 U.S.C. § 1746, and unsworn statements may not be considered on summary judgment.  *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003).  It is hearsay, and it contradicts Lucescu's sworn testimony that vetting was the director's responsibility, that he had "no control over the editing," and that "Joe Oltmann firmly believes what he represented."  Lucescu Dep. 66:15-22; 67:01-05; 99:20-100:11.  On its face, it concedes Mr. Oltmann provided a "sworn statement" and attributes inclusion of his content to "the director."  Pl. Ex. 4.  A negotiated post-settlement letter that impeaches its own author creates jury questions; it does not eliminate them.

**Additional Material Facts Presenting Genuine Issues for Trial**

1. Mr. Oltmann discussed what he heard on the "Antifa call" publicly in

8

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

November 2020, approximately seven months before the Film premiered, and Dr. Coomer's only theory of Dr. Byrne's responsibility for the Film's statements is that he "bankrolled it."  Doc. 333 ¶ 12; Coomer Dep. 35:24-36:02; 47:03-17.

2.     Non-party director Roger Richards made the ultimate decisions on the Film's content and put the Coomer material in the Film.  Lucescu Dep. 57:17-20; 147:16-18; 67:01-05.  Dr. Coomer's contrary showing rests on a contractual approval right and editing suggestions, but the record establishes that those rights were not honored in fact.  Dr. Byrne had no input on the content ("No.  Not at all."), his approval right was disregarded, and his notes were refused as "too late."  Byrne Dep. 38:16-25; 36:03-37:06.  A contractual right the record shows went unexercised does not establish publication as a matter of law; at most it frames a dispute for the jury.

3.     Dr. Byrne identified ten named individuals who provided him information about Dominion voting machines and their adjudication features between October 1, 2020 and June 26, 2021, Pl. Ex. 10 at 7-8; he testified to demonstrations and accounts from Venezuelan defectors vetted with federal personnel, Byrne Dep. 173:14-25; 236:03-12; and he testified that he is "highly confident that the gist of the story is true," *id*. 179:24-180:02.

4.     The discovery responses Dr. Coomer filed as Exhibit 10 document the Antrim County, Michigan vote-total fluctuations; a machine anomaly reported to the U.S. Election Assistance Commission in Williamson County, Tennessee; a

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

programming error in DeKalb County, Georgia; the Texas Secretary of State's January 2020 refusal to certify Dominion's system as "safe from fraudulent or unauthorized manipulation"; and the findings in *Curling v. Raffensperger*, 493 F. Supp. 3d 1264 (N.D. Ga. 2020), that Dominion technology "presents serious system security vulnerability and operational issues." Pl. Ex. 10 at 9-11. Dr. Coomer's expert Dr. Halderman likewise states that scientists "have warned for many years that there are security weaknesses in voting systems sold by all major vendors," while disputing exploitation. Halderman Decl. ¶¶ 11, 35.

5.    Dr. Coomer admitted that he ran the Denver group that built Dominion's Digital Adjudication System, wrote code for Sequoia products, and could run reports showing unofficial tally results after polls closed. Coomer Dep. 48:14-49:05; 42:05-06; 137:12-14. He has litigated the same accusation against at least five sets of defendants, holds an uncollected $2.3 million award against Mike Lindell, and testified his damages here are not yet quantified. *Id.* 38:14-39:01; 33:06-10; 89:16-23.

6.    Mr. Oltmann, the non-party who made the challenged accusation, gave sworn deposition testimony in this case affirming his first-hand account of overhearing Dr. Coomer on the "Antifa call." He testified that Dr. Coomer was on the call: "I knew back in September it was Eric Coomer. The Eric Coomer that was on the call was the Eric Coomer of Dominion Voting Systems." Oltmann June 9, 2026 Deposition. 96:14-16 (Opp. Ex. E). Asked what evidence he had of what Dr.

10

Coomer did, Oltmann answered, "By his own words.  His own words.  Don't worry about it.  Trump is not going to win.  I made sure." *Id.* 109:22-24.  Oltmann testified that he "wrote down what [he] heard" and "still believe[s] somebody has a recording of this somewhere." *Id.* 102:14-18.  He confirmed that he is "more than sure now," *id.* 204:6, and "absolutely certain that [Dr. Coomer] was the one that was on the telephone call," *id.* 204:7-10, and that it was Dr. Coomer who "actually said that with the unique voice that he has," *id.* 210:10-18.  His confidence rests on Dr. Coomer's distinctive voice.  Mr. Oltmann testified that the more he has heard Dr. Coomer's voice, the "more sure" he has become that Dr. Coomer "was the one that was on that phone call," *id.* 204:1-6, and, asked whether he had ever met "anybody else that has a voice that is just like Eric Coomer's voice," he answered, "No," *id.* 203:23-25.

7.      Dr. Coomer's motion to strike all six of Dr. Byrne's experts (Doc. 310) is pending, and the Court has held that technical feasibility evidence is to come through experts.  Doc. 328.

8.      A Colorado jury has since confronted the same "Antifa call" account when Mr. Oltmann himself repeated it under his own name, and did not find it defamatory.  In a separate action arising from the same claimed call, the jury was asked whether Dr. Coomer proved a defamation claim based on Mr. Oltmann's May 3, 2021 restatement of the call and his August 12, 2021 first-hand account of it at the Cyber Symposium, as to each defendant.  Verdict Forms at 1-2, *Coomer v.*

11

*Lindell*, No. 1:22-cv-01129-NYW-SBP (D. Colo. June 16, 2025), ECF Nos. 375, 377, 379 (Opp. Ex. G).  The jury answered no as to the same statements attributable to Oltmann.  Final Judgment at 1-2, *id.*, ECF No. 381 (June 24, 2025) (Opp. Ex. G).[2]

9.      Dr. Coomer told the Lindell jury that he "did not have the access," yet later admitted in the Byrne deposition that he had remote access to unofficial live vote-tally results.   Lindell Trial Tr. 71:16-19; Coomer Dep. 137:7–17.   That admission is absent even from the White House's recent public disclosure concerning voting-machine vulnerabilities.[3]

## **Legal Standard**

Colorado substantive defamation law governs this transferred case,[4] though the MSJ fails equally under the Florida law Dr. Coomer briefs.  Because the challenged speech addresses a matter of public concern, Dr. Coomer must prove, by clear and convincing evidence, both that the challenged statements are materially false and that Dr. Byrne acted with actual malice.  *Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1105-06 (Colo. 1982); *Fry v. Lee*, 2013 COA 100, 408 P.3d 843; *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767,

---

[2] This record is offered for its bearing on the reasonableness of reliance on Mr. Oltmann's account, not as a claim of issue-preclusive effect.  Dr. Byrne was not a party to that action.

[3] *See* The White House, *Election Integrity: Vulnerabilities in Electronic Voting and Ballot-Counting Systems*, https://www.whitehouse.gov/election-integrity/ (last visited July 21, 2026).

[4] The Plaintiff filed this action in the District of Colorado, and it was transferred under 28 U.S.C. § 1404(a).  The transferor forum's choice-of-law rules follow the case, *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990), and select Colorado substantive law.   The Plaintiff briefs Florida law while acknowledging Colorado law is "substantially the same."  Doc. 333 at 15 n.53, 19 n.54.  This response cites both.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

776-77 (1986).

## Argument

### The Requested Determination Adjudicates No Claim or Element

Rule 56 authorizes judgment on "each claim or defense" or "part of each claim or defense." F.R.Civ.P. 56(a). However, the MSJ's first request is directed at no element of any claim against any defendant. The MSJ does not ask the Court to find that Dr. Byrne published anything; publication is the subject of Dr. Byrne's own pending motion, and the MSJ does not reach the issue of publication. Nor does the MSJ identify which statements, by which of the Film's many speakers, are to be adjudicated. Dr. Coomer's chart mixes non-party statements with Dr. Byrne's commentary that names no one and with facts that are true and admitted. Doc. 333 ¶ 32. Even as to any single statement, a bare determination that it is "*per se*" defamatory would resolve no element against any defendant and would presume no damages here. Rule 56 does not authorize an advisory label untethered to liability.

Whether any statement is defamatory *per se* would not matter in any event. Its office is to presume damages. See Doc. 333 ¶ 30 (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953), for a "conclusive legal presumption of loss or damage"). That presumption cannot operate here. *Richard v. Gray* predates *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and the presumption is unconstitutional as applied to public-concern speech absent actual malice. *Gertz*, 418 U.S. at 349.

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Florida has abolished presumed damages against media defendants outright. *Mid-Fla. Television Corp. v. Boyles*, 467 So. 2d 282, 283 (Fla. 1985). Colorado, in turn, requires every public-concern plaintiff to prove actual malice by clear and convincing evidence, regardless of status. *Diversified Mgmt.*, 653 P.2d at 1105-06. The declaration would therefore relieve Dr. Coomer of nothing and narrow nothing. It would lend a judicial imprimatur to Dr. Coomer's characterization of the Film before trial, and the Court may deny it for that reason alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

**Per Se Meaning Must Appear on the Statement's Face**

Dr. Coomer's own authorities require that a publication be defamatory "when considered alone without innuendo," and they classify words "injurious only as a consequence of extrinsic facts, such as innuendo" as *per quod*. Doc. 333 ¶¶ 30-31. Colorado likewise requires that the "defamatory meaning must be apparent from the face of the publication." *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004). Nonetheless, Dr. Coomer's MSJ identifies no discrete statement whose face carries the sting. The MSJ assembles a twelve-proposition "narrative" from "[t]he relevant factual context" of a one-hour-and-forty-five-minute film, Doc. 333 ¶ 32, and derives a defamatory meaning only from the interaction of separate statements by separate speakers. As such, Dr. Coomer's own cited authority attaches *per quod* consequences to it, including proof of special damages. Doc. 333 ¶ 31.

14

The components of the chart confirm the problem.  Item 4 concerns Dr. Coomer's adjudication role, which he admits.   Item 5 (the "Antifa" post) is grounded in Dr. Coomer's own broadcast of Antifa's "statement to all media" to roughly 300 people.  Coomer Dep. 206:18-208:09.  Items 8 through 10 name no defendant.  A true statement cannot be defamatory, because falsity is an element of the tort, and a statement reasonably capable of a non-defamatory reading presents a jury question.  *Hepps*, 475 U.S. at 776-77  *See also Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. 4th DCA 1973).  Dr. Coomer has not established that any item on the chart is false.  The remaining item is Mr. Oltmann's first-person account of what he testified he overheard.  It is the statement of a non-party, ear-witness stating what he overheard on a zoom call, and the MSJ never addresses why Dr. Byrne is responsible for it.

**Falsity is Dr. Coomer's Burden[5]**

The MSJ rests on a premise that "[t]o survive summary judgment, Byrne must come forward with admissible evidence from which a reasonable juror could conclude that the 'gist' or 'sting' of the challenged statements in the Film are true." Doc. 333 ¶ 36.  However, Dr. Coomer's premise is not the law.  A plaintiff suing over speech of public concern "bear[s] the burden of showing falsity." *Hepps*, 475 U.S. at 776-77; *Diversified Mgmt.*, 653 P.2d at 1105-06; *Fry*, 2013 COA 100.  Dr.

---

[5] The motion's conclusion asks the Court to strike "Defendants'" affirmative defense, Doc. 333 at 22, but its argument is directed at Dr. Byrne alone, *id.* ¶ 36, citing his Answer, *id.* at 1 n.1.  The Defendant, The America Project, Inc., is separately represented and responds separately.  This response is submitted on behalf of Dr. Byrne.

15

Byrne's First Affirmative Defense pleads that "any statements made by the Defendant, Dr. Byrne as alleged by the Plaintiff, were made were either true or substantially true." Doc. 253 at 10. That defense mirrors an element Dr. Coomer must prove, and it was pleaded from caution. Where Dr. Coomer bears the burden of proving falsity, substantial truth is not a burden-shifting affirmative defense but the negation of an element of his claim. "Striking" Dr. Byrne's substantial truth defense would not relieve Dr. Coomer of his constitutional burden or remove truth from the case. Because falsity remains Dr. Coomer's burden, his summary-judgment burden is the demanding one: he must offer evidence so compelling that no reasonable jury could find the gist substantially true, with all inferences drawn for Dr. Byrne and credibility reserved. *Anderson*, 477 U.S. at 254-55. Pointing to claimed gaps in Dr. Byrne's proof cannot carry that burden.

**The MSJ Attacks a Statement Dr. Byrne Did Not Make**

There is a deeper mismatch. The MSJ defines the "gist" it seeks to adjudicate as Mr. Oltmann's accusation: that Dr. Coomer "confessed to rigging the 2020 presidential election" and probably "affected the election results." Doc. 333 ¶ 36. Dr. Byrne's pleaded defense, however, concerns "statements made by the Defendant, Dr. Byrne." Doc. 253 at 10. Dr. Byrne has maintained throughout this case that he did not make, select, edit, approve, or publish Mr. Oltmann's statements, and his own motion for summary judgment seeks judgment on that ground. See Pl. Ex. 10 at 11. Dr. Coomer cannot obtain summary judgment against

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

a defense by rewriting it into a promise to prove what Mr. Oltmann overheard on a Zoom call true and then demanding that proof. The Court need not decide whether Mr. Oltmann's account is true to deny the MSJ, and Dr. Byrne does not ask it to. Mr. Oltmann has sworn to that account, testifying that he is "more than sure" Dr. Coomer was on the call and that he "wrote down what [he] heard." Oltmann Dep. 204:6; 102:14. A sworn, first-hand account that squarely contradicts Dr. Coomer's denial confirms a genuine dispute for the jury, not a basis for summary judgment. A Colorado jury confronting that same account under oath from Mr. Oltmann did not find it to be defamatory. Additional Facts ¶ 8.

What Dr. Byrne said in the Film concerned voting-machine features, counting interruptions, and the need for scrutiny. Dr. Byrne's statements in the film did not name anybody. Doc. 333 ¶¶ 4-5. As to those statements, no conclusive finding of material falsity is possible on this record. Dr. Coomer's own expert acknowledges "security weaknesses in voting systems sold by all major vendors," disputing exploitation rather than vulnerability. Halderman Decl. ¶¶ 11, 35. Moreover, the discovery responses that Dr. Coomer filed to support his MSJ document the incidents and judicial findings catalogued above. Additional Facts ¶ 4; Pl. Ex. 10 at 9-11. Whether the gist of Dr. Byrne's own words differs materially from that documented record is a jury question. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991); *Bustos v. A&E Television Networks*, 646 F.3d 762, 764-65 (10th Cir. 2011) (Colorado law). A reasonable viewer could understand

17

the Film's gist not as a literal confession by Dr. Coomer, but as the claim that voting systems and vendors warrant public scrutiny, a reading that the record in the case at bar supports. Identifying the gist of a feature-length film with more than a dozen speakers is itself contested, and that dispute alone forecloses judgment under the clear-and-convincing standard. *Anderson*, 477 U.S. at 254-55.

**Dr. Coomer's Evidence Is Interested, Unsworn, or Inadmissible**

First, Dr. Coomer's principal proof is his own declaration, which is not competent summary-judgment evidence.

A declaration executed outside the United States must be subscribed "under penalty of perjury under the laws of the United States of America."  28 U.S.C. § 1746(1). That language subjects a person signing abroad to United States perjury sanctions. Dr. Coomer's declaration recites only "the law of Florida," while stating on its face that it was "[e]xecuted … from an undisclosed location outside of the United States." Pl. Ex. 1 ¶¶ 34-35. A foreign-executed declaration that invokes a State's perjury law rather than the Nation's does not satisfy Section 1746 and may not be considered on summary judgment. *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (declaration not in substantial conformity with Section 1746 must be disregarded as summary-judgment proof).  The Court should decline to consider the declaration. F.R.Civ.P. 56(c)(2). Even if it is considered, a movant's own denials are the testimony of the most interested witness, and credibility is for the jury.

18

*Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 628-29 (1944).  Dr. Coomer's declaration denies participating in "any such call, if it occurred."  Pl. Ex. 1 ¶ 34. Nonetheless, Dr. Coomer has admitted to having broadcast Antifa's "statement to all media" because he "found it funny," and he agreed with parts of it, Coomer Dep. 206:18-208:09; 208:14-209:06.

Secondly, Dr. Coomer relies on the unsworn Lucescu letter, which Rule 56 does not permit the Court to consider, *Roy*, 53 F.4th at 1347, and which in any event concedes that Mr. Oltmann's account rests on a "sworn statement" and contradicts its author's sworn testimony.  Compare Pl. Ex. 4, with Lucescu Dep. 66:15-22, 67:01-05, 99:20-100:11.  As such, Steve Lucescu's unsworn, negotiated apology is not conclusive proof, and at best it is impeachment material.

Thirdly, Dr. Coomer relies on deposition testimony of Michael Flynn from a case to which Dr. Byrne is not a party.  Rule 32(a)(8) does not permit its use here, and no hearsay exception applies.  F.R.E. 804(b)(1).  On its own terms, the testimony is that Flynn "do[esn't] really know" and does not know Dr. Coomer.  Pl. Ex. 5, Flynn Dep. 56:6-20; 60:23-61:16.  A witness with no knowledge proves nothing in either direction.

Fourthly, the rulings Dr. Coomer invokes from other cases, were pleading-stage or anti-SLAPP decisions on other records, almost all against other defendants.  Doc. 333 ¶ 41.  Those rulings are not evidence here, and none was a final judgment on falsity that could preclude anything.  *Taylor v. Sturgell*, 553 U.S.

19

880, 892-93 (2008); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-27 n.5 (1979).

Finally, the refrain that there is "no admissible corroborating evidence," asks the Court to weigh evidence, not to find that none exists.  Doc. 333 ¶¶ 42-43.  Dr. Coomer's own Exhibit 10 identifies ten named individuals who provided Dr. Byrne information during the relevant period and documents the incidents described above.  Pl. Ex. 10 at 7-11.  Dr. Byrne also testified to demonstrations and accounts from his sources.  Byrne Dep. 173:14-25; 236:03-12.  The Court has held that the technical feasibility questions are for expert evidence, and Dr. Coomer's motion to strike Dr. Byrne's six experts (Doc. 310) remains pending. Doc. 328.  Dr. Coomer cannot move to exclude the very evidence the Court reserved to expert testimony and, in the same breath, ask the Court to treat its absence as proof of falsity.

## Conclusion

Dr. Coomer asks the Court to label a film defamatory without deciding who published it, and to erase a truth defense without carrying his own burden on falsity.

WHEREFORE, the Defendant, Patrick Byrne, respectfully requests that the Court deny Dr. Coomer's Motion for Partial Summary Judgment in its entirety, and grant such other and further relief as this Honorable Court may deem just and proper.

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 21, 2026, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

*/s/ David L. Perry II*
Peter Ticktin, Esquire
Florida Bar No. 887935
David L. Perry II, Esquire
Florida Bar No.: 1045902
Serv512@LegalBrains.com
Serv600@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Attorneys for Patrick Byrne*

21