IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:24-cv-00008-TPB-SPF

ERIC COOMER, PhD.,

    Plaintiff,

v.

PATRICK BYRNE, STEVE LUCESCU,
and THE AMERICA PROJECT, INC.,

    Defendants.

_____/

### PATRICK BYRNE'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

The Defendant, Patrick Byrne, by and through his undersigned counsel, hereby files this his Reply in Support of his Motion for Summary Judgment (Doc. 334), and in reply to the Plaintiff's Response in Opposition (Doc. 351, the "Response"), and states:

### Introduction

On February 17, 2021, Patrick Byrne agreed to fund The Deep Rig, a film about the 2020 election, with an initial $250,000. Resp. ¶¶ 28-29. The contract names "Roger Richards as the Director & Writer," and Dr. Byrne as the Investor/Contributor. Resp. Ex. 4, at 1-2.

Joseph Oltmann first told his story on November 9, 2020, on his own podcast. Resp. ¶ 65. He later told it on camera: he joined a call and heard a man

tagged as "Eric, the Dominion Guy" say Donald Trump would not win.  Resp. ¶¶ 64, 80.  Roger Richards, the director who controlled that content, is not a defendant.

Dr. Coomer's Response settles three issues.  First, Dr. Coomer "is not proceeding on a theory that the statements from Byrne's mouth are actionable defamation."  Resp. ¶ 78.  Secondly, Dr. Coomer "does not contest that the actual malice standard applies."  Resp. ¶ 51.  Thirdly, Dr. Coomer met two of the Motion's central facts with the single word "Denied."  Resp. ¶¶ 8, 12; CMSO ¶ 14(d) (Doc. 136); F.R.Civ.P. 56(e)(2).

**Financing a Film Is Not Publishing Another Man's Accusation**

Publication is an act, "the communication intentionally or by a negligent act to one other than the person defamed," and one who only delivers another man's words answers "if, but only if, he knows or has reason to know of its defamatory character."  Restatement (Second) of Torts §§ 577(1), 581(1) (1977).  At this stage Dr. Coomer must tie that act to Dr. Byrne with evidence.

The Second Amended Complaint offered one example: "[i]n a separate email, Byrne instructed Lucescu to add footage of Dr. Coomer."  SAC ¶ 62.  Discovery has closed, and the Response identifies no such email.  Pleading allegations were enough then; Rule 56 asks for evidence, and a movant may prevail by showing there is none.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Dr. Coomer's Response now points to the contract's "a heavy hand" input,

2

"to make the edit, or not to make the edit." The clause promises access and "input as requested," not authorship of the accusation. Resp. Ex. 4, at 2. The contract never mentioned Dr. Coomer, Mr. Oltmann, or the accusation. Resp. Ex. 4.

On May 12, 2021, Dr. Byrne sent the producer seventeen numbered notes about the background music, the chyrons, and a splash screen about a leaking toilet. Resp. Ex. 5. By July the producer's letter credited Dr. Byrne with "over 75 other changes in the edit." Resp. Ex. 9. Nowhere does the Response identify an edit in which Dr. Byrne asked to add or keep anything Mr. Oltmann said about Dr. Coomer. Resp. Exs. 5, 8, 9.

Asked who made "the ultimate decision on what content to include," the producer Steve Lucescu answered, "Roger." Lucescu Dep. 57:17-20.

Dr. Byrne was no passive benefactor, and this Reply does not pretend otherwise. He decided that Sidney Powell would come out of the film, and the producer agreed that "eventually he did take over some responsibility." Lucescu Dep. 57:21-25, 71:20-23. Yet Mr. Lucescu tied Dr. Byrne's "ultimate say" to "because Patrick funded the project." Lucescu Dep. 72:22-23. Dr. Byrne testified that he received the finished film "the night before" the premiere, called in notes, and was told "It's too late." Byrne Dep. 36:5-17, 37:1-6.

A man who writes a check publishes nothing.

The point is not new. In *Auvil v. CBS "60 Minutes,"* 800 F. Supp. 928, 931 (E.D. Wash. 1992), *aff'd*, 67 F.3d 816 (9th Cir. 1995) the defendant Broadcasters

3

who held both the contractual right and the practical ability to cut a network segment were not liable for what it said, because the power to censor does not create a duty to censor.

Therefore, Dr. Byrne cannot be liable as the publisher of words Mr. Oltmann spoke and Dr. Coomer cannot trace to him.

**No Reasonable Jury Could Find Clear and Convincing Evidence That Dr. Byrne Doubted the Story**

Mr. Oltmann's segment has two parts.  First, an account: Mr. Oltmann joined a call and heard the man another participant tagged.  Resp. ¶¶ 64, 80. Secondly, a conclusion that Dr. Coomer probably affected the election result.  Resp. ¶ 80.

The CISA statement, the Barr comment, and Dr. Halderman's opinions dispute the conclusion that Dr. Coomer affected the election.  Resp. ¶¶ 71-72. However, disputing the conclusion is not doubting the call.  Reckless disregard requires clear and convincing evidence that Dr. Byrne "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  The anonymity of the participant who tagged the voice goes to Mr. Oltmann's process, not to Dr. Byrne's belief.  Resp. ¶ 64.

Dr. Coomer's Response offers no testimony that Dr. Byrne doubted the account.  When asked in his deposition, "So you didn't really believe this call happened, did you, Mr. Byrne?" Dr. Byrne answered, "That is totally false.  I totally believe it.  I still believe it happened."  Byrne Dep. 186:3-6.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

When Dr. Byrne did doubt something, he said so in writing.  Dr. Byrne asked that a Ruby Freeman clip come out because of "[s]ome uestion [sic] about whether it was authentic or not." Resp. Ex. 5.  Dr. Coomer identifies no request by Dr. Byrne to take out Mr. Oltmann's segment.

Dr. Coomer's answer is that Dr. Byrne kept the story out of his book, because he would not "hang my hat" on an unrecorded account that would not "get a national investigation started." Resp. ¶ 70.  That is a judgment about what would persuade, not a doubt about what happened.  Asked whether the missing recording made the story "less reliable," Dr. Byrne answered, "Not unreliable." Byrne Dep. 63:10-12.

Nor does a thin investigation supply the doubt.  Failure to investigate "does not in itself establish bad faith." *St. Amant*, 390 U.S. at 733.  In *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016), the court required "some showing that the defendant purposefully avoided further investigation with the intent to avoid the truth."  Ill will is no substitute, because "[i]ll will toward the plaintiff, or bad motives, are not elements of the New York Times standard." *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 281 (1974) (quoting *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 52 n.18 (1971) (plurality opinion)).

This Court applied these rules three weeks ago and granted summary judgment although the statement was false, reasoning that "[i]n the absence of an obvious reason to doubt the story," a failure to seek more confirmation "does not

5

suggest that he actually doubted." *Trump Media & Tech. Grp. Corp. v. WP Co. LLC*, No. 8:23-cv-1535-TPB-AAS, 2026 U.S. Dist. LEXIS 157420, at *17-18 (M.D. Fla. July 16, 2026).  The Eleventh Circuit reached the same result for a company that paid forty percent of a television film's cost, even assuming the statement it republished was false.  *Lovingood v. Discovery Commc'ns, Inc.*, 800 F. App'x 840, 843, 849-50 (11th Cir. 2020).

Therefore, no reasonable jury could find clear and convincing evidence that Dr. Byrne doubted the account, and he is entitled to judgment.

**The Remaining Elements and Claims Fail**

Causation fails.  Dr. Coomer testified that the threats he received "were precipitated by false, defamatory statements spread by many individuals, including Dr. Byrne," and that Dr. Byrne sent him none of them.  Coomer Dep. 46:9-22.  Asked whether anyone he worked with had watched the film, Dr. Coomer answered, "I don't have any direct evidence of that, no."  Coomer Dep. 40:17-22. He then said he knew of people in elections who saw the film and named one man whose position he could not state "with any specificity."  Coomer Dep. 41:2-11. That is the Response's evidence that the film "was viewed by people working in elections."  Resp. ¶ 84 & n.81.  The one statement of Dr. Byrne's Dr. Coomer tied to a specific harm was a post about "my responses to RFAs."  Coomer Dep. 94:4-10.

The rest is derivative.  Presumed and exemplary damages require actual

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

malice.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-50 (1974).  Relabeling the claim as emotional distress does not lower the standard.  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988); *Snyder v. Phelps*, 562 U.S. 443, 458-59 (2011).  The injunction is confined to removal "upon final adjudication."  Resp. ¶ 88.  The conspiracy count goes undefended anywhere in Dr. Coomer's Response, and it fails with the tort in any event.  Resp. at 12-32; *Trump Media*, 2026 U.S. Dist. LEXIS 157420, at *22.  Therefore, Dr. Byrne is entitled to judgment on each remaining claim.

## Conclusion

Dr. Coomer's Response names who spoke the accusation and concedes the standard of proof.  Dr. Coomer then asks a jury to find, by clear and convincing evidence, that Dr. Byrne doubted the source he believed.  Rule 56 does not permit that.

WHEREFORE, the Defendant, Patrick Byrne, respectfully requests that this Honorable Court grant summary judgment on all claims; or, in the alternative, enter partial summary judgment under F.R.Civ.P. 56(a) on the conspiracy, emotional-distress, and injunction claims, on exemplary damages, and on so much of the defamation claim as rests on statements Dr. Byrne made himself, which Dr. Coomer does not pursue; and grant such other and further relief as this Honorable Court may deem just and proper.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

## Certificate of Service

I HEREBY CERTIFY that on August 5, 2026, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, which will serve all counsel of record.

*/s/ David L. Perry II*
Peter Ticktin, Esquire
Florida Bar No. 887935
David L. Perry II, Esquire
Florida Bar No.: 1045902
Serv512@LegalBrains.com
Serv600@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Attorneys for Patrick Byrne*

8