IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:24-cv-00008-TPB-SPF

ERIC COOMER, PhD.,

    Plaintiff,

v.

PATRICK BYRNE, STEVE LUCESCU,
and THE AMERICA PROJECT, INC.,

    Defendants.

_____/

**DEFENDANT PATRICK BYRNE'S AND PETER TICKTIN'S
MOTION FOR RECONSIDERATION BASED ON
<u>NEWLY OBTAINED EVIDENCE</u>**

The Defendant, Patrick Byrne, and his counsel, Peter Ticktin, in his individual capacity, by and through their undersigned counsel, hereby file this their Motion for Reconsideration Based on Newly Obtained Evidence, and state:

**<u>Background</u>**

Days from his eightieth birthday, Peter Ticktin defended himself in a hotel lobby from a larger, younger, advancing man, and Florida law stood with him when he did. Doc. 284 at 6-11. Mr. Ticktin stands five feet six inches and weighs one hundred sixty pounds. Charlie Cain, the opposing lawyer who came at him, is five feet ten inches, about two hundred twenty pounds, and twenty-four years younger. Doc. 284 at 6. Mr. Cain made contact by advancing on Mr. Ticktin, pressing his

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

torso into Mr. Ticktin's body, and hovering over him.  Doc. 284 at 3, 7-10.  Mr. Ticktin pushed the bigger man off of himself and moved away.  Florida law has a name for that: self defense.  § 776.012(1), Fla. Stat.

What a man that age has to weigh in that moment is not a bruise.  Mr. Ticktin could not risk going down on a tile floor, because a fall at seventy-nine breaks a hip, and a broken hip at seventy-nine is not something a man reliably walks away from.  A man on the floor with a broken hip cannot defend himself at all.

The statute is short.  A person may use non-deadly force when and to the extent he reasonably believes it necessary to defend himself against another's imminent use of unlawful force, and he "does not have a duty to retreat."  § 776.012(1), Fla. Stat.  This Motion exists because the Court's sanctions order (Doc. 332, the "Order") found the opposite of self defense on one fact, an unmeasured distance.  That distance has now been measured.

On January 27, 2026, the deposition of the Plaintiff, Eric Coomer, was set to begin at 9:00 a.m. in a conference room at the Courtyard Marriott in downtown Tampa.  Doc. 332 at 5.

The deposition did not begin on time.  Dr. Coomer objected to the presence of Joseph Oltmann, a defendant in a related Colorado case, the parties could not agree, and Dr. Coomer's counsel, Charlie Cain, telephoned the Magistrate Judge's chambers for a ruling.  Doc. 332 at 6-7.

While everyone waited, Dr. Coomer and Mr. Cain sat in the hotel lobby near

2

the coffee shop.  Doc. 332 at 7.  At about 9:47 a.m., Peter Ticktin walked out to the lobby to ask them to come back to the deposition room.  Doc. 332 at 7.

Mr. Cain told Mr. Ticktin that he had already called chambers.  Doc. 332 at 7.  Mr. Ticktin objected that the call was an improper *ex parte* communication and told Mr. Cain not to do it again.  Doc. 332 at 7.

What happened next is the entirety of the lobby portion of this sanctions proceeding, and the Order pins it to a clock.  Mr. Ticktin walked out at 0:23 of the recording.  The second push ended at 1:09.  Doc. 332 at 7-8.  Forty-six seconds.  Twice in those forty-six seconds Mr. Cain closed the space between the two men.  Twice Mr. Ticktin pushed the bigger, younger man off of himself and moved away.  Doc. 332 at 7-8; Doc. 284 at 6-11.  That is the conduct the Order sanctioned.  It is also the conduct Florida law protects.

Mr. Ticktin's account has never changed, and it did not begin with this Motion.  Mr. Cain followed him, closed on him, and made contact with him by advancing, pressing his torso into Mr. Ticktin's body, and hovering over him.  Doc. 284 at 3, 7-10.  Mr. Ticktin pushed Mr. Cain off to protect himself.  Doc. 284 at 6-11.  Mr. Ticktin's response in opposition to the sanctions motion (Doc. 284, the "Response") said it in plain words at the time: Mr. Cain's advance "first put Ticktin into apprehension of being hit," and Mr. Ticktin "had the right to use reasonable force to defend himself and prevent a further intrusion."  Doc. 284 at 9.

He said it earlier still, and the Order records it.  Roughly two minutes after

3

Mr. Ticktin first walked out to the lobby, he returned to the deposition room, and there "he announced that he had been provoked by Mr. Cain and that the shoves were self-defense." Doc. 332 at 8-9. Self defense is not a theory built for this Motion. It is what Mr. Ticktin said in the room, minutes after it happened, before any lawyer drafted anything.

Mr. Cain knew whom he was pursuing. After the first push, Mr. Cain followed Mr. Ticktin across the lobby and taunted him: "Hey Old Man, - - - Let's do it!" Doc. 284 at 10. The Order found the taunt as well. It found that Mr. Cain "readily admits to calling Mr. Ticktin 'old man.'" Doc. 332 at 20. It called that "childish name calling" that is "unbecoming of a member of the legal profession." Doc. 332 at 20.

One security camera, mounted high on a lobby wall, recorded those forty-six seconds. Doc. 281-15. A camera like that has a wide-angle lens and a single fixed vantage point. It enlarges what is close to it and compresses what is far from it. It can show that two men were apart. It cannot show by how much.

In other words, a security camera is not a tape measure. Nonetheless, that distinction is what decided the Order.

The Order resolved the second push on the basis of distance, and said so. It found that Mr. Ticktin "stopped and turned around again after walking approximately ten feet." Doc. 332 at 8. It found that Mr. Cain "stopped a couple of feet in front of Mr. Ticktin." Doc. 332 at 8. It found that Mr. Cain "moved past

4

him and put an obvious amount of space between himself and Mr. Ticktin as they talked." Doc. 332 at 18.

Those last two findings are not the same finding. A couple of feet is not an obvious amount of space. The Order's recitation describes one distance and the Order's analysis describes another, and the sanction rests on the larger one. Doc. 332 at 8, 18.

From those distances the Order drew the finding that carries this sanction: "It was Mr. Ticktin who took a step toward Mr. Cain, dropped his left shoulder, and shoved Mr. Cain again." Doc. 332 at 18. The Order then made the reasoning explicit: "This distance between the two attorneys contradicts Mr. Ticktin's claim that Mr. Cain crowded him and prevented him from walking away." Doc. 332 at 18.

The Court measured a hotel lobby by eye, on a wide-angle security camera, and what it saw defeated Mr. Ticktin's account of who closed the distance.

No one had measured that lobby. Not Dr. Coomer, not Mr. Ticktin, and not the Court. The Response said as much, in plain words: "The distance is difficult to tell." Doc. 284 at 10.

However, on July 31, 2026, someone finally measured it.

The floor of that lobby changes surface. Tan tile covers the coffee shop side. Gray patterned carpet covers the seating side. A metal strip runs between the two surfaces across the width of the room, and two square pillars stand on that line.

5

Exs. A, B.

A tape measure was laid along that metal strip and run from the base of one pillar to the base of the other. Exs. C, E. At the base of the second pillar the tape reads twelve feet ten inches, which is four yards and ten inches. Ex. D. Under any reading of that exhibit the span is no less than twelve feet nine inches.

That strip and those two pillars sit in the frame of Dr. Coomer's own surveillance exhibit. Doc. 281-15. Together, the strip and the pillars form a ruler lying on the floor of the Court's evidence, and until July 31, 2026, no one had read that ruler.

Read against that ruler, the forty-six seconds do not say what the Order says they say. The slowed rendition of the second sequence, filed with the Response, shows Mr. Ticktin retreating from Mr. Cain and coming to rest more than three yards away, over nine feet of open floor, with both pillars in the frame to measure that distance against. Slowed Video, Second Push. Doc. 284 at 11. The looped rendition of the moment immediately before the second push shows that the space was gone and that it was Mr. Cain who crossed it. Shoulder Bump Video. Doc. 284 at 10.

Mr. Ticktin did not step toward Mr. Cain. Mr. Ticktin moved more than three yards away, and Mr. Cain followed. The Response said so at the time, in a sentence the Order never addresses: "Mr. Ticktin had stayed still while Cain circled and moved in on him." Doc. 284 at 10.

THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Dr. Byrne and Mr. Ticktin objected to the Order under F.R.Civ.P. 72(a). This Court overruled the objection. This Motion does not repeat that objection. It rests on a measurement taken after the Order issued and after the objection was decided, and it asks this Court to exercise the authority it retains over an interlocutory order. F.R.Civ.P. 54(b).

Mr. Ticktin does not ask this Court to excuse anything, because a man who defends himself within the law needs no excuse. Before a finding that he was the aggressor costs him his fees and his license, let that finding be tested against a tape measure and against the Florida statute.

### Legal Standard

An order that does not end a case may be revised at any time before final judgment. F.R.Civ.P. 54(b). That authority is not spent by a ruling on an objection, because Rule 54(b) reaches any interlocutory order and speaks to the entry of final judgment. F.R.Civ.P. 54(b). Three grounds justify reconsideration: an intervening change in controlling law, the availability of new evidence, and the need to correct clear error or prevent manifest injustice. *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994). Reconsideration is an extraordinary remedy to be used sparingly. *Sussman*, 153 F.R.D. at 694.

This Motion rests on the second ground, the availability of new evidence. A party offering evidence it did not submit before must show that the evidence was not available during the pendency of the earlier proceeding. *Mays v. U.S. Postal*

7

*Serv.*, 122 F.3d 43, 46 (11th Cir. 1997). Reconsideration may not be used to relitigate old matters or to present evidence that could have been raised earlier. *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005).

This Motion does neither. The measurement was taken on July 31, 2026. The finding it answers did not exist until June 29, 2026, and no party had asked for it. Evidence that rebuts a finding cannot have been available to rebut that finding before the finding was made.

**Mr. Ticktin Acted in Self Defense Under Florida Law,
and the New Measurements Confirm Every Element of It**

Florida supplies the rule of decision for what happened in that lobby, because the lobby is in Florida and the question is whether an act of physical force was lawful. Conduct that the Florida Legislature declares justified cannot supply the bad faith that a sanction under this Court's inherent authority requires. The Florida Legislature has answered that question in a single subsection:

> A person is justified in using or threatening to use force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. A person who uses or threatens to use force in accordance with this subsection does not have a duty to retreat before using or threatening to use such force.
> § 776.012(1), Fla. Stat.

Therefore, Florida law has a two-step inquiry for a man in Mr. Ticktin's position. First, whether Mr. Ticktin reasonably believed that force was necessary to defend himself against imminent unlawful force. Secondly, whether Mr. Ticktin

8

stopped short of deadly force.  If the answer to both is yes, Mr. Ticktin's conduct was justified, and the statute adds a third protection on top: Mr. Ticktin had no duty to retreat at all.

Every element is on this record.  The still photographs filed with the Response show Mr. Cain crossing the lobby floor, closing toe to toe, and pressing his torso into Mr. Ticktin's body.  Doc. 284 at 7-9.  On the second approach Mr. Cain circled around Mr. Ticktin and hovered over him.  Doc. 284 at 10.  Each was an unwelcome touching, and the first put Mr. Ticktin "into apprehension of being hit."  Doc. 284 at 9.  The Order accepts the first half of that account.  It found: "While it looks like Mr. Cain stepped into Mr. Ticktin's space before reacting to Mr. Ticktin's sudden stop, it is clear that Mr. Ticktin leaned into Mr. Cain before shoving him backwards."  Doc. 332 at 18.  The Order thus accepted that Mr. Cain closed on Mr. Ticktin once, and rejected, without a measurement, that he did it twice.

Mr. Ticktin's belief that he had to act was reasonable, because the mismatch was extreme and Mr. Cain announced it.  Mr. Cain is four inches taller, sixty pounds heavier, and twenty-four years younger.  Doc. 284 at 6.  While pursuing Mr. Ticktin, Mr. Cain said: "Hey Old Man, - - - Let's do it!"  Doc. 284 at 10.  A man days from his eightieth birthday cannot risk being knocked to a hotel floor.  A fall at that age can mean a broken hip.  A man on the ground with a broken hip cannot protect himself at all if the aggression continues, and a man of that age is not likely

9

to make a full recovery.  Pushing Mr. Cain back to create distance was not merely reasonable.  It was the only defensive option Mr. Ticktin had.

The force Mr. Ticktin used sits at the bottom of the statute's scale.  Mr. Ticktin did not strike Mr. Cain and did not chase him.  Mr. Ticktin pushed Mr. Cain off, twice, each time just far enough to open space between them, and each time Mr. Ticktin then moved away.  Doc. 284 at 6-11.  Force that creates distance and nothing else is the picture of force used "to the extent" reasonably believed necessary.  § 776.012(1), Fla. Stat.

The Order faulted Mr. Ticktin on the one point the statute forecloses.  It found that "Mr. Ticktin could and should have simply walked away."  Doc. 332 at 18.  Florida law imposes no duty to retreat before using non-deadly defensive force.  § 776.012(1), Fla. Stat.  Nonetheless, Mr. Ticktin did more than the law required.  The measurements show that before the second push he moved more than three yards from Mr. Cain, over nine feet of open floor, and that it was Mr. Cain who crossed that space.  Doc. 284 at 10-11; Exs. A through E.  The Order's own background section found that Mr. Cain "followed."  Doc. 332 at 8.  A man who retreats nine feet from an advancing larger man is trying to avoid confrontation rather than instigate one.

This is the crux of the whole Motion.  Every consequence in the Order, the fee award, the grievance referral, the finding that Mr. Ticktin "started the confrontations," runs through the premise that Mr. Ticktin was the aggressor in

10

that lobby.  Doc. 332 at 20.  Florida law strips that premise away.  A lawyer who uses justified defensive force has not acted in bad faith, and there is no basis and no authority for referring him to a grievance committee for conduct the law of Florida declares justified.  The referral can stand only on a finding that Mr. Ticktin was not defending himself, and no court should make that finding, against a tape measure, without a hearing.

Therefore, Mr. Ticktin should not be sanctioned, and should not be referred to The Florida Bar or any grievance committee, for justified self defense.

## The Measurements Are New Because They Answer Distance Findings That No Party Put in Issue and That First Appeared in the Order Itself

Dr. Coomer will say that the hotel lobby has been standing in downtown Tampa the whole time and that anyone could have walked in with a tape measure. That answer sounds strong until one asks what there was to measure.

Distance was not an issue any party briefed.  Dr. Coomer's Motion for Sanctions asked for sanctions over shoves, threats, and the presence of Mr. Oltmann.  Doc. 281.  No party's papers state how far apart the two attorneys stood in that lobby at any moment.  Doc. 281; Doc. 284.

Mr. Ticktin's Response addressed the video and told the Court that the video could not answer the question: "The distance is difficult to tell."  Doc. 284 at 10. The Response put that limitation squarely before the Court, in writing, before any finding issued.  Doc. 284 at 2-3, 10.

11

The Order took a different path.  It resolved the distance itself, on its own viewing, and made the resolution the reason for rejecting Mr. Ticktin's account.  Doc. 332 at 8, 18.  Neither the ten feet nor the couple of feet nor the obvious amount of space appears in either party's description of the lobby encounter.  Doc. 281; Doc. 284.

So the question is not whether a tape measure existed in February 2026.  The question is whether Mr. Ticktin was obliged to guess that the Court would resolve, by eye and without a hearing, a measurement that the Response had expressly told the Court the video could not supply.  Mr. Ticktin was not.  A party is not required to pre-rebut a numerical finding that no one asked for.

Therefore, the measurements are newly obtained evidence within the meaning of the reconsideration standard, because the finding they answer did not exist until the Order issued.

## Objective Evidence That Contradicts a Finding Establishes Clear Error Even Where the Finding Wears the Label of a Credibility Determination

The Order rejected Mr. Ticktin's account as one that "strains credulity."  Doc. 332 at 17.  A credibility label is ordinarily close to unreviewable.  It is not unreviewable when a physical fact contradicts it.

In *Anderson v. City of Bessemer City*, the Supreme Court set out both halves of that rule.  *Anderson v. City of Bessemer City*, 470 U.S. 564 (1985).  A finding is clearly erroneous when the reviewing court "on the entire evidence is left with the

12

definite and firm conviction that a mistake has been committed." *Anderson*, 470

U.S. at 573. A trial judge may not place a finding beyond review simply by calling

it a credibility determination:

> This is not to suggest that the trial judge may insulate his findings
> from review by denominating them credibility determinations, for
> factors other than demeanor and inflection go into the decision
> whether or not to believe a witness. Documents or objective evidence
> may contradict the witness' story; or the story itself may be so
> internally inconsistent or implausible on its face that a reasonable
> factfinder would not credit it. Where such factors are present, the
> court of appeals may well find clear error even in a finding purportedly
> based on a credibility determination.
> *Anderson*, 470 U.S. at 575.

In other words, when a physical measurement contradicts the story a court

believed, the measurement wins.

The contradiction here is not at the margins. The Order did not merely

disbelieve Mr. Ticktin. It named distance as the reason: "This distance between

the two attorneys contradicts Mr. Ticktin's claim that Mr. Cain crowded him and

prevented him from walking away." Doc. 332 at 18. The Order supplied the causal

link itself. Take the distance away, and the stated reason for disbelieving Mr.

Ticktin goes with it.

There is a further reason the measurement is decisive rather than merely

additive. Nothing else holds those findings up. In the four pages in which the

Order makes every finding that carries this sanction, Doc. 332 at 17-20, it cites the

record not once. Elsewhere the Order cites the Response fifteen times. The

distance findings therefore rest on a single foundation, the Court's own viewing of

a wide-angle camera.  Measure the lobby and that foundation is gone, and there is no second one beneath it.

The measurements show that Mr. Ticktin opened more than three yards of separation between himself and Mr. Cain, over nine feet, and that it was Mr. Cain, not Mr. Ticktin, who closed that separation.  Slowed Video, Second Push; Shoulder Bump Video.  Doc. 284 at 10-11.  Exs. A through E.  That is objective evidence contradicting the finding, and it is exactly the circumstance *Anderson* describes.

Therefore, the finding that Mr. Ticktin took a step toward Mr. Cain is clearly erroneous, and the sanctions that rest on it cannot stand.

### An Obstructed Wide-Angle Security Camera Cannot Carry a Distance Finding That Decides a Sanctions Motion

Courts do credit video over a party's contrary account, but only when the recording actually shows the thing in dispute.

In *Scott v. Harris*, the Supreme Court accepted a police dashboard video over the plaintiff's version of a chase, and it was careful to say why it could.  There were "no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Scott v. Harris*, 550 U.S. 372, 378 (2007).  On that footing the Court held that a version "blatantly contradicted by the record" need not be adopted. *Scott*, 550 U.S. at 380.

The Eleventh Circuit has drawn the line on the other side of that condition. Video is "often not obviously contradictory because it fails to convey spoken words

14

or tone and because it sometimes fails to provide an unobstructed view of the events." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010). Where the recording does not clearly depict what happened, the recording does not resolve it.

This recording is obstructed, and the obstruction is a pillar. The photographs show the two pillars standing on the line where the tile meets the carpet, in the part of the lobby the camera watches. Exs. A, B, E. The Response told the Court that a pillar stood between the camera and the men, and it filed slowed renditions that show the pillar swallowing Mr. Cain as he closed. Doc. 284 at 2-3, 6-9; Slowed Video, First Push. The Order never mentions a pillar in its analysis. Doc. 332 at 17-20.

There is a second problem, and it is one no viewer can see. A wide-angle lens does not render distance uniformly across the frame. The same six-foot gap looks different near the center of the image than it does near the edge, and different again when the floor runs away from the lens at an angle. Nothing in this record corrected for that. The Order's "approximately ten feet" and "obvious amount of space" are impressions from an uncorrected image. Doc. 332 at 8, 18.

The measurements fix the problem the only way it can be fixed. They put a known dimension inside the frame the Court was looking at. Exs. A through E.

When a spot is close, no one settles it from the sideline by eye. The chains come out and the ball is measured. That is the practice on any Saturday in

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Gainesville, and it is the right practice where a lawyer's fees and his license turn on a distance of a few yards.

Therefore, Mr. Ticktin should not be sanctioned on a distance the camera never established.

## At a Minimum, the Disputed Facts Should Be Tested at an Evidentiary Hearing

A hearing is not required before every sanction, and Mr. Ticktin does not argue that it is. *Donaldson v. Clark*, 819 F.2d 1551, 1560-61 (11th Cir. 1987) (en banc). What *Donaldson* supplies is a scale. Where a court is asked "to resolve an issue of credibility," the risk of an erroneous sanction under limited procedures and the value of a hearing are "likely to be greater," and "[t]he more serious the possible sanction both in absolute size and in relation to actual expenditures, the more process that will be due." *Donaldson*, 819 F.2d at 1560-61.

Both ends of that scale are at their maximum here. The Order turned entirely on credibility, and it said so. Doc. 332 at 17. The sanction includes a referral of a lawyer with five decades of practice to a grievance committee, with leave to refer him on to The Florida Bar. Doc. 332 at 21.

The self-defense statute is what makes the hearing indispensable. There is no basis and no authority for referring Mr. Ticktin to a grievance committee unless this Court first finds that he was not acting in self defense when he pushed Mr. Cain away. That finding turns on who closed the distance, and the only evidence behind it is an unmeasured impression from a wide-angle lens. Before a lawyer

16

loses the protection of § 776.012(1), Fla. Stat., the distance should be proved in a courtroom, not estimated from a screen.  If the hearing shows that Mr. Ticktin defended himself, then there is nothing to refer, nothing to sanction, and no fee to award.

In *In re Mroz*, the Eleventh Circuit reversed and remanded for an evidentiary hearing because it could not tell from the record whether the sanctioning court had found bad faith or mere negligence, holding that a court invoking its inherent power must afford the sanctioned party due process in determining that the requisite bad faith exists.  *In re Mroz*, 65 F.3d 1567, 1575-76 (11th Cir. 1995).  In *Didie v. Howes*, the Eleventh Circuit held that the district court abused its discretion by deciding a sanctions motion without a hearing where the parties' factual recitations were "starkly contradictory."  *Didie v. Howes*, 988 F.2d 1097 (11th Cir. 1993).

The Order's own recitation supplies the reason a hearing was needed.  It hedges nearly every verb in its description of the encounter, finding that Mr. Ticktin "appeared to remain upset," that the men "appear to talk," and that Mr. Cain "appeared to continue walking one step toward Mr. Ticktin."  Doc. 332 at 8. Those hedges then disappear from the analysis, where the same events become established fact and carry a sanction.  Doc. 332 at 17-18.  The Order elsewhere acknowledged that on part of what it was asked to decide "the submitted evidence is incomplete."  Doc. 332 at 9.

17

A hearing costs the Court an afternoon.  The measurements can be put in, the witness who took them can be cross-examined, and both lawyers can be asked what happened in that lobby.  Set against a fee award and a disciplinary referral, that is not a heavy price for getting the distance right.

Therefore, if this Court does not vacate the sanctions outright, Mr. Ticktin asks that the disputed facts be tested at an evidentiary hearing.

One word on timing.  Mr. Ticktin does not ask this Court to disturb the trial calendar, and he is counsel of record for Dr. Byrne at a trial set for October.  Doc. 332 at 21.  If it suits the Court, the hearing may be set after the trial of this cause. What Mr. Ticktin asks is that the finding not become final, and that the referral not travel to a grievance committee, on a distance no one measured.  Holding the referral and the fee award until the hearing costs the Plaintiff nothing and protects a lawyer's license in the meantime.

## The Disciplinary Referral Should Not Be Transmitted While the Finding That Supports It Is Under Reconsideration

The referral is the gravest part of the Order, and it does not travel as an allegation.  It travels as an adjudicated finding that Mr. Ticktin "started the confrontations" and turned a deposition into a "powder keg."  Doc. 332 at 19-20.

In *In re Ruffalo*, the Supreme Court held that disbarment proceedings are "adversary proceedings of a *quasi*-criminal nature" and that a lawyer facing them is entitled to procedural due process.  *In re Ruffalo*, 390 U.S. 544, 550-51 (1968). A referral built on a finding that a tape measure may contradict is not a sound thing

18

to send forward.  It is less sound still where the conduct referred for discipline is conduct that Florida law declares justified.

Therefore, at a minimum, transmission of the referral should be held until the distance question is resolved, and if this Court finds that Mr. Ticktin acted in self defense, the referral should not issue at all.

## Conclusion

The Order rejected Mr. Ticktin's account because of a distance, and it said so in terms.  Doc. 332 at 18.  However, that distance had never been measured.  It has been measured now, and the pillars in Dr. Coomer's own exhibit stand four yards and ten inches apart.  Exs. A through E.  Read against that measurement, Mr. Ticktin did not close on Mr. Cain before the second push.  Mr. Ticktin moved more than three yards away, and Mr. Cain came after him.  Florida law gave Mr. Ticktin the right to push Mr. Cain off of himself at that moment, and it did not oblige him to retreat another inch.  § 776.012(1), Fla. Stat.

Mr. Ticktin does not ask to be excused, because self defense needs no excuse. He asks to be measured.

WHEREFORE, the Defendant, Patrick Byrne, and Peter Ticktin respectfully request that this Honorable Court grant this Motion, and vacate the Order as to the lobby encounter in its entirety, including the award of attorneys' fees and costs and the referral of Mr. Ticktin to the Tampa Division Grievance Committee; in the alternative, set aside the finding that Mr. Ticktin took a step toward Mr. Cain

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

before the second push, and reconsider the award of attorneys' fees and costs and the referral of Mr. Ticktin in light of the findings that remain; in the further alternative, set an evidentiary hearing to determine whether Mr. Ticktin acted in self defense under § 776.012(1), Fla. Stat., at which the measurements, the surveillance recording, the slowed renditions, and the testimony of the participants may be received and tested, and, upon a finding that Mr. Ticktin acted in self defense, award no fees and enter no referral; in the further alternative, set that hearing after the trial of this cause, and hold transmission of the referral to the Tampa Division Grievance Committee and to The Florida Bar, and enforcement of the award of attorneys' fees and costs, until the hearing is held and decided; and grant such other and further relief as this Honorable Court may deem just and proper.

## Local Rule 3.01(g) Certificate

The undersigned certifies that counsel for the movants conferred with counsel for the Plaintiff on August 12, 2026, by email in a good faith effort to resolve this Motion. Counsel for the Plaintiff, Charles Cain, stated that the Plaintiff opposes the relief sought in this motion.

**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 12, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ David L. Perry II*
Peter Ticktin, Esquire
Florida Bar No. 887935
David L. Perry II, Esquire
Florida Bar No.: 1045902
Serv512@LegalBrains.com
Serv600@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
Attorneys for Patrick Byrne

21