**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ERIC COOMER, Ph.D.,
Plaintiff

v. Case No. 8:24-cv-00008-TPB-SPF

PATRICK BYRNE, et al,
Defendants

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PATRICK BYRNE'S AND PETER TICKTIN'S MOTION FOR RECONSIDERATION BASED ON NEWLY OBTAINED EVIDENCE (DOC. 357)**

---

Plaintiff Eric Coomer, Ph.D., through undersigned counsel, respectfully submits this Response in Opposition to Defendant Patrick Byrne's and Peter Ticktin's Motion for Reconsideration Based on Newly Obtained Evidence (Doc. 357) (the Motion), and states as follows:

## I. INTRODUCTION

Sixteen days after this Court reviewed the video, overruled the objection, and left the Magistrate Judge's sanctions Order (Doc. 332) in place, someone went back to the hotel with a tape measure. What they measured was the distance between two structural pillars. On that basis they ask this Court to vacate a sanctions order in its entirety, erase a grievance referral, undo a fee award, and convene an evidentiary hearing. The Motion should be denied.

The Motion fails at the threshold and at every step after it. It is not a motion for reconsideration. It is a third presentation of the same forty-six seconds of

surveillance video, filed after the Magistrate Judge weighed that video (Doc. 332), after the movants objected under Rule 72(a) (Doc. 344), and after this Court independently reviewed the footage, including the slow-motion versions the movants prepared, and held that the video evidence speaks for itself and that a hearing is not necessary. (Doc. 346 at 2). The movants now ask this Court to disbelieve what it has already seen.

The evidence is not new. The Courtyard Marriott lobby in downtown Tampa has stood in the same place, with the same two pillars and the same tile-to-carpet transition strip, since January 27, 2026. A tape measure is sold at every hardware store in Hillsborough County. The movants themselves used those pillars as a landmark in their Objection, telling this Court that Mr. Ticktin walked all the way to the next pillar before stopping. (Doc. 344 at 4).

Tellingly, the measurement also does not measure anything that matters. Exhibits A through E show that two pillars stand just under thirteen feet apart. They do not show where Mr. Ticktin stood, where Mr. Cain stood, who closed the space between them, or who advanced before the second shove. No affidavit accompanies the photographs. No witness is identified. No expert opines on lens distortion, camera geometry, or the position of either man relative to any fixed point. The movants ask this Court to bridge that gap by inference, and then to treat the inference as objective proof that overrides findings this Court has already affirmed.

Worse for the movants, the measurement confirms the Order rather than contradicting it. The Magistrate Judge found that Mr. Ticktin walked approximately ten feet, that Mr. Cain put an obvious amount of space between the two men, and that Mr. Ticktin then took a step toward Mr. Cain, dropped his left shoulder, and shoved him again. (Doc. 332 at 8, 18). The Motion now insists that Mr. Ticktin was more than nine feet away from Mr. Cain. (Doc. 357 at 6, 10). A man standing nine feet from another man is not being crowded, cornered, or prevented from walking away. The movants' own new evidence establishes the very separation that defeats their claim of self-defense.

Finally, the Motion's centerpiece, Fla. Stat. § 776.012(1) (2025), appears for the first time in this filing, six months after the encounter and two rounds of briefing on it. A motion for reconsideration is not the place to debut a legal theory. In any event, a Florida justification statute does not repeal 28 U.S.C. § 1927, Federal Rule of Civil Procedure 30(d)(2), or this Court's inherent authority to sanction a lawyer who turns a federal deposition into a physical altercation.

## II. PROCEDURAL BACKGROUND

1. On June 29, 2026, the Magistrate Judge granted in part and denied in part Plaintiff's Motion for Sanctions and for Order to Show Cause (Doc. 281), awarding fees, directing that future mediations and depositions occur in the Tampa courthouse under prescribed procedures, and referring the matter to the Tampa Division's Grievance Committee. (Doc. 332); (Doc. 346 at 1).

2. On July 13, 2026, Defendant Byrne and Mr. Ticktin objected under Rule 72(a). (Doc. 344). Their Objection argued, at length, that the video showed Mr. Cain to be the aggressor, that the Magistrate Judge had probably not watched the slow-motion versions, and that Mr. Ticktin had retreated twelve to fifteen feet and gone all the way to the next pillar before the second shove. (Doc. 344 at 3-5).

3. On July 15, 2026, this Court overruled the Objection. (Doc. 346). It stated that it had reviewed the record, including the Order and the Objection, and had reviewed the video evidence, including the slow-motion portions the movants identified. It concluded that the Order was neither clearly erroneous nor contrary to law, that the video evidence speaks for itself, and that a hearing is not necessary. (Doc. 346 at 2).

4. On July 31, 2026, an unidentified person laid a tape measure on the lobby floor and photographed it. (Doc. 357-3, 357-4, and 357-5). Twelve days later, on August 12, 2026, the movants filed their Motion for Reconsideration, together with a separate request for a three-hour evidentiary hearing. (Docs. 357, 358).

5. Trial is set for November 2026. (Doc. 225). The Pretrial Conference is set for October 16, 2026. (Docs. 225, 324).

## III. LEGAL STANDARD

6. Reconsideration is an extraordinary remedy to be employed sparingly. *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994). The three recognized grounds are an intervening change in controlling law, the availability of new evidence, and the need to correct clear error

or prevent manifest injustice. *Id.*; *Lamar Advert. of Mobile, Inc. v. City of Lakeland, Fla.*, 189 F.R.D. 480, 489 (M.D. Fla. 1999). The burden rests on the movant, and it is a heavy one. *Mannings v. Sch. Bd. of Hillsborough Cnty., Fla.*, 149 F.R.D. 235, 235 (M.D. Fla. 1993). The Eleventh Circuit authorities that follow arise under Rules 59(e) and 60(b), but courts in this district apply the same standards to a request to revisit an interlocutory order. *See Sussman*, 153 F.R.D. at 694; *Lamar*, 189 F.R.D. at 489.

7. A motion for reconsideration may not be used to relitigate old matters, to raise arguments that could have been raised earlier, or to present evidence that could have been presented earlier. *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009); accord *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (per curiam). The only grounds for granting such relief are newly discovered evidence or manifest errors of law or fact. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam). Nor may reconsideration be used to set forth new theories of law. *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) (per curiam). To permit a party to raise on reconsideration an argument it could have raised earlier would afford the litigant two bites at the apple. *Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985).

8. Where the asserted ground is new evidence, a court should not grant reconsideration absent some showing that the evidence was unavailable during the

pendency of the earlier proceeding. *Mays*, 122 F.3d at 46. Evidence that was in existence and reasonably obtainable is therefore not newly discovered merely because the movant did not exercise the diligence to obtain it. *See Waddell v. Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003) (setting out the newly discovered evidence standard, which requires a showing of due diligence). The evidence must also be material and not merely cumulative or impeaching, and it must be of such a character that it would probably produce a different result. *Id.*

9. Rule 54(b) permits revision of an interlocutory order at any time before entry of judgment, F.R.C.P. 54(b), but it is not a mechanism for taking a second appeal from a magistrate judge's order that the district judge has already reviewed and affirmed under Rule 72(a). The law of the case doctrine ordinarily forecloses reexamination of issues decided at an earlier stage of the same litigation absent new evidence, an intervening change in law, or clear error working manifest injustice. *This That & The Other Gift & Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (a court may revisit its own prior decision, but should be loathe to do so absent extraordinary circumstances). Nor may a party use Rule 54(b) to revive an objection it did not press when the order was before the district judge on review. F.R.C.P. 72(a) (a party "may not assign as error a defect in the order not timely objected to").

## IV. ARGUMENT

### A. The Motion is a third bite at an issue this Court has already decided.

10. The lobby encounter has now been litigated three times on the same record. The Magistrate Judge described it second by second and made findings. (Doc. 332 at 7-9, 17-19). The movants objected and put their slow-motion renditions squarely before this Court. (Doc. 344 at 3-4). This Court watched them and held that the video speaks for itself. (Doc. 346 at 2). The Motion asks for a fourth viewing, this time with a ruler drawn on the floor.

11. That is precisely the use of reconsideration the Eleventh Circuit has rejected. Reconsideration is not a vehicle to relitigate old matters. *Michael Linet*, 408 F.3d at 763. The movants concede the point in their own brief, quoting both *Michael Linet* and *Mays*, and then proceed to do exactly what those cases forbid. (Doc. 357 at 7-8). The only thing that has changed since July 15 is that the movants have added a photograph to an argument this Court has already considered and rejected.

12. The procedural posture compounds the problem. The Motion seeks reconsideration of an order entered by the Magistrate Judge (Doc. 332), but it is directed to the District Judge, and it attacks findings this Court affirmed in Doc. 346. If the movants believe the Magistrate Judge should revisit his own order in light of a measurement, the request belongs there in the first instance. If they believe this Court's July 15 Order was wrong, they were required to say so with the

objection, on the record then before the Court. What they may not do is treat Rule 54(b) as a standing invitation to reopen a decided question whenever they develop a new exhibit or a new theory.

**B. A tape measure is not newly discovered evidence.**

13. The controlling question is not whether the measurement is new to the record. It is whether the evidence was unavailable to the movants, despite diligence, while the sanctions motion was pending. *Mays*, 122 F.3d at 46. The evidence was available.

14. The lobby is a public space in a hotel in the division where this case is pending. The pillars are permanent structural elements. The transition strip has not moved. The movants were physically present in that lobby on the day of the encounter. Their client, their co-counsel, and their invitees were there, too. Any one of them could have walked the room with a tape measure at any point during the five months the sanctions motion was pending.

15. The movants' answer is that distance only became relevant when the Order issued on June 29, 2026, and that a party cannot be expected to pre-rebut a finding no one requested. (Doc. 357 at 11-12). That answer is refuted by their own filings. Their Response to the sanctions motion argued about how far apart the men were and told the Court that the distance is difficult to tell. (Doc. 284 at 10). Their Objection asserted, as a fact, that Mr. Ticktin retreated twelve to fifteen feet, that the Magistrate Judge's contrary finding was wrong, and that Mr. Ticktin went all the way to the next pillar. (Doc. 344 at 3-4). A litigant who argues distance in

feet, identifies the pillar as the reference point, and tells the Court the video cannot resolve the question has not merely anticipated the issue. He has raised it.

16. The chronology is fatal on its own terms. The finding the movants say they could not have anticipated issued on June 29, 2026. They filed their Objection on July 13, 2026, two weeks later, without measuring anything. They allowed this Court to rule on July 15, 2026, without measuring anything. They measured on July 31, 2026, and then waited another twelve days to file. Even accepting the movants' theory that the duty to measure arose only when the Order issued, they had the finding in hand for more than two weeks before this Court ruled and did nothing. That is not unavailability. It is a tactical choice, and reconsideration does not exist to relieve parties of the consequences of tactical choices. *See Wilchombe*, 555 F.3d at 957.

**C. The distance between the two pillars is not evidence of the distance between two men.**

17. Even if the exhibits were new, they would not be evidence of anything in dispute. Plaintiff does not contest that two pillars in the Courtyard Marriott lobby stand just under thirteen feet apart. That fact resolves nothing, because the sanctioned conduct was not committed by the pillars.

18. The Motion's argument requires four inferential steps, none of which are supplied by the exhibits. It requires the Court to determine where Mr. Ticktin stood at a given frame, where Mr. Cain stood at the same frame, where each man stood relative to the measured line on the floor, and how the camera's optics render

those positions. Exhibits A through E establish none of that. They are five photographs of a lobby and a tape measure taken six months after the fact. They are not tied to any frame of the surveillance recording, not overlaid on it, not scaled to it, and not analyzed by anyone.

19. The exhibits are also unsworn. No affidavit or declaration accompanies the Motion. The person who took the measurement is not identified in the Motion or in the accompanying hearing request, which refer only to the witness who took it. (Doc. 358 at 2). No one attests to the placement of the tape, the point from which it was drawn, the point at which it was read, or the accuracy of the reading. Exhibit C is partially obscured by what appears to be the photographer's finger across the lens. Exhibit D is a close photograph of an inverted tape, and the movants themselves hedge the reading, asserting a figure of twelve feet ten inches while conceding in the alternative that the span is no less than twelve feet nine inches. (Doc. 357 at 6). A party asking a federal court to vacate a sanctions order and cancel a disciplinary referral must do better than an anonymous photograph with a caveat.

20. Notably, the Motion faults the Magistrate Judge for estimating distance from a wide-angle camera and then asks this Court to do the very same thing, only with the movants' preferred number, yet struggles with an argument for the relevance of either. If wide-angle optics preclude a reliable estimate of the space between two men, they preclude the movants' estimate as well, and the pillar-to-pillar measurement does nothing to cure it. The Motion cites no expert,

no photogrammetric analysis, and no methodology of any kind for converting a floor measurement into the position of a person in a video frame.

**D. Taken at face value, the measurement confirms the Order and destroys the self-defense theory.**

21. The Motion is ultimately self-defeating. Its thesis is that before the second shove, Mr. Ticktin had opened more than three yards of separation, over nine feet of open floor, between himself and Mr. Cain. (Doc. 357 at 6, 10, 14). For purposes of this argument only, and without conceding the accuracy or admissibility of the measurement, Plaintiff is content to take the movants at their word, because that is the end of the self-defense argument.

22. The Magistrate Judge's findings were that Mr. Ticktin stopped after walking approximately ten feet, that Mr. Cain moved past him and put an obvious amount of space between them as they talked, and that Mr. Ticktin then took a step toward Mr. Cain, dropped his left shoulder, and shoved him. (Doc. 332 at 8, 18). Those findings assume separation. The Order rejected the crowding claim precisely because of that separation. (Doc. 332 at 18). The movants have now come forward with evidence that the separation was even greater than the Magistrate Judge assumed. They have proved the Order's premise.

23. There is no version of Fla. Stat. § 776.012(1) that justifies shoving a man who is standing several feet away. The statute requires a reasonable belief that force is necessary to repel another's imminent use of unlawful force. A man across feet of open lobby floor is not an imminent threat to anyone, least of all to a person

who describes himself as free to walk to the deposition room. The measurement does not rebut the finding that Mr. Ticktin advanced. Instead, it supplies the distance he had to cover to do so. And its relevance is never identified in any cognizable way.

24. The Motion tries to escape this by asserting that Mr. Cain crossed the nine feet, not Mr. Ticktin. (Doc. 357 at 6, 10). That assertion rests on the same video the Magistrate Judge and this Court have both already watched. It is the identical argument advanced in the Objection, and it was rejected. (Doc. 344 at 4); (Doc. 346 at 2). The measurement adds a number; it does not add a witness, and it does not change what the recording shows, namely Mr. Ticktin assaulting Mr. Cain. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985).

### E. The self-defense theory is new, waived, and wrong as a matter of law.

25. The self-defense provision on which the Motion rests, Fla. Stat. § 776.012(1), is cited nowhere in the movants' Response to the sanctions motion and nowhere in their Rule 72(a) Objection. It appears for the first time in this Motion. A motion for reconsideration is not the place to set forth new theories of law. *Mays*, 122 F.3d at 46. The theory is waived.

26. It also fails on the merits, for four independent reasons.

27. First, federal law supplies the rule of decision for sanctions imposed in a federal proceeding. The Order rests on 28 U.S.C. § 1927, Federal Rule of Civil Procedure 30(d)(2), and the Court's inherent authority. (Doc. 332 at 13-16). A federal court's inherent power to police conduct before it does not yield to a state justification statute. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46, 52-55 (1991). The question before the Magistrate Judge was not whether Mr. Ticktin committed a battery under Florida law. It was whether he multiplied the proceedings unreasonably and vexatiously, whether he impeded, delayed, or frustrated the fair examination of the deponent, and whether he acted in bad faith. Conduct may be entirely lawful and still be sanctionable when it derails a federal deposition.

28. Second, the statutory immunity the movants gesture toward is immunity from criminal prosecution and civil action. Fla. Stat. § 776.032(1). A motion for sanctions is neither. Plaintiff is aware of no authority holding that Florida's justification statutes divest a federal court of authority to sanction a lawyer for a physical altercation with opposing counsel at a deposition, and the movants cite none.

29. Third, the statute's own terms exclude Mr. Ticktin. Justification under § 776.012(1) is unavailable to a person who initially provokes the use of force against himself. Fla. Stat. § 776.041(2). Neither statutory exception applies: nothing in the record suggests that Mr. Ticktin faced force so great that he reasonably believed he was in imminent danger of death or great bodily harm and had exhausted every reasonable means of escape, and he never withdrew from the

encounter or communicated any withdrawal. Fla. Stat. § 776.041(2)(a)-(b). Mr. Ticktin was, in fact, never touched by Mr. Cain. The Magistrate Judge found that Mr. Ticktin started the confrontations. (Doc. 332 at 19-20). That finding stands affirmed. (Doc. 346 at 2). Whereas Mr. Ticktin is the initial aggressor, he cannot avail himself of the statute.

30. Fourth, even if the first shove could be recharacterized, the second cannot. The Order found the second shove damning precisely because it followed separation, an interval of conversation, and a fresh step forward by Mr. Ticktin. (Doc. 332 at 18). Self-defense does not license a renewed advance across restored space. Whatever the law permits a person to do when another is pressed against him, it does not permit him to walk back across nine feet of hotel lobby and deliver a shoulder.

31. The Motion's remaining themes, the age and size differential[1] and the old man remark, were presented to the Magistrate Judge, addressed in the Order, and raised again in the Objection. (Doc. 332 at 20); (Doc. 344 at 5). The Magistrate Judge condemned the remark as childish and unbecoming and declined to treat it as a justification for physical contact. That was not error, and it is not made erroneous by a photograph of a floor.

[1] The age and size figures asserted in the Motion are not supported by any record evidence, and the movants offer no declaration or other competent proof of them.

**F. Anderson, Scott, and Pourmoghani-Esfahani do not support the Motion.**

32. The Motion leans on the passage in *Anderson* observing that documents or objective evidence may contradict a witness's story. *Anderson*, 470 U.S. at 575. That passage describes when an appellate court may find clear error notwithstanding a credibility label. It does not convert every belated exhibit into a basis for reopening an affirmed order, and it does not apply where the proffered objective evidence contradicts nothing. As shown above, the pillar spacing is consistent with the Order. The movants have supplied an irrelevant fact, not a contradiction.

33. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), and *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam), are summary judgment cases. They address when a court may decline to adopt a nonmovant's version of events on a Rule 56 record. Neither case limits a court sitting as factfinder on a sanctions motion, which is what the Magistrate Judge was. A factfinder is entitled to watch a recording and decide what it shows. That is the ordinary work of factfinding, and *Anderson* commits it to the trial court. If anything, *Pourmoghani-Esfahani* cuts against the Motion. The court there declined to treat a silent security recording as controlling precisely because such footage conveys neither spoken words nor tone and does not always afford an unobstructed view of the events. 625 F.3d at 1315. That is a reason to defer to the

factfinder who weighed the recording against the rest of the record, not a reason to displace him with a photograph of a floor.

34. The obstruction argument fares no better. The movants told the Magistrate Judge about the pillar in their Response, filed slowed renditions built around it, and repeated the point in their Objection. (Doc. 284 at 2-3, 6-9); (Doc. 344 at 6). Both the Magistrate Judge and this Court considered that material. An argument that has been made, considered, and rejected is not revived by being made a third time.

### G. The lobby encounter is only one of several independent grounds for the sanctions and referral.

35. The Motion asks this Court to vacate the Order as to the lobby encounter and, with it, the entire fee award and the entire grievance referral. (Doc. 357 at 19-20). The requested remedy does not follow from the requested finding.

36. The Order rests on multiple, independent grounds. Among them are the November 2025 communication to Plaintiff's counsel that the Magistrate Judge construed as an implicit threat of criminal prosecution unless Plaintiff abandoned his defamation action; the continued participation of Ms. Lambert as de facto co-counsel after her special admission was denied and that denial was upheld; the on-the-record vilification of Plaintiff; and the decision to bring Mr. Oltmann and an armed contingent to Plaintiff's deposition without notice. (Doc. 332 at 3-7, 12, 19-20). Not one of those grounds involves the distance

between two men in a hotel lobby, and not one is addressed in this Motion. They independently sustain both the fee award and the referral.

### H. The request to suspend the referral and the fee award is an unsupported stay request.

37. In the alternative, the movants ask this Court to hold transmission of the referral and to suspend enforcement of the fee award until a post-trial hearing. (Doc. 357 at 18, 20). That is a request for a stay, and it is unaccompanied by any of the showings a stay requires. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). The movants do not address likelihood of success, irreparable injury, harm to Plaintiff, or the public interest.

38. Nor is any interim protection warranted. The referral imposes no discipline. It directs the Grievance Committee to conduct a preliminary investigation and to report. M.D. Fla. R. 2.04(c)(1), (c)(4)(B)-(C). The committee may terminate that investigation outright if it concludes the allegation is unsupported or insubstantial. M.D. Fla. R. 2.04(c)(4)(C)(i). And if the matter proceeds, Mr. Ticktin receives the very process the movants say they want: on a finding of probable cause he must be ordered to respond, and misconduct must be established by clear and convincing evidence before any sanction issues. M.D. Fla. R. 2.04(c)(4)(F). *In re Ruffalo*, 390 U.S. 544, 550-52 (1968), which set aside a completed disbarment resting on a charge added mid-hearing, has nothing to say about the initiation of an investigation. Deferring a referral to a disciplinary body

on the ground that the underlying findings are untested, when the referral exists to test them, inverts the process.

**I. Plaintiff should be awarded the fees incurred in responding.**

39. This is the third round of briefing on the same forty-six seconds, filed less than ninety (90) days before trial, on evidence that has always been obtainable and that does not bear on any disputed and material fact. Section 1927 reaches an attorney who multiplies proceedings unreasonably and vexatiously, 28 U.S.C. § 1927, which in this Circuit means conduct so egregious that it is tantamount to bad faith, measured objectively. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239, 1241 (11th Cir. 2007). The Court's inherent authority reaches the same conduct. Because § 1927 applies by its terms only to attorneys, Plaintiff's request as to Defendant Byrne rests on the Court's inherent power alone. Plaintiff will seek the reasonable fees and costs incurred in responding to the Motion and to the accompanying hearing request by separate motion, in compliance with Local Rules 3.01(b) and 3.01(g).

**V. CONCLUSION AND PRAYER**

40. The movants have not identified newly discovered evidence, and what they have identified is immaterial, if not ultimately harmful to their own position. They have not shown clear error, and they cannot show manifest injustice in the enforcement of an order that two judges of this Court have now examined. The Motion is a request to relitigate, and it should be denied.

WHEREFORE, Plaintiff Eric Coomer, Ph.D. respectfully requests that this Court: (1) deny Defendant Patrick Byrne's and Peter Ticktin's Motion for Reconsideration Based on Newly Obtained Evidence (Doc. 357) in its entirety; (2) deny the accompanying Request for an Evidentiary Hearing (Doc. 358); (3) confirm that the Order (Doc. 332) remains in full force and effect, including the fee award, the courthouse-proceedings requirement, and the referral to the Tampa Division Grievance Committee; (4) reserve for determination on separate motion Plaintiff's entitlement, under 28 U.S.C. § 1927 as to Mr. Ticktin and under the Court's inherent power as to both movants, to the reasonable attorneys' fees and costs incurred in responding to the Motion; and (5) grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 26th day of August 2026.

*/s/ Charles J. Cain*
Charles J. Cain, CO Atty No. 51020*
ccain@cstrial.com
Bradley A. Kloewer, CO Atty No. 50565*
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011
512-477-5011 (Fax)

Ashley N. Morgan*
TX Atty No. 24091339
CO Atty No. 61713
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000
512-477-5011 (Fax)
*Appearing via Special Admission
**ATTORNEYS FOR PLAINTIFF**