UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC COOMER, Ph.D.,

Plaintiff,

v. Case No. 8:24-cv-8-TPB-SPF

PATRICK BYRNE, et al.,

Defendants.
_______________________________/

# REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Strike Expert Witnesses (Doc. 310), Defendant Patrick Byrne's Response in Opposition (Doc. 312), Plaintiff's Reply in Support (Doc. 319), and Plaintiff's Supplements (Docs. 321, 360). Upon consideration, it is recommended that the motion be granted in part and denied in part.

## I. Background

This is one of many cases arising from the aftermath of the 2020 presidential election, and specifically from allegations regarding voting services provided by Dominion Voting Systems ("Dominion"). Plaintiff Eric Coomer, Ph.D. ("Dr. Coomer") is the former director of product strategy and security for Dominion (Doc. 1, ¶ 1). Defendant Patrick Byrne is a founder and board member of Defendant The America Project, Inc. and is credited as a producer of a film about the 2020 election entitled "The Deep Rig"[1] (*Id.*, ¶¶ 10, 12).

[1] "The Deep Rig" is styled as a documentary and purports to expose a number of ways that the 2020 election was fraudulently influenced to ensure the election of President Joseph Biden, though each theory features some element casting doubt on the reliability of voting machines manufactured by Dominion (Doc. 1, ¶ 3).

Dr. Coomer filed this action in June 2022 alleging that this film mentions him by name and accuses him of helping to rig the 2020 election against President Donald Trump. (*Id.*, ¶ 31). Dr. Coomer claims that these allegations about him and Dominion have been debunked and are provably false and, because of these false claims, Dr. Coomer received countless credible death threats, suffered from severe emotional distress, and suffered harm to his reputation, privacy, safety, and earnings. (*Id.*, ¶¶ 122–03).

Discovery in this case ended on June 1, 2026, dispositive motions were due by July 1, 2026, and the case is set for the November 2026 trial term. (Doc. 225). To say that this case has been heavily litigated and contested by the parties would be an understatement, so the Court will only provide the necessary background.

On January 15, 2026, Defendant Byrne served his expert disclosures, identifying two retained experts, and seven non-retained experts. (Doc. 310-1). On January 27, 2026, Defendant Byrne deposed Dr. Coomer, and, during the deposition, certain events transpired that later formed the basis of Dr. Coomer's pending request for sanctions against Defendant Byrne and his counsel, Peter Ticktin, and for removal of Mr. Ticktin and his law firm from the case ("Sanctions Motion"). (Doc. 281). Dr. Coomer's Sanctions Motion was filed February 6, 2026. (*Id.*).

On February 26, 2026, Dr. Coomer's counsel requested deposition dates for Defendant Byrne's experts. (Doc. 297-3 at 2). One of Mr. Byrne's attorneys responded the next day, and indicated that Mr. Ticktin would be available March 30, 2026, and March 31, 2026, following which Dr. Coomer served deposition notices on Defendant Byrne's experts for those dates. (*Id.*; Doc. 297-4; Doc. 297-5). However, Mr. Ticktin responded on February 28, 2026, refusing to go forward with the depositions on the basis that "while a motion to disqualify a judge or

counsel is pending, it is the next thing which is required to be considered. It puts a stop to all other work. There cannot be discovery or motion practice [in the interim] . . . ." (Doc. 297-7 at 3). Dr. Coomer's counsel asked for case authority to support Mr. Ticktin's position, but Mr. Ticktin never responded. (*Id.* at 2). On March 12, 2024, Dr. Coomer moved to compel Defendant Byrne to participate in discovery, including expert depositions (Doc. 297) and Defendant Byrne moved for a protective order seeking to stay all discovery proceedings until the Court's resolution of Dr. Coomer's sanctions motion (Doc. 298). On April 7, 2027, the Court simultaneously denied Defendant Byrne's motion and granted Dr. Coomer's motion. (Doc. 307) In its Order, the Court specifically found there was not good cause to issue a protective order from participating in discovery, including the scheduling of expert depositions. (*Id.* at 5). Further, the Court warned Defendant Byrne that "a failure to provide deposition dates before the end of discovery can be grounds to exclude an expert at trial." (*Id.* at 6 (quoting *Eldridge v. Pet Supermarket, Inc.*, 2019 WL 3406926, at *3 (S.D. Fla. July 25, 2019)).

On April 7, 2027, following the entry of the Court's Order, Dr. Coomer's counsel again requested deposition dates for six of Defendant Byrne's disclosed experts including retained experts Ben Cotton and Eric Speckin and non-retained experts Mark Cook, James Penrose, Jeffrey Lenberg, and Russ Ramsland. (Doc. 310 at 3–4). Counsel for Defendant Byrne did not respond. On April 21, 2026, counsel for Dr. Coomer sent a follow-up request to which Mr. Ticktin replied stating, "we cannot get court dates or deposition dates until the court deals with your ludicrous Motion for Sanctions and my Response to it. Surely a well-educated attorney such as yourself knows that once a motion to disqualify a judge or an attorney is filed, the determination of that motion has to be the first order of business." (Doc. 310-6 at

2). Three days later, Dr. Coomer filed the instant motion seeking to strike Benjamin Cotton, Eric Speckin, Mark Cook, James Penrose, Jeffrey Lenberg, and Russ Ramsland as expert witnesses on the basis that Defendant Byrne was directly defying this Court's April 7, 2026 Order. Additionally, Dr. Coomer maintains that Defendant Byrne's expert disclosures are inadequate under Rule 26, providing an additional basis to strike Defendant Byrne's experts. (Doc. 310 at 12). On May 8, 2026, Defendant Byrne filed a response in which he admitted to stonewalling Dr. Coomer's counsel but argued any alleged discovery violation was cured on May 7, 2026, because counsel provided dates for the depositions of Defendant Byrne's retained experts and remained open for the scheduling on the non-retained experts. (Doc. 312 at 1, 4, 7). Further, Defendant Byrne maintained that though his expert disclosures were proper under Rule 26, any alleged deficiencies could be cured through court-ordered supplementation. (Doc. 312 at 9–12). Based on the record before the Court, no attempts were made by Dr. Coomer to schedule the depositions of Defendant Byrne's non-retained experts following Defendant Byrne's response.

Notably, though the depositions of Mr. Cotton and Mr. Speckin were set for May 28, 2026, on May 27, 2026, Mr. Ticktin, during a case management conference before Judge Barber, informed the Court that those experts had developed conflicts and would not be appearing for their May 28, 2026 depositions. (Doc. 321). That same day, following the hearing, Dr. Coomer's counsel requested new deposition dates for Defendant Byrne's retained experts prior to the June 1, 2026 discovery cutoff. (Doc. 360-1). However, counsel for Defendant Byrne waited until June 22, 2026, twenty-two days after the discovery cutoff, to reply at which point counsel did not provide dates but instead merely requested that Dr. Coomer's counsel "provide a few dates of availability so that I can confer with Mr. Speckin

and Mr. Cotton as to their availability for depositions." Counsel for Dr. Coomer declined to do so citing the discovery cut off. To date, none of Defendant Byrne's designated experts have been deposed. (Doc. 360 at 1).

## II. Analysis

Dr. Coomer moves to strike Benjamin Cotton, Eric Speckin, Mark Cook, James Penrose, Jeffrey Lenberg, and Russ Ramsland as witnesses on two bases: (1) failure to provide deposition dates in violation of this Court's previous order and (2) failure to provide proper expert disclosures in accordance with Rule 26. The Court will address each argument in turn.

### A. Failure to Provide Deposition Dates

As an initial matter, Dr. Commer is correct in his assertion "that a failure to provide deposition dates before the end of the discovery period can be grounds to exclude an expert at trial." *Eldridge v. Pet Supermarket*, Inc., No. 18-22531-CIV, 2019 WL 3406926 (S.D. Fla. July 25, 2019). Indeed, the Court warned Defendant Byrne and his counsel of this very possibility when ruling on Dr. Coomer's initial motion to compel deposition dates. (Doc. 307 at 5). However, based on the record before this Court, it is evident that warning was unavailing. (*See* Doc. 310-6 at 2).

"[A] party cannot disclose its experts and then claim that they are unavailable to be deposed until after the discovery deadline. If parties had that privilege, there would be no use for a Scheduling Order because parties could simply disregard it at their convenience." *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 18-21365-CIV, 2019 WL 2008665, at *2 (S.D. Fla. Mar. 11, 2019), *aff'd*, 5 F.4th 1235 (11th Cir. 2021). In *St Louis*, the defendant waited weeks to respond to the plaintiff's requests for expert deposition dates, offered the day before close of the discovery period as the only time his expert could be available, and then abruptly

canceled the deposition before it occurred claiming his expert was suddenly unavailable. *Id.* at *1. Accordingly, the Court found it appropriate to strike the defendant's expert. *Id.* at *2.

Here, Defendant Byrne has engaged in nearly identical conduct. Despite being compelled to provide deposition dates on April 7, 2026, Defendant Byrne neglected to provide his retained experts' availability until May 7, 2026, abruptly cancelled those depositions the day before they were to occur, and refused to provide new dates within the discovery period. Accordingly, the Court finds it appropriate to strike Ben Cotton and Eric Speckin as experts in this matter.

However, with respect to Defendant Byrne's non-retained experts, the Court notes that though Defendant Byrne's conduct was unprofessional, nothing prevented Dr. Coomer from unilaterally scheduling those depositions once it was clear Defendant Byrne was refusing to participate. Indeed, the Middle District's discovery handbook contemplates this scenario:

> An attorney is expected to accommodate the schedules of opposing counsel. In doing so, the attorney should normally pre-arrange a deposition with opposing counsel before serving the notice. **If this is not possible, counsel may unilaterally notice the deposition while at the same time indicating a willingness to be reasonable about any necessary rescheduling**.

Middle District Discovery (2021) at 6 (emphasis added). Rule 30 similarly provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1).

Here, however, counsel for Dr. Coomer did not attempt to subpoena any of Defendant Byrne's non-retained expert witnesses prior to filing his motion with the Court. Moreover, while the Court is sympathetic to the schedules of counsel, it is worth noting that even after Defendant Byrne indicated a willingness to coordinate dates for these depositions on May 8,

2026, nearly a month before the close of discovery, Dr. Coomer made no efforts to do so. Despite Dr. Coomer's assertions, the impetus was never on Defendant Byrne to schedule these depositions. Accordingly, the Court declines to recommend striking Defendant Byrne's non-retained experts on this basis. *Emerald Isles Townhomes Owners Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, No. 6:20-cv-970-PGB-LRH, 2021 WL 7450455, at *1 (M.D. Fla. Oct. 12, 2021) ("Plaintiff states that he attempted on numerous occasions to schedule the deposition of Defendant's corporate representative. However, if the parties cannot work together to schedule a deposition date, the appropriate avenue is to unilaterally notice the deposition."); *Swearingen v. Progressive Express Ins. Co.*, No. 6:24-CV-2328-PGB-LHP, 2025 WL 1309415, at *1 (M.D. Fla. May 6, 2025) (denying the defendant's requested relief regarding scheduling depositions where it failed to utilize the options available to it under the Middle District of Florida Discovery Handbook and the Federal Rules of Civil Procedure).

**B. Improper Disclosures**

Dr. Coomer argues that Defendant Byrne's expert witnesses should be stricken for a second reason, improper disclosure. Specifically, with respect to the non-retained expert witnesses, Dr. Coomer alleges that none of the disclosures contain a summary of the facts and opinions to which the expert is expected to present evidence in violation of Rule 26(a)(2)(C). (Doc. 310 at 12–13). In response, Defendant Byrne maintains that the historical reports accompanying the disclosures satisfy the substance of Rule 26(a)(2)(C).

Under Rule 26(a)(2)(C), a party must disclose a non-retained expert witness by providing: (i) "the subject matter on which the witness is expected to present evidence . . ." and (ii) "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)

In reviewing the disclosures, the Court finds that while the disclosures for non-retained experts James T. Penrose, IV, Jeffrey Lenberg, Mark Cook, Doug Gould, Walter Daughtery, and Russ Ramsland contain generalized information about their background and reference to reports served with the disclosures, the disclosures themselves do not include a summary of facts and opinions as required by Rule 26. Moreover, the accompanying historical reports do not clearly delineate the specific facts and opinions Dr. Coomer can expert these experts to testify to in this particular matter. (Doc. 310-1). For example, the accompanying reports for Mr. Penrose were authored in 2021 and contain allegations against non-parties. (Doc. 310-1 at 96–152, 298–306). For Mr. Lenberg, various reports from 2021 related to voter subversion are attached and total over 150 pages. (Doc. 310-1 at 153–306). For Mr. Goul, Mr. O'Donnell, and Mr. Daugherity, various reports from 2021 and 2022 regarding the Mesa County voting systems are attached. (Doc. 310-1 at 307–624). Notably, though Defendant Byrne's disclosures allege that Mr. Cook has also authored the Mesa County reports, his name appears only on an attached CV. (Doc. 310-1 at 625–26). Finally, the report accompanying the disclosure for Mr. Ramsland is a forensic audit from 2020 regarding the integrity of the Dominion Voting System and how it preformed in Antrim County, Michigan during the 2020 election. Though the attached reports all relate to voting activity in the 2020 election generally, they do not bear any obvious connection to Dr. Coomer or the claims of this case. Accordingly, the undersigned finds Defendant Byrne's non-retained expert disclosures do not satisfy the plain requirements of Rule 26(a)(2)(C)(ii) which dictates that "a summary of the facts and opinions to which the expert is expected to testify" in the instant matter be provided. Fed. R. Civ. P. 26(a)(2)(C)(ii); *see e.g.*, *Small v. Amgen, Inc.*, No. 212CV476FTMPAMMRM, 2017 WL 5443912, at *4 (M.D. Fla. Feb. 15, 2017) ("The Court finds that Plaintiffs' purported

summaries and vague references to [reports] do not come close to satisfying the disclosure requirement imposed by Fed. R. Civ. P. 26(a)(2)(C)(ii)."); *Rementer v. United States*, No. 8:14-CV-642-T-17MAP, 2015 WL 5934522 (M.D. Fla. Oct. 9, 2015) ("The Court is troubled that Plaintiff believes that Plaintiff's disclosures are sufficient, merely because the medical records of each treating physician contain the information somewhere."); *Jarvis v. City of Daytona Beach*, No. 6:23-CV-508-JSS-RMN, 2024 WL 3183649 (M.D. Fla. June 26, 2024) (noting that the submission of records from the expert "in lieu of an adequate summary under Rule 26(a)(2)(C)(ii) would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a summary.") (quotations omitted).

However, this omission is not futile. Under Rule 37(c)(1), inadequate disclosures may render a party unable to "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether an insufficient Rule 26(a)(2)(C) disclosure was harmless, courts consider the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Pugliese v. Texas Roadhouse, Inc.*, No. 5:17-CV-392-OC-PRL, 2018 WL 3757762, at *2 (M.D. Fla. Aug. 8, 2018). In applying these factors, the undersigned first notes that despite being in receipt of Defendant Byrnes's disclosures since January 2026, Dr. Coomer never moved to compel better disclosures or raised this issue with the Court prior to the instant motion. Moreover, any surprise may be cured by requiring Defendant Byrne to supplement his disclosures. *See Jarvis*, 2024 WL 3183649, at *3 (emphasizing that "the most critical details, namely a

summary of the facts and opinions to which the witness is expected to testify, as required by Rule 26(a)(2)(C)(ii) can be largely cured by requiring Plaintiff to redraft her existing disclosure") (quotations omitted). Furthermore, the supplemental expert disclosures would not disrupt the trial schedule as the parties have ample time to prepare for the November 2026 trial. *See Lamonica v. Hartford Ins. Co. of the Midwest*, 336 F.R.D. 682, 687 (N.D. Fla. 2020) ("Courts tend to find that a late disclosure was harmful when it results in postponement of a trial."). Indeed, Defendant Byrne has indicated any supplementation could be completed in seven days. (Doc. 312 at 12). Additionally, the testimony of the witnesses appears to have some importance to the case as the claims in this matter largely concern statements regarding the integrity of the 2020 election. Finally, as to factor five, the Court notes Defendant Byrne's position that the disclosures were sufficient, and Dr. Coomer's failure to raise the issue in any significant manner prior to the instant motion. Accordingly, the undersigned finds the balance of the factors falls in favor of allowing Defendant Byrne to supplement his disclosures rather that excluding the non-retained expert witnesses. *See Jarvis*, 2024 WL 3183649, at *3 (requiring defendants to immediately supplement their expert disclosures to include the information required by Fed. R. Civ. P. 26(a)(2)(C) rather than striking the witnesses after the close of discovery); *Pugliese v. Texas Roadhouse, Inc.*, 2018 WL 3757762, at *2 (requiring the plaintiff to supplement Rule 26(a)(2)(C) disclosures for previously identified witnesses).

## III. Conclusion

It is **RECOMMENDED:**

1. Plaintiff's Motion to Strike Expert Witnesses (Doc. 310) be **GRANTED** to the extent that retained experts Ben Cotton and Eric Speckin are stricken and Defendant Byrne

be required to supplement the disclosures for his remaining experts to include the information required by Fed. R. Civ. P. 26(a)(2)(c)(ii) within seven days.

2. The motion be DENIED in all other respects including Plaintiff's request for attorneys' fees and costs related to these issues. Under the circumstances, the undersigned finds that the striking of two of Defendant Byrne's designated experts and the required supplementation of his expert disclosures is a sufficient remedy such that an additional award of fees and costs would be unjust.

**IT IS SO REPORTED** in Tampa, Florida, on August 27, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.