UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIC COOMER,

Plaintiff,

v. Case No: 8:24-cv-8-TPB-SPF

PATRICK BYRNE, et al.,

Defendants.
_______________________________/

**ORDER**

Before the Court is Defendant Patrick Byrne and his counsel Peter Ticktin's Motion for Reconsideration Based on Newly Obtained Evidence (Doc. 357) and Request for an Evidentiary Hearing (Doc. 358). Plaintiff has responded in opposition and requests attorneys' fees and costs pursuant to 28 U.S.C. § 1927 (Doc. 361). For the reasons stated herein, the motions are denied.

**I. Factual Background**

The background of this matter has been explained at length in this Court's prior Order (Doc. 332). However, in succinct fashion, this is one of many cases arising from the aftermath of the 2020 presidential election, and specifically from allegations regarding voting services provided by Dominion Voting Systems ("Dominion"). Plaintiff Eric Coomer, Ph.D. ("Plaintiff") is the former director of product strategy and security for Dominion (Doc. 1, ¶ 1). Defendant Patrick Byrne ("Defendant Byrne") is a founder and board member of

Defendant The America Project, Inc. and is credited as a producer of a film about the 2020 election entitled "The Deep Rig"[1] (*Id.*, ¶¶ 10, 12).

Plaintiff filed this action in June 2022 alleging that this film mentions him by name and accuses him of helping to rig the 2020 election against President Donald Trump. (*Id.*, ¶ 31). Plaintiff claims that these allegations about him and Dominion have been debunked and are provably false and, because of these false claims, Plaintiff received countless credible death threats, suffered from severe emotional distress, and suffered harm to his reputation, privacy, safety, and earnings. (*Id.*, ¶¶ 122–03).

Plaintiff was noticed to be deposed by Defendant Byrne on January 27, 2026, at the Courtyard Marriot in downtown Tampa, Florida. Upon arriving at the hotel, Plaintiff discovered that non-party Joseph Oltmann intended to observe the deposition and objected to his presence on the basis that Mr. Oltmann is a defendant in another defamation case being brought by Plaintiff. (Doc. 281-14 at 3:5; 3:24-5:15). Because the parties could not reach an agreement, Plaintiff, through his counsel, Charlie Cain, left a message with the undersigned's chambers in an attempt to resolve the dispute. (Doc. 281 at 8-9). This ultimately led to a confrontation in the hotel's lobby whereby Mr. Ticktin accused Mr. Cain of making inappropriate *ex parte* communications. (Doc. 281 at 9). As previously explained by this Court in great detail (Doc. 332 at 7–9), the two spoke for several seconds before Mr. Cain began to walk in the direction of the deposition room. (Doc. 281-1 at 0:37-0:50). Mr. Ticktin followed in front of Mr. Cain before abruptly stopping and turning around to say something to Mr.

[1] "The Deep Rig" is styled as a documentary and purports to expose a number of ways that the 2020 election was fraudulently influenced to ensure the election of President Joseph Biden, though each theory features some element casting doubt on the reliability of voting machines manufactured by Dominion (Doc. 1, ¶ 3).

Cain who took approximately one step forward after Mr. Ticktin stopped. (*Id.* at 0:50–0:52). Mr. Ticktin then raised his right first, leaned into Mr. Cain and shoved him with an angry and frustrated look on his face before continuing on toward the deposition room. (*Id.* at 0:52–0:55). Mr. Cain was pushed backward a couple of steps but continued to follow Mr. Ticktin a few steps behind. (*Id.* at 0:54–0:57). Mr. Ticktin then walked approximately ten feet before stopping and turning around again. (*Id.* at 0:58). When Mr. Ticktin stopped, Mr. Cain did not immediately stop but continued walking until he was in front of Mr. Ticktin. (*Id.* at 0:57–1:01). Mr. Cain stopped a couple of feet in front of Mr. Ticktin and the two appear to talk for a brief moment. (*Id.* at 0:57–1:02). Mr. Ticktin then stepped toward Mr. Cain, dropped his left shoulder, and again shoved Mr. Cain a few steps backward before continuing to walk toward the deposition room. (*Id.* at 1:02–1:09). Mr. Cain followed Mr. Ticktin, again walking a few steps behind. (*Id.* at 1:05–1:09). The majority of this interaction occurred between two pillars in the hotel's lobby (*Id.* at 0:50–1:05).

Based in part on these events, Plaintiff subsequently moved for sanctions against Defendant Byrne and Mr. Ticktin which the undersigned granted in part on June 26, 2026. On June 13, 2026, Defendant Byrne and Mr. Ticktin objected to the undersigned's Order, arguing that the undersigned had failed to recognize that Mr. Cain was the aggressor. On July 15, 2026, Judge Barber overruled the objection. Now, Defendant Byrne and Mr. Ticktin (hereinafter the "Sanctioned Parties"), having measured the distance between two pillars in the lobby of the hotel, move for reconsideration of the undersigned's June 13, 2026 order, arguing that this "new evidence" should change the Court's finding.

## II. Legal Standard

Courts generally recognize three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. *Succullo v. U.S.*, No. 8:16-CV-410-T-36TBM, 2017 WL 6383984, at *2 (M.D. Fla. Oct. 3, 2017). The decision to grant a motion for reconsideration is within the sound discretion of the trial court. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). When presented with a motion to reconsider, however, a court should proceed cautiously, realizing that "in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *United States v. Bailey*, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003), *aff'd*, 419 F.3d 1208 (11th Cir. 2005); *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (explaining that "[f]or reasons of policy, courts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions").

## III. Analysis

The Sanctioned Parties' motion essentially attempts to rehash a host of arguments previously entertained by this Court under the guise of "new evidence." In their motion, the Sanctioned Parties present the Court with a series of photographs which appear to purport that the distance between the two pillars in the hotel lobby is approximately 153 inches or just under 13 feet. Based on this "new evidence," the Sanctioned Parties argue that the Court's finding Mr. Ticktin was the aggressor is erroneous. However, this evidence is neither new nor availing.

The Sanctioned Parties maintain that the measurements are "new evidence" because the distance between the pillars was not at issue during this matter's initial briefing. This is not the standard for the presentation of "new evidence." Indeed, a motion for reconsideration cannot be used to "present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005). Here, there is no reason that the measurements presented by the Sanctioned Parties could not have been calculated and included in this matter's initial briefing. The Sanctioned Parties admit as much in their motion. (Doc. 357 at 11). According, the Court need not entertain this new evidence. *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997) ("We join those circuits in holding that where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion.").

Moreover, even if this Court were to accept this "new evidence," it would not change the Court's prior findings. In finding Mr. Ticktin to be the aggressor, this Court noted that after the first shove Mr. Ticktin walked approximately ten feet with Mr. Cain trailing several feet behind. However, Mr. Ticktin then abruptly stopped and turned around to engage again with Mr. Cain, who continued on to put an obvious amount of space between himself and Mr. Ticktin after Mr. Ticktin stopped. (Doc. 332 at 18). Despite the Sanctioned Parties' convoluted contentions, knowing the distance between the pillars does not advance the Sanctioned Parties' repackaged self-defense theory. Instead, the Sanctioned Parties' new evidence merely suggests that Mr. Ticktin may have walked closer to thirteen feet before abruptly turning around and deciding to continue pursuing Mr. Cain. Accordingly, this fact only enforces the Court's prior findings.

## IV. Conclusion

It is ORDERED

1. Defendant Patrick Byrne and Peter Ticktin's Motion for Reconsideration Based on Newly Obtained Evidence is DENIED.
2. Defendant Patrick Byrne and Peter Ticktin's Request for an Evidentiary Hearing is DENIED.
3. Plaintiff's request for attorneys' fees and costs is DENIED. While the Court finds the arguments advanced in the Sanctioned Parties' motion to be illogical and unavailing, it does not find that they were made with the requisite bad faith necessary to unlock sanctions under 28 U.S.C. § 1927. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).

ORDERED in Tampa, Florida, on September 23, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE