**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ERIC COOMER, Ph.D.,
Plaintiff

v. No. 8:24-cv-00008-TPB-SPF

PATRICK BYRNE,
Defendant

---

**PLAINTIFF'S MOTION TO STRIKE AND, IN THE ALTERNATIVE, RESPONSE IN OPPOSITION TO DEFENDANT PATRICK BYRNE'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT (DOC. 371)**

---

Plaintiff Eric Coomer, Ph.D. (Dr. Coomer) moves to strike Defendant Patrick Byrne's Supplemental Motion for Summary Judgment (Doc. 371) (the Supplemental Motion) and, in the alternative, responds in opposition to it, and states as follows:

## I. INTRODUCTION

1. Dr. Coomer's lawyers went to a Denver courtroom because the man whose accusation is at the center of this case has spent years telling an audience of 300,000 or more listeners a month that they should be hanged or shot for treason, that he wanted "blood," and that the red light belonged on their foreheads. (Doc. 371-1 ¶¶ 7, 28, 33, 35, 56; Ex. 1, May 8, 2026 Hr'g Tr. 49:20-25). He told that audience that the only thing keeping "the people that are hurting me safe" is the bailiff and the judge, and that he is waiting "for that system to disappear." (Ex. 3). Counsel answered him the way the law asks people in that position to answer: not with threats of their own, but with a petition, evidence, and a hearing before a judge. The Denver County Court entered a temporary protection order

against Joseph Oltmann for the protection of Dr. Coomer and his undersigned counsel, including the employees of their respective law firms. (Doc. 371-1 ¶¶ 1-2 & at 15). The only question left for the Court was whether to make it permanent. The May hearing on that question lasted one day. Each side had two hours for its presentation, cross-examination included, and Oltmann's counsel objected at the outset to "any evidence that goes into any defamation case." (Ex. 1, Hr'g Tr. 24:16-18, 25:6-9).

2. Counsel made the request to protect themselves, their families, and their staff from Oltmann's escalating calls for their execution. Byrne now says Dr. Coomer "chose the Denver forum" (Doc. 371 at 8, 16), as if seeking protection from calls for violence were a litigation maneuver. Asking a court for safety is not a strategic choice that a defendant who was never there can turn into a weapon, and the ruling that followed is not a procedural prize. The only tactic on display in that proceeding was Oltmann's: calling for violence against people who were trying to resolve their dispute with him inside the legal system, for doing exactly that.

3. Byrne asks the Court to let him file a second summary judgment motion out of time, eleven days before the pretrial conference, on the strength of a county court ruling that decided one question: whether Oltmann's podcasts and posts were "true threats" under *Counterman v. Colorado,* 600 U.S. 66 (2023), or stalking that warranted making the temporary protection order permanent. (Doc. 371-1 ¶¶ 4, 68–71, 99, 102). In a background paragraph, the county court observed that Oltmann "sincerely holds" his belief that Dr. Coomer took part in efforts to influence the 2020 election, while making "no findings regarding the truth or falsity of those allegations." (*Id.* ¶ 8).

4. That background observation decides nothing at issue here, yet the Supplemental Motion asks the Court to spend the final weeks before trial saying so. The question for the jury in this case is not what Oltmann believed in 2026. It is what Byrne knew, and whether he had obvious reasons to doubt Oltmann's account, when Byrne published it in June 2021. *St. Amant v. Thompson*, 390 U.S. 727, 731-32 (1968). A source can sincerely believe a story that is false and that any careful publisher would doubt. Byrne himself had doubt: he left the Antifa-call story out of his own book because he was "not going to hang my hat on somebody saying that they heard" something "if there is not a recording." (Doc. 351 ¶ 70). The Supplemental Motion is not a good-faith request for relief. It is gamesmanship. Byrne block-quotes the county court's statement that it "makes no findings regarding the truth or falsity" of Oltmann's accusation and that "[t]hose issues are not before the Court," and then asks this Court to treat that same ruling as having tried the central issue in this case. (Doc. 371 at 3). He waited 105 days to do it, more than three months after his counsel, Ticktin, discussed the ruling on Lindell TV. Byrne filed on the eve of the pretrial conference, recycled four arguments from his first motion (Doc. 334), and asked for forty-three pages where the Court allows twenty-five. The Court should strike the Supplemental Motion. If the Court reaches the merits, it should deny the Supplemental Motion.

## II. THE COURT SHOULD STRIKE THE SUPPLEMENTAL MOTION

### A. The Supplemental Motion is untimely, and Byrne has shown neither good cause nor excusable neglect.

5. The Case Management and Scheduling Order permits one summary judgment motion "absent leave of Court," limits the motion and memorandum to a single document of twenty-five pages, and warns that requests to alter those requirements are "distinctly disfavored." (Doc. 136 ¶ 14(a), (b), (g)). The deadline for dispositive motions was July 1, 2026, the day Byrne filed his first motion. (Doc. 225; Doc. 334). That deadline passed more than three months before Byrne filed the Supplemental Motion.

6. A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Good cause exists only where the schedule "cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (citation omitted). And a party who seeks to act after a deadline has passed must move for relief and show "excusable neglect." FED. R. CIV. P. 6(b)(1)(B). Byrne has done neither. He filed no motion to extend the deadline and does not mention Rule 16(b)(4) or Rule 6(b).

7. Nor could he meet either standard. The ruling issued on July 6, 2026. Byrne waited 105 days. His only explanation is that his counsel learned of the ruling on October 15. (Doc. 371 at 7). That explanation does not hold up.

8. Byrne's counsel here, Ticktin and Perry, applied to appear for Oltmann in that very case, *Coomer v. Oltmann,* No. 26W258, and the county court denied their application on April 22, 2026 (Doc. 319 at 5 n.11 & Ex. 7).

9. Ticktin did not learn of the ruling on October 15, as he tells this Court. On July 9, 2026, three days after the ruling, he went on Lindell TV beneath the banner "DENVER COURT BEATS BACK ANOTHER UNCONSTITUTIONAL ATTEMPT BY ERIC COOMER TO SILENCE CRITICS," praised Oltmann as "a true patriot" who "says the truth" when he says Dr. Coomer and his lawyers "should be tried for treason," and told viewers that "the judge wasn't fooled." (Ex. 5). On July 15, he posted the segment to his LinkedIn and Facebook pages. *(Id).* Yet the Supplemental Motion twice tells this Court that counsel learned of the ruling while conferring on Dr. Coomer's motion in limine, "on October 15, 2026." (Doc. 371 at 4, 7). That statement is false, and counsel knew it was false when he signed it. He had celebrated the ruling on television more than three months earlier.

10. A lawyer's signature certifies that his factual contentions have evidentiary support. FED. R. CIV. P. 11(b)(3). And a lawyer may not knowingly "make a false statement of fact…to a tribunal or fail to correct a false statement of material fact . . . previously made to the tribunal." R. Regulating Fla. Bar 4-3.3(a)(1); *see* Doc. 332 at 15. Ticktin has not corrected his statement. Byrne offers no other explanation for his delay, and there is none.

11. The timing compounds the problem. Byrne filed the Supplemental Motion eleven days before the pretrial conference, while the parties are exchanging motions in limine, jury instructions, and exhibit lists, diverting both sides and the Court from trial preparation.

**B. Byrne did not confer before asking leave to exceed the Court's limits.**

12. Byrne also skipped conferral. Local Rule 3.01(g) exempts a motion for summary judgment, but not a motion for leave. M.D. Fla. Local Rule 3.01(g)(1). To reach the merits of the Supplemental Motion, leave must be granted for a second, late, over-length motion. (Doc. 371 at 7-8, 17; Doc. 136 ¶ 14(a), (b)).

**C. The Supplemental Motion exceeds the one-motion and page limits and rests on an affirmative defense that Byrne waived.**

13. Issue preclusion is an affirmative defense that must be pleaded. FED. R. CIV. P. 8(c)(1). Failure to plead an affirmative defense generally waives it. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010). The Eleventh Circuit excuses the omission only where the plaintiff had notice of the defense and was not prejudiced. *See Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988). Dr. Coomer had no notice until October 19, 2026, after discovery closed, and while the parties are exchanging pretrial filings. Byrne has not sought to leave to amend his Answer (Doc. 253) to assert the defense, and raising it now prejudices Dr. Coomer.

**D. The Court should strike the Motion and award attorney's fees.**

14. The Eleventh Circuit enforces scheduling orders because ignoring them "would render scheduling orders meaningless." *Sosa*, 133 F.3d at 1419. Byrne treated this Court's order as if it did not exist. He did not ask for leave before filing. He did not explain his delay. He simply filed a second motion, told the Court to read it together with the first, and left Dr. Coomer and the Court to deal with the consequences in the final weeks before trial.

15. The Supplemental Motion was not brought in good faith. Byrne's preclusion theory depends on a finding the county court said it was not making, on an issue the county court said it was not reaching. (Doc. 371-1 ¶¶ 8, 100). Byrne quotes both. (Doc. 371 at 3, 10). And the side Byrne's counsel tried to represent in that proceeding told the county court the opposite of what Byrne tells this Court. Oltmann's counsel objected to "any evidence that goes into any defamation case" because the hearing concerned only "potential threats from my client." (Ex. 1, Hr'g Tr. 24:16-18). Oltmann's closing argument insisted that the defamation dispute belonged before Judge Olafson. (Ex. 2 at 2, 8). Byrne now asks this Court to hold that the same hearing conclusively decided the central question in a defamation case. A party may not tell one court that an issue is outside the case and then tell another court that the issue was decided. Byrne's counsel understood the ruling perfectly well in July. Three days after it issued, he told a national television audience what the county court decided: the judge "saw what this man was saying on his podcast was not threats." (Ex. 5).

16. Filing a motion like this has consequences. An attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be required to personally satisfy the excess costs and fees it causes. 28 U.S.C. § 1927. Conduct meets that standard when it is "tantamount to bad faith," as when "an attorney knowingly or recklessly pursues a frivolous claim," and the test "turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–42 (11th Cir. 2007); *see Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). The Court declined to find bad faith in Byrne's and Ticktin's last rehashed

motion. (Doc. 366 at 6). This one rests on a statement counsel knew to be false. Dr. Coomer requests the Court to award him the attorney's fees and costs he has incurred in responding to it.

17. The Court has inherent authority to manage its own docket "so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted); *see Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240-41 (11th Cir. 2009). The scheduling order expressly provides for striking filings that do not conform to it. (Doc. 136 ¶ 14(i)). Striking the Supplemental Motion enforces the Court's schedule and keeps this case on track for trial.

18. If the Court elects to consider the Supplemental Motion despite these defects, it fails on the merits for the reasons that follow.

## III. RESPONSE TO SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

**1.** Admitted that Oltmann first made the accusation after the November 2020 election. Denied to the extent it suggests Byrne is not responsible for publishing it in the Film. (Doc. 351 ¶¶ 28-38, 46).

**2.** Admitted that Oltmann repeated the accusation in the Film, which premiered on June 26, 2021. Denied that Byrne merely "helped finance" the Film. Byrne financed it, held contractual rights to shape its content, directed edits, and promoted it. (Doc. 351 ¶¶ 28-38, 46).

[1] Paragraphs in this section are sequentially numbered to match those identified in the Motion.

**3.** Admitted that the actionable statements are Oltmann's statements, which Byrne published. Byrne's own statements are evidence of publication and actual malice. (Doc. 351 ¶¶ 46, 78).

**4.** Admitted.

**5.** Admitted that Byrne so testified. Denied that his testimony is undisputed or dispositive. (Doc. 351 ¶¶ 63-73).

**6.** Admitted. The temporary order was entered the day the petition was filed and remained in effect until the county court ruled on the permanency of the order on July 6, 2026. (Doc. 371-1 ¶¶ 1-2 & at 15).

**7.** Admitted that the hearing took place on May 8, 2026, and that the listed witnesses testified. Dr. Coomer did not appear or testify. (Ex. 1, Hr'g Tr. 2:3-14; Doc. 371-1 at 1). Denied that Oltmann's sincerity was a contested issue. Petitioners' counsel asked about the Antifa call "[p]urely for foundation." (Ex. 1 at 40:2-9).

**8.** Admitted.

**9.** Admitted.

**10.** Admitted that the ruling recites that testimony. Denied that the testimony concerned Dr. Coomer's emotional distress, or the Film. It described steps taken by the petitioners collectively, including two law firms, in response to Oltmann's threatening communications from 2020 through 2026. (Doc. 371-1 ¶¶ 59, 61-62, 101). The ruling's recital of testimony is not evidence of its truth. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

**11.** Admitted that paragraph 8 of the ruling contains the quoted language. Denied that the finding was necessary to the judgment, that it concerns Oltmann's belief in 2021, the accuracy of his account, or his reliability as a source, or that it addresses Byrne's state of mind at any time. (Doc. 371-1 ¶¶ 8, 99-100).

**12.** Admitted.

**13.** Admitted that on July 6, 2026, the county court declined to make the temporary order permanent, vacated it, and closed the case, and that the ruling does not mention the Film or Byrne. The ruling decided only whether to make the order permanent. The temporary order had protected the petitioners for the four months before. (Doc. 371-1 ¶¶ 1–3, 102 & at 15).

**14.** Admitted.

## IV. DISPUTED MATERIAL FACTS[2]

19. The material facts Dr. Coomer identified in response to Byrne's first motion remain genuinely disputed, including whether Byrne had obvious reasons to doubt Oltmann's account in June 2021, whether he doubted it himself, whether he purposely avoided contrary information, whether the accusation was inherently improbable, and whether the Film caused Dr. Coomer's harm. (Doc. 351 ¶¶ 63-72, 83-84; Doc. 175 at 15).

[2] Sequential numbering of paragraphs continues hereafter consistent with this Motion/Response.

## V. IN THE ALTERNATIVE, THE SUPPLEMENTAL MOTION FAILS ON THE MERITS

### A. Issue preclusion does not apply.

20. Byrne agrees that Colorado law governs the preclusive effect of the Denver ruling. (Doc. 371 at 8). That is correct. A federal court must give a state-court judgment the same preclusive effect it would have in the courts of the state that rendered it. 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006). Under Colorado law, issue preclusion bars relitigation only if "(1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding." *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001). Whether two issues are identical "turns on the elements that the claimant must establish to prove his or her substantive claim or defense." *Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 30, 394 P.3d 1144. The issue must have been "actually litigated and necessarily adjudicated." *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84–85 (Colo. 1999). Byrne bears the burden on each element, and he cannot carry it on the first or the fourth.

**(1) The issue is not identical.**

21. The county court found that Oltmann "sincerely holds" his belief, as of the May 8, 2026 hearing. (Doc. 371-1 ¶ 8). Byrne concedes that this is the issue he would have the Court treat as established: Oltmann's belief "as of May 8, 2026." (Doc. 371 at 9, 17). The issues for the jury in this case are different in three ways.

22. First, it concerns a different person. Actual malice turns on the defendant's state of mind, not the source's. It must be "brought home to the persons . . . having responsibility for the publication." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964). The question is whether Byrne "in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731. Second, it concerns a different time: June 2021, when Byrne published the Film, not May 2026. Third, it concerns a different question. *St. Amant* asks whether there were "obvious reasons to doubt the veracity of the informant <u>or the accuracy of his reports</u>." *Id.* at 732 (emphasis added). It also asks whether the story was so "inherently improbable" that only a reckless publisher would circulate it. *Id.* And a publisher's "purposeful avoidance of the truth" supports a finding of actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989). Actual malice may be proved by circumstantial evidence, including the dubious nature of the defendant's sources. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702–03 (11th Cir. 2016). None of these questions depends on whether the informant believed what he said. A sincere informant can be wrong, and a publisher who has reason to know it acts recklessly in repeating him. The ruling Byrne relies on illustrates the point. It records that in December 2020, six months before the Film, Oltmann told his audience that he had people "literally

following" Dr. Coomer and reporting where he was staying, and that he had "found his bank accounts." (Doc. 371-1 ¶¶ 19-20). It also records a December 5, 2020 post, under Oltmann's name, that the petitioners showed depicted Dr. Coomer's residence, and it declined to credit Oltmann's testimony that he had "no idea" whether he created it. (*Id.* ¶¶ 17-18). A source's animus toward his target is a reason to doubt his account whether or not he believes it. *See Hunt v. Liberty Lobby*, 720 F.2d 631, 645 (11th Cir. 1983); (Doc. 351 ¶ 64).

23. The ruling itself draws that line. It "makes no findings regarding the truth or falsity" of Oltmann's accusation. (Doc. 371-1 ¶ 8). It does not mention Byrne or the Film. (Doc. 371 at 7). And it declined to credit part of Oltmann's own testimony. (Doc. 371-1 ¶ 18). Nothing in it speaks to what Byrne knew, believed, or avoided learning in 2021.

24. Byrne's own words show why Oltmann's sincerity settles nothing. Byrne gave Oltmann's story "weight" because Oltmann was "a CEO of tech company," and he "wouldn't expect a guy like that to make it up." (Doc. 351 ¶ 68). Yet he did not know Oltmann's company and had never watched his podcast except when appearing on it. (*Id.* ¶ 68). While promoting the Film, he heard Oltmann had been sued for defamation and still called it "terrific" to have Oltmann "explaining to the public what's happened." (*Id.* ¶ 47). And after working with Oltmann on the Film's distribution, Byrne told his own audience: "Everything Joe Oltmann said came to nothing. Came to nothing. Nothing whatsoever." Of Oltmann's claims about his technology, he said: "He's lying. Everything he did was junk." Of Oltmann and another election activist, he said: "I thought that they were kooky or wanted money or something . . . . Do not listen to anything they have to say." (Ex. 5,

Patrick Byrne, Comment on Lin Wood, David Clements, Joe Oltmann, and Dr. Shiva, Locals.com (Feb. 3, 2022), at 9:43, 22:58, 23:48 (EC 009144); *see* Byrne Dep. Ex. 48). These are Byrne's own statements, offered against him. FED. R. EVID. 801(d)(2)(A). A jury could find from Byrne's statements that he had his own reasons to doubt Oltmann. A county court's view of Oltmann's sincerity in 2026 does not answer address the actual malice issue in this case.

25. This Court has already identified the reasons to doubt Oltmann, and none of them depends on his sincerity. In denying dismissal, the Court pointed to the "explosive and inherently improbable" nature of the accusation; the allegation that Byrne knew Oltmann to be "a partisan activist with some extreme views;" the fact that the identification of "Eric" from "Dominion" "came only from anonymous participants on the call;" Oltmann's decision to go public only after the election, "a fact which should have aroused suspicion and called for careful investigation;" and the public record contradicting the claim, including Dr. Coomer's December 2020 lawsuit against Oltmann himself. (Doc. 175 at 15-16). The Court also drew the line Byrne now ignores: the question is actual malice "on the part of Defendants," not on the part of Oltmann, "who is not a party." (*Id.* at 14). The anonymous source behind the call has never been identified or corroborated. Oltmann refused to identify the person who brought him onto the call, and a federal court held him in civil contempt for that refusal. Order, *Coomer v. Make Your Life Epic, LLC,* No. 1:21-cv-03440-WJM (D. Colo. Sept. 4, 2024), ECF No. 168. A source who will not reveal how he came to hear what he reports is a source whose "reports" a publisher has obvious reason to doubt, regardless of the source's beliefs. *See St. Amant,* 390 U.S. at 732.

26. The statute the county court applied confirms the point. Colorado authorizes a civil protection order to prevent "assaults and threatened bodily harm," stalking, and other enumerated conduct. C.R.S. § 13-14-104.5(1)(a); (Doc. 371-1 ¶ 69). A temporary order is made permanent only if the court finds, by a preponderance of the evidence, that the respondent "has committed acts constituting grounds for issuance" of the order and that, "unless restrained, the respondent will continue to commit such acts." C.R.S. § 13-14-106(1)(a); (Doc. 371-1 ¶ 68). Stalking is defined by reference to the criminal stalking statute, C.R.S. § 18-3-602. (Doc. 371-1 ¶ 70). Those are the elements the petitioners had to prove, and the only elements the county court decided. (*Id.* ¶ 102). None of them asks whether a statement about Dr. Coomer was false, what a third party knew when he repeated it, or whether a publisher acted with actual malice. A state-law ruling on whether to restrain one man's future conduct toward the petitioners cannot establish an element of a defamation claim against a different man for a film published five years earlier.

**(2) The finding was not necessary to the judgment.**

27. "An issue is necessarily adjudicated when a determination on that issue was necessary to a judgment." *Bebo*, 990 P.2d at 86. Issues "actually litigated and decided, but … not necessary to the final outcome of the case, are not subject to collateral estoppel in a future case." *Id.* (citing Restatement (Second) of Judgments § 27 cmt. h (1982)). The judgment here rested on the objective character of Oltmann's statements. The court found that Oltmann framed punishment "in terms of prosecution, tribunals, arrest, and legal consequences," and that there was no evidence of directives, planning, coordination, or resulting violence. (Doc. 371-1 ¶¶ 82-85, 97-99). That is the objective inquiry the First

Amendment requires: whether a statement is a true threat "depends not on 'the mental state of the author,' but on 'what the statement conveys' to the person on the other end." *Counterman,* 600 U.S. at 74. True threats and defamation are separate categories of unprotected speech, each with its own test. *Id.* at 73-74. The court then expressly declined to reach Oltmann's mental state: "Because the Court finds that the statements at issue do not constitute true threats, it need not reach the mens rea issue." (Doc. 371-1 ¶ 100).

28. That is fatal to Byrne's theory. Oltmann's subjective belief could matter, if at all, only to his mental state, which the county court did not decide. The court's remark that his beliefs "provide the context" for his statements (*id.* ¶ 8) was background, not a ground of decision. The judgment would have been the same without it. A finding that a court did not need to make is not preclusive, in part because the party who lost the case has no meaningful way to appeal it. *Bebo*, 990 P.2d at 86; Restatement (Second) of Judgments § 27 cmt. h.

**(3) Dr. Coomer had no full and fair opportunity, or incentive, to litigate Oltmann's sincerity.**

29. A full and fair opportunity "requires not only the availability of procedures in the earlier proceeding commensurate with those in the subsequent proceeding, but also that the party . . . have had the same incentive to vigorously defend itself." *Sunny Acres*, 25 P.3d at 47 (relying on Restatement (Second) of Judgments § 28(5)(c) & cmt. j). The "absence of the same incentive . . . is sufficient to demonstrate no full and fair opportunity." *Id.* at 47 n.6.

30. Whether Oltmann believed his accusation was not a ground for that relief and was not an issue the petitioners had any reason to contest. The petition was heard in a single-day county court hearing, with two hours per side for all evidence and cross-examination (Ex. 1, Hr'g Tr. 25:6-9), on a limited statutory question. The court described its task as deciding "whether or not Mr. Oltmann's statements are protected free speech under the Constitution, or whether or not they have crossed the line into true threats." (Ex. 1, Hr'g Tr. 12:7-10). Petitioners' counsel asked Oltmann about the Antifa call "[p]urely for foundation" and moved on. (*Id.* at 40:2-9). Oltmann's counsel had objected at the start to "any evidence that goes into any defamation case," because the hearing concerned only "potential threats from my client." (*Id.* at 24:16-18). With the clock running on a two-hour limit, no one had reason to spend time on whether Oltmann believed his accusation. The case Byrne cites for preclusion by a nonparty explains why that matters.

31. Non-mutual preclusion rests on "the confidence that the result achieved in the first trial was substantially correct," and the Colorado Supreme Court refused to apply it where limits on discovery, evidence, and review denied the party a full and fair opportunity to litigate. *People v. Allee*, 740 P.2d 1, 7-8 (Colo. 1987). *Allee* was a criminal case, but its reasoning applies with full force to a two-hour statutory hearing with no depositions or written discovery. *See* Restatement (Second) of Judgments § 28(3) (new determination warranted by "differences in the quality or extensiveness of the procedures followed in the two courts"). Dr. Coomer did not appear or testify. (Ex. 1, Hr'g Tr. 2:3-14; Doc. 371-1 at 1). Oltmann himself told the county court that the defamation dispute belonged elsewhere: "Petitioners have legal remedies available to them in the existing

defamation case before Judge Olafson," and they should not ask the county court "to usurp Judge Olafson's control over his courtroom." (Ex. 2, Resp't's Closing Arg. at 2; *see id.* at 8). The parties to that proceeding understood that the merits of the defamation dispute were not before it. Byrne would now turn a background remark in that ruling into a binding fact in a jury trial on different claims, against a different defendant, about a different time. Colorado law does not permit it

32. The petitioners went to county court to protect themselves, their families, and their staff. Their incentive was to show what the statements conveyed and whether Oltmann would continue making them, not to contest whether he believed his accusation against Dr. Coomer. A finding on a question no one had reason to litigate is not preclusive. *Sunny Acres*, 25 P.3d at 47 & n.6.

**B. A Rule 56(g) order would serve no purpose.**

33. Rule 56(g) permits, but does not require, an order treating a fact as established. FED. R. CIV. P. 56(g). "Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established." FED. R. CIV. P. 56(g) advisory committee's note to 2010 amendment. The fact Byrne proposes, that Oltmann sincerely held his belief "as of May 8, 2026," is not material to any element the jury will decide. Telling the jury that a court has found Oltmann sincere would invite it to treat that finding as proof of Byrne's good faith in 2021, or of the accusation's truth, which the county court expressly disclaimed. (Doc. 371-1 ¶ 8). The request should be denied.

**C. The opinion argument is untimely and wrong.**

34. Byrne made this argument in his first motion (Doc. 334 at 18-19), and Dr. Coomer answered it (Doc. 351 ¶¶ 78-81). The Denver ruling adds nothing to it. Whether a statement is fact or opinion depends on whether it implies a provably false assertion of fact, not on whether the speaker believes it. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-20 (1990). Oltmann described a call he said took place and words he said Dr. Coomer spoke; calling his conclusions a "high probability" does not convert that factual account into opinion. (Doc. 351 ¶ 80).

**D. The emotional-distress argument is untimely and wrong.**

35. Byrne also argued causation, public-figure status, and *Hustler* in his first motion. (Doc. 334 at 14-15, 21-22). Dr. Coomer answered them (Doc. 351 ¶¶ 83-86), and the Denver ruling changes nothing. It says nothing about the Film or Dr. Coomer's distress, and Dr. Coomer did not testify. (Doc. 371-1 at 1). The security testimony Byrne cites concerned steps the petitioner took collectively in response to six years of Oltmann's communications (*id.* ¶¶ 59, 61-62), and a summary of testimony is not evidence of its truth. *Jones,* 29 F.3d at 1553. That Oltmann also harmed Dr. Coomer does not defeat causation. Conduct may be a legal cause of harm even though it operates in combination with the conduct of others, and whether it did is a question of fact for the jury. *See* Fla. Std. Jury Instr. (Civ). 401.12(b); (Doc. 351 ¶¶ 83-84).

## VI. CONCLUSION AND PRAYER

Plaintiff Eric Coomer, Ph.D. respectfully requests that the Court strike the Supplemental Motion (Doc. 371) and award him attorney's fees. In the alternative, he

requests that the Court deny the Supplemental Motion in its entirety. Plaintiff requests all such further relief as the Court deems just.

Respectfully submitted this 22nd day of October 2026.

*/s/ David M. Beller*
Charles J. Cain, CO Atty No. 51020*
ccain@cstrial.com
Bradley A. Kloewer, CO Atty No. 50565*
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Ashley N. Morgan*
Texas Bar No. 24091339
Colorado Attorney No. 61713
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)

David M. Beller, CO Atty No. 35767*
david@rklawpc.com
**RECHT KORNFELD, P.C.**
1600 Stout Street, Suite 1400
Denver, CO 80202
303-573-1900/303-446-9400 (Fax)

**ATTORNEYS FOR PLAINTIFF***
***Appearing via Special Admission**

## LOCAL RULE 3.01(G) CERTIFICATION REGARDING CONFERRAL

Movant certifies:

(A) that he attempted to confer with Defendant Patrick Byrne regarding the relief requested;

(B) that as of the time of filing this Motion, no response from Defendant Patrick Byrne was received;

(C) that conferral regarding the relief requested herein with Defendant Patrick Byrne was via the email.