**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ERIC COOMER, Ph.D.,
Plaintiff

v. Case No. 8:24-cv-00008-TPB-SPF

PATRICK BYRNE, et al.,
Defendants

---

**PLAINTIFF'S MOTION FOR DETERMINATION THAT FLORIDA LAW GOVERNS DEFAMATION CLAIM AND PUNITIVE DAMAGES**

---

Plaintiff Eric Coomer, Ph.D. (Plaintiff or Dr. Coomer), through undersigned counsel, moves the Court to determine, at or before the October 30, 2026 pretrial conference, that Florida substantive law governs (1) the defamation claim, and (2) punitive damages. In support, he states as follows:

## I. INTRODUCTION

1. This is a defamation case arising from Defendant Patrick Byrne (Byrne) publication of *The Deep Rig* (the Film). During pretrial conferences, Byrne has taken the position that Colorado law governs this action. The Court has not decided that question, but it matters now because Colorado and Florida law differ in ways that will impact the jury instructions and verdict form.

2. Under Florida's choice-of-law rules, which govern here, each of those issues is controlled by Florida law. Byrne is a Florida resident and lived in Sarasota when this action was filed (Doc. 97 at 15; Doc. 88 at 21, 28; Doc. 197, ¶ 10). The America Project,

Inc. (TAP), since dismissed, is the Sarasota corporation he founded and chaired, and owns the film and received its profits (Doc. 197, ¶ 12; Doc. 253, ¶12; Doc. 175 at 4; Doc. 332 at 1). The Colorado court found that production activities for the Film took place in Florida (Doc. 97 at 15). TAP held a "premiere" of the Film in Naples, Florida.[1]

3. Byrne chose this forum. Over Dr. Coomer's opposition, he told the District of Colorado that his conduct occurred outside Colorado and that Dr. Coomer had "no legitimate basis for refusing to litigate in . . . the Middle District of Florida." (Doc. 88 at 23, 28; Doc. 97 at 4, 14-17.) After the Colorado court accepted that position and transferred the case here, Byrne asked this Court to apply Colorado law, including Colorado's anti-SLAPP statute (Doc. 150 at 5; Doc. 149). He has since pleaded his own defenses under Florida law (Doc. 253 at 10, 12, 16, 17, 18), while maintaining that Colorado law governs the claims against him, telling the Colorado Court that Colorado law "provides even greater protection than federal First Amendment jurisprudence." (Doc. 88 at 13; Doc. 150 at 5).

4. The joint jury instructions are due seven days before the October 30, 2026 pretrial conference. (Doc. 136, ¶ 9; Doc. 368.) Dr. Coomer is flagging this issue for the Court to allow the parties time to submit conforming instructions and verdict questions on these issues.

---

[1] *See* **Ex. 1**, TAP: Election Fraud Documentary "The Deep Rig" to Premiere in Naples Florida on July 21, 2022 (EC 009367-9369, Pl. Ex 42).

## II. BACKGROUND

### A. The parties and the publication.

5. Dr. Coomer is domiciled in Colorado. (Doc. 197, ¶ 9.) Byrne is a Florida resident and lived in Sarasota, Florida, when this action was filed. (Doc. 97 at 15; Doc. 88 at 21; *see* Doc. 197, ¶ 10 (alleging a Florida residence in Jupiter)). When he moved to dismiss in Colorado, Byrne told that court that "Byrne and TAP are both domiciled or headquartered in Florida," and that he should be sued in "the Middle District of Florida." (Doc. 88 at 21, 28). The Colorado court found that "[b]oth Mr. Byrne's residence and TAP's headquarters are located in the Middle District of Florida" and that "Mr. Byrne's address is in Sarasota, Florida." (Doc. 97 at 15). TAP is a Florida not-for-profit corporation headquartered in Sarasota; it owns the copyright to the film *The Deep Rig* and has received at least a portion of its profits. Byrne admits those facts. (Doc. 197, ¶ 12; Doc. 253, ¶ 12). Byrne was a founder of TAP and chairman of its board. (Doc. 150 at 1; Doc. 175 at 11; Doc. 332 at 1). TAP and Steven Lucescu, the film's other credited producer, were originally Defendants but are no longer parties; Byrne is the only Defendant who will be at trial. (*See* Docs. 315, 347, 352.)

6. Byrne financed the film under a February 17, 2021 investor agreement that gave him "instant and continual access" to the footage, "'a heavy hand' input as requested, whether for any clip to make the edit, or not to make the edit," and a role in "all discussions and decisions" about distribution, along with a priority return and a share of net profits. (Doc. 351, ¶¶ 28-30, Doc. 351-4). He sent editing instructions during production and directed later changes to the film. (*Id.*, ¶¶ 32-37, Doc. 351-5). The film premiered at an

event in Arizona on June 26, 2021, and was distributed nationally, including on TAP's website. (Doc. 175 at 4, 11; Doc. 97 at 3, 12). In July 2022, after this action was filed, TAP announced a re-release of the film at a screening in Naples, Florida, in a press release quoting Byrne. (Doc. 197, ¶ 119; Doc. 351, ¶¶ 39-40).

7. The statements at issue, made in the film by non-party Joseph Oltmann, accuse Dr. Coomer of participating in an "Antifa" call on which he said he had ensured President Trump would not win, and of probably having affected the 2020 election. (Doc. 175 at 5). The accusation concerns Dr. Coomer's work for Dominion Voting Systems, which the film itself describes as operating in 28 states. (*Id.*).

**B. Procedural history.**

8. Dr. Coomer filed this action in the District of Colorado on June 24, 2022. (Doc. 1). The original complaint did not include a request for exemplary or punitive damages; Dr. Coomer asked for leave to add exemplary damages later. (Doc. 1 at 67). Byrne moved to dismiss for lack of personal jurisdiction, arguing that Dr. Coomer had not alleged that Byrne "ever set foot in Colorado," that "no production or filming activities relating to the documentary film ever occurred in Colorado," and that the suit "relate[s] to conduct that occurred outside of Colorado." (Doc. 88 at 23, 24, 28). The Colorado court agreed that it lacked personal jurisdiction. It found that the Defendants had not "intentionally aimed their conduct at Colorado," that the film's content was "not focused on Colorado," and that the Defendants had "essentially placed information on the internet and made it accessible to people in every state." (Doc. 97 at 10-12). It noted that "the

Defendants concede that film production activities took place in Florida," and transferred the case to this District under 28 U.S.C. § 1631. (*Id*. at 14-15, 17).

9. After the transfer, each Defendant moved to dismiss and "argued that Colorado law applied to this dispute." (Doc. 150 at 5 (citing Docs. 123, 125, 126)). Dr. Coomer responded that the Court must first decide whether Colorado or Florida law applies. (*Id*.). In declining to apply the discovery stay in Colorado's anti-SLAPP statute, the Court noted that it "has not yet determined whether Florida or Colorado law applies to this action." (*Id*.).

10. In ruling on the motions to dismiss, this Court held that "Florida law, including its choice of law principles, applies," because the case was transferred under § 1631. (Doc. 175 at 8 (citing *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 793 (10th Cir. 1998))). The Court found no need for a full choice-of-law analysis on the issues then presented, which were the elements of defamation, the Colorado anti-SLAPP statute, Florida's pre-suit notice statute, and the actual-malice standard. (*Id*. at 8-10). As to actual malice, the Court noted that Dr. Coomer had not opposed Colorado's rule and treated him as having waived, "for purposes of the pending motions," the lesser standard that would apply under Florida law. (*Id*. at 9-10). Dr. Coomer does not ask the Court to revisit that point. He has conceded that the actual-malice standard applies (Doc. 351, ¶ 51), and he accepts that it must be proved by clear and convincing evidence.

11. Byrne's Answer, filed in November 2025, pleads his defenses under Florida law. He invokes "the First Amendment and Florida law" for his opinion defense, Florida's fair-report privilege, the Florida standard for intentional infliction of emotional distress,

the Florida elements of civil conspiracy, and the Florida rule for pleading limitations. (Doc. 253 at 10, 12, 16, 17, 18).

## III. THE CONFLICTS

12. A choice-of-law analysis is required only where the laws of the interested States differ in a way that would change the outcome. *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1346 (11th Cir. 2023); (Doc. 175 at 8).

13. On the following issues, Colorado and Florida law differ, and the difference matters:

a. **Damages.** Colorado requires proof of actual damages even where the statement is defamatory per se. *Coomer*, 2024 COA 35, ¶ 86. Florida permits presumed damages for a statement defamatory per se once the plaintiff proves knowledge of falsity or reckless disregard. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974); *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 727 (Fla. 4th DCA 2010); Fla. Std. Jury Instr. (Civ.) 405.9, Note on Use 1. This Court has already observed that Byrne does not appear to be a media defendant under Florida law (Doc. 175 at 9 (citing *Mazur v. Ospina Baraya,* 275 So. 3d 812, 818 (Fla. 2d DCA 2019)), and the limits Florida places on presumed damages in actions against media defendants do not apply. *Cf. Mid-Fla. Television Corp. v. Boyles,* 467 So. 2d 282, 283 (Fla. 1985).

b. **Punitive damages.** Colorado requires proof beyond a reasonable doubt, C.R.S. § 13-25-127(2); limits exemplary damages to the amount of actual damages, subject to an increase by the court, C.R.S. § 13-21-102(1)(a), (3); and bars consideration of a party's income or net worth, C.R.S. § 13-21-102(6). Florida requires clear and convincing evidence of intentional misconduct or gross negligence, §§ 768.72(2), 768.725, Fla. Stat.; applies the limits of § 768.73, including the exception for a specific intent to harm, § 768.73(1)(c); and permits the jury to consider the defendant's financial resources in fixing the amount, Fla. Std. Jury Instr. (Civ.) 503.1, 503.2.

14. The foregoing issues are governed by state law. A federal court exercising diversity jurisdiction applies state substantive law and federal procedural law. *Erie R.R*

*Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Hanna v. Plumer,* 380 U.S. 460, 465 (1965); (Doc. 150 at 6). The measure of damages, the limits on an award and the standard of proof for punitive damages are part of that substantive law. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20–21 (2000) ("[W]e have long held the burden of proof to be a 'substantive' aspect of a claim."); *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 428-31 (1996). Because each of these rules is substantive, this Court must apply the rule of whichever State's law governs the issue, and it must decide which State that is. Each will shape the instructions the jury receives and the questions on the verdict form. *See In re Jan. 2021 Short Squeeze,* 76 F.4th at 1346; (Doc. 136, ¶ 9).

## IV. ARGUMENT

### A. Florida applies the most-significant-relationship test, issue by issue.

15. A federal court sitting in diversity applies the choice-of-law rules of the forum State, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941), and after a transfer under § 1631, those are Florida's rules. (Doc. 175 at 8). For tort claims, Florida applies the "most significant relationship" test of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 145 and 146. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980); *Middleton v. The Hollywood Reporter LLC,* 137 F.4th 1287, 1295 (11th Cir. 2025); *see Bates,* 509 So. 2d at 1114-15. The contacts considered are "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2). "These contacts are to be

evaluated according to their relative importance with respect to the particular issue,' which requires a court to 'examine the facts and circumstances presented in each particular case.'" *Middleton*, 137 F.4th at 1295 (citing *Judge v. Am. Motors corp.*, 908 F.2d 1565, 1568 (11th Cir. 1990) (quoting RESTATEMENT § 145)).

16. The analysis proceeds issue by issue. "Each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." RESTATEMENT § 145 cmt. d. The Court, therefore, need not choose one State's law for the whole case. It asks which State has the most significant relationship to each of the two issues identified above. *Id.; Middleton,* 137 F.4th at 1295; *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.,* 485 F.3d 1233, 1240 (11th Cir. 2007). The measure of damages is determined by the law selected under that analysis. RESTATEMENT § 171.

**B. The § 150 presumption is overcome here.**

17. Plaintiff anticipates Byrne may rely on RESTATEMENT § 150(2), which provides that in a multistate defamation the State of most significant relationship "will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state." The Eleventh Circuit has explained, however, that "Florida courts have not addressed § 150," that the presumption yields where "one of the other states has a more significant relationship to the occurrence and the parties," and that it must be weighed together with the § 145 contacts. *Middleton*, 137 F.4th at 1296.

18. In *Middleton, Frey* and *Nix,* the Eleventh Circuit applied the law of a State other than Florida, although in *Middleton* and *Frey* the plaintiff lived in Florida. *Id.* at

1296-1300 (applying California law, although plaintiff was domiciled in Florida, and describing the approach in *Nix* and *Frey* to be "sound"); *Frey v. Minter*, 829 F. App'x 432, 436 (11th Cir. 2020) (Georgia law, although plaintiff resided in Florida); *Nix v. ESPN, Inc.*, 772 F. App'x 807 (11th Cir. 2019) (New York law).

19. *Middleton* presents similar facts, but with a Florida plaintiff. *Middleton*, 137 F.4th at 1298. There, a Florida plaintiff sued California defendants over a nationally available article written and published from California. *Id.* The court held that the place of injury was "inconclusive" because the article "was published in print and online, and accessible nationally;" that the conduct causing the injury occurred where the defendants acted; that the defendants' residence pointed to California; and that California law, therefore, governed even though the plaintiff lived in Florida. *Id.* at 1298-1300.

20. The same analysis here points to Florida.

a. **Place of injury.** Dr. Coomer felt the injury most acutely at home, as the Colorado court recognized. (Doc. 97 at 10). That is true of nearly every defamation plaintiff, which is why § 150 states only a presumption and why, in *Middleton*, the Eleventh Circuit treated the place of injury as "inconclusive" for a nationally available publication even though the plaintiff there alleged injury at home. RESTATEMENT § 150(2) & cmt. e; *Middleton,* 137 F.4th at 1296-1298. Here, the film premiered in Arizona, re-premiered in Florida, and was distributed nationally, including online through TAP. (Doc. 175 at 4, 11; Doc. 97 at 3, 12); **Ex. 1**. The accusation concerned Dr. Coomer's work for a company that, while based in Denver, served voters in many States, and it cost him his career in the national elections industry. (Doc. 175 at 5-6; Doc. 351, ¶ 84; Doc. 88 at 24). This first factor is inconclusive. *Middleton,* 137 F.4th at 1298; *Frey,* 829 F. App'x 432, 435-36.

b. **Place of the conduct causing the injury.** Byrne financed the film, held the contractual right to shape its content, directed changes to it, and promoted it. (Doc. 351, ¶¶ 28-38, 46). He did so as a Florida resident and as the chairman of a Florida corporation that owns the film, received its profits, and hosted it on its website. (Doc. 97 at 15; Doc. 253, ¶ 12; Doc. 332 at 1; Doc. 175 at

11). The Defendants conceded that film production activities took place in Florida, while none took place in Colorado. (Doc. 97 at 15; Doc. 88 at 24). Lucescu, Byrne's co-producer and then a co-Defendant, told the Colorado court that "[t]he film production activities all took place in Arizona, Florida, and Washington, D.C.," and that the "center of gravity for witnesses, property, documents, and the underlying events is either in Florida or Arizona." (Doc. 57 at 2, 11). The re-release was staged in Florida. (Doc. 197, ¶ 119; Doc. 351, ¶¶ 39-40). Byrne himself told the Colorado court that this case concerns "conduct that occurred outside of Colorado." (Doc. 88 at 28). Having prevailed on that position, he should not now be heard to contend that Colorado has the most significant relationship to that same conduct. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (a party who "assumes a certain position in a legal proceeding, and succeeds in maintaining that position," may not later "assume a contrary position" because "his interests have changed" (quoting *Davis v. Wakelee,* 156 U.S. 680, 689 (1895)). His general denial of his Florida residence in his Answer (Doc. 253, ¶ 10) cannot be squared with the position on which he prevailed in Colorado. Dr. Coomer, for his part, argued in Colorado that the Defendants' conduct was aimed at Colorado. The Colorado court rejected that argument (Doc. 97 at 10-14), and this case has proceeded on that ruling ever since (Doc. 97 at 17; Doc. 175 at 6, 8).

c. **Domicile and place of business.** Byrne is a Florida resident, and TAP is incorporated and headquartered there. (Doc. 97 at 15). At the time of filing, Dr. Coomer resided in Colorado. The only Defendant at trial, and the entity through which the film was owned and distributed, are Floridian. (Doc. 97 at 15; Doc. 253, ¶ 12). This factor favors Florida. *See Middleton,* 137 F.4th at 1299 (defendants' residence pointed to their home State); *Frey,* 829 F. App'x at 435-36 (Georgia law applied where statements were made by Georgia resident and local newspaper's principal circulation was in Georgia).

d. **Center of the relationship.** Dr. Coomer and Byrne had no relationship before the publication. Byrne never even contacted him. (Doc. 351, ¶ 67). To the extent there is a relationship, it arises from a film produced, owned and distributed from outside Colorado (Doc. 97 at 15; Doc. 88 at 24; Doc. 57 at 2), and from litigation that the Colorado court held could not proceed there (Doc. 97 at 14). This factor does not favor Colorado. *See Middleton,* 137 F.4th at 1299-1300; *Frey,* 829 F. App'x at 435-36.

### C. The § 6 interests point to Florida on each disputed issue.

21. The contacts are weighed considering the policies of the interested States and the relevant interests of those States in the determination of the issue. RESTATEMENT § 6(2)(b), (c). Here, those interests favor Florida.

22. Each of the Colorado rules Byrne invokes protects defendants: a requirement of proven actual damages and, for exemplary damages, a reasonable-doubt standard, a presumptive one-to-one cap and a bar on wealth evidence. *Coomer,* 2024 COA 35, ¶ 86; C.R.S. §§ 13-25-127(2), 13-21-102(1)(a), (6). Colorado's defamation rules reflect the balance Colorado has struck between reputation and speech. *See Diversified Mgmt., Inc. v. Denver Post, Inc.,* 653 P.2d 1103, 1105-06 (Colo. 1982); (Doc. 175 at 9 n.5). Colorado has little interest in extending that protection to a Florida resident, acting through a Florida corporation, at the expense of a Colorado resident whom Colorado law exists to protect. *See* RESTATEMENT §§ 6(2)(b)-(c), 145 cmt. c. Florida has a direct interest in the standards by which its own residents are held accountable for their conduct, and it has struck its own balance on each of these questions, including a detailed statutory scheme for punitive damages. §§ 768.72–.73, Fla. Stat. Applying Florida law advances Florida's interests and impairs none of Colorado's. A plaintiff's home State is not offended when the defendant is held to the standards of the defendant's own State. *See* RESTATEMENT §§ 6(2)(b)-(c), 145 cmts. c, e.

23. The remaining § 6 factors are consistent with that result. Florida law is well-defined on each issue and is reflected in the Florida Standard Jury Instructions. Fla. Std. Jury Instr. (Civ.) 405.1–405.14, 503.1–503.2. And Byrne could not have expected to

be held to Colorado's standards when he successfully argued that Colorado could not hale him into its courts. (Doc. 88 at 28; Doc. 97 at 14). *See* RESTATEMENT § 6(2)(d)–(g).

**D. Florida law governs punitive damages in any event.**

24. Even if Colorado law were determined to govern liability, Florida law governs punitive damages. When "the primary purpose of the tort rule involved is to deter or punish misconduct," the place where the conduct occurred "has peculiar significance," and "the state where the conduct took place may be the state of dominant interest." RESTATEMENT § 145 cmts. c, e.

25. Applying those principles, courts in this Circuit have applied the law of the State where the defendant's conduct occurred to the issue of punitive damages, even where another State's law governed liability. *Kirchman v. Novartis Pharm. Corp.*, No. 8:06-cv-1787-T-24-TBM, 2014 WL 2722483, at *4 (M.D. Fla. June 16, 2014); *Dopson-Troutt v. Novartis Pharm. Corp.*, No. 8:06-cv-1708-T-24-EAJ, 2013 WL 3808205, at *4 (M.D. Fla. July 22, 2013); *see also Krause v. Novartis Pharm. Corp.*, 926 F. Supp. 2d 1306, 1312 (N.D. Fla. 2013).

26. Punitive damages punish and deter the defendant's own conduct. *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416, 421-423 (2003). The conduct to be punished here is Byrne's, undertaken as a Florida resident through a Sarasota corporation, and continued in Florida after this action was filed. (Doc. 97 at 15; Doc. 197, ¶¶ 119, 153). The procedural history points the same way. Dr. Coomer did not plead punitive damages in Colorado. He first pleaded them in this Court, after the transfer and after the Court granted leave to amend, in a section titled "Punitive Damages" that tracks the Florida

statute nearly verbatim. (Doc. 175 at 23-24; Doc. 177; Doc. 185, ¶¶ 148-156; compare § 768.72(2)(a)–(b), Fla. Stat.) Florida is the State of dominant interest on that issue. RESTATEMENT § 145 cmts. c, e.

**E. Byrne chose this forum and cannot select Colorado law only where it helps him.**

27. Byrne's position on governing law has followed his interest rather than the contacts that Florida's choice-of-law rules examine. (Compare Doc. 88 at 13, 28 and Doc. 150 at 5, with Doc. 253 at 10, 12, 16, 17, 18).

28. In Colorado, Byrne sought dismissal on the ground that his conduct had no meaningful connection to that State. He told the court that the suit concerned "conduct that occurred outside of Colorado," that Dr. Coomer had not alleged that he "ever set foot in Colorado," and that Dr. Coomer had "no legitimate basis for refusing to litigate in another federal district court of the United States, say the Middle District of Florida." (Doc. 88 at 23, 28). TAP asked, in the alternative, that the case be sent here. (Doc. 97 at 15). Dr. Coomer opposed the motions. (*Id*. at 4). The Colorado court agreed with the Defendants that it lacked jurisdiction and, rather than dismiss, transferred the case to the District where Byrne lived. (*Id*. at 14-17).

29. Once here, Byrne argued that Colorado law applied, including Colorado's anti-SLAPP statute, which this Court held inapplicable. (Doc. 150 at 5; Doc. 149.) His Answer then pleaded his own defenses under Florida law, including opinion, the fair-report privilege, intentional infliction of emotional distress, civil conspiracy and limitations. (Doc. 253 at 10, 12, 16, 17, 18). Yet he maintains that Colorado law governs the claims against him, and on each issue in dispute here the Colorado rule is the one more favorable

to him: proof of actual damages, proof beyond a reasonable doubt for exemplary damages, a presumptive one-to-one cap, and exclusion of wealth evidence. Byrne has explained his preference himself: Colorado law, he told the Colorado court, "provides even greater protection than federal First Amendment jurisprudence." (Doc. 88 at 13).

30. Florida's choice-of-law rules do not abide. The most-significant-relationship test does permit different States' laws to govern different issues, but only where the contacts and interests relevant to each issue point to different States. RESTATEMENT § 145 cmt. d; *Middleton*, 137 F.4th at 1295. It does not permit a party to take Florida law where Florida law helps and Colorado law where Colorado law helps. The only reason Byrne has offered for preferring Colorado law is that its rules are more protective of him. (Doc. 88 at 13). A preference for the more protective rule is not a contact or an interest that the Restatement weighs. *Bishop,* 389 So. 2d at 1001; RESTATEMENT § 145(1)-(2). And it comes from the party who persuaded a federal court that his conduct occurred outside Colorado and was not aimed there (Doc. 88 at 28; Doc. 97 at 10-12), and who, over Dr. Coomer's opposition, defeated jurisdiction in Colorado while pointing to this District as the place to litigate (Doc. 88 at 28; Doc. 97 at 4, 14-17), only to resist the law of that forum. *See New Hampshire v. Maine*, 532 U.S. at 749-51.

**F. The Court should decide the question in connection with the parties' proposed jury instructions.**

31. The parties must file a joint set of proposed instructions and a verdict form at least seven days before the pretrial conference. (Doc. 136, ¶ 9). The instructions on damages and punitive damages, and the corresponding verdict questions, depend on which

State's law governs. A ruling on the choice of law issue will allow the parties to conform their submissions to this Court accordingly.

## V. CONCLUSION

32. Plaintiff Eric Coomer, Ph.D. respectfully requests that the Court enter an order determining that Florida substantive law governs (1) the defamation claim, and (2) punitive damages. Plaintiff requests the Court to grant such other relief as the Court deems just and proper.

Respectfully submitted this 22nd day of October 2026,

*/s/ Charles J. Cain*

Charles J. Cain
Charles J. Cain, CO Atty No. 51020*
ccain@cstrial.com
Bradley A. Kloewer, CO Atty No. 50565*
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P.O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Ashley N. Morgan*
TX Atty No. 24091339
CO Atty No. 61713
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)

David M. Beller, CO Atty No. 35767*
david@rklawpc.com
**RECHT KORNFELD, P.C.**
1600 Stout Street, Suite 1400
Denver, CO 80202
303-573-1900
303-446-9400 (Fax)

**ATTORNEYS FOR PLAINTIFF**
***Appearing via Special Admission**

**LOCAL RULE 3.01(G) CERTIFICATION REGARDING CONFERRAL**

Movant certifies:

(A) that he has attempted to confer with Defendant Patrick Byrne regarding the relief requested;
(B) that as of the time of filing this Motion, response from Defendant Patrick Bryen was received;
(C) that conferral regarding the relief requested herein with Defendant Patrick Byrne was via email.