**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ERIC COOMER, Ph.D.,
Plaintiff

v. Civil Action No. 8:24-cv-00008-TPB-SPF

PATRICK BYRNE, et al.,
Defendants

---

**JOINT PRETRIAL STATEMENT**

---

Plaintiff Eric Coomer, Ph.D. (Plaintiff Coomer or Dr. Coomer) and Defendant Patrick Byrne (Defendant Byrne or Dr. Byrne) file this Joint Pretrial Statement[1] pursuant to Local Rule 3.06(b) and state as follows:

**(1) the basis for the court's jurisdiction**

The parties agree that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff, who was domiciled in Colorado at the time the suit was filed, and Defendant, who is domiciled in Florida, and the amount in controversy exceeds $75,000. The parties agree that this Court has personal jurisdiction over Defendant. FED. R. CIV. P. 4(k). The parties agree that venue is proper in this Court pursuant to 28 U.S.C. § 1391.

[1] Plaintiff is making this "joint" filing subject to his Plaintiff's Notice of Defendant's Failure to Participate in the Joint Pretrial Submissions. Because this is not an actual joint filing, Defendant's counsel's signature is not affixed hereto.

**(2) a concise statement of the action**

This is a civil case alleging claims of defamation and intentional infliction of emotional distress. The Plaintiff is a former employee of Dominion Voting Systems. The Defendant is Patrick Byrne. Plaintiff Coomer, claims Defendant Byrne, is responsible for publishing statements in a 2021 film called *The Deep Rig*, and that those statements were false and defamatory. Plaintiff Coomer also claims that Defendant Byrne's conduct amounted to intentional infliction of emotional distress. Defendant Byrne denies those claims.

**(3) a concise statement of each party's position**

**(A) Plaintiff's claims:**

Dr. Coomer worked in elections for 16 years until 2021. He began his employment with Dominion Voting Systems, Inc. (Dominion) in 2010 and held the title of Director of Product Strategy and Security from 2013 until May 14, 2021

When Dr. Coomer took over as the Director of Product Strategy, his work focused on the creation of next generation election products through close collaboration with customers and utilizing an understanding of technology and the needs of elections departments across the United States and around the world. Shortly after elections were deemed critical infrastructure, his role expanded to encompass a "Security" focus as a liaison between Dominion and various groups (certification, specifications) focusing on the overall security of voting systems under the critical infrastructure umbrella. Dr. Coomer's work also focused on increasing the auditability and transparency in the ballot adjudication process.

Leading up to the November 2020 presidential election, Dr. Coomer was thriving in his job, was continually given exemplary performance reviews, and was at the apex of his career.

Shortly after the 2020 presidential election was called for Joseph Biden, a group of political actors, conspiracy theorists, and media figures began circulating false claims about Dr. Coomer. The original source of these claims was Joseph Oltmann who, at the time, was an obscure businessman and podcaster broadcasting under the pseudonym "Joe Otto" in Colorado.

Oltmann claimed on his podcast that he infiltrated a conference call among political activists as part of an ongoing campaign to expose "Antifa" journalists. On the call, which he later described as a Zoom call, Oltmann says that he overhead someone described as Eric from Dominion stating that there was no need to worry about President Trump being elected because he (the anonymous Eric) "had made fucking sure of it." The timing of the call, according to Oltmann, was in September 2020, a few months before the election. While Oltmann never saw any speakers on the Zoom call or made a recording of it, Oltmann claimed he traced the "Eric from Dominion" to Dr. Coomer through a search he conducted after the election results were announced. No other alleged attendee on the call has corroborated Oltmann's account.

Despite the lack of objectively verifiable proof, Oltmann's incredible claims immediately spread like wildfire across various media platforms. The claims propelled Oltmann to a national spotlight, media appearances, and a speaking role at the Ellipse in

Washington D.C. on January 5, 2020. According to Oltmann, it was during his visit to Washington D.C. where he met Dr. Byrne.

Dr. Byrne is the former CEO of Overstock.com and a promoter of conspiracy theories regarding the 2020 presidential election. Dr. Byrne claims he has had a lifelong relationship with the U.S. Government, including involvement in the investigation of corrupt U.S. officials. In 2019, Dr. Byrne resigned from Overstock.com following reports of his romantic relationship with Russian agent Maria Butina.

In 2020, Dr. Byrne began promoting various theories that President Trump had actually won the U.S. presidential election. Dr. Byrne was able to obtain access to the Trump administration after the election, including a well-publicized meeting with President Trump, General Mike Flynn, and Sidney Powell at the White House on December 18, 2020. Dr. Byrne ultimately gave testimony before the Jan. 6 Committee.

In March 2021, Dr. Byrne self-published his book *The Deep Rig: How Election Fraud Cost Donald J. Trump the White House, By a Man Who Did Not Vote for Him*. Dr. Byrne also promoted his election fraud theories on far-right media outlets such as One America News Network and Newsmax.

On April 30, 2021, Newsmax issued a public apology and retraction of its prior reporting about Dr. Coomer and his alleged role in the "Antifa call" or vote rigging.

Following the Newsmax retraction, Dr. Byrne began doing publicity for the film version he was producing of his book *The Deep Rig*. *The Deep Rig* movie premiered on June 26, 2021, at an event in Phoenix, Arizona (the Film). Dr. Byrne produced, financed, and exercised editorial control over the Film's content.

The stated goal of the Film was to build the membership rolls and raise money for The America Project, an advocacy nonprofit founded by Dr. Byrne. To that end, the Film begins with a plea by Dr. Byrne to contribute to his new group. Dr. Byrne then describes the central thesis of the Film: that targeted election fraud occurred in key jurisdictions in 2020. According to Dr. Byrne, "You can't do it with widespread election fraud. You do it with narrow, deep fraud in six cities. Those six are Las Vegas, Nevada, in Clark County; Phoenix in Maricopa; Milwaukee, Wisconsin; Detroit, Michigan; Philadelphia, Pennsylvania; and Atlanta, Georgia."

The Film summarizes how election fraud occurred in 2020 through targeted vote flipping. Various "cyber security analysts" discuss election fraud claims tied to various ideological actors such as Antifa and revolutions based in Marxist ideology.

The Film then introduces Oltmann, who vaguely describes his role in proving election fraud and his model of how it occurred. "I started reaching out to people who were actually involved in it at a very high level, and had positions in government at a high level, and the more information I fed to them, the more they came back and said listen, can you come to Washington D.C.? They all asked me a bunch of questions like how did you come up with this model? I told them about the math, how I actually discounted different values, and every single person that I sat down with validated the information that I was able to create by actually stacking this information on top of each other."

Dr. Coomer makes an appearance at minute 49 of the Film through a video of him from April 13, 2017, where Dr. Coomer was explaining to election officials how electronic adjudication works. Adjudication is the process of resolving cast ballots to reflect voter

intent. Common reasons that ballots require adjudication include: write-ins, overvotes, marginal machine-readable mark, having no contest selections marked on the entire ballot, or the ballot being unreadable by a scanner. These ballots may be marked for adjudication and then presented to a bi-partisan team to confirm voter intent.

The Film then reintroduces Joe Oltmann and features a roughly two minute segment in which Oltmann recounts overhearing a conference call he says involved Dr. Coomer:

> I set out to figure out who the Antifa activists were, and so, as the story goes, that's when I discovered Eric Coomer. So in September of 2020, I set out to infiltrate Antifa. And I did. So I met a guy that was a part of Antifa and he said "I've got to figure out a way to get out, but I'm too deep into the process." So I said, the first thing that could happen is we could dismantle it, and an easy way to dismantle it is to uncover who is running Antifa. So he got me on a phone call. They were talking about how they needed to fortify and continue to do the things that they were doing, not just in Colorado Springs, but in Denver and all over Colorado.
>
> And a guy named Eric started speaking, and when Eric started speaking, he started talking again about how they needed to fortify and not give up. They asked, "Who is Eric?" Alright, "Who is Eric?" And somebody came back and said, "Oh, Eric's the Dominion guy." As he continued to speak, somebody else interrupted him and said, "Hey what are we going to do if Trump wins?" And he responded, "Don't worry about the election. Trump's not going to win. I made fucking sure of it."
>
> So I hung up the phone, started doing research on Eric. I didn't know Eric was Coomer, I just knew Eric. I'm kind of a research junky, so I just went through and started gathering information. Went and listened to YouTube videos to make sure that the voice I heard on the call was the same voice to match up to that particular individual.
>
> * * *
>
> November 3, we all know what happened. We all went to sleep with President Trump handily ahead. We woke up the next morning and Biden had won. And nothing to see here. And I'm sitting at my friend's place and I get this text message. It's like Joe, you need to read this article. And as I went through the article, it talked about in Georgia, in several precincts, that

> the system on election day actually went down. And there was a description inside of the article that said why it went down. That they had to do an update in the middle and that took it down for four hours. But the person who gave the update was Eric Coomer. And at that moment my heart sank. That's when I knew. That's when I knew that there was a, you know, Dominion Voting Systems was in 28 states. That's when I started to realize that, you know, this guy Eric Coomer, when he said on that call "Don't worry about Trump, he's not going to win." That's when I knew that there's a high probability he affected the election.

The Film transitions into another clip of Dr. Coomer demonstrating adjudication. It then returns, this time to Col. Phil Waldron, who states:

> We first really started digging into Dominion was when Joe Oltmann's report on Eric Coomer first came out. And some of the comments that he had allegedly made on a teleconference, or a video call. We were approached, our team, a small team in Texas, was approached to look at some of the Antifa and BLM problems that we saw arising early in 2020.

Oltmann then goes into his lengthy explanation about ballot signature verification, imaging of ballots though the "ImageCast system" developed by Dominion, injecting fake or phantom ballots into the scanner, the adjudication process and the "erasing" of the image of the adjudicated ballot so that "you don't actually have a history of that ballot being replaced in the adjudication process."

The remainder of the Film contains various interviewees discussing election anomalies, election challenges, cheating, and the need to get involved. It then transitions to General Mike Flynn's brother, Joe Flynn, who discusses the January 6 protestors and promises there would have been prosecutions relating to the 2020 election on a massive scale "if the FBI actually cared about getting to the truth." General Flynn returns to criticize the judiciary and eventually vouches for the legitimacy of the election fraud narrative. "This is not fake news. This is reality. We cannot fake the American people

out and lie to the American people about what the reality is. And the reality is that they were lied to. That this system is totally broken. The United States of America election system broke down." Under oath, General Flynn has sung a different tune.

Despite the lack of evidence, lack of corroboration, lack of investigation, and inherent implausibility of Oltmann's claims about Dr. Coomer, Dr. Byrne made the claims about Dr. Coomer a central part of the Film to demonstrate who rigged the 2020 election and how it was done. As with General Flynn, however, Dr. Byrne too has changed his tune.

Dr. Byrne now claims that "Eric Coomer is part of a criminal conspiracy" involving "a whole bunch of dirty people" at Dominion, in Venezuela, and Serbia. According to Dr. Byrne, this conspiracy also involves the CIA, China, Iran, and Cuba. Dr. Coomer's role in this conspiracy is unclear except as it relates to adjudication, which was highlighted in the Film. On this point, Dr. Byrne testified that there was some "real loosey-gooseyness" in the adjudication process and that Dominion voting machines were capable of "mass adjudication." This information was supposedly provided to Dr. Byrne by anonymous Venezuelan defectors known as Mr. Pink, Mr. White, and Mr. Green (among other color-coded actors) who Dr. Byrne claims he has sheltered in a self-funded witness protection program in the United States.

As to the "Antifa call" story in the Film, Dr. Byrne admits he did not independently verify Oltmann's story but is very confident that the "gist of the story" is true which he describes as follows: "Your client [Dr. Coomer] directed Venezuelan developers to

develop software that could rig the election." This, according to Dr. Byrne, makes Dr. Coomer a "traitor."

Dr. Coomer denies he was on any such call, if it occurred. Dr. Coomer denies he was a "member" of Antifa or any specific political organization. He further denies having any knowledge, role, or involvement in manipulating, altering, or creating fraudulent ballots or records during the 2020 election or any prior election.

The allegations about Dr. Coomer in the Film are antithetical to his professional role at Dominion and destroyed his ability to work in elections and his professional reputation. The Film was released shortly after Dr. Coomer was exonerated by Newsmax and quelled some of the positive momentum Dr. Coomer had gained. It exacerbated and prolonged the threats and harassment Dr. Coomer was receiving to the point that Dr. Coomer now resides outside of the country for his own personal safety and peace of mind.

Dr. Coomer contends that Dr. Byrne's publication of the claims about him in the Film were false and defamatory and made with actual malice. Dr. Coomer claims that Dr. Byrne's publications and related conduct by both Dr. Byrne and his agents meet the standard for intentional infliction of emotional distress. Dr. Coomer is seeking to recover economic damages, compensatory noneconomic damages, as well as punitive damages.

**(B) Defendant's position:**

[Byrne to provide]

**(4) a list of each exhibit with a notation of each objection:**

**(A)** Parties' Joint Exhibit List attached as **Exhibit 1**.

**(B)** Plaintiff's Exhibit List attached as **Exhibit 2**.

**(C)** Defendant's Exhibit List attached as **Exhibit 3**.

**(5) a list of each witness by name only with a notation of:**

**(A) the likelihood the witness will testify and**

*(i) Plaintiff's Witnesses*

| Witness/Testimony | Likelihood of Testimony |
|---|---|
| Dr. Alex Halderman | Will Call |
| Joseph Oltmann | Will Call (live or by deposition) |
| Dr. Patrick Byrne | Will Call |
| Steven Lucescu | Will Call (live or by deposition) |
| Carlito Johnson, Corporate Representative, The America Project | Will Call (live or by deposition) |
| Dr. Eric Coomer | Will Call |
| Mike Rothschild | May Call |
| Bill Coomer | May Call |
| Doug Bania | Will Call |

*(i) Defendant's Witnesses*

[Byrne to provide]

| Witness/Testimony | Likelihood of Testimony |
|---|---|
| | |

**(B) each objection to the witness's testifying,**

Plaintiff objects to Defendant's overly broad "May Call" witness list provided by Defendant to Plaintiff on October 12, 2026. This list contains over eighty (80) individuals. Such an expansive list, which includes Nicolas Maduro and Fani Willis, is akin to no list at all and does not provide fair notice to Plaintiff. Further, many of these witnesses were

not disclosed under Rule 26 and should be excluded on that basis. If necessary, Plaintiff will request the Court order Defendant to revise their witness list accordingly.

**(6) a list of each expert witness, with a notation of:**

**(A) the substance of the testimony and**

*(i) Plaintiff's Experts*

Plaintiff intends to call three testifying experts: Dr. Alex Halderman (election and cybersecurity expert); Mike Rothschild (conspiracy theory expert); and Doug Bania (reputational harm expert).

Dr. Halderman is expected to testify to the technical infeasibility and inherent implausibility of the election fraud claims made in *The Deep Rig*, including the allegations that Dr. Coomer could have affected the 2020 election results without detection. Plaintiff has previously produced a detailed report by Dr. Halderman to Defendant.

Mike Rothschild is an author and expert on the origin and spread of conspiracy theories and is expected to testify to the origins of the preconceived election fraud narratives posited in *The Deep Rig*, the inherent implausibility of the claims of election rigging, and origin of these and similar theories among adherents of QAnon. Plaintiff has previously produced a detailed report by Mr. Rothschild to Defendant.

Doug Bania has testified extensively in defamation cases across the country regarding reputational repair damage models and is expected to testify about the cost of a reputational repair program for Dr. Coomer based on publicly available data and data produced by Defendant regarding the distribution and audience reach of *The Deep Rig*. Plaintiff has previously produced a detailed report by Mr. Bania to Defendant.

Plaintiff intends to call Dr. Coomer as a non-retained expert. Dr. Coomer has extensive knowledge of election technology and security and will testify about the technical implausibility of claims of election rigging made about him (in addition to the fact that he did not participate in rigging the 2020 presidential election). Among other things, Dr. Coomer will describe his own contributions towards transparency of the vote adjudication process and his role in promoting the Coordinated Vulnerability Program which serves as model for election security threat detection and disclosure. Dr. Coomer's extensive work and contributions towards election security are antithetical to the false claims made about him in *The Deep Rig*.

*(ii) Defendant's Experts*

[Byre to Provide]

**(B) each objection to the witness's testifying,**

Plaintiff objects to expert opinion testimony from any of Defendant's witnesses. Retained experts have been excluded by the Magistrate Judge. (Doc. 362). Defendant was required to supplement his disclosures regarding non-retained experts by the same order but did not do so within the required seven days (and has not done so as of this filing). Defendant has objected to the Magistrate Judge's order. (Doc. 365). As of this filing, a ruling on the objection is pending from this Court.

**(7) a breakdown of the type and amount of monetary damages,**

**Economic Damages.** Plaintiff seeks compensatory economic damages up to $39,988,479 pursuant to calculations performed by his reputational harm and damages expert, Doug Bania, and for any out-of-pocket economic loss.

**Noneconomic Damages.** Plaintiff seeks compensatory non-economic damages to compensate for impairment of Plaintiff's reputation, personal humiliation, and mental anguish and suffering both in the past and to be experienced in the future. Under Florida law, there is no exact standard for measuring such damages. Rather, Plaintiff intends to ask the jury to award an amount of past and future noneconomic damages that is fair and just in light of the evidence presented at trial, in accordance with Florida law.

**Punitive Damages.** Plaintiff seeks punitive damages pursuant to § 768.72, Fla. Stat. The amount of any such punitive damage will be determined by the jury based on the evidence presented at trial, in accordance with § 768.72, Fla. Stat.

[Response by Defendant, if any, type here.]

**(8) a list of each deposition offered in lieu of live testimony, unless the deposition is only for impeachment,**

Plaintiff expects to present deposition testimony of three fact witnesses: Joseph Oltmann, Steven Lucescu, and Carlito Johnson, in his capacity as corporate representative of former Defendant, The America Project.

[Byrne to provide].

**(9) a concise statement of each admitted fact,**

- Plaintiff is the former Director of Product Strategy and Security for Dominion Voting Systems.

- On November 9, 2020, Joseph Oltmann first published, on his podcast, his account of a conference call he claimed to have overheard.

- On December 22, 2020, Dr. Coomer filed a lawsuit in the District Court for the City and County of Denver, Colorado, against Mr. Oltmann arising out of that account.

- On April 30, 2021, Newsmax issued a public apology and retraction of its prior reporting about Dr. Coomer that was based on Mr. Oltmann's account of a conference call he claimed to have overheard.

- Dr. Coomer's employment with Dominion Voting Systems ended on May 14, 2021.

- *The Deep Rig* movie premiered on June 26, 2021, at an event in Phoenix, Arizona.

- *The Deep Rig* movie was re-released on July 21, 2022, at a theatre in Naples, Florida.

**(10) a concise statement of each agreed principle of law,**

- The elements of defamation are substantially similar under Florida and Colorado law.

- The alleged defamatory statements at issue are a matter of public concern.

- In matters of public concern, Plaintiff's burden of proof requires a showing of a publication with actual malice.

- The defamation claim in this case requires proof of the following elements: whether Defendant Byrne published a statement about Plaintiff Coomer; whether the statement was in some significant respect false; whether Defendant Byrne either knew the statement was false or published with reckless disregard for the truth or falsity of the statement; whether the statement was defamatory; and, if so, whether the defamatory statement was a legal cause of damage to Plaintiff Coomer.

- The elements of intentional infliction of emotional distress are substantially similar under Florida and Colorado law.

- The elements of intentional inflection of emotion distress requires proof of the following elements: whether Defendant Byrne engaged in extreme and outrageous conduct with the intent to cause severe emotional distress or with reckless disregard of the high probability of causing severe emotional distress; and, if so, whether that extreme and outrageous conduct was a legal cause of severe emotional distress to Plaintiff Coomer.

**(11) a concise statement of each issue of fact without incorporating another paper,**

**(A) Plaintiff's Issues of Fact**

*(i) Defamation*

- Whether Defendant Byrne "published" statement(s) about Dr. Coomer.
- Whether such statement(s) were in some significant respect false.
- Whether Defendant Byrne either knew the statement(s) were false or published them with reckless disregard for the truth or falsity of the statement(s).
- Whether the statement(s) published were defamatory.
- Whether the defamatory statement(s) were a legal cause of damage to Dr. Coomer.

*(ii) Intentional Infliction of Emotional Distress*

- Whether Defendant Byrne engaged in extreme and outrageous conduct.
- Whether Defendant Byrne acted with the intent to cause severe emotional distress or with reckless disregard of the high probability of causing emotion distress.
- Whether that extreme and outrageous conduct was a legal cause of emotional distress to Dr. Coomer.

*(iii) Damages*

- What amount of money does the greater weight of the evidence show will fairly and adequately compensate Dr. Coomer for his economic loss.

- What amount of money does the greater weight of the evidence show will fairly and adequately compensate Dr. Coomer for any out-of-pocket economic loss, impairment of his reputation, personal humiliation, and mental anguish and suffering, both in the past and in the future.

- Whether Defendant Byrne was personally guilty of intentional misconduct which was a substantial cause of damage to Dr. Coomer and that Defendant Byrne's primary purpose in publishing the statement was to indulge ill will, hostility, or an intent to harm Dr. Coomer.

- What amount of money does the greater weight of the evidence show should be awarded in punitive damages?

**(B) Defendant's Issues of Fact**

- Type

- Type

- Type

- Type

- Type

**(12) a concise statement of each issue of law without incorporating another paper,**

- Whether the statements at issue are defamatory per se as a matter of law. (Doc. 333).

- Whether a genuine issue of material fact exists regarding Defendant Byrne's substantial truth defense. (Doc. 333).

- Whether a genuine issue of material fact exists regarding Defendant Byrne's publication of the statements at issue. (Doc. 334).

- Whether a genuine issue of material fact exists regarding actual malice as to Defendant Byrne. (Doc. 334).

- Whether a genuine issue of material fact exists regarding Dr. Coomer's intentional infliction of emotional distress claim. (Doc. 334).

- Whether Florida or Colorado law applies where conflicts exist.

- Whether conflicts of law exist between Florida and Colorado law with respect to proof of actual damages even when the statement is defamatory per se; the standard of proof applicable to the award of punitive damages; limitations on the award of punitive damages; consideration of a party's income or net worth in the award of punitive damages; and the burden of proof applied to proof of falsity of the publication.

- Whether and to what extent the ruling in *Coomer v. Oltmann*, No. 26W258, Ruling Regarding Permanent Protection Order Hearing (Denver Cnty. Ct. July 6, 2026) has preclusive effect (Denver ruling). (Doc. 371).

- Whether Joseph Oltmann's statement about Dr. Coomer that there was a "high probability" that Dr. Coomer affected the election is protected opinion. (Doc. 371).

- Whether the Court should enter an order under FED. R. CIV. P. 56(g) treating as established that Joseph Olmtann sincerely held the belief that Dr. Coomer participated in efforts to influence the 2020 presidential election as of May 8, 2026, and that Dr. Coomer is precluded from relitigating it. (Doc. 371).

- Whether Byrne's Supplemental Motion for Summary Judgment, Doc. 371, should be struck. (Doc. 372).

- Whether issue preclusion applies to the Denver ruling. (Doc. 372).

- Whether a Rule 56(g) order proposed by Defendant Byrne is material to any element the jury will decide. (Doc. 372).

**(13) a list of each pending motion or other unresolved issue**

- Plaintiff's Motion for Summary Judgment (Doc. 333).

- Defendant Byrne's Motion for Summary Judgment (Doc. 334).

- Plaintiff's Motion to Dismiss The America Project, Inc. (Doc. 347).

- Defendant's Byrne's Objections to Magistrate Report and Recommendations of August 27, 2026 (Doc. 365).

- Ruling on Magistrate's Order re Defendant Patrick Byrne and his counsel Peter Ticktin's Motion for Reconsideration Based on Newly Obtained Evidence (Doc. 357) and Request for an Evidentiary Hearing (Doc. 358).

- Defendant's Byrne's Supplemental Motion for Summary Judgment (Doc. 371).

- Plaintiff's Motion to Strike and, in the alternative, Response in Opposition to Defendant Patrick Byrne's Supplemental Motion for Summary Judgmeent (Doc. 372).

- Plaintiff's Motion for Determination that Florida Law Governs Defamation Claim and Punitive Damages (Doc. 373).

**(14) a statement of the usefulness of further settlement discussions**

The parties agree that further settlement discussions would not be productive and are unlikely to result in a resolution of this case. The parties reached an impasse at mediation.

**(15) the signatures of trial counsel and any pro se party following this certificate:**

"In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action."

Respectfully submitted this 30th day of October 2026.

| | |
|---|---|
| *      /s/ Charles J. Cain*<br>Charles J. Cain, CO Atty No. 51020*<br>ccain@cstrial.com<br>Bradley A. Kloewer, CO Atty No. 50565*<br>bkloewer@cstrial.com<br>**CAIN & SKARNULIS PLLC**<br>P. O. Box 1064<br>Salida, Colorado 81201<br>719-530-3011<br>512-477-5011 (Fax)<br><br>Ashley N. Morgan*<br>TX Atty No. 24091339<br>CO Atty No. 61713<br>amorgan@cstrial.com<br>**CAIN & SKARNULIS PLLC**<br>303 Colorado Street, Suite 2850<br>Austin, Texas 78701<br>512-477-5000<br>512-477-5011 (Fax)<br><br>David M. Beller*<br>CO Atty No. 35767<br>david@rklawpc.com<br>**RECHT KORNFELD, P.C.**<br>1600 Stout Street, Suite 1400<br>Denver, Colorado 80202<br>303-573-1900<br>303-446-9400 (Fax)<br><br>**ATTORNEYS FOR PLAINTIFF**<br>***Appearing via Special Admission** | ____________________________<br>Peter Ticktin, Esquire<br>Florida Bar No. 887935<br>David L. Perry II, Esquire<br>Florida Bar No. 1045902<br>Serv512@LegalBrains.com<br>Serv600@LegalBrains.com<br>THE TICKTIN LAW GROUP<br>270 SW Natura Avenue<br>Deerfield Beach, Florida 33441<br>(561) 232-2222<br><br>**ATTORNEYS FOR DEFENDANT PATRICK BYRNE** |