**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ERIC COOMER, Ph.D.,
Plaintiff

v. No. 8:24-cv-00008-TPB-SPF

PATRICK BYRNE, et al.
Defendants

---

**PLAINTIFF'S MOTION IN LIMINE**

---

Plaintiff Eric Coomer, Ph.D. (Plaintiff or Dr. Coomer), by and through undersigned counsel, files this Motion in Limine, and states:

## I. BACKGROUND

1. This is a defamation and intentional infliction of emotional distress case arising from Defendant Patrick Byrne's (Byrne) publication of defamatory statements about Dr. Coomer in *The Deep Rig*, a documentary film based on Byrne's book of the same name. The gist of those statements is that Dr. Coomer was on an Antifa conference call whereon he bragged about ensuring that President Trump would not win the 2020 Presidential Election (the Election) and that Dr. Coomer did, in fact, affect the results of the Election. Dr. Coomer will play *The Deep Rig* in full; it is the publication at issue. Nothing in this motion is intended to limit the admission of the film or any part of it, or Dr. Coomer's ability to respond to anything the film says or shows.

## II. ARGUMENT AND AUTHORITIES

2. Federal district courts have authority to make in limine rulings as part of their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Those rulings are reviewed for abuse of discretion. *Jones v. Auto. Ins. Co. of Hartford,* 917 F.2d 1528, 1537 (11th Cir. 1990).

3. Irrelevant evidence is inadmissible, and relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FED. R. EVID. 401-403. "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." FED. R. EVID. 403 advisory committee's note.

4. Character evidence is limited because it "may be very prejudicial" and "tends to distract the trier of fact from the main question." FED. R. EVID. 404, advisory committee's notes. Evidence of a person's character or other acts is not admissible to prove that on a particular occasion the person acted in accordance with that character, FED. R. EVID. 404(a)(1),(b)(1), and other-acts evidence offered for a permitted purpose must be relevant to an issue other than character and satisfy Rule 403. *Lanham v. Whitfield,* 805 F.2d 970, 972 (11th Cir. 1986).

5. Evidence of specific instances of conduct "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." FED. R. EVID. 405, advisory committee's note. Even then, in a defamation case, proof of

the plaintiff's character is confined to reputation for the trait at issue, and "[p]articular instances of misconduct are inadmissible to prove plaintiff's general bad character." *Boyles v. Mid-Fla. Television Corp.,* 431 So. 2d 627, 640 (Fla. 5th DCA 1983) (quoting 53 C.J.S. *Libel & Slander* § 210 (1948)), *approved,* 467 So. 2d 282 (Fla. 1985) (finding that sexual orientation does not meet the requirements for reputation testimony and even if relevant, would be barred due to its inflammatory nature outweighing its relevance); *see Curtis Publ'g Co. v. Butts,* 351 F.2d 702, 720-21 (5th Cir. 1965) (evidence of plaintiff's unfaithfulness and disloyalty to employer properly excluded where it did not relate to "the real 'sting of the libel'"), *aff'd,* 388 U.S. 130 (1967).

6. Extrinsic evidence of specific instances of a witness's conduct is not admissible to attack the witness's character for truthfulness; the Court may allow inquiry on cross-examination only into conduct probative of untruthfulness. FED. R. EVID. 608(b). A conviction may be used to impeach only if the crime was punishable by more than one year's imprisonment or required proof of a dishonest act or false statement. FED. R. EVID. 609(a). "Evidence of a witness's religious beliefs or opinions is not admissible to attack or support the witness's credibility." FED. R. EVID. 610.

**Topic 1: Motor vehicle accident.**

7. Byrne has agreed that he may not introduce evidence of Dr. Coomer's September 2021 motor-vehicle accident, including body-camera footage, the incident report, the resulting traffic citation, or testimony about the accident.

Plaintiff asks the Court to enter that agreement as an order and to exclude Def. 101, the police video Byrne has listed, which he offers on damages and to impeach.

8. The agreement is correct. The reckless-driving conviction was a misdemeanor traffic offense punishable by no more than ninety days, and its elements require no proof of a "dishonest act or false statement." FED. R. EVID. 609(a); C.R.S. §§ 42-4-1401(1), 42-4-1701(3)(a)(II)(A). The accident occurred months after the film's release and has no connection to any elements of the claims. FED. R. EVID. 403.

**Topic 2: Dr. Coomer's sex life, sexual preferences, and alleged sexual writings.**

9. The Court should exclude evidence and argument about Dr. Coomer's sexual preferences or activities, including web-server posts from the early 1990s claimed to be attributed to him, and any allegation that Dr. Coomer wrote to, belonged to, or described his conduct to any sexual group or community. FED. R. EVID. 402, 403, 404. *See Boyles,* 431 So. 2d at 640 (in libel action, "asking the plaintiff whether or not he was a homosexual does not meet the requirements for reputation testimony").

10. This evidence is irrelevant, has no bearing on truthfulness, and is too remote to say anything about present character. *See United States v. Fortes,* 619 F.2d 108, 118 (1st Cir. 1980). The posts have circulated online for one purpose, to discredit Dr. Coomer generally, which is the use Rule 404 forbids. *See Roberts v. Secretary, Dep't of Corrections,* No. 8:21-CV-2745-WFJ-AAS, 2024 WL 3917867, at *6 (M.D. Fla. Aug. 23, 2024) ("character evidence must not be so

remote in time as to be lacking probative value in showing present character"). Additionally, a person's personal sexual conduct has no bearing on his character for truthfulness.

11. Nor is it relevant to damages on a theory that Dr. Coomer's reputation was already damaged. The posts, claimed to be made around 1992 and attributed to Dr. Coomer through an email trace, were not on the internet until Oltmann posted them on Telegram on August 23, 2021, after the Defendant published *The Deep Rig*.

**Topic 3: Drug use.**

12. The Court should exclude evidence of any alleged prior drug use by Dr. Coomer and of his prior inpatient treatment that occurred decades prior to the relevant time period here. FED. R. EVID. 402, 403, 404. Dr. Coomer's treatment records (Joint 17 EC 009450-009505; Pl. 92, 93: EC 005687-5815 and, 007770-7773, Def. 95A, 95B) should be received with references to remote drug use and treatment redacted, as the parties have provisionally agreed pending this motion.

13. "[P]rior instances of drug use are not relevant to truthfulness for purposes of FED. R. EVID. 608(b)," *United States v. Sellers,* 906 F.2d 597, 602 (11th Cir. 1990),[1] and a witness's drug use "may not be used to attack his general credibility, but only his ability to perceive the underlying events and to testify

[1] *See also United States. v. McDonald*, 905 F.2d 871, 875 (5th Cir. 1990) (error to permit cross-examination about drug use); *United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009) (district court did not err in excluding evidence of drug treatment nine years before the events, offered to impeach general credibility); *Sellers,* 906 F.2d at 602 (noting the "extreme potential for unfair prejudice flowing from evidence of drug use").

lucidly at trial." *United States v. Clemons,* 32 F.3d 1504, 1511 (11th Cir. 1994).[2] There is no evidence that Dr. Coomer used illicit drugs at any time material to this case, and pre-2010 drug use does not make any fact of consequence, including Byrne's belief in what he published, more or less likely.

**Topic 4: Religious beliefs.**

14. The Court should exclude evidence, statements, testimony, or arguments relating to Dr. Coomer's religious beliefs or opinions because it is irrelevant and inadmissible as character evidence. FED. R. EVID. 402, 610. Specifically, Plaintiff requests the Court order that Byrne may not question Dr. Coomer or other witnesses about the following topics or introduce evidence or argument before the jury concerning:

a. Dr. Coomer's religious beliefs or lack thereof;

b. Claims Dr. Coomer is or was a satanist;

c. Dr. Coomer's references to Vice President Mike Pence or any other person as a "Christian" or "Christian nationalist"

d. Dr. Coomer's opinions about USAID appointee Merritt Carrigan and/or Facebook posts concerning Merritt Carrigan;

e. Dr. Coomer's references to God as a "magical non-existent being;" and

f. Dr. Coomer's Facebook posts about or involvement with the parody group the "Church of the Subgenius."

---

[2] *United States v. Apperson*, 441 F.3d 1162, 1195-96 (10th Cir. 2006) (district court correctly excluded evidence of witness's prior drug use in case involving conspiracy to manufacture, distribute, and dispense LSD). *See also Bennett v. Longacre*, 774 F.2d 1024, 1027 (10th Cir. 1985) (evidence of witness's "previous actions in indulging in alcohol and illegal drugs, without more, would not have any probative value on his 'character for . . . untruthfulness'").

15. The Court should likewise exclude photographs of Dr. Coomer's tattoos (Def. 100) unless Byrne first shows, outside the jury's presence, a purpose that does not depend on inferences about Dr. Coomer's religious or political beliefs. FED. R. EVID. 104(a), 403, 404(a), 610.

**Topic 5: Law enforcement and Black Lives Matter.**

16. The Court should exclude evidence and argument relating to Dr. Coomer's opinions about law enforcement, criminal justice reform, the death of George Floyd, the Black Lives Matter movement, and Dr. Coomer's interest in music or videos relating to any of the foregoing topics. Plaintiff requests the Court exclude related Facebook posts.

17. These topics are divisive, irrelevant, and likely to inflame the jury. FED. R. EVID. 402, 403. Dr. Coomer's opinions on them have no bearing on the truth or falsity of the statements at issue, and his private Facebook account, viewable only by his roughly 300 "Friends," did not shape his public reputation until Oltmann infiltrated and published it.

**Topic 6: Dr. Coomer's opinions and Facebook posts about President Trump.**

18. The Court should exclude evidence and argument relating to Dr. Coomer's opinions about President Trump, including, but not limited to, Dr. Coomer's Facebook posts about President Trump and/or his administration. Dr. Coomer's opinions are irrelevant, cannot be utilized to show that he acted in conformity with his opinions, and any probative value is substantially outweighed

by the risk of unfair prejudice, misleading the jury, and wasting time. FED. R. EVID. 402, 403, 404, 405. Dr. Coomer's expression of his opinions about President Trump are core political speech protected by the First Amendment, and evidence that proves "nothing more than [a person's] abstract beliefs" is not admissible. *Dawson v. Delaware,* 503 U.S. 159, 165-67 (1992).

19. Byrne's likely theory is that Dr. Coomer's "vitriolic" views of President Trump made him more likely to have joined the alleged Antifa call and rigged the Election. Stripped to its logic, that is propensity reasoning: Dr. Coomer holds certain political views; people with those views have a certain character, and so he acted in conformity with it.

20. Any argument that the posts show motive equally fails. Motive evidence is not relevant in the abstract. Its relevance is conditioned on proof that the act occurred. *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988); *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc) (proponent must offer "sufficient proof so that a jury could find that the defendant committed the extrinsic act"); FED. R. EVID. 104(b). Evidence that someone wished for an outcome proves nothing unless there is evidence that someone brought it about. *Cf. People v. Hall,* 718 P.2d 99, 104 (Cal. 1986) ("evidence of mere motive or opportunity . . . without more, will not suffice"). Byrne has no admissible evidence that Dr. Coomer effected the outcome of the Election. Without that predicate, the jury cannot "reasonably find the conditional fact," *Huddleston,* 485 U.S. at 690, and the motive evidence fails Rules 401 and 402 before 403 even applies. The issue

on truth is the "sting" of the charge, *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991): whether Dr. Coomer rigged the Election, not whether he wanted a particular result.

21. Labeling the inference a "credibility" question does not change its logical structure or render it admissible. Any legitimate credibility purpose is served by Dr. Coomer's live testimony. Defendant may try to ask Dr. Coomer directly about his opinions of President Trump, to the extent they are relevant, which Plaintiff disputes. If permitted, Dr. Coomer's live testimony will suffice. The Facebook posts are, therefore, needlessly cumulative under FED. R. EVID. 403 in addition to being inadmissible under FED. R. EVID. 404(b). This request does not reach the film's own content, including any post the film displays, which Dr. Coomer may address.

**Topic 7: Settlement agreements.**

22. The Court should exclude evidence and argument about Dr. Coomer's settlements with others, including the dismissed defendants and the Newsmax settlement agreement (Def. 41). FED. R. EVID. 402, 403, 408.

23. The settlements are irrelevant to any question the jury must decide and admitting them would invite the jury to discount liability or damages on an improper basis. FED. R. EVID. 403. Each defamatory publication is its own tort: "[t]he fact that a party and a nonparty defamed Plaintiff in the same way, allegedly causing or contributing to similar harm around the same time, does not mean that the nonparty is 'at fault' for the party's statements . . . . Each has effected a different,

albeit similar, injury." *Coomer v. Lindell,* No. 22-cv-01129-NYW-SBP, 2024 WL 3989524, at *13 (D. Colo. Aug. 29, 2024).

24. Rule 408 bars evidence of compromise, payments, offers, and negotiations to prove or disprove the validity or amount of a disputed claim. FED. R. EVID. 408(a). Florida law likewise provides that the fact of a release or of a defendant's dismissal "shall not be made known to the jury," leaving any setoff to the Court after verdict. Fla. Stat. § 768.041(2)-(3).

25. If Byrne seeks to show a witness's bias from a settlement, that limited purpose can be served by brief testimony under a limiting instruction; the agreements themselves are unnecessary and cumulative. FED. R. EVID. 105, 403, 408(b). This request does not reach the May 15, 2026, letter of Steven Lucescu (Joint 16; EC 009506), which Dr. Coomer may use to impeach Mr. Lucescu, FED. R. EVID. 613, 806, after raising its use outside the jury's presence, or contemporaneous reporting of Dr. Coomer's lawsuits (Pl. 36; Lucescu Dep. Ex. 5) offered for notice. Nor does it reach Newsmax's May 8, 2021 retraction (Pl. 99), aired seven weeks before the film premiered, which bears on what Byrne knew, or Ticktin's November 11, 2025 email (Pl. 63) which Dr. Coomer offers for a purpose other than proving or disproving the validity or amount of the claim. FED. R. EVID. 408(b).

**Topic 8: Complaints from other election-related lawsuits.**

26. The Court should exclude the Complaints Sidney Powell filed in Georgia, Michigan, Arizona, and Wisconsin. They are irrelevant, FED. R. EVID. 402,

403, contain hearsay containing hearsay, FED. R. EVID. 802, 805, and would serve as a back door for "expert" opinions from people who will not testify. FED. R. EVID. 702, 703; FED. R. CIV. P. 26(a)(2).

27. The Complaints run 58 to 104 pages, plead claims under other states' laws against parties with no connection to this case, and were dismissed early in their litigation. Admitting them would require a trial within a trial on each alleged irregularity, all collateral to the statements about Dr. Coomer. FED. R. EVID. 403.

28. The Complaints quote anonymous "whistleblowers" whose names are redacted, along with poll watchers and others who will not testify. *See, e.g.,* Mich. Compl., ¶¶ 6-8; Ariz. Compl., at ¶¶ 7-8, fn. 2.; Ga. Compl, ¶¶ 5-7; Wis. Compl. ¶¶ 6-8.

29. Each Complaint presents purported expert opinions from individuals such as Andrew Appel, Dr. William Briggs, Dr. Eric Quinnell, Navid Keshavarez-Nia, and Matt Braynard, none of whom has been disclosed as an expert in this case. Jurors are likely to give those opinions undue weight because they are labeled expert opinions, and Dr. Coomer could not cross-examine them. To the extent non-retained expert Russ Ramsland testifies, he is limited to relevant opinions properly disclosed in this case, which are none, and the complaints' description of his views remains hearsay. FED. R. EVID. 702; FED. R. CIV. P. 26(a)(2).

30. For the same reasons the Court should exclude any reference to Dr. Coomer's appearance as a witness before the Fulton County, Georgia special

purpose grand jury (Def. 46f, 90). If Byrne uses that testimony to impeach, it should be identified only as prior sworn testimony. FED. R. EVID. 403.

**Topic 9: Election rigging theories not raised in the defamatory statements at issue, including, but not limited to, Venezuela-related theories.**

31. This case revolves around statements that Dr. Coomer rigged the Election, not whether there were any perceived or actual election irregularities more generally.

32. This trial is not a soapbox for Byrne to air his conspiracy theories about how the Election was stolen or his theories about election interference by foreign countries, such as Venezuela, including Byrne's exhibits concerning Smartmatic, Sequoia, and Venezuela (Def. 49h, 49m, 49u, 85h, 91m, 91r). *The Deep Rig* did not address election-rigging theories involving Nicolas Maduro, Smartmatic (a separate election company), and election-hacking by former Venezuelan nationals. The Court should exclude evidence and argument relating to any election-rigging or election fraud theories that go beyond the defamatory statements at issue in this lawsuit because they are irrelevant to the matters to be decided by the jury and any probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury, confusing the issues, and wasting time. FED. R. EVID. 402, 403.

33. Evidence upon those collateral issues would tend to obscure the real issues to be decided by the jury in this case and confuse the jury. The trial in this case is not a referendum on the results of the Election. The only conspiracy theories

that are relevant here are those raised in the defamatory statements that Defendant published. This request does not limit the film itself or Dr. Coomer's response to what the film says or shows, including through Dr. Halderman and Mr. Rothschild, and including evidence that the results the film attributes to Dr. Coomer were not altered. Nor does it reach Byrne's own statements and conduct concerning the 2020 election, such as his November 25, 2020 InfoWars appearance (Pl. 8; EC 009136), the December 16, 2020 draft executive order (Pl. 12; Byrne Depo Ex 43), and his later posts (Pl. 47; EC 002184), which show the account Bryne had settled on before he made the film. *See Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 668 (1989).

**Topic 10: Byrne may testify to what he believed, but neither he nor other laypersons may offer opinion testimony that the Election was, in fact, rigged.**

34. Byrne may testify about what he believed when he published *The Deep Rig,* what sources he relied on, and why, because his state of mind bears on actual malice. But no lay witness, including Byrne, may offer his own opinion, or relay the opinions of others, as proof that the Election was in fact rigged, that Dominion systems were manipulated, or that Dr. Coomer altered the results. That is for expert testimony, and neither Byrne, nor Oltmann, nor any other lay witness the defense calls is a disclosed or a qualified expert. FED. R. EVID. 602, 701-703; FED. R. CIV. P. 26(a)(2), 37(c)(1).

35. Whether election results were altered through manipulation of voting machines or software is a question of computer science and election

administration. As such, it is "beyond the understanding of the average lay person." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (en banc)) (applying when expert testimony is admissible). This Court has recognized as much: "Defendants can present evidence on the feasibility of vote tampering or other technical issues through expert testimony." (Doc. 328 at 5).

36. Neither Byrne nor Oltmann can offer such opinions as lay witnesses. Lay opinion must be rationally based on the witness's perception and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(a),(c). Subsection (c) prevents evasion of Rule 702 "through the simple expedient of proffering an expert in lay witness clothing." FED. R. EVID. 701 advisory committee's note to 2000 amendment; *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1221 (11th Cir. 2003). Byrne and Oltmann perceived no altered vote, no manipulated machine, and no act by Dr. Coomer. FED. R. EVID. 602. Testimony "based on a hypothesis," rather than the witness's own experience, "crosses the line from lay to expert testimony." *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317-18 (11th Cir. 2011).

37. Expert testimony is admissible only if the witness was properly disclosed and the proponent shows that it is "more likely than not" that the opinion satisfies Rule 702. FED. R. EVID. 702. Byrne nor Oltmann were disclosed as experts and cannot show that the failure was "substantially justified or is harmless."

FED. R. CIV. P. 37(c)(1); *Romero v. Drummond Co.,* 552 F.3d 1303, 1323-24 (11th Cir. 2008).

38. Byrne's designated experts do not change this analysis. The Magistrate Judge recommended striking both of Byrne's retained experts and requiring supplemental disclosures within seven days from August 27, 2026, for his non-retained experts, whose historical reports "do not bear any obvious connection to Dr. Coomer or the claims of this case." (Doc. 362 at 6, 8, 10-11). Byrne told the Court he could supplement within seven days (Doc. 312 at 12) but has not done so. Byrne also told the Court these witnesses would testify to "the manner, method, and means by which the Plaintiff, Eric Coomer, manipulated election results." (Doc. 312 at 3.) No disclosed expert report holds that opinion, and expert testimony must be confined to opinions fairly disclosed. FED. R. CIV. P. 37(c)(1). If Messrs. Cotton and Speckin are struck, Byrne will have no retained expert at all (Doc. 365 at 8), and he should not be permitted to fill that gap with his own lay opinion.

39. Limiting Byrne to his beliefs takes nothing from him. Actual malice turns on what Byrne knew or recklessly disregarded at publication, *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968), and he remains free to say what he believed. But a defendant cannot "automatically ensure a favorable verdict by testifying that he published with a belief that the statements were true," *id.* at 731-32, much less convert that belief into proof of the accusation. Byrne himself has told the Court that it "need not . . . decide whether the 2020 election was in fact rigged." (Doc. 334

at 15). Allowing Byrne to testify that the Election was rigged would lend his conviction the "talismanic significance" jurors may give expert-sounding testimony, *Frazier,* 387 F.3d at 1263, and turn this trial into litigation of the Election. FED. R. EVID. 403. Nothing in this request bars admissible evidence on substantial truth offered through a competent witness.

40. Plaintiff, therefore, requests an order that: (a) Byrne may testify to his own beliefs at the time of publication, offered for his state of mind and subject to a limiting instruction; (b) neither Byrne, nor any other lay witness, may testify, nor may Defendant argue, that the Election was in fact rigged or stolen, that Dominion voting systems or software were in fact manipulated to alter results, or that Dr. Coomer in fact altered or affected the results, unless that evidence comes from a properly disclosed and qualified expert or a witness with personal knowledge; (c) neither Byrne, nor any other lay witness, may relate the conclusions of others for their truth or hold himself out as an expert in elections, voting systems, or cybersecurity; and (d) if such state-of-mind evidence is received, the Court instruct the jury as follows:

> You have heard testimony about what Mr. Byrne believed and about information other people gave him. You may consider that testimony only in deciding what Mr. Byrne knew or believed when the statement was published. You may not consider it as evidence that the 2020 presidential election was rigged or that Dr. Coomer altered or affected its results.

41. Plaintiff further requests that any expert testimony, unless stricken as recommended by the Magistrate Judge, be limited to opinions properly disclosed,

and that no witness be permitted to opine that Dr. Coomer manipulated, altered, or affected the results of the Election. The same limits apply to the third-party reports, affidavits, and declarations on Byrne's exhibit list whose authors are not disclosed experts or whose disclosures were struck, including Def. 3, 4, 5a-5b, 6, 51a-51y, 52a-52b, 57, 59, and 91j-91l. If Byrne offers any of them for his state of mind, he must first show that he read it before June 26, 2021. Reports dated after that day (e.g., Def. 51q-51x) cannot bear on his state of mind at all. Dr. Coomer's exhibits stand differently. Dr. Halderman's analyses (Joint 10, 14; EC 000340-000393; EC 0008648-008725) and the materials he relied on (Pl. 95-97) come in through a disclosed expert, FED. R. EVID. 703, and those available before June 26, 2021, including the CISA joint statement (Joint 3; EC 000014), are offered for what they told Byrne, not for their truth.

**Topic 11: Oltmann's claims about being the victim of harassment and threats.**

42. The Court should exclude evidence and argument that witness Joseph Oltmann claims he has been harassed or threatened by unnamed persons because of his "disclosure" that Dr. Coomer participated in an Antifa call. Whether he has been threatened has no tendency to make any fact of consequence more or less probable, and he has produced no evidence connecting any alleged threat to Dr. Coomer or to the statements at issue. A mini-trial over whether Oltmann was ever threatened, who made the threats, and why, would waste time and invite sympathy on an improper basis. FED. R. EVID. 401-403. This request does not limit

evidence of threats against Dr. Coomer, including the November 2020 typewritten threats (Joint 4, 5; EC 001954-1955; EC 001956-1957) and Oltmann's post showing Dr. Coomer's home (Pl. 73; EC 000252), which bear on damages and on Oltmann's bias.

**Topic 12: Verdict from *Coomer v. Lindell et al*.**

43. The Court should exclude evidence and argument about the verdict in *Coomer v. Lindell et al.* including the verdict forms and judgment (Def. 56), the stipulated facts read to that jury (Def. 80), and the expert reports from that case (Def. 43b-43d). It is irrelevant, the verdict form is hearsay, and any probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury, confusing the issues, and wasting time. FED. R. EVID. 402, 403, 802. Findings in another court's judgment are hearsay when offered for their truth, *United States v. Jones,* 29 F.3d 1549, 1554 (11th Cir. 1994), and jurors are "likely to defer to findings and determinations relevant to credibility made by an authoritative, professional factfinder." *United States v. Sine,* 493 F.3d 1021, 1036 (9th Cir. 2007).

44. Dr. Coomer further requests the Court to exclude evidence and argument to the effect that the *Lindell* jury decided Oltmann was truthful or credible or that the jury determined his statements about Dr. Coomer were not defamatory as Oltmann has publicly claimed. The verdict forms contained no such questions to the jury, and that testimony would be misleading and confusing to the jury. Byrne has already previewed this argument: his summary judgment motion asserts that the *Lindell* jury "returned a verdict form indicating Mr. Oltmann is

credible and found no defamation." (Doc. 334 at 4.) It did neither as to Oltmann, who was not a party, and it found two of Lindell's statements and three of FrankSpeech's defamatory.

45. The jury could not tell from the verdict form why that jury decided as it did, and explaining the differences, the instructions given there, and the post-trial proceedings would consume time and confuse the issues. Byrne's argument that Dr. Coomer cannot recover twice for the same harm is answered by an instruction limiting damages to harm caused by the publication at issue here, not by admitting another jury's verdict. This request does not reach prior sworn testimony from that case, such as Mr. Oltmann's deposition (Pl. 46; Oltmann Dep. Ex. 59) or Dr. Coomer's trial testimony (Def. 16), which may be identified neutrally as prior testimony. Nor does it reach the August 29, 2021 sanctions order in *Coomer v. Donald J. Trump for President, Inc.* (Pl. 34; Oltmann Depo Ex 58) offered not for the truth of its findings but for notice to Byrne before he re-released the film in July 2022, with a limiting instruction.

**Topic 13: Chilling effect on the First Amendment.**

46. The Court should exclude evidence and arguments about the effect of a verdict on the First Amendment or free speech generally. Such conjecture misstates the law, which does not protect defamatory falsehoods published with actual malice, and would distract the jury from the questions it must decide. FED. R. EVID. 402, 403. As the Supreme Court has explained, "there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340

(1974). Witnesses and counsel should not be permitted to engage in conjecture about how a decision in this case would impact the exercise of the freedom of speech at large. Statements to the effect that a verdict for Plaintiff would harm the exercise of free speech are misleading and mischaracterize the law, and such statements would generate undue prejudice against Dr. Coomer. Concern over the perceived or actual implications of the case would distract from the questions to be decided by the jury.

**Topic 14: Lawfare.**

47. The Court should exclude evidence and argument characterizing this lawsuit or other lawsuits as "lawfare" or "legal warfare." FED. R. EVID. 402, 403. "Such characterizations are irrelevant, prejudicial, and encourage the jury to make a decision based on emotion or speculation rather than evidence." *Drummond Co. v. Collingsworth*, No. 2:11-cv-3695-RDP, Doc. 1034 at 21, 2025 WL 4718482, at *1 (N.D. Ala. Oct. 14, 2025) (granting motion to in limine barring characterization of defamation case as a "SLAPP" suit or "lawfare"), *reconsideration denied,* Doc. 1148 (N.D. Ala. Dec. 2, 2025). Lawfare is a common mantra from Byrne and Oltmann and Plaintiff reasonably believes they will attempt to insert that claim into their testimony without a prior limiting order. This request does not reach Byrne's own public statements about Dr. Coomer and this case (e.g., Pl. 65-72), which Dr. Coomer offers as continued publication and on punitive damages; Byrne may not use them as a vehicle for the argument this request bars.

**Topic 15: References to protective order proceedings in Colorado.**

48. The Court should exclude evidence and argument about a civil restraining order proceeding Dr. Coomer and his counsel brought against Oltmann in Denver County Court, *Coomer v. Oltmann,* No. 26W258 (Denver Cnty. Ct. July 6, 2026). (Doc. 372.) FED. R. EVID. 402, 403.

49. The county court entered a temporary protection order that remained in effect for four months, then declined to make it permanent, applying the "true threat" standard, which governs threats of violence, a category of unprotected speech distinct from defamation. *Counterman v. Colorado,* 600 U.S. 66, 73-74 (2023).

50. The jury is likely to be confused between the true threat and actual malice standards and misled into believing that the denial of the application for a permanent protection order against Oltmann means that Dr. Coomer cannot show Byrne published the defamatory statements at issue in this case with actual malice. FED. R. EVID. 403. Byrne has already tried to use the ruling that way. (Doc. 371.). This request does not reach Oltmann's own public statements about Dr. Coomer and his counsel, which Dr. Coomer may use to show Oltmann's bias and motive if he testifies.

**Topic 16: January 27, 2026 incident.**

51. The Court should exclude evidence and arguments concerning the facts and circumstances surrounding the incident occurring on January 27, 2026. (*See generally* Doc. 332). The incident is irrelevant to any matter to be decided by

the jury. FED. R. EVID. 402. The probative value is substantially outweighed by the risk of misleading the jury, confusing the issues, and wasting time. FED. R. EVID. 403. The Court has already addressed the matter, and there is no need to have a mini-trial about the issue. Byrne has agreed. The agreement covers the January 27, 2026 altercation only. It does not reach Ticktin's November 11, 2026 email (Pl. 63; Byrne Dep. Ex. 55), which the Court addressed in the same order (Doc. 332 at 19), or Byrne's public statements about Dr. Coomer's deposition testimony (Pl. 71; EC 009158).

**Topic 17: Ticktin's friendship with President Trump.**

52. The Court should exclude evidence and arguments concerning Mr. Ticktin's personal knowledge of, and friendship with President Trump because it is irrelevant to any matter to be decided by the jury and may distract and unfairly prejudice the jury against Plaintiff. FED. R. EVID. 402, 403. Byrne has agreed.

**Topic 18: Pro Hac Vice proceedings involving Byrne's counsel in Colorado.**

53. The Court should exclude evidence and argument about the denial of pro hac vice admission to Byrne's counsel, Peter Ticktin and David Perry, in Dr. Coomer's Colorado cases against Oltmann. The Denver District Court denied their application to appear on behalf of Oltmann in *Coomer v. Donald J. Trump for President, Inc.,* No. 2020CV34319 (Denver Dist. Ct. Apr. 3, 2026), and denied reconsideration on April 24, 2026; the Denver County Court denied their application in *Coomer v. Oltmann,* No. 26W258 (Denver Cnty. Ct. Apr. 22, 2026);

and the Colorado Supreme Court denied relief, Order of Court, No. 2026SA164 (Colo. May 6, 2026). (Doc. 319 at 5 n.11 & Exs. 6-9).

54. Those rulings decided who may practice before the Colorado courts in other cases. They have no bearing on whether Byrne published the statements at issue, whether those statements were false, or whether Byrne acted with actual malice. FED. R. EVID. 401, 402. Any reference to them, whether to suggest that Oltmann was denied the counsel of his choice, that Dr. Coomer or his counsel acted improperly in opposing the applications, or that this lawsuit is part of a campaign against Byrne or his lawyers, would invite a decision on an improper basis and a mini-trial about collateral proceedings in another state. FED. R. EVID. 403. Byrne has agreed.

**Topic 19: "Libel-proof" arguments and counsel's personal opinions about Dr. Coomer.**

55. The Court should bar argument that Dr. Coomer is "libel-proof" or that his reputation was already so damaged that the film could not harm it. Byrne has not pleaded that theory (Doc. 253), and evidence of Dr. Coomer's reputation before the film must come through admissible reputation evidence, not specific instances of conduct. FED. R. EVID. 405(a); *Boyles,* 431 So. 2d at 640. Nor may counsel state a personal opinion about Dr. Coomer's character or culpability. R. Regulating Fla. Bar 4-3.4(e).

**Topic 20: Political insignia, statements, badges, political pins.**

56.The Court should order that, while the jury is present, no party, counsel, witness, or spectator display political insignia, campaign apparel, pins, badges, buttons, or slogans, including items referring to a candidate, campaign, party, or claim of election fraud, or to The American Project or *The Deep Rig*. Nor should any witness or counsel volunteer political statements or appeal to the jurors' political loyalties. The jury must decide whether Byrne defamed Dr. Coomer, not which side of the 2020 election it favors. Displays of this kind invite a verdict on that improper basis, and the Court may prevent them. FED. R. EVID. 403, 611(a); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991); *See Holbrook v. Flynn,* 475 U.S. 560, 570 (1986). The order should apply equally to both sides, it does not limit attendance by members of the news media, but no one in the jury's presence should wear apparel, badges, or insignia identifying a media outlet affiliated with a party, witness, or counsel, and any press identification should be limited to credentials the Court issues. This applies with particular force to Oltmann. He hosts podcasts that promote the accusation at issue, and he is its source. A "press" pin or similar insignia, worn on the stand or in the courtroom, would present him to the jury as a neutral journalist and vouch for the credibility the jury must weigh. FED. R. EVID. 403, 611(a). Nor should a claim to be press let any witness in the courtroom after witnesses are excluded or follow the testimony from outside it. FED. R. EVID. 615.

**PRAYER**

For the reasons stated herein, Plaintiff Eric Coomer, Ph.D. prays this Honorable Court grant his Motion in Limine and issue an Order in Limine, precluding Defendant Patrick Byrne from presenting any such evidence, statements, testimony, or arguments at trial with respect to the above matters. Further, Eric Coomer, Ph.D. requests such other and further relief to which he may be entitled.

Respectfully submitted this 23rd day of October 2026.

*/s/ Charles J. Cain*

Charles J. Cain, CO Atty No. 51020*
ccain@cstrial.com
Bradley A. Kloewer, CO Atty No. 50565*
bkloewer@cstrial.com
**CAIN & SKARNULIS PLLC**
P. O. Box 1064
Salida, Colorado 81201
719-530-3011/512-477-5011 (Fax)

Ashley N. Morgan, CO Atty No. 61713*
Texas Bar No. 24091339
Colorado Attorney No. 61713
amorgan@cstrial.com
**CAIN & SKARNULIS PLLC**
303 Colorado Street, Suite 2850
Austin, Texas 78701
512-477-5000/512-477-5011 (Fax)

David M. Beller, CO Atty No. 35767*
david@rklawpc.com
**Recht Kornfeld, P.C.**
1600 Stout Street, Suite 1400
Denver, CO 80202
303-573-1900/303-446-9400 (Fax)

**ATTORNEYS FOR PLAINTIFF**
***Appearing by Special Admission**

**Local Rule 3.01(g) Certification**

Counsel for Movant certifies:

a. Plaintiff has made a reasonable effort to confer with Defendant Byrne regarding the relief requested herein;

b. Byrne agrees to the relief requested in Topics 1, 16, 17, and 18, subject to his reservation that the door not be opened, and opposes the relief requested in Topics 2 through 15; on Topics 19 and 20 Byrne did not respond before this filing.

c. Conferral regarding the relief requested herein was had at the parties' final pretrial conference conducted via Zoom on October 14, 2026, and by email on October 19 and 20, 2026.