IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:24-cv-00008-TPB-SPF

ERIC COOMER, PhD.,

Plaintiff,

v.

PATRICK BYRNE,

Defendant.
____________________/

**DEFENDANT PATRICK BYRNE'S MOTION IN LIMINE**
**TO CONFINE THE EVIDENCE TO THE CLAIMS BEING TRIED**

The Defendant, Patrick Byrne ("Dr. Byrne"), by and through his undersigned counsel, and pursuant to F.R.E. 103(d) and 104 and paragraph 9 of the Case Management and Scheduling Order (Doc. 136), hereby files his Motion in Limine, and states:

**The Trial Concerns Two Passages in One Film**

The Deep Rig was released on June 26, 2021. In it, Joseph Oltmann, who is not a party, says that on what he calls an Antifa call he heard a man called "Eric" say that President Trump would not win. Doc. 197 ¶ 101. The Plaintiff, Eric Coomer, Ph.D., alleges that Mr. Oltmann later ties that call to an election-day "update" and a "high probability." *Id.* ¶ 103. Those two passages are the case. Dr. Byrne denies publishing them. Doc. 253 at 6, 14.

The Plaintiff plans to show the jury far more. He has a 29-second recording

of a 2024 post on X about a Colorado prosecution. He pleads the events at the Capitol on January 6, 2021, a pardon, and a paper referring to martial law in another man's hands. He quotes the former Attorney General, including testimony from a year after the film. He recites more than sixty failed election lawsuits. He offers a former co-defendant's unsworn 2026 letter addressed to no one. He charges Dr. Byrne, under the label "Defendants," with what two former co-defendants knew, said, and did. He has litigated an altercation at a deposition site. He catalogs Dr. Byrne's posts through November 2024 and calls him a former chief executive of Overstock.com. His pleading mocks a director's earlier film about secret Nazi bases on the moon, and his expert describes a noose left for a contractor in another state. Dr. Coomer's own account of what Dr. Byrne did rests largely on his pleading and his "understanding." None of it is either passage.

The Court has defined the claim as the publication of Mr. Oltmann's statements in the film. Doc. 175 at 23. The Plaintiff offers other statements only as "meaningful context," Doc. 197 at 40 n.86, and "is not proceeding on a theory that the statements from Byrne's mouth are actionable defamation," Doc. 351 ¶ 78. The jury will decide whether Dr. Byrne published the passages, whether they are false and defamatory, and what he believed when the film was released, judged subjectively. Doc. 175 at 13; Doc. 213 at 6.

Each subject falls within the categories this Court reserves for rulings in limine: "'cat out of the bag' situations" and issues that would interrupt the trial for



**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

extended argument. *Crystal Lagoons U.S. Corp. v. Oasis Amenities, LLC*, No. 8:23-cv-519-TPB-AEP, Doc. 466 at 5 (M.D. Fla. Aug. 7, 2025). Each request may be granted, denied, or deferred on its own.

**<u>This Motion Does Not Exclude Any Part of the Film</u>**

The Plaintiff has advised through counsel that he plans to play the film in its entirety as the publication at issue. He lists it as Joint Exhibit 1 (EC 009135). This motion does not ask the Court to exclude the film or any part of it, and it does not limit admissible evidence on whether either passage is true. Nothing in this motion concedes any element, including publication, or that EC 009135 is the version first shown on June 26, 2021, and nothing in it waives a defense, including a limitations defense, or a request for a limiting instruction.

The film also presents subjects that are not part of any claim, among them television coverage of the Capitol on January 6, 2021. Joint Ex. 1 (EC 009135) at 6:50-7:06. The requests in this motion limit evidence offered in response to such subjects.

The Court must, to the extent practicable, keep inadmissible evidence from the jury, and on timely request must confine evidence to its proper purpose. F.R.E. 103(d), 105. Dr. Byrne contends that playing the whole film does not, by itself, put the truth of its other content in issue.

Dr. Byrne asks the Court to direct that a party who contends that a portion of the film warrants evidence on a subject addressed in this motion first identify



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

the portion by its time stamp and raise the matter outside the jury's presence, and to instruct the jury, when the film is played and again in the final charge, that the Plaintiff claims only the two passages are defamatory.

**<u>A 2024 Remark Has Nothing to Do With This Film</u>**

The Plaintiff's expert, Mike Rothschild, attributes to Dr. Byrne a July 2024 remark on X, three years after the film, about those prosecuting Tina Peters in Colorado. Rothschild Decl. ¶ 107 & n.85 (Apr. 14, 2025) (EC 008764) (Ex. A). Dr. Byrne does not repeat the words here. The Plaintiff also lists a 29-second video, EC 009148, among "Additional AV files of threats/comments re Eric Coomer, Ph.D." Pl.'s Fourth Am. Discl. at 16 (June 1, 2026) (Ex. B). It records a July 29, 2024 post on X: a headline about the remark and a news clip printing the words beside a still photograph. Neither the remark nor the text of the post mentions Dr. Coomer, Dominion, or the film.

The remark's only use is to cast Dr. Byrne as a man of bad character who must have published with a guilty mind. F.R.E. 404. Even on punitive damages, a defendant "should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003). The remark was not directed at the Plaintiff, so his allegation that conduct "during the pendency of this lawsuit" aggravated his damages does not reach it. Doc. 197 ¶ 153. The video adds two layers of hearsay, a headline and a news graphic, that an expert may not relay absent a Rule 703



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

showing. F.R.E. 703, 801(c), 805. Once jurors hear the words, no instruction will undo them. F.R.E. 403.

Dr. Byrne asks the Court to exclude the July 2024 remark, the video produced as EC 009148, and paragraphs 106 and 107 of Mr. Rothschild's declaration; to require that any other statement by Dr. Byrne about the prosecution of Ms. Peters or its officials be raised first outside the jury's presence, on a showing that it concerns Dr. Coomer or the film; and to exclude evidence of advocacy or spending for Ms. Peters by Dr. Byrne or The America Project. Doc. 333-1 ¶ 25.

**January 6, 2021, a Pardon, and Martial Law Are Not Part of Any Claim**

The Second Amended Complaint takes the jury to the Capitol on January 6, 2021. It places Dr. Byrne in Washington, repeats Mr. Oltmann's accusation that Dr. Byrne sought a pardon, describes a paper referring to martial law in another man's hands three days later, and attributes antidemocratic aims to Dr. Byrne. Doc. 197 ¶¶ 6, 51-52. Dr. Byrne denies those allegations. Doc. 253 at 1, 4. The Plaintiff's counsel examined Dr. Byrne about a pardon and drew answers unrelated to Dr. Coomer or the film. Byrne Dep. 210:15-216:17 (Dec. 15, 2025) (Doc. 351-15 at 56-57). The Plaintiff also contends that the two men first interacted that evening. Doc. 351 ¶ 68.

January 6 is not an element of any claim or defense, and the film came out almost six months later. Testimony about the Capitol, a pardon, or martial law invites a verdict on the jurors' views of that day and of Dr. Byrne's character. F.R.E.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

401-403, 404(b)(1). The pardon accusation, drawn from Mr. Oltmann's podcasts, is hearsay when offered for its truth. F.R.E. 802. Dr. Byrne does not ask to exclude what the film shows, including, as the Plaintiff describes it, Mr. Oltmann's trip to Washington that day. Doc. 197 ¶ 94.

Dr. Byrne asks the Court to exclude evidence and argument about the events at the Capitol on January 6, 2021, any party's presence at or conduct connected with them, any request for or discussion of a pardon, any document or discussion concerning martial law, and his testimony at Byrne Dep. 210:15-216:17, except (a) portions of the film received in evidence; (b) evidence of whether and where Dr. Byrne and Mr. Oltmann were together on the evening of January 6, 2021, and what passed between them about Dr. Coomer, the call, or Mr. Oltmann's reliability; and (c) evidence of what Dr. Byrne said or learned about Dr. Coomer or Dominion before the film's release. These exceptions control over the exclusions.

## <u>Officials' Statements May Bear on Notice, Not on What Happened</u>

To prove the election sound, the Second Amended Complaint quotes a joint statement issued through a federal security agency, its former director's column, fifty-nine computer scientists, a Michigan legislative committee, an Arizona audit, Dominion's website, and William Barr. Doc. 197 ¶¶ 19-22, 25-26, 100. It quotes Mr. Barr from a December 2020 interview and from a newspaper account of his 2022 testimony to the House January 6 committee. *Id.* ¶¶ 22 & n.10, 49 & nn.73-



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

75. The Plaintiff offers Mr. Barr's words only through press accounts, including an Associated Press article that his retained computer scientist repeats, and does not say when Dr. Byrne learned of the 2020 interview. Doc. 351 ¶ 71 & nn.68-69; Doc. 351-22; Halderman Decl. ¶ 21 (Doc. 351-6 at 12).

Offered for their truth, these statements and the press reports of them are hearsay, and an interview, a column, a private letter, and a website are not public records. F.R.E. 801(c), 803(8), 805. Mr. Barr's 2022 testimony also fails because former testimony requires an unavailable declarant and a party who had "an opportunity and similar motive to develop it," and the Plaintiff has shown neither. F.R.E. 804(a), (b)(1); *United States v. Salerno*, 505 U.S. 317, 321 (1992). Testimony from a year after the film also cannot show what Dr. Byrne believed at its release. *See Coomer v. Donald J. Trump for President, Inc.*, 2024 COA 35, ¶ 177 ("What Attorney General Barr said on December 1, 2020, could have no bearing on what defendants knew or believed before that date.").

The December 2020 statement stands differently. At the pleading stage, the Court listed reports of it among circumstances "widely reported and therefore likely known by Defendants," Doc. 175 at 15-16, and Dr. Byrne does not ask the Court to revisit that ruling. The statement shows at most what Dr. Byrne had reason to weigh, and only if he heard it. Without an instruction, jurors may treat the Attorney General's office as proof about Dr. Coomer. F.R.E. 105. An expert may disclose the article only after a Rule 703 proffer. *M.B. v. Wendy's Int'l, LLC*,

No. 8:24-cv-1116-TPB-TGW (M.D. Fla. Oct. 17, 2025).

Dr. Byrne asks the Court (a) to exclude for every purpose Mr. Barr's 2022 testimony, any report of it, and any statement attributed to him after June 26, 2021; (b) to exclude, when offered for their truth, the statements and reports described in paragraphs 19 through 22, 25, and 26 of the Second Amended Complaint, the legislative committee report described in paragraph 100, the article filed as Doc. 351-22, and the account of Mr. Barr's statement in paragraph 21 of the Halderman declaration, unless a Rule 803(8) foundation is first established outside the jury's presence; (c) whenever such a statement is received on Dr. Byrne's state of mind, to instruct the jury that it is not evidence of what happened in the 2020 election or on the call Mr. Oltmann described; (d) to bar argument that any official's statement or office establishes the truth or falsity of either passage; and (e) to require a Rule 703 determination before an expert discloses such a statement. None of these limits reaches any portion of the film received in evidence.

## Other Courts' Rulings and Settlements Do Not Prove Falsity or Liability

The Second Amended Complaint walks the jury through other courtrooms: more than sixty failed election lawsuits; one lawyer's suspension and another's sanctions; a Denver judge's order in the Plaintiff's case against Mr. Oltmann; sanctions and a contempt finding against Mr. Oltmann; and settlements by Newsmax and by an organization the Plaintiff alleges Dr. Byrne led. Doc. 197 ¶¶

23-24, 32 n.38, 35, 77, 102 n.111, 130. The Plaintiff opened his summary-judgment opposition with another judge's finding about Dr. Byrne's credibility and quotes decisions in other suits. Doc. 351 at 1 & n.1, 20 n.41; Doc. 351-1.

Another court's findings are hearsay when offered for their truth and are not public records. *United States v. Jones*, 29 F.3d 1549, 1553-54 (11th Cir. 1994). Jurors would likely give them "undue weight," "thus creating a serious danger of unfair prejudice." *United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1287 (11th Cir. 2001) (quoting *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993)). Settlements do not prove claims. F.R.E. 408(a). Read to a jury, even this Court's pleading-stage observation that the debunking of fraud claims was "widely reported and therefore likely known by Defendants," Doc. 175 at 16, would announce the finding the jury must make. These limits do not reach legal argument to the Court. This Court has limited such references to a suit's existence, its claims in general terms, and the defendants' awareness of it. *Crystal Lagoons*, Doc. 466 at 5.

Dr. Byrne asks the Court to direct (a) that no party or witness refer before the jury to the outcome of any other proceeding concerning the 2020 election, Dominion, Mr. Oltmann, Dr. Coomer, or Dr. Byrne, including any finding, ruling, judgment, verdict, sanction, disciplinary order, or settlement, or to this Court's rulings on motions in this case, except evidence, offered by Dr. Byrne, that the Plaintiff settled with or obtained a judgment against another publisher of statements about him in another action; (b) that any reference to another lawsuit



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

be limited to its fact and dates, the nature of its claims in general terms, and, where awareness matters, a party's awareness of it, and that either party may show the fact and dates of the Plaintiff's other suits where they bear on the cause of the harm he claims, Doc. 253 at 15, 17; (c) that a document offered to show what Dr. Byrne knew be received only on what he knew or believed, with a limiting instruction, after a showing outside the jury's presence sufficient to support a finding that it reached him before June 26, 2021; (d) that a party contending that the amount of any verdict or settlement is admissible for another purpose raise it first outside the jury's presence; (e) that these limits not prevent impeachment with prior sworn testimony identified only as given under oath on a stated date; and (f) that these limits not reach the Antrim County examination released to the public by order of a Michigan court on December 14, 2020, or that order, offered as the documents they are, or the fact and date of the decision in *Curling v. Raffensperger*, 493 F. Supp. 3d 1264 (N.D. Ga. 2020), and the film's report of it, offered as the subject of the report and not for the truth of its findings.

**The Plaintiff's Own Settlements and Judgments Bear on Causation and Compensation**

Dr. Coomer did not wait for the film to sue. On December 22, 2020, he sued Mr. Oltmann and numerous others in Denver for defamation, intentional infliction of emotional distress, civil conspiracy, and an injunction, the claims he brings here. Doc. 197 ¶ 35. Newsmax settled, retracted on April 30, 2021, eight weeks before the film, and was dismissed. *Id.* at 20 n.38. On June 24, 2025, he obtained a



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

judgment against Mike Lindell and FrankSpeech LLC. *Coomer v. Lindell*, No. 1:22-cv-01129-NYW-SBP, Doc. 381 (D. Colo. June 24, 2025).

The Plaintiff may recover only the damages that publication by Dr. Byrne caused. CJI-Civ. 22:25 (2026). His pleadings and sworn statements attributing his harm to others are his own statements. F.R.E. 801(d)(2)(A). A compromise may be received for a purpose other than proving or disproving the validity or amount of a disputed claim. F.R.E. 408. After verdict, the court reduces an award by the amount by which the plaintiff "has been or will be wholly or partially indemnified or compensated for his loss by any other person." C.R.S. § 13-21-111.6. If Florida law governs, the setoff is the Court's, and the jury is not told of a release. Fla. Stat. § 768.041(2)-(3).

Harm the Plaintiff suffered and sued over before June 26, 2021 is not harm the film caused, and harm he attributed under oath to other publishers is evidence of other causes. Dr. Byrne asks the Court to direct (a) that he may offer the Plaintiff's other actions over the account, the harm attributed in them to others, the Plaintiff's sworn statements in them, and the fact that he settled with or obtained a judgment against another publisher of statements about him in another action, on causation, on the timing and sources of the harm, and on damages, with an instruction that the evidence does not show whether any statement was true or false or whether any other person is liable; (b) that the Plaintiff not suggest that others have not compensated him unless the Court first permits it outside the jury's



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

presence; and (c) that after verdict the Court receive the settlements, judgments, and amounts the Plaintiff has received for the same injury, including from Mr. Lucescu, and reduce any award as the governing law allows, or, if the Court concludes that those amounts bear on the damages the jury awards, receive them with a limiting instruction. F.R.E. 105, 408(b).

**The Former Defendants' Knowledge and Conduct Are Not Dr. Byrne's**

The Plaintiff pleaded this case against Dr. Byrne, Steven Lucescu, and The America Project, Inc., a Florida nonprofit corporation, and charges them together as "Defendants" in every count. Doc. 197 ¶¶ 10-12, 133-156. It alleges, for example, that Mr. Oltmann texted Mr. Lucescu on May 10, 2021 that he had no recording of the call; that "Defendants" knew of sources refuting the account, citing articles Mr. Lucescu e-mailed to himself; that Mr. Lucescu promoted the film; and that The America Project owns the copyright, hosted the film online, and announced a 2022 showing in Naples. *Id.* ¶¶ 12, 60, 66, 71-73, 76, 79, 86 n.99, 87, 119. Mr. Lucescu and The America Project are no longer parties.

The Plaintiff must prove actual malice as to Dr. Byrne. "[T]he state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication of the advertisement." *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964). Ruling on the earlier pleading, the Court held that Dr. Coomer "may not pursue a defamation claim based on" Mr. Lucescu's promotional statements. Doc. 175 at 18.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

Offered against Dr. Byrne as his admission, another person's statement qualifies only if he adopted or authorized it, if his agent made it on a matter within the scope of the agency, or if his coconspirator made it during and in furtherance of the conspiracy, and the statement alone does not establish the authority, the agency, or the conspiracy. F.R.E. 801(d)(2).

The collective label invites the jury to charge Dr. Byrne with whatever any former defendant knew or did. The pleading does not allege that Dr. Byrne saw Mr. Oltmann's May 10, 2021 text or Mr. Lucescu's articles. Doc. 197 ¶¶ 60, 76. A juror told that a producer had both before the release is likely to assume that Dr. Byrne had them too, and an instruction given afterward is unlikely to separate the two. F.R.E. 403. The America Project is a separate corporation, and its copyright, revenue, audits, and later showings are its own acts. Doc. 197 ¶¶ 12, 111, 119. With Mr. Lucescu and The America Project gone from the case, the risk is that the jury holds the one remaining defendant to account for all three.

Dr. Byrne asks the Court to direct (a) that no party describe to the jury the allegations of any pleading, or the knowledge, statements, or acts of Mr. Lucescu or The America Project, as those of "the Defendants" or of Dr. Byrne; (b) that evidence of what Mr. Lucescu, The America Project, or a person acting for either, other than Dr. Byrne, knew or received, including the matters alleged in paragraphs 60, 75, and 76 of the Second Amended Complaint, not be offered to prove Dr. Byrne's knowledge or belief unless the Plaintiff first shows outside the



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

jury's presence evidence sufficient to support a finding that it reached Dr. Byrne before June 26, 2021; (c) that evidence of what any of them said or did, including the matters alleged in paragraphs 66, 71 through 73, 79, 87, 111, and 119, not be offered against Dr. Byrne unless the Plaintiff first shows outside the jury's presence evidence sufficient to support a finding that Dr. Byrne directed, authorized, or adopted it, or, for a statement offered as his admission, that the requirements of Rule 801(d)(2)(B), (C), (D), or (E) are met; and (d) that the Court instruct the jury, whenever it receives such evidence, that it may not hold Dr. Byrne responsible for what another person or entity knew unless the information reached him before June 26, 2021, or for what another said or did unless he directed, authorized, or adopted it or, on the civil conspiracy claim, it was done in furtherance of a conspiracy to which he was a party. F.R.E. 103(d), 104(a)-(b), 105, 801(d)(2). Requests (b) and (c) do not reach the film itself, Dr. Byrne's own statements, or evidence, offered by any party, of who produced, owned, financed, or distributed the film, although the instruction applies to that evidence.

**Mr. Lucescu's 2026 Letter Is Not Evidence Against Dr. Byrne**

On May 15, 2026, nearly five years after the film, Steven Lucescu signed an unsworn letter addressed to no one. Doc. 351-23 (EC 009506). It mentions Dr. Byrne, says that "neither I nor anyone to my knowledge vetted" the film's claims "for truth or accuracy," and expresses regret for "any harm the film may have caused." *Id.* The Plaintiff calls it a "letter of apology" and calls Mr. Lucescu a



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

"Settling Defendant." Pl.'s Fourth Am. Discl. at 16; Doc. 351 ¶ 77.

Offered against Dr. Byrne, the letter is hearsay. F.R.E. 801(c), 802. A party's statement is admissible against that party, not a co-defendant. F.R.E. 801(d)(2)(A). A 2026 letter from a co-defendant who, by the Plaintiff's account, had settled was not made in furtherance of any alleged conspiracy or within the scope of an existing agency or employment. F.R.E. 801(d)(2)(D), (E). Evidence of a compromise is not admissible "to prove or disprove the validity or amount of a disputed claim." F.R.E. 408(a). A jury told that Mr. Lucescu settled and apologized would take it as proof against Dr. Byrne. F.R.E. 403. Dr. Byrne does not ask to exclude Mr. Lucescu's live testimony from personal knowledge.

Dr. Byrne asks the Court to exclude the May 15, 2026 letter (EC 009506) and, before the jury, the fact and terms of any settlement between the Plaintiff and Mr. Lucescu and any description of Mr. Lucescu as a settling defendant; to require that any use of the letter or of that settlement, if Mr. Lucescu testifies, be raised first outside the jury's presence, F.R.E. 408(b), 613; and, because Mr. Lucescu is no longer a party, to tell the jury, if it learns that he was one, only that he is no longer a party and that it should not speculate why.

**Discovery Disputes in This Case Are Not Evidence About 2021**

On November 11, 2025, Dr. Byrne's counsel sent the Plaintiff's counsel an e-mail. Doc. 332 at 3. On January 27, 2026, the morning of Dr. Coomer's deposition, an altercation took place at the deposition site. *Id.* at 7-9. The Court addressed



**THE TICKTIN LAW GROUP**
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

both on the Plaintiff's motion, made findings, and imposed relief. Docs. 332, 346, 366.

None of this bears on whether the passages are false or on what Dr. Byrne believed in June 2021. F.R.E. 401, 402. The events occurred more than four years after the film. The Plaintiff may invoke his aggravation allegation, Doc. 197 ¶ 153, but the Court has already addressed these events. Presenting them again would require a trial within the trial, and any probative value on damages is substantially outweighed by the dangers of unfair prejudice, confusion, and delay. F.R.E. 403. Dr. Byrne does not ask the Court to revisit its orders. He asks only that the jury not be asked to retry them.

Dr. Byrne asks the Court to exclude evidence, testimony, and argument concerning the January 27, 2026 altercation, the November 11, 2025 e-mail, and the motions, orders, and sanctions concerning them (Docs. 281, 332, 344, 346, 357, 366), including any characterization of the altercation as an assault.

**<u>Later Events Matter Only if They Show What Dr. Byrne Knew in 2021</u>**

Much of the Second Amended Complaint describes later events: Dr. Byrne's posts and appearances from July 2021 to November 2024, including remarks on Arizona vote percentages and appeals for donations, and Mr. Oltmann's later statements, conduct, and sanctions in other cases. Doc. 197 ¶¶ 35-37, 112-123, 130. None of those statements is the claim. Doc. 175 at 17-18, 23; Doc. 351 ¶ 78.

A defendant's later statements show actual malice only if they speak to his



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

knowledge at the time of publication. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984); *Tobinick v. Novella*, 848 F.3d 935, 947 (11th Cir. 2017). In discovery, Magistrate Judge Flynn found "no bright line rule" against post-publication materials, citing *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979). Doc. 213 at 6. That ruling governed discovery. For admission, the test is whether a later statement speaks to what Dr. Byrne knew or believed on June 26, 2021.

Two uses are proper: a later statement that speaks to what Dr. Byrne knew or believed when the film was released, and conduct directed at the Plaintiff on which the Plaintiff claims aggravated damages, other than the events addressed in Docs. 332, 346, and 366. Doc. 197 ¶ 153. Nothing else qualifies, and Mr. Oltmann's later conduct is not Dr. Byrne's. F.R.E. 404(b)(1). Dr. Byrne reserves his objections to later conduct offered on the emotional-distress claim, which the pending summary-judgment motions address, and does not ask the Court to decide that claim here. Doc. 351 ¶ 86.

Dr. Byrne asks the Court to direct (a) that no statement by Dr. Byrne after June 26, 2021 be offered as a defamatory statement; (b) that such a statement concerning the Plaintiff, either passage, the call, or Mr. Oltmann's reliability be offered only after a showing outside the jury's presence that it speaks to Dr. Byrne's knowledge or belief on June 26, 2021, or is conduct directed at the Plaintiff on which he claims aggravated damages, other than the events addressed in Docs. 332, 346, and 366, and then with a limiting instruction; and (c) that Dr. Byrne's



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

later statements on other subjects, and the later statements and conduct of Mr. Oltmann described in Doc. 197 ¶¶ 35-37 and 130, be excluded, except evidence that a party shows outside the jury's presence bears on the cause of the harm the Plaintiff claims. Doc. 253 at 15, 17. This request does not reach evidence of the threats and other harm the Plaintiff claims.

**Wealth, Profits, and Unrelated Causes Are Not at Issue**

The Second Amended Complaint introduces Dr. Byrne as a former chief executive of Overstock.com, alleges that the film's profits were "funneled into TAP in order to finance bad faith and highly partisan 'audits,'" and quotes appeals for donations. Doc. 197 ¶¶ 10, 53, 111, 121. Mr. Rothschild adds donations and a salary. Rothschild Decl. ¶¶ 108, 133. The prayer still seeks "[d]isgorgement of profits derived from the Film," Doc. 197 at 85, although disgorgement went with the unjust-enrichment claim, which the Court dismissed and the Plaintiff did not replead, Doc. 175 at 21-23; Doc. 197 ¶¶ 133-156.

A motive to profit "cannot provide a sufficient basis for finding actual malice." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665, 668 (1989). Nothing ties Dr. Byrne's wealth or unrelated giving to the film. Dr. Byrne does not ask to exclude admissible evidence, if any, of who financed or distributed the film.

The Second Amended Complaint pleads punitive damages and invokes Colorado's exemplary-damages statute. Doc. 197 ¶¶ 148-156 & at 85; Doc. 351 ¶



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

87. Dr. Byrne contends that Colorado law governs. Without conceding that such damages may go to the jury, he notes that the Colorado statute bars consideration of "the income or net worth of a party" in deciding them. Colo. Rev. Stat. § 13-21-102(6). Under any State's law, wealth evidence before liability is decided invites a verdict on wealth. F.R.E. 403; F.R.Civ.P. 42(b).

Dr. Byrne asks the Court to exclude evidence and argument about disgorgement or the film's profits as a measure of recovery, and about the finances, donations, and spending of Dr. Byrne and The America Project on causes other than the film; to exclude evidence of Dr. Byrne's wealth, net worth, and income while liability is tried; and, if exemplary or punitive damages reach the jury, to exclude evidence of income or net worth under section 13-21-102(6) or, if the Court does not apply that statute, to receive it only after the jury finds the Plaintiff entitled to such damages.

**<u>Labels, Ridicule, and Opinions on the Law Should Stay Out</u>**

The Second Amended Complaint describes the film as built on "QAnon tropes," calls its participants an "alliance of grifters," and mocks the director for an earlier film about "secret Nazi bases on both the moon and Mars." Doc. 197 ¶¶ 2, 7, 46, 78, 84 & n.98. It also recounts other non-parties' unrelated conduct. *Id.* ¶¶ 36, 42 n.60, 43 n.63. Mr. Rothschild, designated to testify that the Defendants' conduct "is consistent with that of conspiracy theorists in general and QAnon believers in particular," Pl.'s First Am. Expert Discl. § B.2, at 3 (Oct. 30, 2025) (Ex.



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

C), adds a noose left for a contractor in another state, another man's call for martial law, a description of the premiere as marked by "calls for election-related violence" resting only on a podcast recorded three months earlier, charges against Dr. Byrne's former lawyer, a suggestion that Dr. Byrne testified falsely about a salary, and a later shared audit report. Rothschild Decl. ¶¶ 44, 82, 95 & n.64, 108-112, 133, 166.

A label proves nothing about two passages, and ridicule of non-parties proves less. F.R.E. 403, 404(a), 608(b), 703. A witness also "may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Intent and motive are "a classic jury question and not one for experts." *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1338 (S.D. Fla. 2010). Dr. Coomer nonetheless testified that calling him a traitor, "if you look up the statutes, is -- a defamation per se," Coomer Dep. 39:7-9 (Doc. 351-24 at 7), and Mr. Rothschild says that "Byrne and the others knew" who would be in the audience and "should have known" that some viewers would threaten Dr. Coomer, Rothschild Decl. ¶ 170. Dr. Byrne does not challenge Mr. Rothschild's qualifications or method in this motion and waives no objection to his testimony.

Dr. Byrne asks the Court to direct (a) that no counsel or lay witness characterize Dr. Byrne, the film, its participants, or its audience by reference to QAnon, or as grifters, except as the words appear in a portion of the film or another

exhibit received in evidence; (b) that evidence of the unrelated work, beliefs, and conduct of non-parties described in Doc. 197 ¶¶ 36 and 84 and footnotes 60, 63, and 98 be excluded; (c) that the last sentences of paragraphs 44 and 82, the description of the premiere in paragraph 95, paragraphs 108 through 112, the second sentence of paragraph 133, and paragraph 166 of Mr. Rothschild's declaration be excluded as substantive evidence and not disclosed unless the Plaintiff first makes a proffer outside the jury's presence and the Court determines under Rules 403, 608(b), and 703 that they may be disclosed; and (d) that no witness state whether a statement is defamatory or whether anyone acted with actual malice or reckless disregard or conspired, and that no expert state what Dr. Byrne knew, intended, or believed.

**<u>Each Witness Should Testify Only to What He Perceived</u>**

Asked how Dr. Byrne got any statement published, Dr. Coomer answered: "I think that's in our complaint, and it's mostly focused around the production of the Deep Rig movie." Coomer Dep. 47:3-8 (Jan. 27, 2026) (Ex. D). Asked what Dr. Byrne did to publish the film, he said Dr. Byrne "bankrolled it, from my understanding," and called responsibility "a question of law, which I'm not able to answer." *Id.* at 47:9-17. He attributes the threats he received to "false, defamatory statements spread by many individuals, including Dr. Byrne." Coomer Dep. 46:18-22 (Doc. 351-24 at 6).

A witness may testify only from personal knowledge, and lay opinion must



THE TICKTIN LAW GROUP
270 SW Natura Avenue, Deerfield Beach, Florida 33441
Telephone: (561) 232-2222

be "rationally based on the witness's perception." F.R.E. 602, 701(a). Dr. Coomer may describe what happened to him, what he received and heard, how it affected him, and what he heard Dr. Byrne say. F.R.E. 801(d)(2)(A). He may not narrate the case from his pleading or say why a stranger sent a message unless the message says so or he otherwise knows it. Any belief he holds about the cause, if offered as part of his distress, is not evidence of why a sender acted. F.R.E. 105.

Dr. Byrne asks the Court to direct that no lay witness testify to Dr. Byrne's knowledge, intent, or any role he had in financing, producing, editing, or distributing the film except from personal perception or from Dr. Byrne's own statements; that no witness present the allegations of a pleading, or information received from counsel, as the witness's own knowledge; that no witness attribute a threat or other communication to the film or to Dr. Byrne unless the communication refers to the film or to him, or the Plaintiff first establishes the witness's personal knowledge outside the jury's presence; and that, if Dr. Coomer describes his belief about the cause of a threat, the jury be instructed that the belief is not evidence of why any sender acted. These limits bind every party's witnesses.

## Conclusion

WHEREFORE, the Defendant, Patrick Byrne, respectfully requests that this Honorable Court enter an order granting the relief requested on each subject; direct that these rulings apply in voir dire, opening statement, examination, exhibits, and argument; direct counsel to inform their witnesses of the rulings

before they testify and any party contending that the door has been opened to an excluded subject to raise the matter first outside the presence of the jury; and grant such other and further relief as this Honorable Court may deem just and proper.

## Local Rule 3.01(g) Certificate

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that on October 20, 2026, counsel conferred with David Beller, counsel for the Plaintiff, by email regarding the relief requested in this motion, and Plaintiff opposes the relief sought in this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 23, 2026, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ David L. Perry II*
David L. Perry II, Esquire
Florida Bar No. 1045902
Serv512@LegalBrains.com
Serv600@LegalBrains.com
**THE TICKTIN LAW GROUP**
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Telephone: (561) 232-2222
*Counsel for Defendant Patrick Byrne*