**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ERIC COOMER,

Plaintiff,

v. Case No. 8:24-cv-8-TPB-SPF

PATRICK BYRNE,

Defendant.
______________________/

## ORDER ON PENDING MOTIONS

This matter is before the Court on cross-motions for summary judgment and related motions. Plaintiff Eric Coomer filed "Plaintiff's Motion for Partial Summary Judgment" on July 1, 2026. (Doc. 333). On the same day, Defendant Patrick Byrne filed his motion for summary judgment. (Doc. 334). The parties filed responses in opposition and replies. (Docs. 349; 351; 354; 355; 356). On October 19, 2026, Byrne filed a supplemental summary judgment motion seeking a ruling that certain facts be deemed established based on the collateral estoppel effect of a ruling in a Colorado state court case in which Coomer is a party. (Doc. 371). Coomer has moved to strike Byrne's supplemental motion as untimely and meritless. (Doc. 372). Coomer has filed a motion seeking a determination that Florida law governs his defamation claim and his claim for punitive damages for purposes of trial. (Doc. 373). Based on the motions, responses, replies, the court file, and the record, the Court finds as follows:

## Background

This highly contentious defamation action arises from *The Deep Rig*, a documentary film concerning alleged fraud in the 2020 presidential election.[1] Plaintiffs filed a link to the film (Doc. 370) and the Court has reviewed the film in its entirety. Plaintiff Eric Coomer formerly served as director of product strategy and security for Dominion Voting Systems, a supplier of election hardware and software with its United States headquarters in Colorado. Among other things, the film included statements by non-party Joseph Oltmann claiming that he infiltrated a conference call involving members of Antifa[2] and heard comments from a speaker identified by another anonymous participant on the call as "Eric" and "the Dominion guy."

According to Oltmann, the speaker stated on the call in substance that President Donald J. Trump would not win the election because he had "made sure of it." Oltmann clams he later determined through research and by recognizing Coomer's voice that the speaker had been Coomer. Oltmann further stated that he concluded there was a "high probability" Coomer affected the election. Coomer denies participating in any such call or manipulating the results of the 2020 Presidential election and alleges that Oltmann's story presented in the film was false and defamatory.

---

[1] This matter has included numerous discovery disputes, motions for sanctions, opposition to counsel's request to appear *pro hac vice*, and a physical altercation between counsel at a deposition resulting in a grievance committee referral by the Magistrate Judge and purportedly a police report made by counsel.

[2] "Antifa," shorthand for "anti-fascist," refers to a decentralized left-wing political movement ostensibly associated with opposition to fascism and far-right extremism, which has at times itself employed extreme tactics in support of its agenda. *See, e.g., Puente v. City of Phoenix*, 123 F.4th 1035, 1044 (9th Cir. 2024) (noting Phoenix Police Department concerns about "the decentralized movement known as "Antifa," whose members the PPD believed might attend the event" and that the "PPD was aware that Antifa members had engaged in violence or vandalism at previous public political events.").

The parties dispute the extent of Byrne's role in the production and editing of the film. Byrne maintains that he merely financed the film, and that non-party director Roger Richards determined what material appeared in it, including Oltmann's comments. Coomer counters with evidence that Byrne was identified as a producer, possessed contractual rights to provide input concerning the film, gave numerous editing instructions, and participated in the film's distribution and promotion. Byrne also appeared in the film himself and endorsed the film as presenting the truth.[3]

Coomer filed this defamation action on June 24, 2022, in the United States District Court for the District of Colorado. The case was transferred to this Court in January 2024 pursuant to 28 U.S.C. § 1404(a). Coomer's operative second amended complaint asserts claims against Byrne for defamation, intentional infliction of emotional distress, and civil conspiracy, seeking compensatory damages, exemplary damages, and injunctive relief.[4]

The Court ruled at the motion to dismiss stage that Coomer had alleged sufficient facts to avoid dismissal and to proceed on these claims.[5] Byrne now seeks summary judgment on Coomer's claims, arguing that he did not "publish" Oltmann's allegedly

[3] Coomer refers to additional statements by Byrne in other venues more vaguely alluding to Coomer's alleged or potential involvement with the vote counting on the night of the election, but these comments, to the extent they refer to Coomer, appear to derive from Oltmann's story as recounted in the film, which is the focus of Coomer's allegations.

[4] Coomer's second amended complaint also asserted claims against Steve Lucescu and The America Project, Inc., arising from the publication and distribution of *The Deep Rig*. Coomer has voluntarily dismissed his claims as to Lucescu and The America Project, leaving Byrne as the sole Defendant.

[5] Coomer's initial complaint included a claim for unjust enrichment, which the Court dismissed with leave to amend. (Docs. 1; 175). Coomer filed an amended complaint (Doc. 185) that omitted the unjust enrichment claim. At the Court's direction, Coomer filed a second amended complaint, with amendments limited to correcting defective allegations regarding diversity of citizenship. (Docs. 194; 197).

defamatory statements, that any statements he personally made were not "of and concerning" Coomer, and that Coomer cannot establish falsity, actual malice, causation, or damages. As set forth below, the Court determines that the issue of actual malice is dispositive and declines to address the other issues Byrne raises.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

In deciding whether a genuine issue of material fact exists at the summary judgment stage, the district court must be guided by the substantive standard that will apply at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). Accordingly, where a plaintiff will be required at trial to prove an issue by "clear and

convincing" evidence, the "appropriate summary judgment question" is whether the record evidence could support a reasonable jury in finding that the plaintiff has proven the issue by clear and convincing evidence. *Id.* at 255-56.

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

Byrne and Coomer have each filed motions for summary judgment, and their papers cite both Colorado and Florida law. As it relates to Court's determination of the cross-motions for summary judgment, the only relevant difference between the law of the two states is that under Colorado law, where the alleged defamatory statement relates to a matter of public concern, a defamation plaintiff must prove actual malice on the part of the defendant, and must do so by clear and convincing evidence, even if the plaintiff is not a public figure. *See* (Doc. 175 at 8-10). Coomer has expressly conceded that the statements at issue concern matters of public concern, that Colorado's actual malice

standard applies, and that there is therefore no conflict of law issue for purposes of summary judgment. *See* (Docs. 175 at 8-10; 351 at 2, 11, 14-15; 373 at 5).[6]

***Byrne's Motion for Summary Judgment***

<u>Elements of Defamation</u>

To prevail on a defamation claim, a plaintiff must establish: (1) a defamatory statement concerning the plaintiff; (2) publication to a third party; (3) fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special damages or the existence of special damages. *Williams v. Dist. Ct.*, 866 P.2d 908, 911 n.4 (Colo. 1993) (citing *Stump v. Gates*, 777 F. Supp. 808, 825 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993)). As noted above, where the challenged speech involves a matter of public concern, as it undeniably does here, the plaintiff also bears the burden of proving, by clear and convincing evidence, that the challenged statement is materially false and was made with actual malice. *See Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 581 (Colo. App. 2024).

<u>Actual Malice</u>

Actual malice requires proof that the defendant published the challenged statement with knowledge of its falsity or with reckless disregard for whether it was false. *See id.*; *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The test for actual malice is a subjective one.

---

[6] Coomer has separately moved for a determination that, for purposes of trial, Florida, rather than Colorado law applies to whether Coomer must prove actual damages and to issues relating to punitive damages. *See* (Doc. 373). Coomer's motion, however, expressly agrees that the requirement that he prove actual malice by clear and convincing evidence remains applicable. (*Id.* at 5). In light of the Court's grant of summary judgment for Byrne based on the lack of evidence of actual malice, Coomer's motion regarding the application of Florida law is denied as moot.

Thus, the issue is not whether "a reasonably prudent [person] would have published, or would have investigated before publishing," but rather whether the defendant "in fact entertained serious doubts as to the truth of [the] publication, or was highly aware of its probable falsity[.]" *Coomer*, 552 P.3d at 591; *Diversified Mgmt., Inc. v. The Denver Post, Inc.*, 653 P.2d 1103. 1105-10 (Colo. 1982) (en banc); *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 703 (11th Cir. 2016) ("[W]e ask whether the defendant, instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false."); *Dershowitz v. Cable News Network, Inc.,* 153 F.4th 1189, 1193 (11th Cir. 2025) ("[A]ll that matters are the speakers' subjective beliefs about the truth of their own statements."). A failure to investigate, standing alone, does not establish actual malice, but purposeful avoidance of the truth and other circumstantial evidence may support such a finding. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688, 692 (1989); *Lockett v. Garrett*, 1 P.3d 206, 211 (Colo. App. 1999) (holding that "a negligent failure to investigate cannot constitute actual malice").

Clear and Convincing Evidence

Coomer must not only prove the existence of actual malice but must do so by clear and convincing evidence. While not impossible to satisfy, the clear and convincing standard has been described as "heavy," as "daunting," as involving a "high standard of proof," and as "significantly more onerous" than the preponderance of the evidence standard. *See, e.g.*, *Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1283 (11th Cir. 2024); *Block v. Matesic*, 789 F. Supp. 3d 1131, 1170 (S.D. Fla. 2025) (appeal pending). The standard requires that the plaintiff's evidence render the existence of actual malice

not only possible, or even probable, but *highly* probable. *See Moore v. Cecil*, 174 F.4th 862, 879 (11th Cir. 2026); *Destination Maternity v. Burren*, 463 P.3d 266, 271 (Colo. App. 2020) (clear and convincing evidence must be highly probable and free from substantial or serious doubt). Clear and convincing evidence is evidence "of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." *Friedman v. Schiano*, 777 F. App'x 324, 331 (11th Cir. 2019) (quoting *Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4th DCA 1983)); *Block*, 789 F. Supp. 3d at 1170. It must be sufficient to "instantly [tilt] the evidentiary scales in the affirmative when weighed against" the opposing evidence. *Colorado v. New Mexico*, 467 U.S. 310, 315-16 (1984).

Where actual malice must be established by clear and convincing evidence, the Court must determine at summary judgment whether the evidence is such that a reasonable jury could find actual malice under that heightened standard. Whether the evidence is sufficient evidence to support a finding of actual malice presents a question of law for the court. *Lockett,* 1 P.3d at 210; *Moore*, 174 F.4th at 879.

<u>The evidence in this case</u>

Coomer himself asserts that Byrne believed the 2020 election was rigged immediately after the election. Byrne testified that he believed Oltmann's story and remains highly confident that the gist of Oltmann's story was true. Although the actual malice standard focuses on Byrne's subjective state of mind and beliefs, Byrne's statements as to those beliefs are not necessarily dispositive and Coomer may seek to establish Byrne's subjective lack of belief in the story through circumstantial evidence. *See L.S.S. v. S.A.P.*, 523 P.3d 1280, 1288 (Colo. App. 2022) (explaining that plaintiff may

present circumstantial evidence of actual malice "to the extent it reflects on the subjective attitude of the publisher"). The relevant question, then, is whether the evidence Coomer points to is sufficient to support a jury finding, under the clear and convincing evidence standard, that Byrne in fact *subjectively* disbelieved or had serious doubts about Oltmann's story.

Coomer points to circumstantial evidence that includes the improbable nature of Oltmann's allegations, the lack of independent investigation by Bryne and the lack of corroboration for Oltmann's story, published reports and opinions rebutting claims of election fraud, and Coomer's denials and other suits for defamation filed prior to the publication of the film. It would be reasonable to conclude from a totality of the evidence that, had Byrne acted *reasonably*, he would have concluded that Oltmann's story was probably false and that Coomer probably did not attempt to tamper with or "rig" the 2020 Presidential election. However, the question for the jury at trial would not be whether Byrne reasonably *should have* reached that conclusion. It would be whether he *did in fact* reach that conclusion or at least harbored serious doubts about Oltmann's story or was highly aware it was probably false.

On this record, a jury could certainly draw an inference that Byrne acted with actual malice if the standard were a preponderance of the evidence, because that standard merely requires a finding that a given fact or conclusion is more likely true than not true. *See, e.g., Davis v. City of Apopka*, 78 F.4th 1326, 1334 (11th Cir. 2023). The Court views Coomer's evidence as equally consistent with negligence, unreasonable behavior, and gullibility on the part of Byrne. As such, it is difficult to see how a jury would have a sound basis for concluding that Byrne *subjectively* doubted the story, as

opposed to concluding that he should have doubted the story but did not. Still, such inferences are typically for the jury to consider. *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1325-26 (11th Cir. 1982) (holding that a jury may draw an inference from the evidence even if contrary inferences might also reasonably be drawn, as long as the inference amounts to more than a guess or mere possibility).[7]

However, regardless of whether a finding of actual malice might be supportable under the preponderance standard, the evidence is insufficient to support the same conclusion under the much higher clear and convincing standard. Byrne's lack of skepticism, failure to investigate, and disregard for government reports and conclusions by others debunking claims of fraud the 2020 election are equally consistent with negligence and a belief that there was essentially a coverup going on, in line with the grand conspiracy theory portrayed in the film. Coomer points out that Byrne did not include Oltmann's story in his own book of the same title, but Byrne explained that he wanted to present an argument based on publicly available information, which, unlike a single witness's account of an unrecorded phone call, would be taken seriously as supporting a nationwide investigation. Any inference from the totality of this evidence to a conclusion that Byrne actually disbelieved or seriously doubted Oltmann's story would be weak at best and insufficient to support a finding of actual malice by clear and

[7] At the motion to dismiss stage, the Court ruled that allegations as to such facts would support an inference of actual malice under the plausibility standard of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At the summary judgment stage, in contrast, the inquiry focuses not on allegations but on record evidence and, importantly, applies the clear and convincing evidence standard rather than requiring mere plausibility. While courts have held similar defamation claims sufficient to avoid dismissal under Colorado's anti-SLAPP statute, the Court finds these decisions unpersuasive. *See, e.g., Coomer v. Donald J. Trump for President, Inc.,* 552 P.3d 562, 591-97 (Colo. App. 2024). They arose in a different procedural posture and, in the Court's view, insufficiently account for the impact of the clear and convincing evidence requirement.

convincing evidence. Accordingly, the Court grants summary judgment for Byrne on Coomer's defamation claim.[8]

Civil Conspiracy and Intentional Infliction of Emotional Distress

Coomer's conspiracy and intention infliction of emotional distress claims are derivative of or ancillary to his claim for defamation and therefore are also subject to the actual malice standard. Because Coomer has failed to present evidence to satisfy that standard, Byrne is entitled to summary judgment on these claims as well. *See Miles v. Nat'l Enquirer, Inc.,* 38 F. Supp. 2d 1226, 1232 (D. Colo. 1999) ("The actual malice standard applies equally to ancillary tort claims that arise from libel and slander statements.") (citing *Lewis v. McGraw-Hill Broadcasting Co.*, 832 P.2d 1118, 1124-25 (Colo. App. 1992)); *see also Modern Gaming, Inc. v. Sockeye Software, LLC*, No. 23-CV-01583-PAB-STV, 2026 WL 91820, at *7 (D. Colo. Jan. 13, 2026) (holding that a civil conspiracy claim is derivative in nature and fails in the absence of an underlying independent tort); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1120 & n.6 (S.D. Fla. 2021) ("Lastly, even if Corsi had properly pleaded the alleged conspiracy, a conspiracy to defame claim cannot stand where, as here, the defamation action fails. There being no defamation – the gist of the defamation conspiracy – there can be no conspiracy claim.").

[8] Because the Court grants Byrne's motion for summary judgment based on Coomer's failure to present sufficient evidence of actual malice, the Court need not address Byrne's other contentions, including, among other things, the asserted lack of any "publication" by Byrne of defamatory statements and the absence of any discrete injury resulting from statements for which Byrne is responsible.

***Other Pending Motions***

Coomer's motion for partial summary judgment requests a determination that the statements concerning him in *The Deep Rig* constitute defamation *per se* as a matter of law. Coomer also requests summary judgment on Byrne's substantial truth defense. In light of the Court's disposition of Byrne's motion for summary judgment, the Court denies Coomer's motion for summary judgment as moot. The same is true for Byrne's supplemental motion for summary judgment, Coomer's motion to strike Byrne's supplemental motion, and Coomer's motion for a ruling on the application of Florida law at trial.

## **Conclusion**

As the Court noted in a recent order granting summary judgment for The Washington Post in a defamation case brought by the Trump Media and Technology Group, a defamation plaintiff faces at least two significant hurdles. First, a defamation plaintiff must prove actual malice, and second, the plaintiff must do so by clear and convincing evidence. *See Trump Media & Tech. Group Corp. v. WP Co. LLC*, 838 F. Supp. 3d 1213, 1220, 1224 (M.D. Fla. 2026) (Barber, J.). The actual malice and clear and convincing evidence standards are extremely difficult to meet. That is particularly the case because actual malice includes a conceptual hurdle that bears emphasizing – a defamation plaintiff must prove, by clear and convincing evidence, that the defendant *actually knew* his or her statements were false or seriously doubted their truth.[9]

[9] These standards ultimately derive from the holdings of the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and succeeding cases involving suits by public officials and public figures. It should be noted that the United States Supreme Court has not extended the *Sullivan* actual malice requirement to defamation suits brought by private plaintiffs where the alleged defamatory statements relate to matters of public concern. *See Gertz*

Requiring proof by clear and convincing evidence that a defamation defendant *actually knew* his or her statements were false, or seriously doubted their truth, is very different from the familiar "reasonable person" standard, which asks what an objective reasonable person knew or should have known. As discussed above, the evidence in this case could lead reasonable people to believe that Byrne's acceptance of Oltmann's account of Coomer's alleged statements and conduct without much investigation was unreasonable, and that Byrne should have doubted Oltmann's story. But under the applicable law, Coomer faces the burden of providing evidence (1) that would allow a reasonable jury to conclude that Byrne not only should not have believed the story, but *actually*, subjectively did not believe it or at least seriously doubted it was true, and (2) that would allow the jury to find that conclusion about Byrne's subjective belief was not merely probable (more likely than not), but *highly probable* and free from serious doubt.

Under these standards, and on the record in this case, Coomer has not met that burden. Allowing a jury to infer from evidence that *a reasonable person* would have doubted Oltmann's story to a conclusion that it is not only possible, but highly probable and free from serious or substantial doubt that Byrne, did, in fact, have serious doubts about it would require the Court to ignore not only the standards just discussed but human nature as well. The world has always had people with zealously held beliefs who

---

*v. Robert Welch, Inc.*, 418 U.S. 323, 345-47 (1974). The Supreme Court of Colorado, however, did so in *Walker v. Colo. Springs Sun, Inc.*, 538 P.2d 450, 456-57 (Colo. 1975), based on the reasoning of the plurality opinion in *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29 (1971). In 1982, the Colorado high court, *en banc*, overruled *Walker* to the extent *Walker* had declined to adopt the "serious doubt" gloss on "reckless disregard" in cases involving matters of public concern. *See Diversified Mgmt., Inc. v. The Denver Post, Inc.*, 653 P.2d 1103, 1106 (Colo. 1982). Thus, under Colorado law, the actual malice standards applied in cases involving public figures and cases involving matters of public concern are the same.

are quite vocal and eager to share their views with anyone who will listen. These people are frequently labeled, pejoratively, as extremists, fanatics, "kooks," "crazies," conspiracy theorists, and the like. They typically have a lot to say on their subjects of interest, and modern technology has given them a powerful microphone to convey their thoughts well beyond the limits of their own communities or personal echo-chambers. They may make statements that reasonable people consider to be wrong, and sometimes their statements are, in fact, objectively and demonstrably wrong. But those with zealously held beliefs hold firm even when overwhelming objective evidence may be to the contrary. This is because they genuinely and sincerely believe what they say with every fiber of their being, even when objective evidence may suggest otherwise. Many are highly intelligent and sophisticated people, but they never seriously doubt the truth of their statements and remain steadfast in their beliefs no matter what. While these speakers sometimes espouse beliefs and make statements many might consider to be extreme, offensive, irresponsible, and factually wrong, their beliefs are, nonetheless, sincerely held and those speakers believe everything they say is completely true.

Even aside from extreme examples, people in general are hardly paragons of reason and often do not reach or maintain their beliefs by dispassionate assessments of the evidence. They believe what they do, especially on important political, moral and religious issues, as a result of unconscious biases, predispositions, prior emotional, philosophical, and political commitments and intuitions, as well as a disinclination to exert the effort or risk the emotional discomfort involved in exposing themselves to contrary evidence and viewpoints. As John Kenneth Galbraith observed, "[f]aced with the choice between changing one's mind and proving that there is no need to do so,

almost everyone gets busy on the proof." Operating within an echo chamber while believing oneself to be well-informed and reasonable has become increasingly easy to do in the age of slanted news sources and targeted media constantly telling their constituencies what they want to hear.

Of course, people with sincerely or even zealously held beliefs may make statements that are both untrue and inflict serious harm on others. Under the actual malice standard, unless it can be proven that the speaker *subjectively* believed his or her statements to be untrue, the law imposes no liability. That is a policy choice that might deserve reexamination by the appropriate decision makers – the United States Supreme Court and the Colorado courts. As the Court noted in the *Trump Media* case, the actual malice standard has been criticized by courts and commentators on a number of grounds, with which the Court largely agrees. *See Trump Media*, 838 F. Supp. 3d at 1224-25.

In short, if the law did not require "*clear and convincing evidence*" that the defendant subjectively doubted or disbelieved the published statements, it is likely that Byrne's motion for summary judgment would have been denied, and a jury would have had the opportunity to weigh in on this matter. However, under the law as it currently stands, Coomer's evidence is insufficient to meet these standards and summary judgment for Byrne is therefore required.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Patrick Byrne's Motion for Summary Judgment" (Doc. 334) is **GRANTED**.
2. "Plaintiff's Motion for Partial Summary Judgment" (Doc. 333) is **DENIED AS MOOT**.

3. "Patrick Byrne's Supplemental Motion for Summary Judgment" (Doc. 371) is **DENIED AS MOOT.**
4. "Plaintiff's Motion to Strike, and, in the Alternative, Response in Opposition to Defendant Patrick Byrne's Supplemental Motion for Summary Judgment (Doc. 371)" (Doc. 372) is **DENIED AS MOOT**.
5. "Plaintiff's Motion for Determination that Florida Law Governs Defamation Claim and Punitive Damages" (Doc. 373) is **DENIED AS MOOT**.
6. The Clerk is **DIRECTED** to enter final judgment in favor of Defendant Patrick Byrne and against Plaintiff Eric Coomer.
7. Following entry of judgment, the Clerk is **DIRECTED** to terminate any pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 27th day of October, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE