UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re: Peter Ticktin, Esq. Case No. 8:24-cv-8-TPB-SPF

Respondent.

_____________________________/

**REPORT AND RECOMMENDATION OF THE GRIEVANCE COMMITTEE**

Pursuant to U.S. Magistrate Judge Sean P. Flynn's Order dated June 29, 2026 (Doc. 332) (the "Referral Order") referring Peter Ticktin ("Respondent") to the Grievance Committee for the Middle District of Florida, Tampa Division (the "Committee"), the Committee[1] provides the following report and recommendation:

**REFERRAL**

The Referral Order (Doc. 332) sets forth a comprehensive overview of the conduct giving rise to this referral pursuant to Respondent's representation of Defendant Patrick Byrne during the pendency of the case, *Eric Coomer v. Mark Patrick Byrne, et al.*, Case No. 8:24-cv-8-TPB-SPF (M.D. Fla.). Accordingly, the

[1] Because Committee Chair Jon Philipson served as the mediator in this case (*see* Doc. 226), he presided over the Committee's discussions in his administrative capacity as Chair but recused himself from the substantive deliberations, analysis, and determinations and did not participate in the Committee's ultimate findings or recommendation.

summary below is limited to the facts from the Referral Order most relevant to the Committee's investigation and recommendation.

This lawsuit involves claims of defamation, intentional infliction of emotional distress, and civil conspiracy arising from allegations regarding voting services provided by Dominion Voting Systems during the 2020 presidential election. (Doc. 332, at 1; Doc. 197). Plaintiff Eric Coomer ("Plaintiff") has been represented for the duration of the action by attorneys Charlie Cain and Brad Kloewer. (Docs. 1, 3).

Respondent appeared as lead counsel for Patrick Byrne ("Defendant")[2] on or about July 7, 2025, after the Court denied attorney Stefanie Lambert Juntitila's request for special admission. (*See* Docs. 214, 218; *see also* Docs. 219, 220, 221).

On November 11, 2025, Respondent emailed Plaintiff's Counsel, Brad Kloewer, offering to "help" Plaintiff by proposing that Plaintiff "waive any conflict of interest" and allow Ms. Lambert and Respondent to join Plaintiff's legal team and arrange for full immunity by the DOJ in exchange for "truthful testimony." (Doc. 281-3).

Mr. Kloewer subsequently deposed Defendant on December 15, 2025. (Doc. 281-2). During the deposition, Mr. Kloewer asked Defendant whether the

---

[2] There are other named Defendants in the underlying action, but the Referral Order was only directed at Defendant Patrick Byrne and Respondent.

November 11 email was an offer to settle the case. (*Id.* at 282:1-282:3). In response, Respondent did not allow Defendant to respond, accused Mr. Kloewer of "trying to use this thing against" him, and called Plaintiff a "traitor", amongst other accusations. (*See id.* at 282:16-283:25).[3]

Plaintiff's deposition was subsequently set for January 27, 2026, at a conference room located in downtown Tampa (Doc. 281-1). Individuals attending in-person on Defendant's behalf included Respondent, Ms. Lambert as "co-counsel," and Joseph Oltmann.

Mr. Oltmann is a defendant in another defamation case brought by Plaintiff in Colorado[4] and a podcast host that has publicly called for violence against Plaintiff and his attorneys. (*See* Doc. 281-13).

Prior to the start of Plaintiff's deposition, Plaintiff objected to Mr. Oltmann's presence.[5] The parties were unable to reach an agreement, and Mr. Cain contacted chambers to resolve the dispute. Respondent became upset with Plaintiff and Mr. Cain upon learning that they had already contacted chambers to request a hearing.

[3] The Referral Order also elaborates further on Respondent's accusations as transcribed during the December 15 deposition. (*See* Doc. 332 at 4-5).

[4] *See* Doc. 332 at note 2

[5] The Court has expressly found that Mr. Oltmann's prior statements regarding Plaintiff and his attorneys (the specifics of which are quoted and cited in the Referral Order) "are a substantial basis for Plaintiff's objection to Mr. Oltmann's presence at the deposition." (Doc. 332 at 7).

Respondent claimed that the call to chambers constituted an inappropriate *ex parte* communication with the Court.

Even though a hearing was imminent, both Mr. Cain and Respondent felt it necessary to argue about this issue in the hotel lobby. Over the course of their back and forth, Respondent shoved Mr. Cain twice. The altercation was captured by security footage and witnessed by several onlookers.[6]

Respondent then headed to the deposition room and Mr. Cain followed. (*See* Doc. 281-17).[7] Once in the room, Defendant placed himself between Respondent and Mr. Cain and proceeded to shove Mr. Cain at least once and slap Mr. Cain on the neck. (*See id.*).

The hearing started at approximately 9:55 a.m. (*See* Doc. 332 at 10). During the hearing, Mr. Cain moved to exclude Mr. Oltmann and advised the Court of the altercation between him, Respondent, and Defendant. (*See* Doc. 281-14 at 6:06-8:19). Respondent also had the opportunity to defend Mr. Oltmann's presence at

---

[6] Pursuant to its investigation, the Committee reviewed the security footage, which the Committee accessed through the links included by Respondent and Defendant in their Objection to the Magistrate Judge's June 29, 2026, Order, which showed the events in slow motion. (*See* Doc. 344).

[7] Though evidence of the subsequent events is "incomplete" with respect to exactly what took place thereafter, an affidavit signed by Court Reporter Michelle Lagoa confirmed conduct that she personally heard and witnessed, which included Defendant shoving Mr. Cain and slapping his neck. (*See* Doc. 281-17).

the deposition in addition to explaining his version of events as it related to the altercation between him and Mr. Cain. (*See id.* at 10:22-15:15).

The Court ultimately barred Mr. Oltmann from physically being present at the deposition but permitted Mr. Oltmann to listen in remotely. (*See* Doc. 281-14 at 15:16-15:23). As to the altercation, the Court concluded the hearing by characterizing what occurred as "highly inappropriate" and stating that there would be consequences for what happened. (*Id.* at 16:08-16:16). The deposition moved forward that day without further issues. (*See* Doc. 332 at 11).

The following day, Defendant apparently stated during an interview that several individuals, at least one of which was armed, were waiting outside of the deposition room, seemingly in anticipation of a conflict. (*See* Doc. 332 at 12).

On February 6, 2026, Plaintiff moved for sanctions relating to Mr. Oltmann's unannounced appearance, Respondent's conduct, and the "assaults" by Respondent and Defendant on January 27, seeking fees and costs, Respondent's removal as counsel, disciplinary sanctions under Local Rule 2.04, and referral to the Florida Bar. (Doc. 281).

On February 20, 2026, Defendant opposed the Motion, disputing Plaintiff's version of events including Plaintiff's characterization of the January 27 altercation. (Doc. 284). Rather, according to Defendant, Mr. Cain assaulted Respondent on three separate occasions on January 27, Respondent is "completely

innocent of any assault", Respondent was "totally within his rights to push Cain away," and that "it is amazing that [Defendant] did not harm Cain physically" as Defendant could have "easily taken more severe action against Cain". (*See id.*).

On June 29, 2026, U.S. Magistrate Judge Sean P. Flynn granted Plaintiff's Motion for Sanctions in part. (Doc. 332 at 22). The relief granted included an award of attorneys' fees and costs, a mandate that all future mediations and depositions occur in the Tampa Courthouse, and referral of this matter to the Tampa Division's Grievance Committee to investigate alleged lawyer misconduct and report to the Chief Judge a recommended resolution of the allegations. (Doc. 332 at 22). The Motion was denied in all other respects. (*Id.*).

On July 13, 2026, Defendant and Respondent objected to the June 29 Order. (Doc. 344). On July 15, 2026, U.S. District Court Judge Thomas Barber overruled the objection, upholding the Referral Order. (Doc. 346).

Upon receiving the referral, the Committee commenced its duties under Rule 2.04 of the Local Rules of this Court.

## STANDARDS

Rule 4-3.3(a) of the Florida Rules of Professional Conduct states that a lawyer shall not make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. Florida Rules of Professional Conduct 4-3.3(a).

Rule 4-3.4(g) states that a lawyer must not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter. Florida Rules of Professional Conduct 4-3.4(g).

Rule 4-8.4 of the Florida Rules of Professional Conduct states in pertinent part that a lawyer shall not:

> (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>
> (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
>
> (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, except that it shall not be professional misconduct for a lawyer for a criminal law enforcement agency or regulatory agency to advise others about or to supervisor another in an undercover investigation, unless prohibited by law or rule, and it shall not be professional misconduct for a lawyer employed in a capacity other than as a lawyer by a criminal law enforcement agency or regulatory agency to participate in an undercover investigation, unless prohibited by law or rule;
>
> (d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, an account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment or physical characteristic;
>
> (e) state or imply an ability to influence improperly a government agency or official to achieve results by means that violate the Rules of Professional conduct or other law[.]

Florida Rules of Professional Conduct 4-8.4(a)-(e)

Rule 4-1.7(a) provides that a lawyer must not represent a client if:

(1) the representation of 1 client will be directly adverse to another client; or

(2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Florida Rules of Professional Conduct 4-1.7(a).

**COMMITTEE INVESTIGATION**

Pursuant to the June 29, 2026, Order and Rule 2.04 of the Local Rules of this Court, the Committee conducted a preliminary investigation into Respondent's alleged misconduct. After considering the arguments and evidence presented by the Parties, the Committee concluded that investigation was appropriate. The Committee's investigation considered the arguments and evidence raised in the pertinent filings, the videos embedded therein, and the enclosed exhibits. (Docs. 332, 346, 344).

On October 9, 2026, the Committee invited Respondent to submit any additional written information for the Committee to consider beyond the briefing previously submitted to the Court. Respondent provided a statement in response to this request on October 11 and October 13, 2026.

Based on its investigation and review of the above-mentioned documents and evidence, the Committee found that probable cause exists to believe that

Respondent is guilty of unprofessional or unethical conduct justifying disciplinary action.

## RECOMMENDATIONS

As noted by the Court in its Order dated July 15, 2026, "[t]he video evidence speaks for itself[.]" (Doc. 346 at 2). The speed at which one watches the hotel security footage does not alter the ultimate facts: Respondent shoved Mr. Cain twice on January 27, 2026, which was preceded by behavior inconsistent with the high standards expected of attorneys practicing in the Middle District of Florida. That behavior includes but is not limited to Respondent's improper November 11 settlement-adjacent email to opposing counsel and his decision to bring Mr. Oltmann— a person who had publicly threatened Plaintiff and his attorneys — to the deposition in person without warning.

As a result, the Court must now devote its own resources to hosting and securing proceedings that attorneys should be capable of conducting without additional oversight. This falls below even the most basic expectations for attorneys, especially here, in the Middle District of Florida.

Making matters worse, the altercation also occurred in public with several individuals watching. As a member of the Middle District of Florida, Respondent's behavior reflects directly on the District as a whole and the members that practice

within it. Respondent's behavior is not an acceptable representation what is expected of attorneys practicing in this District.

Further, Respondent does not accept responsibility or express remorse for his actions, instead he seemingly attempts to minimize the situation by suggesting that the situation could have been worse. The reality is, however, that none of the immediate issues preceding the January 27 altercation justified the intensity of the altercation—including but not limited to Mr. Cain's verbal taunts or other conduct.[8] It was merely a matter of minutes before the Court called the Parties back for the hearing. There is simply no justification for Respondent's behavior under the circumstances.

Based on the foregoing, the Committee finds that probable cause exists to believe that Respondent is guilty of unprofessional or unethical conduct that falls far below the expectations of attorneys practicing in the Middle District and to believe that Respondent's conduct violated one or more of the above-mentioned Florida Rules of Professional Conduct justifying disciplinary action.

---

[8] The Committee's findings herein are limited to Respondent's conduct. Accordingly, the Committees take no position on whether Mr. Cain's own conduct during this incident was appropriate. Nothing in this Report should be construed as a finding that Mr. Cain's conduct was without fault.

## CONCLUSION

Based on the Committee's investigation and facts stated above, the Committee concludes that sanctions are in order should the Court agree with its recommendations after the Respondent's opportunity to respond under Rule 2.04. Accordingly, the Committee RECOMMENDS that the Court enter an order as follows:

1. Suspending Respondent from the Bar of the Middle District of Florida for a period of one year (the "Suspension Period"). Commencement of the Suspension Period shall be held in abeyance until such date as the Court, in its discretion, deems appropriate to permit the orderly transition of Respondent's existing caseload and to minimize disruption to his clients' interests and other pending matters. The Suspension Period shall continue until the other conditions set forth below are satisfied;
2. Prohibiting Respondent from taking on new cases in the Middle District of Florida, effective as of the date of an order adopting the recommendation set forth in this Report and lasting until expiration of the Suspension Period;
3. Referring the specific conduct addressed in this Report to The Florida Bar for further investigation and a determination of whether that conduct

violated any provision of the Rules Regulating The Florida Bar including those cited herein and in the Referral Order;

4. Requiring Respondent to attend and complete a Court-approved certified anger management course; and
5. Requiring Respondent to report to the Court the completion of paragraph 4 on or before the last day of the Suspension Period.

The Committee asks that this recommendation be filed in the docket of the above-captioned case and that copies be provided to all judges in the Middle District of Florida presiding over any case in which Respondent is counsel of record.

Respectfully submitted this 26th day of October, 2026.

GRIEVANCE COMMITTEE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION